IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GLOBAL HEALTH COUNCIL *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP *et al.*, <br><br> *Defendants*. | Civil Action No. 25-cv-402 (AHA) |

**RESPONSE TO DEFENDANTS' STATUS REPORT AND**
**MOTION TO ENFORCE TEMPORARY RESTRAINING ORDER**

Far from demonstrating compliance with the temporary restraining order issued by this Court (ECF No. 21), Defendants' Status Report (ECF No. 25) makes perfectly clear that they have made every effort to circumvent it, both in letter and in spirit. Indeed, since the Court entered its order, Defendants have not disbursed *a single dollar* of the hundreds of millions owed and due to Plaintiffs—even for awards not subject to any purported termination or suspension and even for work already performed before the unlawful funding freeze. Every day and every hour that Defendants withhold those funds jeopardizes Plaintiffs' very existence and harms the countless American workers whose lives have been thrown into chaos by Defendants' arbitrary and capricious implementation of Executive Order 14,169. The Court should order the immediate payment of all funds owed and due to Plaintiffs and other USAID and State Department implementing partners *within 48 hours* of the Court's enforcement order.[1]

---

[1] The parties have conferred pursuant to LCvR 7(m). Defendants oppose the relief sought in this motion.

1

As for the other assertions in Defendants' Status Report—including their baffling attempt to retroactively justify their mass terminations of *thousands* of contracts and grants based on contract provisions they are still in the process of reviewing—Plaintiffs take issue with them all. Plaintiffs thus agree with the plaintiffs in *AIDS Vaccine Advocacy Coalition v. U.S. Department of State* that "Defendants are plainly in violation of the TRO" by treating those terminations—the vast majority of which expressly invoked Executive Order 14,169 as authority—as continuing in full force and effect. *See* Emergency Mot. for Contempt at 8, *AIDS Vaccine Advocacy Coalition v. U.S. Dep't of State*, No. 25-cv-400 (D.D.C. Feb. 18, 2025). But for purposes of this filing, Plaintiffs focus on Defendants' failure to disburse funds, which is causing Plaintiffs particularly acute irreparable harm. Plaintiffs will address the other issues raised in the Status Report in the briefing on their motion for a preliminary injunction. In the meantime, the Court should immediately address the existential issue of Defendants' unlawful withholding of funds owed and due to Plaintiffs.

## BACKGROUND

On February 13, 2025, this Court issued a TRO enjoining all Defendants other than President Trump (the "Restrained Defendants") from "enforcing or giving effect to" particular sections of a memorandum issued by Defendant Rubio and "any other directives that implement Sections 3(a) and 3(c) of Executive Order Number 14169, 'Reevaluating and Realigning United States Foreign Aid' (Jan. 20, 2025)." TRO at 14. The Court specifically enjoined the Restrained Defendants from "suspending, pausing, or otherwise preventing the obligation or disbursement of appropriated foreign-assistance funds in connection with any contracts, grants, cooperative agreements, loans, or other federal foreign assistance award that was in existence as of January 19, 2025." *Id.* It also specifically enjoined the Restrained Defendants from "issuing, implementing, enforcing, or otherwise giving effect to terminations, suspensions, or stop-work orders in

connection with any contracts, grants, cooperative agreements, loans, or other federal foreign assistance award that was in existence as of January 19, 2025." *Id.* The Court ordered the Restrained Defendants to "take all steps necessary to effectuate" the TRO and directed them to file a status report on their compliance with the TRO. *Id.*

On February 18, Defendants submitted a status report, which attached a declaration from Defendant Peter Marocco. *See* Status Report (ECF No. 25); Marocco Decl. (ECF No. 25-1). While Defendants claim to "have worked diligently to comply with the Court's order," *id.* ¶ 5, the status report and the Marocco declaration show that, in fact, the Restrained Defendants are continuing to prevent the disbursement of foreign-assistance funds on a categorical basis. In their filings, Defendants do not represent that any foreign-assistance funding has been disbursed—to Plaintiffs, their members, or any other implementing partners—since the issuance of the TRO. At most, Defendants claim that "21 payments" have been "authorized" and "are expected to be paid this week." Marocco Decl. ¶ 15; *see* Status Report ¶ 13. The Marocco declaration further states that USAID has implemented "a new Payment Integrity Process" under which "USAID will continue to exercise Agency discretion to individually examine outgoing payments" through "payment-by-payment processing." Marocco Decl. ¶¶ 6, 8. The Marocco declaration also represents that the State Department, too, has "implemented new procedures" for processing payments. *Id.* ¶ 33. These new procedures are not limited to preventing fraud, but instead are designed "to validate compliance with policy." *Id.* That is, even in Defendants' telling, they continue to "suspend[], paus[e], or otherwise prevent[] the obligation or disbursement of appropriated foreign-assistance funds" in direct contravention of this Court's order. TRO at 14.

