**DEFENDANTS' EXHIBIT A**

**FOR FEBRUARY 26, 2025**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, *et al.*, <br><br> *Defendants.* | Civil Action No. 25-00400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*, <br><br> *Plaintiffs,* <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants.* | Civil Action No. 25-00402 (AHA) |

I, Pete Marocco, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this declaration. This declaration is based on my personal knowledge and information provided to me in my official capacity by others.

2. Since Thursday, January 30, 2025, I have performed the duties and functions of both Deputy Administrators of the United States Agency for International Development ("USAID" or the "Agency"). I manage the day-to-day operations at USAID including personnel matters and operations. Since January 20, 2025, I have also served as the Director of Foreign Assistance at the Department of State. Previously, I served as a United States Marine and as a Deputy Assistant

1

Secretary at both the Department of State and the Department of Defense. Additionally, I served on a special assignment as the Senior Advisor for Intelligence and Security to the Secretary of Commerce and served as the Assistant to the Administrator at USAID, overseeing the Bureau for Conflict Prevention and Stabilization.

    A. Payment Process

    3. The Department of State and USAID are currently completing individualized review of contracts and grants. Determining the appropriate course for existing contracts and grants is a cumbersome, multi-step process. Once an initial decision is made concerning whether to lift a stop-work order or terminate a contract, under authority conferred by both the contracts/grants and independent legal authority, State and USAID began the process of lifting stop work orders and terminating others as quickly as possible with the resources they have.

    4. The Court's latest order enforcing the TRO and requiring payments to issue by February 26 at 11:59pm will have drastic consequences. For USAID, I estimate the Court's order would require the payment of at a minimum **$1.5 billion dollars** across approximately 2,000 outstanding and newly created payment requests. For State, I estimate the Court's order would require the payment of at a minimum **$400 million** in outstanding payment requests. These payments cannot be accomplished in the time allotted by the Court and would instead take multiple weeks.

    5. USAID led a rigorous multi-level review process that began with spreadsheets including each contract, grant, or funding instrument where each line of the spreadsheeting reflected one such agreement and included information about the recipient, the amount of the award, the subject matter, and a description of the project that often included the location of the project. Policy staff first performed a first line review to determine whether the individual agreement was in line with foreign policy priorities (and therefore could potentially be continued) or not (and presumptively

could be terminated as inconsistent with Agency priorities and the national interest). Those recommendations were reviewed by a senior policy official to confirm that, for awards recommended for termination, that ending the program was consistent with the foreign policy of the United States and the operations and priorities of the Agency. The results of that review were routed to me for further review, including of institutional and diplomatic equities. As one example, a presumptively terminated agreement might be continued for a variety of foreign policy reasons, such as the location of the project or the general subject matter, or the judgment and foreign policy perspectives of the second line reviewer. Termination recommendations approved by me ultimately received the Secretary of State's review. The Secretary of State's personal involvement confirmed that termination decisions were taken with full visibility into the unique diplomatic, national security, and foreign policy interests at stake vis-à-vis foreign assistance programs.

6. At the Department of State, the review process for grants began with compiling a list of all the grants administered by the Department. This list was then sorted by the Department bureau responsible for each grant. The Senior Bureau Official (Assistant Secretary or equivalent) in each Bureau was tasked with reviewing each grant within his or her Bureau and providing a recommendation to the Office of the Secretary on whether to continue or terminate the grant. If the Bureau desired to continue the grant, a justification was required. Bureau responses were due at 12 noon on Friday, February 21st. Upon receipt, the Office of the Secretary would review the recommendations and made additional edits pursuant to the Secretary's instructions. As with USAID, this resulted in recommendations that receive the Secretary of State's ultimate review. The Secretary of State's personal involvement confirms that, for example, work of particular importance to the United States' relationships with particular foreign nations is not impaired. With respect to contracts, the Department of State ran a similar process. At both USAID and State, there

are also other lists of contracts and grants that were sent to the leadership at USAID for termination through a content search or other means and these were approved for termination.

7.  USAID and State terminated instruments according to their terms and conditions, consistent with the provisions previously cited to the Court. *See 2/18 Marocco Decl.* (No. 25-cv-400 Dkt. 22-1) ¶¶ 9-11, 23 (citing the various authorities available for State and USAID to terminate agreements).  The review processes described above is ongoing with respect to the ten plaintiffs' grants and contracts, and is also ongoing with respect to other grants and contracts.

8.  With respect to the ten plaintiff entities, State and USAID identified the contracts, grants, or funding instruments to which they are counterparties. Each is subject to termination under the provisions cited previously as well as the terms of those agreements.  The outcome of the case-by-case review with respect to the ten plaintiffs' agreements is still ongoing.

9.  For terminated agreements of the Plaintiffs (and others)—as specified in Section 12(d) of the January 24, 2025 ALDAC, (a section that this Court did not enjoin), and the February 5, 2024 ALDAC, see Exhibit B, providing further guidance on Section 12—USAID and State will make payments for legitimate expenses incurred prior to January 24, 2025 as specified in that Guidance. In doing so, they will require only the same basic materials any rational counterparty would normally require—an invoice that documents verifiable work that the Government actually committed to fund in its contract, grant, or other instrument, payments entries that actually match said invoices, and receipts, vouchers or other supporting information that explains the purpose and amount of funds sought. For payments that meet those basic prerequisites, State and USAID are committed to payment of money owed under the relevant instrument. Further, a description of the steps related to initiating payments to counterparties is described in Part C.

10. Separately, terminated contracts, grants, and funding instruments of Plaintiffs (and others)

each have close-out procedures that the counterparty may utilize regarding any wind down payments related to the termination of these agreements. A description of these close-out procedures is described below in Part D.

B.  Status of Payments

11. In Section 12 of his January 24, 2025 ALDAC, the Secretary of State approved a waiver of the pause for any "legitimate expenses incurred prior to the date of this ALDAC [January 24, 2025] under existing awards or legitimate expenses associated with stop-work orders".  Jan. 24, ALDAC, Exh. A at ¶ 12(d).

12. On February 5, 2025, Secretary Rubio issued an additional ALDAC to provide "Technical Guidance for Waivers Approved by the Secretary of State and the Director of Foreign Assistance." Feb. 5, 2025 ALDAC, 25 STATE 10948, attached as Exh. B.  As relevant to the pre-January 24, 2025, obligations under existing contracts and legitimate expenses associated with stop-work orders, "'Legitimate expenses' must include allowable and allocable costs under the terms and conditions of the applicable award or contract that are approved by the Director of Foreign Assistance after submission for consideration …." *Id.* ¶ 9. The disbursement of obligated funds that are excepted under Paragraph 12(d) is addressed in Paragraph 13 of the February 5 ALDAC.

