**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 25-cv-402 (AHA) |
| DONALD J. TRUMP, *et al.*, | |
| *Defendants*. | |

<u>**PLAINTIFFS' OPPOSITION TO MOTION FOR INDICATIVE RULING**</u>

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

INTRODUCTION ............................................................................................................ 1

LEGAL STANDARD....................................................................................................... 2

ARGUMENT .................................................................................................................... 3

I.    The Court Should Decline to Exercise Its Discretion to Issue an Indicative Ruling.......... 3

II.    No Basis Exists to Modify the Court's Prel

    A.    The Court's Injunction Was Not an Ord
    Obligation to Pay Money ...................................................................................... 7

    B.    *Great-West* Authorizes the Court's Ordered Rel

    C.    This Court's *Great-West* Rulings Independently Support
    the Preliminary Injunction ................................................................................ 14

CONCLUSION................................................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**                                                                                    Page(s)

AIDS Vaccine Advoc. Coal. v. Dep't of State
    No. 25-5046, 2025 WL 621396 (D.C. Cir. Feb. 26, 2025)....................................................10

*Amarin Pharms. Ireland Ltd. v. FDA*,
    139 F. Supp. 3d 437 (D.D.C. 2015) ........................................................................................2

*\*Bowen v. Massachusetts*,
    487 U.S. 879 (1988)...........................................................................7, 8, 10, 12, 13

California v. Dep't of Educ.
    132 F.4th 92 (1st Cir. 2025)......................................................................................8

California v. Dep't of Educ.
    No. 25-cv-10548, 2025 WL 725103 (D. Mass. Mar. 6, 2025) .....................................8

California v. Dep't of Educ.
    No. 25-cv-10548, 2025 WL 760825 (D. Mass. Mar. 10, 2025) ...................................8

*Cencich v. Miller-Stout*,
    No. 10-cv-5164, 2013 WL 693209 (W.D. Wash. Feb. 26, 2013)............................5

*Chamber of Com. of U.S. v. Reich*,
    74 F.3d 1322 (D.C. Cir. 1996) ..........................................................................14

*Climate United Fund v. Citibank, N.A.*,
    No. 25-cv-698, 2025 WL 1131412 (D.D.C. Apr. 16, 2025)......................................10

*Cmty. Legal Servs. in East Palo Alto v. HHS*,
    No. 25-cv-02847, 2025 WL 1168898 (N.D. Cal. Apr. 21, 2025)............................5

Crowley Gov't Servs., Inc. v. Gen. Servs. Adm
    38 F.4th 1099 (D.C. Cir. 2022)....................................................................6, 7

*\*Dep't of Educ. v. California*
    145 S. Ct. 966 (Apr. 4, 2025) .....................................................................*passim*

*Doe 2 v. Shanahan*,
    **755 F. App'x 19 (D.C. Cir. 2019)**...................5

*Evans v. Fenty*,
    701 F. Supp. 2d 126 (D.D.C. 2010) .......................................................................4

*\*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)..........................................................................7, 12, 13, 14

*Harper v. Charter Commc'ns, LLC*
    No. 19-cv-902, 2024 WL 3901469 (E.D. Cal. Aug. 22, 2024)...............................................4

*Horne v. Flores*,
    557 U.S. 433 (2009)...........................................................................................................5

*Humphrey v. Baker*,
    665 F. Supp. 23 (D.D.C. 1987)...........................................................................................4

*Humphrey v. Baker*,
    848 F.2d 211 (D.C. Cir. 1988)...........................................................................................4

*International Technology Corp. v. Winter*,
    523 F.3d 1341 (Fed. Cir. 2008).........................................................................................11

*LeBlanc v. United States*,
    50 F.3d 1025 (Fed. Cir. 1995)...........................................................................................15

*Litovich v. Bank of Am. Corp.*,
    No. 20-cv-3154, 2022 WL 16856436 (S.D.N.Y. Nov. 10, 2022).............................................4

*Maine v. Dep't of Agric.*
    No. 25-cv-131, 2025 WL 1088946 (D. Me. Apr. 11, 2025).....................................................7

*Mallory v. Norfolk S. Ry. Co.*,
    600 U.S. 122 (2023)...........................................................................................................7

*Medgraph, Inc. v. Medtronic, Inc.*,
    310 F.R.D. 208 (S.D.N.Y. 2015) ...................................................................................4, 5

