**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 25-cv-402 (AHA) |
| DONALD J. TRUMP, *et al.*, | |
| *Defendants*. | |

**<u>PLAINTIFFS' OPPOSITION TO MOTION FOR INDICATIVE RULING</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................... i

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD ........................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

I.       The Court Should Decline to Exercise Its Discretion to Issue an Indicative Ruling .......... 3

II.      No Basis Exists to Modify the Court's Preliminary Injunction ........................................ 6

         A.       The Court's Injunction Was Not an Order to Enforce a Contractual Obligation to Pay Money ........................................................................................ 7

         B.       *Great-West* Authorizes the Court's Ordered Relief ............................................. 12

         C.       This Court's Constitutional and *Ultra Vires* Rulings Independently Support the Preliminary Injunction ................................................................................... 14

CONCLUSION ................................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**                                                                    Page(s)

*AIDS Vaccine Advoc. Coal. v. Dep't of State,*
   No. 25-5046, 2025 WL 621396 (D.C. Cir. Feb. 26, 2025)....................................................10

*Amarin Pharms. Ireland Ltd. v. FDA,*
   139 F. Supp. 3d 437 (D.D.C. 2015) .......................................................................................2

*\*Bowen v. Massachusetts,*
   487 U.S. 879 (1988).........................................................................7, 8, 10, 12, 13

*California v. Dep't of Educ.,*
   132 F.4th 92 (1st Cir. 2025)................................................................................................8

*California v. Dep't of Educ.,*
   No. 25-cv-10548, 2025 WL 725103 (D. Mass. Mar. 6, 2025) ..............................................8

*California v. Dep't of Educ.,*
   No. 25-cv-10548, 2025 WL 760825 (D. Mass. Mar. 10, 2025) ............................................8

*Cencich v. Miller-Stout,*
   No. 10-cv-5164, 2013 WL 693209 (W.D. Wash. Feb. 26, 2013)...........................................5

*Chamber of Com. of U.S. v. Reich,*
   74 F.3d 1322 (D.C. Cir. 1996)...........................................................................................14

*Climate United Fund v. Citibank, N.A.,*
   No. 25-cv-698, 2025 WL 1131412 (D.D.C. Apr. 16, 2025)..................................................10

*Cmty. Legal Servs. in East Palo Alto v. HHS,*
   No. 25-cv-02847, 2025 WL 1168898 (N.D. Cal. Apr. 21, 2025)...........................................5

*Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.,*
   38 F.4th 1099 (D.C. Cir. 2022)........................................................................................6, 7

*\*Dep't of Educ. v. California,*
   145 S. Ct. 966 (Apr. 4, 2025)......................................................................... *passim*

*Doe 2 v. Shanahan,*
   755 F. App'x 19 (D.C. Cir. 2019)..........................................................................................5

*Evans v. Fenty,*
   701 F. Supp. 2d 126 (D.D.C. 2010) .....................................................................................4

*\*Great-West Life & Annuity Ins. Co. v. Knudson,*
   534 U.S. 204 (2002).................................................................................7, 12, 13, 14

*Harper v. Charter Commc'ns, LLC*,
  No. 19-cv-902, 2024 WL 3901469 (E.D. Cal. Aug. 22, 2024)...................................................4

*Horne v. Flores*,
  557 U.S. 433 (2009).............................................................................................................5

*Humphrey v. Baker*,
  665 F. Supp. 23 (D.D.C. 1987).............................................................................................4

*Humphrey v. Baker*,
  848 F.2d 211 (D.C. Cir. 1988)..............................................................................................4

*International Technology Corp. v. Winter*,
  523 F.3d 1341 (Fed. Cir. 2008)...........................................................................................11

*LeBlanc v. United States*,
  50 F.3d 1025 (Fed. Cir. 1995).............................................................................................15

*Litovich v. Bank of Am. Corp.*,
  No. 20-cv-3154, 2022 WL 16856436 (S.D.N.Y. Nov. 10, 2022)...........................................4

*Maine v. Dep't of Agric.*,
  No. 25-cv-131, 2025 WL 1088946 (D. Me. Apr. 11, 2025)..................................................7

*Mallory v. Norfolk S. Ry. Co.*,
  600 U.S. 122 (2023).............................................................................................................7

*Medgraph, Inc. v. Medtronic, Inc.*,
  310 F.R.D. 208 (S.D.N.Y. 2015) .....................................................................................4, 5

*New York v. Trump*,
  No. 25-cv-39, 2025 WL 1098966 (D.R.I. Apr. 14, 2025) ...........................................5, 8, 10

