# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF STATE, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-00400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-00402 (AHA) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR INDICATIVE RULING REGARDING PRELIMINARY INJUNCTION**

Unless stayed or lifted, the past-payments provision of this Court's preliminary injunction would continue to "compel" Defendants "to pay . . . sum[s] of money" to non-Plaintiffs for work completed prior to February 13, 2025. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210-12 (2002). But "claim[s] for money due and owing" belong "quintessentially" in "an action at law," not in the instant suits purporting to invoke the waiver of sovereign immunity in 5 U.S.C. § 702 for relief "other than money damages." *Id.* In *Department of Education v. California*, 145 S. Ct. 966 (April 4, 2025) (per curiam), the Supreme Court instructed that *Knudson*, rather than *Bowen v. Massachusetts*, 487 U.S. 879 (1988), controls when the APA plaintiff seeks an order requiring (among other things) payments of past-due federal funds under a grant.

But this Court's conclusion and decree regarding past payments is predicated on application of *Bowen*. *See* Order, No. 25-cv-400 (Doc. 60), No. 25-cv-402 (Doc. 60), 2025 WL 752378 (D.D.C. Mar. 10, 2025), *appeals docketed* (D.C. Cir. Nos. 25-5097, 25-5098). Accordingly, the Court should issue an indicative ruling under Rule 62.1 that, in light of *California*, if the D.C. Circuit returned jurisdiction over the preliminary injunction to this Court, it would dissolve for lack of subject-matter jurisdiction the past-payments provision of the preliminary injunction as to non-Plaintiffs. That provision is very similar to the past-payments requirement of the order stayed in *California*. *See* 145 S. Ct. at 968 ("[T]he Government is likely to succeed in showing the District Court lacked *jurisdiction to order the payment of money* under the APA.") (emphasis added). Plaintiffs' opposition submissions do nothing to change that underlying similarity.

To be clear, the Government is committed to paying for work that was properly completed, so long as the claims are legitimate. Hence, notwithstanding the administrative stay of the challenged provision in place pending this Court's disposition of the indicative ruling motion, Defendants continue to process payments—both to Plaintiffs and to non-Plaintiffs—for work performed before February 13, 2025 (the date of this Court's temporary restraining order). For example, over the five business days April 24-30, 2025, Defendants processed 1,379 payments to non-Plaintiffs. And the value remaining to be processed correspondingly continues to fall. But

1

given the *California* ruling, any disputes that may arise about those payments do not belong within the instant APA suits, and should instead be resolved in the appropriate forum for such contract-based monetary payment claims, without exposing Defendants to the risk of contempt proceedings predicated on the preliminary injunction as currently framed.

**1.** Plaintiffs maintain (AVAC Opp. 6, GHC Opp. 10) that the monetary-payment requirement for past work is an ancillary "consequence" of traditional APA nonmonetary relief, but that position simply repeats the errors of the lower courts reined in by *California.* There, the District Court's temporary restraining order "enjoined" Government defendants "from implementing . . . the termination of any previously awarded TQP or SEED grants for recipients in Plaintiff States . . . and any other agency actions implementing such terminations, such as suspension or *withholding of any funds* approved and obligated for the grants[.]" No. 25-cv-10548, 2025 WL 760825 at *5 (D. Mass. Mar. 10, 2025) (emphasis added). Denying a stay, 132 F.4th 92 (1st Cir. 2025), the First Circuit concluded that the provisional remedy was permissible under the APA, relying on *Bowen*: The panel understood the challenge as not "seek[ing] damages owed on a contract or compensation for past wrongs" but rather "want[ing]" the agency "to once again make available already-appropriated federal funds for existing grant recipients." *Id.* at 97. But the Supreme Court *rejected* the First Circuit's understanding of *Bowen*, instead concluding that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered here. Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on 'any express or implied contract with the United States.'" 145 S. Ct. at 968 (citation omitted). The Supreme Court's conclusion equally invalidates the preliminary injunction provision as to past payments on which Defendants seek an indicative ruling.

