# Exhibit A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

GLOBAL HEALTH COUNCIL, *et al.*,

    *Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

    *Defendants*.

Civil Action No. 25-cv-402 (AHA)

## DECLARATION OF JEREMY LEWIN

I, Jeremy Lewin, pursuant to 28 U.S.C. § 1746, hereby declare as follows:

    1.    I am over 18 years of age, of sound mind, and otherwise competent to make this declaration. This declaration is based on my personal knowledge and information provided to me in my official capacity by others.

    2.    I am currently serving as the Director of Foreign Assistance and performing the duties and functions of Deputy Administrator and Chief Operating Officer of the United States Agency for International Development (USAID). I have served as a policymaker at the Department of State and USAID since shortly after President Trump's inauguration in January 2025. My current duties include managing State and USAID's foreign assistance programs and overseeing the responsible administration of USAID's day-to-day activities. I am also responsible for helping to manage the policy process for the Department of State's reorganization, as well as the realignment of certain USAID functions and programs to State.

    3.    Congress appropriated substantial foreign assistance funds in Division F of the Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47, div. F, 138 Stat. 460, 729

(FCAA). In appropriating funds in that statute, Congress took various approaches and addressed various operational needs of the government's foreign assistance programs.

4. Some of the funds appropriated in the FCAA remain available until September 30, 2025, whereas other funds remain available until later dates or until expended. For example, the provision at 138 Stat. at 742 contains four appropriations, two of which "remain available until expended"; one of which remains "available until September 30, 2028"; and one of which remains "available until September 30, 2025."

5. Thus, only a portion of the appropriations in the FCAA for the 2024 fiscal year must be obligated by September 30, 2025, before they expire.

6. On March 28, 2025, State and USAID notified Congress of their intent to undertake a reorganization that would realign certain USAID functions to State by July 1, 2025, and discontinue other residual USAID functions inconsistent with Administration priorities. As discussed in the notification, it is anticipated that, by July 1, 2025, State will assume responsibility for the implementation of ongoing USAID programming. Accordingly, the Administration has proposed legislation to authorize abolishing USAID as an independent establishment after certain wind down actions are completed.

7. In the first nearly complete phase, State has assumed management of USAID's financial and administrative systems and management of USAID's remaining operations and ongoing foreign assistance programs via interagency agreements, to ensure that USAID programs can be safely and effectively managed by State during the transition period. For example, payment processing systems have already been integrated into State through a new software program to ensure a streamlined approach to managing life-saving humanitarian aid and national security programs, and State bureaus are already processing cost modification,

new obligation, and program management for ongoing former USAID programs. State has hired several hundred new employees – many formerly of USAID – to perform these critical functions.

8. If State and USAID were to begin by August 15, 2025, to obligate the funds expiring on September 30, 2025 subject to the March 10, 2025 preliminary injunction in this action, State and USAID expect to have adequate time to obligate those funds that would otherwise expire on September 30, 2025.

9. Consistent with the reorganization process described in the notification of March 28, 2025, by August 15, 2025, State expects to be responsible for implementing USAID's functions, including acquisition and assistance functions, under an interagency agreement, under which State would be able to manage USAID's programs, including for purposes of obligating foreign assistance funds.

10. State and USAID could exercise existing authorities that allow additional agency acceleration of contracting and grant-making processes, including but not limited to the authorities described herein.

11. For example, existing State and USAID regulations authorize exceptions and waivers from the customary "full and open competition" procedures and authorize modifications of existing contracts or an award of new contracts on an expedited basis.

12. For USAID awards, the applicable acquisition regulations include 48 CFR § 706.302-70(a)(2) (as to USAID), which implements an exception to "full and open competition" requirements, "when" imposing those requirements "would impair or otherwise have an adverse effect on programs conducted for the purposes of foreign aid relief, and rehabilitation." For example, 48 CFR § 706.302-70(b)(3) (as to USAID) implements that

exception to "full and open competition" requirements for awards for "supplies or services for countries, regions, or programs for which the Administrator of USAID makes" a determination and finding under FAR subpart 1.7 that compliance with full and open competition procedures would impair foreign assistance objectives, and "would be inconsistent with the fulfillment of foreign assistance programs." Such provisions have allowed USAID to adopt expedited procedures packages responding to various urgent situations requiring acceleration of obligation timelines, such as in response to the COVID-19 pandemic and in response to armed conflicts and natural disasters in various nations.

13. Similarly, as to State's contracts subject to the Federal Acquisition Regulation (FAR), and federal assistance awards subject to State's Federal Assistance Directive, State would be able to rely on various provisions to accelerate the timeline for obligation of funds before their expiration. For example, FAR 6.302 identifies certain circumstances in which State could undertake new contracts without providing for "full and open competition." Moreover, as to federal assistance awards, Chapter 2.F.2 of State's Federal Assistance Directive identifies various exceptions allowing sole source or otherwise limited competition.

14. The Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards would not foreclose State and USAID from shortening the time to obligate funds that would otherwise expire on September 30, 2025. For example, the provision in those uniform requirements at 2 CFR § 200.204, for notices of funding opportunities, provides that "no funding opportunity should be available for less than 30 calendar days *unless* the Federal agency determines that exigent circumstances justify this," and thus explicitly allows agencies to accelerate the pertinent timetable for making funding opportunities available. 2 C.F.R. § 200.204(b).

15. For example, under USAID's guidance, the Automated Directives System (ADS), a notice of funding opportunity could be made available for less than 30 days when supported by a written determination of exigent circumstances. ADS 303.3.5.2. Similarly, although the ADS also included ADS 300, Agency Acquisition and Assistance (A&A) Planning, which stated procurement action lead times (PALTs) for certain full and open competition actions, those "lead times" guidelines were not binding on USAID and would not be binding on State in undertaking pertinent USAID functions as to contracts and federal assistance awards.

16. Certain statutory authorities under the Foreign Assistance Act, such as section 7032(b)(2) (democracy programs), also permit obligations "notwithstanding" other requirements and process, in the event of exigency. USAID has regularly relied upon this authority to rapidly obligate funds in the past, and I have personally utilized it to respond to urgent humanitarian crises within days.

17. Hence, in my experience, the process to award contracts and grants, and then obligate funds for those contracts and grants can generally be completed in six weeks (and sometimes within a considerably shorter timeframe if accelerated processes and authorities are used). Defendants are aware of these timelines and have already undertaken preparations to be ready to obligate expiring foreign assistance funds on a short timeline as necessary.

18. In my experience, Defendants should have sufficient time to obligate foreign assistance funds that would otherwise expire on September 30, 2025, if the process begins by August 15, 2025.

19. I am also aware that there is a pending expedited appeal of the Court's order related to the obligation of foreign assistance funds in the United States Court of Appeals for the District of Columbia Circuit, with argument calendared for July. Defendants have requested a decision

by August 15, 2025. Enforcing the Court's order in the manner urged by Plaintiffs prior to the resolution of this appeal will prejudice Defendants' rights and undermine the D.C. Circuit's consideration of these important matters.

I declare that the foregoing is true and correct to the best of my knowledge.

Dated: June 30, 2025

Jeremy Lewin
Director of Foreign Assistance (State)
(PTDO) Deputy Administrator (USAID)