IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-cv-402 (AHA) |

**GLOBAL HEALTH COUNCIL PLAINTIFFS' REPLY IN SUPPORT OF
REQUEST FOR LIMITED DEPOSITION OF JEREMY LEWIN**

## INTRODUCTION

Defendants' response elides the most critical fact bearing on Plaintiffs' request for a limited deposition of Jeremy Lewin: Lewin voluntarily submitted a sworn declaration to demonstrate Defendants' compliance with the preliminary injunction. Lewin's declaration and the factual assertions therein are the linchpin of Defendants' contentions that they have not violated the injunction and will be able to obligate all expiring foreign assistance funds by September 30, even if they take no action to start that process until August 15.

Lewin made all of the assertions in his declaration based on his purported personal "knowledge" and "experience." He asserted, for example, that "in [his] experience" the process to obligate funds for contracts and grants "can generally be completed in six weeks," and that "in [his] experience," that amount of time would be sufficient here. Lewin Decl. ¶¶ 17, 18, ECF No. 99-1. Now, Defendants oppose a deposition of Lewin on the ground that these assertions do not in fact "reflect unique personal knowledge" possessed by Lewin, but instead reflect knowledge "also held by others in the agencies." Resp. 4, ECF No. 108. But Defendants did not submit declarations from "others in the agencies"—they submitted a declaration from Lewin himself. That choice carries consequences.

It is a fundamental tenet of American law that a party should have an opportunity to question facts that an opposing party "has itself put into evidence." *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008). In *Cheney*, the D.C. Circuit authorized the deposition of a senior administration official in precisely the circumstances presented here, where the official had submitted a declaration in support of the defense. That was not true in any of the "apex doctrine" cases that Defendants cite, which makes sense, because the point of the doctrine is to protect high-ranking officials who, unlike Lewin, have asserted strong interests in *avoiding* any

involvement in the litigation. Lewin's factual assertions are now part of the government's case for compliance. If Defendants are to rely on Lewin's declaration to show past and future compliance with the preliminary injunction, the Court should allow a limited deposition in aid of the injunction's enforcement.

## ARGUMENT

**I.      A Deposition Is Appropriate Because Defendants Themselves Put the Lewin Declaration in Evidence to Support Their Factual Assertions**

Courts have long held that once a witness has "already seen fit to go under oath" and affirmatively submit a declaration on a contested factual issue, the opposing party is entitled to "follow-up questioning on facts [the witness] has itself put in evidence." *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008). Thus, in *Cheney*, the D.C. Circuit held that a deposition of a high-ranking White House official, the Vice President's Deputy Chief of Staff, was warranted where the official had submitted a declaration in support of a factual defense that the government "ha[d] itself raised." *Id.* at 314.

The similarities between *Cheney* and this case are striking. In *Cheney*, the plaintiffs alleged that the Office of the Vice President was not complying with the Presidential Records Act. *Id.* at 312. In opposing the plaintiffs' motion for a preliminary injunction, the government submitted a declaration from the Vice President's Deputy Chief of Staff, asserting that, as a factual matter, the office was complying with the statute. *Id.* After the district court allowed depositions to test the factual defense the government had itself raised, the government sought mandamus from the D.C. Circuit. *Id.* at 314. But the D.C. Circuit held that the plaintiffs could depose the Deputy Chief of Staff because she had submitted a declaration in the district court and thus affirmatively put facts at issue that the plaintiffs were allowed to probe. *Id.*

2

Courts have applied *Cheney* to allow depositions of other high-ranking officials. In *American Federation of Government Employees, AFL-CIO v. United States Office of Personnel Management.*, No. 25-cv-01780 WHA, 2025 WL 780549 (N.D. Cal. Mar. 10, 2025), the district court ordered OPM's Acting Director to be deposed or appear to be cross-examined at a preliminary injunction hearing after he submitted a declaration in support of the government's factual assertions. *Id.* at *1. While the government advanced the same apex doctrine arguments that it makes in this case,[1] the court rejected those arguments because the Acting Director had "submitted a sworn declaration in support of defendants' position," citing *Cheney*. 2025 WL 780549, at *1;[2] *see also Alexander v. FBI*, 186 F.R.D. 113, 121 (D.D.C. 1998) (allowing deposition of Clinton White House Director of Records Management because official had submitted a declaration and a deposition was therefore appropriate to "probe the veracity and contours of the statements").

