IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GLOBAL HEALTH COUNCIL, *et al.*,

    *Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

    *Defendants*.

Civil Action No. 25-cv-402 (AHA)

**GLOBAL HEALTH COUNCIL PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION FOR PARTIAL STAY OF THE PRELIMINARY
INJUNCTION**

**INTRODUCTION**

Defendants acknowledge that this Court's preliminary injunction remains in place until the D.C. Circuit's mandate issues, *i.e.*, at least seven days after the full D.C. Circuit acts on Plaintiffs' petition for rehearing *en banc*. Mot. 2. But after failing—for more than five months—to take any steps to comply with the Court's preliminary injunction requiring them to obligate foreign assistance funds that expire on September 30, 2025, Defendants now ask this Court to short-circuit the appellate process and relieve them of their obligation to comply with this Court's preliminary injunction.

This Court should deny that request. A stay would potentially make Defendants' unlawful impoundment of funds irreversible. For months, Defendants have maintained that they could comply with the preliminary injunction, so long as they began the process of obligating expiring funds by August 15. By Defendants' own admission, then, if they do not take steps now, it may well become impossible for them to comply with the Court's injunction if the D.C. Circuit grants Plaintiffs' *en banc* petition and affirms the injunction. That result would inflict enormous harm on Plaintiffs and the people around the world that rely so desperately on this assistance. By contrast, the burden on Defendants to comply with the injunction now is minimal. Defendants need not actually expend funds before the D.C. Circuit acts on the *en banc* petition; they must simply make preparations to be in a position to do so by September 30, if necessary.

If Defendants have compelling reasons why they need the panel's opinion to take effect sooner, their proper recourse is "to move for expedited issuance of the mandate for good cause shown." D.C. Cir. R. 41(a)(1). Defendants have not done so. Meanwhile, the *en banc* process is unfolding rapidly; Plaintiffs filed their petition last Friday and the D.C. Circuit has ordered Defendants to respond by tomorrow, August 20.

Defendants cite no persuasive reason why this Court should grant a stay before the D.C. Circuit acts on the *en banc* petition, likely within a matter of days. In the meantime, by their own admission, Defendants are losing essential time to comply with a preliminary injunction that remains in place. This Court should either deny the motion or defer decision until after the D.C. Circuit acts.

## ARGUMENT

### I. The D.C. Circuit Is Likely To Grant Rehearing *En Banc* and Vacate the Panel Decision

As set forth more fully in Plaintiffs' *en banc* petition, the panel decision calls out for *en banc* review. *See* Pet. for Reh'g, No. 25-5097; Fed. R. App. P. 40(b)(2). The panel's decision to vacate this Court's injunction conflicts with controlling precedent, creates a split with the Ninth Circuit, and presents questions of extraordinary importance. The D.C. Circuit has called for Defendants to respond to Plaintiffs' petition for rehearing *en banc* and motion to stay by tomorrow, August 20. And the Circuit is likely to grant rehearing *en banc* and to vacate the panel's decision, making any stay of the preliminary injunction by this Court inappropriate.

All three of the panel's holdings overrode settled "rule[s] of party presentation." Dissenting Op. 25. The second and third holding (that Plaintiffs cannot bring APA or ultra vires claims) were neither raised nor briefed by the parties, and Defendants did not raise the first (that Plaintiffs cannot bring a constitutional claim to challenge Defendants' unlawful impoundment of congressionally appropriated funds) in their opening brief at all. All three holdings conflict with controlling precedent and invite Executive Branch defiance of congressional mandates, and are unlikely to survive *en banc* review.

For its first holding, the panel rejected Plaintiffs' separation of powers claim under a "new constitutional rule" that "Executive action that exceeds statutory authority or violates a

2

statute can never be the basis of a constitutional cause of action." Dissenting Op. 47. That new rule directly conflicts with Supreme Court and D.C. Circuit precedent "stat[ing] in no uncertain terms that the Executive, as a constitutional matter, has no authority to disobey duly enacted statutes for policy reasons," including in the context of appropriations. Dissenting Op. 3 (citing *Kendall v. United States*, 37 U.S. (12 Pet.) 524, 613 (1838); and *In re Aiken Cnty.*, 725 F.3d 255, 261 n.1 (D.C. Cir. 2013)); *see* Fed. R. App. P. 40(b)(2)(A), (B). The panel acknowledged that its decision to the contrary, which rested on an overbroad reading of *Dalton v. Specter*, 511 U.S. 462 (1994), brought the D.C. Circuit into conflict with the law of the Ninth Circuit. Op. 24 n.15 (citing *Murphy Co. v. Biden*, 65 F.4th 1122, 1130 (9th Cir. 2023)); *see* Fed. R. App. P. 40(b)(2)(C).

