IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-cv-402 (AHA) |

**GLOBAL HEALTH COUNCIL PLAINTIFFS' CONDITIONAL MOTION TO CLARIFY PRELIMINARY INJUNCTION AND FOR INDICATIVE RULING**

Global Health Council Plaintiffs respectfully file this conditional motion to clarify the scope of the preliminary injunction, if the injunction is affirmed "to the extent it is no broader than necessary to afford complete relief to the grantees." *See Glob. Health Council v. Trump*, No. 25-5097, 2025 WL 2326021, at *31 & n.10 (D.C. Cir. Aug. 13, 2025) (Pan, J., dissenting) (citing *Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2562–63 (2025)). Plaintiffs also seek an indicative ruling pursuant to Rule 62.1 that the Court would grant the motion upon the return of jurisdiction from the Court of Appeals.

The Supreme Court issued its decision in *CASA* while the appeal of the preliminary injunction in this case was pending. Although Plaintiffs believe the injunction here may be affirmed in full based on the record on appeal and Defendants' failure to challenge the scope of relief during preliminary injunction proceedings, Plaintiffs offered at oral argument in the D.C. Circuit that one option would be to "affirm but only to the extent the injunction was … no broader than necessary to provide complete relief to the plaintiffs." *Glob. Health Council,* 2025 WL 2326021, at *31 n.10. (Pan, J., dissenting). That was the language the Supreme Court used in *CASA*, and Judge Pan wrote in her dissent that she would order the same here.

Given the impending September 30 deadline for Defendants to obligate the funds at issue, Plaintiffs recognize that time is of the essence to clarify the scope of the injunction if it is affirmed by the *en banc* D.C. Circuit along the lines that Judge Pan suggested. Plaintiffs thus submit with this motion declarations from each Plaintiff organization identifying the categories and subcategories of funds appropriated in the Further Consolidated Appropriations Act of 2024 for which Plaintiffs would compete if Defendants made the funds available as legally required. *See* Exs. C-J.

At the D.C. Circuit, Defendants conceded in their principal brief that the Court's injunction would be proper in scope if it included only "programs or funds for which [Plaintiffs] are willing and able to compete." Defs.' Br. at 63, No. 25-5097 (D.C. Cir.) (citing *Sherley v. Sebelius*, 610 F.3d 69, 74 (D.C. Cir. 2010)). Plaintiffs accordingly request that the Court enter an indicative ruling that, if the injunction were affirmed to the extent it is no broader than necessary to provide complete relief to Plaintiffs, the Court would clarify that the injunction includes all categories and subcategories of appropriations for which Plaintiffs in this case and in *AVAC*, No. 25-cv-400, are able and willing to compete. *See* No. 25-cv-400, ECF No. 113. The injunction would accordingly exclude only the few subcategories of appropriations for which no Plaintiff would compete, as highlighted red in Exhibit A to this motion.

Under Local Civil Rule 7(m), counsel for Plaintiffs have conferred with counsel for Defendants, who have stated that they will evaluate this motion and file a response.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 62.1, "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending" the Court may "(1) defer considering the motion; (2) deny the motion; or (3) state either that it

2

would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed R. Civ. P. 62.1

**ARGUMENT**

The D.C. Circuit has repeatedly held that a plaintiff suffers cognizable injury from the lost opportunity to compete for business, including in the context of federal government awards. *See, e.g.*, *Coal. of MISO Transmission Customers v. FERC*, 45 F.4th 1004, 1016 (D.C. Cir. 2022); *Teton Historic Aviation Found. v. Dep't of Def.*, 785 F.3d 719, 724 (D.C. Cir. 2015); *CC Distribs., Inc. v. United States*, 883 F.2d 146, 150 (D.C. Cir. 1989); *see also Sherley*, 610 F.3d at 74. A plaintiff suffers cognizable injury from a lost opportunity to compete whenever they can attest that they are "ready, willing, and able to compete" for the relevant funds. *MISO*, 45 F.4th at 1015 (quotations omitted). In light of this precedent, Defendants conceded in the D.C. Circuit that this Court's preliminary injunction would be proper in scope if it included only "funds for which [Plaintiffs] are willing and able to compete." Defs.' Br. at 63, No. 25-5097.

