IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-cv-402 (AHA) |

## **DECLARATION OF ZAN NORTHRIP (DAI)**

I, Zan Northrip, declare as follows:

1. I am the Executive Vice President for Development Consulting at DAI Global, LLC (DAI). The statements made in this declaration are based on my personal knowledge and my understanding of information made available to me pursuant to my duties at DAI.

2. DAI is an employee-owned global development company headquartered at 7600 Wisconsin Avenue in Bethesda, Maryland. DAI was founded in 1970 and has been a trusted partner of the U.S. government, especially USAID, for more than 50 years, delivering successful projects in more than 150 countries. We perform similar development services for critical U.S. allies, such as the United Kingdom and the European Union, as well as private companies – largely U.S. multinationals in the energy sector, who rely on DAI to make their multibillion-dollar investments more economically impactful in the local economies where they work, both in the United States and around the world. We compete fiercely for our work with all of our clients, including USAID.

3. In prior years, nearly 80% of DAI's revenue (more than $750 million in 2024) came from U.S. foreign assistance funds, including those managed by USAID, the Department

of State, the Millennium Challenge Corporation and its affiliated Millennium Challenge Accounts in Compact Countries.

4. DAI has previously held awards funded from the following Appropriations Act Title III categories: Global Health Programs; Development Assistance; International Disaster Assistance; Transition Initiatives; the Complex Crises Fund; Economic Support Fund; Democracy Fund (State); and Assistance for Europe, Eurasia, and Central Asia.

5. If given the opportunity, DAI would compete for awards in the following categories specified in the Appropriation Act's Title III funding categories: Global Health Programs; Development Assistance; International Disaster Assistance; Transition Initiatives; the Complex Crises Fund; Economic Support Fund; Democracy Fund (State); and Assistance for Europe, Eurasia, and Central Asia.

6. DAI previously held awards and/or would compete for awards in the following subcategories set forth in tables designated by Section 7019(a) of the 2024 Appropriations Act, or identified in Sections 7019 to 7061 of that Act:

| GLOBAL HEALTH PROGRAMS | Previously held | Would compete for future award |
|---|---|---|
| *Maternal and Child Health* | x | x |
| *Polio* |  | x |
| *Maternal and Neonatal Tetanus* |  | x |
| *Nutrition (USAID)* | x | x |
| *Micronutrients* |  | x |
| *Vulnerable Children (USAID)* |  | x |

| | | |
|---|---|---|
| *Blind Children* | | x |
| *HIV/AIDS (USAID)* | x | x |
| *Microbicides* | x | x |
| *Family Planning/Reproductive Health (USAID)* | x | x |
| *Global Health Security* | x | x |
| *Malaria* | x | x |
| *Tuberculosis* | x | x |
| *Other Public Health Threats* | x | x |
| *Neglected Tropical Diseases* | x | x |
| **DEVELOPMENT ASSISTANCE** | | |
| ***Africa*** | | |
| *Democratic Republic of the Congo* | x | x |
| *Ghana* | x | x |
| *Liberia* | x | x |
| *Malawi* | x | x |
| *Higher education programs* | x | x |
| *Somalia* | x | x |
| *The Gambia democracy programs* | | x |

| | | |
|---|---|---|
| *Power Africa* | | x |
| *Young African Leaders Initiative (YALI)* | | x |
| **East Asia and the Pacific** | | |
| *Greater Mekong rule of law and environment* | x | x |
| *Philippines* | x | x |
| *Thailand* | x | x |
| *Timor-Leste* | | x |
| **Middle East and North Africa** | | |
| *Morocco* | | x |
| **South and Central Asia** | | |
| *Maldives* | x | x |
| **Western Hemisphere** | | |
| *Caribbean Economic Growth* | x | x |
| *Colombia* | x | x |
| *Biodiversity* | x | x |
| *Dominican Republic* | x | x |
| *Haiti reforestation* | x | x |
| *Resilient Critical Infrastructure* | | x |
| **Global Programs** | | |
| *Assistive technology* | | x |
| *Development Innovation Ventures* | | x |
| *Disability programs* | | x |
| *Food security research and development* | x | x |
| *Trade capacity building* | x | x |

