## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GLOBAL HEALTH COUNCIL, *et al.*,

       *Plaintiffs*,

   v.

DONALD J. TRUMP, *et al.*,

       *Defendants*.

Civil Action No. 25-cv-402 (AHA)

## DEFENDANTS' RESPONSE TO PLAINTIFFS' STATEMENT OF
## UNDISPUTED MATERIAL FACTS

Under Federal Rule of Civil Procedure 56, Defendants submit this response to Plaintiffs' statement of material facts in support of Plaintiffs' Motion for Temporary Restraining Order, Motion for Preliminary Injunction, Motion for Partial Summary Judgment (Doc. 133-12).

Defendants respond below to Plaintiffs' statement of material facts (Doc. 133-2), without waiving their position that where, as here, Plaintiffs seek APA review of agency action, factual findings concerning the merits (as opposed to jurisdictional issues) are not warranted because the District Court "sits as an appellate tribunal," and "the 'entire case' on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (citing *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993); and *Univ. Med. Ctr. of S. Nevada v. Shalala*, 173 F.3d 438, 440 n.3 (D.C. Cir. 1999)). The District Court accordingly does not "engage in lengthy fact finding" (*Pharm. Research & Mfrs. of Am. v. FTC*, 44 F. Supp. 3d 95, 111 (D.D.C. 2014)), because "[g]enerally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions" (*James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085,

1

1096 (D.C. Cir. 1996)).

Where Defendants state below that a statement of material fact is "undisputed" in whole or in part, such a statement applies exclusively to this action and does not constitute an admission for any other purposes, including any other administrative or judicial determinations or proceedings.

Allegations and purported facts that are not material are not properly included in a statement of material facts. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

The format of this document is as follows: The text of the facts originally alleged in Plaintiffs' statement is set forth in italics at the beginning of each paragraph. The balance of each numbered paragraph contains Defendants' response as to that particular alleged fact.

1.     In the Further Consolidated Appropriations Act of 2024 (the "2024 Appropriations Act"), Congress appropriated more than $30 billion in non-military foreign assistance funding to USAID and the State Department. Pub. L. No. 118-47, div. F, tits. II–III, 138 Stat. 460, 740–49 (2024).

**RESPONSE:** Undisputed.

2.     Congress appropriated these funds in Titles III and IV of the 2024 Appropriations Act across fifteen broad categories of purposes. Of these fifteen categories, the following categories of funds will expire on September 30, 2025:

- Global Health Programs (USAID): $3.99 billion;

- Development Assistance: $3.93 billion

- Economic Support Fund: $3.89 billion

- Democracy Fund (State): $205 million

- Democracy Fund (USAID): $140 million

- Assistance for Europe, Eurasia, and Central Asia: $770 million

- International Narcotics Control and Law Enforcement: $1.40 billion

- Non-Proliferation, Anti-Terrorism, Demining: $870 million

- Peacekeeping Operations: $291 million

**RESPONSE:** Undisputed.

3.     Congress did not employ any language in the 2024 Appropriations Act that gives Defendants discretion to spend less than the full amounts appropriated in any of the fifteen categories. See id.

**RESPONSE:** This paragraph sets forth a legal conclusion rather than a statement of fact. Accordingly, no response is required. To the extent a response is deemed required,

disputed.

4. *Within the fifteen categories, the 2024 Appropriations Act further specified subcategories of purposes for which USAID and State must obligate specific amounts of funds. Id. § 7019(a), 138 Stat. at 771.*

**RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, disputed.

5. *In Section 7019(a) of the 2024 Appropriations Act, Congress provided that "funds appropriated by this Act under title III through V shall be made available in the amounts specifically designated in the respective tables included in the explanation statement." Id. (emphasis added).*

**RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, disputed.  Defendants respectfully refer the Court to the cited statute for a full and accurate statement of its contents.

6. *The tables in Section 7019(a) include line items with specific amounts that must be obligated for narrowly defined purposes. See Further Consolidated Appropriations Act, 2024, Comm. Print of the H. Comm. on Appropriations, Legislative Text and Explanatory Statement (excerpts), ECF 125-11.*

**RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, disputed.

7. *Congress provided that, for most line items in the tables, Defendants "may only*

*deviate up to 10 percent from the amounts specifically designated in the respective tables," and*

*for the roughly $10 billion in line items for Global Health Programs, the agencies may not*

*deviate from the table amounts at all. 2024 Appropriations Act §§ 7019(b), (d)(2), 138 Stat. at*

*771.*

**RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, disputed.  Defendants respectfully refer the Court to the cited statute for a full and accurate statement of its contents.

