IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-cv-400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-cv-402 (AHA) |

**REPLY IN SUPPORT OF
<u>DEFENDANTS' MOTION FOR CLARIFICATION</u>**

Defendants have sought clarification on three points—not because this Court's orders are unclear, but because Plaintiffs have been overreaching in asserting unreasonable interpretations of those orders, and Defendants require clarity to resolve these disputes, complete their compliance efforts, and move on. This Court should therefore grant the motion.

**1.** The Court should confirm and clarify that the Order and PI do not require Defendants to restore awards terminated before February 13 if Defendants later determined—through post-TRO application of individual award terms and Defendants' independent legal authorities—that those awards should be terminated, effective as of the post-TRO determination.

1

GHC Plaintiffs contend (Opp. 3-4) (GHC Doc. 124) that granting such clarification would invite Defendants "to evade the injunction through *post hoc* ratification." Not so. Defendants understand that, under the Order, they cannot implement *pre*-TRO terminations by giving new reasons for those terminations. Rather, consistent with the entirety of the Court's previous orders in these suits regarding the enduring availability of Defendants' agreement-level and regulatory authorities, Defendants properly seek to implement *post*-TRO terminations, reached through application of those authorities, of instruments that were the subject of (now enjoined) *pre*-TRO terminations. Such post-TRO terminations are "*new* agency action[s]" of the kind GHC Plaintiffs appear to acknowledge are permissible. *See* GHC Opp. 4 (quoting *DHS v. Regents of the Univ. of Calif.*, 591 U.S. 1, 21 (2020)). The key practical difference is the termination date—terminations predating February 13 are void (if based on the challenged Executive Order), but terminations of the same instruments effective *after* February 13 are outside the scope of the PI.

GHC Plaintiffs do not repeat, in their opposition brief, the atextual construction of the Order they advanced in pre-motion discussions in which they argued that the Order invariably requires Defendants to "restore" all the instruments terminated pre-TRO. Defendants are seeking clarification in part to confirm that this (apparently now-abandoned) construction is incorrect.

Such a restoration-requirement construction of the Order and PI would also be incompatible with the Supreme Court's intervening decision in *National Institutes of Health v. American Public Health Association*, 606 U.S. ___, ___, 2025 WL 2415669 (U.S. Aug. 21, 2025) (*NIH*), issued after Defendants moved to clarify. In *NIH*, the Supreme Court granted a stay because the district court lacked jurisdiction over claims "based on" disputed federal "grants or to order relief designed to enforce any 'obligation to pay money' pursuant to those grants." *See id.*, 2025 WL 2415669, at *1 (applying *Dep't of Ed. v. Calif.*, 145 S. Ct. 966 (2025) (per curiam)).

As explained in a concurring opinion by Justice Barrett (joined by the four Justices who would have granted the stay application in full), the stay as to termination-based challenges was warranted because "the District Court likely lacked jurisdiction to hear *challenges to the grant terminations*, which belong in the Court of Federal Claims (CFC)." *Id.* at *2 (Barrett, J., concurring) (emphasis added). Justice Barrett and a different set of four Justices voted to deny the stay application as to the challengers' Administrative Procedure Act claims seeking invalidation of the agency guidance that issued before those terminations. Justice Barrett explained further that, insofar as a claim challenges agency guidance documents, that claim is properly partitioned from "a claim 'founded . . . upon' contract that only the CFC can hear." *Id.* (Barrett, J., concurring) (quoting 28 U.S.C. § 1491(a)(1)). Applying that logic here, the Court had jurisdiction over claims challenging agency memoranda applying Executive Order 14169—but those claims could at most support vacatur of those memoranda, not the "restoration" of terminated grants (let alone grants that the agencies determined to re-terminate independent of the challenged Executive Order).

**2.** The Court should confirm and clarify that the Order and PI do not restrain Defendants from implementing any pre-TRO termination to which the awardee has manifested consent (including through communications post-dating the Order).

Although GHC Plaintiffs appear to agree in principle that consented-to terminations are valid, they assert that awardees who consented "had no other option because Defendants were violating the injunction," and that "awardees should have an opportunity to make a *new* decision on how to proceed once the government comes into compliance with the preliminary injunction." Opp. 5 (emphasis added). That is wrong for two reasons, and ultimately serves only to underscore the problems with universal injunctions that the Supreme Court recognized in *Trump v. CASA, Inc.*, 145 S. Ct. 2540 (2025).

First, Defendants have not violated but rather have been "in[] compliance with" the PI, which (again) did not puport to alter, but instead explicitly called back to, the TRO and subsequent orders that left unimpaired Defendants' agreement-level and regulatory authorities.

Second, there is no basis for concluding that grantees who have already manifested consent "had no other option." GHC Plaintiffs cite no facts or precedents supporting that notion. GHC Plaintiffs may be representing that they *themselves* have not consented to a termination. But under *CASA* and *Board of County Commissioners of Weld County, Colorado v. EPA*, 72 F.4th 284, 296 (D.C. Cir. 2023), such a representation about GHC Plaintiffs' own position cannot possibly mean that *nonparty* consents previously given to the agencies are invalid. Mem. 6-7 (GHC Doc. 115). Requiring Defendants to obtain new consents from nonparties would obviously be "more burdensome to" Defendants "than necessary to provide complete relief'" to GHC Plaintiffs, and thus starkly illustrates the degree to which Plaintiffs would have the Court's PI exceed the scope of its equitable power under more recent Supreme Court authority. *See CASA*, 145 S. Ct. at 2557; *Weld Cnty.*, 72 F.4th at 296. (For their part, the AVAC Plaintiffs' opposition to clarification (AVAC Doc. 134) is tethered to no stake in the disposition of the motion, because none of their agreements are subject to pre-TRO terminations.)

**3.** The Court should confirm and clarify that the PI and Order do not apply to awards that were terminated for reasons unrelated to EO 14169. GHC Plaintiffs' contention that no such clarification "is necessary" (GHC Opp. 5) is squarely refuted by their own inclusion, on the lists of their pre-TRO terminations they sent Defendants in pre-motion correspondence, of awards Defendants terminated in explicit reliance on executive orders other than EO 14169. But their apparent agreement on the legal principle is well-taken, and should be memorialized in a clarifying order.

Dated: August 31, 2025

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

YAAKOV M. ROTH
Principal Deputy Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Federal Programs Branch

*/s/ Indraneel Sur*
INDRANEEL SUR (D.C. Bar 978017)
Senior Counsel
JOSHUA N. SCHOPF
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 616-8488
Email: indraneel.sur@usdoj.gov

*Counsel for Defendants*