IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-cv-402 (AHA) |

**GLOBAL HEALTH COUNCIL PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR ORDER TO SHOW CAUSE**

i

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1
ARGUMENT ........................................................................................................................ 1
CONCLUSION ..................................................................................................................... 7

## INTRODUCTION

Defendants' opposition brief and Defendant Lewin's declaration confirm that Defendants are attempting to evade this Court's injunction, by evading Congress's specific spending directives set forth in Sections 7030–7061. Defendants do not dispute that they plan to attribute the appropriations in the President's special message to those directives so as to maximize the number of directives that go unfilled, even when they could use appropriations not included in the rescission proposal to meet the directives. Defendants also admit that they plan to funnel funds into generic instruments that do not specify statutory purposes. And on both fronts, they fail to provide any factual basis to support their bare assertions that their plans are consistent with historical practice. Defendants' response heightens, not mitigates, the concerns that they are not complying with the injunction.

Plaintiffs do not seek to compel Defendants to obligate any funds for which the Supreme Court has granted a partial stay, and nothing in the partial stay prevents this Court from ordering relief on the portion of the injunction for which Defendants did not seek to stay. The Court should order Defendants to show cause why they are not complying with the injunction and compel testimony from Defendant Lewin on the specific facts his new declaration puts at issue.

## ARGUMENT

1.  Defendants do not dispute the central allegations in Plaintiffs' motion: that Defendants are intentionally "attributing" appropriations in the rescission proposal to the directives in Sections 7030–7061, and that, based on this tactic, they will not comply with the directives—even if there are other funds that could be used to meet the directive. Plaintiffs submitted a sworn declaration from a State Department official attesting that Defendants are seeking "to maximize the number and amount of funding directives tied to funds proposed for rescission." Doe Decl. ¶ 8. In other words, rather than making all efforts to comply with the

1

Section 7030–7061 directives as this Court required, Defendants are seeking to comply with as few of the directives as possible.

Defendants do not deny that this is their plan; nor do they attempt to defend their conduct as consistent with the plain terms of the Court's injunction. Instead, Defendants contend that "it would be mathematically impossible for Defendants to adhere to *all* of the earmarks while still withholding funds" included in the rescission proposal. Opp. 2 (emphasis added) (citing Lewin 9/21 Decl. ¶¶ 4, 9 (ECF No. 132-1)). But Defendants provide no factual support for this contention beyond Defendant Lewin's say so. That raises serious doubt whether Defendants have actually analyzed the feasibility of full compliance with all the directives without using the appropriations in the rescission proposal (except for the four directives where Congress limited Defendants to using Development Assistance funds, *see* Mot. 13), such as through attributing appropriations to multiple directives as is commonly done. And even if carrying out all the directives were mathematically impossible, Defendants do not explain why they are not complying with as many of the mandatory directives as possible—let alone why they are intentionally "maximiz[ing] the number and amount of funding directives tied to funds proposed for rescission." Doe Decl. ¶ 8.

Lewin asserts that "State has reasonably attributed funds included in the Special Message to relevant earmarks and directives based on the nature of the accounts, existing plan levels, and historical spending for the accounts." Lewin 9/21 Decl. ¶¶ 4, 9. But again, Defendants provide no elaboration or factual support for this vague assertion. To the extent that Lewin's declaration is suggesting that Defendants are attributing appropriations to the directives in the same (or similar) manner that they did in prior years, Defendants should have no quarrel with producing the factual information that would support that assertion, as Plaintiffs have requested.

Defendants contend that "it would be improper for this Court to fashion compliance relief in the face of the Supreme Court's administrative stay." Opp. 3. Defendants do not provide any reasoning to support this contention, other than that "Plaintiffs' contention concerns 'funds . . . subject to the President's August 28, 2025 rescission proposal.'" *Id.* Defendants do not contend that the special message itself requires Defendants to attribute any appropriations to the directives in Sections 7030–7061; Defendants are *choosing* to do so.

The Supreme Court's partial administrative stay does not pose an obstacle to this Court enforcing the portion of its injunction concerning the mandatory directives in Section 7030–7061, which has not been stayed. Defendants expressly represented to the Supreme Court that their stay application was "limited to the $4 billion that are the subject of the President's rescission proposal." Appl. at 17 n.4, No. 25A269 (U.S. Sept. 8, 2025). They explained that "[t]he dispute over the new injunction has narrowed to the $4 billion that the President designated to Congress for proposed rescission," and that a stay was needed because "the injunction forces the President to obligate [these] funds." Reply at 1–2, No. 25A269 (U.S. Sept. 15, 2025). As for the $6.5 billion that is not affected by the stay, Defendants represented to the Supreme Court that "[t]he government had already planned to obligate . . . those funds by September 30, so as to that tranche, the injunction is (as of now) merely an unnecessary nuisance." Appl. at 2, No. 25A269 (U.S. Sept. 8, 2025). Defendants never suggested that a stay with respect to the $4 billion would in any way affect their ability to comply with the Court's order as to the remaining $6.5 billion that is not covered by the rescission proposal.

As long as a stay remains in place, Plaintiffs do not seek to enforce the injunction insofar as it "forces the President to obligate" the $4 billion in the rescission proposal. Plaintiffs do not seek to require Defendants to spend any of the appropriations in the rescission proposal at all. Plaintiffs' motion treats it as a starting point that Defendants do *not* need to obligate any of the

3

appropriations in the rescission proposal (as long as the stay is in place). The question, rather, is whether Defendants must comply with the Section 7030–7061 directives *assuming* that the rescission proposal is deemed effectuated. They must. Defendants do not dispute that the President's special message does not propose rescinding any of the statutory directives in Section 7030–7061. Defendants thus do not dispute that those statutory mandates remain enacted provisions of public law regardless of whether the rescission proposal is deemed effectuated. And Defendants do not dispute that it is binding D.C. Circuit precedent that the Executive Branch "must follow statutory mandates *so long as there is appropriated money available* and the President has no constitutional objection to the statute." *In re Aiken Cnty.*, 725 F.3d 255, 259 (D.C. Cir. 2013) (emphasis added).

