## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AIDS VACCINE ADVOCACY COALITION, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF STATE, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-00400 (AHA) |
| GLOBAL HEALTH COUNCIL, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants*. | Civil Action No. 25-00402 (AHA) |

**Order**

In March 2025, this Court issued a preliminary injunction that, relevant here, enjoined the agency Defendants "from enforcing or giving effect to" their directives to suspend foreign aid funds before the Court's February 13, 2025, temporary restraining order ("TRO"), including "by giving effect to any terminations, suspensions, or stop-work orders issued between January 20, 2025, and February 13, 2025, for any grants, cooperative agreements, or contracts for foreign assistance." *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, 770 F. Supp. 3d 121, 155 (D.D.C. 2025), *vacated in part sub nom. Glob. Health Council v. Trump*, __ F.4th __, No. 25-5097, 2025

WL 2480618 (D.C. Cir. Aug. 28, 2025). Defendants did not appeal that part of the preliminary injunction, and it remains in effect.

In June 2025, the *Global Health* Plaintiffs moved to enforce the injunction on various grounds, including as to certain pre-TRO terminations. *Glob. Health*, ECF No. 97-1 at 20–21. Plaintiffs pointed to communications stating agency leadership "confirm[ed] that the previously issued 462 contracts, grants, and cooperative agreement terminations between January 20 and February 13, 2025 have been issued after individualized review of subject awards, consistent with relevant legal requirements." *Glob. Health*, ECF No. 97-3 at 2. An agency official directed staff to "effectuate the terminations of awards issued prior to February 13, 2025." *Id.* Plaintiffs thus asked the Court to reaffirm that Defendants could not give effect to pre-TRO terminations, "at least without the consent of the funding recipient." *Glob. Health*, ECF No. 97-1 at 20. In response, Defendants argued that their post-TRO individualized review of awards "resulted in 'ratification' of the terminations announced pre-TRO." *Glob. Health*, ECF No. 99 at 23.

The Court granted this part of the motion to enforce, explaining: "The Court's preliminary injunction did not include any exception for Defendants to evade its terms through post hoc explanations for terminations, and the Court has previously rejected similar attempts by Defendants." *Glob. Health*, ECF No. 107 at 8; *see also, e.g.*, *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, 768 F. Supp. 3d 26, 28 (D.D.C. 2025) ("Defendants cannot simply come up with a new post-hoc rationalization in an attempt to justify the action that was temporarily enjoined as likely arbitrary and capricious for what it failed to consider."). The Court also recognized that Defendants had previously acknowledged the TRO enjoined them from giving effect to terminations issued prior to February 13. *Glob. Health*, ECF No. 107 at 8; *see* ECF No. 37 at 34 (counsel for Defendants stating that "we understand the TRO to foreclose" suspensions and

terminations communicated between January 19 and February 13). The Court therefore ordered: "Defendants may not give effect to terminations issued prior to February 13, 2025, and must promptly take steps to come into compliance as to the awards at issue." *Glob. Health*, ECF No. 107 at 9.

Defendants now move for clarification of that order and the preliminary injunction in three respects. First, Defendants ask whether the order requires them to "restore" awards terminated before February 13 if, after that date, Defendants determined those awards should be terminated based on their individual terms or other authorities. *Glob. Health*, ECF No. 115 at 2. In those circumstances, Defendants suggest, the date of termination should simply be altered from the date of the pre-TRO termination to the date of the post-TRO termination. *Id.* at 2–3. Defendants ask the Court to clarify that they need not "restore" awards that were terminated pre-TRO and then terminated again based on individualized decisionmaking post-TRO. *Id.* at 4–5.

