**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:25-cv-402 (AHA) |
| DONALD J. TRUMP, *et al.*, | |
| *Defendants*. | |

**DEFENDANTS' REPLY IN SUPPORT OF THE MOTION TO DISMISS**
**THE THIRD AMENDED COMPLAINT**

i

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 2

I.     THE COURT SHOULD DISMISS ALL OF PLAINTIFFS' FUNDING CLAIMS.......... 2

     A.    Plaintiffs' Claims Related to Funds that Plaintiffs Believe Should Have Been Obligated Prior to September 30, 2025 Are Largely Moot or Precluded ................................................................................................................................ 2

     B.    The ICA Precludes Plaintiffs' Funding Claims ................................................. 5

     C.    The Funding Decisions at Issue Remain Committed to Agency Discretion .......... 8

     D.    Plaintiffs Do Not Challenge a Discrete Agency Action ........................................ 9

     E.    Defendants' Funding Decisions Are Not Contrary to Law ................................. 10

     F.    Defendants' Conduct Was Reasonable and Reasonably Explained .................... 11

     G.    Plaintiffs Have Failed to State an Unlawfully Withheld or Unreasonably Delayed Claim ................................................................................................. 12

     H.    Plaintiffs' Ultra Vires Claims Are Not Plausibly Alleged.................................... 13

II.    THE AGENCY REORGANIZATION AND PROGRAM TERMINATION CLAIMS DO NOT PLAUSIBLY ALLEGE A VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT........................................................................ 14

     A.    Plaintiffs Lack Standing to Challenge USAID's Reorganization......................... 14

     B.    Plaintiffs Do Not Allege Any Agency Action ..................................................... 17

     C.    Defendants Have Not Acted Contrary to Law Or Unconstitutionally (Claims Seven, Nine, and Ten)............................................................................. 19

     D.    Defendants Did Not Act Arbitrarily And Capriciously In Reorganizing USAID And Its Programs (Claims Seven and Eight)........................................... 22

     E.    The *Ultra Vires* Claim Is Not Plausibly Alleged .................................................. 23

     F.    The Mandamus Claim Is Not Plausibly Alleged (Claims Five and Eighteen) ................................................................................................................................ 24

CONCLUSION.................................................................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*,
    No. CV 10-3738 ABC (CWx), 2010 WL 11463697 (C.D. Cal. Sept. 20, 2010) .................... 17

*AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*,
    803 F. Supp. 3d 164 (D.D.C. 2025) ................................................................................. 14

*Am. Foreign Serv. Ass'n (AFSA) v. Trump*,
    792 F. Supp. 3d 116 (D.D.C. 2025) ............................................................................. 16, 18

*Am. Forest Res. Council v. United States*,
    77 F.4th 787 (D.C. Cir. 2023) ......................................................................................... 10

*Anglers Conservation Network v. Pritzker*,
    809 F.3d 664 (D.C. Cir. 2016) ......................................................................................... 12

*Block v. Community Nutrition Institute*,
    467 U.S. 340 (1984) ........................................................................................................... 8

*Booth v. Fletcher*,
    101 F.2d 676 (D.C. Cir. 1938) ......................................................................................... 22

*Brewer v. Islamic Republic of Iran*,
    664 F.Supp.2d 43 (D.D.C. 2009) ..................................................................................... 22

*Budik v. Ashley*,
    36 F. Supp. 3d 132 (D.D.C. 2014) ................................................................................... 17

*Calixto v.  U.S. Dep't of the Army*,
    No. CV 18-1551 (ESH), 2019 WL 2139755 (D.D.C. May 16, 2019) .................................. 10

*Changji Esquel Textile Co. v. Raimondo*,
    40 F.4th 716 (D.C. Cir. 2022) ......................................................................................... 23

*City of Hous. v. HUD*,
    24 F.3d 1421 (D.C. Cir. 1994) ........................................................................................... 4

*Clinton v. City of New York*,
    524 U.S. 417 (1998) ........................................................................................................... 7

*Consol. Edison Co. of N.Y., Inc.  v. Ashcroft*,
    286 F.3d 600 (D.C. Cir. 2002) ......................................................................................... 24

*Cutler v. Hayes*,
818 F. 2d 879 (D.C. Cir. 1987) ........................................................................ 12

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006) ........................................................................................ 14

*Dalton v. Specter*,
511 U.S. 462 (1994) ................................................................................... 19, 20

*Dep't of State v. Aids Vaccine Advoc. Coal.*,
606 U.S. ---, 146 S. Ct. 19 (2025) .............................................................. 2, 5, 6

*Detroit Int'l Bridge Co v. Canada*,
189 F. Supp. 3d 85 (D.D.C. 2016),
*aff'd on other grounds*, 883 F.3d 895 (D.C. Cir. 2018) ...................................... 17

*Estate of Heiser v. Islamic Republic of Iran*,
466 F.Supp.2d. 229 (D.D.C. 2006) ............................................................... 22, 23

*FDA v. R.J. Reynolds Vapor Co.*,
606 U.S. 226 (2025) ......................................................................................... 8

*Fed. Express Corp. v. Dep't of Com.*,
39 F.4th 756 (D.C. Cir. 2022) ......................................................................... 20

*Fla. Audubon Soc'y v. Bentsen*,
94 F.3d 658 (D.C. Cir. 1996) .......................................................................... 15

*General Land Office v. Biden*,
722 F. Supp. 3d 710 (S.D. Tex. 2024) ................................................................ 7

*Gill v. Whitford*,
585 U.S. 48 (2018) ......................................................................................... 14

*Glob. Health Council (GHC) v. Trump*,
153 F.4th 1 (D.C. Cir. 2025) ..................................................................... *passim*

*GHC v. Trump*,
No. 25-5097, 2025 WL 2709437 (D.C. Cir. Aug. 28, 2025) ............................. 20, 22

*Goodluck v. Biden*,
104 F.4th 920 (D.C. Cir. 2024),
*reh'g en banc denied*, No. 21-5263, 2024 WL 4092894 (D.C. Cir. Sep. 3, 2024) ................. 3, 4

*Grand Canyon Air Tour Coal. v. FAA*,
154 F.3d 455 (D.C. Cir. 1998) ........................................................................ 13

iv

*Harris v. City of Hous.*,
    151 F.3d 186 (5th Cir. 1998) ................................................................................ 4

*In re Aiken County*,
    725 F.3d 255 (D.C. Cir. 2013) ............................................................................ 24

*In re Am. Rivers & Idaho Rivers United*,
    372 F.3d 413 (D.C. Cir. 2004) ............................................................................ 13

*Jenson v. Huerta*,
    828 F.Supp.2d 174 (D.D.C. 2011) ...................................................................... 23

*Larson v. Northrop Corp.*,
    21 F.3d 1164 (D.C. Cir. 1994) ............................................................................ 17

*Lewis v. Casey*,
    518 U.S. 343 (1996) ............................................................................................ 14

*Lincoln v. Vigil*,
    508 U.S. 182 (1993) .............................................................................................. 9

*Lujan v. Nat'l Wildlife Fed'n*,
    497 U.S. 871 (1990) ..................................................................................... 10, 18

*Mashpee Wampanoag Tribal Council, Inc. v. Norton*,
    336 F.3d 1094 (D.C. Cir. 2003) .......................................................................... 12

*Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee*,
    708 F.3d 921 (7th Cir. 2013) ................................................................................ 4

*Murphy v. Islamic Republic of Iran*,
    740 F. Supp. 2d 51 (D.D.C. 2010) ...................................................................... 23

*Murthy v. Missouri*,
    603 U.S. 43 (2024) ................................................................................................ 4

*Nat'l Insts. of Health v. Am. Pub. Health Ass'n*,
    145 S. Ct. 2658 (2025) .......................................................................................... 6

*Nat'l Treasury Emps. Union (NTEU) v. Vought*,
    149 F.4th 762 (D.C. Cir. 2025), *reh'g en banc granted, opinion vacated*,
    No. 25-5091, 2025 WL 3659406 (D.C. Cir. Dec. 17, 2025) ...................... 15, 16, 19

*New Life Evangelistic Ctr., Inc. v. Sebelius*,
    753 F. Supp. 2d 103 (D.D.C. 2010) ..................................................................... 12

*Norton v. S. Utah Wilderness All.*,
　542 U.S. 55 (2004) ........................................................................................... 18

*Nuclear Regul. Comm'n v. Texas*,
　605 U.S. 665 (2025), *on remand to*, 152 F.4th 686 (5th Cir. 2025) ...................... 20

