**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*,<br><br>      *Plaintiffs*,<br><br>    v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>      *Defendants*. | Civil Action No. 25-cv-402 (AHA) |

**PLAINTIFFS' NOTICE OF USAID'S APRIL 2026
CONGRESSIONAL NOTIFICATION**

Plaintiffs respectfully notify the Court of a Congressional Notification (CN) that USAID sent to Congress on April 20, 2026, which bears directly on Plaintiffs' claims that USAID will fail to obligate appropriations before they expire this fall. As described in greater below, the CN states that USAID is setting aside—and not obligating—over $3.1 billion in global health and development assistance appropriations that expire on September 30, 2026. The ostensible purpose of reserving these funds, according to the CN, is to have those funds available to pay the costs of "closing out" contracts, grants, and cooperative agreements terminated last year. But other (non-expiring) funds are available for that purpose, including the money originally obligated to the terminated awards. When Plaintiffs inquired why USAID would need to reserve or use the expiring funds to pay close-outs, and what is USAID's legal authority for doing so, Defendants provided no substantive explanations at all. The CN thus strongly suggests that Defendants are engaging in a new tactic to unlawfully impound billions of dollars in expiring appropriations. Plaintiffs respectfully urge the Court to take judicial notice of the CN in adjudicating the pending motion to dismiss, and to take any other measures appropriate to facilitate final resolution of Plaintiffs' claims regarding the expiring appropriations before the fiscal year ends.

## A.    The Closeout Process

Whenever an agency terminates a federal award, there is a process to close out the award, which typically includes a process for the awardee to seek recoupment for certain costs. For grants and cooperative agreements, award recipients can seek reimbursement for limited types of "closeout costs" and "termination costs" that they incurred due to the termination and in winding down their project. *See* 2 C.F.R. § 200.472. Similarly, for procurement contracts, contractors

1

whose awards are terminated for convenience may recover specified costs for work performed prior to the termination and for costs incurred in winding down the contract. FAR 52.249-6(h).

After terminating an award, agencies typically use remaining amounts that were obligated to the award, but not disbursed at the time of termination, to pay closeout and termination costs. Only once the closeout process is complete and all final payments have been made does the agency then "de-obligate" the money that was obligated to the award. Thus, for all USAID terminations that occurred in 2025 for which the closeout process is not complete, the amounts originally obligated to each terminated award remain obligated to the award and are available to pay any necessary closeout and termination costs.

**B.      The April 2026 Congressional Notification**

The CN indicates that USAID is holding in reserve far more than the remaining amounts obligated to the award to potentially pay closeout and termination costs. Specifically, USAID is reserving for potential use in closing out awards:

1.  $3.179 billion in funds appropriated in 2025 that expire on September 30, 2026. This amount includes $2 billion in expiring appropriations for Global Health Programs and $1.179 billion in expiring appropriations for Development Assistance. Ex. 1 at 3, 5. Both categories of appropriations are among those the Administration previously sought to impound or rescind: Development Assistance appropriations were the funds subject to the Administration's pocket rescission last year, and the Administration had previously obtained actual rescission of some Global Health Programs funds earlier in 2025.

2.  $625 million in funds appropriated in 2024 or prior years. This bucket encompasses funds for which the original period of availability has not expired (e.g., appropriations that had

no expiration date) and money already recouped by USAID after closing out and de-obligating funds from terminated awards. *Id.* at 3, 5

3.  An undisclosed amount that USAID previously obligated to bilateral agreements with foreign nations, but that has not yet been sub-obligated for specific purposes. *Id.* at 3. The CN indicates that these amounts, combined with the amounts obligated but not disbursed on the terminated awards, aggregate to $15.37 billion. *Id.* at 5.

The CN states that the "expected closeout costs" are "anticipated to be substantially less than these total amounts," but that USAID will nevertheless refrain from obligating any of the above funds until "*after* USAID has completed *all* closeout actions," even if that is after the funds in the first category expire on September 30, 2026. *See id.* at 4 (emphases added).

**C.      The CN Appears to Reflect a New Impoundment Tactic**

On May 19, Plaintiffs contacted government counsel to inquire about the CN. Plaintiffs asked why the remaining obligated-but-not-disbursed amounts on the terminated awards were not sufficient to pay closeout and termination costs, especially given that the CN itself states that these costs "are anticipated to be substantially less" than the amounts be reserved. *See* Ex. 2. Plaintiffs expressed particular concern regarding the $3.179 billion in global health and development assistance funds that will expire on September 30, 2026. Plaintiffs asked why USAID designated those accounts to set aside for possibly paying for closeouts, rather than other accounts not expiring this year, and what was the government's plan to ensure these funds do not expire unobligated on September 30. Finally, Plaintiffs sought clarification on USAID's legal authority to use these and the other categories of funds that Congress appropriated for particular purposes to pay closeout and termination costs for awards. *See id.*

3

Defendants took 10 days to meaningfully respond, and even then, they did not answer any of Plaintiffs' questions or otherwise explain why USAID was reserving the expiring funds to pay closeout and terminations costs on terminated awards (nor did they explain the reasons for tapping the other two categories of funds). Defendants also did not offer any explanation regarding their legal authority to use these funds for closing out awards that were funded with other appropriations.

