**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*,<br><br>     *Plaintiffs*,<br><br>     v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>     *Defendants*. | Civil Action No. 25-cv-402 (AHA) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPLETE AND
SUPPLEMENT THE ADMINISTRATIVE RECORD**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

A.    Plaintiffs' Funding Claims.................................................................................... 2

B.    Defendants' 12-Document Administrative Record .............................................. 4

LEGAL STANDARD........................................................................................................... 5

ARGUMENT ....................................................................................................................... 7

I.    The Court Should Order Defendants to Complete the Administrative Record .................. 7

    A.    Defendants' 12-Document Record is Facially Deficient ....................................... 7

    B.    The Court Should Order Defendants to Complete the Record with Documents Considered by the Agency ...................................................................... 9

II.    The Court Should Order Defendants to Supplement the Record...................................... 16

CONCLUSION.................................................................................................................... 18

# TABLE OF AUTHORITIES

**Cases**

*Authors Guild v. NEH*,
 No. 25-cv-3657, 2025 WL 3678097 (S.D.N.Y. Dec. 18, 2025) ........................................... 7, 9

*Charleston Area Med. Ctr. v. Burwell*,
 216 F. Supp. 3d 18 (D.D.C. 2016) ...................................................................................... 6

*Citizens for Resp. & Ethics in Wash. v. OMB*,
 791 F. Supp. 3d 29 (D.D.C. 2025) ..................................................................................... 14

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
 401 U.S. 402 (1971) ........................................................................................................... 5

*City of Dania Beach v. FAA*,
 628 F.3d 581 (D.C. Cir. 2010) ...................................................................................... 7, 17

*City of Duluth v. Jewell*,
 968 F. Supp. 2d 281 (D.D.C. 2013) .................................................................................... 6

*Dallas Safari Club v. Bernhardt*,
 518 F. Supp. 3d 535 (D.D.C. 2021) ................................................................................... 17

*Democracy Forward Found. v. Pompeo*,
 474 F. Supp. 3d 138 (D.D.C. 2020) ................................................................................... 17

*Friends of Animals, Inc. v. Jewell*,
 185 F. Supp. 3d 60 (D.D.C. 2016) ...................................................................................... 6

*Lee Mem'l Hosp. v. Burwell*,
 109 F. Supp. 3d 40 (D.D.C. 2015) ................................................................................... 6, 7

*Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys.*,
 516 F.2d 1229 (D.C. Cir. 1975) .......................................................................................... 6

*Oceana, Inc. v. Ross*,
 290 F. Supp. 3d 73 (D.D.C. 2018) ............................................................................ 6, 9, 10

**Statutes**

2 U.S.C. § 683 ........................................................................................................................... 6

5 U.S.C. § 706 ......................................................................................................... 4, 8, 19, 20

31 U.S.C. § 1512 ..................................................................................................................... 17

31 U.S.C. § 1513 .................................................................................................................. 17

Further Consolidated Appropriations Act, 2024, Pub. L. No. 118-47,
    div. F, §§ 7019(a), 7030–7061 .............................................................. 5, 6, 13, 15, 16

**INTRODUCTION**

The Court directed Defendants to produce the administrative record for Plaintiffs' funding claims concerning foreign-assistance funds set to expire on September 30, 2025, and September 30, 2026. Defendants responded with a 12-document, 420-page record that is facially deficient. It contains two *post hoc* declarations, a generic grant-administration directive, a handful of public documents, and already public OMB apportionment spreadsheets. It contains zero records of the evidence before agency decisionmakers—there are no contemporaneous memoranda, emails, internal correspondence, obligation instruments, spend plans, or other documents directly or indirectly considered by the decisionmakers. And there are no records at all providing the agencies' reasons for taking the relevant actions.