But Defendants' filings also fail to fully represent the situation. Internal communications from within the State Department and USAID show that Defendants are in fact continuing to obstruct disbursements altogether. For example, in an email dated February 18—five days after

3

the Court issued the TRO, and the same day Defendants filed their Status Report—a senior State Department official stated that "Secretary Rubio has implemented a 15-day disbursement pause on all **$15.9B worth of grants** at the State Department." Dunn-Georgiou Decl. ¶ 3 (emphasis in original). In addition, a USAID official told Plaintiff DAI Global that the processing of all USAID payments has been restricted to five regional hubs, where an extremely limited number of agency personnel must complete individual requests to process each payment, which then cannot be disbursed unless and until each is approved by a single political appointee in Washington, D.C. *See* Northrip Decl. ¶ 8. Consistent with these new restrictions on disbursements, Plaintiffs and their members have not received a single dollar of foreign-assistance funding from USAID or the State Department in the week that has elapsed since the TRO was issued.

## LEGAL STANDARD

"[F]ederal courts are not reduced to issuing injunctions against [government] officers and hoping for compliance." *Hutto v. Finney*, 437 U.S. 678, 690 (1978). Courts have "broad" equitable "authority to issue additional orders to enforce a prior injunction." *Damus v. Wolf*, No. 18-cv-578, 2020 WL 601629, at *2 (D.D.C. Feb. 7, 2020) (citation omitted). "The exercise of this authority is 'particularly appropriate'" where a court is asked to "enforce the terms of its mandate to an administrative agency." *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014) (quoting *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984)).

When deciding a motion to enforce, "a court may take into account the compliance with the court's previous orders and the need for a further order to prevent inadequate compliance in the future." *Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Veterans Admin.*, 765 F. Supp. 1, 6 (D.D.C. 1991) (citation omitted). Courts grant the motion when the plaintiff "demonstrates that a defendant has not complied … even if the noncompliance was due to misinterpretation." *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004). "The overarching question is whether

4

the plaintiff has received all relief required by the court's prior order." *S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, No. 18-cv-760, 2022 WL 19037214, at *3 (D.D.C. June 30, 2022) (citation omitted).

## ARGUMENT

Plaintiffs' experiences and internal communications from within USAID and the State Department confirm that the Restrained Defendants are defying the Court's order by withholding and delaying disbursement of foreign-assistance funds. Notwithstanding that the Court issued its TRO a week ago, *no funds* have been disbursed to *any* implementing partners (including Plaintiffs and their members) on due and overdue invoices. And Plaintiffs have likewise been unable to make draws of funds under their grants and cooperative agreements. The result is that Plaintiffs remain in largely the same position they were before the Court issued its order: their owed funds have not been disbursed and they continue to suffer the same (or worse) irreparable harms. The Court should therefore issue an order enforcing the TRO.

Since the Court issued the TRO, Plaintiffs HIAS, Management Sciences for Health (MSH), Chemonics International, DAI Global, Democracy International, and the American Bar Association have received *no* payments on their numerous overdue invoices. *See* Hetfield Decl. ¶ 3; Wentworth ¶ 3; Butcher Decl. ¶¶ 3–4; Northrip Decl. ¶¶ 3–4; Bjornlund Decl. ¶ 6; Carlson Decl. ¶¶ 4–5.[2] These Plaintiffs continue to be owed *many millions* of dollars for work performed before January 20, which Defendants refuse to pay.[3] Similarly, since the TRO, Plaintiffs have been

---

[2] MSH "has received a small payment … to resume specified activities under a PEPFAR 'waiver'" for "activities from February 14, 2025, to March 15, 2025." Wentworth Decl. ¶ 3. MSH has not received any payments for overdue expenses owed by the federal government. *Id.*