13. On February 25, 2025, amended FAQs were issued regarding the exception process. See State & USAID Foreign Assistance Pause Exception Process and Disbursement FAQs (Feb. 25, 2025), attached as Exh. C.  Among other things, these FAQs, streamlined the clearance process, see id. ¶ 1, provided additional guidance regarding disbursements, *id.* ¶¶ 13-14, and explained what is required for authorized payments under Paragraph 12(d) of the January 24 ALDAC, *id.* ¶ 16, and explained what costs associated with stop-work orders may be incurred. *Id.* ¶¶ 17-18. While the payment of pre-January 24, 2025 obligations for "existing awards or legitimate expenses

associated with stop-work orders, bureaus/offices **do not** need to get approval of the Director of Foreign Assistance but should obtain approval from the Senior Bureau Official (SBO) of the relevant bureau. *Id.* ¶ 16. USAID expects to pay individual funding recipient Plaintiffs' invoices for legitimate expenses incurred under Paragraph 12(d). State expects to pay individual funding recipient Plaintiffs' invoices for legitimate expenses incurred under Paragraph 12(d).

C. Delays in Restarting Payments

14. Restarting funding related to terminated or suspended agreements is not as simple as turning on a switch or faucet. Rather, the payment systems of USAID and State are complicated and require various steps before payments are authorized to be disbursed by the U.S. Treasury, Department of Health and Human Services, and/or the Department of State, involving multiple agencies, which are not a party to this litigation. The approval process must comply with the Federal Managers Financial Integrity Act and the Federal Financial Management Improvement Act. At a high level, their payment system is: (1) working with vendors, (2) creating new payment requests, (3) getting them certified, (4) getting them re-certified, and (5) effectuating payments electronically through the Department of the Treasury, Health and Human Services or if overseas through the Department of State, or a combination thereof. The documentary evidence necessary to ensure compliance with policy added time to a process that already required the necessary controls, including appropriate separation of duties, to validate an invoice, review for compliance with appropriation law and accounting standards, and make the final payment. Adding an additional documentation step into an existing complex process, takes time to before it is fully efficient. Training for the staff, adjusting the system, and developing data management tools all resulted in a backlog of payments which is being addressed.

15. At times, both State and USAID could process several thousand payments each day. The

overseas mission adds further complexity with the use of 244 overseas banks and 133 different currencies.  For payments, State and USAID rely on multiple methods depending on location on execution and the type of payment and/or agreement.

16. For State domestic payments, most contract payments are now run through Treasury's Invoice Processing Platform (IPP).  For IPP, vendors submit invoices electronically into IPP, which are then routed through bureau/program defined approvals, including the contracting officer representative (COR).  Once approved in IIP, State invoices are interfaced into State's Global Financial Management System (GFMS) for certification and payment. USAID domestic invoices are routed through the GLAAS contract management system and ultimately ported into the Phoenix accounting system. From Phoenix, payments are directed to GFMS or similar systems operated by Treasury or the Health and Human Services (HHS). Some payment packages, given certain complexities, continue to be submitted and routed manually.

17. For domestic grants, both State and USAID utilizes HHS' payment management system (PMS) to process grant payments.  Bureau program personnel enter approvals and payment instruction into PMS and these activities are recorded into GFMS. State's Comptroller staff are now approving program office requests before final payment.  For overseas, invoices for contracts and/or grants funded and executed at posts are received at post and either reviewed, certified, and paid by post or sent through State's Comptroller for centralized voucher examination, certification, and payment in dollars and foreign currency. As part of system of new controls, all overseas payments will be certified by this central unit. USAID payments are similarly being manually reviewed and approved by a specialized task-force of payments specialists, before receiving a final check to ensure the validity and completeness of supporting documentation. Restarting payments on the 10 plaintiffs' contracts and grants would be burdensome and take time to make sure they

are legitimate.

18. Moreover, at USAID, my understanding is that some payment requests are not supported by any documentation or, where there is documentation, inadequate documentation to show actual work performed, compliance with the terms of the relevant contract or award, and the like.  In addition and for example, my understanding is that payments to associations have been submitted without the names of specific members who have done work or even the names of vendors associated with the awards or payments.  Nor are payment requests all submitted in the same format—often they do not contain consistent numbers or consistent supporting documentation—and payments have been requested across multiple different payment systems, administered by partner agencies, which process payments differently and use different computer systems to identify and release payments. Payments have also been made across different timetables.

19. As a result, for a majority of the plaintiff requests, there are currently no payments prepared and sitting in the USAID system that can be readily sent to recipients.  Making the payments the Court has ordered will generally require an entirely new process for each that includes the creation of a new payment, certification, approval at the accounting level, preparation in the payment computer, and recertification for disbursement.

20. At USAID, contractual counterparties and grant recipients frequently submit payment requests before they are due under the governing instruments.  The Court's Order appears to now require early payment without any review of these payment requests.  Additionally, many payments are submitted in batched payment requests that cannot be disentangled or paid separately. The Court's order thus appears to require payment of requests related to new work.

D.  Closeout Procedures for Terminated Agreements and Counterparties Remedies

21. As described in the February 18 Marocco Declaration and described further below, when

8

a contract, grant, or funding instrument is terminated, the counterparty may utilize the closeout procedures regarding funds that they believe that they are owed under those agreements.

22. To the extent that counterparties believe they are entitled to reimbursement for past work or other remedies under their funding instruments, USAID is prepared to entertain such claims and seek resolution. Indeed, there is an established mechanism for counterparties to submit disputes for resolution to USAID. *See, e.g.*, ADS Chapter 303 MAB § M10(e) & M13 (disputes and appeals). If counterparties believe they have claims that resolution process does not vindicate, established mechanisms are available for them to pursue any claims, including through settlement and in certain cases through judicial review in the Civilian Board of Contract Appeals or the United States Court of Federal Claims. *See, e.g.*, 48 C.F.R. 49.201 (providing rules for settlement of certain contract claims); 2 C.F.R. 200.343 (effects of suspension and termination); cf. *Pennsylvania Dep't of Pub. Welfare v. United States*, 48 Fed. Cl. 785, 790 (2001) (discussing Tucker Act jurisdiction).

23. Similarly, to the extent that counterparties of State believe they are entitled to reimbursement for past work or other remedies under their particular funding instruments, State is prepared to entertain such claims and seek resolution. For contracts, the process is governed by the Contracts Disputes Act, 41 U.S.C. § 7101, *et seq*, and begins with the submission of a written claim to the relevant contracting officer. The contracting officer must issue a written decision that "shall state the reasons for the decision reached and shall inform the contractor of the contractor's rights as provided [by the Contract Disputes Act]." The contracting officer must issue his decision within 60 days for claims less than $100,000 and within a reasonable time for larger claims (and for such claims, the contracting officer must notify the contractor of the timeframe for his decision will be made within 60 days). For grants and other federal assistance awards, 2 CFR 200.344 describes

the closeout process for awards following their termination or conclusion, including the process by which a recipient submits financial reports for payment. 2 CFR 200.343 and 200.403 further describe what costs are allowable under federal assistance awards, including specifically in the case of a suspension or termination. If counterparties believe these claims processes are not sufficient, mechanisms exist to pursue, settle, and in certain cases litigate such claims through judicial review in the Civilian Board of Contract Appeals or the United States Court of Federal Claims. *See, e.g.*, 48 C.F.R. 49.201 (providing rules for settlement of certain contract claims); 2 C.F.R. 200.343 (effects of suspension and termination); *cf. Pennsylvania Dep't of Pub. Welfare v. United States*, 48 Fed. Cl. 785, 790 (2001) (discussing Tucker Act jurisdiction).