*New York v. Trump*,
    No. 25-cv-39, 2025 WL 1098966 (D.R.I. Apr. 14, 2025) .............................................5, 8, 10

*Rick's Mushroom Serv., Inc. v. United States*
    521 F.3d 1338 (Fed. Cir. 2008)........................................................................................11

*Rufo v. Inmates of Suffolk County Jail*,
    502 U.S. 367 (1992).........................................................................................................4

*San Antonio Hous. Auth. v. United States*,
    143 Fed. Cl. 425 (Fed. Cl. 2019) ......................................................................................11

*Silbersher v. Allergan Inc.*,
    No. 18-cv-3018, 2024 WL 2044626 (N.D. Cal. May 7, 2024)...............................................4

*Talley v. Pa. Dep't of Corr.*
    No. 2:21-cv-298, 2024 WL 5001458 (W.D. Pa. Dec. 6, 2024) .........................................3, 4

*Tootle v. Sec'y of the Navy*
  446 F.3d 167 (D.C. Cir. 2006) ...........................................................................11

*U.S. Enrichment Corp. v. United States,*
  117 Fed. Cl. 548 (2014) ....................................................................................11

*United States v. McKnight,*
  No. 20-11859, 2022 WL 4692129 (11th Cir. Oct. 3, 2022) ..............................2

*Webster v. Doe,*
  486 U.S. 592 (1988) ....................................................................................7, 15

*Widakuswara v. Lake,*
  No. 25-cv-1015, 2025 WL 1166400 (D.D.C. Apr. 22, 2025) ..............................7

*Woonasquatucket River Watershed Council v. U.*
  No. 25-cv-97, 2025 WL 1116157 (D.R.I. Apr. 15, 2025) ..............................7, 12

*Ex parte Young,*
  209 U.S. 123 (1908) ........................................................................................14

**Statutes**

5 U.S.C.
  § 702 ...............................................................................................................10
  § 706(2) .............................................................................................................9

28 U.S.C. § 1491(a)(1) .........................................................................................10

**Rules**

Federal Rule of Civil Procedure 62.1 ..............................................................2, 3, 5

## INTRODUCTION

This Court's temporary restraining order, required Defendants to make payments already due and owing to USAID and State Department implementing partners. This Court granted this relief not because of any contract-by-contract determination, but rather because it held that Defendants likely violated the Administrative Procedure Act and the Constitution by withholding those payments pursuant to an unlawful blanket freeze on foreign-assistance funding. Ordering those over-due payments was a necessary consequence of heartland APA relief—relief that had nothing to do with the terms of any funding award and enforced no contractual obligations. And as this Court has repeatedly found, implementing partners face existential harm absent the relief the Court ordered. Defendants have already challenged those payment obligations in the Supreme Court, on the same jurisdictional grounds they press here, and lost. None of that has changed.

What has changed, in Defendants' view, is page stay order in another case, which Defendants contend abrogates decades of D.C. Circuit precedent and supersedes the D.C. Circuit Supreme Court's decision in this very case, which did not accept the same jurisdictional arguments Defendants re-raise here. See Dep't of Educ. v. California, 145 S. Ct. 966 (Apr. 4, 2025). So, Defendants urge, this Court should revisit an argument now rejected in this case at every level of the federal judiciary, short-circuit the ordinary appellate process, and issue an indicative ruling that would dissolve payment obligations that Defendants have resisted since February.

The Court should not do so. Whether to issue an indicative ruling is at the Court's discretion, and the Court should decline to exercise that discretion here. Defendants simply repeat arguments they have long made in this case; they can point to no significant change in binding

precedent; the D.C. Circuit is as well-suited as this Court to address their legal arguments; and the equities weigh heavily against Defendants' mo...

In any event, Defendants overread *California*. That decision applies, and does not overrule, the binding precedents this Court relied on in correctly determining that Plaintiffs' claims fall outside the Court of Federal Claims' exclusive jurisdiction. And the facts in *California* differed from those here in every relevant respect, including the *California* plaintiffs' reliance on individual awards, the balance of equities, and the availability of relief in an alternative forum.

Finally, *California* addressed only the APA's waiver of sovereign immunity, which has no bearing on Plaintiffs' claims. And because the Court of Federal Claims would lack jurisdiction over Plaintiffs' constitutional claims, Plaintiffs would have no forum to bring these constitutional claims, an outcome that Supreme Court precedent forecloses. Defendants' motion should be denied and the Court's partial stay...