*Rick's Mushroom Serv., Inc. v. United States*,
  521 F.3d 1338 (Fed. Cir. 2008)...........................................................................................11

*Rufo v. Inmates of Suffolk County Jail*,
  502 U.S. 367 (1992).............................................................................................................4

*San Antonio Hous. Auth. v. United States*,
  143 Fed. Cl. 425 (Fed. Cl. 2019) ........................................................................................11

*Silbersher v. Allergan Inc.*,
  No. 18-cv-3018, 2024 WL 2044626 (N.D. Cal. May 7, 2024)...............................................4

*Talley v. Pa. Dep't of Corr.*,
  No. 2:21-cv-298, 2024 WL 5001458 (W.D. Pa. Dec. 6, 2024) ...........................................3, 4

*Tootle v. Sec'y of the Navy*,
446 F.3d 167 (D.C. Cir. 2006) ...........................................................................................11

*U.S. Enrichment Corp. v. United States*,
117 Fed. Cl. 548 (2014) .....................................................................................................11

*United States v. McKnight*,
No. 20-11859, 2022 WL 4692129 (11th Cir. Oct. 3, 2022) ................................................2

*Webster v. Doe*,
486 U.S. 592 (1988).......................................................................................................7, 15

*Widakuswara v. Lake*,
No. 25-cv-1015, 2025 WL 1166400 (D.D.C. Apr. 22, 2025)...............................................7

*Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*,
No. 25-cv-97, 2025 WL 1116157 (D.R.I. Apr. 15, 2025) ................................................7, 12

*Ex parte Young*,
209 U.S. 123 (1908)...........................................................................................................14

**Statutes**

5 U.S.C.
§ 702.................................................................................................................................10
§ 706(2).............................................................................................................................9

28 U.S.C. § 1491(a)(1)...............................................................................................................10

**Rules**

Federal Rule of Civil Procedure 62.1 ...................................................................................2, 3, 5

## INTRODUCTION

This Court's temporary restraining order, enforcement orders, and preliminary injunction required Defendants to make payments already due and owing to USAID and State Department implementing partners. This Court granted this relief not because of any contract-by-contract determination, but rather because it held that Defendants likely violated the Administrative Procedure Act and the Constitution by withholding those payments pursuant to an unlawful blanket freeze on foreign-assistance funding. Ordering those over-due payments was a necessary consequence of heartland APA relief—relief that had nothing to do with the terms of any funding award and enforced no contractual obligations. And as this Court has repeatedly found, implementing partners face existential harm absent the relief the Court ordered. Defendants have already challenged those payment obligations in the Supreme Court, on the same jurisdictional grounds they press here, and lost. None of that has changed.

What has changed, in Defendants' view, is that the Supreme Court has since issued a three-page stay order in another case, which Defendants contend abrogates decades of D.C. Circuit precedent and supersedes the D.C. Circuit's and the Supreme Court's decisions in this very case, which did not accept the same jurisdictional arguments Defendants re-raise here. *See Dep't of Educ. v. California*, 145 S. Ct. 966 (Apr. 4, 2025). So, Defendants urge, this Court should revisit an argument now rejected in this case at every level of the federal judiciary, short-circuit the ordinary appellate process, and issue an indicative ruling that would dissolve payment obligations that Defendants have resisted since February.

The Court should not do so. Whether to issue an indicative ruling is at the Court's discretion, and the Court should decline to exercise that discretion here. Defendants simply repeat arguments they have long made in this case; they can point to no significant change in binding

precedent; the D.C. Circuit is as well-suited as this Court to address their legal arguments; and the equities weigh heavily against Defendants' motion.

In any event, Defendants overread *California*. That decision applies, and does not overrule, the binding precedents this Court relied on in correctly determining that Plaintiffs' claims fall outside the Court of Federal Claims' exclusive jurisdiction. And the facts in *California* differed from those here in every relevant respect, including the *California* plaintiffs' reliance on the terms of individual awards, the balance of equities, and the availability of relief in an alternative forum.

Finally, *California* addressed only the APA's waiver of sovereign immunity, which has no bearing on Plaintiffs' nonstatutory claims. And because the Court of Federal Claims would lack jurisdiction over Plaintiffs' constitutional claims, Defendants' theory would mean Plaintiffs would have no forum to bring these constitutional claims, an outcome that Supreme Court precedent forecloses. Defendants' motion should be denied and the Court's partial stay should be lifted.