Also mistaken is Plaintiffs' effort (AVAC Opp. 9-10) to depict *California* as involving individual grant terminations while painting the claims underpinning the preliminary injunction here as targeted at "the blanket foreign-assistance freeze." When it comes to the past-payments provision on which Defendants seek an indicative ruling, that is a distinction without a difference.

In both settings, the fundamental question is whether federal agencies are required to continue making payments under the specific terms of the relevant funding instruments, and the instant Plaintiffs assert that withholding such payments is unlawful—*especially* as to payments for work completed before issuance of the temporary restraining order. "[T]he APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money,'" *California*, 145 S. Ct. at 968, regardless whether that order is entered in an action disputing a grant termination or one disputing a withholding of payment—the type of relief provided is the same, and it is equally precluded in both. Any such contractual challenge rests with the Court of Federal Claims under the Tucker Act. *Id.*

GHC Plaintiffs further err in asserting (GHC Opp. 13-14) that the past-payments provision can be recharacterized and validated as fitting within an exception the *Knudson* Court recognized to its general rule that "suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages.'" 534 U.S. at 210 (quoting *Bowen* 487 U.S. at 918-19 (Scalia, J., dissenting)). That exception, for "rare cases in which a court of equity would decree specific performance of a contract to transfer funds," is confined to "suits that . . . sought *to prevent future losses* that either were incalculable or would be greater than the sum awarded." *Id.* at 211 (emphasis added). But for purposes of this motion, even assuming, *arguendo*, that *some* aspects of the relief Plaintiffs have "sought" in the instant suits aims "to prevent future losses," the *past*-payment decree is not directed to "prevent[ion]" of "*future* losses." Conflating backward-looking with forward-looking relief as this argument does is incorrect.[1]

---

[1] Having sought and obtained the past-payment provision in the preliminary injunction, Plaintiffs cannot classify themselves as litigants *not* "seeking only forward-looking relief," whose "past injuries" would be "relevant only for their predictive value." *Cf. Murthy v. Missouri*, 603 U.S. 43, 59 (2024). Rather, as another District Court put it when denying an injunction: Plaintiffs "want[] the Government to keep paying up"—including "money due" for the past work. *U.S. Conference of Catholic Bishops v. U.S. Dep't of State*, No. 25-cv-465, 2025 WL 763738 at \*\*5-6 (D.D.C. Mar. 11, 2025), *injunction pending appeal denied before voluntary dismissal*, No. 25-5066 (D.C. Cir. Mar. 28, 2025) (per curiam).

3

The same failure to distinguish past from future undercuts AVAC Plaintiffs' attempt (Opp. 11) to validate the past-payments provision by taking phrases from *Maine Community Health Options v. United States*, 590 U.S. 296 (2020), out of context. The past-payment provision at issue in the instant suits compels payment of specific past-due sums and therefore puts the provision "in the Tucker Act's heartland." *Id.* at 327. That provision is not an award of "prospective, nonmonetary relief," and the provision does not purport to manage any "complex ongoing relationship" between Plaintiffs and the Government, *id.*, akin to the Federal Government's "ongoing obligations under the Medicaid program" that the State Plaintiff in *Bowen* sought to clarify via the APA suit decided in *Bowen*. No statutes akin to Medicaid impose a "complex ongoing relationship" between Defendants and Plaintiffs here. And in the terms used in *Maine Community Health*, the past-payments provision of the preliminary injunction continues to require the Government to pay "specific sums already calculated" that are "designed to compensate for completed labors." *Id. California* sends a dispute over those sums to the Court of Federal Claims.