Defendants' attempts to distinguish *Cheney* are unavailing. They first argue (at 7) that, unlike in *Cheney*, there are simply no "lingering questions" here about Lewin's declaration. But that is flatly contradicted by the record. The declaration itself raises questions about the basis of many of Lewin's assertions, and Plaintiffs have further submitted a declaration from an actual USAID contracting officer raising further questions, *see* Doe Decl., ECF No. 101, none of which have been answered.

In particular, Defendants should be able to question Lewin about his sworn assertions that:

- "If State and USAID were to begin by August 15, 2025, to obligate the funds expiring on September 30, 2025 subject to the March 10, 2025 preliminary injunction in this

---

[1] ECF No. 75 at 6-9 in *Am. Fed'n of Gov't Emps.*, No. 25-cv-01780 (N.D. Cal. Mar. 10, 2025).

[2] The government ultimately withdrew the declaration. ECF No. 97 at 1 in *Am. Fed'n of Gov't Emps*, No. 25-cv-01780 (N.D. Cal. Mar. 11, 2025).

3

- action, State and USAID expect to have adequate time to obligate those funds that would otherwise expire on September 30, 2025." (¶ 8)
- "State and USAID could exercise existing authorities that allow additional agency acceleration of contracting and grant-making processes . . . ." (¶ 10)
- "USAID has regularly relied upon this Authority [*i.e.*, the Foreign Assistance Act, such as section 7032(b)(2)] to rapidly obligate funds in the past, and I have personally utilized it to respond to urgent humanitarian crises within days." (¶ 16)
- "[I]n my experience, the process to award contracts and grants, and then obligate funds for those contracts and grants can generally be completed in six weeks (and sometimes within a considerably shorter timeframe if accelerated processes and authorities are used)." (¶ 17)
- "Defendants are aware of these timelines and have already undertaken preparations to be ready to obligate expiring foreign assistance funds on a short timeline as necessary." (¶ 17)
- "In my experience, Defendants should have sufficient time to obligate foreign assistance funds that would otherwise expire on September 30, 2025, if the process begins by August 15, 2025." (¶ 18)

Lewin provided no substantiation for virtually any of these assertions, and did not describe what "personal knowledge" and "experience" he was invoking to make these assertions. Where an official with no prior federal contracting experience attests that an agency can obligate tens of billions of dollars in six weeks—contrary to all available public evidence and legal requirements— there are "lingering questions" to say the least.

Defendants also cannot distinguish *Cheney* on the ground that Lewin's declaration supposedly concerns only "recommendations and proposals," whereas the declaration in *Cheney* involved the "factual" issue of whether an agency was complying with a statute. Resp. 7. Both this case and *Cheney* involve factual questions about an agency's compliance. *Cheney* involved compliance with a statute, while this case concerns compliance with a preliminary injunction. Like the Deputy Chief of Staff in *Cheney*, Lewin has made a *factual* assertion that, based on his personal knowledge and experience, Defendants' obligation of expiring funds as required by the injunction remains possible, because Defendants purportedly "have already undertaken

4

preparations to" obligate the funds. As *Cheney* makes clear, it is perfectly appropriate to allow "follow-up questioning" of a declarant who has made such factual assertions, 544 F.3d at 314, especially, as here, where Defendants rely upon those assertions to argue they are not in violation of an injunction.