With its second and third holdings, the panel reached out to decide two issues of deep jurisprudential significance that were not presented in the appeal—namely, that Plaintiffs cannot bring either APA or *ultra vires* claims to challenge Defendants' violations of appropriations laws. The panel's unprecedented preclusion of relief on those grounds rested largely on a misunderstanding of appropriations laws and the Impoundment Control Act. It is the appropriations acts, not the Impoundment Control Act, that mandate Defendants spend appropriations on their designated purposes in the first instance. Yet the panel majority held that the Comptroller General's ability to challenge certain violations of the Impoundment Control Act impliedly precludes challenges to violations of the separate appropriations laws. That holding, too, contravenes binding precedent. *E.g.*, *Train v. City of New York*, 420 U.S. 35 (1975).

The D.C. Circuit is likely to grant *en banc* review to address the conflicts that the panel decision creates. Fed. R. App. P. 40(b)(2)(A)-(C). But *en banc* review is also likely because the panel's holdings present questions of exceptional importance. Fed. R. App. P. 40(b)(2)(D). The

3

panel's decision may leave private litigants with no viable path to challenge even the most brazen appropriations violations, at a time when the Executive Branch's refusals to carry out spending directives have proliferated. There are at least a dozen other cases pending in this Circuit challenging unlawful impoundment,[1] further increasing the likelihood of *en banc* review to consider the ability of private parties to challenge unlawful impoundments. And it is beyond dispute that Defendants' impoundment of foreign assistance appropriations has deprived the most vulnerable people in the world of humanitarian assistance, leading to mass death, impoverishment, sickness, and waste.

Confirming the high likelihood of further review, the D.C. Circuit recently granted *en banc* rehearing and restored a preliminary injunction in a case raising the same kinds of constitutional and APA claims at issue here. *Widakuswara v. Lake*, No. 25-5144, 2025 WL 1521355, at *1 (D.C. Cir. May 28, 2025). Rehearing and vacatur of the panel opinion is likely.

## II. Defendants Would Not Be Irreparably Harmed Absent a Stay

The procedural posture provides no basis for Defendants to be relieved of their obligations under the preliminary injunction now. Defendants will not suffer irreparable harm absent a stay. While awaiting action by the full D.C. Circuit, Defendants need not "actually enter

---

[1] *See, e.g.*, Compl. at 21–23, *Am. Ctr. For Int'l Labor Solidarity v. Chavez-Deremer*, No. 1:25-cv-01128 (D.D.C.); Compl. at 41–43, *Appalachian Voices v. EPA*, No. 1:25-cv-01982 (D.D.C.); Amended Compl. at 53–54, *Climate United Fund v. Citibank*, No. 1:25-cv-00698 (D.D.C); Compl. at 44–50, *Harris Cnty. v. Kennedy*, No. 1:25-cv-01275 (D.D.C.); Compl. at 17–18, *Nat'l Council of Nonprofits v. OMB*, No. 1:25-cv-00239 (D.D.C.); Compl. at 30–32, *Nat'l Fair Housing Alliance v. HUD*, No. 1:25-cv-01965 (D.D.C.); Amended Compl. at 32–33, 39, *Nat'l Nurses United v. Kennedy*, No. 1:25-cv-01538 (D.D.C.); Amended Compl. at 97–98, *Nat'l Urban League v. Trump*, No. 1:25-cv-00471 (D.D.C.); Compl. at 63–64, *Planned Parenthood of Greater N.Y. v. HHS*, No. 1:25-cv-01334 (D.D.C.); Amended Compl. at 23–26, 28–32 , *RFE/RL v. Lake*, No. 1:25-cv-00799 (D.D.C.); Amended Compl. at 33–35, *S. Ed. Found., Inc. v. U.S. Dep't of Ed.*, No. 1:25-cv-01079 (D.D.C.); Compl. at 23–26, *Vera Inst. of Justice v. DOJ*, No. 1:25-cv-01643 (D.D.C.); *see also Citizens for Resp. & Ethics in Washington v. OMB*, No. 25-5266, at 1 & n.1 (D.C. Cir. Aug. 9, 2025) (Henderson, J., statement respecting the denial of a stay pending appeal) (noting the "slew of cases" that "challenge the President's ability to unilaterally freeze or 'impound' spending" and citing cases).

into obligations." Mot. 4. All Defendants must do now is undertake preparations to ensure that *if* the *en banc* court grants the petition or affords other relief from the panel's opinion, then Defendants will be able to obligate the relevant funds before they expire on September 30. But Defendants' motion does not identify any actions that they have taken to be in a position to comply by September 30. Nor does the motion explain with any specificity why such preparatory steps would be irreversible or cause them irreparable harm.