The declarations attached to this filing set forth the foreign assistance appropriations for which Plaintiffs are able and willing to compete. As context for the declarations, Titles III and IV of the Further Consolidated Appropriations Act of 2024, Pub. L. 118-47 (2024) (the "2024 Appropriations Act") appropriated foreign assistance funds to USAID and the State Department across 15 broad categories, excluding International Military Education and Foreign Military Financing funds that are not a focus of this case:

- Title III
    o Global Health Programs (USAID): $3.99 billion
    o HIV/AIDS (State – PEPFAR): $6.05 billion
    o Development Assistance: $3.91 billion
    o International Disaster Assistance: $4.78 billion
    o Transition Initiatives: $75 million

3

- - o   Complex Crises Fund: $55 million
  - o   Economic Support Fund: $3.89 billion
  - o   Democracy Fund (State): $205 million
  - o   Democracy Fund (USAID): $140 million
  - o   Assistance for Europe, Eurasia, and Central Asia: $770 million
  - o   Migration and Refugee Assistance: $3.93 billion
  - o   U.S. Emergency Refugee and Migrant Assistance Fund: $100,000
- Title IV
  - o   International Narcotics Control and Law Enforcement: $1.40 billion
  - o   Non-Proliferation, Anti-Terrorism, Demining: $870 million
  - o   Peacekeeping Operations: $410 million

138 Stat. at 740–49.

The 2024 Appropriations Act further specified subcategories of purposes, within the above broader categories, for which Defendants must obligate specific amounts of funds. In Section 7019(a), Congress provided that "funds appropriated by this Act under title III through V shall be made available in the amounts specifically designated in the respective tables included in the explanation statement." Those tables prescribe subcategories of required spending for Global Health Programs (USAID)' HIV/AIDs (State – PEPFAR); Development Assistance; Economic Support Fund; International Narcotics Control and Law Enforcement; Nonproliferation, Anti-Terrorism, Demining; and Peacekeeping Operations. Ex. K.

In addition, the 2024 Appropriations Act provides separate directives in Sections 7030 through 7061 providing that "not less than" specific amounts of money "shall be made available" by USAID or State for particular purposes. The funds required to be spent on these subcategories derive from one or more of the fifteen broader categories in Titles III and IV.

The attached declarations specify each of the Title III and Title IV categories, and each of the subcategories, for which Plaintiffs and their members would compete if Defendants fulfilled

4

their legal mandate to make these funds available. Exhibits A and B are summary tables that aggregate the information from the declarations.

Exhibit A shows that Plaintiffs and their members collectively would compete for funds from all of the Title III and Title IV categories, and from nearly all of the subcategories. Of the more than 240 subcategories of foreign assistance appropriations, no Plaintiff would compete for only 11 of them. These subcategories are highlighted red in Exhibit A. These subcategories in aggregate reflect $500,250,000 in appropriations, which is just 1.6% of the $30.4 billion that Congress appropriated in Titles III and IV (excluding the two military categories in Title IV).

As Defendants acknowledged, Plaintiffs need only demonstrate that they are able and willing to compete for certain funds for those funds to be properly included in the preliminary injunction. It bears emphasis, however, that it is far from speculative that Plaintiffs would actually receive awards across these categories and subcategories if Defendants made the funds available. Exhibit B summarizes the categories and subcategories for which Plaintiffs have previously held awards in recent years. It shows that Plaintiffs have held awards in all Title III and Title IV categories, and in the vast majority of subcategories. But, to be clear, willingness to compete is the relevant metric, so the only subcategories of funds that it would be appropriate to exclude from the injunction are the 11 for which no Plaintiff in this case or in *AVAC* would compete.

Plaintiffs accordingly request that the Court enter an indicative ruling that, if the preliminary injunction is affirmed to the extent it is no broader than necessary to provide complete relief to Plaintiffs, the Court would clarify that the preliminary injunction covers all appropriations in the fifteen Title III and Title IV categories described in this motion, with the exception of the 11 subcategories for which no Plaintiff in this case or in *AVAC* would compete.

**CONCLUSION**

The Court should issue an indicative ruling as set forth above.

Dated: August 25, 2025               Respectfully submitted,

                                     /s/ Daniel F. Jacobson
                                     Daniel F. Jacobson (D.C. Bar 1016621)
                                     John Robinson (D.C. Bar 1044072)
                                     Nina Cahill (D.C. Bar No. 1735989)
                                     JACOBSON LAWYERS GROUP PLLC
                                     1629 K Street NW, Suite 300
                                     Washington, DC 20006
                                     Tel: (301) 823-1148
                                     dan@jacobsonlawyersgroup.com

                                     William C. Perdue (D.C. Bar 995365)
                                     Sally L. Pei (D.C. Bar 1030194)
                                     Samuel M. Witten (D.C. Bar 378008)
                                     Stephen K. Wirth (D.C. Bar 1034038)
                                     Dana Kagan McGinley (D.C. Bar 1781561)
                                     Daniel Yablon (D.C. Bar 90022490)
                                     ARNOLD & PORTER KAYE SCHOLER LLP
                                     601 Massachusetts Ave., NW
                                     Washington, DC 20001-3743
                                     Tel: (202) 942-5000
                                     stephen.wirth@arnoldporter.com

                                     *Counsel for Plaintiffs*