| | | |
|---|---|---|
| *Victims of torture* | | x |
| **ECONOMIC SUPPORT FUND** | | |
| ***East Asia and the Pacific*** | | |
| *Burma* | x | x |
| *Accountability and justice for Rohingya* | | x |
| *Atrocity prevention and accountability, including the documentation and preservation of evidence, and transitional justice programs* | | x |
| *Thailand* | x | x |
| ***Middle East and North Africa*** | | |
| *Iraq* | | x |
| *Humanitarian assistance for vulnerable and persecuted minorities (§ 7033(b))* | x | x |
| *Justice sector assistance* | | x |
| *Lebanon* | x | x |
| *Middle East Partnership Initiative* | | x |
| *Nita M. Lowey Middle East Partnership for Peace Act* | x | x |
| ***South and Central Asia*** | | |
| *Maldives* | x | x |
| ***Western Hemisphere*** | | |
| *Colombia* | x | x |
| *Afro-Colombian and Indigenous communities* | | x |
| ***Global Programs*** | | |
| *Conflict and Stabilization Operations* | | x |
| *Peace accord/peace process monitoring* | | x |
| *Family Planning/Reproductive Health (USAID)* | x | x |
| *Global Surface Water Inventory* | | |
| *House Democracy Partnership* | | x |

| | | |
|---|---|---|
| *Implementation of Public Law 99-415* | | |
| *Information communications technology training* | x | x |
| *International religious freedom (section 7033)* | | |
| *Marla Ruzicka Fund for Innocent Victims of Conflict* | | |
| *Small Island Developing States* | | x |
| **Separate Directives** | | |
| Human Rights and Democracy Fund of the Bureau of Democracy, Human Rights, and Labor, Department of State (Title III) | x | x |
| assistance and related programs for countries identified in section 3 of the FREEDOM Support Act (22 U.S.C. 5801) and section 3(c) of the SEED Act of 1989 (22 U.S.C. 5402) | x | x |
| Economic Resilience Initiative (§ 7030) | x | x |
| Critical mineral supply chain security (§ 7030(a)(2)) | x | x |
| Economic resilience programs administered by USAID ((§ 7030(a)(3)) | x | x |
| Cyberspace, Digital Connectivity, and Related Technologies Fund (§ 7030(a)(4)) | x | x |
| Economic Support Fund (§ 7030(c)(1)) | x | x |
| Nonproliferation, Anti-terrorism, Demining and Related Programs (§ 7030(c)(1)) | | x |
| Programs and activities to assist governments to improve budget transparency and to support civil society organizations in countries that promote budget transparency (§ 7031(b)(3)) | x | x |
| Promote and support transparency and accountability of expenditures and revenues related to the extraction of natural resources (§ 7031(d)) | x | x |

| | | |
|---|---|---|
| Democracy programs (§ 7032(a)(1)) | x | x |
| Bureau of Democracy, Human Rights, and Labor (§ 7032(a)(2)) | x | x |
| Protection of Civil Society Activists and Journalists (§ 7032(g)) | x | x |
| Protect international freedom of expression and independent media (§ 7032(h)) | x | x |
| Impact evaluations of effectiveness and sustainability of assistance programs (§ 7034(l)(2)) | x | x |
| Egypt (§ 7041) | x | x |
| Jordan (§ 7041(e)) | x | x |
| Tunisia (§ 7041(j)) | x | x |
| Ethiopia (§ 7042(e)) | x | x |
| Indo-Pacific Strategy (§ 7043(c)(1)) | x | x |
| Countering PRC Influence Fund (§ 7043(c)(2)) | | x |
| Laos (§ 7043(d)) | | x |
| Pacific Island Countries (§ 7043(f)(2)) | x | x |
| Vietnam (§ 7043(k)) | x | x |