*8.      Sections 7030 to 7061 of the 2024 Appropriations Act prescribe subcategories*

*for which USAID and State must spend minimum amounts of funds. Id. §§ 7030–61, 138 Stat. at*

*780– 842.*

**RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, disputed.

*9.      Sections 7030 to 7061 of the 2024 Appropriations Act contain directives that*

*"not less than" specific amounts of money "shall be made available" by USAID or State for*

*particular purposes. Id.*

**RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, disputed.  Defendants respectfully refer the Court to the cited statute for a full and accurate statement of its contents.

*10.      For instance, the 2024 Appropriations Act provides that "not less than*

*$400,000,000 shall be made available for a Countering PRC Influence Fund to counter the*

influence of the Government of the People's Republic of China and the Chinese Communist Party." *Id. §§ 7043(c)(2), 138 Stat. at 812.*

> **RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, disputed.  Defendants respectfully refer the Court to the cited statute for a full and accurate statement of its contents.

11.    *Across Section 7030 to 7061 and the tables made binding by Section 7019(a), the 2024 Appropriations Act contains roughly 240 subcategories of purposes for which Congress required specific amounts of funds—or "not less than" specific amounts of funds—that "shall be made available" by Defendants, which collectively add up to nearly $25 billion in appropriations. Id. §§ 7019, 7030–61, 138 Stat. at 771–842.*

> **RESPONSE:**  This paragraph sets forth a legal conclusion rather than a statement of fact.  Accordingly, no response is required.  To the extent a response is deemed required, disputed.  Defendants respectfully refer the Court to the cited statute for a full and accurate statement of its contents.

12.    *Every annual appropriations act from 2019 through 2023 used the same structure as the 2024 Appropriations Act. They all appropriated funds across the same fifteen broad categories, and then required the specific or minimum amounts "shall be made available" for identified subcategories set forth in the tables appended to the act and the separate directives provided later in the bill text. See, e.g., id. §§ 7043(c)(2), 138 Stat. at 812. Some funds from these prior appropriations acts will expire on September 30, 2025.*

> **RESPONSE:**  Defendants do not dispute the first sentence of this paragraph.  The second sentence of this paragraph sets forth a legal conclusion rather than a statement

of fact.  Accordingly, no response is required.  To the extent a response is deemed

required, disputed.  Defendants respectfully refer the Court to the cited statute for a full

and accurate statement of its contents.  Defendants do not dispute the third sentence of

this paragraph.

13.    *On his first day in office, President Trump issued an executive order purporting*

*to immediately freeze all foreign assistance funding. Exec. Order No. 14,169 at § 2, 90 Fed.*

*Reg. 8619 (Jan. 20, 2025).*

**RESPONSE:**  Disputed.  The Executive Order directed "[a]ll department and agency

heads with responsibility for United States foreign development assistance programs

shall immediately pause new obligations and disbursements of development assistance

funds . . . pending reviews of such programs for programmatic efficiency and

consistency with United States foreign policy, to be conducted within 90 days[.]" Exec.

Order No. 14,169 at § 3, 90 Fed. Reg. 8619 (Jan. 20, 2025).  Defendants respectfully

refer the Court to the cited Executive Order for a full and accurate statement of its

contents.

14.    *The Executive Order further directed that "no further United States foreign*

*assistance shall be disbursed in a manner that is not fully aligned with the foreign policy of the*

*President." Id.*

**RESPONSE:**  Disputed.  The Executive Order stated "[i]t is the policy of the United

States that no further United States foreign assistance shall be disbursed in a manner

that is not fully aligned with the foreign policy of the President of the United States."

*Id*. at § 2.  Defendants respectfully refer the Court to the cited Executive Order for a

full and accurate statement of its contents.

*15.*    To implement the Executive Order, the Secretary of State and officials at USAID issued a series of agency memoranda immediately halting virtually all foreign assistance funding and ordering implementing partners to stop work. *See Memorandum from the Secretary of State*, 25 STATE 6828 (Jan. 24, 2025); USAID, *Notice on Implementation of Executive Order on Reevaluating and Realigning United States Foreign Aid* (Jan. 24, 2025); USAID, *Initial Instructions for Implementing Executive Order Reevaluating and Realigning United States Foreign Aid* (Jan. 22, 2025); USAID, *Follow-Up Instructions for Implementing Executive Order Reevaluating and Realigning United States Foreign Aid* (Jan. 24, 2025); USAID, *Clarification on Implementing the President's Executive Order on Reevaluating and Realigning United States Foreign Aid* (Jan. 26, 2025).