In short, requiring Defendants to carry out the Section 7030–7061 mandates where there are appropriations available other than those in the rescission proposal would not contravene the administrative stay providing that Defendants need not obligate "funds that are subject to the President's August 28, 2025 rescission proposal currently pending before Congress." Order, No. 25A269 (U.S. Sept. 9, 2025). Defendants could have asked the Supreme Court to stay the injunction's requirement to comply with the Section 7030–7061 mandates, but they chose not to do so. Defendants must accept the consequences of that choice.

2. Defendants effectively admit that they intend to follow through on the plan described in the September 4 status report, which is to obligate funds into instruments that do not specify the purposes from the Section 7019(a) tables or the directives in Sections 7030–7061 for which they are obligating funds. They respond instead that "there is nothing unusual or improper about proceeding in that way." Opp. 3 (citing Lewin 9/21 Decl. ¶ 10). Nowhere do Defendants address the legality of proceeding in this manner under the preliminary injunction or the relevant appropriations acts. The injunction is clear: Defendants must "obligate, by September 30, 2025,

4

for the uses and purposes specified by Congress, . . . for particular uses and purposes in Section 7019(a) and Sections 7030–7061," the expiring funds. ECF No. 139 at 41. Defendants cannot ignore the Court's injunction based on their unilateral assertions as to what is "usual" or "proper." Opp. 3.

3. Defendants continue to refuse to provide basic factual information about the expiring funds from appropriations acts prior to 2024, despite having provided such information for the appropriations from the 2024 Appropriations Act. Defendants ask the Court to simply trust that they will comply with the injunction as to these funds, but Defendants' conduct with respect to the 2024 Appropriations Act funds gives every reason to require disclosure of information on the amount of pre-2024 funds at issue and how Defendants will obligate them.

4. Defendants also confirm that they will not rely on Lewin's determination to deviate by more than 5% from the table amounts for Global Programs funded by the Economic Support Fund. Given that confirmation, Plaintiffs do not pursue this issue further at this time.

5. Defendants' response underscores the need for a deposition or live testimony from Defendant Lewin. Live testimony may be preferable given the short time until September 30 and the likelihood Defendants will raise privilege and other objections to questions that will require ruling by this Court. Defendants double down on their reliance on Lewin as their sole source for their factual assertions, relying on a new declaration from him to address Plaintiffs' contentions.

Many of Lewin's latest assertions raise more questions than they answer. As mentioned, Lewin asserts that Defendants have "reasonably attributed funds included in the Special Message to relevant earmarks and directives based on the nature of the accounts, existing plan levels, and historical spending for the accounts." Lewin Decl. ¶ 9. The vagueness of this statement elides the critical facts for assessing compliance with the injunction, including whether Defendants are

5

attributing funds in the rescission proposal toward meeting directives even when the "nature of the accounts" for other appropriations permit spending those appropriations on the directive, what "plan" Lewin is referencing (and what its "levels" are), and how the current attributions compare to the "historical" attributions that have been done to meet the same directives. Lewin's assertions regarding Defendants' plan to obligate funds into instruments that do not specify the purposes for which funds are being obligated strongly suggest that Defendants will not obligate funds by September 30 for the purposes specified by Congress, and Lewin provides little factual information to dispel that concern.

The Court should therefore allow "follow-up questioning" about Lewin's unsupported factual assertions. *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008). Plaintiffs have no way to test the truth of these assertions because Defendants have provided no factual basis or explanation for them. And the need for a deposition is especially acute because Lewin nowhere addresses the allegation in the declaration submitted by Plaintiffs that Defendants are intentionally seeking "to maximize the number and amount of funding directives tied to funds proposed for rescission." Doe Decl. ¶ 8. Plaintiffs should be able to question Lewin on that allegation, and on Lewin's statements regarding purported "historical" "agency practice." *Id.* ¶ 9. There is a strong likelihood that a deposition would reveal that Defendants have no legal basis for failing to spend these funds.

Authorizing Defendant Lewin's testimony is squarely within this Court's discretion because, unlike in the case on which Defendants rely, Lewin has "information in [his] possession" "that [Plaintiffs] could not obtain from published reports and available agency documents." *Simplex Time Recorder Co. v. Sec'y of Lab.*, 766 F.2d 575, 587 (D.C. Cir. 1985); *see generally* Defs.' Reply (ECF No. 110). And most critically, as Plaintiffs have explained,

6

Defendants have voluntarily made Lewin a fact witness to these proceedings by having him submit a declaration. Plaintiffs have a right to examine him on the assertions he made.

## CONCLUSION

For the above reasons, the Court should grant Plaintiffs' motion for an order to show cause and further require live testimony or a deposition of Defendant Lewin.

Dated: September 22, 2025                                Respectfully submitted,

/s/ *Daniel F. Jacobson*
Daniel F. Jacobson (D.C. Bar 1016621)
Stephen K. Wirth (D.C. Bar 1034038)
John Robinson (D.C. Bar 1044072)
Nina Cahill (D.C. Bar 1735989)
JACOBSON LAWYERS GROUP PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
Tel: (301) 823-1148
dan@jacobsonlawyersgroup.com

*Counsel for Plaintiffs*