The Court confirms this understanding of the preliminary injunction. Defendants may not rely on the "ratification" theory they previously advanced. *See Glob. Health*, ECF No. 107 at 8 (making clear that Defendants may not evade the terms of the preliminary injunction "through post hoc explanations for terminations"). The preliminary injunction clearly prohibits Defendants from giving effect to pre-TRO terminations. *AIDS Vaccine*, 770 F. Supp. 3d at 155. But the Court also concluded it could not grant the broader relief Plaintiffs proposed, which would have required Defendants to revoke all terminations and develop plans to restart those programs within ten days. *Id.* at 143. The Court explained this "would devolve into the type of intensive supervision of day-to-day agency activities, as well as inquiry into the terms of individual awards, that the Court has expressly rejected." *Id.* Accordingly, the preliminary injunction, like the TRO, "does not preclude Defendants from undertaking a good-faith, individualized assessment of a contract or grant and,

where the terms or authority under law allows, taking action with respect to that particular agreement consistent with any procedures required." *AIDS Vaccine*, 768 F. Supp. 3d at 28 (citation omitted). The injunction does not bar Defendants from giving effect to post-TRO terminations of awards that were based on an individualized review, and it does not require Defendants to "restore" any such awards.[1]

Second, Defendants ask whether the order prevents them from implementing any pre-TRO termination to which the awardee has "manifested consent." *Glob. Health*, ECF No. 115 at 6. Defendants do not explain what they mean by that. The preliminary injunction enjoined the agency Defendants from "giving effect to any terminations, suspensions, or stop-work orders issued between January 20, 2025, and February 13, 2025." *AIDS Vaccine*, 770 F. Supp. 3d at 155. To the extent Defendants refer to communications made in reliance on the void terminations during that period, they have not provided sufficient information to understand how those communications could reasonably be construed as manifesting consent or creating any ambiguity in the preliminary injunction. In their reply brief, Defendants suggest that some awardees have manifested consent to pre-TRO terminations in communications that took place after the Court's July order on the motion to enforce. *Glob. Health*, ECF No. 136 at 3. Nothing in the preliminary injunction prevents Defendants and an awardee from agreeing to treat a date before February 13, 2025, as the operative termination date for an award. This is consistent with Plaintiffs' motion to enforce, which sought

---

[1] Defendants note that Plaintiffs' operative complaints raise challenges as to the process through which awards were terminated. *Glob. Health*, ECF No. 115 at 5 n.2. Those challenges are not at issue here, since the preliminary injunction was granted on other grounds. *See AIDS Vaccine*, 770 F. Supp. 3d at 140–43 (finding Plaintiffs were not likely to succeed on claims challenging large-scale terminations post-TRO); *id.* at 142 n.11 (noting that "Plaintiffs may be able to formulate some new challenge to Defendants' process leading to these later terminations" and that the Court "expresses no view as to the proper forum for such challenges or whether they might have merit").

an order "prohibiting Defendants from effectuating terminations issued prior to February 13 without the awardee's consent." *Glob. Health*, ECF No. 97-1 at 2.

Finally, Defendants ask whether the order applies to awards that were terminated for reasons unrelated to Executive Order No. 14169. *Glob. Health*, ECF No. 115 at 7. Defendants do not explain precisely what clarification is required, though they indicate Plaintiffs provided lists of awards that include "at least a handful" terminated for reasons separate from the executive order. *Id.* The Court reiterates the terms of the preliminary injunction: the agency Defendants "are enjoined from enforcing or giving effect to sections 1, 5, 7, 8, and 9 of the January 24 State Department memorandum, and any other directives that implement sections 3(a) and 3(c) of Executive Order No. 14169, by giving effect to any terminations, suspensions, or stop-work orders issued between January 20, 2025, and February 13, 2025, for any grants, cooperative agreements, or contracts for foreign assistance." *AIDS Vaccine*, 770 F. Supp. 3d at 155. The preliminary injunction "does not preclude Defendants from undertaking a good-faith, individualized assessment of a contract or grant and, where the terms or authority under law allows, taking action with respect to that particular agreement consistent with any procedures required." *AIDS Vaccine*, 768 F. Supp. 3d at 28 (citation omitted). The parties shall advise the Court if they believe a status conference on this issue is necessary.

Accordingly, Defendants' motion for clarification is granted insofar as the Court provides the clarifications set out above. *Glob. Health*, ECF No. 115; *AIDS Vaccine*, ECF No. 126.

———————————————
AMIR H. ALI
United States District Judge

Date:   October 9, 2025