*Ramos v. Louisiana*,
　590 U.S. 83 (2020) ............................................................................................. 6

*Rhode Island v. Trump*,
　155 F.4th 35 (1st Cir. 2025) ............................................................................. 16

*Spencer v. Kemna*,
　523 U.S. 1 (1998) ............................................................................................... 4

*Super Tire Eng'g Co. v. McCorkle*,
　416 U.S. 115 (1974) ........................................................................................... 4

*TransUnion LLC v. Ramirez*,
　594 U.S. 413 (2021) ........................................................................................... 4

*Trump v. Boyle*,
　606 U.S. ---, 145 S. Ct. 2653 (2025) .................................................................. 6

*Trump v. Hawaii*,
　585 U.S. 667 (2018) ......................................................................................... 12

*W. Va. Ass'n of Cmty. Health Ctrs., Inc. v. Heckler*,
　734 F.2d 1570 (D.C. Cir. 1984) ......................................................................... 5

*Walker v. Cheney*,
　230 F. Supp.2d 51 (D.D.C. 2002) ....................................................................... 7

*Widakuswara v. Lake*,
　No. 25-5144, 2025 WL 1288817 (D.C. Cir. May 3, 2025),
　*on reconsideration en banc*, No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025) ....... 18

*Wilbur v. U.S. ex rel. Kadrie*,
　281 U.S. 206 (1930) ......................................................................................... 24

*Youngstown Sheet & Tube Co. v. Sawyer*,
　343 U.S. 579 (1952) .................................................................................... 19, 21

vi

**STATUTES**

2 U.S.C. § 681 ................................................................................................... 8

2 U.S.C. § 683 .......................................................................................... 2, 3, 14

2 U.S.C. § 684 ................................................................................................... 3

2 U.S.C. § 687 ................................................................................................... 6

5 U.S.C. § 702 ................................................................................................. 18

5 U.S.C. § 704 ................................................................................................. 18

5 U.S.C. § 706 ................................................................................................. 12

22 U.S.C. § 2151a ........................................................................................... 10

22 U.S.C. § 2151b ...................................................................................... 10, 21

22 U.S.C. § 2151c ........................................................................................... 10

22 U.S.C. § 2151d ........................................................................................... 10

22 U.S.C. § 2174 ............................................................................................. 10

22 U.S.C. § 2346 ............................................................................................. 10

22 U.S.C. § 2347 ............................................................................................. 10

22 U.S.C. § 2348 ............................................................................................. 10

22 U.S.C. § 2349aa ......................................................................................... 10

22 U.S.C. § 2395 ............................................................................................. 10

22 U.S.C. § 6563 ............................................................................................. 20

Continuing Appropriations Act, 2020,
   Pub. L. No. 116-59, 133 Stat. 1093 (2019) ................................................. 3

Continuing Appropriations Act, 2023,
   Pub. L. No. 117-180, 136 Stat. 2114 (2022) ............................................... 3

Further Consolidated Appropriations Act, 2024 (FCCA),
   Pub. L. No. 118-47, 138 Stat 460 ................................................. 5, 10, 11, 12

**REGULATIONS**

Executive Order 14,169, *Reevaluating and Realigning United States Foreign Aid*,
    90 Fed. Reg. 8,619 (Jan. 20, 2025) ........................................................... 17

**OTHER AUTHORITIES**

2 GAO, *Principles of Federal Appropriations Law* (3d ed. 2006) (GAO Red Book) ........... 10, 11

Discrete, Merriam-Webster Dictionary (12th ed. 2025),
    https://www.merriam-webster.com/dictionary/discrete (last visited Feb. 23, 2026)............... 15

Letter from Mark R. Paoletta, General Counsel, OMB, to Tom Armstrong, General Counsel,
    GAO (Nov. 18, 2018),
    https://trumpwhitehouse.archives.gov/wp-content/uploads/2019/11/Letter-to-GAO-on-
    Rescissions.pdf.......................................................................................... 3

Simpler Grants.gov, *Feed the Future Innovation Labs*,
    https://perma.cc/WR3J-NEBA (last visited Feb. 23, 2026).................................... 16

## INTRODUCTION

In their Opposition (Pls.' Opp'n, ECF No. 178) to Defendants' Motion to Dismiss (Defs.' Mot., ECF No. 176), Plaintiffs advance a shifting assortment of arguments—some raised only for the first time, some attack positions that Defendants have not taken, still others rely on inapposite authority. None credibly reconciles their position with controlling precedent of the Supreme Court and D.C. Circuit, including those courts' reasoning in ruling for Defendants in this very case.

As for Plaintiffs' funding claims concerning appropriations that expired on September 30, 2025 (including funds subject to the August 28, 2025, Special Message), such lapsed appropriations cannot be revived, and the Court has no equitable authority to extend their period of availability. Nor does Plaintiffs' request for declaratory relief keep this case live. Plaintiffs challenge only past agency actions, not an ongoing policy that continues to affect Plaintiffs' existing legal relationship with the agency. And a declaratory judgment, in any event, would not redress their alleged injuries arising from the denial of funding. Moreover, for all of Plaintiffs' funding claims (including claims about funds that have not yet expired), they are precluded by the reasoning of the Supreme Court's September 26 stay decision—the Impoundment Control Act (ICA) is the exclusive means for enforcing the appropriations challenges here.

Beyond their funding claims, Plaintiffs' theory of the case becomes elusive and contradictory. Plaintiffs challenge the purported "abolishment" of USAID but have not plausibly alleged that their harms are connected to such "abolishment." And their alleged injury of the "elimination of the relationships and experience with the agency" is raised only for the first time in their Opposition and fails for a variety of reasons, including that they have no such entitlement to such relationships. At bottom, Plaintiffs cannot overcome Defendants' showing that their reorganization of USAID is authorized by law, nor can they bundle individual agency actions that amount to a wholesale "correction" of the agency.

Finally, Plaintiffs' constitutional claims are foreclosed by *Dalton's* preclusive framework because they are all rooted in statutes. And their "Hail Mary" attempt to advance *ultra vires* and

mandamus claims falls flat not only for the obvious reason that these are doctrines of last resort, but also because Plaintiffs cannot meet the stringent standards of either.

**ARGUMENT**

## I.    THE COURT SHOULD DISMISS ALL OF PLAINTIFFS' FUNDING CLAIMS

Plaintiffs' funding claims generally fall within three "buckets": (1) funds scheduled to expire on September 30, 2025 but that were not obligated; (2) funds that were scheduled to expire on September 30, 2025 and were obligated before that date; and (3) funds that were scheduled to expire after September 30, 2025.  Pls.' Opp'n at 11.  Encompassed within the first bucket are funds subject to the August 28, 2025 Special Message.  Defendants address all three categories of funding claims and identify the relevant legal deficiencies in the corresponding sections.

### A.    Plaintiffs' Claims Related to Funds that Plaintiffs Believe Should Have Been Obligated Prior to September 30, 2025 Are Largely Moot or Precluded

Starting with the first bucket, and specifically with respect to the $4 billion subject to the August 28, 2025, Special Message, Defendants have demonstrated in their opening brief that those funds have expired.  Despite Plaintiffs' various claims as to the $4 billion, *see* Pls.' Opp'n at 13 (requesting, among other things, that such funds should be made available for obligation), those claims are precluded by the Supreme Court's stay decision. As Justice Kagan recognized, the Supreme Court's stay decision meant that such funding is "unavailable for spending . . . for all time," *Dep't of State v. Aids Vaccine Advoc. Coal.*, 606 U.S. ---, 146 S. Ct. 19, 21 (2025) (Kagan, J., dissenting).

Plaintiffs argue that under 2 U.S.C. § 683(b), if Congress has not acted on a rescission proposal after the 45-day period concludes, the funds are then "made available for obligation." Pls.' Opp'n at 13, 30.  Plaintiffs cite no support for this novel argument, and in fact there is none, and for good reason—it would require a court to amend an appropriation statute by striking out one of its core aspects, the period of availability of the funds.  Such a reading also would violate the Appropriations Clause.  While § 683(b) limits the President's withholding authority to 45 days of a continuous Congressional session, it imposes no additional requirement on the President to

2

make withheld budget authority available for obligation before the end of a fiscal year, nor does it extend the period of availability of funds that lapse during the 45-day period. *See generally* Letter from Mark R. Paoletta, General Counsel, OMB, to Tom Armstrong, General Counsel, GAO (Nov. 18, 2018), *available at* https://trumpwhitehouse.archives.gov/wp-content/uploads/2019/11/Letter-to-GAO-on-Rescissions.pdf.