Defendants instead claimed that "the Congressional Notification … contains no new information," and "[i]t is merely a legal requirement to notify Congress of USAID's intent to obligate funds to responsibly pay close out costs to partners with terminated awards and contracts." Ex. 2. Defendants further stated that "these funds are indeed being used to pay out such costs in a responsible and prudent manner and that the agency wants those funds to go to partners with terminated awards and contracts before those funds expire." *Id.* To the extent that this statement reflects that Defendants are using the expiring appropriations to pay closeout costs—even when funds originally obligated to the awards remain available—Defendants did not reconcile this practice with the CN's statement that "USAID will first use previously obligated, but unliquidated, funding in the award for closeout costs." Ex. 1 at 2.

In short, Defendants have offered no explanation for why they must reserve or use these expiring funds to pay the costs of closing out terminated awards. Even if additional amounts might be needed beyond the vast sums obligated but not yet disbursed on the termination awards, Defendants have provided no legitimate basis for why they are setting aside appropriations that expire this year, as opposed to other funds that do not. Indeed, the CN states that the "expected closeout costs" are "anticipated to be substantially less than" that the more than $19 billion being set aside, and the final category in the CN—comprising amounts originally obligated to the

terminated awards and amount obligated but not yet sub-obligated in bilateral agreements—is more than $15 billion, which should be far more than is needed.

Moreover, Defendants have not articulated any explanation for how they can lawfully utilize the expiring Global Health Programs and Development Assistance appropriations for the purpose of paying closeout and termination costs for previously funded, terminated awards. For instance, Congress mandates in the annual appropriations bill for USAID and the State Department that Global Health Programs appropriations "shall be made available in the amounts specifically designated" for specific purposes in the explanatory statement, and the agencies are prohibited from deviating at all from those amounts. *See* Further Consolidated Appropriations Act of 2024, Pub. L. 118-47 §§ 7019(a), (d)(2).[1]

Accordingly, it seems that the CN and related activities reflect Defendants' latest tactic to avoid obligating foreign assistance funds for their intended purposes. If USAID waylays these appropriations until after all terminations have been closed out, that will likely extend beyond September 30 and the funds will expire. Alternatively, if USAID is using these funds to pay closeout and termination costs despite the amount originally obligated being available for this purpose, USAID will simply be defying Congress' spending directives by another means.

Plaintiffs' existing claims already encompass all of the appropriations at issue in the CN, but Plaintiffs respectfully request that the Court take judicial notice of the CN in adjudicating the pending motion to dismiss, as it pertains to Plaintiffs' appropriations-related claims. *See Rancho Vista del Mar v. United States*, 640 F. Supp. 3d 112, 117 n.1 (D.D.C. 2022) (explaining that the D.C. Circuit has held that "public records, including agency documents, are 'subject to judicial

---

[1] These requirements were carried forward in the 2025 Continuing Resolution, which appropriated the Global Health Programs funds that expire in September 2026.

notice on a motion to dismiss'" (citing *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997)).

Plaintiffs also respectfully submit that the CN underscores the urgency of proceeding on Plaintiffs' claims, or at a minimum on Plaintiffs' claims relating to appropriations that will expire on September 30, 2026. As Plaintiffs have previously mentioned, Plaintiffs hope to reach final resolution of these appropriations claims prior to the end of the fiscal year, which would avoid the need for any emergency proceedings. Plaintiffs stand ready to take any necessary steps to achieve that outcome. To the extent that would be facilitated by bifurcating these appropriations claims from the other remaining claims, and expediting the former even if the Court continues to consider the motion to dismiss or otherwise proceeds on a longer timeline for the other claims, Plaintiffs would be amenable to that or any other appropriate approach.

Dated: June 1, 2026                     Respectfully submitted,

                                        */s/ Daniel F. Jacobson*
                                        Daniel F. Jacobson (D.C. Bar 1016621)
                                        Stephen K. Wirth (D.C. Bar 1034038)
                                        John Robinson (D.C. Bar 1044072)
                                        Nina C. Cahill (D.C. Bar 1735989)
                                        JACOBSON LAWYERS GROUP PLLC
                                        5100 Wisconsin Ave, Suite 301
                                        Washington, DC 20016
                                        Tel: (301) 823-1148
                                        dan@jacobsonlawyersgroup.com