That paltry production cannot be the "whole record" required by the APA. The point of an administrative record is to permit judicial review of the actual basis for agency action. But Defendants' production does not disclose who made the relevant decisions, what materials they considered, what reasons they gave, or how they carried out (and failed to carry out) Congress's binding directives on specific amounts that must be obligated for specific purposes. Defendants' own declarations confirm the existence of missing record materials. Mr. Lewin acknowledges that the September 2025 obligation process involved "dozens of funding approval memoranda" and "multiple steps" that likely generated "thousands of pages" of documents. AR 5 (Lewin Decl. ¶ 7). Yet none of those memoranda or related materials appears in the record. The same is true for the records underlying Defendants' decision reflected in their recent Congressional Notification to withhold billions of dollars in 2026-expiring funds purportedly for paying closeout costs to terminated awardees, for OMB's use of "Unallocated" apportionment lines to prevent the agencies from obligating funds, for Defendants' attribution of pocket-rescission

funds to statutory directives in order to not carry out the directives, and for their decisions not to fund specific congressionally mandated initiatives, line items, and bureaus.

Defendants may not defend their funding decisions while withholding the materials that reveal what those decisions were and why they were made. The record they produced would force Plaintiffs and the Court to proceed by reconstructing the agencies' reasoning from *post hoc* declarations and isolated public documents, rather than reviewing the contemporaneous materials that were directly or indirectly before the decisionmakers. That is precisely what the APA's administrative-record requirement forbids.

The Court should therefore order Defendants to complete the administrative record with the categories of materials identified below. At minimum, the Court should supplement the record with those materials because Defendants' current production provides no explanation sufficient to permit judicial review. And supplementation is independently warranted for Plaintiffs' claims under 5 U.S.C. § 706(1).

Time is of the essence. The funds at issue expire on September 30, 2026, and Plaintiffs' summary-judgment deadline is imminent. Defendants should not be permitted to run out the clock by producing a record that omits the basic materials necessary for review. Plaintiffs respectfully request that the Court order Defendants to complete or supplement the administrative record within seven days.

**BACKGROUND**

**A.    Plaintiffs' Funding Claims**

This Court's Minute Order required Defendants "to produce the administrative record for Plaintiffs' funding claims, insofar as they concern funds set to expire on September 30, 2025, and funds set to expire on September 30, 2026."

2

With respect to the funds originally set to expire on September 30, 2025, Plaintiffs assert three buckets of claims:

(i)    Counts 1–6: Plaintiffs allege that Defendants failed to obligate the funds originally set to expire on September 30, 2025 in the amounts—and for the specific purposes—provided for in the 2024 Appropriations Act and other relevant appropriations acts. Specifically, Defendants failed to obligate the funds in the amounts and for the purposes specified "in the top-level categories of appropriations in Titles III and IV, in the tables incorporated by reference in Section 7019(a), and in the directives in Sections 7030–61." Third Am. Compl. ¶ 129; *see also, e.g.*, *id.* ¶¶ 149–50. These funds include, but are not limited to, the roughly $6.5 billion[1] that Defendants have claimed they did obligate following this Court's September 3, 2025 injunction, but for which Defendants have not provided information or records on the actual obligations that occurred and the extent to which they met the line-item directives. Plaintiffs allege that these actions were contrary to law and arbitrary and capricious.

(ii)   Count 12: Plaintiffs allege that Defendants intentionally and unlawfully minimized compliance with the directives in Sections 7030–7061 of the 2024 Appropriations Act and other applicable appropriations acts, which require that minimum or specific amounts of funds "shall be made available" for specific purposes.  *See* Third Am. Compl. ¶¶ 207–16. Defendants minimized compliance with these directives by "attributing" appropriations in the pocket rescission proposal to certain Sections 7030–7061 directives—despite no legal requirement to do so—and then asserting that no funds

---

[1] Lewin's new declaration in the administrative record suggests that the amount purportedly obligated following the preliminary injunction was $7.197 billion, not the $6.5 billion estimate previously provided. AR 4 (Lewin Decl. ¶ 5).

remained available because those amounts were "rescinded." Defendants did so even where they could have complied with the directives by using other available appropriations that were not in the pocket rescission. *Id.*

(iii)    Counts 13–18: These counts relate to the failure to obligate roughly $4 billion that was included in the special message sent to Congress in August 2025. Plaintiffs assert that Defendants' failure to obligate funds included in the "pocket rescission" violated the relevant appropriations acts requiring the funds to be obligated by September 30, 2025, *see id.* ¶¶ 213–22, or alternatively that Defendants have an ongoing duty to obligate the funds pursuant to 2 U.S.C. § 683(b) now that 45 days have passed from the rescission proposal, *see id.* ¶¶ 229–247.