[3] Specifically, HIAS is owed $6,443,043.48 in outstanding invoices. Hetfield Decl. ¶ 3. Chemonics is owed $110.3 million in outstanding invoices issued to USAID for work performed in 2024, $25.2 million, of which is past due. Butcher Decl. ¶ 3. DAI Global is owed over $70 million in

unable to draw down funds from letter of credit (LOC) facilities, which fund grants and cooperative agreements, for ongoing work. *See, e.g.*, Northrip Decl. ¶¶ 9–11; Carlson Decl. ¶¶ 4–5; Butcher Decl. ¶ 4. Likewise, Plaintiffs Global Health Council and the Small Business Association for International Companies have polled their 200-plus members, and *not one* has responded that it received any payments since the TRO. Dunn-Georgiou Decl. ¶¶ 5–7; Nichols Decl. ¶¶ 5–7. As a result, Plaintiffs have continued to suffer the irreparable harms that they filed this suit to prevent. *See* Mot. at 20–25 (ECF No. 4); Decls. in Support of Mot. for Temp. Restraining Order & Prelim. Inj. (ECF No. 7). For example, MSH has determined that—unless USAID promptly disburses funds—it will be forced to furlough nearly all of its full-time U.S.-based staff on March 7, 2025. Wentworth Decl. ¶ 7 ("[A]s few as ten individuals will remain as full-time staff," "down from a January 24, 2025 total of 254 U.S. payroll staff."); *see also id.* ¶¶ 8–9 (describing "massive employee terminations" oversees and other harms to business relations).

    Plaintiffs' experiences are borne out by Defendants' Status Report and the Marocco declaration. Those filings confirm that, since the TRO was issued, Defendants have made no payments whatsoever on any contracts, grants, cooperative agreements, loans, or other federal foreign assistance awards that were in existence as of January 19. At most, according to Defendant Marocco, "the Agency has *authorized* at least 21 payments" that "are *expected* to be paid this week." Marocco Decl. ¶ 15 (ECF No. 25-1) (emphasis added). But even if USAID were to make

---

payments on invoices that are more than 30 days past due. Northrip Decl. ¶ 3. Democracy International is owed over $3 million in invoices and draws submitted to USAID for work completed prior to January 24, 2025. Bjornlund Decl. ¶ 7. And the American Bar Association is owed $3,496,048.62 in direct payments through drawdowns in the Payment Management System and $1,314,427 in payments from pass-through organizations, for a total past due amount of $4,810,475.62. Carlson Decl. ¶ 5.

6

those 21 payments as "expected," that would barely scratch the surface of the mountain of overdue invoices at USAID and the State Department.

Nor have Defendants provided any evidence that the glacial rate of payments will improve. In fact, newly imposed approval processes at USAID are creating an artificial bottleneck that will only serve to slow disbursements further. Since the TRO, USAID has restricted the processing of all USAID payments to limited personnel in five regional hubs: Jordan, Ghana, South Africa, San Salvador, and Bangkok. Northrip Decl. ¶ 8. For example, South Africa now has only "*five employees* to examine and certify vouchers for *16 countries*" (whereas South Africa "usually has 20 employees … who process vouchers for six countries"). Decl. of Emilia Doe ¶ 15, *Am. Foreign Serv. Ass'n v. Trump*, No. 25-cv-352 (D.D.C. Feb. 17, 2025) (emphasis added). Only 50 people worldwide are able to process payments using USAID's payment system, known as Phoenix. *Id.* And now *every* payment request—including for existing awards and for work already performed—must be individually approved by a single political appointee in Washington: Assistant to the Administrator for Management and Resources Ken Jackson. Northrip Decl. ¶ 8.[4]

These changes are having the predictable result of slowing payment processing to a standstill. On February 18 (the same day Defendants filed their Status Report), a USAID Contracting and Agreement Officer in Mexico reported to implementing partners that "[USAID's] payment systems are still not fully functional. We have not yet processed past pending payments