24.  Recouping any taxpayer dollars sent under the Court's order that we later determine to have been improperly billed or sent would be extremely difficult.  Contractual counterparties and grant recipients are often overseas and once money leaves the Government's accounts, we cannot control what those counterparties and recipients will do with it. Since many USAID programs involve sub-awards, it is likely that any funds disbursed would soon be transferred to third-party sub-vendors and contractors.

25. Moreover, the plaintiffs have claimed that many grant recipients and contractual counterparties are insolvent or nearly so, raising the high likelihood that they will immediately spend any funds they receive—making it impossible for the Government to recover those funds as a practical matter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 25, 2025

_____
Pete Marocco

# EXHIBIT A

UNCLASSIFIED



| | |
|---|---|
| **MRN:** | 25 STATE 6828 |
| **Date/DTG:** | Jan 24, 2025 / 241600Z JAN 25 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *Immediate* |
| **E.O:** | 13526 |
| **TAGS:** | PREL, AID, EAID |
| **Subject:** | Executive Order on Review of Foreign Assistance Programs |

1. (U) Consistent with the President's Executive Order on Reevaluating and Realigning United States Foreign Aid, this ALDAC pauses all new obligations of funding, pending a review, for foreign assistance programs funded by or through the Department and USAID.

2. (U) Across the United States government, it is currently impossible to access sufficient information in one place to determine whether the foreign assistance policies and interests supported by appropriations are not duplicated, are effective, and are consistent with President Trump's foreign policy. The Department needs a centralized repository from which senior Department, USAID officials, Ambassadors, missions and others can draw sufficiently detailed information from which the Secretary can make judgments. Further guidance regarding a new or updated repository and mandatory bureau submissions to it will be forthcoming.

**ACTIONS TO BE TAKEN**

DU[ Y ˙%c Z)

3. (U) Within thirty (30) days, the Director of the Policy Planning Staff (S/P) or its designate shall develop appropriate review standards and collaborate with the Director of the Office of Foreign Assistance (F), the Office of Budget and Planning (BP), the Office of Management and Budget (OMB), and/or other departments and agencies as appropriate to ensure that all foreign assistance is aligned with President Trump's foreign policy agenda and that data regarding all foreign assistance spending in the future is aggregated and inputted into a comprehensive internal Department repository.

4. (U) Within eighty-five (85) days of this ALDAC, the government-wide comprehensive review of all foreign assistance shall be completed, and a report shall be produced to the Secretary of State for his consideration and recommendation to the President.

5. (U) In keeping with one voice of American foreign policy, the United States government, through any department, agency or entity, shall not provide foreign assistance funded by or through the Department and USAID without the Secretary of State's authorization or the authorization of his designee.

6. (U) All U.S. foreign assistance shall be aligned under the Secretary of State's coordination, direction, and supervision, as appropriate, consistent with section 622(c) of the Foreign Assistance Act of 1961 and section 1523 of the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA) within 180 days.

7. (U) Effective immediately, Assistant Secretaries and Senior Bureau Officials shall ensure that, to the maximum extent permitted by law, no new

obligations shall be made for foreign assistance until such time as the Secretary shall determine, following a review.  For existing foreign assistance awards, contracting officers and grant officers shall immediately issue stop-work orders, consistent with the terms of the relevant award, until such time as the Secretary shall determine, following a review.  Decisions whether to continue, modify, or terminate programs will be made following this review.

8. (U) Effective immediately, pending a review of foreign assistance programs:  no new requests for proposals (RFPs), requests for application (RFAs), notices of funding opportunities (NOFOs), or any other kind of solicitation or request for foreign assistance funding shall be published or processed by the Department, USAID, or other agencies implementing programs funded by the Department or USAID until each has been reviewed and approved by F as consistent with the President's policy; no further technical evaluation committees shall be convened; and there shall be no further funding obligated to awards and contracts or indefinite delivery /indefinite quantity (IDIQ) contracts.

9. (U) Effective immediately, I am suspending the review process for proposals for new foreign assistance grants, subgrants, contracts, or subcontracts.  No new funds shall be obligated for new awards or extensions of existing awards until each proposed new award or extension has been reviewed and approved by F as consistent with the President Trump's agenda.

10. (U) Within thirty (30) days of the issuance of the review standards in paragraph 4, every Bureau, agency office and entity providing any type of

foreign assistance shall produce to F for review a list of all active, pending, or proposed grants, subcontracts, contracts, or subcontracts, and provide a clear and concise statement explaining if and how the current or proposed use of obligated funds advances President Trump's policy.

11. (U) The spokesperson will also release a public statement to this effect.

12. (U) The Secretary of State has approved waivers of the pause under the Executive Order and this ALDAC, subject to further review, with respect to:

(a) foreign military financing for Israel and Egypt and administrative expenses, including salaries, necessary to administer foreign military financing;

(b) emergency food assistance and administrative expenses, including salaries, necessary to administer such assistance;

(c) on a temporary basis, salaries and related administrative expenses, including travel, for U.S. direct hire employees, personal services contractors, and locally employed staff;

(d) legitimate expenses incurred prior to the date of this ALDAC under existing awards or legitimate expenses associated with stop-work orders; and

(e) exceptions to the pause approved by the Director of Foreign Assistance.

DEFINITIONS

13. (U) Only for purposes of this ALDAC, foreign assistance means assistance funded from accounts in titles III and IV and from International

Organizations and Programs in the Department of State, Foreign Operations, and Related Programs Appropriations Acts.

| | |
|---|---|
| **Signature:** | RUBIO |

| | |
|---|---|
| **Drafted By:** | S/TT:Marocco, Peter |
| **Cleared By:** | S/TT:Holler, Daniel |
| | L:Visek, Richard |
| | L:Dorosin, Joshua |
| | S/TT:Anton, Michael |
| | C:Needham, Michael |
| **Approved By:** | S: Rubio, Marco |
| **Released By:** | POEMS_P:Acker, Vanessa G |
| **Info:** | IO COLLECTIVE *Immediate* |
| **XMT:** | BASRAH, AMCONSUL; CARACAS, AMEMBASSY; CHENGDU, AMCONSUL; KABUL, AMEMBASSY; MINSK, AMEMBASSY; SANAA, AMEMBASSY; ST PETERSBURG, AMCONSUL; VLADIVOSTOK, AMCONSUL; YEKATERINBURG, AMCONSUL |

**UNCLASSIFIED**

# EXHIBIT B

**UNCLASSIFIED**



| | |
|---|---|
| **MRN:** | <u>25 STATE 10948</u> |
| **Date/DTG:** | Feb 05, 2025 / 052237Z FEB 25 |
| **From:** | SECSTATE WASHDC |
| **Action:** | ALL DIPLOMATIC AND CONSULAR POSTS COLLECTIVE *Immediate* |
| **E.O:** | 13526 |
| **TAGS:** | ABUD, AFIN |
| **Subject:** | (SBU) Department of State Foreign Assistance Review Technical Guidance for Waivers Approved by the Secretary of State and the Director of Foreign Assistance |

1. (SBU) This ALDAC provides additional technical guidance consistent with Executive Order 14169 on *Reevaluating and Realigning United States Foreign Aid* and the Secretary's direction in *ALDAC 25 STATE 6828*, which paused all new obligations and disbursements of Department of State and USAID foreign assistance not covered by certain waivers, pending a review. As noted in the ALDAC, all bureaus, offices, and missions responsible for foreign assistance funding from accounts in titles III and IV and the International Organizations and Programs account (IO&P) of the annual appropriations acts must comply with this guidance. All relevant links related to the foreign assistance pause, including forms and templates, are available on the *F Managing for Results SharePoint* in the 2025 Foreign Assistance Review Guidance folder.