## LEGAL STANDARD

"If a timely motion is made for relief that the court... lacks authority to grant because of an appeal," Rule 62.1 permits the Court, after considering the motion, to "defer considering the motion," "deny the motion," or "state either that it would grant the motion if the court of appeals remands for that purpose or that it would grant the motion" Fed. R. Civ. P. 62.1. "Use of this procedure is not mandatory." *United States v. McKnight*, No. 20-11859, 2022 WL 4692129, at *3 (11th Cir. Oct. 3, 2022). Courts in this District thus have exercised their discretion not to issue indicative rulings where the circumstances do not warrant it. *See, e.g.*, *Amarin Pharms. Ireland Ltd. v. FDA*, 139 F. Supp. 3d 437, 439 (D.D.C. 2015).

**ARGUMENT**

**I.     The Court Should Decline to Exercise Its Discretion to Issue an Indicative Ruling**

The Court should decline to revisit Defend[ants]... Defendants' appeal on "th[e] district's decision to remain[s] pending an indicative ruling [it] may dispose of." *Ragley v. Doehpa*, No. 2:22-cv-298, 2024 WL Corr. 5001458, at *3 (W.D. Pa. Dec. 6, 2024); *see also* Fed. R. Civ. P. 62.1(a) (permitting district courts, in the alternative, to "defer considering" a...

For at least four related reasons, the Court should decline to issue an indicative ruling here.

*First*, Defendants have already presented their jurisdictional argument at every level of the federal judiciary, and none has found that it warrants interim relief in this case outside the ordinary appellate process. In asking the D.C. Circuit and the Supreme Court to stay and vacate the same payment requirements they challenge here, Defendants asserted, as they do here, that the Court's "order requiring the government [to] make payments exceeds the special court's jur[isdiction]" to vacate at 13, *Dep't of State v. AIDS Vaccine*, No. 24A831 (U.S. Feb. 26, 2025); *see* Emergency Mot. at 16, *AIDS Vaccine Advoc. Coal. v. Dep't of State*, Nos. 25-5046, 25-5047 (D.C. Cir. Feb. 26, 2025) (same). The Supreme Court denied relief. 145 S. Ct. 753 (Mar. 5, **2025**). "Given that the de[adline] ha[s] passed," the Supreme Court directed this Court to clarify the timeline for compliance. *Id.* But it left undistrubed the substantive relief this Court ordered: that [the government pay] for a portion of the paused disbursements—those owed for work already completed before the issuance of the District [Court's order]. *Id.* This Court, too, has repeatedly rejected Defendants' jurisdictional arguments. *See, e.g.*, Mem. Op. & Order Granting Prelim. Inj. (PI), ECF 60, at 15-20; ECF 41, at 5-6. There is no reason to give De[fendants]...

bite at the apple."[1] *Liberty Mut. Ins. Corp. v. Liberchlou Bank of Amer.*, No. 20-cv-8154, 2022 WL 16856436, at *2 (S.D.N.Y. Nov. 10, 2022).

*Second*, purported legal developments generally are no basis for an indicative ruling where the pending appeal raises the same legal issue. The court of appeals is as well-positioned as this Court to address the effect, if any, of the *California* District court's ... regularly deny requests to issue an indicative ruling where, as here, one party claims that a development in case law undermines a judgment. *See, e.g., Medgraph, Inc. v. Medtronic, Inc.*, 310 F.R.D. 208, 211 (S.D.N.Y. 2015) ("The Court ... this Court's advice or opinion ..."); *Silbersher v. Allergan Inc.*, No. 18-cv-3018, 2024 WL 2044626, at *8 (N.D. Cal. May 7, 2024) ("the Ninth Circuit ... well able to evaluate the ... impact ..."); *Harper v. Charter Commc'ns, LLC*, No. 19-cv-902, 2024 WL 3901469, at *2 (E.D. Cal. Aug. 22, 2024) (similar); *Talley*, 2024 WL 5001458, at *3 (similar). And the court of appeals is better positioned than this Court to determine whether circuit precedent ... *Humphrey v. Baker*, 665 F. Supp. 23, 27 (D.D.C. 1987), aff'd, 848 F.2d 211 (D.C. Cir. 1988).