## LEGAL STANDARD

"If a timely motion is made for relief that the court lacks authority to grant because of an appeal," Rule 62.1 permits the Court to "(1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Civ. P. 62.1. "Discretion to issue an indicative ruling is not an obligation to do so." *United States v. McKnight*, No. 20-11859, 2022 WL 4692129, at *3 (11th Cir. Oct. 3, 2022). Courts in this District thus have exercised their discretion not to issue indicative rulings where the circumstances do not warrant it. *See, e.g.*, *Amarin Pharms. Ireland Ltd. v. FDA*, 139 F. Supp. 3d 437, 439 (D.D.C. 2015).

## ARGUMENT

I.    **The Court Should Decline to Exercise Its Discretion to Issue an Indicative Ruling**

The Court should decline to revisit Defendants' renewed jurisdictional argument while Defendants' appeal on that issue remains pending. "A district court's decision to make an indicative ruling is discretionary." *Talley v. Pa. Dep't of Corr.*, No. 2:21-cv-298, 2024 WL 5001458, at *3 (W.D. Pa. Dec. 6, 2024); *see also* Fed. R. Civ. P. 62.1(a) (permitting district courts, in the alternative, to "defer considering" a motion pending appeal or "deny the motion" outright). For at least four related reasons, the Court should decline to issue an indicative ruling here.

*First*, Defendants have already presented their jurisdictional argument at every level of the federal judiciary, and none has found that it warrants interim relief in this case outside the ordinary appellate process. In asking the D.C. Circuit and the Supreme Court to stay and vacate the same payment requirements they challenge here, Defendants asserted, as they do here, that the Court's "order requiring the government to make specific contractual or grant-based payments exceeds the court's jurisdiction." App. to Vacate at 13, *Dep't of State v. AIDS Vaccine Advoc. Coal.*, No. 24A831 (U.S. Feb. 26, 2025); *see* Emergency Mot. at 16, *AIDS Vaccine Advoc. Coal. v. Dep't of State*, Nos. 25-5046, 25-5047 (D.C. Cir. Feb. 26, 2025) (same). The Supreme Court denied relief. 145 S. Ct. 753 (Mar. 5, 2025). "Given that the deadline in the challenged order ha[d] … passed," the Supreme Court directed this Court to clarify the timeline for compliance. *Id.* But it left undisturbed the substantive relief this Court ordered: that the government must "issue payments for a portion of the paused disbursements—those owed for work already completed before the issuance of the District Court's temporary restraining order." *Id.* This Court, too, has repeatedly rejected Defendants' jurisdictional arguments. *See, e.g.*, Mem. Op. & Order Granting Prelim. Inj. (PI), ECF 60, at 15-20; ECF 41, at 5-6. There is no reason to give Defendants, belatedly, "another

bite at the apple" through an indicative ruling.[1] *Litovich v. Bank of Am. Corp.*, No. 20-cv-3154, 2022 WL 16856436, at *2 (S.D.N.Y. Nov. 10, 2022).

*Second*, purported legal developments generally are no basis for an indicative ruling where the pending appeal raises the same legal issue. The court of appeals is as well-positioned as this Court to address the effect, if any, of the Supreme Court's order in *California*. District courts regularly deny requests to issue an indicative ruling where, as here, one party claims that a development in case law undermines the district court's original ruling. *See, e.g.*, *Medgraph, Inc. v. Medtronic, Inc.*, 310 F.R.D. 208, 211 (S.D.N.Y. 2015) ("The Court of Appeals does not need this Court's advice or opinion on" the effect of a recent appellate decision); *Silbersher v. Allergan Inc.*, No. 18-cv-3018, 2024 WL 2044626, at *8 (N.D. Cal. May 7, 2024) ("the Ninth Circuit … is well able to evaluate the legal implications" of a new decision); *Harper v. Charter Commc'ns, LLC*, No. 19-cv-902, 2024 WL 3901469, at *2 (E.D. Cal. Aug. 22, 2024) (similar); *Talley*, 2024 WL 5001458, at *3 (similar). And the court of appeals is better positioned than this Court to determine whether circuit precedent "has been impliedly overruled." *Humphrey v. Baker*, 665 F. Supp. 23, 27 (D.D.C. 1987), *aff'd*, 848 F.2d 211 (D.C. Cir. 1988).

*Third*, to the extent that a development in case law may form the basis for an indicative ruling, it must be a "significant" change in the law. *Evans v. Fenty*, 701 F. Supp. 2d 126, 156-57 (D.D.C. 2010). And the "party seeking modification" of an injunction bears the burden to show that the law has significantly changed. *Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 381 (1992). Defendants cannot meet that burden here. As other courts already have determined,

---

[1] Defendants also argued to the Supreme Court, to no avail, that this Court's order was overbroad to the extent it required payments to nonparties. *See* App. to Vacate at 14-15, *AIDS Vaccine Advoc. Coal.*; *see also* PI 44 n.20 ("The Court notes that Defendants have preserved the government's frequent argument that relief under the APA should apply only to the particular plaintiffs before the Court. As the Court observed at the preliminary injunction hearing, this argument has not been endorsed by the Supreme Court.").