**2.** Plaintiffs fare no better in arguing that their constitutional claims justify declining to apply the *California* ruling to the past-payments provision in the preliminary injunction. GHC Opp. 14-15; AVAC Opp. 8-9. GHC Plaintiffs' contention (Opp. 14) that the preliminary injunction is "independently support[ed]" by their "nonstatutory constitutional and *ultra vires* claims," and AVAC Plaintiffs' similar emphasis on their "alleged claims sounding in the Constitution" (Opp. 8), ignores the precise focus of the indicative ruling Defendants request: The motion asks the Court to apply the *California* ruling only to the *past-payments provision*, which the Court grounded in its APA rationale (in the temporary restraining order), not on Plaintiffs' constitutional or *ultra vires* claims (which the Court did not address in issuing the temporary restraining order). 2025 WL 485324 at *5. Moreover, Plaintiffs err in asserting that a constitutional or *ultra vires* claim can proceed regardless of whether the APA's waiver of sovereign immunity in § 702 applies. That "waiver is not limited to APA cases," as the D.C. Circuit explained in *Trudeau v. FTC*, 456 F.3d 178 (D.C. Cir. 2006): § 702 "permits not only" a litigant's "APA cause of action," but his

4

"nonstatutory and First Amendment actions as well," such that the District Court has "subject-matter jurisdiction to hear" that "suit under 28 U.S.C. § 1331." *Id.* at 187.

In any event, even if they were somehow to locate a waiver, *California* still teaches that their claim would fail on the merits—*i.e.*, for lack of a cause of action.  Plaintiffs' comparison to *Ex parte Young* (concerning state officials), 209 U.S. 123, 155-56 (1908), shows that they rely on the principle that "federal courts may in some circumstances grant injunctive relief against . . . . violations of federal law by federal officials," *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).  That "ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of *courts of equity*," *id.* (emphasis added), and Congress's grant of equity jurisdiction to the federal courts is confined to the relief that "was traditionally accorded by *courts of equity*," *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 318-19, 329 (1999) (emphasis added).  Faced with the *California* Court's adherence to *Knudson*, Plaintiffs cannot show that the past-payments provision is relief "traditionally" granted in equity, *id.*, because "an injunction to compel the payment of money past due under a contract, or specific performance of a past due monetary obligation, was not typically available in equity." *Knduson*, 534 U.S. at 210-11.  Hence, a court of equity would not "traditionally" have imposed the past-payments provision, and the cause of action described in *Armstrong* is not available to seek that provision.

Contrary to GHC Plaintiffs' further contention (GHC Opp. 15), requiring them to proceed in the Claims Court on their past-payment demands would not leave them unable to raise their separation of powers allegations.  Plaintiffs argue that they could not bring a freestanding separation of powers *claim* in that forum, citing a decision concerning a terminated federal employee's complaint containing "counts alleging violation of his rights," including under "the doctrine of separation of powers," about which the court stated:  "None of these is a sufficient basis for jurisdiction because they do not mandate payment of money by the government." *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed. Cir. 1995).  But even absent Tucker Act jurisdiction over Plaintiffs' standalone separation of powers claim, that would hardly leave them stranded:  Because their past-payment demands seek "to enforce a contractual obligation to pay

5

money," *California*, 145 S. Ct. at 968 (quoting *Knudson*, 534 U.S. at 212), they can open the Claims Court's doors via their breach of contract claim, and present whatever allegations they wish in support of that claim. The "presumption" that "a damages remedy will be available upon the breach of an agreement . . . normally satisfies the money-mandating requirement for Tucker Act jurisdiction, with no further inquiry being necessary." *See Boaz*, 994 F. 3d at 1364; *Me. Cmty. Health*, 590 U.S. at 322.

    **3.** In a further effort to dodge *California*, Plaintiffs assert again (AVAC Opp. 11-12, GHC Opp. 11-12) that various categories of funding instruments at issue in these suits cannot sustain money damages claims, and so fall outside the subject-matter jurisdiction of the Claims Court. But "*any agreement* can be a contract *within the meaning of the Tucker Act*, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government." *Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. 1997) (emphasis added).