Because Defendants have affirmatively put Lewin's factual assertions at issue by submitting a declaration from him, Defendants' cases involving the so-called "apex doctrine" are inapposite. Those cases do not involve the situation where, as here, an agency official submitted a declaration in the case and the plaintiffs then sought to test the declaration through a deposition. Rather, the plaintiffs in those cases were seeking discovery from a high-level (often cabinet-level) official because they believed the official to be a relevant source of information in the case generally. *See, e.g.*, *United States v. Morgan*, 313 U.S. 409, 421 (1941) (deposition of Secretary of Agriculture over his process in reaching conclusions in rate order); *In re Dep't of Com.*, 586 U.S. 956, 957 (2018) (deposition of Secretary of Commerce over decision to reinstate census citizenship question). Nothing in these cases suggest that the government can affirmatively put forward testimony on a material issue of fact in the form of a declaration and then object to any questioning into that testimony.

Such a rule would be fundamentally at odds with our adversarial system. The Supreme Court has recognized that the opportunity to test a witness's factual assertions through cross-examination (or a deposition) "is beyond any doubt the greatest legal engine ever invented for the discovery of truth." *Ford v. Wainwright*, 477 U.S. 399, 415 (1986) (quoting 5 J. Wigmore, Evidence § 1367 (J. Chadbourn rev. 1974)). The D.C. Circuit has likewise noted that depositions "rank high in the hierarchy of pre-trial, truth-finding mechanism." *Founding Church of Scientology of Washington, D.C., Inc. v. Webster*, 802 F.2d 1448, 1451 (D.C. Cir. 1986). Indeed, "the lack of an opportunity to cross-examine the absent declarant has been the principal

5

justification for the Anglo-American tradition of excluding hearsay statements." *United States v. Salerno*, 505 U.S. 317, 329 (1992) (Stevens, J., dissenting) (citing E. Cleary, McCormick on Evidence § 245, p. 728 (3d ed. 1984); 5 Wigmore, Evidence § 1367, at 32).

Defendants could not contend that, had they called Lewin as a witness at a preliminary injunction or compliance hearing, Plaintiffs should not have an opportunity to cross-examine him. There is no reason why a different rule should apply simply because Defendants presented his testimony in the form of a declaration rather than as a live witness. Defendants' proposed rule that they can rely on high-ranking officials affirmatively when it suits them but then resist further questioning into their assertions is also contrary to basic notions of fairness as reflected in, for example, the sword/shield doctrine. *See, e.g.*, *Koch v. Cox*, 489 F.3d 384, 390 (D.C. Cir. 2007) (noting, in privilege context, that parties cannot selectively disclose information to gain a litigation advantage and then withhold other relevant information).

**II.     The Apex Doctrine Does Not Preclude a Deposition of Defendants' Sole Declarant.**

Because Defendants have affirmatively put Lewin's representations at issue by submitting a declaration from him, the apex doctrine simply does not apply, as explained above. *See Cheney*, 544 F.3d at 314; *Am. Fed'n of Gov't Emps.*, 2025 WL 780549, at *1. But even if the Court were to apply that doctrine, it would still support allowing a limited deposition in these circumstances.

As an initial matter, the D.C. Circuit has never held that the "apex" doctrine shields a subordinate official like Lewin. "[M]ost cases" applying the doctrine "concern cabinet-level officials." *United States v. Newman*, 531 F. Supp. 3d 181, 189 (D.D.C. 2021); *see also Florida v. United States*, 625 F. Supp. 3d 1242, 1246 (N.D. Fla. 2022) (doctrine "protects only a limited category of government officials—those at the 'apex'"). And while some courts have extended the doctrine to "other high-ranking officials," *Newman*, 531 F. Supp. 3d at 189, the D.C. Circuit

6

has never applied the doctrine to shield a subordinate official like Lewin, who is performing the duties of the Under Secretary for Foreign Assistance.[3] Shielding a subordinate official like Lewin from discovery would not promote the purpose of the doctrine, which is to protect the integrity of a quasi-judicial proceeding before an agency secretary. *Morgan*, 313 U.S. at 422.