This Court entered its injunction on March 10. For five months, Defendants took no steps to comply (or even prepare to comply) with the injunction. Defendants' inaction was clear from their weekly status reports, where they repeatedly stated only that they were "continu[ing] to evaluate the appropriate next steps to address the provision in this Court's March 10, 2025, order regarding obligation of funds." ECF No. 67 ¶ 9; ECF No. 75 ¶ 5; ECF No. 79, ¶ 6; ECF No. 84, ¶ 8; ECF No. 86, ¶ 8; ECF No. 87, ¶ 8; ECF No. 88, ¶ 6; ECF No. 90, ¶ 7; ECF No. 93, ¶ 7; ECF No. 94, ¶ 7; ECF No. 98, ¶ 7; ECF No. 100, ¶ 8; ECF No. 103, ¶ 6; ECF No. 106, ¶ 6; ECF No. 109, ¶ 6; ECF No. 111, ¶ 6; ECF No. 113, ¶ 6; ECF No. 116, ¶ 6. Instead, Defendants told this Court and the D.C. Circuit that "August 15 is really the day when they need to start the process . . . to get the funds out the door by September 30." Oral Argument at 1:08:52, *Glob. Health Council v. Trump*, No. 25-5097 (D.C. Cir. July 7, 2025); *see also, e.g.*, ECF No. 108 at 5. Defendants asked the D.C. Circuit for a decision by that same day, even though they knew, or should have known, that it typically takes weeks or longer for the D.C. Circuit to issue its mandate. Defendants cannot now bootstrap their months-long refusal to comply with the injunction to claim that they would suffer harm from having to take necessary steps toward compliance while the *en banc* process runs its course.

Maintaining the injunction until the full D.C. Circuit acts would also not "render the [panel] opinion a nullity" or "override Defendants' judgments concerning planned expenditure of taxpayer funds." Mot. 4. Again, Plaintiffs are not asking that Defendants "expend" any funds until the full D.C. Circuit acts, but rather that they take the steps necessary to be in a position to do so by September 30, if the full D.C. Circuit grants Plaintiffs' petition or provides other relief.

Maintaining the injunction would also not "prevent the Government from enforcing its policies against nonparties." Mot. 5 (quoting *Trump v. CASA*, 145 S. Ct. 2540, 2561 (2025)). Defendants again have not identified any specific way in which they would be prevented from implementing a policy against a nonparty during the brief period between now and when the full D.C. Circuit acts. Defendants have not shown that they would suffer irreparable harm by undertaking preparations to obligate the small amount of funds for which Plaintiffs might not compete. *See* Dissenting Op. at 46 n.10 (recognizing that Plaintiffs represent that they collectively compete for 99% of the funds at issue).

Finally, if Defendants *do* get to the point where they actually need to take irreversible steps and obligate funds imminently, nothing would prevent them from renewing their motion to stay in this Court at that time. Nor does anything prevent Defendants from moving the D.C. Circuit now to expedite issuance of the mandate. But as things currently stand, Defendants have not sought that relief from the D.C. Circuit, and they have not demonstrated to this Court that they would suffer imminent irreparable harm absent a stay.

**III.    The Balance of Harms and Public Interest Do Not Support a Stay**

By contrast, Plaintiffs and the public would suffer massive irreparable harm if the Court were to stay its injunction pending issuance of the mandate. If the injunction is stayed and later reinstated, Defendants may argue that they are unable to comply because they did not have the

6

45 days that they said they needed to obligate the funds by September 30. Potentially billions of dollars in foreign aid would be left unspent, even if the D.C. Circuit ultimately affirms the injunction.

The irretrievable loss of the funds at issue would be devastating for Plaintiffs and their members. The preliminary injunction record showed, for example, that 98% of Plaintiff Democracy International's revenues come from USAID awards. Bjornlund Decl. ¶ 47, ECF No. 7-8. For Plaintiffs Management Sciences for Health, Chemonics, and DAI, USAID funding constitutes 88%, 88%, and 80% of their business bases, respectively. Wentworth Decl. ¶ 4, ECF No. 7-5; Butcher Decl. ¶ 4, ECF No. 7-6; Northrip Decl. ¶ 4, ECF No. 7-7. And if the funds at issue expire, there will be no possibility of Plaintiffs getting those funds back in the future, even if the D.C. Circuit ultimately affirms.

As to the public interest, Defendants still have "made no effort to rebut" the "dire humanitarian consequences" that would result if these critical foreign aid funds are allowed to lapse. PI Op. at 43, ECF No. 60. At a minimum, it is in the public's interest to ensure that these funds can be spent in the amounts that Congress directed, for the lifesaving purposes that Congress directed, until the full D.C. Circuit has had an opportunity to act on the issues presented of exceptional national importance.

## CONCLUSION

The Court should deny Plaintiffs' motion for a partial stay of the preliminary injunction, or, at a minimum defer ruling on it until after the full D.C. Circuit acts on the pending petition for rehearing *en banc*.

Dated: August 19, 2025                                Respectfully submitted,

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson (D.C. Bar 1016621)
John Robinson (D.C. Bar 1044072)
Nina Cahill (D.C. Bar No. 1735989)
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Tel: (301) 823-1148
dan@jacobsonlawyersgroup.com

William C. Perdue (D.C. Bar 995365)
Sally L. Pei (D.C. Bar 1030194)
Samuel M. Witten (D.C. Bar 378008)
Stephen K. Wirth (D.C. Bar 1034038)
Dana Kagan McGinley (D.C. Bar 1781561)
Daniel Yablon (D.C. Bar 90022490)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001-3743
Tel: (202) 942-5000
stephen.wirth@arnoldporter.com

*Counsel for Plaintiffs*