| | | |
|---|---|---|
| Vietnam--health and disability programs (§ 7043(k)(1)) | x | x |
| Afghan women-lead organizations (§ 7044(a)(3)(B)) | x | x |
| Central America (§ 7045(b)(1)) | x | x |
| Central America--combatting corruption (§ 7045(b)(1)(A)) | x | x |
| Central America--reducing violence against women and girls (§ 7045(b)(1)(B)) | x | x |
| El Salvador, Guatemala, Honduras (§ 7045(b)(1)(C)) | x | x |
| Youth empowerment program (§ 7045(b)(1)(D)) | x | x |
| Colombia (§ 7045(c)) | x | x |
| Haiti (§ 7045(g)) | x | x |
| Nicaragua (§ 7045(i)) | | x |
| Caribbean Basin Security Initiative (§ 7045(k)) | x | x |
| Venezuela democracy programs (§ 7045(l)) | x | x |
| Ukraine staffing (§ 7046(d)(3)) | | |
| Countering Russian Influence Fund (§ 7047(d)) | x | x |

| | | |
|---|---|---|
| Internet Freedom (§ 7050(a)) | x | x |
| Family Planning / Reproductive Health (§ 7058(a)) | x | x |
| Gender Equality and Women's Empowerment (§ 7059(a)-(b)) | x | x |
| Gender-based violence (§ 7059(e)) | x | x |
| Women, Peace, and Security (§ 7059(f)) | x | x |
| Basic Education (§ 7060(a)(1)(A)) | x | x |
| Higher Education (§ 7060(a)(2)) | x | x |
| Food Security and Agricultural Development (§ 7060(d)(1)) | x | x |
| Micro, Small, and Medium-Sized Enterprises (§ 7060(e)) | x | x |
| Programs to Combat Trafficking in Persons (§ 7060(f)) | | x |
| Water and Sanitation (§ 7060(i)) | x | x |
| Biodiversity (§ 7061(b)(1)) | x | x |
| Wildlife Trafficking (§ 7061(b)(2)) | x | x |
| Sustainable Landscapes (§ 7061(d)) | x | x |
| Adaptation (§ 7061(e)) | x | x |
| Clean Energy (§ 7061(f)) | x | x |

| Ocean Plastic Pollution (§ 7061)(h) | | x | | x |

7. Additionally, with respect to Title IV funding, DAI has held awards in the International Narcotics Control and Law Enforcement category, including awards in the subcategory Trans-Sahara Counterterrorism Partnership.

8. If given the opportunity, DAI would compete for funds in the following Title IV funding categories: International Narcotics Control and Law Enforcement; Nonproliferation, Anti-Terrorism, Demining and Related Programs; including the following subcategories: Central America Regional Security Initiative – Costa Rica, Colombia, Combating wildlife trafficking, Cybercrime and intellectual property rights, DRC – Virunga National Park security, Ecuador, Fighting corruption, Mongolia, Pakistan, State Western Hemisphere Regional – Caribbean Basin Security Initiative, Thailand, Trafficking in persons, Office to Monitor and Combat Trafficking in Persons, Vietnam, Africa (Somalia), Political-Military Affairs (Global Peace Operations Initiative), and the Trans-Sahara Counterterrorism Partnership.

9. DAI will be irreparably harmed if the government does not spend the foreign assistance funds that are expiring on September 30, 2025. DAI has competed for and been awarded funding under the categories described above for more than 50 years. As explained above, DAI is heavily reliant on these funds, with nearly 80% of its annual revenues in prior years coming from USAID and from foreign assistance funding from the State Department and other U.S. Government agencies. If the expiring appropriations are not spent, DAI expects to miss out on approximately 60% of the revenues we had previously projected for 2025 and 80% of the revenue we had previously projected for 2026. Such a significant loss of business will create major financial, operational, capacity, and reputational harms for DAI.