**RESPONSE:**    Disputed.    Though the Department of State and USAID issued memoranda implementing the Executive Order, Secretary Rubio approved foreign assistance waivers, including waivers for foreign military financing for Israel and Egypt, emergency food expenses, administrative expenses, and legitimate expenses incurred before the foreign assistance pause went into effect, and a waiver on the pause for life-saving humanitarian assistance during the review. ECF No. 34 at 5. Defendants respectfully refer the Court to the cited document for a full and accurate statement of its contents.

*16.*    *The government also began terminating foreign assistance awards en masse. See, e.g., ECF No. 7-4 at 2, 5, 7, 13; ECF Nos. 20, 20-1.*

**RESPONSE:**    Disputed.    Defendants led a rigorous multi-level review process that began with spreadsheets including each contract, grant, or funding instrument where each line of the spreadsheeting reflected one such agreement and included information

about the recipient, the amount of the award, the subject matter, and a description of the project that often included the location of the project. ECF No. 92 at 10. Defendants respectfully refer the Court to the cited document for a full and accurate statement of its contents.

17. *President Trump called for USAID to be "CLOSE[D] ... DOWN." @realDonaldTrump, TruthSocial (Feb. 7, 2025, 9:31AM), https://tinyurl.com/3wmdpvex*

**RESPONSE:** Undisputed.

18. *Former senior Presidential advisory Elon Musk, while in his official position, stated that "USAID is a criminal organization" and that it is "[t]ime for [USAID] to die." @elonmusk, X (Feb. 2, 2025, 12:20PM), https://tinyurl.com/4bnu7b7z (statement from then–presidential advisor Elon Musk").*

**RESPONSE:** Undisputed.

19. *Secretary Rubio announced on March 20, 2025 that Defendants were "officially cancelling 83% of the programs at USAID." @Marco Rubio, X (Mar. 20, 4:55AM), https://tinyurl.com/yu9mytdk.*

**RESPONSE:** Undisputed.

20. *On March 28, the State Department sent a Congressional Notification to Congress stating that numerous USAID functions "would be eliminated" or "abolished." Congressional Notification Transmittal Letter, March 28, 2025, at 4, http://bit.ly/42t0Yvn.*

**RESPONSE:** Disputed. Secretary Rubio on March 28, 2025 notified Congress of the intent of State and USAID to undertake a reorganization that would involve realigning certain USAID functions and discontinue other USAID functions. Congressional Notification Transmittal Letter, March 28, 2025, at 1, http://bit.ly/42t0Yvn. There,

State also informed Congress of its intent to restructure certain State bureaus and offices that would implement programs and functions realigned from USAID.  *See id*. The notification also stated that after review, USAID had "discontinued" "numerous programs," and providing an updated count of retained instruments by noting that "898 active grants, cooperative agreements, and contracts remain in place."  *Id*. at 3. Defendants respectfully refer the Court to the cited Congressional Notification for a full and accurate statement of its contents.

21.    *The offices and functions that the letter indicated would be eliminated included the Bureau for Democracy, Human Rights and Governance; the Bureau for Conflict Prevention and Stabilization; the Bureau for Inclusive Growth, Partnership, and Innovation; the Bureau for Resilience, Environment, and Food Security; and more. Id. at 3–4, 11.*

**RESPONSE:**   Disputed.  The Notification indicated the following USAID programs advanced the Administration's foreign policy objectives: "humanitarian assistance, global health functions, strategic investment, and limited national security programs." *Id*. at 3.  Those "functions would be realigned to relevant bureaus and offices in the Department of State to ensure continuity of critical operations[.]"  *Id*. at 4.  The letter further indicated that "[o]ther functions are likely to be substantially duplicative of existing functions and capabilities at the [State] Department, and would be eliminated[.]"  *Id*.  Defendants respectfully refer the Court to the cited Congressional Notification for a full and accurate statement of its contents.

22.    *The March 28 Notification included a chart showing that USAID had nearly $24 billion in appropriations that remain unobligated. Id. at 8–9.*

**RESPONSE:**   Undisputed.

10

23.    *The March 28 Notification gave no indication as to how the government intended to obligate these funds in light of its proposed plan to eliminate USAID programs.*

**RESPONSE:**    Defendants do not dispute the March 28 Notification listed the unobligated balances of the accounts at USAID as of March 23, 2025, and did not offer any further comments on the accounts.  *Id*.  Defendants respectfully refer the Court to the cited Congressional Notification for a full and accurate statement of its contents.