Moreover, § 683(b) stands in stark contrast to § 684, which provides that a "deferral may not be proposed for any period of time extending beyond the end of the fiscal year in which the special message proposing the deferral is transmitted to the House and the Senate." 2 U.S.C. § 684(a). That is, Congress considered the possible effects of withholding funds close to the end of the fiscal year and decided to limit such withholdings only for deferrals, not for rescissions. In any event, Congress knew how to avoid the expiration of time-limited appropriated funding but did not do so here; it has, for example, extended the period of availability of expiring appropriations. *See, e.g.*, Continuing Appropriations Act, 2023, Pub. L. No. 117-180, div. A., § 124, 136 Stat. 2114, 2120 (2022); Continuing Appropriations Act, 2020, Pub. L. No. 116-59, div. A, § 124, 133 Stat. 1093, 1098 (2019).

And Defendants' mootness argument is of course not limited to the $4 billion subject to the Special Message, as Plaintiffs seem to believe, *see* Pls.' Opp'n at 12. Rather, it extends to any other funds in the FY 2024 Appropriations Act that expired on September 30, 2025. Defs.' Mot. at 11-13. Any funding that has already expired cannot now be resurrected.[1] Indeed, the Court does not have equitable authority to extend the period of availability (Pls.' Opp'n at 13). Any equitable remedy "must track remedies traditionally afforded by the equity courts." *Goodluck v. Biden,* 104 F.4th 920, 924 (D.C. Cir. 2024), *reh'g en banc denied*, No. 21-5263, 2024 WL 4092894 (D.C. Cir. Sep. 3, 2024); *see also id.* at 928 (criticizing older, contrary cases as belonging to the

---

[1] Plaintiffs seem to suggest as much. *See* 3rd Am. Compl. ¶ 37 (acknowledging that for many funds, the "2024 Appropriations Act provided that the funds would be available until September 30, 2025").

'"*ancien regime*' when courts took a much more freewheeling approach to the law of remedies."). Plaintiffs point to no historical analogue in equity to allow a court to extend the period of appropriations. And to the extent there is any judge-made equitable authority to "suspend" a "lapse," that still does not "revive" funds that have already expired.

Plaintiffs' other arguments regarding the expired funds similarly fail. *First*, contrary to Plaintiffs' argument (Pls.' Opp'n at 12), their request for declaratory relief cannot keep the case live. A request for declaratory relief can prevent a case from becoming moot only if there is a challenge to an *ongoing* policy that continues to affect the parties' legal relationship. *See*, *e.g., Milwaukee Police Ass'n v. Bd. of Fire & Police Comm'rs of Milwaukee*, 708 F.3d 921, 929 (7th Cir. 2013); *City of Hous. v. HUD*, 24 F.3d 1421, 1428 (D.C. Cir. 1994); *Harris v. City of Hous.*, 151 F.3d 186, 191 n.5 (5th Cir. 1998); *see also Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122 (1974). Here, Plaintiffs do not allege any such ongoing policy but instead challenge abstract *past* decisions regarding obligating funding. *See* 3rd Am. Compl. ¶¶ 217-227, ECF No. 174 (Claims 13 and 14). And any declaratory relief in any event would not redress Plaintiffs' alleged injuries of purportedly being denied any of the expired funding. *Murthy v. Missouri*, 603 U.S. 43, 61 (2024) (citation omitted) (a plaintiff must have standing for each claim they press against each defendant and "for each form of relief that they seek"); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

*Second*, the "capable of repetition, yet evading review" exception upon which Plaintiffs rely (Pls.' Opp'n at 12) applies only when "(1) the challenged action [was] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [was] a reasonable expectation that the same complaining party [would] be subject[ed] to the same action again." *Spencer v. Kemna*, 523 U.S. 1, 17 (1998). Plaintiffs cannot plausibly allege either element because (1) the plaintiffs have had ample opportunity to litigate this case, including twice obtaining Supreme Court review and with the Supreme Court most recently holding that Plaintiffs could not pursue any claims related to the special message, and (2) there is no reasonable expectation that Plaintiffs will be subject to the same action in the future.

As to funds in the second bucket—i.e., funds that were obligated before their September 30, 2025 expiration date—Plaintiffs question how Defendants obligated some $6.5 billion and ask the Court to "de-obligate and re-obligate the funds consistent with Congress's directives." Pls.' Opp'n at 12. But Plaintiffs provide no support for the extraordinary proposition that the Court has authority to order Defendants to "de-obligate and re-obligate" funds in the manner that Plaintiffs wish. *Id.* at 12. "It is an elementary principle of the federal budget process that, in general, a federal agency's budget authority lapses on the last day of the period for which funds were [available to be] obligated." *W. Va. Ass'n of Cmty. Health Ctrs., Inc. v. Heckler*, 734 F.2d 1570, 1576 (D.C. Cir. 1984). Afterward, "the unobligated funds revert back into the general Treasury." *Id.* To the extent some funds remain available "beyond their original expiration date," Pls.' Opp'n at 11, that is only because Defendants have already obligated those funds, thus extending their period of availability consistent with the law. Further Consolidated Appropriations Act, 2024 (FCCA), Pub. L. No. 118-47, div. F, § 7011, 138 Stat 460.

## B.     The ICA Precludes Plaintiffs' Funding Claims

Even if Plaintiffs funding claims in the first two buckets are not moot, Plaintiffs lack a cause of action to challenge the alleged impoundments because such claims are precluded by the ICA, which is the exclusive means for enforcing appropriations. The same is true as to the third bucket of funding claims. As Defendants have demonstrated, the logic of the Supreme Court's stay order lends support to the proposition.

Plaintiffs argue that the Supreme Court's stay order applies only to funds included in the August 2025 Special Message and not to Plaintiffs' other Administrative Procedure Act (APA) claims. Pls.' Opp'n at 14. But the Supreme Court also found that Defendants had "made a sufficient showing that the Impoundment Control Act precludes [Plaintiffs'] suit, brought pursuant to the Administrative Procedure Act, to enforce the appropriations at issue here." *Dep't of State*, 146 S. Ct. at 19. In response, Plaintiffs contend that the Supreme Court's order, even as to the $4 billion included in the special message, was merely preliminary. *Id.* at 15. But the Supreme Court's reasoning carries precedential weight, particularly in the same case. *Cf. Ramos v.*

5

*Louisiana*, 590 U.S. 83, 102-03 (2020) (stating that regardless of a decision's procedural posture, its "reasoning—its *ratio decidendi*"—carries precedential weight in "future cases"); *Nat'l Insts. of Health v. Am. Pub. Health Ass'n*, 145 S. Ct. 2658, 2663-65 (2025) ("*NIH*") (Gorsuch, J., concurring in part and dissenting in part) (district courts are "duty bound" to follow Supreme Court orders, even when they involve "probabilistic holdings" and even when they involve interim relief. Such decisions "constitute a precedent that commands respect in the lower courts and the "reasoning bind[s] lower courts as a matter of vertical *stare decisis*"); *see also Trump v. Boyle*, 606 U.S. ---, 145 S. Ct. 2653, 2654 (2025) (interim orders in like cases "inform how a court should exercise its equitable discretion in like cases").

Plaintiffs also argue that there are "significantly changed factual circumstances" such that the Supreme Court's order is no longer relevant. *See* Pls.' Opp'n at 16. But that is not so. Plaintiffs continue to raise the same claims already addressed by the Supreme Court and ask the Court to compel Defendants to obligate expired appropriations, including what was part of the August 28, 2025 special message. On those critical points, nothing has changed. Thus, the Supreme Court's reasoning regarding the ICA effectively precludes all of Plaintiffs' funding claims.

In response, Plaintiffs contend that "nothing in the ICA suggests that Congress intended to displace" the "right of private parties to bring APA suits for appropriation act violations." *Id.* at 17. But again, the ICA itself makes clear that it is the exclusive means for enforcing the appropriations at issue. Defs.' Mot. at 15-19. The ICA established the Comptroller General as the only individual who may bring claims that the Executive Branch engaged in unlawful impoundments by failing to obligate relevant funds. 2 U.S.C. § 687. It specifically precludes suits like this one where Plaintiffs seek to "ma[k]e available for obligation" appropriations that are purportedly "required to be made available" under the appropriations statutes but are "not made available for obligation" by the President. *Id.* § 687.