With regard to funds set to expire on September 30, 2026, Plaintiffs allege in Counts 1–6 that Defendants have unlawfully decided not to obligate the funds appropriated in the 2025 Continuing Resolution and other relevant appropriations acts in the amounts and for the purposes that Congress intended, including as specified in "the top-level categories of appropriations in Titles III and IV, in the tables incorporated by reference in Section 7019(a), and in the directives in Sections 7030–61." *Id.* ¶ 129.

## B.    Defendants' 12-Document Administrative Record

This Court's order required Defendants to produce the administrative record for Plaintiffs' claims concerning funds set to expire on September 30, 2025 and September 30, 2026. The Court recognized Defendants' submission at the status conference that "it may be more logical and feasible to produce the administrative record by appropriations law rather than by expiration date." 6/12/2026 Minute Order. The Court stated that Defendants "may produce the administrative record as to each appropriations law implicated by Plaintiffs' funding claims, as

long as doing so would encompass the full administrative record for funds set to expire on September 30, 2025 and funds set to expire on September 30, 2026."

On June 26, 2026, Defendants produced a 420-page administrative record consisting of 12 documents. Ex. A (Administrative Record). Two of those documents are *post hoc* declarations submitted by an official at OMB (Tricia Schmitt) and the State Department (Jeremy Lewin), both dated June 26, 2026. AR 1–6. Aside from the two declarations, the administrative record consists mainly of a 221-page generic guidance document on the administration of federal grants that sheds no light on the challenged actions, AR 13–208, and a 142-page PDF of an excel sheet showing OMB's FY 2026 apportionments, AR 275–417. The record also includes a handful of publicly available documents, including USAID's April 20, 2026 congressional notification, AR 230–34, and the August 2025 special message, AR 235–53. None of these documents contains any explanation as to why the relevant actions were taken. The administrative record does not include any contemporaneous emails or other internal correspondence or memoranda, and there is no indication that a search for such materials was conducted.

## LEGAL STANDARD

The Administrative Procedure Act requires reviewing courts to "set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In reviewing agency action, the APA requires courts to "review the whole record or those parts of it cited by a party." *Id.*; *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (APA requires courts to review "the full administrative record that was before the [agency] at the time [it] made [its] decision").

"The 'whole' administrative record consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Lee Mem'l Hosp. v. Burwell*, 109 F. Supp. 3d 40, 46–47 (D.D.C. 2015) (alteration and quotation omitted); *see Friends of Animals, Inc. v. Jewell*, 185 F. Supp. 3d 60, 64 (D.D.C. 2016) ("The administrative record includes all materials compiled by the agency that were before it at the time the decision was made."). The record must include "all materials that might have influenced the agency's decision, not merely those on which the agency relied on its final decision." *Lee Mem'l Hosp.*, 109 F. Supp.3d at 47; *accord Charleston Area Med. Ctr. v. Burwell*, 216 F. Supp. 3d 18, 23 (D.D.C. 2016) (citing *Nat'l Courier Ass'n v. Bd. of Governors of Fed. Reserve Sys.*, 516 F.2d 1229, 1241 (D.C. Cir. 1975)). The agency "may not skew the record by excluding unfavorable information." *City of Duluth v. Jewell*, 968 F. Supp. 2d 281, 287 (D.D.C. 2013) (quotation omitted). Nor may the agency "exclude information from the record simply because it did not 'rely' on the excluded information in its final decision." *Id.* (quotation omitted).