---

[4] Payments for some grants and cooperative agreements are managed through letter of credit (LOC) facilities, but the payment management systems that govern those facilities also appear to be dysfunctional. For example, since the TRO, DAI Global has been repeatedly requesting drawdowns under the LOC facilities associated with each of its USAID-funded cooperative agreements. Northrip Decl. ¶¶ 9–11. As of this week, requests are shown as "Payment Processed" and "In Transit," but the expected payment date is not the following business day, as was the usual practice before January 20. *Id.* ¶ 11. Instead, all requests have been assigned an expected payment date of January 24, 2026—over 11 months from now. *Id.*

and have no assurances regarding future invoices and the duration before payment." Dunn-Georgiou Decl., Ex. B. And on February 20, a Contracting and Agreement Officer in Vietnam "caution[ed]" implementing partners that "USAID/Vietnam does not currently have the capability to process approved vouchers in a timely manner." Dunn-Georgiou Decl., Ex. C. The message continued "[a]lthough we hope that new voucher procedures will be established that allow us to process legitimate vouchers quickly, we wanted to make you aware of these technical difficulties as you plan how to move forward with your awards." *Id.* The message also included the proviso: "This notice is not an acknowledgement of anticipatory breach, we hope to be able to repair our payment systems and processes before a breach occurs." *Id.*

As for the State Department, Defendant Marocco's declaration conspicuously does not mention *any* payments that have been authorized or disbursed by the agency since the Court issued the TRO. In fact, according to an email from a State Department official on February 18, "Secretary Rubio has implemented a 15-day disbursement pause on all **$15.9B worth of grants** at the State Department." Dunn-Georgiou Decl. ¶ 3 (emphasis in original).[5] Plaintiffs are unaware of the asserted legal basis (if any) for Defendant Rubio to impose a *new* pause of all foreign-aid disbursements in the face of the TRO—much less a basis for Defendants to fail to mention this pause in their Status Report.[6]

---

[5] In the same email, the official also directed personnel in the Bureau of South and Central Asian Affairs to undertake an assessment of all "grants at your post" (listed in an attached spreadsheet) by the end of the day and directed those personnel to "review the President's executive orders and recommend termination of grants that do not comply with those orders." For each grant, personnel were directed to recommend either "'Keep' or 'Terminate.'" Dunn-Georgiou Decl. ¶ 3. The message continued: "If you select 'Keep', please write a <u>one-line</u> justification in column S. Nothing is required in [column] S if you select 'Terminate'. (If awards have already been terminated prior to 2/12/25, type 'Already Terminated' in Column R.)" *Id.*

[6] The Code of Federal Regulations does not have any provision authorizing a suspension without cause. *See* 2 C.F.R. 200.239 (listing suspension as a "remedy for noncompliance" when a recipient

At the same time, Defendants have begun terminating the agency's *entire* personal service contractor workforce. *See* Pls.' Suppl. Evidence in Supp. of Emergency Relief at 1–2, *Personal Servs. Contractor Ass'n v. Trump* (*PSCA*), No. 25-cv-469 (D.D.C. Feb. 19, 2025), ECF No. 10. Personal service contractors "fill numerous roles that are essential to USAID's operations, including acting as contracting and agreement or award officers." Compl. ¶ 15, *PSCA*, No. 25-cv-469 (D.D.C. Feb. 18, 2025), ECF No. 1. These personnel are "first-line approvers for both payment reimbursement and advances for implementing partner awards," and their termination "will further backlog overdue back payments to implementing partners performing lifesaving assistance." 4th Decl. of Jane Doe ¶ 8, *PSCA*, No. 25-cv-469 (D.D.C. Feb. 19, 2025), ECF No. 10-2.

Additionally—in the two business days between the issuance of the TRO and the filing of Defendants' Status Report—*both* USAID and the State Department have apparently begun developing new procedures for processing any disbursements of foreign-assistance funds that will undoubtedly slow disbursements even further. USAID is implementing "a new Payment Integrity Process" under which "USAID will continue to exercise Agency discretion to individually examine outgoing payments" through "payment-by-payment processing." Marocco Decl. ¶¶ 6, 8. Likewise, the State Department has "implemented new procedures" for processing payments, which are not limited to preventing fraud, but instead are designed "to validate compliance with policy." *Id.* ¶ 33. Defendants' sudden adoption of these additional procedures imposes new hurdles for the disbursement of funds and is thus plainly incompatible with the Court's order that the Restrained Defendants stop "preventing … the disbursement of appropriated foreign-assistance funds." TRO at 14.

---

"fails to comply with the U.S. Constitution, Federal statutes, regulations, or terms and conditions of the Federal award[]" and the "noncompliance cannot be remedied").