**(SBU) Executive Orders and Secretary of State Waivers**

2. (SBU) President Trump has issued a series of executive orders to protect the American people and safeguard valuable taxpayer resources, including *Protecting the American People Against Invasion* (Jan. 20, 2025), *Reevaluating and Realigning United States Foreign Aid* (Jan. 20, 2025), *Putting America First in International Environmental Agreements* (Jan. 20, 2025), *Unleashing American Energy* (Jan. 20, 2025), *Ending Radical and Wasteful Government DEI Programs and Preferencing* (January 20, 2025), *Initial Rescissions of Harmful Executive Orders and Actions* (January 20, 2025), and Ending Illegal Discrimination and Restoring Merit-Based Opportunity (Jan. 21, 2025).

3. (SBU) On Friday, January 24, consistent with Executive Order 14169 on *Reevaluating and Realigning United States Foreign Aid*, Secretary Rubio issued ALDAC 25 STATE 6828. The ALDAC paused all new obligations of funding for foreign assistance programs funded by the Department and USAID and instructed that no new requests for proposals (RFPs), requests for application (RFAs), notices of funding opportunities (NOFOs), or any other kind of solicitation or request for foreign assistance funding shall be

published or processed by the Department, USAID, or other agencies implementing programs funded by the Department or USAID until each has been reviewed and approved by F as consistent with President Trump's policy. For existing foreign assistance awards, the Secretary directed contracting officers and grant officers to immediately issue stop-work orders, consistent with the terms of the relevant award, pending the review. No further technical evaluation committees shall be convened; and there shall be no further funding obligated to awards and contracts or indefinite delivery/indefinite quantity (IDIQ) contracts. The Secretary also instructed that no new funds shall be obligated for new awards or extensions of existing awards until each proposed new award or extension has been reviewed and approved by F as consistent with the President's agenda.  Paragraph 12 of the ALDAC included specific waivers of the pause approved by the Secretary.

4. (SBU) The Secretary also issued an _Emergency Humanitarian Waiver_ on January 28, which applies to life-saving humanitarian assistance (as described in the waiver).  This waiver allows existing implementers to continue or resume work under existing awards subject to the following directions. No new contracts shall be entered into. This waiver for life saving humanitarian assistance applies to life-saving medicine, medical services, food, shelter, and subsistence assistance as well as supplies and reasonable administrative costs as necessary to deliver such assistance. The waiver does not apply to activities that involve abortions, family planning, conferences, administrative costs other than those covered as outlined, DEI or gender ideology programs, transgender surgeries, or other non-life saving assistance. Migration and Refugee Assistance (MRA) may only be used to support life-saving humanitarian assistance activities outlined in the waiver and repatriation of third country nationals to their country of origin or safe-third-country.

**(SBU) Scope of Current Waivers**

5. (SBU) For purposes of the ALDAC and related waivers, including the Emergency Humanitarian Waiver, foreign assistance means assistance funded from accounts in titles III and IV and from the IO&P account in the Department of State, Foreign Operations, and Related Programs Appropriations Acts.

- **Title III Accounts:** Development Assistance (DA), Global Health Programs (GHP), International Disaster Assistance (IDA), Transition Initiatives (TI), Complex Crises Fund (CCF), Economic Support Fund (ESF), Democracy Fund (DF), Assistance for Europe, Eurasia, and Central Asia (AEECA), Migration and Refugee Assistance (MRA), U.S. Emergency Refugee and Migration Assistance Fund (ERMA)
- **Title IV Accounts:** International Narcotics Control and Law Enforcement (INCLE), Nonproliferation, Anti-terrorism, Demining and Related Programs (NADR), Peacekeeping Operations (PKO), International Military Education and Training (IMET), Foreign Military Financing (FMF)
- International Organizations and Programs (IO&P)

6. (SBU) **Current Waivers:**  The Secretary has approved waiver categories of the pause under the Executive Order and ALDAC 25 State 6828, subject to further review, with respect to:

- 12(a) - Foreign Military Financing for Israel and Egypt and administrative expenses, including salaries, necessary to administer Foreign Military Financing;
- 12(b) - emergency food assistance and administrative expenses, including salaries, necessary to administer such assistance;

- 12(c) - on a temporary basis, salaries and related administrative expenses, including travel, for U.S. direct hire employees, personal services contractors, and locally employed staff;
- 12(d) - legitimate expenses incurred prior to the date of this ALDAC under existing awards or legitimate expenses associated with stop-work orders;
- 12(e) - exceptions to the pause approved by the Director of Foreign Assistance; and
- via separate waiver, life-saving humanitarian assistance that applies to core life-saving medicine, medical services, food, shelter, and subsistence assistance, such as supplies and reasonable administrative costs as necessary to deliver such assistance.

7. (SBU) Assistant Secretaries (A/S) (or Acting A/S) and Senior Bureau Officials (SBO) are **required** to fill out an *Obligation or Disbursement under Waiver of Foreign Assistance Pause form* for all waived categories (e.g., 12(a) - 12(e) and separate HA waiver) to confirm that approved costs fall within this waiver. This form and any 12(e) exception approvals (as outlined below) are required in all payment packages processed domestically and overseas. For domestic payments, these documents should be uploaded in the IPP system with the payment or included with manually submitted payment packages for certification and payment. For payments processed at posts, for the period of the pause, foreign assistance payments covered under approved waiver categories and exceptions must be submitted to the Post Support Unit (PSU) for certification and payment. Posts can still elect to partial pay any portion of a payment that does not contain foreign assistance funds and send the remaining portion to PSU. For now, system relationship edits in RFMS for foreign assistance funded payments will remain in effect for posts. For foreign assistance funded official travel, bureaus and posts are responsible for ensuring adequate controls A/S or SBO approval. This approval should be noted in the remarks section of the E2 travel authorization. For federal assistance payments that use the HHS Payment Management System, the approved form must be uploaded to the MyGrants system prior to the approval in the Payment Management System. The form must be uploaded as a Post Award Activity and then submitted to integrate into the award file.