*Third*, to the extent that a development in case law may form the basis for an indicative ruling, it must be a change in ... *Evans v. Fenty*, 701 F. Supp. 2d 126, 165-67 (D.D.C. 2010). And the "party seeking modification ... that the law has significantly changed. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 381 (1992). Defendants cannot meet that burden here. As other courts already have determined,

---

[1] Defendants also argued to the Supreme Court, to the extent it required payments to nonparties. *See* App. to Vacate at 14-15, *AIDS Vaccine Advoc. Coal.*; *see also* PI 44 ("The Court notes that Defendants have ... frequent argument that relief under the APA should apply only to the particular plaintiffs before the Court. As the Court observed at the preliminary injunction hearing, this argument has not been endorsed by the Supreme Court.").

*California* "does not represent a ..." *Cmty. Legal Servs. in East Palo*
*Alto v. HHS*, No. 25-cv-02847, 2025 WL 1168898, at *3 (N.D. Cal. Apr. 21, 2025); *see also New*
*York v. Trump*, No. 25-cv-39, 2025 WL 1098966, at *2 (D.R.I. Apr. 14, 2025).

*Fourth*, dissolving an injunction is a form of equitable relief,[2] and the party seeking that
relief must show, among the other equitable factors, that "continued enforcement
would be 'detrimental'" *Doe 2 v. Shanahan*, 755 F. App'x ... , ...
2019) (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009)). The equities here weigh against
Defendants. Apart from a brief administrative stay, Defendants have remained under an obligation
to complete past-due payments for work completed prior to ...
since February 13. *See* ECF 41, at 3 (explaining that ... in ...
way limiting the scope of the TRO ... modifying ...
months that followed, Defendants repeatedly represented to the Court that they would promptly
complete those payments—first on March 6, "within 2 weeks" ... business days ... State ...
for USAID," ... by March ..., *see* ECF 61, at 11; then by April 29, *see* ECF 63,
at 2; and, most recently, by May 5, *see* ECF 75, at 2. Defendants should not be rewarded for failing
to promptly comply with an order of this Court, left undisturbed by the D.C. Circuit and the
Supreme Court, with which they have had *months* to comply. On the other side of the ledger, this

---

[2] Rule 62.1 permits a party ... [i]f a timely motion is made for relief ... adjudicat ...
that the court lacks authority to grant because of an appeal that has ...
Fed. R. Civ. P. 62.1(a) (emphasis added). The
"underlying motion" that ... *Censich v. Widen-Stout*, No. 10-cv ... with th ...
5164 (W.D. Wash. Feb. 26, 2013), 2013 WL 693209, at *1. Because Defendants have filed no
such motion, the Court could deny Defendants' request for a ...
independent ground that it is procedurally improper. *See Medgraph*, 310 F.R.D. at 210
 ("... rProcedurally there is no basis for an independent, free-standing Rule 62.1 motion, asking the
district court, in the abstract as it were, to advise the court of appeals what it would do if the court
of appeals were ...). But at the very least, the substantive standard for relief that
would apply to the underlying motion—here, presumably a motion to ...
preliminary injunction—governs Defendants' request for an ...

Court has repeatedly found that implementing

injunction. *See, e.g.*, PI 12; ECF 21, at 5-8.

Nor would the public interest favor Defend

identified no legal basis to withhold legitimate past-due payments for work already completed,

with funds lawfully obligated pursuant to congressional appropriation. At most, Defendants have

contended that "the pfor wshiibc ihn lir "Dye fo cefn dwa anstts eeh an wvde

evidence," ECF 41, at 4 (citation omitted), might

payments," ECF is a question on the la3w requ Ben tlhese paymtents bce made. And

Defendants' jurisdictional argument here goes

*California*, 145 S. Ct. at 969. Absent any assertion of a good-faith basis for withholding payments

months past due for work that implementing partners have already performed, there is no plausible

public interest in permitting further delay while the ordinary appellate process proceeds.

## II.    No Basis Exists to Modify the Court's Prel

On the merits, this Court should follow th

preliminary injunction against the blanket foreign-assistance freeze. As this Court correctly

determined in its preliminary-injunction decision, Plaintiffs in this action neither "s

damages" nor as "ei'crasitss essaenrveya contrlacat claima." t h P-1R8 (qlhuoting

Crowley Gov' Gen. Seevrs. Adsmin., 38 F4lth c1099, 1107 (D.C. Cir. 2022)). Under

controlling Supreme Court and D.C. Circuit precedent, this Court entered appropriate relief to

"invalidate age—nacndy actioptns calkleen pursuantto doi thosuedi crettivse—es "rr'egardless

of any breach *Id.o*f a1 n9.y agreement."