*California* "does not represent a significant change in the law." *Cmty. Legal Servs. in East Palo Alto v. HHS*, No. 25-cv-02847, 2025 WL 1168898, at *3 (N.D. Cal. Apr. 21, 2025); *see also New York v. Trump*, No. 25-cv-39, 2025 WL 1098966, at *2 (D.R.I. Apr. 14, 2025).

*Fourth*, dissolving an injunction is a form of equitable relief,[2] and the party seeking that relief must show, among the other equitable factors, that "continued enforcement of the injunction would be 'detrimental to the public interest.'" *Doe 2 v. Shanahan*, 755 F. App'x 19, 22 (D.C. Cir. 2019) (quoting *Horne v. Flores*, 557 U.S. 433, 447 (2009)). The equities here weigh against Defendants. Apart from a brief administrative stay, Defendants have remained under an obligation to complete past-due payments for work completed prior to the Court's temporary restraining order since February 13. *See* ECF 41, at 3 (explaining that the Court's enforcement order was "in no way limiting the scope of the TRO or modifying its terms" (citation omitted)). In the nearly three months that followed, Defendants repeatedly represented to the Court that they would promptly complete those payments—first on March 6, "within 2 weeks for State and 30-45 business days for USAID," ECF 50, at 13; then by March 21, *see* ECF 61, at 11; then by April 29, *see* ECF 63, at 2; and, most recently, by May 5, *see* ECF 75, at 2. Defendants should not be rewarded for failing to promptly comply with an order of this Court, left undisturbed by the D.C. Circuit and the Supreme Court, with which they have had *months* to comply. On the other side of the ledger, this

---

[2] Rule 62.1 permits a party to seek an indicative ruling only "*[i]f a timely motion is made for relief that the court lacks authority to grant* because of an appeal that has been docketed and is pending." Fed. R. Civ. P. 62.1(a) (emphasis added). The Rule's text thus requires that a party have a separate "underlying motion" that is "pending" with the district court. *Cenich v. Miller-Stout*, No. 10-cv-5164 (W.D. Wash. Feb. 26, 2013), 2013 WL 693209, at *1. Because Defendants have filed no such motion, the Court could deny Defendants' request for an indicative ruling on the separate and independent ground that it is procedurally improper. *See Medgraph*, 310 F.R.D. at 210 ("[P]rocedurally there is no basis for an independent, free-standing Rule 62.1 motion, asking the district court, in the abstract as it were, to advise the court of appeals what it would do if the court of appeals were to remand the case."). But at the very least, the substantive standard for relief that would apply to the underlying motion—here, presumably a motion to partially dissolve the Court's preliminary injunction—governs Defendants' request for an indicative ruling.

Court has repeatedly found that implementing partners face "immense harm" without an injunction. *See, e.g.*, PI 12; ECF 21, at 5-8.

Nor would the public interest favor Defendants' requested relief. To date, Defendants have identified no legal basis to withhold legitimate past-due payments for work already completed, with funds lawfully obligated pursuant to congressional appropriation. At most, Defendants have contended that "the possibility of waste and fraud," for which "Defendants have not adduced any evidence," ECF 41, at 4 (citation omitted), might result in some "delay in processing the relevant payments," ECF 39, at 3. But there is no question the law requires these payments be made. And Defendants' jurisdictional argument here goes only to which court is "an appropriate forum." *California*, 145 S. Ct. at 969. Absent any assertion of a good-faith basis for withholding payments months past due for work that implementing partners have already performed, there is no plausible public interest in permitting further delay while the ordinary appellate process proceeds.

## II.    No Basis Exists to Modify the Court's Preliminary Injunction

On the merits, this Court should follow the Supreme Court's lead and decline to disturb its preliminary injunction against the blanket foreign-assistance freeze. As this Court correctly determined in its preliminary-injunction decision, Plaintiffs in this action neither "seek money damages" nor assert any claim that "'is *at its essence* a contract claim.'" PI 16-18 (quoting *Crowley Gov't Servs., Inc. v. Gen. Servs. Admin.*, 38 F.4th 1099, 1107 (D.C. Cir. 2022)). Under controlling Supreme Court and D.C. Circuit precedent, this Court entered appropriate relief to "invalidate agency policy directives"—and actions taken pursuant to those directives—"regardless of any breach of any agreement." *Id.* at 19.