    Plaintiffs have shirked their obligation to undertake that contract-specific analysis. Instead, GHC Plaintiffs fret about the funding instruments of "implementing partners" (GHC Opp. 11-12), a vague term that is apparently meant to capture the circumstances of non-Plaintiffs—*i.e.*, businesses or organizations not before the Court, as to whom an Article III court would not properly grant relief in any case. The Supreme Court recently granted a stay of an injunction to the extent it provided relief to non-parties. *See Labrador v. Poe*, 144 S. Ct. 921 (2024). That served to "remind lower courts of the foundational rule that any equitable remedy they issue" must be tailored to "the plaintiff's injuries." *Id.* at 927 (Gorsuch, J., concurring). And even apart from that Article III deficiency, Plaintiffs' argument that *California* does not apply because some of the funding instruments at issue in these suits are categorically exempt from Tucker Act jurisdiction is mistaken.

    One type of agreement Plaintiffs mischaracterize is a "cooperative agreement." In particular, GHC Plaintiffs err in contending (GHC Opp. 11-12) under *Rick's Mushroom Serv., Inc.*

6

*v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008), that breaches of funding instruments styled as cooperative agreements are *generically* incapable of sustaining money damages and hence fall outside the subject-matter jurisdiction 28 U.S.C. § 1491(a)(1) confers on the Court of Federal Claims.  The Federal Circuit has described *Rick's Mushroom* as involving a "cost-sharing agreement with the [G]overnment," *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1365 (2021), one that was "unique," *Holmes v. United States*, 657 F.3d 1303, 1315 (Fed. Cir. 2011), or "special," *Rocky Mountain Helium, LLC v. United States*, 841 F.3d 1320, 1327 (Fed. Cir. 2016). Such a "unique" agreement is "exempt from the presumption that damages are available upon the breach of a contract," *Boaz*, 994 F.3d at 1365, which does not mean that every "cooperative agreement" is generically incapable of sustaining money damages.  Rather, the precedent simply means that the agreement itself must be examined on that point.  Again, as part of their burden to establish subject-matter jurisdiction, Plaintiffs must conduct that examination; in light of *California*, their failure to address the point cannot mean that jurisdiction exists in this Court.[2]

Another type of agreement Plaintiffs mischaracterize is a grant.  Defendants have not argued that grants are *categorically* incapable of sustaining money damages—only that particular grants by their terms have been in other cases.  *See Columbus Regional Hosp. v. United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021) (describing *San Juan City College v. United States*, 391 F.3d 1357, 1360-62 (Fed. Cir. 2004), among the precedents "treating federal grant agreements as

---

[2] In the preliminary injunction decision, 2025 WL 752378 at *9 n.7, this Court relied on *American Near East Refugee Aid v. USAID*, 703 F. Supp. 3d 126, 134 (D.D.C. 2023), which it described as declining "application of [the] Tucker Act to [a] USAID cooperative agreement."  In turn, that decision relied on *St. Bernard Parish Government v. United States*, 134 Fed. Cl. 730, 736 (2017), *aff'd on other grounds*, 916 F.3d 987 (Fed. Cir. 2019), which concerned a cooperative agreement between the United States and a local government entity rather than a private organization, and, in any event, the Claims Court's decision since has been questioned.  *See Boaz*, 994 F.3d at 1371 n.8 (noting that on appeal, Federal Circuit concluded Claims Court in *St. Bernard Parish* mistook a merits question as jurisdictional).  And despite the contrary suggestion in *St. Bernard Parish*, "cooperative agreements are not categorically excluded from" Tucker Act "jurisdiction." *San Antonio Hous. Auth. v. United States*, 143 Fed. Cl. 425, 462-63 (2019).

contracts *when the standard conditions for a contract are satisfied*, including that the federal entity agrees to be bound") (emphasis added).[3]

**4.** Also unfounded is Plaintiffs' contention (GHC Opp. 5-6) that the Court could decline to apply *California* to the past-payments provision based on Plaintiffs' assertions of perceived deficiencies in Defendants' compliance with that provision. The *California* ruling at a minimum raises a question about the Court's subject-matter jurisdiction, and hence cannot be subordinated to Plaintiffs' view of the competing equities, given that courts have an "independent obligation to assure" themselves "that jurisdiction is proper" before ordering relief. *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008). That "obligation extends to sovereign immunity," including whether the APA's waiver applies or is impliedly displaced by other statutes. *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 619 (D.C. Cir. 2017).