Even for sufficiently "high-ranking" officials, Defendants acknowledge that the apex doctrine does not preclude a deposition where the official (1) has unique personal knowledge and (2) the information is unavailable through less intrusive means. Resp. 2. Both of those elements are easily satisfied here. Lewin undoubtedly has unique personal knowledge as to *his* "experience," which formed the basis for his factual assertions that Defendants are capable of obligating the funds by September 30. *See* Lewin Decl. ¶¶ 17-18. Nor is the information available through less intrusive means. Interrogatories would not be sufficient because Plaintiffs are not seeking the enumeration of discrete facts such as the identification of witnesses. Rather, Plaintiffs are seeking to follow up on Lewin's assertions and the bases and accuracy of them. Depositions are the standard, tried-and-true method for probing such assertions. *See, e.g.*, *Cheney*, 544 F.3d at 314; *Founding Church of Scientology*, 802 F.2d at 1451; *Eng. v. Washington Metro. Area Transit Auth.*, 323 F.R.D. 1, 26 (D.D.C. 2017) ("[D]epositions typically provide an opportunity to further probe the facts elicited through interrogatories."); Order, *Amtrak v. Sublease*, No. 22-CV-1043 (APM) (D.D.C. Jan. 28, 2025), ECF No. 165 (holding that interrogatories were not adequate substitute for deposition because they "deprive [counsel] of the opportunity to ask follow-up questions or seek clarification").

---

[3] Defendants also state that Lewin is the "USAID Deputy Administrator" who reports to the Acting Administrator and is "overseeing USAID's day-to-day activities." Resp. 4. But as Defendants well know, as of July 1, 2025, they have shut down USAID as an agency for all practical purposes, and so there are no longer any "day-to-day activities." *See* Lewin Decl. ¶ 6.

Finally, it is simply not correct that any information that Lewin has beyond the contents of his declaration would "logically fall within the deliberative-process privilege." Resp. 6. As Plaintiffs have explained, that privilege has been waived, and in any event does not protect the kind of information that Plaintiffs are seeking. *See* ECF No. 97-1 at 15-16; ECF No. 101 at 14-17. If Defendants believe that any particular question at the deposition encroaches on a privilege, the proper course is to object or instruct the witness not to answer, if warranted. But the *possibility* of questions implicating the privilege is not a reason to deny a deposition altogether.

*   *   *

Allowing a limited deposition in aid of enforcement now is necessary to ensure that the Court's preliminary injunction does not become a dead letter. Plaintiffs expect, based on all the evidence submitted in support of their motion to enforce, that the deposition will show that Lewin lacks a reasonable basis to assert that Defendants can obligate billions in foreign aid funding in a matter of weeks. If that is the case, the parties and the Court need to know that *now*. The Court reserved decision on a number of aspects of Plaintiffs' motion based on Defendants' representations that they can and will obligate the funds at issue. *See* ECF No. 107 at 4-5 (declining to order compliance plan at this time); *id.* at 6 (declining to rule on legality of "pocket rescission"); *id.* at 7 (finding it "premature" to extend the term of budget authority). If those representations turn out to lack a factual basis, the parties will need to raise these issues with the Court immediately to ensure that Defendants "obligate all expiring foreign assistance appropriations in accordance with Congress's directives." *Id.* at 3.

**CONCLUSION**

The Court should authorize Plaintiffs to take a limited deposition of Mr. Lewin within the next 10 days, limited to Defendants' steps and plans to comply with the injunction and Mr. Lewin's assertions in his declaration.

Dated: July 25, 2025

Respectfully submitted,

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson (D.C. Bar 1016621)
John Robinson (D.C. Bar 1044072)
Nina Cahill (D.C. Bar No. 1735989)
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Tel: (301) 823-1148
dan@jacobsonlawyersgroup.com

William C. Perdue (D.C. Bar 995365)
Sally L. Pei (D.C. Bar 1030194)
Samuel M. Witten (D.C. Bar 378008)
Stephen K. Wirth (D.C. Bar 1034038)
Dana Kagan McGinley (D.C. Bar 1781561)
Daniel Yablon (D.C. Bar 90022490)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000
stephen.wirth@arnoldporter.com

*Counsel for Plaintiffs*