10.     For example, the lost opportunity to compete for and potentially be awarded expiring foreign assistance funds is causing, and will cause, DAI to suffer significant additional harms above and beyond harms that it has already experienced from contract terminations and the freeze on disbursements. Among other harms:

- The handful of DAI-held USAID contracts that the government has not terminated will receive fewer or no additional obligated funds, making the projects impossible to perform to contractual specifications, resulting in tens of millions of dollars of lost revenue to DAI and undoing the Government's decision to "preserve" them and the vital services they provide.
- Because the Government has refused to apportion and obligate the funds that the 2024 appropriations laws legally require it to spend, new foreign assistance activities are not being procured in what is typically the busiest procurement season of the U.S. Government's fiscal year. DAI has historically won more than 30% of the USAID awards that it competes for. In recent years, this has meant winning multiyear contracts worth more than $750 million. That opportunity and future revenue will be lost forever if the Government is not forced to meet its legal obligations.
- For years, DAI and other implementers of U.S. foreign assistance have been able to obtain low-cost financing from the largest U.S. financial institutions because of the certainty that enacted appropriations laws would be followed, contracts adhered to, and bills paid on time. Since January 2025, U.S. Government contracts, once the gold standard for accounts receivable, have become risky. Predictably, bankers have staged a significant pull-back from the market. In DAI's case, because of the Government's unlawful acts, we were dropped by a consortium of leading U.S. and U.K. financial institutions. The alternative financing we obtained costs more than twice as much as our previous arrangement and lasts only one year. Without the resumption of programming that would be enabled by obligating the billions of dollars expiring at the end of September, DAI will be further financially and operationally harmed by an ever-smaller market of working-capital providers imposing increasingly costly and onerous terms.
- DAI is an employee-owned company. Due to the Government's freeze and subsequent contract terminations, current and former DAI employees across the United States have lost tens of millions of dollars in the value of their retirement accounts. If the Government refuses to obligate the funds appropriated by Congress, DAI will be denied the opportunity to rebuild enterprise value in what has for decades been its largest and most profitable market. This will harm not only employee shareholders, but also the company itself. With growth prospects curtailed, it would struggle to find new investors.
- DAI's legitimate reliance interests (based on decades of winning and implementing long-term U.S. Government contracts funded by Congressionally appropriated dollars) led it to enter long-term agreements with software providers, landlords, and other vendors. The mass terminations of USAID contracts have left most of these

        agreements significantly oversized for DAI's current needs, and we are working diligently to cancel or renegotiate them. This would have been challenging even if the Government had merely canceled contracts in order to replace them with other foreign assistance spending that it preferred. But if the Government is now allowed to flout Congressional appropriations laws and simply not obligate expiring funds, DAI's opportunity to re-grow and better absorb its legacy agreements will be diminished. Our inability to meet the terms of those agreements would cause permanent reputational damage with numerous U.S. business partners.

- Reputational damage to DAI in non-U.S. markets has already occurred as a result of the U.S. Government's actions, but it has been mitigated by the company's management and stabilization through the crisis created by the freeze and contract terminations we experienced in early 2025. The Government's refusal to obligate Congressionally appropriated dollars would cause further reputational damage to DAI as it competes in non-U.S. Government markets.

- Finally, refusal to obligate Congressionally appropriated funds will mean that DAI's internal capacities will be further diminished. We have been shedding staff throughout this year, but the Government's refusal to obligate billions of additional dollars legally appropriated by Congress will mean that we must further reduce our in-house resources and technical capabilities, severing employment and business relationships, reducing services, and diminishing our global competitiveness in a way that will be difficult to restore.

11. DAI would experience these harms imminently if the government fails to spend foreign assistance funds before they expire on September 30. Had the government obligated and awarded these funds in the ordinary course, DAI would very likely have already received numerous awards and would already be receiving payments under some of them. DAI has been able to continue as a going concern for the past few months as a result of finally receiving payments for months of unpaid work already performed for the U.S. Government between November 2024 and February 2025, and from our ongoing work for other clients. However, if the expiring appropriations are not made available, DAI will be further financially, operationally, and reputationally harmed, in a way that it may not ever be able to fully repair.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 29, 2025.

*[signature]*

Zan Northrip
Executive Vice President
DAI Global, LLC