24.    *Consistent with the March 28 Notification, on July 1, USAID officially shut down and ceased its operations. See Declaration of Jeremy Lewin, ECF No. 99-1.*

**RESPONSE:**    Disputed.  Pursuant to the March 28 Notification, State assumed responsibility for the implementation of USAID programming.  Declaration of Jeremy Lewin, ECF No. 99-1 ¶ 6.  The Administration has also proposed legislation to authorize abolishing USAID as an independent establishment.  *Id*.  Defendants respectfully refer the Court to the cited declaration for a full and accurate statement of its contents.

25.    *There are roughly $12 billion in funds from the 2024 Appropriations Act that remain unobligated and will expire on September 30, 2025. 8/25/25 Hr'g Tr., ECF No. 127 at 11.*

**RESPONSE:**  This paragraph constitutes a paraphrase and characterization of the cited transcript.  Approximately $4 billion in funds from the 2024 Appropriations Act is not available for obligation due to the rescission package the Administration sent to Congress on August 28, 2025.  8/29/25 Hr'g Tr. ECF No. 131 at 12.  Defendants estimate there are about $6.5 billion in funds expiring on September 30, 2025.  *Id*. at 13. An additional $940 million in funds are for Department of State diplomatic

programs, which are not foreign assistance. *Id*. at 16. Defendants respectfully refer the Court to the cited transcript for a full and accurate statement of its contents.

26.     *There are additional funds from prior appropriations acts that are unobligated and will expire on September 30, 2025.*

**RESPONSE:** Undisputed.

27.     *Defendants asserted at the August 25 hearing that they have approved plans to obligate only $3.5 billion of the remaining expiring funds. 8/25/25 Hr'g Tr., ECF No. 127 at 11.*

**RESPONSE:** Undisputed. However, as Defendants clarified at the August 29 hearing, Defendants can provide additional information about approved plans if the Court requests. 8/29/25 Hr'g Tr. ECF No. 131 at 18. Defendants respectfully refer the Court to the cited transcripts for a full and accurate statement of its contents.

28.     *Defendants are attempting a "pocket rescission" of some of the roughly $12 billion in funds from the 2024 Appropriations Act that remain unobligated. See ECF No. 129. On August 28, President Trump submitted a rescissions packet to Congress to effectuate Defendants' pocket rescission strategy. ECF No. 129.*

**RESPONSE:** This paragraph sets forth a legal conclusion rather than a statement of fact. Accordingly, no response is required. To the extent a response is deemed required, disputed. Defendants respectfully refer the Court to the cited proposal for a full and accurate statement of its contents.

29.     *The August 28 rescissions package includes more than $4 billion in expiring foreign aid funds that were appropriated in the 2020, 2021, and 2024 Appropriations Acts. ECF Nos. 129, 129–3.*

**RESPONSE:**  This paragraph does not set forth facts that are material to the outcome of Plaintiffs' pending motion. *See Anderson*, 477 U.S. at 247-48. Accordingly, no response is required. To the extent that a response is required, disputed.

30.    *The appropriations included in the August 28 rescissions package include $3.2 billion in development assistance from the 2024 Appropriations Act. The rescissions proposal states that "[t]he rescission would align with the Administration's efforts to return funding from wasteful U.S. Agency for International Development programs to the American taxpayers." ECF No. 129–3 at 15.*

**RESPONSE:**  Undisputed.  Defendants respectfully refer the Court to the cited proposal for a full and accurate statement of its contents.

31.    *The August 28 rescissions package also includes more than $600 million from the Democracy Fund appropriated in various years. Id. at 3–6. The rescissions proposal states that "[t]he rescission would return funding from wasteful foreign assistance programs to taxpayers in alignment with America First foreign policy." Id.*

**RESPONSE:**  Defendants dispute the first sentence of this paragraph. The August 28 rescissions package proposes $322,056,107 in rescissions from the Democracy Fund.  *See* ECF No. 129-3 at 3–6.  Defendants do not dispute the second sentence of this paragraph. Defendants respectfully refer the Court to the cited proposal for a full and accurate statement of its contents.

Dated: August 31, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar 978017)
Senior Counsel
JOSHUA N. SCHOPF (D.C. Bar 465553)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Phone: (202) 616-8488
Email: indraneel.sur@usdoj.gov

*Counsel for Defendants*