Plaintiffs further theorize that the rights granted to the Comptroller General by the ICA are immaterial as the Comptroller General could not establish standing. Pls.' Opp'n at 20-21. Even if true, that does not mean that Plaintiffs have a cause of action. Moreover, what matters at this

stage, as the D.C. Circuit concluded, is that only the GAO, through the Comptroller General, can bring such claims. *Glob. Health Council (GHC) v. Trump*, 153 F.4th 1, 19 (D.C. Cir. 2025); *see also General Land Office v. Biden*, 722 F. Supp. 3d 710, 734-35 (S.D. Tex. 2024) (concluding that since "the ICA provides that the Comptroller General may bring suit for alleged ICA violations and meticulously outlines the mechanism for doing so . . . APA review for ICA violations is improper," and noting further that plaintiffs' ICA-based APA claim was thus "precluded from judicial review."). Even if certain appropriations may mandate that specific payments be made to a specific entity by a specific date—statutes that the ICA expressly declines to supersede—there is no freestanding ability for Plaintiffs to circumvent the ICA process through an APA suit. Defs.' Mot. at 18. Plaintiffs' arguments saying otherwise fail. *Walker v. Cheney*, 230 F. Supp.2d 51 (D.D.C. 2002), relied on by Plaintiffs (Pls. Opp'n at 21), is inapposite. It involved an entirely different statutory scheme and different factual issues, centering around the Comptroller General's ability to enforce certain investigatory powers by requiring the production of withheld records from an Executive Branch energy policy group. And the statute at issue in *Walker* restricts the ability of the Comptroller General to sue in ways that the ICA days not. *See* 31 U.S.C. § 716 ((d)(1) (prohibiting the Comptroller General from bringing a civil action over listed categories of records).

Plaintiffs' attempt to compare the ICA to the Line-Item Veto Act of 1996 also does not help them. *Id.* at 29. In *Clinton v. City of New York*, the Supreme Court held that the Line-Item Veto Act violated the Constitution's Presentment Clause by allowing the President to cancel portions of statutes enacted by Congress. 524 U.S. 417, 436-41 (1998). But no such presentment issue occurred here. Rather, this dispute concerns the President's authority to determine how and whether to obligate and expend appropriated funds through dialogue with Congress utilizing the process set out in the ICA and pursuant to the terms of the appropriations statutes. Furthermore, the Court in *Clinton* expressly noted that the President's "traditional authority to decline to spend appropriated funds" is in contrast to the Line-Item Veto. 524 U.S. at 446-47. Additionally, no unilateral Presidential action to "cancel" or "amend" the text of appropriations is at issue here.

Rather, the lapse in funds Plaintiffs describe results from two provisions enacted by Congress—the underlying appropriations provision determining when the funds lapse, and the ICA, which authorizes the President to send rescission proposals at any point in the fiscal year and to withhold funds from obligation for 45 days after transmitting such a proposal. Such a lapse reflects Congress's determination that the funds included in a special message should terminate at the end of the fiscal year even if not obligated during the 45-day period.

Further, Plaintiffs continue to misconstrue the meaning of 2 U.S.C. § 681(3). That provision of the ICA states that nothing in it "shall be construed" as "affecting in any way the claims or defenses of any party to litigation concerning any impoundment." *Id.* Plaintiffs argue that § 681(3) means anyone affected may bring APA claims for violations of appropriation acts. Pls.' Opp'n at 17-19. But that argument was rejected by the D.C. Circuit. *GHC*, 153 F.4th at 19. The D.C. Circuit also rejected Plaintiffs' reading of *Block v. Community Nutrition Institute*, 467 U.S. 340 (1984), see Pls.' Opp'n at 20, reasoning: "[a]s in *Block*, it does not make sense that the Congress would craft a complex scheme of interbranch dialogue but sub silentio also provide a backdoor for citizen suits to enforce the ICA at any time and without notice to the Congress of the alleged violation." *GHC*, 153 F.4th at 19. And contrary to Plaintiffs claims, Pls.' Opp'n at 20, "there is no provision even inferentially allowing 'any person adversely affected to sue.'" *Id*. (quoting *FDA v. R.J. Reynolds Vapor Co*., 606 U.S. 226, 239 & n.8 (2025)).

## C.    The Funding Decisions at Issue Remain Committed to Agency Discretion

Defendants have demonstrated that the Executive Branch has discretion over how to obligate and expend the lump-sum appropriations contained within the appropriations statutes and there is no manageable standard for the Court to judge the exercise of that discretion. Defs.' Mot. at 19. Yet, Plaintiffs insist that there are standards to judge the Executive Branch's past decisions as to how and whether to obligate the foreign assistance funding contained in the FY 2024 Appropriations and its decisions concerning the 2025 CR. Pls.' Opp'n at 22. This is so, according to Plaintiffs, because "the topline appropriations in Title III and Title IV, the tables incorporated into § 7019(a) and the directives in §§ 7030-61" mandate that Defendants "spend specific"

8

amounts of money for "specific purposes," which in turn supposedly means that all funds must be expended. But that misses the point—though Congress specified certain funds for specific purposes, the Executive Branch has discretion as to how to use those funds to achieve those purposes, making it committed to agency discretion. The decision not to use all appropriated funds falls within that discretion unless otherwise specifically provided by Congress.

Plaintiffs argue that *Lincoln v. Vigil*, 508 U.S. 182 (1993), is inapt. Pls.' Opp'n at 22. But *Lincoln* stands for the proposition that "allocation of funds from a lump-sum appropriation is" an "administrative decision traditionally regarded as committed to agency discretion," because the point of such appropriations "is to give an agency the capacity to adapt to changing circumstances and meet its statutory responsibilities in what it sees as the most effective or desirable way." *Lincoln*, 508 U.S. at 192. So long as the agency abides by the relevant statutes and by any obligations that may arise from the regulations or grant instruments, the APA "gives the courts no leave to intrude." *Id.* at 193. This is the situation here. What is more, the Foreign Assistance Act of 1961 (FAA) and the appropriations statutes grant State and USAID significant discretion in determining how best to allocate appropriated funds across applicants for contracts, grants, and cooperative agreements. And with limited exceptions, neither the authorization nor the appropriations statutes require that any funds be awarded to any particular provider of services, let alone to any Plaintiffs here. *See* Defs.' Mot. at 19-20. Tellingly, Plaintiffs cite no cases for how the appropriations statutes themselves have meaningful standards to apply.

### D.    Plaintiffs Do Not Challenge a Discrete Agency Action

All of Plaintiffs' funding claims are unreviewable under the APA for yet another reason. Plaintiffs do not challenge any discrete action, such as termination of their own funding instruments. *See id.* at 21-22. Instead, Plaintiffs broadly challenge all possible funding decisions related to the appropriations identified in the amended complaint. *See* 3rd Am. Compl. at 61. Plaintiffs summarily argue that "Defendants' decision not to spend specific amounts of appropriated funds for specific purposes is sufficiently 'discrete' under § 706(2)." Pls.' Opp'n at 23. But "'[b]ecause every possible category of 'agency action' under [5] § 551(13) involves a

9

discrete action, parties cannot bring APA claims that present a 'broad programmatic attack,'" as Plaintiffs attempt to do here. *Calixto v. U.S. Dep't of the Army*, No. CV 18-1551 (ESH), 2019 WL 2139755, at *3 (D.D.C. May 16, 2019)); *see Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 (1990) (rejecting plaintiffs' attempt to bring a challenge to the entirety of the agency's "so-called 'land withdrawal review program,'" which did not refer to any particular agency order or regulation); *Am. Forest Res. Council v. United States*, 77 F.4th 787, 805 (D.C. Cir. 2023) (stating that "blunderbuss" challenges to general statutory directives, rather than to specific agency action, "is better aimed at the offices of the Department or the halls of Congress, not at the court." (quotation omitted).

## E. Defendants' Funding Decisions Are Not Contrary to Law

For both the wrongful withholding and wrongful obligation claims, Plaintiffs maintain that the language of the appropriation acts at issue eliminated Defendants' discretion and mandated that all relevant appropriations be obligated. Pls.' Opp'n at 24-25. But that is wrong. The appropriations provisions, such as those in the Further Consolidated Appropriations Act, 2024 (FCAA), reflect Congress's desire to designate different portions of the top-line foreign-assistance appropriations for particular purposes, but do not reflect a congressional command to make all sums available for obligation. *See* 2 GAO, *Principles of Federal Appropriations Law* 6-26 to 6-31 (3d ed. 2006) (GAO Red Book).