"There are two situations in which a plaintiff may seek to add evidence or documents to the administrative record." *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 77 (D.D.C. 2018). First, a plaintiff may move to *complete* the administrative record to "include evidence that should have been properly a part of the administrative record but was excluded by the agency." *Id.* (quotation omitted). To prevail on such a motion, the plaintiff "must only 'put forth concrete evidence' and 'identify reasonable, non-speculative grounds for [its] belief that the documents were considered by the agency and not included in the record." *Id.* at 78–79 (quoting *Charleston Area*, 216 F. Supp. 3d at 23). "When the record produced does not reflect the full universe of materials that

6

informed the agency's decision," completion of the record "is not only permissible—it is required." *Authors Guild v. NEH*, 2025 WL 3678097, at *4 (S.D.N.Y. Dec. 18, 2025).

Second, a plaintiff may move to *supplement* the administrative record to include "extra-judicial evidence that was not initially before the agency" but "nonetheless should be included in the administrative record." *Oceana*, 290 F. Supp. 3d at 77 (quotation omitted). A plaintiff may seek to supplement the record under three circumstances: "(1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information is needed to determine whether the agency considered all the relevant factors, or (3) if the agency failed to explain administrative action so as to frustrate judicial review." *Id.* (citation modified) (quoting *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010)).

Plaintiffs move both to complete and supplement the administrative record here.

## ARGUMENT

**I.    The Court Should Order Defendants to Complete the Administrative Record**

### A.    Defendants' 12-Document Record is Facially Deficient

As an initial matter, the meager administrative record produced is deficient on its face and demonstrates that Defendants did not make any serious effort to compile the "whole" record "directly or indirectly considered" by the agencies. *Lee Mem'l Hosp.*, 109 F. Supp. 3d at 46–47. The only new, nonpublic documents are the Schmitt and Lewin declarations, and neither of those declarations provides contemporaneous information or explanations as to *who* were the relevant decisionmakers, w*hy* Defendants have obligated (or failed to obligate) funding in the manner that they have, or even *how* Defendants have obligated funding, in terms of the instruments that Defendants used to obligate funding and the activities towards which funds were obligated.

The Schmitt declaration is two pages long and simply recaps State and USAID Congressional notifications and other public actions. For instance, the declaration states that

7

"[a]ll funds described in the September 12, 2025 CN were obligated by USAID to State on September 30, 2025," AR 2 (Schmitt Decl. ¶ 6), but the administrative record does not contain that obligation document, nor does Schmitt or anything else in the record provide any details regarding this transaction. As a whole, the Schmitt declaration contains no reasoning or explanations for OMB's actions, nor does it even identify the relevant decisionmakers at OMB.

The Lewin declaration is four pages long and similarly sparse. It generally recaps, in broad terms, State's and USAID's obligations of foreign aid funding in September 2025. But again, the declaration provides no explanation for any of the decisions at issue and does not identify the relevant decisionmakers at State or USAID. Significantly, the Lewin declaration acknowledges that the obligation of foreign assistance funds in September 2025 involved "dozens of funding approval memoranda as well as multiple steps necessary to implement the obligation of the relevant funds consistent with those approvals." AR 5 (Lewin Decl. ¶ 7). But the administrative record does not include those approval memoranda or any other documents reflecting the "multiple steps" that Defendants took to obligate the relevant funds.

The Lewin declaration also notes that State and USAID took various steps to obligate funding, including "addressing . . . pre-obligation requirements (such as submission of spend plans and certifications to Congress with respect to certain assistance), technical budget and program work, seeking apportionments from OMB, negotiating bilateral diplomatic and interagency agreements, preparing and executing grants and contracts, and completing required financial and related systems steps." *Id.* Lewin states that each of these steps "may involve additional documentation," and estimates that "approximately 357 foreign assistance expiring cost actions . . . occurred at the Department between June 1, 2025, and September 1, 2025,"

8

which "likely involve thousands of pages of documents for these actions alone." *Id.* But again, the administrative record includes none of these documents.