Nor can these new procedures be justified by an ostensible desire to combat fraud. To begin, Defendants have identified no evidence whatsoever that any paused or delayed disbursement—to Plaintiffs, their members, or any other implementing partner—would be fraudulent. Moreover, the agencies already have mechanisms to protect against fraud, waste, and abuse. For example, USAID has adopted comprehensive guidance governing the process by which it disburses funds to implementing partners, including detailed protocols to prevent fraudulent or otherwise improper payments. *See* USAID, Automated Directive System chs. 630 & 636 (rev. 2019). In fiscal year 2024, for example, USAID made $4.04 million in overpayments (out of an agency budget of $40 *billion*), of which all but $80,000 were recovered—a recovery rate of 97.95%, which is higher than that of nearly *every other agency*. *See* PaymentAccuracy.gov, *Annual Improper Payments Datasets*, https://www.paymentaccuracy.gov/payment-accuracy-the-numbers/. In addition, the Payment Integrity Information Act of 2019, Pub. L. 116–117, requires agencies to "assess the risk of, estimate, report, reduce, and recover improper payments," and in the most recent fiscal year, an independent accountant found that USAID and all of its programs were "in compliance." USAID, Office of Inspector Gen., *USAID Complied with the Payment Integrity Information Act of 2019 for Fiscal Year 2023*, Report 0-000-24-006-C (May 28, 2024). Each entity receiving $750,000 or more in federal funding must also undergo an audit and share the findings of the audit with each federal funding source.[7]

---

[7] Defendants' assertion that "[u]nder that legacy system, USAID employees were unable to adequately identify basic information about specific payments, such as the programs with which specific payments were associated," Marocco Decl. ¶ 15 (ECF No. 25-1), is unsupported by any factual details and implausible. All requested payments must identify a unique Award Number that is associated with every payment request.

Moreover, Defendants' supposed interest in combatting fraud is belied by other actions they have taken to implement the President's funding freeze. As reported by the USAID Inspector General, "staffing shortages and limitations on communications with aid organizations stemming from the

The agencies' actions in the days since the Court entered the TRO—severely limiting access to the Phoenix system, funneling all payment approvals through a single person, terminating hundreds of critical personnel, and suddenly imposing new (and inchoate) processes and procedures—are creating an artificial bottleneck that is all but halting the disbursement of foreign-assistance funds. This bottleneck is "preventing the … disbursement of appropriated foreign-assistance funds," in violation of the express terms and spirit of the TRO. TRO at 14. Indeed, Defendants' conduct is precisely the kind of "evidence of non-compliance" this Court indicated would justify "specific directives regarding USAID [and State Department] personnel or operational details." *Id.* at 13–14.

The Court should issue an order to enforce the TRO. *See S. Poverty L. Ctr.*, 2022 WL 19037214, at *3; *Flaherty*, 17 F. Supp. 3d at 55.[8]

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiff's motion to enforce and issue the proposed order attached to this motion.

---

cessation of U.S. foreign assistance have limited USAID's ability to receive, react to, and report allegations of diversion." USAID, Office of Inspector Gen., *Oversight of USAID-Funded Humanitarian Assistance Programming Impacted by Staffing Reductions and Pause on Foreign Assistance* (Feb. 10, 2025). Defendants fired the Inspector General immediately after this report was released. *See* Ellen Knickmeyer, *White House fires USAID inspector general after warning about funding oversight, officials say*, AP (Feb. 11, 2025), https://apnews.com/article/usaid-american-companies-layoffs-lawsuit-8c116d877c179169fbce2d3348fcd997.

[8] As noted, Plaintiffs take issue with the remaining arguments in Defendants' Status Report. Plaintiffs strongly disagree, for example, that Defendants can retroactively justify their mass terminations of hundreds of contracts as consistent with the Court's TRO, the relevant contract terms, the Administrative Procedure Act, the Impoundment Control Act, the Anti-Deficiency Act, or the Constitution. Nor can Defendants lawfully continue their program of mass terminations and suspensions going forward. But Plaintiffs will address those issues in their forthcoming reply in support of their motion for a preliminary injunction.

Dated: February 20, 2025                    Respectfully submitted,

*/s/ Stephen K. Wirth*
William C. Perdue (D.C. Bar 995365)*
Sally L. Pei (D.C. Bar 1030194)
Samuel M. Witten (D.C. Bar 378008)
Stephen K. Wirth (D.C. Bar 1034038)
Dana Kagan McGinley (D.C. Bar 1781561)
Allison Gardner (D.C. Bar 888303942)
Daniel Yablon (D.C. Bar 90022490)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000
stephen.wirth@arnoldporter.com

*application for admission pending

*Counsel for Plaintiffs*