(SBU) **Additional information on administrative expenses under paragraph 12(c) of the ALDAC**

8. (SBU) The waiver, on a temporary basis, for salaries and related administrative expenses, including travel, for U.S. direct hire (USDH) employees, personal services contractors (PSCs); and locally employed (LE) staff exemption in paragraph 12(c) of the ALDAC allows for operations related to salaries and administrative expenses to continue while the review of foreign assistance is taking place. These administrative expenses may include the following expenses where funded from foreign assistance: salaries and benefits for USDH, PSCs and LE Staff; approved official travel for USDH, PSCs, and LE Staff; insurance payments for USDH, PSCs, and LE Staff; USDH, PSC, and LE Staff work cell phone costs; PSC contract costs; ICASS costs; USDH and PSC housing leases; residential trash collection for USDH and PSC residences at post; utility expenses for USDH and PSC residences at post; security costs- (including security guard services, surveillance systems, and related security measures); communication costs for USDH and PSCs (including phone lines, internet access, and other communication infrastructure); potable water deliveries for USDH, PSC, and LE Staff; rent for leased spaced used for offices, equipment, utility, or data storage, security readiness and storage used by USDH, PSCs, and LE Staff; maintenance and repair of equipment used by USD, PSCs, and LE Staff; security, legal, accounting, and information technology professional services; contractor facilities, utilities, and fuel direct charged to the Department; costs related to eligible family members (EFMs); and payments to Citi Bank for government Purchase cards for expenses already incurred and approved.

**(SBU) Additional information on "legitimate expenses" under paragraph 12(d) of the ALDAC**

9. (SBU) "Legitimate expenses" must include allowable and allocable costs under the terms and conditions of the applicable award or contract that are approved by the Director of Foreign Assistance after submission for consideration through FAWaivers@State.gov.

**(SBU) EXCEPTION PROCESS**

10. (SBU) Bureaus and Offices that wish to continue critical obligations and/or disbursements for foreign assistance programs **not included** in existing waivers must seek an exception from the Director of Foreign Assistance (DFA) under paragraph 12(e) of the ALDAC or a waiver from the Secretary. Bureaus and Offices that wish to seek an exception under paragraph 12(e) for new obligations and/or disbursements must submit an Exception Action Memo to the DFA for approval. **There is a very high bar for such exceptions.** The memo should follow the linked template and clearly demonstrate how the program is aligned to President Trump's policy.

[25 STATE 6828 FA Review Exception Memo Template.docx](25 STATE 6828 FA Review Exception Memo Template.docx)

11. (SBU) Illustrative high-bar examples of things that could be considered for exceptions by the Director of Foreign Assistance include, but are not limited to:

> (1) obligations or disbursements tied directly to a known Trump Administration priority,
> (2) significant risk of program breaks, work stoppage, or closures for programs where American lives and security would be at risk and that align to a known Trump Administration priority, or
> (3) third party contract staff salaries and other related contract costs required for the safety and security of Americans and/or U.S. property.

**(SBU) DISBURSEMENT OF OBLIGATED FUNDS UNDER THE WAIVER IN PARAGRAPHS 12(a) - 12(c) OF THE ALDAC**

12. (SBU) Any Bureau, Office, or post seeking to disburse funds that have already been obligated and are covered by a waiver specified in paragraphs 12(a)-(c) of the ALDAC, should have the applicable A/S or SBO fill out and sign an *Obligation or Disbursement under Waiver of Foreign Assistance Pause form* to confirm that that the disbursement falls within an approved waiver. This form may not be signed by anyone other than those listed above.

**(SBU) DISBURSEMENT OF OBLIGATED FUNDS THAT REQUIRE AN EXCEPTION UNDER PARAGRAPH 12(d)- 12(e) OF THE ALDAC**

13. (SBU) Any Bureau, Office, or post seeking to disburse funds that have already been obligated, but currently on pause due to the Executive Order and ALDAC and require an exception approved by the Director of Foreign Assistance under paragraph 12(d)-(e) of the ALDAC, should submit the *FA Review Exception Memo template*. Drafters should include all relevant disbursement requirements related to the activity and/or program. Once the exception is approved, the *Obligation or Disbursement under Waiver of Foreign Assistance Pause form* signed by the applicable A/S or SBO, and the signed exception should be submitted with the invoice(s) for payment. Bureaus that have received an approved waiver for disbursements, should send the waiver to the program office and cognizant CO/GO/AO as well as the CGFS disbursement office.

**(SBU) EXCEPTIONS TO OBLIGATE FUNDS AND/OR RESUME ACTIVITIES UNDER PARAGRAPH 12(e) OF THE ALDAC**

14. (SBU) If a Bureau, Office, or post is seeking an exception for the obligation of foreign assistance funds or the resuming of activities funding by foreign assistance then they should use the *FA Review Exception Memo Template* and the *Exemption Excel Template* and add **an additional decision block for the exception request for each program.**

15. (SBU) Completed exception packages for approval will only be accepted with approval from A/S or SBOs**.**  Requests not already provided to F as of the release of this guidance should be sent by email to Foreign Assistance Waiver (FAWaivers@state.gov), which is listed in the GAL.  If you have previously submitted waiver requests that are still pending, please follow this format to expedite your request.

**The Director of Foreign Assistance will either approve, disapprove, or request a discussion on each Bureau or Office request.**

**(SBU) OBLIGATION OR DISBURSEMENT OF FUNDS RECEIVED UNDER SECTION 635(D) OR SECTION 607 OF THE FOREIGN ASSISTANCE ACT (GIFT FUNDS AND SECTION 607 AUTHORITY)**

16. (SBU) If a Bureau,  Office, or post is seeking to obligate or disburse funds received via sections 635(d) or 607 of the Foreign Assistance Act, then they should use the FA Review Exception Memo Template and include a decision block for the exception request for each program which identifies the donor, the program, and the request as one for donor-received funds.

| | |
|---|---|
| **Signature:** | RUBIO |

| | |
|---|---|
| **Drafted By:** | F/RA:Pulford, Lauren |
| **Cleared By:** | F/RA:Williams, Rebecca |
| | CGFS:Walsh, James |
| | CGFS:Davisson, William |
| | BP/RPBI:Crumbly, Angelique |
| | F/FO:Dashtara, Abraham |
| | F:Peterson, Kyle |
| | A/FO:Gray, Matthew |
| | A/GA/AP:Drabkin, Sarah |
| | A/GA/AP:Urman, Anna |
| | M:Inzerillo, Suzanne |
| | S/TT:Orr, Caleb |
| | C:Veprek, Andrew |
| | L/BA:O'Connor, Elizabeth |
| | L/M:Cracraft, Valerie |
| | L/LFA:Pompian, Shawn |
| | S/ES:Mennuti, Deborah |
| | AF/EX:Hazel, Steven |
| | EAP/EX:Johnson, Horace |
| | EUR-IO/EX:Karber, Jon |
| | NEA-SCA/EX:Landis, Rebecca |
| | NEA/AC:Walters, Danika |
| | SCA/STA:Briggs, Jason |
| | WHA/PPC:Jilka, Lucy |

WHA/EX:Cavey, Michael

**Approved By:**   S/TT:Marocco, Peter

**Released By:**   RM_DCFO:Anderson, Veronique Z

**XMT:**   BASRAH, AMCONSUL; CARACAS, AMEMBASSY; CHENGDU, AMCONSUL; KABUL, AMEMBASSY; MINSK, AMEMBASSY; SANAA, AMEMBASSY; ST PETERSBURG, AMCONSUL; VLADIVOSTOK, AMCONSUL; YEKATERINBURG, AMCONSUL

---

**UNCLASSIFIED**

# EXHIBIT C

# (SBU) State and USAID Foreign Assistance Pause
# Exception Process and Disbursement FAQs

### *Issued February 24, 2025*

Please note these FAQs also include new or clarifying guidance on procedures, processes, and approval flows.