For at least three reasons, nothing in the *DeSpaartrmtent omfe* Cou

*Education v. California* changes that result. First, the chal

a contractual obligation to pay money' along

6

Case 1:25-cv-00402-AHA    Document 76    Filed 04/25/25    Page 12 of 21

case. *Dep't of Edu.*, 145 S. Ct. 966, 968 (2025) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). Second, the binding precedents the Supreme Court applied in *California* mandate a different result here. Third, Plaintiffs bring nonstatutory claims that are not implicated at all by *California*, which was limited to the sovereign immunity. Supreme Court precedent mandates that this Court must have jurisdiction to hear these claims because the Court of Federal Claims would lack jurisdiction. *See Webster v. Doe*, 486 U.S. 592, 603-04 (1988).

**A.** The Court's Injunction Was Not an Order **Obligation to Pay Money**

For decades, the Supreme Court and D.C. Circuit have distinguished orders invalidating agency actions from those enforcing contractual rights agency's action may result in the *California*, 145 S. Ct. at 968; *see, e.g.*, *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988); *Crowley*, 38 F.4th at 1107-08. As numerous courts *California* have recognized, the *Widakuswara v. Lake*, No. 25-cv-1015, 2025 WL 1166400, at *9 (D.D.C. Apr. 22, 2025); *see, e.g.*, *Woonasquatucket River Waters, Inc. v. U.S.*, No. 25-cv-97, 2025 WL 1116157, at *15 (D.R.I. Apr. 15, 2025) (*Bowen*) ... (explaining even if the lower court 'thinks the'" precedent, quoting *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023)); *Maine v. Dep't of Agr.*, No. 25-cv-131, 2025 WL 1088946, at *19 n.8 (D. Me. Apr. Supreme Court that *Bowen* and its progeny are no longer good law, the Court follows th[e] well-established precedent" permitting even when the authority will the Agency to compel the payment of monetary payments."). This Court concluded that Defendants take action to unlawful directives, ... "including the withholding of [then] ... ing of payment

**Defendants'** assertion that *California* cabins its applicability to this case or requires claim-specific analysis lacks merit. In *California*, the Supreme Court reaffirmed *Bowen*'s central holding that an order setting aside agency action is "not an order for the disbursement" of money. *California*, 145 S. Ct. at 968." But on the facts before it, and in an emergency, interlocutory posture, the Court concluded that the government was likely to succeed in showing that the district court's order to pay past-due amounts exceeded the scope of that remedy. *Id.* The Court viewed the plaintiffs' claims under the Tucker Act as unlikely to succeed because they were "based on" and "in essence" contractual. *Id.* And it emphasized that the plaintiffs "ha[d] represented that they have adequate financial wherewithal to keep their programs running," suggesting that setting aside the action would provide a full remedy. *Id.* at 969.

*California* is nothing like this case. *California* itself is "the name of conditionally granted individual grant.'" *New York*, 2025 WL 1098966, at *2 (quoting *California v. Dep't of Educ.*, 132 F.4th 92, 96-97 (1st Cir. 2025)). There, the plaintiffs challenged the withholding of funds under individual grants, arguing that the "termination letters" were insufficiently reasoned, *id.* ¶ 116, and failed to comply with *California v. U.S. Dep't of Educ.*, No. 25-cv-10548 (D. Mass. Mar. 6, 2025), 2025 WL 725103. In particular, the plaintiffs focused on "the termination letters themselves," which they claimed "d[id] not authorize terminations." *Id.* ¶ 114. Mirroring the plaintiffs' claims, the district court's reasoning was tied to individual grants, not to categorical agency directives, as here. See *California v. U.S. Dep't of Educ.*, No. 25-cv-10548, 2025 WL 760825, at *5 (D. Mass. Mar. 10, 2025).