For at least three reasons, nothing in the Supreme Court's stay decision in *Department of Education v. California* changes that result. First, the challenged relief is not an "order[] 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered" in that

case. *Dep't of Educ. v. California*, 145 S. Ct. 966, 968 (2025) (quoting *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). Second, the binding precedents the Supreme Court applied in *California* mandate a different result here. Third, Plaintiffs bring nonstatutory claims that are not implicated at all by *California*, which was limited to the scope of the APA's waiver of sovereign immunity. Supreme Court precedent mandates that this Court must have jurisdiction to hear these claims because the Court of Federal Claims would lack jurisdiction. *See Webster v. Doe*, 486 U.S. 592, 603-04 (1988).

## A.    The Court's Injunction Was Not an Order to Enforce a Contractual Obligation to Pay Money

For decades, the Supreme Court and D.C. Circuit have distinguished orders invalidating agency actions from those enforcing contractual rights, even where "an order setting aside an agency's action may result in the disbursement of funds" due under a contract. *California*, 145 S. Ct. at 968; *see, e.g.*, *Bowen v. Massachusetts*, 487 U.S. 879, 893 (1988); *Crowley*, 38 F.4th at 1107-08. As numerous courts have recognized, "*California* d[id] not change the governing law." *Widakuswara v. Lake*, No. 25-cv-1015, 2025 WL 1166400, at *9 (D.D.C. Apr. 22, 2025); *see, e.g.*, *Woonasquatucket River Watershed Council v. U.S. Dep't of Agric.*, No. 25-cv-97, 2025 WL 1116157, at *15 (D.R.I. Apr. 15, 2025) (explaining that "the Court cannot disregard *Bowen* … even if the lower court 'thinks the precedent is in tension with [a more recent decision]'" (quoting *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023)); *Maine v. Dep't of Agric.*, No. 25-cv-131, 2025 WL 1088946, at *19 n.8 (D. Me. Apr. 11, 2025) ("Absent clear guidance from the Supreme Court that *Bowen* and its progeny are no longer good law, the Court follows th[e] well-established precedent" permitting relief under the APA even when that "will likely result in monetary payments."). This Court correctly applied that governing law to invalidate Defendants' unlawful "directives," "including the withholding of payment that flowed from [them]." PI 17, 19.

Defendants' assertion that the stay decision in *California* displaced this Court's careful, claim-specific analysis lacks merit. In *California*, the Supreme Court reaffirmed *Bowen*'s central holding that an order setting aside agency action under the APA may permissibly "result in the disbursement of funds." *California*, 145 S. Ct. at 968. But on the facts before it, and in an emergency, interlocutory posture, the Court concluded that the government was likely to succeed in showing that the district court's order to enforce payment obligations in individual grants exceeded the scope of that remedy. *Id.* The Court viewed the plaintiffs' claims as falling within the Tucker Act's jurisdictional grant because they were "based on" federal contracts. *Id.* And it emphasized that the plaintiffs "ha[d] represented in th[e] litigation that they ha[d] the financial wherewithal to keep their programs running," meaning that "suit in an appropriate forum" would provide a full remedy. *Id.* at 969.

*California* is nothing like this case. "In *California*," the "'terms and conditions of each individual grant award' were 'at issue.'" *New York*, 2025 WL 1098966, at *2 (quoting *California v. Dep't of Educ.*, 132 F.4th 92, 96-97 (1st Cir. 2025)). There, the plaintiffs challenged the withholding of funds under individual grants, complaining that "boilerplate, uniform termination letters" were insufficiently reasoned and failed to comport with grant terms. Complaint ¶¶ 3, 116, *California v. Dep't of Educ.*, No. 25-cv-10548 (D. Mass. Mar. 6, 2025), 2025 WL 725103. In particular, the plaintiffs focused on "the terms and conditions of the TQP and SEED grant awards," which they claimed "d[id] not authorize termination on th[e] [asserted] grounds." *Id.* ¶ 14. Mirroring the plaintiffs' claims, the district court's remedy was directed to individual grants, not to categorical agency directives, as here. *See California v. Dep't of Educ.*, No. 25-cv-10548, 2025 WL 760825, at *5 (D. Mass. Mar. 10, 2025).