Plaintiffs' assertions about deficiencies are inconsequential in any event. Defendants' weekly status reports have explained that after initially far exceeding this Court's metric for processing the past payments to Plaintiffs and non-Plaintiffs, the processing rate slowed because the remaining transactions presented particular documentation questions warranting additional labor by agency personnel. Moreover, GHC Plaintiffs on April 15, 2025 presented Defendants with several spreadsheets describing particular payment demands, including for transactions post-dating February 13, 2025 and hence at least partially outside the scope of the past-payments provision in the preliminary injunction. Given that payments processing is resource intensive and that Plaintiffs and non-Plaintiffs have continued to submit new requests for payments even after

---

[3] GHC Plaintiffs err in contending (Opp. 12 n.3) that the Government's position in a pending Federal Circuit case, *112 Genesee Street, LLC v. United States* (No. 25-1373), conflicts with its position here; that case does not concern Tucker Act jurisdiction based on contracts at all. As explained above, pp. 5-6, *supra*, to invoke the jurisdiction of the Claims Court under the Tucker Act, the Plaintiffs before this Court will look to their funding instruments—that is, they do not need to show that any constitutional or statutory provision is money mandating. *See Boaz*, 994 F. 3d at 1364. By contrast, a central question in *112 Genesee Street LLC*, is whether 15 U.S.C. § 9009c, a statute under which the Small Business Administration made certain grants, is money mandating; the Government's position is that the statute is not money mandating simply because it requires issuance of grants. *See* No. 23-1876C, 2024 WL 4564607 at **2, 4 (Ct. Cl. Oct. 24, 2024) (certifying questions for interlocutory appeal).

8

the Court issued the preliminary injunction, it is not surprising that Defendants have needed to revise their estimated payments completion date. Even faced with those practical constraints, Defendants are nearing completion of the past payments to Plaintiffs, so the conditions that Plaintiffs alleged in their temporary restraining order submissions in February as to past payments have significantly moderated. Plaintiffs' criticisms reflect an impractical and excessively stringent standard. They do not account for the obligation of the courts to have "due regard for the feasibility of any compliance timelines." 145 S. Ct. 753, 753 (2025).

     **5.** Plaintiffs' assorted procedural objections are unavailing and cannot justify ignoring the *California* ruling. AVAC Opp. 2-5; GHC Opp. 3-5. This Court is not precluded from applying that ruling now, *either* by the D.C. Circuit's dismissal for lack of appellate jurisdiction of Defendants' appeal from the order initially imposing the past-payments requirement, No. 25-5046, 2025 WL 621396, at *1 (D.C. Cir. Feb. 26, 2025), *or* by the Supreme Court's denial of a stay of that order, 145 S. Ct. at 753. Those decisions did not comment on Defendants' previous sovereign immunity argument. And when Defendants raised that argument before they did not have the benefit of the subsequent *California* decision, an intervening change in the law Defendants promptly called to this Court's attention. *See Am. Ass'n of Colleges for Teacher Educ. v. McMahon*, No. 25-1281, 2025 WL 1232337 at *1 (4th Cir. Apr. 10, 2025).

     Moreover, given that this Court has an independent obligation to ensure that its orders are within its subject-matter jurisdiction, *see Plains Commerce Bank*, 554 U.S. at 324—and that lack of subject-matter jurisdiction can be raised at any time, *see Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012) ("Subject-matter jurisdiction can never be waived or forfeited.")—it would be appropriate for this Court to render its conclusion about the effect of the *California* ruling on the preliminary injunction even during the pendency of the appeal. The past-payments provision, if not lifted or at least stayed, would continue to hold Defendants to a timetable managed by this Court, despite Defendants' continuing objection that Article III does not allow a court to issue universal relief to non-parties. *See Labrador*, 144 S. Ct. at 921. Plaintiffs do not even attempt to offer a solution to that Article III problem.

Dated: May 2, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director

LAUREN A. WETZLER
Deputy Director

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar 978017)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Phone: (202) 616-8488
Email: indraneel.sur@usdoj.gov

*Counsel for Defendants*