Further, the relevant context makes clear that Congress intended the Executive Branch to exercise discretion over how to expend these appropriations. Consistent with the President's primary role in the conduct of foreign affairs, Congress recognized that the President may furnish foreign assistance "on such terms and conditions as he may determine." *See, e.g.*, 22 U.S.C. §§ 2151a(a)(1), 2151b(c)(1), 2151c(a), 2151d(b)(1), 2174(a), 2291(a)(4), 2346(a), 2347(a), 2348, 2349aa; *see also id.* § 2395(a) (providing that "assistance under this chapter may be furnished on a grant basis or on such terms . . . as may be determined to be best suited to the achievement of the purposes of this chapter"). Such language supports the conclusion that the appropriations acts must be understood to retain the Executive Branch's programmatic discretion, not to eliminate it.

Plaintiffs further claim that Congress sometimes appropriates sums "'up to' 'not more than' or 'not to exceed'" a specified amount." Pls.' Opp'n at 25. They argue that the absence of that language here means that the Executive had no discretion to obligate less than the amount made available for a particular purpose. *See id.* But the language used by Congress generally imposes a ceiling on the use of a lump-sum appropriation for particular purposes, *see* GAO Red Book 6-27 to 6-29, and merely provides Congress's views that funds must be made available to achieve the specific purpose.[2]

Plaintiffs also ignore the statutory text that allows the Executive Branch to deviate "up to 10 percent from the amounts specified" in tables in the Joint Explanatory Statement accompanying the FCAA and to deviate even further if determinations are made by the Executive Branch and reported to Congress. FCAA, div. F, § 7019(b), 138 Stat. at 772. That discretion, and the associated reporting process, underscore that Congress intended the earmarks to function as part of the inter-branch dialogue generally contemplated by the appropriations statutes and the ICA, rather than to generate judicially enforceable obligations. *See* Defs.' Mot. at 22-24.

## F.    Defendants' Conduct Was Reasonable and Reasonably Explained

Plaintiffs argue that Defendants have provided no reasoned explanations for their actions, have not accounted for reliance interests, and have ignored the "real-world consequences of abruptly terminating funded programs." *Id.* But it is far from clear what those reliance interests in future funding are. There is no general right of grantees who received federal funding to continue receiving that funding in perpetuity, and the Executive Branch unquestionably can account for shifts in national interest and priorities in keeping with a change in administration. Defs.' Mot. at 24. This is especially so in the realm of foreign policy, which includes determining

---

[2] Plaintiffs claim that Defendants citation to the GAO Redbook, Defs.' Mot. at 22, is inapt because the Redbook uses the term "shall be available" and the appropriations language here is "shall be made available." Pls.' Opp'n at 27. But Plaintiffs do not explain how the addition of the word "made" changes the interpretation, and it appears to be a distinction without difference.

where and how foreign assistance funds are obligated. And a court should not conduct "a searching inquiry into the persuasiveness of the President's justifications." *Trump v. Hawaii*, 585 U.S. 667, 686 (2018); Defs.' Mot. at 24-25.

Further, any consideration of Plaintiffs' reliance interests or "real-world consequences" are remote at best, given Plaintiffs' inability to establish any right to payment from any of the relevant sources of funding. *See id.* at 25. And contrary to Plaintiffs' claims, Defendants have not "abruptly terminat[ed]" funding programs. Pls.' Opp'n at 27. Rather, Defendants merely have either obligated funding in ways that Plaintiffs do not like (*see, e.g.*, *id.* at 11), or withheld funding from obligation consistent with ICA processes. Such decisions are not arbitrary and capricious. *See, e.g.*, *New Life Evangelistic Ctr., Inc. v. Sebelius*, 753 F. Supp. 2d 103, 133 (D.D.C. 2010) ("[M]ere disagreement cannot discharge [plaintiffs'] burden of establishing that the determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

### G. Plaintiffs Have Failed to State an Unlawfully Withheld or Unreasonably Delayed Claim

In the latest amended complaint, Plaintiffs claim that the "withholding" of the full amounts required for obligation by the relevant appropriation acts was unlawful under 5 U.S.C. § 706(1) because Defendants have unreasonably delayed spending the relevant funds. 3rd Am. Compl. at 148-150. In moving to dismiss, Defendants explained that Plaintiffs' claim really boils down to a failure to act claim, which can be reviewed under § 706(1) "only within strict limits," *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016), which Plaintiffs fail to satisfy. *See* Defs.' Mot. at 26. Plaintiffs now argue that Defendants have failed to address the "*TRAC*" factors associated with 5 U.S.C. § 706(1) and have also entirely ignored Plaintiffs' unlawfully withheld claim. Pls.' Opp'n at 28. Plaintiffs are wrong.

Defendants did specifically reference the *TRAC* factors. *See* Defs.' Mot. at 26. The overarching principle of the *TRAC* factors is a "rule of reason," a flexible assessment of the context of the agency's action. *See Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1102 (D.C. Cir. 2003). The mere presence of a statutory timetable does not supplant the

12

overarching rule of reason.  *See Cutler v. Hayes*, 818 F. 2d 879, 898 (D.C. Cir. 1987).  Nor is there a "per se rule as to how long is too long to wait for agency action."  *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004) (citation  modified); *see also Grand Canyon Air Tour Coal. v. FAA*, 154 F.3d 455, 477-78 (D.C. Cir. 1998) (declining to order agency action notwithstanding a ten-year delay in issuing a rule and a 20-year delay in achieving the rule's statutory objective).

Here, not only has there been no lengthy delay or withholding akin to those discussed in the cases cited above, but Plaintiffs do also not even plausibly allege any discrete agency action that the agencies are required to take, nor the violation of any specific, unequivocal command to obligate the appropriated funds.  Defs.' Mot. at 26-27.  Moreover, Defendants have already obligated some of the funds at issue and rescinded other funds that expired during the 45-day withholding period authorized under the ICA.  And for other FY 2024 funds that remain available for obligation, Defendants still have time (even years) to make any funding decisions.  Thus, no delay or withholding claim applies.  Similarly, for funds allegedly expiring in September 2026 or later (Pls.' Opp'n at 28), *i.e.*, those in the third bucket, Plaintiffs do not explain their basis for arguing that such funds are being unreasonably delayed or unlawfully withheld since ample time exists to obligate those funds before they expire.

### H.    Plaintiffs' Ultra Vires Claims Are Not Plausibly Alleged

Plaintiffs' *ultra vires* claims—*see* 3rd Am. Compl. ¶¶ 152-56 (Claim for Relief Four); *see id*. ¶¶ 223-27 (Claim for Relief Fourteen); *id*. ¶¶ 238-42 (Claim for Relief Seventeen)—fail to state a claim as they rely only on this Court's prior decision, which expressly rejected the virtually identical *ultra vires* theory.

Plaintiffs argue that for Claims Four and Fourteen, this Court has already held that the appropriations acts impose on Defendants a duty to spend the funds Congress appropriated for specific purposes.  Pls.' Opp'n at 44.  Yet Plaintiffs omit that this Court expressly found that it had "no further role in adjudicating [Plaintiffs'] constitutional claims" and that "[t]he same is true of Plaintiffs' APA and *ultra vires* claims to the extent they are premised on noncompliance with the

ICA." Claims Four and Fourteen are precisely that, because they "challenge the executive branch's decision not to spend appropriated funds." *AIDS Vaccine Advoc. Coal. v. U.S. Dep't of State*, 803 F. Supp. 3d 164, 174 (D.D.C. 2025). Further, the out of context quote from this Court's opinion that Defendants have a "clear, long-recognized duty to spend the funds Congress appropriates for specific purposes" was not in relation to Plaintiffs' *ultra vires* claims (as they were not brought in the preliminary injunction motion). *Id*. at 187.

Last, regarding Claim Seventeen, Plaintiffs argue in a single perfunctory sentence that even "under Defendants' own approach to 2 U.S.C. § 683(b), the provision imposes a clear duty that the funds in the August 2025 special message 'shall be made available for obligation.'" Pls.' Opp'n at 44. Their claim is without citation, and in any event, it is not clear what "approach" Plaintiffs are referring to in Defendants' briefing.