The few documents that the administrative record does contain are largely irrelevant to Plaintiffs' claims, do not disclose the agencies' reasoning or the information they considered, and show that Defendants have not made a good-faith effort to compile the administrative record. More than half of the pages in the record are from a "Federal Assistance Directive" that Lewin himself acknowledges does not contain "direct guidance on funding decisions" and says nothing about why or how the agencies obligated funds. AR 5 (Lewin Decl. ¶ 7). Nor do the OMB apportionments—which simply show the amounts OMB has apportioned for various accounts—say anything about why OMB apportioned funds in the manner that they did, including apportioning significant amounts of money to "Unallocated" lines, which legally precludes State and USAID from obligating the money for any purpose. *See infra*. And apportionments are just one step in the process and do not reflect whether and how the State Department and USAID have obligated or will obligate funds.

The government's facially deficient record itself provides "reasonable, non-speculative grounds" to believe that the 12-document administrative record is incomplete. *Oceana*, 290 F. Supp. 3d at 77. "Where the record does not reveal the basis for the agency's decision, judicial review would devolve into speculation or reliance on post hoc rationalizations." *Authors Guild*, 2025 WL 36778097, at *5. Here, the record produced contains *no* basis for the decisions underlying Plaintiffs' claims.

### B. The Court Should Order Defendants to Complete the Record with Documents Considered by the Agency

Although Plaintiffs do not and could not know all of the records in existence that should be part of the administrative record but are not, there are documents that Plaintiffs know are

missing or have "non-speculative grounds" to believe are missing, as relevant to the funds set to expire this and last year. *Oceana*, 290 F. Supp. 3d at 78–79.

### 1. Funds Set to Expire September 30, 2025

With respect to funds set to expire September 30, 2025, the Court should order Defendants to complete the administrative record with the following categories of documents.

**Documents concerning the decision to not obligate the funds in the August 28, 2025 special message.** As relevant to Counts 13-18, the administrative record must contain all records directly or indirectly considered by Defendants in not obligating the funds included in the August 28, 2025 special message, including but not limited to documents showing who decided to not obligate these funds under the rubric of a pocket rescission (and when), who decided on the particular funds to put in the pocket rescission, for what reasons these funds were chosen, and other records pertinent to the decision to not obligate these specific funds.

**Documents concerning attribution of the pocket-rescission funds.** As relevant to Counts 12–18, the administrative record must contain documents showing how Defendants "attributed" money in the August 2025 special message, including to particular directives in Sections 7030–7061. These records should include the details regarding how much money from the special message was attributed to each and every directive to which the funds were attributed, as well as records reflecting the relevant decisionmaker(s) for attributing these funds, the process behind doing so, and the reasoning for these decisions.

**Documents concerning the actual obligation of the non-pocket-rescission funds.** As relevant to Counts 1–6, Defendants should be required to complete the administrative record with all documents and materials directly or indirectly considered in deciding how to obligate the non-special-message funds that were set to expire on September 30, 2025. This category includes

10

how and why these funds were obligated across the top-level categories of appropriations in Titles III and IV, the line items in the tables incorporated by reference in Section 7019(a), and the directives in Sections 7030–7061.

Plaintiffs' understanding is that Defendants maintain obligation data broken down at these levels, and there must be other documents reflecting the allocation decisions that Defendants made and the reasons for those decisions. Defendants must also add to the administrative record all of the records that Schmitt and Lewin describe in their declarations relevant to how funds were obligated, including the September 30, 2025 inter-agency agreement between USAID and the State Department, records regarding the executed grants, cooperative agreements, and contracts (if not the entire agreements, records sufficient to show how much was obligated, to what recipient, and for what activities), and other pertinent materials that exist. It does not matter if, as Lewin claims, these records "involve thousands of pages of documents." AR 5 (Lewin Decl. ¶ 7). That is hardly atypical for an administrative record in a case like this.

**Documents concerning funds that lapsed notwithstanding Defendants' asserted obligation efforts.** Also as relevant to Counts 1–6, Defendants should be required to complete the record with all documents and materials directly or indirectly considered concerning funds that expired on September 30, 2025 but were not obligated, including funds outside the special message. For instance, Defendants include a chart showing that $6,485,164 of Development Assistance funds lapsed on September 30, 2025, *see* AR 208, but the record contains no documentation of why or how that happened, or which decisionmaker(s) were involved.