1. **Is the exception and payment process applicable to State and USAID?**
   *Yes. ALDAC 25 State 10948 technical guidance applies to State and USAID unless otherwise noted below. There are USAID applicable sections below. Additional information on the USAID internal waiver process and other requirements may be found on USAID's Executive Secretariat internal website.*

**Exception Request Approver Updates**

- Effective February 24, 2025, John A. Zadrozny is the Deputy Director of the Office of Foreign Assistance.  All requests for exceptions must now be addressed to Mr. Zadrozny.

**Clearance process updates**

- Effective February 24, 2025, C and P clearances are no longer required on 12(d) or 12(e) Waiver Memos to the Director of Foreign Assistance (DFA).

**Expenses and disbursements under the Secretary's 12(c) waiver**

2. **Do 12(c) direct bi-weekly payroll payments require Senior Bureau Official (SBO) approval?**
   *No.*

3. **Do 12(c) expenses require a "Obligation or Disbursement under Waiver of Foreign Assistance Pause" form?**
   *No.  To facilitate timely and essential critical payments supporting mission operations related to 12(c) waived expenses, posts may proceed processing through the Post Support Unit (PSU) and obligating these expenses at post without obtaining Senior Bureau Officer (SBO) approvals for waived 12(c) related expenses. The PSU will verify these 12(c) expenses as expenditures related to the 1000-2000 budget object classes (BOC), which by definition are administrative costs and related 4160 BOC for Value Added Tax on those expenses. Please refer to ALDAC 25 STATE 14458 for additional information.  USAID also issued a message to the agency reinforcing the ALDAC and communicating that 12(c) expenses paid with Operating Expense (OE) funds also no longer require additional steps.  USAID Controllers will ensure OE payments that fall outside 12(c) administrative expenses (e.g. Free Russia Foundation) will be flagged for further analysis and sent to the SBO for approval.*

4. **Does the 12(c) waiver "on a temporary basis, salaries, and related administrative expenses, including travel, for U.S. direct hire employees, personal services contractors, and locally employed staff" cover new obligations for not-yet-issued PSC contracts or do bureaus need to submit an AM to the Director of Foreign Assistance?**
   *The Department and USAID currently have a hiring freeze in place. In general, no new obligations for such purposes should occur; however, if an SBO determines such new obligations are necessary an exception should be sought under 12(e).*

5. **Please clarify SBO approval requirements for new travel authorizations and vouchers.**
   *In line with current travel guidance, all official travel, international and domestic, must be approved by the SBO.  Approval for travel that originates abroad is to be approved by the relevant COM.  For COMs, their travel should be approved by the relevant Bureau SBO.  Proof of the SBO's/COM's approval of the travel should be noted in E2 in the remarks section and supplemental documentation may be attached to the travel authorization.  Bureau SBOs approve travel payment by signing the Obligation and Disbursement waiver form.*

**Interagency Agreements (IAAs) and Transfers**

6. **Are U.S. Direct Hire (USDH) and Locally Employed Staff (LES) at the IAA servicing agency (recipient agency) considered USDH within the context of the waiver?  i.e. some IAA agency partners are asking whether their USDH and LES that charge the IAA to cover the staff's salaries fall under 12(c).**
   *Per 25 STATE 14458, the 12(c) waiver includes administrative expenses for all USDH, personal services contractors (PSCs) and LES staff funded from foreign assistance.  Regardless of the mechanism used to fund the positions, these costs are covered by the waiver.  For program staff, they should only work on programs that have an approved waiver/exception. However, if a PSC contract is terminated during the pause, it will not be paid further.*

7. **If State and USAID bureaus have entered into a 632(a) or 632(b) agreement with another U.S. agency to implement a program, is the SBO for the originating/requesting State/USAID bureau/office responsible for approving the "Obligation or Disbursement under Waiver of Foreign Assistance Pause" form for disbursements made by the interagency partner (servicing/recipient agency)?**
   *No.  The State or USAID SBO is only responsible for certifying and approving the "Obligation or Disbursement under Waiver of Foreign Assistance Pause" form for disbursements when their agency is the disbursing agency.*

**Payments and new obligations**

8. **What should be included when submitting payment requests for processing?**
   *In addition to regularly provided information, bureaus/offices should attach: 1) The SBO signed "Obligation or Disbursement under Waiver of Foreign Assistance Pause" form (including information requested on page 2 of that form). Disbursements under 12(c) do not require this form and bureaus and posts should refer to ALDAC 25 STATE 14458 and the message to the USAID workforce on 12(c) expenses (for USAID OE expenses).*

9. **Is the "Obligation or Disbursement under Waiver of Foreign Assistance Pause" form required for all mechanisms (contracts, grants, IAAs, etc.)?**
   *Yes. The form is required for all mechanisms and should be uploaded as supporting documentation with the payment request or new obligation action.*
   a. *For State bureaus submitting payments, you should upload the "Obligation or Disbursement under Waiver of Foreign Assistance Pause" form, which should include recipient and invoice information as requested on page 2 of the form. Multiple invoices may be attached to one payment form for SBO review. Approved payment memos and forms should also be submitted to CGFSWaiver_Intake@state.gov with the subject line denoting PMS or IPP payment for approval to ensure CGFS is tracking all necessary details to help facilitate payments.*
   b. *For USAID Operating Units submitting payments in Phoenix, you should attach the "Obligation or Disbursement under Waiver of Foreign Assistance Pause" form.*

10. **Do you need recipient/vendor information on the "Obligation or Disbursement under Waiver of Foreign Assistance Pause" form?**
    *Yes. When "Obligation or Disbursement under Waiver of Foreign Assistance Pause" forms are submitted with payments, the bureau/office should attach additional identifying information utilizing the fields provided on page 2 of the form.*

11. **Can I advance costs to a grantee to execute activities approved under a waiver/exception?**
    *Yes, but only for the time period agreed to as part of the waiver/exception approval. If no specific time period was provided, then funds should only be advanced for the period of the foreign assistance review, that is until April 19, 2025. Additional guidance will be provided following the conclusion of the foreign assistance review.*

12. **Does the pause extend to no cost extensions (NCEs) or the execution of contract option years?**
    *Yes. Bureaus seeking to continue any program with existing funding must seek an exception from the Director of Foreign Assistance (DFA) for that program to continue during the 90-day pause.*