**This Court's** preliminary injunction was fundamentally different. The final agency actions this Court reviewed were not actions on individual contracts or grants. As

**Defendants** **have** **emp** hasizing those actions "under Court's order and redress **hasized** those actions "under Court's order and redress

**claims** **under** **any** **specific** **fu** APA. Vaccine Alliance Court; **nds** **ments**

*see also* ECF **34,** **at** **18** **(contending** **that** **P** l evant agency iffs' l

**directives** **because** **tho** s e p w e r i f i n o t a g. t. ttended this individual

**Court** **reviewed** **a** **bro** a d—enram "ealge, nc" yt hpeo IS iecyr edt iar rey c

24 memorandum and other contemporaneous directives implementing Executive Order No. 14169

**by** **suspending** **congression** in 4 al 9. That is, a upl i pe o in r *California* ed **for**

this Court preliminarily "**set[]** **aside**" action s n *California*, u l 45 S. a Ct g at 96 8—y

precisely the remedy the Supreme Court in *California* explained was permissible and that the APA

commands, *see* 5 U.S.C. § 706(2).

    **Second,** **once** **this** **Cour** t decision to issue our blanket funding **that** **th**

freeze was likely unlawful, it enjoined **that** **enforcement—wi** thout any reference to

particular awards or their terms. *See* PI 7. Unlike in *California*, this Court emphasized that it had

"**declined**" **to** **award** **relief** **with** *Id.* Rather, the Court **to** "**t**

**enjoined** **Defendants** **from** "**enforcing** **or** **giving**

24 State Department memorandum, and any other directives that implement sections 3(a) and 3(c)

of Executive Order No. 14169, by giving effect to any terminations, suspensions, or stop-work

orders issued between January 20, 2025, and February 13, 2025, for any grants, cooperative

agreeme **nts,** **or** **contracts** *Id.* f at o 47– 4 8 f o r e' **Agen** ch at ds, is n a i as g s l t y a' h n c e

necessary result of its command that Defendants give the unlawful agency directives no effect—

**the** **Court** **ordered** **that** **Defendan** t d i s draw f dow h ns af dr l **not**

**work** **completed** **pri** o *Id.* r at 48. As the F D.C. Circuit explained in rejecting **25.**"

**Defendants'** **stay** **app** l make past-due payments required Defen dants' t's **or**

**to** **do** **nothing** "**more** **than** **they** **would** **have** **had**

9

action. *See "Vaccine Advoc[ates]*, No. 25-5046, 2025 WL 621396, at *1 (D.C. of Stat... Cir. Feb. 26, 2025) (per curiam).

In sum, payment of money was enjoining agency sequence action, not its object. Thus, the Court's pr[ior] precedent like *Bowen*—which, as the Supreme Court reaffirmed in *California*, authorizes enjoining unlawful agency action even if doing [so] S. Ct. at 968 (quoting *Bowen*, 487 U.S. at 910); *see New York v. Trump*, 2025 WL 1098966, at *1 (*California* "reaffirmed" *Bowen*).

That is doubly true where, as here, the government has *never* taken the position that implementing partners could present their claims challenging the foreign-assistance freeze to the Court of Federal Claims. As the Supreme Court explained in *California*, the plaintiffs' to enforce the terms of individual immunity waiver grants fe[deral] because "the Tucker Act grants the Court of F[ederal] express or implied contract with the United States.'" *California*, 145 S. Ct. at 968 (quoting 28 U.S.C. § 1491(a)(1)); *see also id.* ("The APA's waiver of sovereign any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" (quoting 5 U.S.C. § 702)).

But the Tucker Act confers no jurisdiction to invalidate agency actions like the foreign-assistance freeze or the agency memoranda that implemented it, as Defendants have never disputed. *See Climate United Fund v. Citibank*, N.A., No. 25-cv-698, 2025 WL 1131412, at *11 (D.D.C. Apr [T]he Court of Federal Claims cannot provide the equitable relief Plaintiffs seek."). To the contrary, Defendants have co[ntended] Court of Federal Claims would lie only for individual breach-of-contract claims based on precise terms of the[] award documents," which Defendants have conten[ded]

here. ECF 34, at 212. **Defendants' position is not that Pl**
assistance freeze in the Court of Federal Claims, as the Supreme Court contemplated in *California*,
145 S. Ct. at 968; it is that no jurisdiction lies to present that claim *anywhere*. But the D.C. Circuit
**has "categorically reject[ed] the suggestion**
**jurisdiction by the Tucker Act when** *Trudeau v.* **jurisd**
S e c ' y *of* 446 F.3d 167, N 76 (D.C. Cir. 2006)