This Court's preliminary injunction was fundamentally different. First and foremost, the final agency actions this Court reviewed were not actions on individual contracts or grants. As

Defendants have emphasized, the Court's order enjoining those actions "did not address or resolve claims under any specific funding instruments." App. to Vacate at 20, *AIDS Vaccine Advoc. Coal.*; *see also* ECF 34, at 18 (contending that Plaintiffs' lacked standing to challenge high-level agency directives because those were not "individual instrument-specific agency decisions"). Instead, this Court reviewed a broader "agency policy directive[]"—namely, "the Secretary of State's January 24 memorandum and other contemporaneous directives implementing Executive Order No. 14169 by suspending congressionally apportioned foreign aid." PI 14, 19. That is, unlike in *California*, this Court preliminarily "set[] aside" unlawful agency actions, *California*, 145 S. Ct. at 968— precisely the remedy the Supreme Court in *California* explained was permissible and that the APA commands, *see* 5 U.S.C. § 706(2).

Second, once this Court determined that the agencies' decision to issue a blanket funding freeze was likely unlawful, it enjoined that action's enforcement—without any reference to particular awards or their terms. *See* PI 7. Unlike in *California*, this Court emphasized that it had "declined" to award relief with respect to "the terms of individual contracts." *Id.* Rather, the Court enjoined Defendants from "enforcing or giving effect to sections 1, 5, 7, 8, and 9 of the January 24 State Department memorandum, and any other directives that implement sections 3(a) and 3(c) of Executive Order No. 14169, by giving effect to any terminations, suspensions, or stop-work orders issued between January 20, 2025, and February 13, 2025, for any grants, cooperative agreements, or contracts for foreign assistance." *Id.* at 47-48. "Accordingly"—that is, as a necessary result of its command that Defendants give the unlawful agency directives no effect— the Court ordered that Defendants "shall not withhold payments or letter of credit drawdowns for work completed prior to February 13, 2025." *Id.* at 48. As the D.C. Circuit explained in rejecting Defendants' stay application, this Court's order to make past-due payments required Defendants to do nothing "more than they would have had to do absent the temporarily restrained agency

9

actions." *AIDS Vaccine Advoc. Coal. v. Dep't of State*, No. 25-5046, 2025 WL 621396, at *1 (D.C. Cir. Feb. 26, 2025) (per curiam).

In sum, payment of money was a consequence of this Court's order enjoining agency action, not its object. Thus, the Court's preliminary injunction fits comfortably within APA precedent like *Bowen*—which, as the Supreme Court reaffirmed in *California*, authorizes enjoining unlawful agency action even if doing so "may result in the disbursement of funds." 145 S. Ct. at 968 (quoting *Bowen*, 487 U.S. at 910); *see New York v. Trump*, 2025 WL 1098966, at *1 (*California* "reaffirmed" *Bowen*).

That is doubly true where, as here, the government has *never* taken the position that implementing partners could present their claims challenging the foreign-assistance freeze to the Court of Federal Claims. As the Supreme Court explained in *California*, the plaintiffs' efforts there to enforce the terms of individual grants fell outside the APA's sovereign-immunity waiver because "the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" *California*, 145 S. Ct. at 968 (quoting 28 U.S.C. § 1491(a)(1)); *see also id.* ("The APA's waiver of sovereign immunity does not apply 'if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.'" (quoting 5 U.S.C. § 702)).

But the Tucker Act confers no jurisdiction to invalidate agency actions like the foreign-assistance freeze or the agency memoranda that implemented it, as Defendants have never disputed. *See Climate United Fund v. Citibank*, N.A., No. 25-cv-698, 2025 WL 1131412, at *11 (D.D.C. Apr. 16, 2025) ("[T]he Court of Federal Claims cannot provide the equitable relief Plaintiffs seek."). To the contrary, Defendants have consistently maintained that jurisdiction in the Court of Federal Claims would lie only for individual breach-of-contract claims based on "the precise terms of the[] award documents," which Defendants have contended are not yet "ripe[]"

10

here. ECF 34, at 212. Defendants' position is not that Plaintiffs should have challenged the foreign-assistance freeze in the Court of Federal Claims, as the Supreme Court contemplated in *California*, 145 S. Ct. at 968; it is that no jurisdiction lies to present that claim *anywhere*. But the D.C. Circuit has "categorically reject[ed] the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims." *Tootle v. Sec'y of the Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006)