## II.    THE AGENCY REORGANIZATION AND PROGRAM TERMINATION CLAIMS DO NOT PLAUSIBLY ALLEGE A VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT

### A.    Plaintiffs Lack Standing to Challenge USAID's Reorganization

Plaintiffs do not have standing to challenge the alleged abolishment or reorganization of USAID. At most, Plaintiffs are injured by the funding decisions, which are distinct from the alleged abolishment of USAID. That is, Plaintiffs do not have standing to ask this Court to "enjoin [the] Defendants' abolishment of USAID." 3rd Am. Compl., Prayer for Relief at 61. As the Supreme Court has long held, a "plaintiff's remedy must be tailored to redress the plaintiff's particular injury," *Gill v. Whitford*, 585 U.S. 48, 73 (2018), and a remedy "must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established," *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *see also DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006) (same). Here, a basic mismatch exists between the harm Plaintiffs allege (injuries from the non-funding of grants and programs) and the sweeping relief requested (the reversal of an alleged abolishment of an agency).

14

In response, Plaintiffs argue that the failure to spend USAID appropriations is fairly traceable to the decision to abolish USAID. Pls.' Opp'n at 33.[3] But that is not so because the purported abolishment of USAID did not determine whether any funding should be denied to Plaintiffs so as to cause them injury. If Plaintiffs were to hypothetically compete and receive all of the funds that they claim they are entitled to through the competitive process funded by the State Department rather than USAID, then all of the alleged injuries-in-fact that they use to bootstrap their claim to standing would vanish. Plaintiffs' claim for relief plainly does not turn on whether USAID has been "abolished," but rather decisions regarding the funding that flows from appropriations.

Plaintiffs likewise confuse the standard to establish causation. Plaintiffs claim that "it is at the very least 'plausible' that Plaintiffs' harms are traceable to the abolishment of USAID." *Id.* at 32. But for something to be "fairly traceable," the plaintiff must show that "it is substantially probable . . . that the challenged acts of the defendant . . . cause the particularized injury of the plaintiff." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663, 666 (D.C. Cir. 1996). Here, Plaintiffs cannot establish that it was substantially probable that the purported abolishment of USAID caused funding to be denied to Plaintiffs.

Moreover, Plaintiffs' citation to *National Treasury Employees Union (NTEU) v. Vought* does not help them. 149 F.4th 762 (D.C. Cir. 2025), *reh'g en banc granted, opinion vacated*, No. 25-5091, 2025 WL 3659406 (D.C. Cir. Dec. 17, 2025). Plaintiffs misstate the case's holding by arguing that the NAACP had standing to challenge the alleged abolishment of the CFPB because it was "actively working" with the agency. Pls.' Opp'n at 32. The panel stated that *associational*

---

[3]  To the extent that Plaintiffs argue that the funding claims are connected to the agency abolishment claims, this is refuted by Plaintiffs' own pleadings. Indeed, Plaintiffs argue that the "abolishment of the agency was a discrete agency action" and also that Defendants' decision "not to spend specific amounts of appropriated funds . . . is [also] sufficiently 'discrete.'" Pls.' Opp'n at 2, 23. If the Court did find that those actions were discrete agency actions, though we argue that they are not, then the Court also could not find that the two actions are sufficiently connected to allow Plaintiffs to piggyback their agency-abolition claim onto their funding claims. Discrete means "constituting a separate entity or item"; "individually distinct"; consisting of distinct or unconnected elements." Discrete, Merriam-Webster Dictionary (12th ed. 2025), https://www.merriam-webster.com/dictionary/discrete (last visited Feb. 23, 2026).

standing existed only because an NAACP member "was denied access to [educational] materials." *NTEU*, 149 F.4th at 776-77. Here, however, USAID's functions that Plaintiffs allege have been abolished have been internally shifted, with some responsibilities being administered by the State Department.[4] Nothing has functionally disappeared.

Plaintiffs' citation to *Rhode Island v. Trump*, 155 F.4th 35 (1st Cir. 2025), is similarly unavailing. Plaintiffs claim that the aggrieved party in *Rhode Island* "had standing to challenge abolishment of Institute of Museum and Library Services." Pls.' Opp'n at 32. That is incorrect. Nowhere in the First Circuit's opinion discusses "abolishment." Rather, the panel said that "with respect to the across-the-board policy to terminate grants, the plaintiffs have been and will continue to be injured by *the denial of funds* to which they are entitled." *Rhode Island*, 155 F.4th at 44 (emphasis added). This undermines Plaintiffs' argument that they are entitled to relief as to the alleged abolishment of USAID, which goes for the denial of funds to which they claim they are entitled. Moreover, the First Circuit panel also stated that the plaintiffs there "have been and will continue to be injured by the defendants' failure to provide services on which the plaintiffs rely." *Id*. But Plaintiffs here do not claim reliance on the agency's *services* as USAID does not directly administer their projects, Pls.' Opp'n at 32, but rather reliance as to the agency's *funding*.

Likewise, Plaintiffs' attempt to distinguish *American Foreign Service Ass'n (AFSA) v. Trump,* 792 F. Supp. 3d 116 (D.D.C. 2025)—saying it related only to personnel-related injuries, Pls.' Opp'n at 33-34—fails. In reality, the theory proposed here closely parallels the attenuated theory of harm asserted in the challenge to the alleged abolishment of USAID in *AFSA*. The only distinction is that Plaintiffs assert grant-related and other funding-related pocketbook injuries, whereas the Plaintiffs in *AFSA* assert individualized financial injuries. That is a distinction without a difference and neither theory can establish standing.

---

[4] Plaintiffs aver that the Feed the Future program that was once administered by USAID has now been eliminated. Pls.' Opp'n at 7. But the program is actively seeking application for cooperative agreements through the Office of Global Food Security at the State Department. *See* Simpler Grants.gov, *Feed the Future Innovation Labs*, https://perma.cc/WR3J-NEBA (last visited Feb. 24, 2026).

Plaintiffs attempt to assert a new injury for the first time in their Opposition—the "elimination of the relationships and experience with the agency." Pls.' Opp'n at 33. But "[i]t is a well-established principle of law in this Circuit that a plaintiff may not amend [its] complaint by making new allegations in [the] opposition brief." *Budik v. Ashley*, 36 F. Supp. 3d 132, 144 (D.D.C. 2014) (Walton, J.) (citing *Larson v. Northrop Corp.*, 21 F.3d 1164, 1173–74 (D.C. Cir. 1994)). And even if this Court did credit such a belated allegation, which it should not, *see Acad. of Motion Pictures Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-3738 ABC (CWx), 2010 WL 11463697, at *10 (C.D. Cal. Sept. 20, 2010) (dismissing a claim when plaintiff "only conclusory alleged the loss of a property interest, loss of goodwill, and economic and financial loss due to Defendants' conduct, without alleging any specific facts as to what was lost and how"), the allegation still would not cure the innumerable defects in Plaintiffs' APA claims, not to mention that they have no entitlement to any continuing "relationship" with the agency. At bottom, Plaintiffs' dispute with Defendants is one about funding. Addressing Plaintiffs' funding claims would redress Plaintiffs' purported injuries. Accordingly, the USAID "abolishment" claims are beside the point.

## B.      Plaintiffs Do Not Allege Any Agency Action

Plaintiffs argue that the relevant decisions they challenge were not made by the President but by Defendant agencies. Pls.' Opp'n at 45. That is incorrect. As Defendants argued, Defs.' Mot. at 32, an agency action is not reviewable under the APA when a complaint effectively seeks review of the President's action by suing an agency acting on behalf of the President. *Detroit Int'l Bridge Co v. Canada*, 189 F. Supp. 3d 85, 100 (D.D.C. 2016) (concluding that the action by the Department of State on behalf of the President was unreviewable under the APA), *aff'd on other grounds*, 883 F.3d 895 (D.C. Cir. 2018). To the extent Plaintiffs attempt to challenge Executive Order 14,169, *Reevaluating and Realigning United States Foreign Aid*, 90 Fed. Reg. 8,619 (Jan. 20, 2025), Plaintiffs waive this argument as they do not rebut Defendants' assertions that such action is Presidential and thus not subject to review under the APA. Defs.' Mot. at 31-32.