11

### 2. *Funds Set to Expire September 30, 2026*

With respect to funds set to expire September 30, 2026, the Court should order Defendants to complete the administrative record with the following categories of documents, which are all relevant to Counts 1–6.

**Documents related to the April 20, 2026 Congressional Notification.** As Plaintiffs flagged for the Court, Defendants submitted a Congressional Notification (CN) on April 20, 2026, indicating that they plan to withhold more than $19 billion in funds, purportedly to use if needed "to fund costs associated with close-out of terminated foreign assistance awards." AR 230. The funds being set aside include $3.179 billion in appropriations that expire on September 30, 2026, and specifically $2 billion in expiring appropriations for Global Health Programs and $1.179 billion in expiring appropriations for Development Assistance. AR 234. The CN states that the "expected closeout costs" are "anticipated to be substantially less than" the $19 billion being set aside, but that USAID will nevertheless refrain from obligating *any* of the identified funds until "after USAID has completed *all* closeout actions," even if that is after the relevant funds expire on September 30, 2026. AR 233 (emphasis added).

The administrative record is missing—but must include—materials showing the bases and methodology behind Defendants' determination that more than $19 billion had to be reserved for paying closeout costs, including data showing how much money terminated awardees had requested in aggregate for not-yet-closed-out awards. Defendants must also add to the record all relevant materials reflecting how and why the Global Health Programs and Development Assistance funds expiring this year were selected for paying closeout costs, and any analysis of whether using those funds for closeout would comply with the specific purposes and amounts required by Congress, including Section 7019(a) and Sections 7030–7061.

This category of materials is necessary because the roughly $3 billion in appropriations for Global Health Programs and Development Assistance being held in abeyance will be not be obligated before the funds expire this year under the terms of the CN—given that all closeouts will not be done by then—and no explanations have been provided as to why and how these accounts were chosen to be held in reserve. Indeed, the CN expressly states that expected closeout costs are substantially lower than the amounts Defendants have set aside for that purpose. The record simply cannot be complete without the materials showing the expected closeout costs, the basis for those estimates, and the decisionmaking that led Defendants to reserve particular appropriations for closeouts rather than for the purposes Congress specified.

**Lack of funding for specific directives, line items, and bureaus.** The administrative record must include all relevant records pertinent to Defendants' decisions to not obligate funds, in the amounts prescribed by Congress, toward the directives in Sections 7030–7061 of the applicable appropriations acts and the line items in the tables incorporated by Section 7019(a) of those acts.

Plaintiffs do not have access to information on all of the directives and line items that Defendants have decided not to fund at the congressionally prescribed levels—or at all—but the Third Amended Complaint lists several directives and line items that Plaintiffs allege have been shut down (and thus defunded) entirely, including Feed the Future (tables), Power Africa (tables), American Schools and Hospitals Abroad program (§ 7060(b)), multilateral partnerships that support education (§ 7060(1)(B)), higher education programs (§ 7060(3)), Family Planning/Reproductive Health (tables), the Nita M. Lowey Basic Education Fund (§ 7060(1)(A)); Development Innovation Ventures (tables), and the Advisor for Indigenous Peoples' Issues (tables). *See* Third Amended Compl. ¶¶ 83–99. Plaintiffs further allege that

13

Defendants have stopped providing appropriations to the democracy and human rights bureaus at USAID and the State Department, even though Congress specifically appropriated money to those bureaus, because Defendants have eliminated these bureaus entirely. *Id.* ¶ 97; *see* 2024 Appropriations Act, 138 Stat. 743 (appropriating funds specifically for these bureaus). Defendants have not disputed that Plaintiffs plausibly allege that Defendants have stopped funding these line items, directives, and bureaus.