13. **Do the restrictions on disbursements under the 12(d) waiver apply for payments to third-party contractors for contract staff and regular contract payments?**
    *Yes. The Secretary has issued a waiver for legitimate expenses incurred prior to the date of ALDAC 25 STATE 6828 under existing awards or legitimate expenses associated with stop-work orders. The ALDAC was issued January 24, 2025, therefore legitimate expenses incurred through January 23, 2025 will need a 12(d) waiver.*

14. **Is explicit approval required by the Director of Foreign Assistance to disburse funds under the Secretary's 12(d) waiver?**
    *Yes, 25 STATE 10948, outlines in paragraphs 9 and 13 that legitimate expenses that are not covered by an additional current waiver/exception (e.g., a specific exception issued under 12(e)) are subject to a policy review and must be approved by the Director of Foreign Assistance. Therefore, the appropriate SBO should complete a waiver memo and submit it along with all relevant disbursement requirements related to the activity and/or program for consideration*

*through FAWaivers@State.gov or aid.estaskermaillistusaid@usaid.gov, copying fundingapprovalrequest@usaid.gov if it is a USAID activity per the instructions in 25 State 10948 so legitimate expenses may be paid. Any legitimate expenses for stop-work orders should get your contracting/grant officers clearance. If bureaus/offices are seeking to cover expenses incurred after January 23, they should seek an exception from the Director of Foreign Assistance.*

15. **If you have an approved exception for activities under 12(e), do you need separate approval for prior expenses incurred, etc.?**
*No, if the program, project, or activity was approved by the Director of Foreign Assistance to continue by a 12(e) exception, legitimate expenses incurred prior to the issuance of 25 STATE 6828 that are part of that same program or project may be paid with SBO confirmation on the "Obligation or Disbursement under Waiver of Foreign Assistance Pause" form. The ALDAC was issued January 24, 2025, therefore legitimate expenses incurred through January 23, 2025 are covered by the waiver.*

16. **What is required for 12(d) payments?**
*For legitimate expenses incurred prior to the January 24 release of 25 STATE 6828 under existing awards or legitimate expenses associated with stop-work orders, bureaus/offices **do not** need to get DFA approval but should obtain SBO approval on the "Obligation or Disbursement under Waiver of Foreign Assistance Pause" form, checking the 12(d) category on the form. This form should be submitted along with the payment request.*

*In submitting 12(d) payment requests, bureaus/offices and SBOs will also be confirming that these payments are aligned to existing Executive Orders and policy guidance from this Administration, e.g., DEIA, climate activism, or gender ideology. If there are 12(d) payments that may be misaligned to existing Executive Orders and policy guidance from this Administration, bureaus/offices should consult with F and L prior to submitting the payment requests.*

17. **What costs associated with stop work orders may be incurred?   Are organizations that receive funds for a program that is on pause, but not terminated, allowed to continue to pay operational costs to keep personnel, leases, etc.?**
*As a starting point, bureaus and offices should first consult with their contracting or grants / agreement (USAID) officer regarding the terms and conditions governing their agreements.  For contracts with a FAR 52.242-15 Stop-Work Order clause, there will be FAR guidance and a normal procedure by which the CO decides which costs would typically be allowable.  For contracts where a stop-work order clause (or similar) was not included, COs were directed to negotiate bilateral modifications providing for work stoppages.  Which costs would be allowable will depend on what the contract says (and what type of contract it is) and what those bilateral modifications say.*

*When this initial assessment is completed, bureaus and offices should apply to the Director of Foreign Assistance for a waiver under 12(d) as soon as possible.  Please note ALDAC 25 STATE 6828 outlines that the Secretary has approved a waiver for 12(d), "legitimate expenses incurred*

*prior to the date of this ALDAC under existing awards or legitimate expenses associated with stop work orders".  Subsequently, 25 STATE 10948, paragraph 13, outlines that "Any bureau, office, or post seeking to disburse funds that have already been obligated, but currently on pause due to the Executive Order and ALDAC and **require an exception approved by the Director of Foreign Assistance** under paragraph 12(d)-(e) of the ALDAC should submit the FA Review Exception memo template."  You must include a detailed explanation of what the expenses were for.*

18. **If we have non-admin costs that need to be paid at post, for which there is a waiver or approved exception, who is the SBO that approves disbursement of those funds?**
*For State Department wholly-owned accounts (e.g. INCLE, MRA, etc.) the accountable Senior Bureau Official (SBO) for those funds/that manages those funds must approve the SBO obligation and waiver disbursement form (not the regional bureau SBO). So, in this case, the INL SBO would approve.*

19. **Who are the Senior Bureau Officials (SBOs) that are the accountable official for each functional foreign assistance account or other foreign assistance accounts?**

   a. ***For USAID,*** *all payment requests for USAID SBO approval should be sent to* [aid.estaskermaillistusaid@usaid.gov](mailto:aid.estaskermaillistusaid@usaid.gov), *copying* [FundingApprovalRequest@USAID.gov](mailto:FundingApprovalRequest@USAID.gov). *Depending on the account/program, the USAID/FO will route the request to the appropriate SBO.*

   **For State Bureaus and Offices:**

   b. ***Assistance for Europe, Eurasia, and Central Asia (AEECA):*** *EUR - Assistant Secretary of State (European and Eurasian Affairs):  Louis Bono (Senior Bureau Official) will approve EUR-related items. For SCA-related items, Assistant Secretary of State (South and Central Asian Affairs):  Eric Meyer (Senior Bureau Official) will approve.*

   c. ***Democracy Fund (DF):*** *DRL - Assistant Secretary of State for Democracy, Human Rights, and Labor:  Jonathan Mennuti (Acting)*

   d. ***International Narcotics Control and Law Enforcement (INCLE):*** *INL - Assistant Secretary of State:  F. Cartwright Weiland (Senior Bureau Official). For INCLE funds implemented by J/GCJ, J/TIP or NEA (i.e. for Syria), the respective bureau/office SBO should approve those funds.*
      i. *Please send requests for INCLE allotted to posts that require SBO approval to:* [INL-SBO-12C-REQUESTS@state.gov](mailto:INL-SBO-12C-REQUESTS@state.gov).

   e. ***International Organizations and Programs (IO&P):*** *IO - Assistant Secretary of State: McCoy Pitt (Senior Bureau Official)*

   f. ***Foreign Military Financing (FMF), Peacekeeping Operations (PKO), and International Military Education and Training (IMET):*** *PM:  James Holtsnider (Senior Bureau Official)*
      i. *NOTE: The "Obligation or Disbursement under Waiver of Foreign Assistance Pause" form is not required for funds managed by DSCA.*

   g. ***Global Health Programs (GHP-State):*** *GHSD - Ambassador at Large and Coordinator of United States Government Activities to Combat HIV/AIDS Globally (S/GAC):  Jeffrey D. Graham (Senior Bureau Official)*

    **h.** ***Migration and Refugee Assistance (MRA):*** *PRM - Assistant Secretary of State:  Adam Zerbinopoulos (Senior Bureau Official)*

        i. *Please send requests for PRM funding allotted to posts that require SBO approval to* [PRM-EX-Budget@state.gov.](mailto:PRM-EX-Budget@state.gov)