Nor could many implementing partners obtain monetary relief in the Court of Federal
Claims even in suits alleging breach of their individual awards, because that court lacks jurisdiction
over many of the relevant funding instruments. As they have done in numerous filings throughout
**this litigation, Defendants tepidly assert th**
render the instrument *categorically* incapable of supporting a monetary-payment claim for past-
**due amounts und** Mot. 6 (emphasis added). But the cases Defendants cite
confirm that many implementing partners, including subaward recipients and parties to
cooperative agreements, would likely have no avenue for relief in the Court of the Federal Claims.
In *International Technology Corp. v. Winter*, for example, the Federal Circuit rejected a pass-
through claim. 523 F.3d 1341, 1347-48 (**Fed. Cir.** *prime contractor* **"may as "ser**
such a claim against the government, and then only **if it can show** contractor is **"th**
**liable to the sub** b/c (emphasis added and quotation marks omitted). And." *while labeling an instrument a* **"'cooperative agreement[] ... is no**
**Tucker Act** *San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425, 461 (Fed.
Cl. 2019), the Federal Circuit has rejected jurisdiction over many cooperative agreements on the
**ground that they "do[] not pro** advance gas R, is"ouk's stan
*Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008); *U.S. Enrichment*

*Corp. v. United States*, 117 Fed. Cl. 548, 553 (2014).[3] No such instruments were at issue in *California*, and the fact that many implementing partners here would have no claim for breach of contract in the Court of Federal Claims underscores that the programmatic relief the Court awarded was not an "order[] to enforce" a contractual *California*, 145 S. Ct. at 968.

At bottom, "[t]he Government cannot be permitted to revise" the legal landscape, foreclosing challenges even to high-level agency actions in the only available forum. *Woonasquatucket River Watershed Council*, 2025 WL 1116157, at *14. Neither text nor precedent support that reading.

**B.    *Great-West* Authorizes the Court's Ordered Relief.**

Even if the Court's ordered relief with respect to expired awards could fairly be characterized as "enforce[ing]" a contractual *California*, 145 S. Ct. at 968 (quoting *Great-West*, 534 U.S. at 212), *Great-West* authorizes the Court to order that relief here. Even in Defendants' telling, *California* stands—at most— for the proposition that *Great-West* rather than *Bowen* governs an APA claim for past-due monetary obligations allegedly owed under Government funding instruments." Mot. 5 (quoting *Great-West* attention marks)

---

[3] In fact, the federal government is currently arguing to the Federal Circuit that grantees and by extension cooperative agreement recipients may *never* receive damages in the Court of Federal Claims equal to the funds they should have received under an award. *See* Gov. Br. at 30-32, *112 Genesee St., LLC v. United States*, No. 25-1373 (Fed. Cir. Mar. 14, 2025). In *112 Genesee Street*, the government is arguing that neither grantees nor putative grantees may obtain damages because grant funds always come with "conditions" pursuant *Id.* at 31-32. Allowing grantees or putative grantees to recover damages, according to the government, "would allow [the] recipient to change the nature of the award." *Id.* at 30. In other words, the government is arguing in this case and in many other federal districts courts that grantees and cooperative agreement recipients must seek redress in the Court of Federal Claims, while simultaneously arguing there that no redress is available in the very same Court of Federal Claims.

makes clear that this case is among those in which "a plaintiff... seeks... to obtain... money he is owed under the terms of a contract to pay funds." *Great-West*, 534 U.S. at 210.

Distinguishing *Bowen*, the Supreme Court in *Great-West* held that plan beneficiaries were not entitled to an injunction enforcing an ERISA plan's terms that required the payment of money past due under a contract. *Id.* at 210-11. But the Court also recognized important equitable exceptions that apply here and did not apply in *California. Id.* "For example, specific performance might be available to enforce an agreement to lend money, at least where other remedies would leave the plaintiff with injuries that are difficult to value; or to enforce an obligor's duty to make future monthly payments, after the obligor had consistently refused to make past payments concededly due, and thus threatened the obligee with the burden of bringing multiple damages actions." *Id.* at 211 (quoting *Bowen*, 487 U.S. at 918 (Scalia, J., dissenting)). And injunctions to enforce contractual obligations to pay money have been ordered to avoid losses that either were incalculable or would require multiple future lawsuits. *Id.*