Nor could many implementing partners obtain monetary relief in the Court of Federal Claims even in suits alleging breach of their individual awards, because that court lacks jurisdiction over many of the relevant funding instruments. As they have done in numerous filings throughout this litigation, Defendants tepidly assert that the label assigned to a funding instrument "does not render the instrument *categorically* incapable of supporting a monetary-payment claim for past-due amounts under the Tucker Act." Mot. 6 (emphasis added). But the cases Defendants cite confirm that many implementing partners, including subaward recipients and parties to cooperative agreements, would likely have no avenue for relief in the Court of the Federal Claims. In *International Technology Corp. v. Winter*, for example, the Federal Circuit rejected a pass-through claim. 523 F.3d 1341, 1347-48 (Fed. Cir. 2008). Only a "*prime contractor*" may assert such a claim against the government, and then only if it can show that "the prime contractor is liable to the subcontractor for damages." *Id.* (emphasis added and quotation marks omitted). And while labeling an instrument a "'cooperative agreement[] … is not dispositive when determining Tucker Act jurisdiction," *San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425, 461 (Fed. Cl. 2019), the Federal Circuit has rejected jurisdiction over many cooperative agreements on the ground that they "do[] not provide a substantive right to recover money-damages," *e.g.*, *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008); *U.S. Enrichment*

*Corp. v. United States*, 117 Fed. Cl. 548, 553 (2014).[3] No such instruments were at issue in *California*, and the fact that many implementing partners here would have no claim for breach of contract in the Court of Federal Claims underscores that the programmatic relief the Court awarded was not an "order[] to enforce a contractual obligation to pay money." *California*, 145 S. Ct. at 968.

At bottom, "[t]he Government overreads the three-page stay order" in *California* to rewrite the legal landscape, foreclosing challenges even to high-level agency actions in the only available forum. *Woonasquatucket River Watershed Council*, 2025 WL 1116157, at *14. Neither the order's text nor precedent support that reading.

## B.    *Great-West* Authorizes the Court's Ordered Relief

Even if the Court's ordered relief with respect to the unlawful funding freeze were properly characterized as "enforce[ing] a contractual obligation to pay money," *California*, 145 S. Ct. at 968 (quoting *Great-West*, 534 U.S. at 212), the Supreme Court's decision in *Great-West* authorizes that relief here. Even in Defendants' telling, *California* stands—at most—for the proposition "that *Great-West* rather than *Bowen* governs an APA claim for past-due monetary obligations allegedly owed under Government funding instruments." Mot. 5 (quotation marks omitted). And *Great-West*

---

[3] In fact, the federal government is currently arguing to the Federal Circuit that grantees and by extension cooperative agreement recipients may *never* receive damages in the Court of Federal Claims equal to the funds they should have received under an award. *See* Gov. Br. at 30-32, *112 Genesee St., LLC v. United States*, No. 25-1373 (Fed. Cir. Mar. 14, 2025). In *112 Genesee Street*, the government is arguing that neither grantees nor putative grantees may obtain damages because grant funds always come with "conditions" pursuant to a "strings attached" agreement. *Id.* at 31-32. Allowing grantees or putative grantees to recover damages, according to the government, "would allow [the recipients] to avoid the strings-attached nature of the" award. *Id.* at 33. In other words, the government is arguing in this case and in many other federal districts courts that grantees and cooperative agreement recipients must seek redress in the Court of Federal Claims, while simultaneously arguing there that no redress is available in the very same Court of Federal Claims.

makes clear that this case is among those in which a court may "decree specific performance of a contract to transfer funds." *Great-West*, 534 U.S. at 211.

Distinguishing *Bowen*, the Supreme Court in *Great-West* held that plan beneficiaries were not entitled to an injunction enforcing an ERISA plan's terms because "an injunction to compel the payment of money past due under a contract … was not typically available in equity." *Id.* at 210-11. But the Court also recognized important exceptions to that "typical[]" rule—exceptions that apply here and did not apply in *California*. *Id.* "For example, specific performance might be available to enforce an agreement to lend money 'when the unavailability of alternative financing would leave the plaintiff with injuries that are difficult to value; or to enforce an obligor's duty to make future monthly payments, after the obligor had consistently refused to make past payments concededly due, and thus threatened the obligee with the burden of bringing multiple damages actions'" *Id.* at 211 (quoting *Bowen*, 487 U.S. at 918 (Scalia, J., dissenting)). And injunctions to enforce contractual obligations to pay money were available in suits that "sought to prevent future losses that either were incalculable or would be greater than the sum awarded." *Id.*