Plaintiffs also argue that the "abolishment of USAID and its programs and initiatives are discrete, concrete agency actions." Pls.' Opp'n at 35. That is wrong. Plaintiffs may not use the

APA to mount "wholesale" challenges to an agency's "entire program." *Nat'l Wildlife Fed'n*, 497 U.S. at 893 (citation modified). As explained above, the APA cause of action provides for judicial review of "discrete agency action[s]." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004); *see* 5 U.S.C. §§ 702, 704. The purported "abolishment" that Plaintiffs challenge is a collection of "many individual actions" that cannot be packaged together and "laid before the courts for wholesale correction under the APA." *Nat'l Wildlife Fed'n*, 497 U.S. at 893; *see also Widakuswara v. Lake*, No. 25-5144, 2025 WL 1288817 at *3 (D.C. Cir. May 3, 2025) (holding that plaintiffs' challenge to the "wholesale shuttering of VOA" and seeking to undo "broad government actions" to "dismantl[e] an entire federal agency" is not a discrete agency action and thus unreviewable under the APA.), *on reconsideration en banc*, No. 25-5144, 2025 WL 1521355 (D.C. Cir. May 28, 2025).

In response, Plaintiffs contend that they do not "lump a 'constellation' of different agency actions under the banner of eliminating the agency." Pls.' Opp'n. at 36. But they do. Indeed, a brief review of their Third Amended Complaint's subsection "Defendants Abolish USAID" shows that Plaintiffs bundle no fewer than six separate alleged events; (1) cancelling USAID programs, 3rd Am. Compl. ¶ 74; (2) allegedly reorganizing USAID into the State Department, *id*. ¶ 75; (3) commencing with RIF notices, *id*. ¶ 76; (4) restructuring of functions and responsibilities, *id*. ¶ 77; (5) unobligated funding, *id*. ¶ 78; and (6) the elimination of select offices and bureaus, *id*. ¶ 79. Under Supreme Court and D.C. Circuit instructions, such impermissible bundling of claims for APA review should be dismissed. *Nat'l Wildlife Fed'n*, 497 U.S. at 893; *see also Widakuswara* 2025 WL 1288817 at *3.

Moreover, as was found with the virtually identical claim regarding USAID's alleged abolishment in *AFSA*, "the Court cannot just take plaintiffs at their word and analyze this case as if there were indeed just one, expansive agency action—the dismantling of USAID—from which plaintiffs seek relief." 792 F. Supp. 3d at 129; *Cf. Widakuswara,* 2025 WL 1288817 at *3 ("The 'dismantling' that plaintiffs allege is a collection of many individual actions that cannot be packaged together and laid before the courts for wholesale correction under the APA." (quotation

marks omitted)).

Plaintiffs' contrary arguments are unavailing. Plaintiffs cherry pick two references by Defendants as evidence that the alleged abolishment of USAID is a distinct agency action. *See* Pls.' Opp'n at 36. Neither is such evidence. The first is from a Congressional Notification that mentions a "post-USAID era," but it evidences no action. *Id*. And the second quotation is a State Department official stating that they "will seek to retire USAID's independent operation," but that also does not go at all to whether USAID still exists, but rather, whether some of their programs and operations are going to be reorganized into the State Department. *Id*. Regardless, those quotations are not "designed 'to implement, interpret, or prescribe law or policy'" as Plaintiffs readily acknowledge is necessary for an APA challenge. *Id*. (quoting *NTEU*, 149 F.4th at 783).

## C. Defendants Have Not Acted Contrary to Law Or Unconstitutionally (Claims Seven, Nine, and Ten)

Plaintiffs argue that the "abolishment" of USAID is contrary to law, and that it is irrelevant whether past Presidents have reorganized the agency. Pls.' Opp'n at 39. And despite the clear command of the D.C. Circuit in *this* case, Plaintiffs contend that their claims are not precluded under *Dalton v. Specter*, 511 U.S. 462 (1994), because (1) their USAID abolishment claims are not predicated on underlying alleged statutory violations, and (2) this case is better analyzed under *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579 (1952) (Jackson, J., concurring), not *Dalton*. Neither contention has merit.

*First*, Plaintiffs claim that their "abolishment claim" is not precluded by *Dalton* because it is not "predicated on . . . underlying alleged statutory violations." Pls.' Opp'n at 40 *(*quoting *GHC*, 153 F.4th at 15 n.11). For support, they argue that Defendants themselves note that there is "no statute that 'explicitly' bars the Executive Branch from shutting down USAID." *Id*. at 40; Defs.' Mot. at 37. But Plaintiffs miss the mark because *Dalton* applies to preclude the statutory violations that have been *alleged* by *Plaintiffs*. It is irrelevant whether *Defendants* contest the existence of statutory bars to agency action. *GHC*, 153 F.4th at 15 n.11.

And in any event, Plaintiffs indeed assert several alleged statutory violations. *See, e.g.*, 3rd Am. Compl. ¶ 172 (citing the Foreign Affairs Reform and Restructuring Act of 1998 (FARRA),

22 U.S.C. § 6563, as well as the FAA in support of their Necessary and Proper claim); *id*. ¶ 174 ("By abolishing USAID and purporting to transfer some of its *statutory responsibilities* to the State Department, without congressional authorization, Defendants are violating the separation of powers." (emphasis added)). As Judge Katsas explained in his concurrence in the denial of the en banc rehearing in this matter, Plaintiffs' separation of powers claim necessarily "turns on whether the relevant appropriations *were* mandatory, which makes it statutory for reviewability purposes under *Dalton v. Specter*, 511 U.S. 462 (1994)." *GHC v. Trump*, No. 25-5097, 2025 WL 2709437 at *1 (D.C. Cir. Aug. 28, 2025). The same is true here, Plaintiffs' "abolishment" claim rests on purported violations of statutes, just like their funding claims.

What is more, Plaintiffs' *ultra vires* claims are expressly grounded in agency actions that purportedly present a "'clear departure by the [agency] from its *statutory* mandate' and are 'blatantly lawless' violations of *statutory* requirements." 3rd Am. Compl. at 50 (emphasis added) (quoting *Fed. Express Corp. v. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022). Although *ultra vires* review is sometimes called "nonstatutory" (or sometimes "equitable statutory") review, that is only because the source of the reviewing court's authority is its equitable powers (rather than any specific statute, like the APA). But an *ultra vires* claim is statutory in nature because it allows for review of whether an agency's action violated a "specific prohibition in a statute." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025), *on remand to*, 152 F.4th 686 (5th Cir. 2025). Accordingly, by Plaintiffs' own pleadings, their claims are rooted in statute.

Plaintiffs cannot obscure the nature of their claims or recast statutory allegations as constitutional ones by disregarding the numerous statutory violations alleged throughout their filings. *See GHC*, 153 F.4th at 14 (cautioning against "plaintiffs [] otherwise be[ing] able to avoid statutory limits on review by reframing any alleged statutory violation by the President as a constitutional one."). Plaintiffs' constitutional claims also depend on their construction of federal statutes, arguing that "Defendants' interpretation [of the ICA] would also raise serious constitutional questions" that would, Plaintiffs argue, allow the President to unconstitutionally amend appropriations laws through a special message. Pls.' Opp'n at 29. Those constitutional

claims are thus precluded by both *Dalton* and the D.C. Circuit's opinion here. *See GHC*, 153 F.4th at 16-17 ("Here, the ICA provides a mechanism for the President to act on impoundment . . . the constitutional claim is predicated on underlying statutory violations.").

*Second*, Plaintiffs contend that *Youngstown*, not *Dalton*, governs because "Defendants do not invoke any statutory authority that they claim grants the President authority to abolish the agency." Pls.' Opp'n at 40. *Youngstown*'s tripartite framework evaluates the scope of Executive authority where there is a conflict between the political branches of the type calling for the Court to determine whether the President's power is "so conclusive and preclusive" as to "disabl[e] Congress from acting upon the subject." 343 U.S. at 637-38. But here, Plaintiffs' claims rest on whether the President had acted contrary to statute, and Defendants' defense similarly rely on the statutes that Plaintiffs claim to have been violated. *See* Defs.' Mot. at 35 (arguing that under the FAA the President has authority to administer aid programs "on such terms and conditions as [the President] may determine." 22 U.S.C. § 2151b(c)(1); Defs.' Mot. at 35 (discussing FARRA's express authorization to reorganize foreign affairs agencies, including the requirement that "at a minimum, for the transfer to and consolidation with the Department of State" of certain USAID functions § 6581(b)); *id*. at 36 (discussing the FY 2024 Appropriations Act's authorization, subject to Congressional notification, to "create, close, reorganize, downsize, or rename bureaus, centers, or offices." 138 Stat. at 766, § 7015(a)). In such circumstances, *Dalton* controls.