Defendants must produce all materials relevant to the funding of these directives, line items, and bureaus, as well as any other directives and line items they have decided not to fund at the prescribed levels. The administrative record currently contains none of this information.

**Apportionment, reapportionment, allocation, and reserve materials.** Defendants should be required to complete the record with all materials relevant to OMB's apportionment decisions for funds expiring on September 30, 2026. Under the Anti-Deficiency Act, agencies such as the State Department and USAID cannot obligate their appropriations until OMB apportions the funds to the agencies. 31 U.S.C. §§ 1512–13; *see Citizens for Resp. & Ethics in Wash. v. OMB*, 791 F. Supp. 3d 29, 39–41 (D.D.C. 2025). The administrative record contains some of the apportionments for the funds expiring this September, but it does not appear to contain all of them. As just one example that Plaintiffs identified, the administrative record does not appear to include OMB's apportionments for the 2025 Continuing Resolution's appropriations for State Department's Democracy Fund.[2]

In addition, Defendants should be required to add materials relevant to apportionments that did not apportion the full amounts of funds that Congress appropriated for specific accounts

---

[2] Plaintiffs identified this apportionment through a non-government website that tracks apportionments. *See* https://openomb.org/file/11524275#tafs_11524275--019-1121-2025-2026--4--2026.

and purposes. The current Administration has undertaken a novel practice of apportioning substantial amounts of funds with an "Unallocated" designation, rather than apportioning the funds for a substantive activity. The Unallocated designation legally prohibits the agency from obligating the funds for a substantive purpose (absent a subsequent re-apportionment of the funds for a particular purpose or activity). The administrative record includes nine apportionments that provide substantial amounts to "Unallocated" lines, totaling over $1 billion in funds in aggregate. AR 316, 331, 340, 346, 352, 355, 388, 397, 403. The Democracy Fund example that Plaintiffs found outside the administrative record also contains such an Unallocated line, for $76 million. *See supra* note 2. Absent subsequent apportionments, these Unallocated designations will necessarily result in funds not being obligated before they expire in September.

The administrative record must include emails, correspondence, memoranda, and other materials pertinent to the decisions to apportion foreign assistance funds that expire this year to Unallocated lines. Indeed, Defendants recognize that apportionment information is properly part of the record on Plaintiffs' funding claims—as they include the apportionments themselves—but an administrative record must include far more than documents simply reflecting the fact that certain actions were taken, without any explanation of the reasons for those actions.

**Compliance or noncompliance with the amounts and purposes specified in the Section 7019(a) tables and Sections 7030–7061.** Defendants should be required to complete the administrative record with all documents or other records showing how State, USAID, or OMB has mapped, allocated, planned, or tracked funds expiring on September 30, 2026, onto the specific accounts, line items, and directives.[3] This includes documents showing required

---

[3] On information and belief, Defendants have made a legally erroneous, government-wide determination that funding tables incorporated by reference into the 2024 Appropriations Act do not apply to the 2025 Continuing Resolution. The Government Accountability Office recently correctly rejected this position. *See* GAO, *Department of Energy—Application of the Purpose*

amounts, actual obligations, decisions to obligate funds prior to September 30, 2026, and data on the unobligated balances associated with each top-level appropriation, line item, and directive. In addition, the record must include an explanation for failing, or planning not, to make funds available for a specific statutory purpose.

This category is necessary notwithstanding Lewin's double-negative assertion that "State is not aware of any plan not to obligate funding that expires on September 30, 2026." AR 6 (Lewin Decl. ¶ 9). Defendants did not dispute in their motion to dismiss that Plaintiffs plausibly alleged that such decisions have been made. Moreover, Lewin's statement does not address the knowledge of *other* Defendants (including OMB), nor does it state whether Defendants have made, considered, or are implementing specific decisions—as opposed to a "plan"—that will prevent or inhibit the funds from being obligated in the amounts and for the purposes Congress mandated. And his statement does not speak at all to whether Defendants have decided not to obligate funds for specific *purposes* that Congress required.