    **i.** ***Nonproliferation, Anti-terrorism, Demining and Related Programs (NADR) funds/subaccounts:***

        **i.** ***Arms Control, Deterrence, and Stability (ADS), Contributions to the Comprehensive Test Ban Treaty International Monitoring System (CTBT IMS) and the Organization's Prepatory Commission (CTBTO PrepComm):*** *ADS - Assistant Secretary of State:  Paul B. Dean (Acting)*

        **ii.** ***Anti -Terrorism Assistance (ATA):***

            1. **CT** *- Coordinator for Counterterrorism:  Gregory D. LoGerfo (Acting) For requests related to CT funding that need SBO approval, please send to* [ct_ex_budget-fa@state.gov.](mailto:ct_ex_budget-fa@state.gov)

            2. **DS** *- Carlos Matus (acting). For requests related to DS ATA funding that need SBO approval, please send to* [Dscfoatainvoices@state.gov](mailto:Dscfoatainvoices@state.gov)

        **iii.** ***Export Control and Border Security (EXBS), Global Threat Reduction (GTR), International Atomic Energy Agency (IAEA), Nonproliferation and Disarmament Fund (NDF), Nonproliferation Cooperation (NPTCoop), and Weapons of Mass Destruction Terrorism (WMDT):*** *ISN - Assistant Secretary of State:  Ann Ganzer (Acting)*

        **iv.** ***Conventional Weapons Destruction/Humanitarian Demining (CWD):*** *PM - James Holtsnider (Senior Bureau Official)*

    **j.** ***Other function 150 international accounts and agencies, such as DFC, MCC, CDC and other relevant agencies, non-function 150 accounts:*** *Guidance is being working through a separate track for interagency partners such as DFC, USTDA, DEA, CBP, MCC, CDC and others that implement foreign assistance.  **F will share additional details when they are available.***

***For State, for Economic Support Funds (ESF), and other accounts not specified, the regional or functional bureau SBO for the bureau managing the program is responsible for certifying the obligation or implementation of those funds.***

**20. Do you have additional guidance on the life-saving humanitarian assistance? What costs are included?  What accounts are included in this particular waiver?**

The S waiver for life-saving humanitarian assistance applies *to core life-saving medicine, medical services, food, shelter, and subsistence assistance, as well as supplies and reasonable administrative costs as necessary to deliver such assistance.*

*The intended Humanitarian Assistance FA accounts that fall under the S waiver are: International Disaster Assistance (IDA), Migration and Refugee Assistance (MRA), Emergency Refugee and Migration Assistance (ERMA), and Title II Food For Peace (FFP).  Additionally, the DFA approved an exception for specific life-saving assistance through PEPFAR — life-saving HIV care/treatment services, testing, and commodities/drugs; prevention only for mother-to-child transmission services and commodities/drugs (e.g., PrEP); and reasonable admin costs necessary to deliver this assistance — through the Global Health*

*Programs (GHP-State and GHP-USAID for HIV/AIDS assistance) accounts. All activities consistent with the waiver definition and PEPFAR exception funded by these accounts may continue unless they are prohibited by other guidance (e.g., DEI EO). Any non-HA accounts, such as Economic Support (ESF) and Development accounts (DA, DF) where medical services, food, subsistence assistance programs are funded will need to seek an exception consistent with 12(e) of ALDAC 25 STATE 6828.*

*For life-saving humanitarian assistance reasonable administrative costs, 12(c) "salaries and related administrative expenses" as paragraph 8 in ALDAC 25 STATE 10948 lists most benefits that are applicable to HA; other HA specific expenses that are included in 12(c) are medevac payments for USDH, tuition payments for minor children of employees posted overseas, and education allowances for FTEs.*

*For any other HA activities funded from any other accounts that SBOs determine may fit under the definition of the life-saving assistance waiver, a bureau would need to seek an exception from the Director of Foreign Assistance (DFA) consistent with 12(e) in the ALDAC 25 STATE 6828.*

**22. Do gift funds or 607 funds, which are not foreign assistance, require DFA approval?**

*Gift funds or section 607 funds received from other countries that are added to US contracts, grants, and/or transferred to other foreign assistance accounts **do not** require DFA approval but do require SBO approval. Bureaus documenting their SBO approval for these activities should clear the associated memo with F. Once gift funds hit the financial systems, they are managed in a similar manner to other foreign assistance. Bureaus should fill out the "Notes" section in the "Obligation or Disbursement under Waiver of Foreign Assistance Pause" form and specifically note that these are gift funds.*

**23. Where can I locate the ALDACs, templates, and forms related to the waiver/exception and payment process?**

State/MfR SharePoint: 2025 Foreign Assistance Review Guidance

USAID Executive Secretariat FA Blanket Waiver and Exceptions Guidance may be found here.

USAID/FA Bureau USAID Pages: https://my.usaid.gov/node/43304

**24. Where can I go if I have additional questions?**

Questions on Waivers or Exceptions, including Director of Foreign Assistance approval for 12(d) legitimate expenses may be directed to State/F at fawaivers@state.gov. Please CC your relevant F POC.

Questions on State Department disbursements may be directed to: State/CGFS at *gfscbureauinvoiceinquirymailbox1@state.gov.*

FAQs on State Department grants and contracts may be found here:
https://usdos.sharepoint.com/sites/A-OPE/PO/SitePages/nk2aafgo.aspx

Questions on USAID disbursements from USAID staff may be directed to:
aid.estaskermaillistusaid@usaid.gov, copying fundingapprovalrequest@usaid.gov.

Questions on USAID contracts / agreements from USAID staff may be directed to: A&A via the Transition and Executive Order form.

Questions from USAID implementers may be directed to industryliaison@usaid.gov

Department/Agency Notice Text:

**State and USAID Foreign Assistance Pause Exception Process and Disbursement FAQs**

The Office of Foreign Assistance (F) has issued Frequently Asked Questions (FAQs) to provide additional information for State and USAID bureaus, offices, and missions regarding the foreign assistance waiver process and disbursement process.  The FAQs may be found on the State Department Managing for Results Budgeting Guidance SharePoint and F's USAID pages site.

Please refer additional questions to your F POC or the F/Resources and Appropriations team at F-RA-Execution@state.gov.


Approved:        F - Pete Marocco [PM]

Clearances:
CGFS/FO: Jim Walsh (ok)
CGFS: Butch Davisson (ok)
C: Matt Rhodes (ok)
M: Andy Hay (ok)
P: No Response
S/P: Wesam Hassanein (ok)
F/LEA: James Kennedy (ok)
F/RA: Becky Williams (ok)
F/RG: Kyle Peterson (ok)
F/RG/GP: Heather Harms (ok)
F/FO: Abraham Dashtara (ok)
A/GA/APD/FA: Sarah Drabkin (ok)
A/GA/AMD: Vincent Sanchez (ok)
L/BA: Elizabeth O'Connor (ok)
L/M: Valerie Cracraft (ok)
L/LFA: Shawn Pompian (ok)
USAID/FO: Aiyong (Paul) Seong (ok)