On this Court's factual findings—assisted by the preliminary record—the funding freeze is within the exceptions recognized in *Great-West*. Defendants' blanket funding freeze, as this Court found, caused "massive disruption in the programs" and brought many implementing partners to "the brink of financial ruin." The Government itself represented to the Supreme Court that the risk of insolvency for implementing partners— including for non-parties—"might[e] it impossible for the Government to recover those funds as a practical matter." App. to Vacate at 25, *AIDS Vaccine Advoc. Coal. In California*, by contrast, the plaintiffs "ha[d] the financial wherewithal to keep them going." 436 U.S. at 372 n.2. Here, implementing partners would face "incalculable" harms from the loss of a primary—and in many cases, only—funding stream that would be difficult to value.

awarded" in a future *Great-West*, 534 U.S. at 211; *see* Pl. 3 (finding of con...

that the harms flowing from the foreign-assistance freeze "could be

withheld pursuant" *id.* at 38-40 (finding that the foreign-assistance freeze

threatened "immense irreparable harm to busi...

"jeopardized vital services to vulnerable pop...

"to me..." There is no question that implementing partners here, unlike the

grantees in *California*, would be unable to fully redress their harms through breach-of-contract

actions "in an *California*, 145 S. Ct. at 969e forum."

**C.**  **This Court's *Ultra Vires* Rulings Independently Support the Preliminary Injunction**

Finally, *California* has no bearing at all on Plaintiffs' *ultra*

*vires* claims, which independently support the preliminary injunction. The Supreme Cou...

decision in *California* rested exclusively on the scope of "...

in 5 U.S.C. § 702. 145 S. Ct. at 968. Specifically, the Court held that the federal government was

likely to succeed on its argument that the sovereign immunity waiver under 5 U.S.C. § 702 for

APA claims did not apply to the APA claims brought there, because the Tucker ...

for those particular APA claims. *California*, 145 S. Ct. at 968. That conclusion has no

relevance to Plaintiffs' claims because, "if the federal officer against whom

injunctive relief is sought, allegedly acted in excess of his legal authority, sovereign immunity

does not bar a suit." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996); *cf.*

*Ex parte Young*, 209 U.S. 123 (1908). When a federal official is acting unconstitutionally or

otherwise *ultra vires*, "his actions ... are considered individual and not sovereign actions." *Reich*,

74 F.3d at 1329. "So, there is no sovereign immunity to waive—it never attached in the first place."

*Id.*

14

Moreover, even if Defendants argued that there is some other basis on which the Tucker Act precludes Plaintiffs' nonstatutory claims, they cannot bring these claims in the Court of Federal Claims. The Federal Circuit has squarely held that the Court of Federal Claims lacks jurisdiction over separation-of-powers claims because the relevant constitutional provisions do not mandate the payment of money to the Court of Federal Claims. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). Thus, if the Tucker Act stripped this Court of power over separation-of-powers claims, that jurisdiction would mean Congress has provided no judicial forum to bring constitutional claims against the freezing or termination of a contract, grant, or other funding instrument.

Supreme Court precedent forecloses this result. Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear. *Webster*, 486 U.S. at 603. The Court "require[s] this heightened showing in part to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.* (quotation marks omitted). The Tucker Act provides no clear statement that Congress intended to deny any judicial forum for bringing a constitutional challenge to the administration. *California* was that the Tucker Act "impliedly forbids" the relief. Impliedly is the opposite of expressly.

The preliminary injunction therefore can be sustained in its entirety based on Plaintiffs' nonstatutory claims without even needing to address *California*.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion ruling and lift the partial administrative stay.

Dated: April 25, 2025

Respectfully submitted,

/s/ Daniel F. Jacobson
Daniel F. Jacobson (D.C. Bar 1016621)
John Robinson (D.C. Bar 1044072)
JACOBSON LAWYERS GROUP PLLC
1629 K Street, NW, Suite 300
Washington DC, 20006
Tel: (301) 823-1148
dan@jacobsonlawyersgroup.com

William C. Perdue (D.C. Bar 995365)*
Sally L. Pei (D.C. Bar 1030194)
Samuel M. Witten (D.C. Bar 378008)
Stephen K. Wirth (D.C. Bar 1034038)
Dana Kagan McGinley (D.C. Bar 1781561)
Allison Gardner (D.C. Bar 888303942)
Daniel Yablon (D.C. Bar 90022490)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000
stephen.wirth@arnoldporter.com

*application for admission pending

Counsel for Plaintiffs

16