On this Court's factual findings, the preliminary injunction against the foreign-assistance freeze is within the exceptions recognized in *Great-West*. Defendants' blanket foreign-assistance freeze, as this Court found, caused "massive disruption of a whole industry or sector," bringing many implementing partners to "the brink of shuttering entirely." PI 42. Indeed, the government itself represented to the Supreme Court that the risk of insolvency for implementing partners— including for non-parties—might "mak[e] it impossible for the Government to recover those funds as a practical matter." App. to Vacate at 25, *AIDS Vaccine Advoc. Coal.* In *California*, by contrast, the plaintiffs "ha[d] the financial wherewithal to keep their programs running." 145 S. Ct. at 969. Here, implementing partners would face "incalculable" harms from being starved of their primary—and in many cases, only—funding stream that would be far "greater than the sum

awarded" in a future action for breach of contract. *Great-West*, 534 U.S. at 211; *see* PI 17 (finding that the harms flowing from the foreign-assistance freeze "could be far greater than the amount withheld pursuant to agency policy"); *id.* at 38-40 (finding that the foreign-assistance freeze threatened "immense irreparable harm to businesses and organizations across the country," "jeopardized vital services to vulnerable populations," and left some implementing partners unable "to meet financial obligations"). There is no question that implementing partners here, unlike the grantees in *California*, would be unable to fully redress their harms through breach-of-contract actions "in an appropriate forum." *California*, 145 S. Ct. at 969.

### C. This Court's Constitutional and *Ultra Vires* Rulings Independently Support the Preliminary Injunction

Finally, *California* has no bearing at all on Plaintiffs' nonstatutory constitutional and *ultra vires* claims, which independently support the preliminary injunction. The Supreme Court's decision in *California* rested exclusively on the scope of "the APA's limited waiver of immunity" in 5 U.S.C. § 702. 145 S. Ct. at 968. Specifically, the Court held that the federal government was likely to succeed on its argument that the sovereign immunity waiver under 5 U.S.C. § 702 for APA claims did not apply to the APA claims brought there, because the Tucker Act "impliedly forbids" those particular APA claims. *California*, 145 S. Ct. at 968. That conclusion has no relevance to Plaintiffs' nonstatutory claims because, "if the federal officer, against whom injunctive relief is sought, allegedly acted in excess of his legal authority, sovereign immunity does not bar a suit." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996); *cf. Ex parte Young*, 209 U.S. 123 (1908). When a federal official is acting unconstitutionally or otherwise *ultra vires*, "his actions … are considered individual and not sovereign actions." *Reich*, 74 F.3d at 1329. "So, there is no sovereign immunity to waive—it never attached in the first place." *Id.*

14

Moreover, even if Defendants argued that there is some other basis on which the Tucker Act precludes Plaintiffs' nonstatutory claims, they would be wrong because Plaintiffs cannot bring these claims in the Court of Federal Claims. The Federal Circuit has squarely held that the Court of Federal Claims lacks jurisdiction over separation-of-powers claims because the relevant constitutional provisions are not "money-mandating" as required to fall under the Court of Federal Claims' jurisdiction. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995). Thus, if the Tucker Act stripped this Court of jurisdiction to hear Plaintiffs' separation-of-powers claims, that would mean Congress has provided no judicial forum to bring constitutional claims against the freezing or termination of a contract, grant, or other funding instrument.

Supreme Court precedent forecloses this outcome. The Court has held that "where Congress intends to preclude judicial review of constitutional claims its intent to do so must be clear." *Webster*, 486 U.S. at 603. The Court "require[s] this heightened showing in part to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." *Id.* (quotation marks omitted). The Tucker Act provides no clear statement that Congress intended to deny any judicial forum for bringing a constitutional challenge to the administration of a grant. To the contrary, Defendants' theory in *California* was that the Tucker Act "impliedly forbids" the APA claims brought there. Impliedly is the opposite of expressly.

The preliminary injunction therefore can be sustained in its entirety based on Plaintiffs' nonstatutory claims without even needing to address *California*.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for an indicative ruling and lift the partial administrative stay.

Dated: April 25, 2025                    Respectfully submitted,

                                         */s/ Daniel F. Jacobson*
                                         Daniel F. Jacobson (D.C. Bar 1016621)
                                         John Robinson (D.C. Bar 1044072)
                                         JACOBSON LAWYERS GROUP PLLC
                                         1629 K Street, NW, Suite 300
                                         Washington DC, 20006
                                         Tel: (301) 823-1148
                                         dan@jacobsonlawyersgroup.com

                                         William C. Perdue (D.C. Bar 995365)*
                                         Sally L. Pei (D.C. Bar 1030194)
                                         Samuel M. Witten (D.C. Bar 378008)
                                         Stephen K. Wirth (D.C. Bar 1034038)
                                         Dana Kagan McGinley (D.C. Bar 1781561)
                                         Allison Gardner (D.C. Bar 888303942)
                                         Daniel Yablon (D.C. Bar 90022490)
                                         ARNOLD & PORTER KAYE SCHOLER LLP
                                         601 Massachusetts Ave., NW
                                         Washington, DC 20001-3743
                                         Tel: (202) 942-5000
                                         stephen.wirth@arnoldporter.com

                                         *application for admission pending

                                         *Counsel for Plaintiffs*