Plaintiffs cite to Defendants' discussion of the President's foreign relations power under Article II of the Constitution for the proposition that Defendants stated Constitutional defenses only. Pls.' Opp'n at 41. But that is based on a selective reading of the Motion, which states that: "as discussed above, many statutes authorize the President to organize the administration of foreign aid," and discusses federal statutes extensively. Defs.' Mot. at 33-37, 39.

Plaintiffs also contend that Judge Katsas' concurrence in the denial of rehearing en banc "made clear that Plaintiffs' separation of powers claim would have been cognizable if, as is now the case for Plaintiffs' abolishment claim, Defendants had maintained their constitutional defense[s]." Pls.' Opp'n at 41. This claim, divorced from context, is misleading. Judge Katsas

cabined his hypothetical to defendants' presentment of a "freestanding Article II power," which is not the case here.  *GHC*, 2025 WL 2709437, at *1.  Again, Defendants' defense relied in significant part on statutes.

> **D.    Defendants Did Not Act Arbitrarily And Capriciously In Reorganizing USAID And Its Programs (Claims Seven and Eight)**

Plaintiffs argue that Defendants' purported "decision[s] to abolish USAID" and to "shut down foreign-assistance programs, initiatives, offices, and partnerships" are arbitrary and capricious. 3rd Am. Compl. ¶¶ 176-186, 198-206.  Defendants argue that the arbitrary-and-capricious claim should be dismissed, citing in support the joint appendix in *AFSA v. Trump*, No. 25-cv-352 (D.D.C.), a case involving an identical challenge, to demonstrate that the agency acted reasonably, justified their actions, and considered reliance interests and reasonable alternatives. Plaintiffs took issue with Defendants' citation, including faulting Defendants for failing to cite any "authority allowing a court to take notice of contested factual assertions in another case's administrative record."  Plaintiffs' argument has no merit.

First, Defendants cite ample authority for the proposition that "[a] court may take judicial notice of, and give effect to, its own records in another but interrelated proceeding . . . ."  *Booth v. Fletcher,* 101 F.2d 676, 679 n.2 (D.C. Cir. 1938); Defs.' Mot. at 38 n.5; *see also Brewer v. Islamic Republic of Iran,* 664 F.Supp.2d 43, 50–51 (D.D.C. 2009) ("this Court 'may take judicial notice of related proceedings and records in cases before the same court.'" (quoting *Estate of Heiser v. Islamic Republic of Iran,* 466 F.Supp.2d 229, 263 (D.D.C. 2006)).  Second, the administrative record was certified as true and accurate by the agency.  *See AFSA v. Trump*, No. 25-cv-352 (D.D.C.), J.A. at 1, ECF No. 85.  Third, the Court can judicially notice the docket in *AFSA*.  "The Court may review evidence considered in an opinion that is judicially noticed, without necessitating the re-presentment of such evidence."  *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 59 (D.D.C. 2010) (citing *Estate of Heiser,* 466 F.Supp.2d at 264).  The Court may take judicial notice of another court's proceedings. *See Jenson v. Huerta,* 828 F.Supp.2d 174, 179 (D.D.C. 2011) ("The court may take judicial notice of public records from other court proceedings."  (citation omitted).

22

Plaintiffs also claim that because the administrative record in *AFSA* was certified in April 2025, "months before most of the actions described in the Third Amended Complaint" that Defendants' reliance on the certified record is inappropriate as the information may be stale. Pls.' Opp'n at 43. That is wrong. Their arbitrary and capricious claim squarely attacks the "decision to abolish USAID." 3rd Am. Compl. ¶ 178. And their own pleadings under the "Defendants Abolish USAID" subsection readily aver that the bulk of the decisions they contest are part of the agency's "abolishment" occurred before the April certification of the administrative record. *Id*. ¶¶ 74-82.

Indeed, Defendants very well could submit the same Administrative Record in this case because the challenged agency action is the same. The record in *AFSA* demonstrates the agency acted reasonably, justified their actions, and considered reliance interests and reasonable alternatives. And in any event, many of the declarations and exhibits in the Joint Appendix in *AFSA* were also filed in this proceeding. Thus, even if the Court did not take judicial notice of the record in *AFSA*, Plaintiffs' claim that Defendants failed to consider less disruptive alternatives is still unsupported by the present record.

### E. The Ultra Vires Claim Is Not Plausibly Alleged

Claim Nine, Plaintiffs' *ultra vires* "abolishment" claim similarly falls to state a claim as well. *See* 3rd Am. Compl. ¶¶ 187-190. For Plaintiffs to succeed on their *ultra vires* claim, they must establish that the challenged action is "plainly" in "excess of [the agency's] delegated powers" and also "contrary to a specific prohibition in the statute that is clear and mandatory." *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 721-22 (D.C. Cir. 2022) (quotation omitted); *see also GHC, v. Trump*, 153 F.4th at 20. They cannot do so, as explained in our Motion. Defs.' Mot. at 38-39, 42-44. And in any event, Plaintiffs' own briefing creates a catch-22. In an effort to avoid *Dalton's* preclusive effect, they earlier argue that Defendants rely solely on constitutional defenses. *See* Pls.' Opp'n at 41. Yet to sustain that position, Plaintiffs must assert that no statutory basis exists for their alleged "abolishment claim"—thereby conceding the absence of any statutory hook and, in turn, forfeiting any viable *ultra vires* claim.

**F.      The Mandamus Claim Is Not Plausibly Alleged (Claims Five and Eighteen)**

Plaintiffs further err in contending that the extraordinary measure of mandamus relief is available for their claims.  In support, Plaintiffs rely solely on *Aiken*.  Pls.' Opp'n at 45.  But *Aiken* is inapplicable, as the D.C. Circuit has also recognized.   As an initial matter, mandamus is "inappropriate except where a public official has violated a 'ministerial' duty."  *Consol. Edison Co. of N.Y., Inc.   v. Ashcroft*, 286 F.3d 600, 605 (D.C. Cir. 2002); *see Wilbur v. U.S. ex rel. Kadrie*, 281 U.S. 206, 218-19 (1930).   *Aiken* demonstrates this limitation: there, the challenge to the Nuclear Regulatory Commission's handling of the Yucca Mountain storage application addressed a purely ministerial task.  *In re Aiken County*, 725 F.3d 255, 267 (D.C. Cir. 2013).  This limited mandate in *Aiken* to continue proceedings stands in stark contrast with Plaintiffs' sweeping demand that this Court order the disbursement of billions of dollars in expired funds.[5]

The D.C. Circuit's treatment of mandamus in *Aiken* confirms its inapplicability.  Because the dispute there turned only on whether the agency had to continue a mandatory licensing process notwithstanding a lack of funding, and "thereby only indirectly implicating appropriated funds." *GHC*, 153 F.4th at 16.  More importantly, *Aiken* "involved a writ of mandamus under the APA to compel federal officers to perform a statutory duty unreasonably withheld rather than a constitutional cause of action" as is the case here.  *Id*.  Finally, the D.C. Circuit opined that *even if* plaintiffs can, in some circumstances, satisfy the stringent standards called for by mandamus, this in "no way suggests that they can end-run those standards by styling claims that the President violated statutes as constitutional claims implicating the separation of powers."  *Id*. at 16 n.13. Plaintiffs' attempt to dress up their statutory allegations in the garb of constitutional claims fails.

Accordingly, Plaintiffs' mandamus claim should be dismissed.

---

[5]  In any event, contrary to Plaintiffs' claim that the appropriations acts "impose a clear duty on the agency Defendants to make those funds available for obligation," Pls.' Opp'n at 45— Plaintiffs cannot plausibly show that Defendants have disregarded such a duty as many of the funds are designated for expenditure over several years, and not for immediate outlay as Plaintiffs demand.

**CONCLUSION**

This Court should grant Defendants' Motion to Dismiss and dismiss the Third Amended Complaint with prejudice.


Dated: February 24, 2026                    Respectfully submitted,


                                            BRETT A. SHUMATE
                                            Assistant Attorney General
                                            Civil Division

                                            ALEXANDER K. HAAS
                                            Director
                                            Federal Programs Branch

                                            JEAN LIN
                                            Special Litigation Counsel
                                            Federal Programs Branch

                                            */s/ Pierce J. Anon*
                                            PIERCE J. ANON
                                            JOSHUA SCHOPF
                                            Trial Attorneys
                                            United States Department of Justice
                                            Civil Division, Federal Programs Branch
                                            P.O. Box 883
                                            Washington, DC 20044
                                            Phone: (202) 305-7573
                                            Email: pierce.anon@usdoj.gov

                                            *Counsel for Defendants*

25