The administrative record must therefore include the materials showing how Defendants mapped—or failed to map—2026-expiring funds onto Congress's specific purpose-and-amount directives. In the alternative, as described below, this and other categories of records should be produced in reference to Plaintiffs' 5 U.S.C. § 706(1) claims.

## II. The Court Should Order Defendants to Supplement the Record

Even if any of the documents described above are viewed as extra-record evidence that was not "before the agency," there is ample reason to supplement the record with this material.

---

*Statute and Antideficiency Act to Agency Use of Funds Under a Continuing Resolution*, B-337838 (June 4, 2026), https://www.gao.gov/assets/890/886248.pdf. To the extent Defendants have concluded that they need not comply, for funds from the 2025 Continuing Resolution, with the tables referenced in Section 7019(a) in the 2024 Appropriations Act, the administrative record must contain materials regarding that determination and its implementation.

The D.C. Circuit has identified three circumstances where supplementation is appropriate for claims challenging final agency action under 5 U.S.C. § 706(2)—(1) "if the agency deliberately or negligently excluded documents that may have been adverse to its decision," (2) "if background information [is] needed to determine whether the agency considered all the relevant factors," and (3) "if the agency failed to explain administrative action so as to frustrate judicial review." *City of Dania Beach*, 628 F.3d at 590 (quotation omitted). Each of these circumstances is present here.

As described above, Defendants' paltry, 12-document production on its face exhibits a wholesale disregard for their obligation to produce the "whole" administrative record and at the very least "negligen[ce]" in excluding documents that may have been adverse to their position. *Id.* The categories of documents identified above are likewise "needed to determine whether the agency considered all the relevant factors," as there are presently *no* documents in the record identifying any factors that were considered. *Id.* And the agencies have also "failed to explain [their] actions so as to frustrate judicial review" by providing no explanation at all. *Id.*

Independently, supplementation of the record with the documents described above is warranted because Plaintiffs have asserted claims for agency action unlawfully withheld or unreasonably delayed under 5 U.S.C. § 706(1). *See* Third Am. Compl. ¶¶ 149–50. Courts "may turn to extra-record evidence where agencies are sued under § 706(1) for a failure to take action." *Democracy Forward Found. v. Pompeo*, 474 F. Supp. 3d 138, 148–49 (D.D.C. 2020) (quotation omitted). Although some courts have limited review of Section 706(1) claims to the administrative record where the record was particularly voluminous and thorough, *see, e.g., Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 540–41 (D.D.C. 2021), those same courts have recognized that there are "some failure-to-act cases where, as a practical matter, judicial

17

review is difficult, if not impossible, absent extra-record evidence," *id.* That includes the circumstances here, where the issue is whether Defendants will obligate funds over the next three months, before a hard deadline. Thus, even if Defendants have not yet made a final decision not to spend funds (although Plaintiffs firmly assert that they have), supplementation of the record would be warranted given Plaintiffs' Section 706(1) claim that Defendants have at least "unlawfully withheld" and "unreasonably delayed" agency action.

*        *        *

Plaintiffs respectfully request that the Court resolve this motion expeditiously and order Defendants to complete or supplement the administrative record within seven days or less of the Court's order. Time is of the essence because the challenged funds expire on September 30, 2026, and Plaintiffs' deadline to move for summary judgment is imminent. Depending on the volume and nature of the materials Defendants produce, Plaintiffs may seek a short extension of their deadline to file their motion for summary judgment or, if appropriate, seek leave to supplement their motion. But in all events, Defendants should not gain the benefit of delay from their patently deficient compliance with the Court's directions.

### CONCLUSION

The Court should order Defendants to complete and supplement the administrative record as set forth above and in the attached proposed order.

18

Dated: July 1, 2026

Respectfully submitted,

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson (D.C. Bar 1016621)
Stephen K. Wirth (D.C. Bar 1034038)
John Robinson (D.C. Bar 1044072)
Nina C. Cahill (D.C. Bar 1735989)
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave, Suite 301
Washington, DC 20016
Tel: (301) 823-1148
dan@jacobsonlawyersgroup.com

19