# Exhibit A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

GLOBAL HEALTH COUNCIL, *et al.*,

     *Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

     *Defendants*.

Civil Action No. 1:25-cv-402

(AHA)

## CERTIFICATION OF ADMINISTRATIVE RECORD

I, Tricia A. Schmitt, Deputy Associate Director for the International Affairs Division at the Office of Management and Budget (OMB) in the Executive Office of the President, hereby certify that, to the best of my knowledge, the materials in the attached comprise the administrative record in the matter under review in this case.

Executed on June 26, 2026, at Washington, D.C.

*Tricia Schmitt*

Tricia A. Schmitt

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GLOBAL HEALTH COUNCIL, *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Civil Action No. 1:25-cv-402

(AHA)

### CERTIFICATION OF ADMINISTRATIVE RECORD

I, Jeremy Lewin, performing the duties of the Under Secretary of State for Foreign Assistance, Humanitarian Affairs, and Religious Freedom and serving as a Senior Advisor to the Secretary, hereby certify that, to the best of my knowledge, the materials in the attached comprise the administrative record in the matter under review in this case.

Executed on June 26, 2026, at Washington, D.C.

__/s/_____

Jeremy Lewin

1

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*,<br><br>      *Plaintiffs*,<br><br>      v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>      *Defendants*. | Civil Action No. 1:25-cv-402 (AHA) |

**ADMINISTRATIVE RECORD INDEX**

| Document | AR Nos. |
|---|---|
| Schmitt Declaration | AR 000001 |
| Lewin Declaration | AR 000003 |
| DOSAM Update - June 2024 | AR 000007 |
| FAD v 10.1 - FINAL 01-01-26 (1) | AR 000013 |
| Foreign Assistance Funds Expiring September 30, 2025 | AR 000208 |
| IAA Guide Rev AUGUST 2025 | AR 000209 |
| Comprehensive_CN_USAID_Close_Out_4.20.26 | AR 000230 |
| House Letter August Rescissions Signed | AR 000235 |
| GAO Transmittal Letter Rescissions Package v4 - Signed | AR 000236 |
| FY 2026 Apportionment<br>Funds Provided by Public Law (FY 2026 Actual CO)<br>      (PDF converted from Excel) | AR 000254 |
| ICA by TAFS<br>      (PDF converted from Excel) | AR 000266 |
| CN Apportionments:<br>FY 2026 Apportionment<br>Funds Provided by Public Law (FY 2026 Est. Carryover)<br>      (PDF converted from Excel) | AR 000275 |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GLOBAL HEALTH COUNCIL, *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Civil Action No. 1:25-cv-402 (AHA)

**DECLARATION OF TRICIA A. SCHMITT**

In accordance with the provisions of 28 U.S.C. § 1746, I, Tricia A. Schmitt, state as follows, under penalty of perjury, pertinent to the above-styled and numbered case:

1. I currently serve as Deputy Associate Director for the International Affairs Division at the Office of Management and Budget (OMB) in the Executive Office of the President. I have occupied this position since October 25, 2021. My responsibilities include oversight of foreign assistance managed by the United States Agency for International Development and the Department of State. I make the statements herein based upon my personal knowledge, and upon information available to me in my official capacity:

2. The International Affairs Division (IAD) oversees multiple agencies and programs, including those of the Department of State (State) and United States Agency for International Development (USAID).

3. It is my understanding from the Court's June 12, 2026, Minute Order and the June 12, 2026, status conference that the Department of State is to produce an administrative record for Plaintiffs' funding claims for funds that expired on September 30, 2025, including those USAID funds described in the August 28, 2025, special message, and for funds set to expire on September 30, 2026.

4. Consistent with section 7015(c) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (SFOP Act), and as carried forward by the Full-Year Continuing Appropriations Act, 2025, and section 7015(c) of the National Security, Department of State, and Related Programs Appropriations Act, 2026, State must provide notification to Congress of its intent to obligate funds appropriated to certain accounts under such Acts, fifteen days prior to the obligation.

1

**AR 000001**

5. On behalf of USAID, State sent a Congressional Notification (CN) on September 12, 2025, to alert Congress of its intent to obligate $1.8 billion in funds in the Economic Support Fund account that were appropriated in Fiscal Year (FY) 2024 and set to expire on September 30, 2025.

6. All funds described in the September 12, 2025 CN were obligated by USAID to State on September 30, 2025.

7. The CN provided to Congress on April 20, 2026, clearly stated USAID's intent to obligate funds that were appropriated to a variety of appropriation accounts in FY 2025 and prior years to responsibly close out terminated foreign assistance awards and contracts. These resources will enable USAID to responsibly close out programs and pay outstanding bills to American small businesses and other partners. The FY 2025 Global Health Programs funds described in the CN represent unobligated balances that will be used to settle terminated awards that do not have sufficient unliquidated obligations to pay closeout costs.

8. USAID will complete a significant number of closeout actions by September 30, 2026, and is working diligently to wrap up as much as possible before this date.

9. Of the $19 billion originally notified to Congress on April 20, 2026, $2 billion of the funding appropriated to the Global Health Programs account in FY 2025 that expires on September 30, 2026, was included, and $1.179 billion of the funding appropriated to the Development Assistance account in FY 2025 that expires on September 30, 2026, was included.

10. Of the $2 billion in Global Health Programs funding described above, USAID has since reapportioned $647 million from USAID to State to address the Ebola outbreak, reducing the amount from $2 billion to $1.353 billion.

11. Of the $647 million reapportioned, State has notified Congress of the intent to obligate $100 million, and of that amount, more than $80 million has already been obligated.

12. For the remainder of available unobligated balances appropriated to State and USAID in the acts described in paragraph 4, State is still developing the Congressional Notifications for many of those accounts, which is normal practice. A significant portion of foreign assistance is usually obligated at the end of the fiscal year. As such decisions are made, State will have the opportunity to avail itself of the notification process described in section 7015(c) of the appropriations acts described in paragraph 4 to apprise Congress of the intent to obligate funds. Notably, for the unobligated balances that expire on September 30, 2026, there are 96 days until September 30, so time remains to obligate such funds.

I declare under penalty of perjury that the foregoing is true and correct. Executed on June 26, 2026.

*Tricia Schmitt*    6/26/2026
_____

Tricia A. Schmitt

2

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

GLOBAL HEALTH COUNCIL, *et al.*,

      *Plaintiffs*,

     v.

DONALD J. TRUMP, *et al.*,

      *Defendants*.

Civil Action No. 1:25-cv-402 (AHA)

**DECLARATION OF JEREMY LEWIN**

In accordance with the provisions of 28 U.S.C. § 1746, I, Jeremy Lewin, state as follows, under penalty of perjury, pertinent to the above-styled and numbered case:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this declaration. This declaration is based on my personal knowledge and information provided to me in my official capacity by others.

2. I am currently performing the duties of the Under Secretary of State for Foreign Assistance, Humanitarian Affairs, and Religious Freedom and serve as a Senior Advisor to the Secretary of State. In my current roles, I oversee the management of foreign assistance resources appropriated to the Department of State (State) and the United States Agency for International Development (USAID); assist the Secretary in exercising his duties under the Foreign Assistance Act; serve as the senior-most advisor to the Secretary on foreign assistance, democracy, migration and values-based diplomacy issues around the world; and oversee several State Department functions including the Bureau of Democracy, Human Rights, and Labor, the Bureau Population, Refugees, and Migration, the Bureau of Global Health Security and Diplomacy, the Bureau of Disaster and Humanitarian Response, and the Office of Foreign Assistance Oversight.

3. It is my understanding from the Court's June 12, 2026, Minute Order and the June 12, 2026, status conference that the Department of State is to produce an administrative record for funds expiring on September 30, 2025, and for funds set to expire on September 30, 2026.

AR 000003

4. With respect to the funds expiring on September 30, 2025, the $4 billion in funding included in the President's August 28, 2025, special message to Congress was withheld from obligation consistent with the August 29, 2025, apportionment by the Office of Management and Budget and expired under the terms of the relevant appropriations.

5. The Department estimates approximately $7.197 billion[1] in expiring funds were available across nine foreign assistance accounts following enactment of the Rescissions Act of FY 2025 and transmission of the President's special message. State and USAID made their best efforts to obligate the funds by September 30, 2025, and obligated virtually all those funds before they expired through a range of mechanisms, such as grants, contracts, cooperative agreements, development objective agreements, and interagency agreements.[2] State and USAID obligated $7.177 billion of those funds prior to their expiration on September 30, 2025. See attached "Foreign Assistance Funds Expiring September 30, 2025" spreadsheet for specific details by account.

6. I understand that the relevant accounts (as listed in the spreadsheet) are appropriated to carry out certain authorities in the Foreign Assistance Act and other legislation:

- Assistance For Europe, Eurasia and Central Asia is appropriated to carry out the provisions of the Foreign Assistance Act of 1961, the FREEDOM Support Act (Public Law 102–511), and the Support for Eastern European Democracy (SEED) Act of 1989 (Public Law 101–179).
- Development Assistance is appropriated to carry out the provisions of sections 103, 105, 106, 214, and sections 251 through 255, and chapter 10 of part I of the Foreign Assistance Act of 1961.
- Democracy Fund is appropriated to carry out the provisions of the Foreign Assistance Act of 1961 for the promotion of democracy globally.
- Economic Support Fund is appropriated to carry out the provisions of chapter 4 of part II of the Foreign Assistance Act of 1961
- Foreign Military Financing is appropriated for grants to enable the President to carry out the provisions of section 23 of the Arms Export Control Act (22 U.S.C. 2763).

---

[1] This amount includes funds appropriated in the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (Div. F, P. L. 118-47), the Full-Year Continuing Appropriations Act, 2025 (Div. A, P. L. 119-4), supplemental appropriations and carry-over funds from pre-2024 appropriations cycles.

[2] The Department is producing copies of its internal policies that guide the award and administration of: grants and other federal assistance instruments (the Federal Assistance Directive), interagency agreements (IAA Guide), and contracts (the Department of State Acquisitions Manual). While these policy guides do not contain direct guidance on funding decisions, to the extent individual funding decisions are tied to instrument-specific policy, internal policies could have an indirect influence on funding allocations and decisions, and therefore were indirectly considered by the decision-makers.

- Global Health Programs is appropriated to carry out the provisions of chapters 1 and 10 of part I of the Foreign Assistance Act of 1961 and to carry out the provisions of the Foreign Assistance Act of 1961 for the prevention, treatment, and control of, and research on, HIV/AIDS.
- International Narcotics Control and Law Enforcement is appropriated to carry out section 481 of the Foreign Assistance Act of 1961.
- Nonproliferation, Anti-Terrorism, Demining and Related Programs is appropriated to carry out the provisions of chapter 8 of part II of the Foreign Assistance Act of 1961 for anti-terrorism assistance, chapter 9 of part II of the Foreign Assistance Act of 1961, section 504 of the FREEDOM Support Act (22 U.S.C. 5854), section 23 of the Arms Export Control Act (22 U.S.C. 2763), or the Foreign Assistance Act of 1961 for demining activities, the clearance of unexploded ordnance, the destruction of small arms, and related activities, and section 301 of the Foreign Assistance Act of 1961 for a United States contribution to the Comprehensive Nuclear Test Ban Treaty Preparatory Commission, and for a voluntary contribution to the International Atomic Energy Agency (IAEA).
- Peacekeeping Operations is appropriated to carry out the provisions of section 551 of the Foreign Assistance Act of 1961.

7. The obligation of the $7.177 billion in foreign assistance funds expiring on September 30, 2025, involved dozens of funding approval memoranda as well as multiple steps necessary to implement the obligation of the relevant funds consistent with those approvals. For example, congressional consultation and notification are often required before the obligation of funds, consistent with applicable statutory requirements. See, e.g., section 634A of the Foreign Assistance Act of 1961 (22 U.S.C. 2394-1(a)); section 7015(c) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024, 138 Stat 460, 766. Additional steps are also typically required to obligate these funds, including addressing other statutory pre-obligation requirements (such as submission of spend plans and certifications to Congress with respect to certain assistance), technical budget and program work, seeking apportionments from OMB, negotiating bilateral diplomatic and interagency agreements, preparing and executing grants and contracts, and completing required financial and related systems steps. Each of these steps may involve additional documentation, which would be specific to each funding approval. The Department estimates approximately 357 foreign assistance expiring funds cost actions (including new actions and cost modifications) occurred at the Department between June 1, 2025, and September, 2025, which would likely involve thousands of pages of documents for these actions alone.

8. As in past years and Presidential Administrations, despite these efforts, a small amount of these foreign assistance funds lapsed for operational or other reasons. In particular, $13

million in foreign assistance funds administered by the Department of State and $7.3 million in foreign assistance funds administered by USAID expired after September 30, 2025, for a total of $20.3 million (or approximately 0.3 percent of the $7.197 billion available for obligation following the transmission of the President's Special Message). This amount is consistent with, or less than, the amount of foreign assistance funds that expired in recent fiscal years, which typically ranged from $10 million to $40 million. To my knowledge, there was no decision that these funds not be obligated, and we therefore possess no documents related to such a decision.

9.  As for funds that will expire on September 30, 2026, State is diligently working to obligate the funds prior to their expiration, including by approving funds for obligation, preparing and transmitting congressional notifications, addressing other pre-obligation requirements for the funds, preparing Notices of Funding Opportunities, negotiating with foreign states, interagency partners, and international organizations, and preparing agreements and other obligating documents.  With more than three months left in the current fiscal year, the Department already assesses that the amount of expiring funds this year, net of rescissions enacted by the Congress in 2025, is substantially smaller than last fiscal year.  State is not aware of any plan not to obligate funding that expires on September 30, 2026.  Because there has been no decision not to obligate these expiring funds, we possess no documents related to such a decision.

I declare that the foregoing is true and correct to the best of my knowledge.
Dated: June 26, 2026

_/s/_____
Jeremy Lewin

# Office of the Procurement Executive

**Acquisition Alert 24-14**

**TO:**        All Domestic and Overseas Contracting Activities

**FROM:**     Sharon James
             Office Director
             Office of Acquisition Policy, U.S. Department of State

**SUBJECT:**    **DOSAM Update – June 2024**

**1. Introduction:**  The purpose of this Acquisition Alert is to issue a regularly scheduled update to the Department of State Acquisition Manual (DOSAM). This Acquisition Alert also updates the AQM Document Review and Approval Matrix (DRAM).

**2. Background:**

a.  **DOSAM:** The DOSAM houses the Department's acquisition policies and procedures and is required for use by all contracting personnel within the Department.

b.  **Issuance and Revisions**: The DOSAM was originally issued on October 1, 2023, and is planned to be revised approximately quarterly, as needed, to incorporate any new policies, policy revisions, or cancelations from the preceding period.

c.  **Cancelation of Previous Policies:** This Acquisition Alert supersedes, cancels, and replaces any previous versions of the DOSAM. Additionally, it supersedes, cancels, and archives the following Acquisition Alerts, of which the requirements are now incorporated into the DOSAM as necessary:

| |
|---|
| 24-10 – DOSAM Update - February 2024 |
| 24-11 – Global Warrants - Update |
| 24-12 – Class Deviation - HCA Designations and Delegations |
| 24-13 – Class Deviation - SAM.gov Registration Exception for Vendors in Russia |

d.  **DRAM:** In addition to the policies in the DOSAM, all domestic contracting offices within AQM, to include RPSO Frankfurt, must comply with all

AR 000007

**Acquisition Alert 24-14**

- 2 -

review and approval requirements listed in the DRAM. The matrix must be reviewed and followed throughout all stages of the acquisition process. This includes pre-solicitation, solicitation, contract award, and post-award through contract closeout. This Acquisition Alert supersedes, cancels, and replaces any previous versions of the DRAM.

**3. Acquisition Impact:** Various updates are incorporated into this revision of the DOSAM, to include information that was added, removed, or revised due to policy updates communicated via the Acquisition Alerts listed above, or other miscellaneous updates as needed. A Summary of DOSAM Changes is attached herein. The AQM DRAM is also updated for currency, and a Summary of DRAM Changes is also attached herein.

**4. Action Required:**  All contracting personnel must follow the requirements of this revised issuance of the DOSAM, dated June 2024, when conducting acquisitions or acquisition-related functions. This includes both domestic and overseas Contracting Officers, Contract Specialists, Procurement Agents, Procurement Analysts, Procurement Supervisors, and their chains of command if involved in the acquisition process. All contracting personnel within AQM must also follow this revised issuance of the DRAM, dated June 2024, when conducting acquisitions or acquisition-related functions.

**5. Effective Date:**  This Acquisition Alert is effective upon issuance.

**6. Expiration Date:**  This Acquisition Alert will expire with the issuance of the next DOSAM update.

**7. Additional Information:**  Questions regarding this Acquisition Alert may be directed to AcquisitionPolicy@state.gov.

**8. Attachments:**
   1. Summary of DOSAM Changes (*included herein*)
   2. Summary of DRAM Changes (*included herein*)

**9. Referenced Documents, Checklists, Guides and Templates:**
   Department of State Acquisition Manual (DOSAM)
   Document Review and Approval Matrix (DRAM)

AR 000008

Acquisition Alert 24-14

- 3 -

**Attachment 1. Summary of DOSAM Changes**

1. **Page 1** – Updated the version date from February 2024 to June 2024.
2. **Page 12** – Updated paragraph 601.601-70(a) to add information regarding the HCA Delegation System that was relayed in Acquisition Alert 24-12.
3. **Page 13** – Added paragraphs 601.601-70(a)(1) and (2) to include information regarding HCA Delegations that was relayed in Acquisition Alert 24-12.
4. **Pages 13-14** – Added section 601.601-70-80 (HCA Delegation System) to include HCA Delegation System requirements as relayed in Acquisition Alert 24-12.
5. **Page 18** – Added image of sample warrant.
6. **Page 20** – Added in paragraph 601.603-2-81(c) that HCAs may also request the conduct of a formal review board at any level, and removed the sentence that stated any boards required by the HCA at a lower threshold would be conducted in a separate process established by the HCA as relayed in Acquisition Alert 24-11.
7. **Page 21** – Updated the Warrant Training Requirements table to state that all COs must maintain continuous learning requirements every two years as outlined on the ACM website, and changed warrant profile confirmation from quarterly to semiannually as relayed via email to all warrant holders on February 29, 2024, with the subject "Attention Global Warrant Holders: Important information about your CLP and Profile update."
8. **Page 22** – Updated section 601.603-2-83 to account for the warrants process updates and addition of a flowchart as relayed in Acquisition Alert 24-11.
9. **Page 23** – Updated section 601.603-4 to include information about warrant decreases as relayed in Acquisition Alert 24-11.
10. **Page 24** – Updated section 601.603-4-80 to add link to the ACM website for continuous learning requirements and added a statement that "Upon inactivation, all warrant authorities cease, and any actions taken by an inactive CO are considered unauthorized commitments" as relayed in Acquisition Alert 24-11.
11. **Pages 37-38** – Added subpart 604.11 to add information regarding the SAM.gov deviation for vendors both located in and performing in Russia as relayed in Acquisition Alert 24-13.
12. **Page 38** – Removed subpart 604.12 in its entirety as the Class Deviation for Trade Agreements Thresholds has been incorporated into the FAR.
13. **Page 47** – Added section 605.202-81 to refer overseas contracts personnel to the newly included simplified acquisition competition matrix.
14. **Page 49** – Corrected the sentence in 606.303-70(b) to state, "Justification documentation for any non-competitive interim award must not be submitted for routing, review and/or approval before the request is approved."
15. **Page 75** – Removed reference to the Class Deviation for Trade Agreements Threshold in paragraph 612.301(b)(4), as the requirement has been incorporated into the FAR.
16. **Page 78** – Added section 613.101-84, Overseas simplified acquisition competition matrix, as requested by various overseas posts.
17. **Page 80** – Removed sections 613.302-5 and 613.303-8 in their entirety as the Class Deviation for Trade Agreements Thresholds has been incorporated into the FAR.

AR 000009

**Acquisition Alert 24-14**

- 4 -

18. **Page 108** – Removed subpart 622.15 in its entirety as the Class Deviation for Trade Agreements Thresholds has been incorporated into the FAR.
19. **Page 115** – Removed subpart 625.000 in its entirety as the Class Deviation for Trade Agreements Thresholds has been incorporated into the FAR.
20. **Pages 118-119** – Updated section 625.382 for currency, to include updating links to the Critical Environments List in paragraphs (a) and (b)(1), updating references to include the name change to the Critical Environment Risk Management Division (CERM) throughout, updating clearance review timelines, and clarifying when information can be shared in paragraph (f).
21. **Page 202** – Updated appendix/summary of DOSAM revisions.
22. **Throughout Document** – Updated all Tables of Contents.

---

**DOSAM Change Log:**

Issued – October 2023 (issued under Acquisition Alert 24-01)
Revision 1 – February 2024 (issued under Acquisition Alert 24-10)
Revision 2 – June 2024 (issued under Acquisition Alert 24-14)

AR 000010

**Acquisition Alert 24-14**

- 5 -

**Attachment 2. Summary of DRAM Changes**

1. **Page 1** (and throughout) – Updated date from October 2023 to June 2024.
2. **Page 5** – Added note that Simplified Acquisition Plans are not required for firm-fixed price (FFP) acquisitions to align with current policy.
3. **Page 13** – Updated to denote that the Competition Advocate is the approver for first interim award requests to align with current policy. Added Branch Chief and Division Director review requirements for interim award requests to align with current policy. Added note that concurrent approvals of any justification for non-competitive procurement is prohibited to align with current policy.
4. **Page 17** – Updated reference from Critical Environment Branch to Critical Environment and Risk Management (CERM) Division.
5. **Page 26** – Removed remark that L/BA review is not required for delivery orders for supplies with fixed unit prices or task orders for pre-priced labor hours fixed unit prices for multiple-award contracts >$5M.
6. **Pages 39, 41 & 42** – Added statement that CO must notify the Suspension and Debarment Team at SND@state.gov of all Terminations for Default or Terminations for Cause to align with current policy. Added a note that SPE must be notified of all potential conversions from termination for cause to termination for convenience to align with current policy.
7. **Page 50** (and throughout) - Updated Federal Assistance Directive chapter references.
8. **Page 50 –** Updated the requirement to announce federal assistance funding opportunities for awards over 25,000 on grants.gov.
9. **Page 50 –** Updated sole source requirements for federal assistance.
10. **Pages 50-51** – Updated thresholds for approval of exceptions to competition for federal assistance awards.
11. **Page 52 –** Updated circumstances requiring federal assistance to perform Congressional Notification.
12. **Page 52-53** – Updated to clarify requirements for AQM action memos for federal assistance awards.
13. **Pages 54-55** – Added sections for replacement grants, novations, corrective action plans, cost disallowances, and terminations.
14. **Page 55** – Added note that federal assistance terminations for cause must be referred to the Suspension and Debarment Office.
15. **Page 55** – Added note that federal assistance terminations for cause must be reported in the Contractor Performance Assessment Reporting System.
16. **Pages 56-57** – Updated federal assistance closeout timelines.

**AR 000011**

**Acquisition Alert 24-14**

- 6 -

---

**DRAM Change Log:**

Issued – August 2022 (issued under SPE Memo 22-11)
Update 1 – December 2022 (issued via email from Acquisition Policy)
Update 2 – March 2023 (issued under Acquisition Alert 23-11)
Update 3 – October 2023 (issued under Acquisition Alert 24-01)
Update 4 – June 2024 (issued under Acquisition Alert 24-14)

**AR 000012**



GLOBAL ACQUISITIONS

# Federal Assistance Management

U.S. DEPARTMENT *of* STATE

# Department of State
# Federal Assistance Directive (FAD)

Version 10.1
January 1, 2026

Controlled by: Global Acquisitions, Federal Assistance
Management, Federal Assistance Policy Division
Contact:  Fedassistancepolicy@state.gov

AR 000013

Not for Public Release
Department of State Federal Assistance Directive

**SUMMARY OF FEDERAL AWARD REQUIREMENTS**..........................................................8

**CHAPTER 1: GENERAL** .........................................................................................9

**A. EFFECTIVE DATE**.............................................................................................9

**B. INTRODUCTION** ...............................................................................................9

**C. SCOPE, AUTHORITY, AND APPLICABILITY** ..............................................11

**D. ROLES AND RESPONSIBILITIES**...................................................................13

D.1. OFFICES...............................................................................................14

D.2. GRANTS OFFICERS AND OTHER SIGNATURE AUTHORITIES ............................15

D.2.a.    GRANTS OFFICER WARRANTS .................................................15

D.2.b.    SINGLE TRANSACTION WARRANT INCREASES ..............................23

D.2.c.    GA/FAM/FAO ............................................................................24

D.2.d.    SIGNATURE AND MANAGEMENT OF NON-PUBLIC DIPLOMACY AWARDS AT POST 24

D.2.e.    SIGNATURE AND MANAGEMENT OF GRANTS FOR OTHER AGENCIES....25

D.2.f.    OTHER SIGNATURE AUTHORITIES .................................................26

D.3.    GRANTS OFFICER REPRESENTATIVES.............................................27

D.4.    BUDGET AND FINANCIAL MANAGEMENT OFFICERS ....................................27

D.5. CONTRACTORS SUPPORTING FEDERAL FINANCIAL ASSISTANCE ..................27

D.6. GRANTS MANAGEMENT REVIEWS ......................................................28

**E. STATE ASSISTANCE MANAGEMENT SYSTEM (MYGRANTS)** ....................................29

E.1. MYGRANTS................................................................................29

E.2. HISTORICAL PAPER AWARDS...............................................................29

**F. CONFLICT OF INTEREST** ...................................................................30

**G. GRANTS MANAGEMENT FORMS** ......................................................30

**H. ENGLISH LANGUAGE**........................................................................33

**CHAPTER 2: PRE-FEDERAL AWARD REQUIREMENTS** .............................................35

**A. SELECT THE APPROPRIATE INSTRUMENT** ................................................35

**B. CONFIRM ASSISTANCE LISTING NUMBER**..................................................36

**C. CONFIRM STATUTORY AUTHORITY AND APPROPRIATION**................................37

**D. CONGRESSIONAL NOTIFICATION**................................................................37

**E. REVIEW FOR POTENTIAL RESTRICTIONS AND REQUIREMENTS**.........................39

E.1. MANAGEMENT OF NON-PUBLIC DIPLOMACY AWARDS AT POST ...................40

E.2. FEDERAL AWARDS TO FOR-PROFIT ENTITIES .........................................40

E. 3. FEDERAL AWARDS FOR CONSTRUCTION .............................................41

E. 4. RESTRICTIONS RELATED TO ABORTION.................................................43

2

AR 000014

Not for Public Release
Department of State Federal Assistance Directive

E. 5. AWARD ACTIVITIES IN A DESIGNATED AREA OF COMBAT OPERATIONS: SPOT REPORTING ...................................................................................................................44

E. 6. INTEGRATION AND ADVANCEMENT OF WOMEN'S EMPOWERMENT IN FOREIGN ASSISTANCE ..................................................................................................................46

E. 7.  FUNDING LIMITATIONS FOR THE UNITED NATIONS RELIEF AND WORKS AGENCY (UNRWA)..............................................................................................................47

E. 8. PROHIBITION ON FUNDING ACTIVITIES THAT ENCOURAGE MASS-MIGRATION CARAVANS TOWARDS THE US SOUTHWEST BORDER...............................................47

E. 9. TRAFFICKING IN PERSONS COMPLIANCE PLAN....................................................48

E. 10. FUNDING LIMITATIONS IN LINE WITH EXECUTIVE ORDER 14151: ENDING RADICAL AND WASTEFUL GOVERNMENT DEI PROGRAMS AND PREFERENCING................49

E. 11. CERTIFICATION REGARDING COMPLIANCE WITH APPLICABLE FEDERAL ANTI-DISCRIMINATION LAWS .................................................................................................49

E. 12. FUNDING LIMITATIONS AND DEFINITIONS IN LINE WITH EXECUTIVE ORDER 14168: DEFENDING WOMEN FROM GENDER IDEOLOGY EXTREMISM AND RESTORING BIOLOGICAL TRUTH TO THE FEDERAL GOVERNMENT .........................................................50

E. 13. FUNDING LIMITATIONS IN LINE WITH EXECUTIVE ORDER 14201: KEEPING MEN OUT OF WOMEN'S SPORTS.............................................................................................50

**F. CONDUCT AN OPEN COMPETITION TO SELECT A RECIPIENT** .............................**52**

F. 1. REQUIREMENTS FOR OPEN COMPETITION ...........................................................52

F.2. EXCEPTIONS TO COMPETITION..............................................................................53

F.3. EXCEPTIONS TO COMPETITION: DOCUMENTATION...............................................54

F.4. SOLE SOURCE, LIMITED COMPETITION, AND UNSOLICITED APPLICATIONS55

F.5. DEVELOP THE NOTICE OF FUNDING OPPORTUNITY (NOFO)............................56

F.6. ADVERTISE NOTICE OF FUNDING OPPORTUNITY ................................................61

**G. APPLICATION REQUIREMENTS AND SCREENING** ..................................................**61**

G.1. MINIMUM REQUIREMENTS.....................................................................................61

G.2. UNIQUE ENTITY IDENTIFIER (UEI) AND SYSTEM FOR AWARD MANAGEMENT (SAM.GOV) .....................................................................................................................62

G.3. APPLICATION SCREENING AND TECHNICAL ELIGIBILITY ...............................64

**H. MERIT REVIEW OF APPLICATIONS AND RECIPIENT SELECTION**........................**65**

H.1. EVALUATION CRITERIA ..........................................................................................65

H.2. REVIEW PANEL MEMBERSHIP AND OPERATION .................................................65

H.3. CONFLICT OF INTEREST .........................................................................................66

H.4. CONFIDENTIALITY ..................................................................................................66

H.5. PANEL REVIEW PROCESS .......................................................................................67

H.6. NOTIFICATION TO SUCCESSFUL APPLICANTS .....................................................67

H.7. NOTIFICATION TO UNSUCCESSFUL APPLICANTS ...............................................68

3

**AR 000015**

Not for Public Release
Department of State Federal Assistance Directive

H.8. ROLES AND RESPONSIBILITIES ...................................................................68

**I. INITIATE THE OFFICIAL FEDERAL ASSISTANCE FILE................................................69**

**J. CONDUCT INITIAL DUE DILIGENCE AND VETTING ....................................................69**

    J.1. SYSTEM FOR AWARD MANAGEMENT (SAM.GOV)......................................................70

    J.2. RESPONSIBILITY/QUALIFICATION RECORDS (formerly FAPIIS.gov)...................71

    J.3. REVIEWING AUDITS .....................................................................................72

    J.4. LEAHY LAW VETTING REQUIREMENTS ...........................................................75

    J.5. TERRORIST FINANCING RISK MITIGATION ...........................................................76

    J.6. PROHIBITION ON CERTAIN TELECOMMUNICATIONS AND VIDEO SURVEILLANCE SERVICES OR EQUIPMENT ............................................................79

    J.7. NEVER CONTRACT WITH THE ENEMY ...........................................................79

**K. CONDUCT A RISK ASSESSMENT ...........................................................................80**

    K.1. RISK MITIGATION AND SPECIFIC AWARD CONDITIONS....................................83

**L. UNAUTHORIZED COMMITMENTS ...........................................................................84**

**M. SUBMIT DECISION MEMORANDUM TO AUTHORIZING OFFICIAL.......................86**

**N. NEGOTIATE THE AWARD PROVISIONS.........................................................................86**

    N.1. SUBSTANTIAL INVOLVEMENT ...........................................................................86

    N.2. SCOPE OF WORK .....................................................................................87

    N.3. BUDGET .....................................................................................................87

    N.3.a. DIRECT COSTS .....................................................................................89

    N.3.b.   INDIRECT COSTS .....................................................................................91

    N.3.c.   NON-FEDERAL SHARE OF COSTS (COST SHARE) ...................................93

    N.3.d.   PROGRAM INCOME...................................................................................93

    N.3.e.   COMMON BUDGET PROBLEM AREAS ...................................................94

    N.4. SUBAWARDS...................................................................................................95

    N.5. REPORTING REQUIREMENTS...........................................................................97

    N.6. PAYMENTS ...................................................................................................99

    N.7. BRANDING AND MARKING ...........................................................................99

**O. DEVELOP A MONITORING PLAN ...........................................................................101**

**P. GRANTS OFFICER DESIGNATES GRANTS OFFICER REPRESENTATIVE (GOR).102**

**CHAPTER 3: FEDERAL AWARD REQUIREMENTS ...................................................107**

**A. GRANTS OFFICER'S FINAL DUE DILIGENCE...........................................................107**

**B. PRE-AWARD COSTS ...........................................................................................107**

**C. REGIONAL BUREAU APPROVAL...........................................................................108**

**D. FEDERAL AWARD IDENTIFICATION NUMBER (FAIN).........................................109**

4

AR 000016

Not for Public Release
Department of State Federal Assistance Directive

**E. NOTICE OF AWARD COMPONENTS** ...................................................................**109**

**F. NOTICE OF AWARD APPROVAL PROCESS** .....................................................**110**

    F.1. FUNDS CERTIFICATION ................................................................................110

    F.2. GRANTS OFFICER SIGNATURE ...................................................................110

    F.3. RECIPIENT ACCEPTANCE SIGNATURE .....................................................111

    F.4. GRANTS OFFICER FILES ..............................................................................111

**G. GRANTS AND COOPERATIVE AGREEMENTS TO ORGANIZATIONS (THAT ARE NOT FOREIGN PUBLIC ENTITIES)**..........................................................................**111**

**H. FIXED AMOUNT AWARDS TO ORGANIZATIONS** ........................................**113**

**I. FEDERAL AWARDS TO INDIVIDUALS** ...........................................................**116**

    I.1. SPECIFIC REQUIREMENTS FOR AWARDS TO INDIVIDUALS ............................119

    I.2. AWARDS FOR INDIVIDUAL TRAVEL..................................................................121

    I.3. CLOSEOUTS OF AWARDS TO INDIVIDUALS.......................................................124

**J. PROPERTY** ..........................................................................................................**124**

    J.1. PROPERTY GRANTS (GOVERNMENT-FURNISHED PROPERTY) .......................125

    J.2. PROPERTY (EQUIPMENT AND SUPPLIES) ACQUIRED BY A RECIPIENT UNDER A GRANT ...............................................................................................................128

    J.3. OWNERSHIP, REPORTING, AND DISPOSITION OF FEDERALLY OWNED PROPERTY    129

    J.4. OWNERSHIP, REPORTING, AND DISPOSITION OF PROPERTY ACQUIRED UNDER A    132

    GRANT.....................................................................................................................132

    J.5. INTANGIBLE PROPERTY ....................................................................................134

**K. ASSISTANCE TO FOREIGN PUBLIC ENTITIES INCLUDING PIOs** ........................**135**

    K.1. GRANTS, COOPERATIVE AGREEMENTS, AND LETTER GRANTS TO FPEs ....136

    K.2. VOLUNTARY CONTRIBUTIONS.........................................................................142

    K.3. ASSESSED CONTRIBUTIONS .............................................................................145

    K.4. LETTERS OF AGREEMENT UNDER C-175 ........................................................146

**CHAPTER 4: POST FEDERAL AWARD REQUIREMENTS** .......................................**148**

**A. USASPENDING.GOV REPORTING REQUIREMENTS**..........................................**148**

**B. KICKOFF MEETINGS** .........................................................................................**149**

**C. PAYMENTS** ..........................................................................................................**150**

    C.1. PAYMENT MANAGEMENT SYSTEM (PMS) .......................................................151

    C.2. SF-270, REQUEST FOR ADVANCE OR REIMBURSEMENT ..................................152

    C.3. IMPROPER PAYMENT..........................................................................................154

**D. MONITORING AND REPORTING** ......................................................................**155**

    D.1. FINANCIAL REPORTING.....................................................................................156

AR 000017

Not for Public Release
Department of State Federal Assistance Directive

D.2. PERFORMANCE REPORT ...................................................................................... 157

D.3. DELINQUENT REPORTS ...................................................................................... 157

D.4. MONITORING TECHNIQUES ............................................................................... 157

D.5. SITE VISITS .......................................................................................................... 158

D.6. ANNUAL REVIEW ................................................................................................ 159

D.7. FOREIGN TAX REPORTING ................................................................................ 160

D.8. AUDIT FINDINGS ................................................................................................ 161

**E. PRIOR APPROVAL FOR CHANGES TO AWARDS** ....................................................... **162**

**F. AMENDMENTS** .......................................................................................................... **164**

F.1. NO-COST AMENDMENTS .................................................................................... 164

F.1.a No-Cost Amendment to Apply the OMB 2024 CFR Revisions ................................... 165

F.2. COST AMENDMENTS .......................................................................................... 165

F.3. AMENDMENT PROCEDURES ............................................................................. 166

**G. OTHER CHANGES** ..................................................................................................... **167**

G.1. CHANGE IN GRANTS OFFICER OR GRANTS OFFICER REPRESENTATIVE .... 167

G.2. NOVATION ........................................................................................................... 168

G.3. REPLACEMENT GRANT ..................................................................................... 168

**H. REMEDIES FOR NON-COMPLIANCE** ........................................................................ **170**

H.1. CORRECTIVE ACTION PLAN ............................................................................ 171

H.2. SUSPENSION AND TERMINATION OF AN AWARD ........................................... 171

H.3. SUSPENSION AND DEBARMENT ...................................................................... 175

**I. APPEALS** ................................................................................................................... **176**

**J. FRAUD AWARENESS** ................................................................................................. **178**

**K. WHISTLEBLOWER PROTECTIONS** ............................................................................ **179**

**CHAPTER 5: CLOSEOUT** ................................................................................................. **180**

**A. APPLICABILITY** ...................................................................................................... **180**

**B. CLOSEOUT TIMELINE** ............................................................................................ **180**

**C. CLOSEOUT COSTS** .................................................................................................. **181**

**D. RECIPIENT RESPONSIBILITIES** .............................................................................. **181**

**E. GRANTS OFFICER RESPONSIBILITIES** .................................................................... **182**

**F. EARLY CLOSEOUT** .................................................................................................. **183**

**G. NON-COMPLIANCE AND DELINQUENT REPORTS** .................................................. **183**

**H. RETURN OF FUNDS AND DEBT COLLECTION** ........................................................ **184**

**I. NICRA (NEGOTIATED INDIRECT COST RATE) CONSIDERATIONS** ...................... **185**

AR 000018

Not for Public Release
Department of State Federal Assistance Directive

**J. RECORDS RETENTION**...............................................................................................**186**

**APPENDIX: ACRONYMS & DEFINITIONS** ...............................................................**188**

**A. ACRONYMS**...........................................................................................................**188**

**B. DEFINITIONS**.........................................................................................................**190**

AR 000019

Not for Public Release
Department of State Federal Assistance Directive

## SUMMARY OF FEDERAL AWARD REQUIREMENTS

| | Award to non-FPE (incl. FAA) | Award to Individual | Property Grant | Award to FPE / PIO | Letter Grant to FPE /PIO | VC | AC | Letter of Agreement C-175 authority |
|---|---|---|---|---|---|---|---|---|
| SF-424s (application) | ✓ | ✓ | ✓ | ! | ! | ✗ | ✗ | A binding international agreement, not a Federal financial assistance instrument. Obligations to FPEs under C-175 authority (except "bulk obligations" under a Letter of Agreement) must be executed using BOC 4124 and reported to USASpending |
| Risk Assessment | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ! | |
| Monitoring Plan | ✓ | ✓ | ! | ✓ | ✓ | ✓ | ! | |
| Use of MyGrants to Process | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| DS-1909 | ✓ | DS-1909-I | ✓ | ✓ | ✓ | ✓ | ! | |
| FAIN | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| UEI* | ✓ | ✗ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| SAM.gov* Registration | ✓ | ✗ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| SAM.gov Check before Issuances | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| Reported to USASpending.gov | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | ✓ | |
| Signatory Authority | Warranted GO | Warranted GO | Warranted GO | Warranted GO | * | * | No signature: obligation varies | |

**\*** **LETTER -** the underlying letter or signed agreement with terms and conditions, generally considered the obligating document, may be signed by Chief of Mission, DCM, Under Secretary, Assistant Secretary, other high-level officials (with FAPD permission) or by a warranted GO. For processing in MyGrants the signatory official may delegate signatory authority on the DS-1909 to post or bureau FTE staff, via proxy approval in the FAPD warrant database.

- **UEI / SAM.gov Registration: see Chapter 2.G.2 for potential exemptions.**

**KEY:**  **REQUIRED**    ✗ **NOT REQUIRED**     **OPTIONAL**

8

AR 000020

Not for Public Release
Department of State Federal Assistance Directive

# CHAPTER 1: GENERAL

## A. EFFECTIVE DATE

This Department of State Federal Assistance Directive (FAD) version 10.1 is effective and applies to all new Department domestic and overseas Federal financial assistance awards (awards) signed on or after January 1, 2026. In addition, FAD v10.1 applies to all Department awards that are amended to increase the total award value on or after January 1, 2026.

On April 20, 2024, the Office of Management and Budget (OMB) published a significant overhaul of federal grant regulations in 2 CFR. These revisions (hereafter OMB 2024 CFR Revisions) went into effect on October 1, 2024, and apply to new awards and cost amendments signed on or after October 1, 2024. For this reason, there will be two sets of regulations that are effective simultaneously. As such, please make sure you are referring to the correct version of the FAD when seeking guidance.

**Awards issued before October 1, 2024, and not cost amended or amended to apply the OMB 2024 CFR Revisions will follow FAD series 8.** FAD series 8 reflects the pre-2024 CFR language and applicable guidance.

A crosswalk of all of the 2 CFR changes can be found here.

## B. INTRODUCTION

The FAD establishes internal guidance, policies, and procedures for all domestic and overseas grant-making bureaus, offices, and posts within the Department of State (hereinafter "Department") administering Federal financial assistance.  The FAD reflects current Department policies and is consistent with the Code of Federal Regulations (CFR), to the extent applicable.

These policies and procedures are not intended to be all-encompassing but rather provide all Federal financial assistance staff in the Department with a single point of reference for the Department's federal financial assistance management policies and procedures.

To avoid ambiguity, the directive uses the word "must" to indicate a requirement, and the word "should" to indicate a recommendation or a best practice.

The Federal Assistance Policy Division, Global Acquisitions (GA/FAM/FAPD, hereafter FAPD, formerly known as A/OPE/AP/FA) reviews this directive annually or as needed to ensure that the

AR 000021

information is current and will reissue with changes reflecting new government and Department-wide requirements. Policy updates that occur throughout the year will be issued through Federal Assistance Management Advisories (FAMA). FAMAs carry the same authority as any guidance in this directive and will be included in each subsequent annual release.

FAPD may make edits to the Federal Assistance Directive (e.g., formatting, adding hyperlinks, or slight changes to clarify language) throughout the year to the version housed in its SharePoint site. Therefore, all Department personnel engaged in the administration of federal awards are encouraged to refer to the directive on the FAPD SharePoint site to ensure the latest version is being used.


**Policy Framework**

The order of precedence for federal assistance-specific requirements at the Department is Title 2 of the Code of Federal Regulations (2 CFR), then the FAH/FAM, then the FAD. The materials must be read and followed in this order. The overall hierarchy of requirements is depicted at the end of this section.

**Title 2 of the Code of Federal Regulations (2 CFR):**
2 CFR is the primary source of regulatory requirements related to federal assistance. 2 CFR § 200 - Uniform Administrative Requirements, Cost Principles, and Audit Requirements for Federal Awards, is the government-wide framework for management of Federal financial assistance.

**2 CFR § 600** is the Department of State-specific regulation that formally adopts 2 CFR § 200 and articulates additional requirements for the Department.

**The Foreign Affairs Manual (FAM) and Foreign Affairs Handbook (FAH):**
The FAM and the FAH contain mandatory requirements and practices for personnel throughout the Department of State.

**The Department of State Federal Assistance Directive (FAD):**
The FAD establishes internal guidance, policies, and procedures for all domestic and overseas award-making bureaus, offices, and posts within the administering Federal financial assistance.

**Federal Assistance Management Alerts (FAMAs), Toolkits, and Other Resources:**
FAMAs reflect policy updates that occur throughout the year in between updates to the FAD. FAMAs carry the same weight as the guidance in the FAD. The toolkits and other resources on the FAPD SharePoint site align with the FAD and FAMAs also constitute authoritative Department-wide guidance on the management of federal assistance.

**Bureau Standard Operating Procedures:**
Bureaus may provide guidance on internal business processes and procedures to establish best practices and standardize the way the organization operates. Bureau Standard Operating Procedures (SOPs) must be consistent with the FAD.

AR 000022

Not for Public Release
Department of State Federal Assistance Directive

**Post/Office/Section Standard Operating Procedures (SOPs):**
Domestic and overseas grant-making posts, offices, and sections are permitted to implement their own office specific standard operating procedures as long as they do not conflict with higher-level policy or procedures.  These SOPs must also be consistent with the FAD.



---

## C. SCOPE, AUTHORITY, AND APPLICABILITY

---

<u>**Scope:**</u>

This directive applies to all domestic and overseas bureaus, offices, and posts and all staff involved in executing, monitoring, or processing Federal awards. The policies and procedures in this directive apply to all Federal financial assistance issued by the Department, regardless of funding source, including but not limited to:

- Grants and cooperative agreements to all types of recipients.
- Fixed Amount Awards to all types of recipients.
- Awards to individuals.
- Property grants.
- Grants or other funding agreements with Foreign Public Entities, including letter grants (that do not include Letters of Agreement under C-175 authority: see Chapter 3.K).

11

**AR 000023**

Not for Public Release
Department of State Federal Assistance Directive

Voluntary contributions and assessed contributions are covered in Chapter 3.K of this directive, as they have unique requirements.

This directive does not contain policies or procedures for interagency agreements or transfers between U.S. government agencies.  For inquiries related to IAAs, contact acquistionpolicy@state.gov.

Unless a deviation has been issued, USAID awards managed by the Department (USAID Greenlist awards) must be administered pursuant to the applicable USAID regulations, policies, and procedures, as reflected in each award agreement, including 2 CFR §200, 2 CFR §700, and the USAID Automated Directive System (ADS), as applicable.

**Authority:**
Department Delegation of Authority No. 357-1 and 1 Foreign Affairs Manual (FAM) 212.2 assign the Bureau of Global Acquisitions authority to prescribe policies, regulations, and procedures for the award and administration of all Federal awards issued by the Department.

2 CFR § 200 (2024) establishes uniform administrative requirements, cost principles, and audit requirements for Federal financial assistance to non-Federal entities. In 2 CFR § 600 (2014), the Department adopted 2 CFR § 200, with certain exceptions. The authorities identified for 2 CFR § 600 are:

5 USC §301 (2017); 22 U.S.C §2651a (2017); 22 USC §2151 (2017); 22 USC §2451 (2017); 22 USC §1461 (2017); 2 CFR § 200 (2024).

**Applicability:**
In 2 CFR § 600, and per policy, the Department established the following applicability structure for 2 CFR § 200:

| Organization Type | Applicable Administrative Requirements |
|---|---|
| Individuals | 2 CFR § 200 does not apply |
| U.S. non-Federal and non-profit entities and educational institutions | 2 CFR § 200, Subparts A through F apply |
| Foreign non-profit entities and educational institutions | 2 CFR § 200, Subparts A through E apply |
| U.S. and foreign for-profit entities | 2 CFR § 200, Subparts A through D apply, except where the application of these subparts would be inconsistent with the international obligations of the United States or the statute or regulations of a foreign government; the Federal Acquisition Regulation (FAR) at 48 CFR Part 30 (2020)—Cost Accounting Standards and 48 CFR Part 31 (2019)—Contract Cost Principles and Procedures take precedence over the cost principles in 2 CFR § 200, Subpart E for Federal contract awards |

12

AR 000024

Not for Public Release
Department of State Federal Assistance Directive

| Foreign Public Entities (FPE), as defined by 2 CFR § 200.1, which include Public International Organizations (PIO) | 2 CFR § 200 does not apply |
|---|---|

For a summary of which Notice of Award components apply to the above, see Chapter 3.E.

**Note:** A limited list of specific non-profit organizations that function more like for-profit entities must follow the Federal Acquisition Regulations rather than Subpart E. See Appendix VIII to 2 CFR § 200—Nonprofit Organizations Exempted From Subpart E.

**Note:** 2 CFR § 200.201 specifies which parts of 2 CFR § 200 apply to Fixed Amount Awards (FAA). The Federal award amount for FAAs is negotiated using 2 CFR § 200, Subpart E—Costs Principles as a guide.

## D. ROLES AND RESPONSIBILITIES

**Federal Assistance Team:**

The Federal Assistance team is comprised of all participants in the Federal award process. Teamwork, unity of purpose, and open communication among the members of the Federal Assistance team in sharing the vision and achieving the goal of the Federal program are encouraged.

**Role of the Federal Assistance Team:**

Government members of the Federal Assistance team must be empowered to make Federal financial assistance decisions within their areas of responsibility, including selection, negotiation, and administration of Federal awards consistent with the Department's regulations and policies. In particular, the Grants Officer (GO) has the authority to the maximum extent practicable and consistent with law, to determine the application of rules, regulations, and policies, on a specific award. The authority to make decisions, and the accountability for the decisions made, will be within the Federal Assistance team member's area of responsibility.

The Department is committed to providing training, professional development, and other resources necessary for maintaining and improving the knowledge, skills, and abilities for all participants on the Federal Assistance team.

The regulations found in 2 CFR § 200, 2 CFR § 600, and this document outline the Federal financial assistance policies and procedures guiding members of the Federal Assistance team. If a policy, procedure, or practice is in the best interest of the government and is not specifically addressed in the uniform guidance, nor prohibited by law (statute or case law), Executive Order or other regulation, government members of the Federal Assistance team should not assume it is

13

AR 000025

Not for Public Release
Department of State Federal Assistance Directive

prohibited. Rather, absence of direction should be interpreted as permitting the Federal Assistance team to innovate and use sound business judgment that is otherwise consistent within the limits of their authority, the express affirmative authority provided in the Department's statutory authority and any other legislation, regulations, and requirements that apply to the Department's Federal program. GOs should take the lead in encouraging business process innovations and ensuring that business decisions are sound and compliant with all statutory authorities, Federal regulations, Department policies, and Federal award terms and conditions.

Executive Branch Standards of Conduct require that federal government employees perform their duties in a manner that avoids any real or perceived conflict of interest, as described by the Office of Ethics and Financial Disclosure (L/EFD). Personnel involved in the process of selecting and managing Department Federal programs are expected to avoid conflicts of interest that would compromise their ability to objectively handle their responsibilities.

## D.1. OFFICES

Below is a list of the key offices that play a role in the management of the Federal award lifecycle. This list is not exhaustive.

**The Bureau of Global Acquisition, Federal Assistance Management, Federal Assistance Policy Division (FAPD)** develops Department Federal financial assistance policy and provides training and career development for personnel involved administration and execution of Federal awards. This includes Department oversight of four key federal assistance areas: policy, compliance, warrants and certifications, and training. 1 FAM 212.2-1(C) provides further detail on FAPD's role and responsibilities.

The **Office of Federal Assistance Financial Management (CGFS/FPRA/FAFM)** develops policy, guidance, and training related to the financial management of Federal financial assistance. CGFS/FPRA/FAFM also assists with the collection of data for various audit programs, serves as the Department's liaison with the U.S. Department of Health and Human Services' (HHS) Payment Management System (PMS), and serves as the Department's Key Management Single Audit Liaison. CGFS/FPRA/FAFM manages an extensive Knowledge Base (KB) resource site which includes useful KB articles that provide detailed federal assistance financial management guidance. 1 FAM 614.12-3 provides further details on CGFS/FPRA/FAFM's roles and responsibilities.

The **Bureau of Global Acquisition, Acquisitions Policy Directorate, Federal Assistance, Federal Assistance Operations (GA/FAM/FAO, formerly known as A/OPE/AQM/IP)** provides fee-based Federal financial assistance services, including planning, negotiations, program budget analysis, and execution of Federal awards. GA/FAM/FAO assumes responsibility for the Federal awards of bureaus/offices/posts, through centralized grants services. These entities may use GA/FAM/FAO's services if they do not have a warranted GO; need to execute a Federal assistance award beyond the warrant level of current GO; or require specific assistance in the award and administration of Federal awards.

14

Not for Public Release
Department of State Federal Assistance Directive

The **Office of Foreign Assistance Oversight (F/FAO)** and the **Bureau of Budget and Planning (BP)** direct the planning, budgeting, execution, and evaluation processes of the Department and U.S. federal assistance resources. F/FAO specifically directs these activities for foreign assistance resources. F/FAO and BP jointly manage the Managing *for* Results SharePoint site with resources for budgeting, planning, program design, monitoring, evaluation and learning. F/FAO, in conjunction with offices in the Department, provides objective advice to the Secretary and senior Department leadership on resource allocation and policy decisions.

The **Office of the Legal Adviser (L)** advises and represents the Secretary, and through the Secretary, the President and the bureaus and missions of the Department, on all legal and policy issues arising in connection with U.S. foreign policy and the work of the Department. See 1 FAM 241 for further details. The appropriate regional, bureau, or functional sub-office of L should be consulted regarding significant legal issues involving the award or administration of Federal financial assistance.

The **Office of Administration and Logistics Applications** oversees the SAMS Program, which includes the MyGrants platform. The State Assistance Management System (SAMS) is the Department's program for implementing federal assistance management systems that support domestic and overseas federal assistance communities. The SAMS/MyGrants program ensures effective system use by providing training, support, reporting, and system assurance services.

## D.2. GRANTS OFFICERS AND OTHER SIGNATURE AUTHORITIES

The authority to sign Federal awards is delegated by M/GA to Grants Officers. A U.S. citizen, direct hire Department employee (including Eligible Family Members and locally employed U.S. citizen staff members) who meets the training requirements is eligible to apply for a Certificate of Appointment (also called a grant warrant) as a GO. Reemployed Annuitant Program personnel (REA) may receive limited authority warrants on a case-by-case basis. Neither Personal Services Contractors (PSC) nor independent ("third-party") contractors are eligible to receive GO warrants.

### D.2.a. GRANTS OFFICER WARRANTS

The only official within the Department with the authority to commit the U.S. government to a Federal award or to amend a Federal award is a warranted GO appointed by FAPD, except as noted below and in Chapter 1.D.2.f. The GO must be in possession of a valid warrant issued by FAPD prior to signing a Federal award or an amendment. Any award or amendment signed by a GO before the issue date or after the inactivation date of their warrant will result in an unauthorized commitment (see Chapter 2.L), which carries administrative and/or personnel consequences. On occasion, the GO may need to provide a copy of his/her grant warrant to the Financial Management Officer (FMO), Budget Officer, or Post Support Unit (PSU).

All GOs must possess the minimum qualifications necessary to obtain a warrant and subsequently update their training every three years to ensure that Federal awards issued by the Department comply with applicable laws, regulations, and policies. Only individuals who are

15

qualified and have a valid organizational need for such authority are appointed. GOs must possess high ethical standards as established by the Ethics in Government Act of 1978 and comply with 5 CFR Part 2635 (2020)—Standards of Ethical Conduct for Employees of the Executive Branch.

**Financial Disclosure:**

GOs may be required to file an OGE Form 450: Confidential Financial Disclosure  Report. FAPD does not determine disclosure requirements. GOs should contact the Office of Ethics and Financial Disclosure (L/EFD) or their Management Officer to determine whether they are required to file. Please note that each filer must take the action necessary to ensure submission of timely, complete, and accurate financial disclosure reports. Failure of management officials to perform the duties specified in 11 FAM 617.6 does not relieve a filer of the responsibility to file. Additional information on the responsibility of filers can be found here: https://fam.state.gov/FAM/11FAM/11FAM0610.html#M617_5.

**Warrant Categories and Levels:**

There are two categories of grant warrants at the Department of State. Practitioner warrants include level 0 proxy warrants, as well as level 1 (limited to $100,000 per transaction), level 2 (limited to $250,000 per transaction), and level 3 (limited to $500,000 per transaction) warrants. Practitioner warrants are not tied to a specific assignment. Once an employee qualifies, applies, and is granted a practitioner warrant, they must meet the refresher training requirements and recertify every three years to keep their warrant active. As long as the warrant is active, they may keep it when moving between assignments.

Specialist warrants include level 4 (limited to $1 million per transaction), level 5 (limited to $5 million per transaction), level 6 (limited to $10 million per transaction), and level 7 (unlimited) warrants. Specialist warrants are restricted to domestic assignments only. Once an employee qualifies, applies, and is granted a specialist warrant, they must meet refresher training requirements every three years to keep their warrant active. As long as the warrant is active, they may keep it when moving between domestic assignments. If the employee moves to an overseas assignment their specialist warrant must be converted to a practitioner warrant not to exceed level 3 (limited to $500,000 per transition).

Prior approval from FAPD must be obtained to increase the dollar amount indicated on the Certificate of Appointment. FAPD reserves the right to limit the dollar amount of a GO's warrant with cause.

**Definition of Per-Transaction Limit:**

The dollar amount on a warrant refers to the amount of new Federal funding the GO can obligate for each assistance transaction. For example, a GO with a $100,000 warrant can sign an award of $100,000. If a $25,000 cost amendment is later required, the same GO can sign the cost amendment, even though the total amount of the award will now be over $100,000. The warrant level only applies to the Federal share of costs and does not apply to cost share. For example, a

16

AR 000028

Not for Public Release
Department of State Federal Assistance Directive

Federal award totaling $125,000 but which only includes $100,000 in total Federal funds may be signed by a GO with a $100,000 warrant. A GO seeking to issue an award above their warrant level must not split the award into two or more separate awards to the same organization, simply to avoid exceeding their warrant level. These actions are considered split transactions and are improper. Properly justified supplemental funding for ongoing assistance programs, and cost amendments do not constitute split grants.

If appropriate, a GO can oversee an award with a dollar amount greater than his/her warrant, if the grant is signed by an official with the appropriate warrant level. The GO may also negotiate and sign no-cost amendments on awards that are above his/her warrant level, if appropriate. The GO warrant level does not apply to deobligations. For example, a GO with a $100,000 warrant can deobligate a balance of $150,000.  Furthermore, warrant levels do not affect a GO's ability to approve payments. For example, a GO with a $100,000 warrant can approve a payment of $105,000. An employee with an active warrant can also serve as a backup GO in cases where the primary GO is absent temporarily, in which case the backup GO can fulfill all the duties of the primary GO. However, backup GOs must still have the requisite permissions in MyGrants to access necessary files and be included in requisite approval groups if signing amendments or new awards.

**System Roles and Permissions:**

As a condition of maintaining an active warrant, warrant holders are required to update their profile in ServiceNow on a biannual basis (by April and October), to reflect any changes in their current assignment or to confirm that their current assignment has not changed. The following specific fields must be updated or confirmed not to have changed since the last update: bureau/org, title, department/office, location, and employee type.

When receiving a warrant for the first time, or beginning a new assignment as a GO, warrant holders should also contact the ILMS Support Desk to determine what type of systems training or user access registration form will be required. See https://almwebsite-usdos.msappproxy.net/sams/ for more information. Generally, GOs will only be added to approval groups necessary for their post or office, although there are some GOs that cover more than one post. Warranted GOs in GA/FAM/FAO and some regional and functional bureaus may have such broader signing authority. When a GO in one of these offices sign on behalf of post, the GO signing the award assumes the assistance management responsibilities under the award but should designate a GOR at post. In general, assistance awards signed in Washington D.C. on behalf of an overseas post, as described in Chapter 3.D, should have a Federal Assistance Identification Number (FAIN) that reflects the office where the signing GO is employed. Awards signed by functional or regional bureaus may in some specific instances use a FAIN originating at post (e.g., the Bureau of International Narcotics and Law Enforcement).

**Qualifying For a Warrant:**

Only U.S. citizen, direct-hire employees of the State Department are eligible for grant warrants. In addition, depending on the level of warrant sought, completion of specific training courses,

AR 000029

possession of a certain number of years of relevant experience, and employment at a sufficiently high civil service or foreign service grade level may be necessary to qualify.

For an initial GO warrant, the training must have been completed within the last two years prior to issuance of the warrant.

In addition, the GO must continue to take FAPD-approved training courses during the period that the warrant is active in order to qualify for a warrant renewal after the three-year validity period ends. See the chart below for hours of continuing education training needed.  A full list of accepted courses is located on the FAPD SharePoint site under "Recommended Training." Department-specific training courses offered by FSI are to be completed prior to requesting training from outside vendors.

Qualifying experience requirements can be met with either Department-specific experience as a prior GO, Grants Officer Representative (GOR), Contracting Officer Representative (COR), Grants Technical Monitor (GTM), or with other applicable experience. Non-Department-specific professional experience with financial management, project management, monitoring and evaluation or in other applicable fields can also be used to meet this requirement. Note that for level 1 and 2 practitioner warrants, the experience requirement can be substituted with a four-year college degree.

Below are several scenarios to assist prospective GOs with the warrant application process, depending on whether one is applying for a warrant for the first time, recertifying an existing active warrant, or applying for an increase in warrant level:

**First-time applicant:** Complete required qualifying training hours and meet all other experience, grade level, and location requirements. Submit an initial application in the warrant system, obtain supervisor and FAPD approval.

**Recertification:** Complete required refresher training hours. Submit a recertification application in the warrant system, obtain supervisor and FAPD approval.

**Warrant level increase:** Complete additional qualifying training above that needed for the current warrant level. For example, a level 2 warrant holder seeking a level 3 warrant must complete 24 more hours of training (the difference between 80 and 56) and must have taken PY260. In addition, they must meet experience, grade level, and location requirements. Note that training taken for this reason does not count toward refresher training requirements nor does it extend the three-year validity of the warrant. Further training must be taken within the same three-year period to meet refresher training requirements for the new warrant level.

AR 000030

Not for Public Release
Department of State Federal Assistance Directive



*Figure 1: Warrant application process flow*

19

AR 000031

Not for Public Release
Department of State Federal Assistance Directive

**Practitioner Warrants**

| LEVEL | PER-TRANSACTION LIMIT | TRAINING REQUIREMENTS | EXPERIENCE REQUIREMENT |
|---|---|---|---|
| 1 | $100k | **Qualifying training requirement:** 40 course hours in grants management training. For initial warrant applications, the required class is PY260 or the online equivalent (PY472, PY474, PY476, and PY478)<br><br>**Refresher training requirement:** 16 course hours in grants management training | Six months of specialized experience that equips the applicant with the knowledge, skills, and abilities to perform successfully the duties of a GO; or a 4-year college degree. |
| 2 | $250k | **Qualifying training requirement:** 56 course hours in grants management training. For initial warrant applications, the required class is PY260 or the online equivalent (PY472, PY474, PY476, and PY478)<br><br>**Refresher training requirement:** 24 course hours in grants management training | At least one year of specialized experience that equips the applicant with the knowledge, skills, and abilities to perform successfully the duties of a GO; or a 4-year college degree. |

20

Not for Public Release
Department of State Federal Assistance Directive

| | | | |
|---|---|---|---|
| 3 | $500k | **Qualifying training requirement:** 80 course hours in grants management training. Note the 80 hours must include the 40-hour PY260 in-person training, not the online equivalent (PY472, PY474, PY476, and PY478)<br><br>**Refresher training requirement:** 24 course hours in grants management training | At least three years of specialized experience that equips the applicant with the knowledge, skills, and abilities to perform successfully the duties of a GO. |

**Specialist Warrants (Domestic Only, qualifying training for all specialist levels must include PY260)**

| LEVEL | PER-TRANSACTION LIMIT | TRAINING REQUIREMENTS | EXPERIENCE REQUIREMENTS | GRADE LEVEL REQUIREMENT |
|---|---|---|---|---|
| 4 | $1mil | **Qualifying Training Requirement:** Completion of at least 96 course hours in grants management training<br><br>**Refresher Training** Requirement: 32 course hours in grants management training | At least four years of specialized experience commensurate with the level of appointment that equips the applicant with the knowledge, skills, and abilities to perform successfully the duties of a GO. | N/A |
| 5 | $5mil | **Qualifying Training Requirement:** Completion of at least 120 course hours in grants management training | At least five years of specialized experience commensurate with the level of appointment that equips the applicant with the knowledge, skills, and abilities to perform successfully the duties of a GO. | N/A |

21

AR 000033

Not for Public Release
Department of State Federal Assistance Directive

| | | | | |
|---|---|---|---|---|
| | | **Refresher Training** Requirement: 40 course hours in grants management training | | |
| 6 | $10mil | **Qualifying Training Requirement:** Completion of at least 128 course hours in grants management training<br><br>**Refresher Training** Requirement: 40 course hours in grants management training | At least five years of specialized experience commensurate with the level of appointment that equips the applicant with the knowledge, skills, and abilities to perform successfully the duties of a GO. | ≥ GS-13/FS-03 |
| 7 | UNLIMITED | **Qualifying Training Requirement:** Completion of at least 136 course hours in grants management training<br><br>**Refresher Training** Requirement: 56 course hours in grants management training | At least five years of specialized experience commensurate with the level of appointment that equips the applicant with the knowledge, skills, and abilities to perform successfully the duties of a GO. | ≥ GS-13/FS-03 |

**Exceptions:**

Individuals executing assessed and voluntary contributions, as defined in Chapter 3.K, use delegated signatory authority and are exempt from the requirement to obtain a grant warrant.

22

Not for Public Release
Department of State Federal Assistance Directive

Letter grants to FPEs may also be signed by high-level officials without a grant warrant; see Chapter 1.D.2.f.

**Lapses and Revocation:**

If the three-year validity period of a GO's warrant lapses, the warrant holder has a 30-calendar day grace period to complete any refresher training and submit a recertification request. If this is not done within the grace period, the warrant is fully inactivated and receiving a new warrant will require re-taking the full amount of qualifying training, including any specific required courses such as PY260 for levels 3 and above.

In addition, FAPD reserves the right to deny warrant requests for cause, to approve warrant requests conditional on remedial action such as completion of additional training by the applicant, or to approve warrant requests at a lower level than requested. FAPD also reserves the right to inactivate an active warrant for cause, including material failure to follow Department policy or Federal regulations, gross negligence, or serious ethical lapses.

**Extenuating Circumstances:**

If for any reason a warrant holder needs additional time to complete training, or their warrant has inactivated due to circumstances beyond their control, please contact GrantWarrants@state.gov.

## D.2.b. SINGLE TRANSACTION WARRANT INCREASES

If a bureau/office/post is considering executing an award that exceeds the warrant limit of the warranted GO, there are three options available:

(1)     The bureau/office/post may use the services of GA/FAM/FAO (see Chapter 1.D.2.c).
(2)     The GO may review training requirements and limits in Chapter 1.D.2.a to see whether they qualify for a permanent warrant increase.
(3)     The GO may request a single transaction warrant increase, specific to that award, from FAPD.
(4)     In cases where a grant must be issued urgently, a GO in another section or office may issue the award provided they have requisite MyGrants access. However, see also Chapter 1.D.2.d "Signature and Management of Non-Public Diplomacy Awards at Post."

**Note:** *The approval of single transaction warrant increases should not be assumed and are considered on a case-by-case basis.*

The GO should consult with the appropriate FAPD desk officer regarding a Single Transaction Warrant increase early in the process (prior to issuance of the Notice of Funding Opportunity, or prior to the approval of a sole or limited source justification) in order to alert FAPD that a warrant increase might be requested and discuss other possible options.

AR 000035

Not for Public Release
Department of State Federal Assistance Directive

Once the GO is ready to apply for the warrant increase, the request must be submitted using the format found at: https://usdos.sharepoint.com/sites/A- OPE/FA/SitePages/Waivers.aspx.  The requesting GO sends the completed form, along with pre-award documents including but not limited to the Notice of Funding Opportunity (NOFO) or sole source justification form and solicitation letter (see Chapter 2.F.4), risk assessment and monitoring plan, draft award provisions, and the applicant's proposal and budget, to the appropriate FAPD desk officer.

The FAPD desk officer will review the request, taking into consideration the GO's current warrant level, experience, amount requested, and length and complexity of the program, as well as other factors. If denied, a rationale for the decision will be provided to the GO in writing.

All requests for single transaction exemptions to the current warrant level are tracked by FAPD to encourage bureaus/offices/posts to regularly assess pending awards and future funding forecasts to determine if a permanent warrant increase is necessary.

### D.2.c.  GA/FAM/FAO

The Bureau of Global Acquisitions, Federal Assistance Management, Federal Assistance Operations (GA/FAM/FAO) is available to execute Federal awards that exceed the warrant level of the bureau/office/post-based GO. For assistance, contact the Grants Branch Chief at a-ga-fao@state.gov for details about the execution of Federal awards.  For more information about GA/FAM/FAO requirements, see the GA/FAM/FAO SharePoint site.

GA/FAM/FAO charges a fee of 1.35% of the Federal share of the total award amount to execute and administer awards for other bureau, office, and post programs.  Posts should also be aware that using the services of a domestic GO could trigger a Congressional Notification requirement (see Chapter 2.D).

GA/FAM/FAO does not perform Program Officer or GOR functions.

### D.2.d. SIGNATURE AND MANAGEMENT OF NON-PUBLIC DIPLOMACY AWARDS AT POST

The Under Secretary for Public Diplomacy and Public Affairs issued guidance in 2015 (15 STATE 22048), in 2017 (17 STATE 2408) and in 2024 (24 STATE 22§ 200) that instructed that GOs in Public Affairs Sections (PAS) should not serve as GOs on awards that do not have an intrinsic Public Diplomacy (PD) objective in support of mission strategic objectives.

Posts may utilize several methods to manage and oversee non-PD Federal financial assistance depending on the workload and specific needs of post.

- Personnel from sections outside of PAS may apply for a GO warrant from FAPD. Identified personnel must have received the mandatory training for GOs per requirements outlined in this document.

24

AR 000036

Not for Public Release
Department of State Federal Assistance Directive

- Posts may contact GA/FAM/FAO's centralized Federal financial assistance services (see Chapter 1.D.2.c) to discuss whether the award can be issued by that office.
- A warranted GO in a regional or functional bureau based in Washington D.C. may sign the award and assume GO oversight responsibilities.

## D.2.e. SIGNATURE AND MANAGEMENT OF GRANTS FOR OTHER AGENCIES

In general, GOs should only sign and manage awards for Department of State programs.

A GO at post who is considering signing an award on behalf of another U.S. government agency must seek approval from FAPD and should bear in mind the long-term monitoring and oversight responsibilities involved in managing awards.

If a Department GO does proceed with signing such an award, then it is recommended that the GO obtain written documentation from an appropriate and knowledgeable individual in the other agency that the legal authority to issue Federal financial assistance exists, as well as copies of that agency's award forms and award terms and conditions.

If another agency wishes to provide reimbursement to the Department or to supplement programs or otherwise transfer funds to the Department or Department programs, GOs or posts must contact the appropriate regional bureau budget office, which will work with the Department's Bureau of Budget and Planning (BP) and other offices, such as the Office of U.S. Foreign Assistance (F) and the Office of Policy, Planning and Resources (R/PPR), as necessary to accept the funds, consistent with applicable laws and procedures.

Federal awards administered on behalf of, or by, other agencies should not be processed in MyGrants.

**USAID Greenlist Awards**

A Memorandum of Agreement (MOA) between USAID and State, dated May 1, 2025, the Treasury Form 7600A between USAID and State (GT&C Number A2505-072-019-010000), dated May 29, 2025, and related 7600Bs establishes a servicing agreement between the Department and USAID and sets forth the terms and conditions under which State will perform various functions on the behalf of USAID. Among these functions are "acquisition and assistance activities; administration of approved foreign assistance programming, agreements, and related functions; administration of active foreign assistance awards."

Unless a deviation has been issued, USAID awards that will be managed by the Department must be administered pursuant to the applicable USAID regulations, policies, and procedures, as reflected in each award agreement, including 2 CFR §200, 2 CFR §700, and the USAID Automated Directive System (ADS), as applicable.

25

**AR 000037**

Not for Public Release
Department of State Federal Assistance Directive

Outside of the MOA between USAID and the Department, FAPD **strongly** discourages Department GOs from signing grants on behalf of other U.S. government agencies.

**Centers for Disease Control and Prevention:**
The Centers for Disease Control and Prevention (CDC) does not permit grants to be written or administered outside of the CDC Office of Financial Resources. Therefore, posts may not either issue or pay grants locally using CDC funds or foreign assistance funding allocated to them on behalf of CDC.

## D.2.f.  OTHER SIGNATURE AUTHORITIES

Chiefs of Mission, Deputy Chiefs of Mission, Under Secretaries, Assistant Secretaries, and, with prior approval from GA/FAM/FAPD, other high-level officials, are delegated the authority to sign the following types of awards in the place of a warranted grants officer (these individuals do not require a grant warrant or grant training):

- Voluntary Contributions
- Assessed Contributions
- Letter grants to Foreign Public Entities, or other similar awards to Foreign Public Entities

All such awards must be entered into MyGrants. If the Assistant Secretary or other high-level official intends to delegate the processing and signing of the DS-1909 to another bureau staff member, then the staff member must obtain a proxy warrant by applying through the warrant database. FAPD must review and approve all proxy warrant requests, and the approved proxy warrant must be kept in the official Federal award file. The same proxy warrant may be used for multiple awards, as appropriate; the proxy warrant will indicate the length of time for which it is valid.

The official who signs the letter grant and the designated proxy are responsible for taking adequate steps to ensure proper use of the funds by the Foreign Public Entity, and compliance with the award terms and conditions. For more information on assistance awards to Foreign Public Entities, see Chapter 3.K.

**For Bureaus/Offices/Posts that Do Not Have a Warranted Grants Officer:**

- GA/FAM/FAO may execute the award (see Chapter 1.D.2.c).
- The bureau/office/post may request a grant warrant through FAPD. However, the bureau/office/post must consult with FAPD prior to standing up a grant office, and before the proposed individual completes the training requirements for a warrant. The bureau/office/post is responsible for establishing, in advance of requesting a grant warrant, written Standard Operating Procedures for managing its assistance award programs.

AR 000038

Not for Public Release
Department of State Federal Assistance Directive

## D.3.   GRANTS OFFICER REPRESENTATIVES

The GOR is the person certified by FAPD and designated, in writing, by the GO to oversee certain aspects of a specific assistance agreement. The GOR has managerial responsibilities for the programmatic aspects of the award.

For details about eligibility, training requirements, and areas of responsibility see Chapter 2.P.

## D.4.   BUDGET AND FINANCIAL MANAGEMENT OFFICERS

In accordance with Department financial policy, the FMO and Certifying Officers are responsible for custody of government funds.

This includes managing Federal funds by:

- Controlling financial assistance allotments, obligations, and expenditures;
- Certifying funds are available for payment of a Federal award;
- Providing technical assistance and guidance in the interpretation and implementation of Department financial management regulations and guidelines for assistance awards;
- Communicating and coordinating with the GO and GOR to ensure that reporting requirements have been fulfilled prior to certifying and processing interim or final payments, including for awards paid through PMS;
- Assisting in the collection of debts or funds owed by award recipients; and
- Ensuring that adequate documentation supporting the obligation, certification, and disbursement of grants' funds are maintained for six years or according to the Bureau disposition schedule. Such documentation may be part of the records maintained by GOs if there are procedures for maintaining, storing, and retrieving grant records within the required retention period.

## D.5. CONTRACTORS SUPPORTING FEDERAL FINANCIAL ASSISTANCE

Third-party contractors cannot serve as GOs or GORs. The Department occasionally contracts for support of assistance award administration and other tasks closely related to inherently governmental functions. These contracts require meaningful oversight to ensure that contractors do not perform inherently governmental functions (see FAR 7.503 for the complete list of prohibited functions).
**Contractors may not:**

- Make final determination of federal program priorities.
- Direct, select, or control federal government employees.
- Approve position descriptions and performance standards for federal government employees.
- Make final determination of agency policy, such as determining the content and application of regulations.

27

**AR 000039**

Not for Public Release
Department of State Federal Assistance Directive

- Make final selection of a recipient. The bureau/office/post may consider allowing the contractor to participate (and/or vote) in a merit review panel if the panel's recommendation for funding is further subject to approval by a federal government employee. Contractors should be in the minority on a panel; for example, no more than two contractors on a panel of five. It is especially important that any contractor participating as a technical advisor on a panel avoid any real or perceived conflict of interest.
- Approve or obligate any agreements between the government and recipient, to include documents requiring prior approval from a GO.
- Certify or obligate federal funds or make commitment on behalf of U.S. government.
- Execute Federal awards.
- Order changes in performance, act based on recipient performance or determine whether grant objectives have been successfully completed while administering grants.
- Terminate Federal awards.
- Make final determination whether award costs are reasonable, allowable or allocable.
- Approve and certify payment requests.

**Note:** Payment requests submitted through PMS generally use a two-step approval process. The initial function ("approve") in PMS can be completed by a contractor, as long as the final certification ("confirm") is performed by a federal government employee, either at the Department or at HHS.

## D.6. GRANTS MANAGEMENT REVIEWS

FAPD conducts Grants Management Reviews (GMRs) of overseas posts and domestic grants offices to strengthen the Department's oversight of its Federal programs. Suggestions and observations from the GMR reports inform the Department's risk assessment guidance and training. Each review evaluates compliance with risk assessment requirements and focuses on documentation in the official Federal award file, suggested areas for improvement, as well as noting best practices.

The purpose of FAPD's reviews is to mitigate risk by strengthening management and oversight of assistance awards and to ensure that decision-makers link activities to Department interests. The reviews accomplish this by:

- Standardizing Federal financial assistance procedures.
- Developing and sharing best practices.
- Ensuring proper procedural requirements are met; and
- Training Department personnel, including training on risk assessment processes.

FAPD consults with bureaus to determine which offices and posts would most benefit from reviews during the upcoming fiscal year. The criteria for selecting a post or bureau for review is based on various factors that include OIG and GAO reports highlighting potential weaknesses,

28

**AR 000040**

Not for Public Release
Department of State Federal Assistance Directive

dollar amount of Federal awards processed, volume of Federal awards processed, and the public visibility of a post's or office's Federal award activities. Specific requests for reviews from bureaus/offices/posts are also taken into consideration. FAPD approaches reviews as a partnership process and welcomes participation of team members from the office that is the subject of review.

## E. STATE ASSISTANCE MANAGEMENT SYSTEM (MYGRANTS)

The State Assistance Management System (SAMS) Program oversees the MyGrants platform, which is part of the Integrated Logistics Management System (ILMS) suite of tools. MyGrants serves as the Department's comprehensive Federal financial assistance management system, designed to streamline Federal assistance processes while enhancing transparency, accountability, and reporting for awarding bureaus and posts. MyGrants has replaced SAMS Domestic and SAMS Overseas.

Updates and information regarding MyGrants or the SAMS program can be found on the SAMS Program website: https://almwebsite-usdos.msappproxy.net/sams/https://almwebsite-usdos.msappproxy.net/sams/. Bureaus and offices which have completed MyGrants deployment should consider it equivalent to the legacy SAMS systems for policy purposes, as described in the following two sections. MyGrants is the system of record and is required to be used when executing and managing all grants, cooperative agreements, assessed contributions, voluntary contributions, letter grants, Fulbright commissions and letters of agreement under C-175 authority.

### E.1. MYGRANTS

All awards must be issued and managed using MyGrants. This includes assessed contributions, voluntary contributions, letter grants, Fulbright commissions and letters of agreement under C-175 authority.

The system serves as the official Federal award file.

### E.2. HISTORICAL PAPER AWARDS

Awards that were issued prior to the deployment of SAMS Overseas (legacy system that was in place before MyGrants) are not required to be manually entered into the system. For those awards, the paper file will remain the official Federal award file of record, and Federal award documents may be maintained in paper form until closeout. However, if a post amends an award that was issued before the deployment of SAMS Overseas, that amendment must be executed in the system. This applies to both cost amendments and no-cost amendments/extensions. To

29

Not for Public Release
Department of State Federal Assistance Directive

execute an amendment on a previously issued award, that award would need to be entered in the system as a Previously Ordered Award (POA), and then an amendment can be initiated.

Contact the ILMS Support Desk for assistance with executing an amendment on an award issued "on paper" (i.e., prior to the deployment of SAMS Overseas).

---

## F. CONFLICT OF INTEREST

---

The Federal Assistance team must avoid conflicts of interest, the appearance of a conflict of interest, and maintain impartiality in all areas of award management. Department employees are governed by the conflict of interest and appearance of impartiality restrictions codified in 18 USC 208 (2017); 5 CFR 2635 (2020), and 5 CFR 2640 (2016). Examples of conflicts of interest in Federal financial assistance include, for example, when the employee, any member of his/her immediate family, or person with whom the employee has a business relationship, has a financial or other interest in or a tangible personal benefit from an entity considered for a Federal award. A broader range of financial and personal relationships can give rise to partiality concerns. Depending on the circumstances, members of the Federal Assistance team may need to recuse themselves from participation in the selection of recipients or the management of awards. The Office of the Legal Adviser's Ethics office (L/EFD) and FAPD should be consulted on any questions regarding conflict of interest and impartiality. See also Chapter 2.H.3 regarding avoiding conflict of interest in the selection of recipients.

The recipient must disclose in writing to the Department any potential conflict of interest. *See* 2 CFR 200.112.  Where there is an organizational conflict, the prospective recipient is not eligible for the award.

If a potential or actual conflict of interest is identified after award and the effects cannot be avoided or mitigated, the Department may terminate the award unless continued performance is determined to be in the best interest of the federal government.

---

## G. GRANTS MANAGEMENT FORMS

---

In accordance with 2 CFR § 200.207(a), § 200.328, and § 200.329 the Department may only require the recipient to use Office of Management and Budget (OMB)-approved government-wide standard information collection forms. No other forms, templates, or surveys may be required of the recipient, for any Federal financial assistance, which includes domestic and overseas awards.

AR 000042

Not for Public Release
Department of State Federal Assistance Directive

| TOPIC | FORM | APPLICABILITY |
|---|---|---|
| **APPLICATION FORMS** | | |
| Application for Federal Assistance | **SF-424** | Mandatory for all foreign and domestic non-Federal entities (including for property grants) – except:<br>• Foreign Public Entities (use is encouraged but optional)<br>• Individuals (use SF-424 Individual)<br>• Optional: resubmission for amendments. |
| Application for Federal Assistance—Individual | **SF-424 (Individual)** | Mandatory for individual applicants. |
| Application for Federal Assistance—Research & Related | **SF-424 (R & R)** | Mandatory for all foreign and domestic non-Federal entities applying for Research & Research-Related Programs. |
| Budget Information for Non-Construction Programs | **SF-424A** | Mandatory for all foreign and domestic applicants, except:<br>• Optional for property grants.<br>• Optional for initial response to Statements of Interest.<br>• Optional: revised submission for amendments. |
| Assurances for Non-Construction Programs | **SF-424B** | Mandatory for all foreign and domestic non-Federal entities (including for property grants) unless the organization has certified electronically when registering in SAM.gov.<br>• Foreign Public Entities (use is encouraged but optional)<br>• Resubmission for amendments is optional. |
| Assurances for Non-Construction Programs—Individual | **SF-424B (Individual)** | Mandatory for individual applicants. |
| Budget Information for Construction Programs | **SF-424C** | Mandatory for all foreign and domestic non-Federal entities applying for construction related projects (see Chapter 2.E.3 on restrictions on construction). |
| Assurances for Construction Programs | **SF-424D** | Mandatory for all foreign and domestic non-Federal entities applying for construction related projects (see Chapter 2.E.3 on restrictions on construction). |
| **PRE-AWARD FORMS** | | |

31

AR 000043

Not for Public Release
Department of State Federal Assistance Directive

| Disclosure of Lobbying Activities | **SF-LLL** | Mandatory for all organizations that are required by 31 USC 1352 (2015) to disclose lobbying activities. |
|---|---|---|
| Direct Deposit Sign-up Form | **SF-1199A** | For grants obligated domestically only: required to establish a recipient's account in PMS. |
| ACH Vendor/Miscellaneous Payment Enrollment | **SF-3881** | Required to establish a recipient in the Department's financial system if the recipient is paid outside of PMS. |

| **NOTICE OF AWARD FORMS & COMPONENTS** | | |
|---|---|---|
| Notice of Award to an Organization Cover Sheet | **DS-1909** | Mandatory for both domestic and overseas GOs when awarding Federal financial assistance to an organization. |
| Notice of Award to an Individual Cover Sheet | **DS-1909I** | Mandatory for domestic and overseas GOs when awarding Federal financial assistance to an individual. |
| Award Provisions | **Component of the Notice of Award** | See Chapter 3 for various forms and requirements for each type of assistance agreement. |
| Department of State Standard Terms and Conditions | **Component of the Notice of Award** | See Chapter 3 for various forms and requirements for each type of assistance agreement. |

| **POST-AWARD FORMS** | | |
|---|---|---|
| Notice of Award Cover Sheet for Amendments | **DS-1909** or **DS-1909I** | Mandatory: for domestic and overseas GOs when issuing an amendment. |
| Request for Advance and Reimbursement | **SF-270** | Mandatory: for recipients who are not paid through PMS. |
| Outlay Report and Request for Reimbursement for Construction Programs | **SF-271** | Mandatory submission for recipients of construction program funds. |
| Data Collection Form for Single Audits | **SF-SAC** | Optional |
| Overseas Schools – Grant Status Report | **DS-2028** | Mandatory for Overseas Schools (defined as U.S. sponsored elementary or secondary school abroad participating in the Department of State's Consolidated Overseas Schools Assistance Program). |

32

AR 000044

Not for Public Release
Department of State Federal Assistance Directive

| Federal Financial Report (FFR) | **SF-425** | Mandatory: for domestic and overseas entities, if financial reporting is required under the agreement. Not required for Awards to Individuals with fixed budgets, FAAs or Overseas Schools (see definition above). Optional: for Foreign Public Entities |
|---|---|---|
| Certain Government Payments | **Form 1099-G** | Required for all individual recipients that are subject to U.S. tax laws, including resident aliens, who have been paid $$ 600 or more in a calendar year through a grant or cooperative agreement. See Chapter 3.I for details. |

# H. ENGLISH LANGUAGE

All Federal financial assistance announcements and award information must be in the English language.

Applications (meaning the proposal documents) must be submitted in English and proposed budgets must be denominated in U.S. dollars.

Financial reporting must be submitted in U.S. dollars. Note that the requirement to apply and report in U.S. dollars does not affect how payment is made; payments to recipients may be made in U.S. dollars or foreign currency.

For awards issued or cost amended on or after October 1, 2024, or for awards amended to apply the OMB 2024 CFR Revisions, Bureaus, offices and posts may give recipients approval to submit required program reporting and official correspondence in languages other than English. The Grants Officer must indicate in the Award Provisions that an alternate language has been approved. Bureaus, offices, and posts should take into consideration staff language capacity when considering this option.  As a reminder, the GOR must provide a written assessment of every report. This is especially critical in instances where the bureau/office/post chooses to allow submission of correspondence and reports in a language other than English.

In the event of an audit, investigation, suspension and debarment action, or in other circumstances where a translation of reports and correspondence submitted in languages other than English is necessary, the awarding office will be responsible for providing English translations if/when needed.

While applicants may use publicly available Generative Artificial Intelligence (GenAI) services to translate applications into English in order to submit, Department staff may not use publicly available GenAI to translate reports or correspondence into English, as these documents may include sensitive, proprietary, or non-public information that should not be input into publicly

33

AR 000045

Not for Public Release
Department of State Federal Assistance Directive

available GenAI services, in order to protect such information from unauthorized release and to safeguard the integrity of the award-making process.

Department offices interesting in procuring GenAI technology for their own internal use should consult Acquisition Alert 24-18, Responsible Artificial Intelligence Procurement.

In the event of inconsistency between English and another language, the English language meaning will control.

34

AR 000046

Not for Public Release
Department of State Federal Assistance Directive

# CHAPTER 2: PRE-FEDERAL AWARD REQUIREMENTS

## A. SELECT THE APPROPRIATE INSTRUMENT

The Federal Assistance team must decide on the appropriate instrument (e.g., federal financial assistance award or contract) in accordance with 31 USC § 6301 et seq. (2017). The Federal Assistance team must use a federal financial assistance award whenever the principal purpose of the relationship is the transfer of money, property, services, or anything of value to the recipient in order to accomplish a public purpose of support or stimulation authorized by Federal statute. A contract, on the other hand, is for the acquisition, by purchase, lease, or barter, of property or services for the direct benefit or use of the federal government and is governed by separate regulations, such as the Federal Acquisition Regulation and Competition in Contracting Act, the Department of State Acquisition Regulations (agency supplement), Competition in Contracting Act, and all other procurement related statutory requirements.

The "public purpose" test for selecting the appropriate instrument applies to all programs. The decision on whether to use an assistance agreement (grant, cooperative agreement, fixed amount award, etc.) or procurement (contract), should be made during the program design phase, and must be based on the intended objectives of the program.  Program design involves determining how the program will align to higher-level strategies, analyzing the context in which the program will operate, assessing existing evidence, identifying the underlying issues or problems to be addressed, establishing program or project goals and objectives, and creating a plan to achieve those objectives and to assess the extent to which the objectives are met. For assistance with program design, see the Department's requirements in 18 FAM 301.4-2  and guidance/tools in the Program Design and Performance Management Toolkit. Federal Assistance teams should consult with their bureaus for additional guidance.

If there is disagreement over the appropriate instrument to be used, consult FAPD and the Office of the Legal Adviser.

Cooperative agreements require "substantial involvement," indicating greater federal government participation in the project than with grant agreements. Substantial involvement must be reasonable and programmatically necessary. Cooperative agreements should not be utilized solely as a means of exercising greater control over a recipient or project.

Potential areas of substantial involvement should be described in the NOFO. Some examples of substantial involvement include, but are not limited to:

- Active collaboration with the recipient in the implementation of the award.
- Review and approval of one stage of work before another can begin.
- Joint preparation or presentation of results with the recipient.

AR 000047

Not for Public Release
Department of State Federal Assistance Directive

- Involvement in the selection of participants or program venues.
- Specific programmatic oversight in the award, beyond normal monitoring.

The following are not considered areas of substantial involvement:

- Approval of key personnel.
- Approval of the recipient's budget or plan of work prior to the award.
- Standard oversight, monitoring, and administration of Federal awards.
- Actions to correct recipient performance or administrative deficiencies identified during the implementation of the award.

Once a grant or cooperative agreement has been issued, the type of assistance, including the GR (Grant) or CA (Cooperative Agreement) designation in the FAIN and the budget object code cannot be changed.

- A GO may not change the award from a grant to a cooperative agreement after issuing the award (for example, to address performance issues). Instead, the GO should consider other options such as a Corrective Action Plan or increased monitoring. These are addressed in Chapter 4.
- In the rare case where a grant or cooperative agreement was inadvertently issued with the wrong identifier (i.e., GR instead of CA or vice versa), the GO may retain the original FAIN and amend the award to substitute new award provisions showing the correct assistance type. Alternatively, the GO may choose to cancel and re-issue the award in the system with the appropriate FAIN and type of assistance. This requires coordination with CGFS/FPRA/FAFM (FAFM@state.gov) and the ILMS Support Desk as there may be complications due to expired funding availability.

## B. CONFIRM ASSISTANCE LISTING NUMBER

SAM.gov is a publicly available online database showing all available Federally funded programs. An individual or organization can use the database to search for assistance programs and then contact the office that administers the program and find out how to apply. Assistance Listings are also used by organizations to search for assistance programs on Grants.gov, and to define programs during a single-program audit.

All Department programs must have an Assistance Listing number and a corresponding program description on SAM.gov. 2 CFR § 200.202 states that Federal awarding agencies may not award Federal financial assistance without assigning it to a program that has been included in the Assistance Listing database with a unique number unless there are exigent circumstances, such as timing requirements imposed by statute. Individual posts do not need to set up unique numbers for each program or group of programs but should determine the correct Assistance Listing number based on the funding stream and program description, such as 19.040 for many

36

**AR 000048**

Not for Public Release
Department of State Federal Assistance Directive

Public Diplomacy programs. Domestic bureaus should designate a point of contact to maintain programs in the Assistance Listing database and must update the program description annually at SAM.gov.

The Assistance Listing number must be referenced in every NOFO and the Notice of Award. The Federal Assistance team must also ensure that any proposed NOFO or award aligns with the program objectives, approved instruments, uses and restrictions, recipient eligibility requirements, and appropriate statutory authority as described in the Assistance Listing on SAM.gov.

Contact FAPD to register a new assistance listing program, or for instructions on updating a program description.

## C. CONFIRM STATUTORY AUTHORITY AND APPROPRIATION

Prior to announcing a program, the Federal Assistance team must be familiar with the type of funding to be used, including the statutory authority, appropriation, and any applicable legal requirements. The statutory authority may, for example, impose limits on the types of assistance activities, eligible applicants, or nature of the award that are allowed. Applicable laws may further restrict how funds can be used, in what countries they can be used, and who can benefit. The Office of the Legal Adviser and the Financial Management Officer should be consulted for any questions regarding statutory authority, appropriation, or other applicable legislation.

## D. CONGRESSIONAL NOTIFICATION

The Congressional Notification (CN) process is managed by the Bureau of Legislative Affairs (H). Bureaus/offices/posts should work with the relevant Executive Director's office or the funding office, as well as Office of the Legal Adviser (L), as appropriate, to determine whether a CN is required and what the applicable process is.

**Congressional Notification of Foreign Assistance Programs:**

As a general matter, foreign assistance funds may not be obligated for "activities, programs, projects, types of material assistance, countries, or other operations" not justified or in excess of the amount justified to Congress. The primary way in which foreign assistance is "justified" to Congress is through the annual Congressional Budget Justification (CBJ). Even if the use of funds is justified in the CBJ, in most instances a congressional notification (CN) is mandated by law prior to the obligation of funds for foreign assistance purposes – check with the Office of the Legal Adviser for the CN requirements for foreign assistance funds.

37

AR 000049

The CN process is a formal, written notification following a specific format and extensive clearances within the Department, followed by a 15-calendar day period that starts once the notification has been transmitted to the appropriate Congressional committees.

In some cases, after CNs have been transmitted to the appropriate committees, committee staff will request a briefing on the notification. Additionally, in some instances the committee may place a "hold" on the CN (for example, pending a briefing from the bureau that transmitted the CN). In these cases, H will facilitate the communication.  The award cannot be finalized or obligated until H has officially notified the bureau that congressional notification procedures have been completed.

In addition to notification requirements, many foreign assistance funds are subject to additional requirements that must be fulfilled before the funds are obligated.  These may include (for example) pre-obligation spend plan, certification, and other requirements.  Your bureau should work with L/LFA to determine whether any such requirements apply to the relevant funding.

For specifics on what information needs to be included in CN, and whether congressional consultation or other engagement is required, the Federal Assistance team should contact and coordinate with H and L.

**Congressional Notification of Diplomatic Engagement Appropriations:**

In the limited instances where Federal financial assistance is funded from Diplomatic Engagement appropriations (i.e., title I of the Department's annual appropriations act), different notification requirements apply and bureaus should consult with BP, L/LFA, and H.

**Congressional Notification of Public Diplomacy Programs Under Section 705 of the U.S. Information and Educational Exchange Act of 1948 ("Smith-Mundt" Act):**

Some Public Diplomacy Program grants require a distinct type of notification to Congress. Grants that are funded under the Educational and Cultural Exchanges ("ECE") or Diplomatic Programs (DP) ".7" account and that are signed by a GO in Washington for a domestic bureau or office for overseas public diplomacy programs  must be notified  and the notification should identify the intended recipient if known at the time of notification. Such notification must be provided at least 15 calendar days prior to issuance of any award.

If a domestic bureau or office receives either ECE or DP (formerly referred to as D&CP) ".7" funding to fully or partially fund Public Diplomacy activities, it must apply the following test to determine whether a section 705 notification is required:

- If the award document is signed by a GO in Washington for a domestic bureau or office, then congressional notification under section 705 is required.
- If the award is signed by a GO in Washington for an Embassy Public Diplomacy Section, then congressional notification under section 705 is not required.

AR 000050

Not for Public Release
Department of State Federal Assistance Directive

- If the award is to an individual, congressional notification under section 705 is not required.[1]

Awards funded with ECE or DP funds and signed by a GO at post do not require congressional notification under section 705.

Bureaus should consult with L/PD and H regarding whether notification is required in a situation and, if required, to whom.

## E. REVIEW FOR POTENTIAL RESTRICTIONS AND REQUIREMENTS

Prior to designing an assistance program or activity, bureaus/offices/posts should be aware of any potential restrictions on the use of funds, and any country-specific requirements. The section below lists some generally applicable restrictions, but is not exhaustive and does not cover, for example, the extensive restrictions on assistance for certain countries and activities (and these restrictions can change from one year to the next based on the relevant appropriations act and other legislation). Bureaus/offices/posts should consult widely, including with FAPD and L, prior to notifying funding or programming, launching new programs, or using new award mechanisms.

---

[1] **Background on Congressional Notification Requirements for PD funds:** Section 705 of the U.S. Information and Educational Exchange Act of 1948 ("Smith-Mundt" Act) Public Diplomacy originally stated that: "In addition, the United States Information Agency may award program grants [for the fiscal years 1984 and 1985] only if the Committee on Foreign Affairs of the House of Representatives and the Committee on Foreign Relations of the Senate are notified fifteen days in advance of the proposed grant." (Section 214 of the Department of State Authorization Act for Fiscal Years 1984 and 1985.) The referenced House and Senate committees agreed that the term "program grants" applies only to domestically-awarded Public Diplomacy program grants to institutions; including grants awarded under the authority of the Mutual Educational and Cultural Exchange Act of 1961 ("Fulbright-Hays" Act).

Section 1335 of the Foreign Affairs Reform and Restructuring Act of 1998 (Pub. L. No. 105- 277) amended the above provision, effective October 1, 1999, to read: "The Department of State may award grants for overseas Public Diplomacy programs only if the Committee on Foreign Affairs of the House of Representatives and the Committee on Foreign Relations of the Senate are notified fifteen days in advance of the proposed grant."

The revised language now in place was submitted to the Congress by the Clinton Administration. It was suggested in order to distinguish awards issued by the Department from the Public Diplomacy grants previously awarded by USIA. The statutory change was intended to clarify rather than expand the scope of the notification provision. The congressional committees have since clarified that they are not seeking to expand the types of Public Diplomacy awards they review under the statutory notification requirement.

AR 000051

Not for Public Release
Department of State Federal Assistance Directive

**Note:**  Different funding types may not be combined on the same award. In cases where there are different funding types, they must be issued using separate awards with distinct purposes.  This is commonly referred to as the "pick and stick" rule.  Bureaus/offices/posts should confer with FAPD and L for exceptions.

## E.1. MANAGEMENT OF NON-PUBLIC DIPLOMACY AWARDS AT POST

See Chapter 1.D.2.d for policies on Public Affairs personnel managing non-Public Diplomacy awards at post.

## E.2. FEDERAL AWARDS TO FOR-PROFIT ENTITIES

Certain statutory authorities allow for Federal financial assistance to for-profit entities, such as commercial firms. Others, such as the Smith-Mundt Act and the Fulbright-Hays Act, do not. Therefore, a bureau/office/post contemplating awarding Federal financial assistance to a for-profit organization or including for-profit organizations in the list of eligible applicants for a NOFO should check whether the program legislation and statutory authority permit Federal financial assistance to for-profit entities.

**Statutory Restrictions:**

For Public Diplomacy funded awards:
- Assistance awards executed under the statutory authorities of either the Smith-Mundt Act or the Fulbright-Hays Act cannot be issued to for-profit entities. The two program statutes contain no affirmative authority for an assistance award to a for-profit entity. Under these two grant-making authorities for Public Diplomacy funding, PD-funded grants cannot be awarded to for-profit entities. This restriction applies to for-profit education institutions as well.
- Subawards cannot be issued to for-profit entities under either of these statutory authorities. Subcontracts to for-profits are permissible. See 2 CFR § 200.331 for the characteristics of a subaward versus a subcontract.
- In some limited circumstances, for example in a country where organization as a nonprofit is not available under local law, issuing an assistance award to a for-profit organization that is run effectively on a nonprofit basis (i.e. an entity with a public purpose that is formally organized as a for-profit entity but functions in practice as a non-profit), might be permissible, depending on the statutory authority, the funding source, host country requirements, and the characteristics of the organization. If an award or subaward to this type of entity is being considered, seek FAPD and L/PD guidance prior to issuing a NOFO in order to craft appropriate eligibility language. L and FAPD approval is required prior to signing a PD-funded award to this type of recipient or subrecipient entity.

40

AR 000052

Not for Public Release
Department of State Federal Assistance Directive

For Non-Public Diplomacy funded awards:

- The Office of the Legal Adviser must be consulted where there are questions regarding the eligibility of a commercial or for-profit firm to receive a grant under the applicable authorities – for example, where program legislation does not explicitly confine assistance awards to non-profits or explicitly prohibit assistance awards to for-profit entities.

**Note:** The Office of the Legal Adviser's review is not required if program legislation specifically authorizes assistance awards to for-profit entities or for amendments to original awards, for example awards relying on the grant authority of the Foreign Assistance Act (22 USC §2395 (2017)—General authorities).

**Cost Considerations for For-Profit Entities:**

The Federal Acquisition Regulation (FAR) at 48 CFR Part 30 (2020)—Cost Accounting Standards and 48 CFR Part 31 (2019)—Contract Cost Principles and Procedures takes precedence over the cost principles in 2 CFR § 200, Subpart E, for Federal awards to U.S. and foreign for-profit entities. When reviewing the budget of a for-profit entity for cost allowability, the GO may want to consult with General Service Officers (GSO), Bureau Executive Directors, Contract Officers (CO), Contract Officer Representatives (COR), or others more familiar with the FAR.

**Audits:**

For questions about audits of for-profit entities, see Chapter 2.J.3.

**Indirect Rates:**

For-profit entities may have a formally established overhead or General and Administrative (G&A) rate, which should be considered when determining indirect costs on an award. For-profit entities should not be asked to apply the de-minimis indirect rate. The Department does not apply Subpart E of 2 CFR § 200, which established the de minimis rate, to for- profit entities. Instead, for-profit recipients who do not have a formally established overhead or G&A rate should allocate indirect costs into the appropriate direct cost categories, as described in Chapter 2.N.3.b.

## E. 3. FEDERAL AWARDS FOR CONSTRUCTION

Construction projects require specialized oversight. When a construction project is for a public benefit, a Federal award is generally the appropriate instrument. If permitted under the applicable statutory authority, some programs may allow for construction through a contract rather than a grant or cooperative agreement; for larger, more complex projects it may be particularly prudent to issue via contract. In those instances, the final product could be granted to the recipient via a property grant.

AR 000053

Not for Public Release
Department of State Federal Assistance Directive

To ensure appropriate oversight of a grant or cooperative agreement for construction, the Federal Assistance team must follow the policies below. These policies apply to all projects involving construction activities, including modernization and rehabilitation.

An assistance award may only be used to fund construction activities if all the following restrictions are observed, and all the conditions apply:

**Restrictions:**

- Construction activities $250,000 or below: a grant or cooperative agreement may be used. A Fixed Amount Award may not be used.
- Construction activities over $250,000: a cooperative agreement is required, with appropriate substantial involvement in the award provisions.
- Public Diplomacy funding may not be used in awards to for-profit entities.

**Conditions:**
- Construction activities are explicitly identified in the budget and statement of work.
- Awards over $100,000 must have a designated GOR with significant experience overseeing large and/or complex programs requiring extensive monitoring. GORs should have the ability and technical experience to manage a construction project.
- The award provisions expressly state that no construction activities other than those explicitly approved in the award may be performed under the award.
- The award provisions include a specific award condition stating that the GO has the right to halt construction.
- The award provisions include a specific award condition stating that any proposed modification to the site location, statement of work, budget (to include re-alignment of costs), or project duration must be pre-approved by the GO in writing.
- All applicable OMB Standard Forms are used as required: Forms include, but not limited to SF-424, SF-424C (Budget for construction programs), SF-424D (Assurances for construction programs), and SF-271 (Outlay Report and Request for construction programs).

**Requirements:**

**Pre-Award:**
Prior to award, the awarding bureau/office/post must include the following information in the required FAPD risk assessment template:
- the level of construction-based expertise available within the Federal Assistance team to manage the award and approve construction activities; and
- the potential risk mitigation strategies.
- The monitoring plan should be based on the risk assessment, and include mitigation strategies, schedules of vital construction activities (inspections, meetings, etc.), a site visit schedule (as applicable), and other activities necessary for successful management of the award.

42

AR 000054

Not for Public Release
Department of State Federal Assistance Directive

- The award instrument type must be determined prior to any form of competition, and the award competition must be conducted in compliance with applicable Department policy as outlined in Chapter 2.F.
- Technical expertise in construction is essential for the effective management of any construction, modernization, or rehabilitation projects. It is the responsibility of the bureau/office/post to identify personnel with the appropriate level of expertise to manage the award.

**Award:**
- The Notice of Award will contain all required elements of either a grant or cooperative agreement.
- The program and financial reporting requirements and schedule must be explicitly described in the award provisions.
- The GO must insert a description and location of the authorized construction activities.
- The GO will include the following specific conditions in the award:
  - Any proposed modification to the site location, statement of work, budget (to include re-alignment of costs), or project duration must be pre-approved by the GO in writing.
  - No construction activities other than those explicitly approved in the award may be performed as part of the award.

**Post Award:**
The GOR and GO must carefully monitor the progress under the award, using all appropriate means, including site visits. Payment requests must be carefully evaluated prior to disbursing funds.

**Closeout:**
All applicable Federal laws, regulations, and Department policies for proper closeout of assistance awards must be followed.

**Exceptions:**

**U.S. Ambassadors Fund for Cultural Preservation:** The U.S. Ambassadors Fund for Cultural Preservation (AFCP), which supports projects to preserve the cultural heritage of less developed countries, including architectural conservation and restoration, is exempt from this policy.

**Emergency Refugee and Humanitarian Assistance:** Refugee and humanitarian assistance activities that require minor construction and rehabilitation activities (total of $250,000 or less on an award) to provide urgent assistance to beneficiary populations are exempt from this policy. Minor construction and rehabilitation project activities which total more than $250,000 on a humanitarian award may be exempted on a case-by-case basis with approval from FAPD.

## E. 4. RESTRICTIONS RELATED TO ABORTION

A provision in the annual Department of State, Foreign Operations, and Related Programs Appropriations Act states that "none of the funds made available under this Act may be used to lobby for or against abortion."

43

AR 000055

Not for Public Release
Department of State Federal Assistance Directive

The restriction on lobbying for or against abortion is captured in the Department Standard Terms and Conditions. The Department Standard Terms and Conditions states:

"The recipient agrees that in accordance with 22 USC 2151b(f) no foreign assistance funds provided by the award shall be used to:

(1)     pay for the performance of abortions as a method of family planning or to motivate or coerce any person to practice abortions (Helms Amendment, 1973).

(2)     pay for the performance of involuntary sterilizations as a method of family planning or to coerce or provide any financial incentive to any person to undergo sterilizations (Involuntary Sterilization Amendment, 1978).

(3)     pay for any biomedical research which relates, in whole or in part, to methods of, or the performance of, abortions or involuntary sterilization as a means of family planning (Biden Amendment, 1981).

Furthermore, the recipient agrees in accordance with the Department of State's annual appropriation bill, that no funds provided by the award may be used to lobby for or against abortion (Siljander Amendment, 1981)."

## E. 5. AWARD ACTIVITIES IN A DESIGNATED AREA OF COMBAT OPERATIONS: SPOT REPORTING

The Department has a legal requirement, established by section 861 of the National Defense Authorization Act for Fiscal Year § 2008 and implemented through subsequent regulations, to report and account for all contractors working under grants or cooperative agreements in contingency operations outside the United States that involve combat operations. The common database to collect this information, called the Synchronized Pre-deployment Operational Tracker (SPOT), is managed by the Department of Defense. A Department SPOT Program Manager, based in M/GA/BMS/EDSA (GAOPS@state.gov) can assist the Grants Officer to enter information provided by the recipients directly into the SPOT system.

Currently the Department, via interagency Memorandum of Understanding (MOU), applies this requirement to awards operating in Iraq or Afghanistan.

To comply with this requirement, GOs must include the standard "SPOT" provision in the award provisions for any award which:

- Is over $150,000 or has a period of performance of over 30 days: and
- Involves recipient, subrecipient, or subcontract personnel in Iraq and/or Afghanistan.

The recipient's reporting requirements vary depending on whether the type of work the personnel are performing.

44

AR 000056

Not for Public Release
Department of State Federal Assistance Directive

**<u>For recipients with personnel who are NOT performing security functions and who do not need access to U.S. government support or facilities:</u>**

Personnel, including U.S. citizens, third country nationals, and local Iraqi or Afghan personnel, are accounted for anonymously, in aggregate.

- The recipient will request an aggregate count template from the GO or GOR, who will obtain the template from the Department's SPOT Program Manager (GAOPS@state.gov) by submitting an ILMS Service Now ticket here: http://ilmshelp.state.sbu/  Select "Global Acquisition Request" from the support ticket selection tiles.
- The recipient will complete the template and return to the Department's SPOT Program Manager via Service Now. The SPOT Program Manager will enter the aggregate count data into the SPOT reporting system.
- The recipient is responsible for updating the aggregate count every quarter by providing updated information via the "Aggregate Count" template to Department SPOT Program Manager for each SPOT award.

**<u>For recipients with personnel who ARE performing a private security function; require access to U.S. facilities, services, or support; or who may be eligible for special refugee or immigration status under U.S. regulation:</u>**

The personnel funded under that award must be entered into SPOT individually with all required personal information.

- The recipient must enter this information into the SPOT database directly. Unlike the aggregate count process, the Department's SPOT Program Manager does not enter this information into SPOT on behalf of the recipient.
- The recipient starts the process by referring to the DOS Business Rules and registering for an account in SPOT by contacting the DoD SPOT Help desk here: https://spot.dmdc.mil/. Include GAOPS@state.gov when reaching out to DoD.

**For Recipients with personnel outside of Iraq and/or Afghanistan:**

At present there is no requirement or mandate for SPOT use in other countries. However, if there are federal assistance awards needing to interact with DoD elements where a SPOT LOA would benefit, then coordinate with M/GA/BMS/EDSA (GAOPS@state.gov) who will assist with setting up the grants or agreements into SPOT for that purpose. Ensure your Grants Officer is included on the email to M/GAOPS.

**Note:** Recipients utilizing armed private security personnel, whether employed directly or via contract, are required to adhere to post policies and procedures regarding private security contractors. As specific post policies and procedures differ in scope and applicability, recipients are advised to review post policies carefully and direct any questions to the Embassy Regional Security Office through the GO or GOR.

45

Not for Public Release
Department of State Federal Assistance Directive

## E. 6. INTEGRATION AND ADVANCEMENT OF WOMEN'S EMPOWERMENT IN FOREIGN ASSISTANCE

Numerous U.S. laws and policy guidance encourage Department personnel and recipients to take concrete steps to advance the status of women and girls[2] in U.S. foreign assistance programs. Department personnel should consider the impact of federal assistance programs on women and girl's safe and meaningful participation in all spheres of life. Ensuring that U.S. foreign assistance integrates the needs and perspectives of women and girls enhances both U.S. influence and the effectiveness of programming. Advancing the status of women and girls benefits all individuals – families, communities, and societies. Concrete steps include but are not limited to:

- Ensuring each operating unit integrates key issues related to women's political and economic participation, women's inclusion in peace and security processes, and violence against women and girls[3] into their annual foreign assistance Operational Plans (OPs), which are then reflected in each implementing mechanism.
- Conducting a socioeconomic analysis, as defined by the Women's Entrepreneurship and Economic Empowerment (WEEE) Act of 2018, during the program or project design phase to identify what gaps, risks, and opportunities for women, men, girls, and boys must be addressed to strengthen program success.
- Including in NOFOs and awards, requirements for recipients to conduct a socioeconomic analysis as defined by the WEEE Act with clear integration of its findings throughout the recipient's program design and implementation; and include indicators monitoring the award's progress on women's empowerment and sex-disaggregated data in grantees' monitoring, evaluation, and learning plans.
- Requiring recipients to have Do No Harm and Preventing Sexual Exploitation and Abuse (PSEA) policies and procedures that cover grantee staff, program participants, and program beneficiaries.
- Including potential risks to women and girls in recipients' risk assessments and mitigation plans, including, but not limited to, violence and women and girls at risk from terrorism and/or in conflict or crisis-affected areas.
- Integrating defense of women's rights standard Foreign Assistance (FA) indicators into operating units' annual Performance Plan and Report (PPR) process.

---

[2] The Women, Peace, and Security Act of 2017; the Elie Wiesel Genocide and Atrocities Prevention Act of 2018 ; the Global Fragility Act (GFA) of 2019; the President's Women's Global Development and Prosperity Initiative (W-GDP) (2019); ; 18 FAM 302.1 Integration and Advancement of Women's Empowerment; and 1 FAM 026 Office of Global Women's Issues. The Department is not mandated by, but takes policy guidance from the Women's Entrepreneurship and Economic Empowerment Act of 2018.

[3] e.g. Women's Empowerment, including Women's Economic Empowerment; Women, Peace, and Security (WPS); and Violence against Women and Girls (VAWG).

AR 000058

Not for Public Release
Department of State Federal Assistance Directive

This section shall be implemented in alignment with 2.E. 10, FUNDING LIMITATIONS IN LINE WITH EXECUTIVE ORDER 14151: ENDING RADICAL AND WASTEFUL GOVERNMENT DEI PROGRAMS AND PREFERENCING.

## E. 7.  FUNDING LIMITATIONS FOR THE UNITED NATIONS RELIEF AND WORKS AGENCY (UNRWA)

Title III of Division G of the Further Consolidated Appropriations Act, 2024 (P.L. 118-47) and section 308 of the Israel Security Supplemental Appropriations Act, 2024 (Div. A, PL 118-50) prohibit FY 2024 Department of State funds from being used for any contribution, grant, or other payment to the United Nations Relief and Works Agency (UNRWA).

Consistent with Executive Order 14199, the Department is prohibited from using appropriated funds to issue any new federal assistance awards or cost-amend any existing awards to UNRWA. This includes all mechanisms such as grants, cooperative agreements, contributions, awards to Foreign Public Entities (FPEs) including Public International Organizations (PIOs) or property awards.

Department award recipients are prohibited from using Department funds for any subcontract or subaward (at any tier), direct financial support of, or other payment or transfer to the United Nations Relief and Works Agency (UNRWA). This policy applies to all Federal assistance awards.

The restrictions on funding to UNRWA are captured in the mandatory award provision which must be included in all award agreements, NOFOs and solicitations. This applies to awards to all entity types including those to Public International Organizations (PIOs).

## E. 8. PROHIBITION ON FUNDING ACTIVITIES THAT ENCOURAGE MASS-MIGRATION CARAVANS TOWARDS THE US SOUTHWEST BORDER

Section 7045(f) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (Div. F, P.L. 118-47), including as carried forward by continuing resolutions, prohibits State Department funds from being used to encourage, mobilize, publicize, or manage mass-migration caravans towards the United States southwest border.

Department award recipients are prohibited from using Department funds for any activities that encourage, mobilize, publicize, or manage mass-migration caravans towards the United States southwest border.  Partners may only utilize Department funds to purchase cash cards for beneficiaries for use in the country in which they are provided or to facilitate assisted voluntary returns and other purposes that do not encourage, mobilize, publicize, or manage mass migration caravans towards the United States southwest border. This policy applies to all federal assistance awards with a principal place of performance located in the Western Hemisphere region (WHA).

AR 000059

Not for Public Release
Department of State Federal Assistance Directive

The policy does not prohibit the issuance of federal awards to recipients that engage in these activities, so long as Department funds do not support the prohibited activities.

This policy also does not preclude the provision of humanitarian assistance, including the provision of food, shelter, safe drinking water, improved sanitation and hygiene, emergency healthcare services, child protection programs, education and similar activities.   Consistent, as appropriate, with the Joint Explanatory Statement, humanitarian assistance in this context would generally not include: (1) cash cards for any purpose that encourages, mobilizes, publicizes, or manages mass migration caravans towards the United States southwest border; (2) legal counseling on the United States asylum process; or (3) referrals to legal representation in the United States.

These restrictions are captured in a mandatory award provision which must be included in all award agreements, NOFOs and solicitations with a principal place of performance in the Western Hemisphere.

## E. 9. TRAFFICKING IN PERSONS COMPLIANCE PLAN

For grants and cooperative agreements under which the estimated value of services to be performed outside the United States exceeds $500,000, 2 CFR 175 requires recipients to certify the following in writing prior to award:

- To the best of the recipient's knowledge, neither the recipient, nor any subrecipient, contractor, or subcontractor of the recipient or any agent of the recipient or of such a subrecipient, contractor, or subcontractor, is engaged in any of the activities described in 2 CFR 175(a);
- The recipient has implemented a Trafficking in Persons compliance plan to prevent activities described in 2 CFR 175(a) and is compliant with it; and
  - The compliance plan must be consistent with the requirements of 2 CFR 175(b)(4) and (5).
- That the recipient has procedures to prevent activities described in 2 CFR 175(a) and to monitor, detect, and terminate any subrecipient, contractor, subcontractor, or employee of the recipient engaging in them.

Recipients do not need to submit a copy of the plan. However, they must provide it to the Grants Officer upon request.

Recipients must provide written re-certification on an annual basis for the entire period of performance of the award.

The initial certification is captured in the mandatory award provision which must be included in all award agreements, NOFOs and solicitations for awards for which the estimated value of services to be performed outside the United States exceeds $500,000.  A template that can be tailored to document the mandatory annual recertification is found on the FAPD toolkit here.

48

**AR 000060**

Not for Public Release
Department of State Federal Assistance Directive

## E. 10. FUNDING LIMITATIONS IN LINE WITH EXECUTIVE ORDER 14151: ENDING RADICAL AND WASTEFUL GOVERNMENT DEI PROGRAMS AND PREFERENCING

The President's Executive Order 14151 *Ending Radical and Wasteful Government DEI Programs and Preferencing*, dated January 20, 2025, directed the Office of Management and Budget (OMB) Director to coordinate the termination of all "all discriminatory programs, including illegal DEI and "diversity, equity, inclusion, and accessibility" (DEIA) mandates, policies, programs, preferences, and activities in the Federal government, under whatever name they appear."

- In accordance with Executive Order 14151, the Department is prohibited from issuing federal assistance awards that support initiatives or programs promoting "diversity, equity, inclusion, and accessibility" (DEI/DEIA).

## E. 11. CERTIFICATION REGARDING COMPLIANCE WITH APPLICABLE FEDERAL ANTI-DISCRIMINATION LAWS

Executive Order 14173 titled *Ending Illegal Discrimination and Restoring Merit-Based Opportunity* revokes EOs from previous administrations that promoted diversity, equity and inclusion (DEI), affirmative action, and equal opportunity programs. State Department funds must not be used for any initiatives or programs, or activities that do not comply with EO 14173.

Consistent with Executive Order 14173, all recipients of federal assistance awards where the place of performance or delivery is within the United States must certify that they do not operate any programs promoting DEI that violate any applicable anti-discrimination laws and agree that the certification is material for purposes of the government's payment decisions and therefore, subject to the False Claims Act. See 31 U.S.C. 3729(b)(4). The certification requirement **does not** apply to federal assistance awards where the place of delivery or performance is outside of the United States.  The certification requirement **does not apply** to Voluntary Contributions or Assessed Contributions (see Chapter 3 K.2 and Chapter 3 K.3 for more information on Contributions).

For the purposes of this section 2.E.11 only, a program promoting Diversity, Equity, and Inclusion means a program whose purpose is to promote preferences based on race, color religion, sex, or national origins, such as in training or hiring.

NOFOs and solicitations must include language advising applicants that a certification will be required at the time of award if the place of delivery or performance is within the United States.

49

AR 000061

Not for Public Release
Department of State Federal Assistance Directive

The certification requirement is captured in a mandatory award provision which must be included in all awards agreements where the place of performance or delivery is within the United States. Certification is effectuated at the time of award upon recipient signature of the DS-1909 or DS-1909I only.

## E. 12. FUNDING LIMITATIONS AND DEFINITIONS IN LINE WITH EXECUTIVE ORDER 14168: DEFENDING WOMEN FROM GENDER IDEOLOGY EXTREMISM AND RESTORING BIOLOGICAL TRUTH TO THE FEDERAL GOVERNMENT

The President's Executive Order 14168 *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government,* dated January 20, 2025, articulates that "it is the policy of the United States to recognize two sexes, male and female. These sexes are not changeable and are grounded in fundamental and incontrovertible reality." The Executive Order established sex-based definitions to be utilized by the federal government.

- In accordance with Executive Order 14168, the Department is prohibited from issuing federal assistance awards that promote or inculcate gender ideology, as defined in Section 2(f) of Executive Order 14168.

The FAD recognizes the terms sex, female, male, woman, girl, man, boy, mother, and father as defined by the Department of Health and Human Services, Office of Women's Health outlined in ALDAC 25 STATE 15768. The FAD recognizes the term gender identity as defined in Section 2(g) of Executive Order 14168.

## E. 13. FUNDING LIMITATIONS IN LINE WITH EXECUTIVE ORDER 14201: KEEPING MEN OUT OF WOMEN'S SPORTS

The President's Executive Order 14201 *Keeping Men Out of Women's Sports*, dated February 5, 2025, articulates that "it is the policy of the United States to rescind all funds from educational programs that deprive women and girls of fair athletic opportunities, which results in the endangerment, humiliation, and silencing of women and girls and deprives them of privacy."

- The Department is prohibited from issuing federal assistance awards to fund educational programs that permit men to compete in women's sports. For the purposes of this section (E.12), an "educational program" is defined as a set of activities, initiatives, or projects aimed at achieving educational goals or objectives within an educational institution. Educational institution has the meaning defined in Sec. 1681(c) of Sec. 1681(c) of Title IX of the Education Amendments Act of 1972.
- The Department is prohibited from issuing federal assistance awards to fund people-to-people sports exchanges or other sports programs within which the relevant female sports category is based on gender identity and not sex.

50

AR 000062

Not for Public Release
Department of State Federal Assistance Directive

## E. 14. CERTIFICATION REGARDING COMPLIANCE WITH 20 U.S.C. 1011F AND ANY OTHER APPLICABLE FUNDING DISCLOSURE REQUIREMENT FOR INSTITUTIONS OF HIGHER EDUCATION (IHEs)

The President's Executive Order titled *Transparency Regarding Foreign Influence at American Universities*, dated April 23, 2025, requires that agencies ensure certification by institutions of higher education (IHEs) of compliance with requirements for reporting significant sources of foreign funding. The certification is captured in a mandatory provision which must be included in all award agreements to IHEs, and award agreements that include subawards to IHEs.

This policy applies to all federal assistance awards to US Institutions of Higher Education (IHEs), located in the United States, regardless of funding source. As defined in 2 CFR 200.1 and 20 U.S.C. 1001, an IHE is an educational institution in any State that:

> (1) admits as regular students only persons having a certificate of graduation from a school providing secondary education, or the recognized equivalent of such a certificate, or persons who meet the requirements of section 1091(d) of this title;
> (2) is legally authorized within such State to provide a program of education beyond secondary education;
> (3) provides an educational program for which the institution awards a bachelor's degree or provides not less than a 2-year program that is acceptable for full credit toward such a degree, or awards a degree that is acceptable for admission to a graduate or professional degree program, subject to review and approval by the Secretary;
> (4) is a public or other nonprofit institution; and
> (5) is accredited by a nationally recognized accrediting agency or association, or if not so accredited, is an institution that has been granted pre-accreditation status by such an agency or association that has been recognized by the Secretary of Education for the granting of pre-accreditation status, and the Secretary of Education has determined that there is satisfactory assurance that the institution will meet the accreditation standards of such an agency or association within a reasonable time.

IHEs applying for or receiving Federal funds must certify that they are in compliance with 20 U.S.C. 1011f and any other applicable foreign funding disclosure requirements. This certification is material for purposes of 31 U.S.C. 3729 and for receipt of Federal grant funds, which shall not be provided in cases of noncompliance with 20 U.S.C. 1011f and any other applicable foreign funding disclosure requirements. In line with 2 CFR 200.332(b)(2), this requirement flows down to subawards to IHEs, as applicable.

The certification requirement is captured in a mandatory award provision which must be included in all awards in which the prime recipient is an IHE. The certification must also be incorporated if the award includes a subaward to an IHE (regardless of the prime recipient's entity type). For example, if the prime recipient is a non-profit organization but the award includes a subaward to an IHE, the provision must be included so that the certification requirement flows down to the subrecipient. Recipients are responsible for ensuring that this provision is included in applicable subaward agreements.

51

AR 000063

The certification provision must also be included in all Notices of Funding Opportunity (NOFOs) and solicitations in which IHEs are an eligible applicant type.

## F. CONDUCT AN OPEN COMPETITION TO SELECT A RECIPIENT

E.O. 14332, *Improving Oversight of Federal Grantmaking*, requires each agency to create a process to review new funding opportunity announcements to ensure that they are consistent with agency priorities and the national interest. This includes sole source and limited competition solicitations.  The Secretary has designated the Chief Acquisition Officer (CAO) as the senior appointee responsible for implementing the requirements of the E.O..  The CAO has the authority to delegate the review of new funding opportunity announcements as appropriate. Initial guidance on the funding opportunity announcement review process was provided in DN #118004.  Additional guidance is forthcoming.

Federal assistance awards must generally be competed in a full and open manner, unless prohibited by, or inconsistent with, the applicable statutory and/or regulatory requirements. Limited exceptions to this requirement are described in Chapter 2.F.2 and Chapter 2.F.3. Even if a bureau/office/post attests that only one recipient organization can carry out the program, and non-competition could potentially be justified using the criteria below, the bureau/office/post should still consider holding an open competition. Open competition demonstrates the Department's commitment to transparency and fairness and often results in applications from new recipients that the bureau or post had not considered.

For a recurring non-competitive assistance program, it is a best practice to openly re-compete the program every two to three years, to determine whether a new organization could carry out the program more effectively. This also ensures that the current recipient(s) continues to provide the overall best program and assures transparency of the Department's competitive process.

### F. 1. REQUIREMENTS FOR OPEN COMPETITION

Competing funding opportunities in a full and open manner requires:

- Developing a NOFO using the required format described in Appendix I to 2 CFR § 200—Full Text of Notice of Funding Opportunity. See Chapter 2.F.5 for other forms of solicitation that fall under open competition: Annual Program Statement (APS) and Statement of Interest (SOI).
- Publicly announcing the funding opportunity as widely as possible. Specifically, the NOFO, APS, or SOI must be announced on Grants.gov, the searchable website for applicants to find Federal financial assistance opportunities, if program exceeds $25,000 in planned total award value, with one or more

52

AR 000064

Not for Public Release
Department of State Federal Assistance Directive

expected awards. Applications do not need to be accepted via Grants.gov, but the announcement must instruct potential applicants how applications should be submitted (e.g., directly to a state.gov email address or in MyGrants for deployed posts and domestic bureaus). The NOFO should also be announced on other public websites, in addition to Grants.gov, such as embassy or bureau social media sites.
- Conducting an impartial merit review and evaluation of applications, using the criteria announced in the NOFO, and evaluating the risks posed by applicants in compliance with 2 CFR § 200.206.

## F.2. EXCEPTIONS TO COMPETITION

Department policy is to conduct an open competition for all Federal financial assistance opportunities. However, under certain circumstances, non-competition can be justified. Assessed and voluntary contributions are not subject to these competition requirements. Below is the list of possible exceptions. Chapter 3.F.3 describes the procedures for approving and documenting the non-competition. Lack of advanced planning, rather than an unusual and compelling need, is not adequate justification for non-competition.

When a program or award is not competed, it is considered either:

- **Sole source:** one recipient organization is invited to apply for the funding opportunity.
- **Limited competition:** a limited number of organizations are invited to apply for the opportunity.

Non-competition could be justified in the following circumstances:

- Award amount will be $25,000 or under (unless part of a larger program worth over $25,000). A program is a group of related projects coordinated to achieve a specific result (for example Small Grants Program). A project is a specific endeavor to achieve a defined result with specific resources within a set timeframe (for example individual federal assistance awards).[4]

  For Public Diplomacy-funded programs, the following exceptions are allowed under 22 USC §1475h:
  - o   An award made under a statute that expressly authorizes or requires that a grant be made with a specified entity.
  - o   The terms of an international agreement or treaty between the U.S. government and a foreign government or international organization preclude full and open competition.
  - o   The recipient organization has developed expertise in the planning and administration of longstanding exchange programs important to U.S. foreign policy.

---

[4] See 18 FAM 301.4 Department of State Program and Project Design, Monitoring, and Evaluation

53

**AR 000065**

Not for Public Release
Department of State Federal Assistance Directive

> o        Full and open competition increases the cost of the program.

For all other (non-PD funded) programs:
> o        A legislatively-mandated award (i.e., a Congressionally mandated earmark for a specific recipient).
> o        Urgent/time-sensitive requirements (this criterion should not be utilized solely to obligate expiring funds).
> o        Recipient has unique approach or idea.
> o        Recipient has unique or exclusive capability.
> o        Competition needs to be limited to develop capabilities (e.g., developing in-country assistance partners).
> o        National security: the program is sensitive and advertising it publicly could put applicants or recipients at risk.
> o        Disaster assistance or disaster preparedness and emergency humanitarian assistance programs.
> o        Recipient is a Foreign Public Entity, such as a Public International Organization.

## F.3. EXCEPTIONS TO COMPETITION: DOCUMENTATION

Formal written approval is not required to document non-competition for awards $25,000 and under (unless the projects are part of a program valued at over $25,000).

For all other awards, requests for non-competition must be justified in writing and approved by the appropriate official, as described below. This requirement applies to both sole source awards and limited competitions.

The required template for justifying and approving non-competition is located at: https://usdos.sharepoint.com/sites/A-OPE/FA/SitePages/Waivers.aspx. A justification for noncompetition may be written for a program (or class of grants). The written justification must specify one or more of the exceptions listed in Chapter 2.F.2 and must include supporting evidence for that exception. Supporting evidence should be award-specific and reference applicable statutory authority.

Required approvals for non-competition are as follows. Bureaus/offices/posts may require additional approvals within their programs regardless of the amount of the award.

| Value of award or total value of program | Approval |
|---|---|
| Under $1M | GO |
| $1M up to $10M | GO's supervisor |

Non-competed awards or programs over $10M must be submitted to FAPD.  The issuing bureau/office/post should email the request for approval to fedassistancepolicy@state.gov   with a cc: to the FAPD desk officer. The email must include the following:

•        The anticipated award date

54

AR 000066

Not for Public Release
Department of State Federal Assistance Directive

- Whether Congressional Notification is required, and if so, if it has been obtained
- Documentation that the GO's supervisor has approved the justification
- A completed copy of the Open Competition Exemption Form
- A copy of the draft solicitation letter, if available

The FAPD desk officer will review the request for completeness and will forward to the appropriate approving official noted below.  Do not email the approving official directly; all requests for non-competed awards or programs over $10M must be submitted to FAPD.

| Value of award or total value of program | Approval |
|---|---|
| Over $10M up to $50M | Director, FAPD |
| Over $50M up to $75M | Director, Acquisitions Policy Directorate (M/GA/APD) |
| Over $75M for congressionally mandated recipients (earmarks) | Director, Acquisitions Policy Directorate (M/GA/APD) |
| Over $75M for other than congressionally mandated recipients (earmarks) | Senior Procurement Executive |

## F.4. SOLE SOURCE, LIMITED COMPETITION, AND UNSOLICITED APPLICATIONS

**Sole Source Process:**

When a sole source is justified, documented, and approved according to one of the exemptions listed above, a solicitation letter should be issued to the organization or individual, describing the application requirements and the program objectives and desired results. The solicitation should not be published on Grants.gov or on any other publicly available website. Application requirements (SAM.gov registration, proposal narrative, SF-424 forms, budget, etc.) are the same as for an application received through an open competition.

Once the application is received, it should be thoroughly reviewed as prescribed in Chapter 2. Conducting a merit review panel on large sole source grants is a best practice and ensures that the application and budget meet Department objectives and that proposed costs are reasonable.

**Limited Competition Process:**

Limited competition means requesting applications from a limited pool of specified applicants. Limited competition does not qualify as an open competition and requires approval as described in Chapter 2.F.3. The program office should justify the limited competition by explaining why and how the selected applicants were chosen, and why others were not selected to participate in the competition.

When a limited competition is justified, documented, and approved, a NOFO or solicitation letter should be developed. It is a best practice to use the NOFO format described in 2 CFR § 200 and in Chapter 2.F.5. In most cases, the NOFO should not be published on Grants.gov or any other publicly available website but should be sent directly to the selected applicants. Application

55

AR 000067

requirements (SAM.gov registration, proposal narrative, SF-424 forms, budget, etc.) are the same as for an application received through an open competition. A merit review panel should be convened as described in Chapter 2.H to select an applicant for funding.

**Unsolicited Applications:**

An unsolicited application is a written request for funding submitted on the initiative of the organization. Unsolicited applications are considered non-competitive and therefore should not be considered for funding unless a strong justification can be made for a sole source award. Bureaus/offices/posts should be cautious about informal outreach to organizations to generate applications, to reduce the appearance of impropriety in the selection process.

Bureaus/offices/posts may decide to fund an unsolicited application if the application aligns with mission or bureau strategic objectives and offers a unique approach or demonstrates a unique capacity. Occasionally, an unsolicited application might address objectives in an on-going open solicitation, such as an Annual Program Statement. In that case, the applicant could be asked to resubmit the application through the open announcement. If the application is re-submitted in accordance with the requirements of the open announcement and is evaluated against the same criteria as other applications, then that will meet the criteria for open competition, and no sole source justification would be required.

## F.5. DEVELOP THE NOTICE OF FUNDING OPPORTUNITY (NOFO)

The Department announces full and open competition through one or more of the following methods:

(1)     A **NOFO** is used to request award applications for a well-defined program area or activity under an assistance program. For a NOFO to qualify as full and open competition, it must be announced publicly, contain all the required announcement elements, and applications received must be subject to an impartial review and evaluation process.

(2)     An **Annual Program Statement (APS),** also known as a "rolling program announcement," is an open-ended, annual NOFO to generate competition for new awards. It is generally open the entire year and contains broad evaluation criteria. Applications are received on a rolling basis and are periodically evaluated against the evaluation criteria and awarded. Announcement via an APS encourages the submission of unique and creative methodologies while increasing the likelihood that the proposed projects are in line with relevant Bureau or Integrated Country Strategy objectives.

(3)     A **Statement of Interest (SOI)** is a two-tiered competitive process. The first announcement of funding opportunity requests applicants to submit an executive summary or concept paper, with or without corresponding budget information, for a specific program with broad evaluation parameters. The initial SOI must be announced publicly, and application packages made available to prospective

56

Not for Public Release
Department of State Federal Assistance Directive

applicants. After evaluation and review of the first-tier submissions, a second-tier competition is conducted where the highest rated applicants are contacted to submit full applications that will be reviewed and evaluated under more specific evaluation criteria.

Some bureaus/offices/posts may choose to use a combination of the methods above; for example, an Annual Program Statement/Statement of Interest hybrid. In this example, the Annual Program Statement would request responses using the two-tiered competitive process characteristic of a Statement of Interest.

**NOFO Required Format:**
Sample NOFO, APS, and SOI documents are available in the FAPD Toolkit. FAPD and/or the Office of the Legal Adviser (L) may be consulted in the review of announcements and subsequent award documents at the discretion of the GO.

The Department's Program Design and Performance Management Toolkit's Section 4.5—Using the Toolkit with External Implementers contains tools to help the Federal Assistance team design the NOFO, including identifying the expectations for applicants in program design and performance monitoring, and application review criteria for those areas. Bureaus may also have supplementary resources for developing a NOFO.

When developing a NOFO, the bureau/office/post should keep the following in mind:
- Be concise and use plain language
- Wherever possible, link to standard requirements and regulations (for example, Department of State Standard Terms and Conditions or 2 CFR § 200)
- Use cross-references between sections, including hyperlinks in electronic versions

A full and open competitive NOFO must contain, at a minimum, the following information, in the following order, as required in Appendix I to 2 CFR § 200—Full Text of Notice of Funding Opportunity:

(1) BASIC INFORMATION: Provide enough information to help the applicant make an informed decision about whether to apply. This section should include:
- Agency Name
- Funding Opportunity title
- Announcement type (whether this is the initial announcement or a modification)
- Funding Opportunity number, if applicable
- Assistance Listing Number(s)
- Funding details (total amount of funding, anticipated number of awards, expected value of each award – note that this may be a range)
- Key dates
- Executive summary (a brief description summarizing the program, target audience, and eligible recipients. Should not exceed 500 words)
- Agency contact information

57

**AR 000069**

Not for Public Release
Department of State Federal Assistance Directive

(2) ELIGIBILITY INFORMATION: including

- Specific eligibility information, including any factors or priorities that affect an applicant's or its application's eligibility for selection. Announcements must clearly identify the types of entities that are eligible to apply. If individuals are eligible to apply, this should be stated in the announcement. For example, if the program is limited to non-profit organizations, the announcement should say so. The Federal Assistance team should keep in mind that the definition of a non-profit organization under 2 CFR § 200.1 is broader than the definition found in 26 USC §501(c)(3) (2017) and could potentially include other organizations defined in 26 USC §501(c)(6) (2017) such as trade associations and social enterprises. Low-profit limited liability companies (L3Cs) are not generally considered non-profits. When drafting an opportunity, eligibility should be carefully considered. Applications from sources that are not included in the eligibility criteria will not meet the technical application requirements and therefore may not be included in the merit review process.
- If a bureau/office/post is considering allowing for-profit entities to apply, they should carefully review statutory authority and Chapter 2.E.2 on grants to for-profit entities.
- Cost-Sharing: Cost-sharing may be required (only if permitted by statutory authority), or it can be voluntary. The NOFO must state whether cost-sharing is required or voluntary and how it will be considered in the merit review process. In accordance with 2 CFR § 200.306, cost-sharing cannot be used as a competitive factor during the merit review of applications unless the funding announcement specifically addresses how it will be considered.
- Other U.S. government agencies, such as Department of Defense, are not eligible to receive grants from the Department, and should therefore generally not be allowed to apply under a NOFO. Funds may be transferred to other U.S. government agencies through non-grant mechanisms such as interagency transfers and agreements. Consult with FAPD for further information.
- U.S. state and local governments are eligible to receive awards from the Department. The most common awards of this type are grants or cooperative agreements to state universities.

The Federal Assistance team should consider country specific requirements when establishing eligibility criteria. In some countries, the organization may be required to obtain clearance from the local government or complete certain registration procedures prior to implementing a program. A country clearance or registration requirement could substantially delay the project or prevent the organization from initiating the award.

(3) PROGRAM DESCRIPTION: Full programmatic description of the funding opportunity. This section must align with higher level strategies (e.g. region/sector/country/bureau/NSS) and key points from situational analysis (e.g. information from risk, pol/econ, cost-benefit, and other assessments). The description should include a clear problem statement; program goals, objectives, and expected outcomes; a list of required indicators that will be used to measure the program's performance (include both Standard Foreign Assistance Indicators if foreign

58

AR 000070

assistance-funded and/or any relevant bureau-specific standard indicators); a preliminary list of plausible activities; and identify stakeholders, potential partners, and beneficiaries. This section must also specify anticipated substantial involvement if the awards will be cooperative agreements. This section should also include information on any program-specific unallowable costs. Section 3—Design a Program of the Department's Program Design and Performance Management Toolkit provides guidelines for developing clear and complete programmatic descriptions.

(4) APPLICATION CONTENTS AND FORMAT: There are several required components to this section, including application content and format.  See Appendix I to 2 CFR § 200—Full Text of Notice of Funding Opportunity for specifics.

Required components include:

- Content and Form of Application Submission (see Chapter 2.G.1 which describes required application forms);
- Unique Entity Identifier and System for Award Management (SAM.gov) requirements.

Funding Restrictions: This section should list any restrictions, if any, such as country restrictions on where the funding may be used. This section should also include information on special vetting requirements, as described in Chapter 2.J.

(5) SUBMISSION REQUIREMENTS AND DEADLINES: This section must tell applicants how to obtain application materials and must state the submission due date and time, as well as any penalties for late submission. Whenever possible, openly competed NOFOs and limited competitions should be open for applications for at least 60 calendar days, and the due date should not fall on a weekend or Federal holiday. The submission time should specify time zone, particularly for NOFOs issued from post. The Federal Assistance team may allow an application period shorter than 60 calendar days, but no funding opportunity should be available for less than 30 calendar days unless exigent circumstances are justified and approved in writing by the GO.

This section must also state clearly that each applicant (unless the applicant is an individual or has an exception approved by the Department—see Chapter 2.G.2) must:

- Be registered in the System for Award management (SAM.gov) before submitting its application;
- Provide a valid Unique Entity Identifier in its application; and
- Always continue to maintain an active SAM.gov registration with current information during which it has an active Federal award or an application or plan under consideration by a Federal awarding agency.

It also must state that the Department may not make a Federal award to an applicant until the applicant has complied with all applicable Unique Entity Identifier and SAM.gov requirements and, if an applicant has not fully complied with the requirements by the time the Department is

AR 000071

Not for Public Release
Department of State Federal Assistance Directive

ready to make a Federal award, the Department may determine that the applicant is not qualified to receive a Federal award and use that determination as a basis for making a Federal award to another applicant. See Chapter 2.G.2 for information on UEI and SAM.gov exemptions.

(6) APPLICATION REVIEW INFORMATION: This section must clearly address the criteria that the awarding program will use to evaluate applications. This includes the merit and other review criteria that evaluators will use to judge applications, including any numerical scoring or weighting, and any statutory, regulatory, or other preferences which will be applied in the review process. The merit review process should also be described here, as well as a brief description of the factors used for the risk assessment.

In accordance with Executive Order 14332, this section must state that in the event that two or more applications receive equivalent scores based on the evaluation criteria outlined in this Notice of Funding Opportunity, preference will be given to the applicant with the lower indirect cost rate. This preference will only be applied as a tie-breaking mechanism and does not supersede the primary evaluation criteria.

(7) AWARD NOTICES: This section must address what a successful applicant can expect to receive following selection. Bureaus/offices/posts which generally send a separate notice informing applicants that an application has been selected before making the Federal award should indicate here that the notification is not an authorization to begin performance. This section must also identify the administrative and national policy requirements the Federal awards may include. The announcement need not include all the terms and conditions of the Federal award but should refer to 2 CFR § 200 and to the Department Standard Terms and Conditions with a link to those documents. Providing this information lets a potential applicant identify the requirements with which it would have to comply if the application is successful. This section must also contain information on any programmatic and financial reporting requirements, so applicants can estimate the reporting burden post-award.

(8) POST-AWARD REQUIREMENTS: This section should provide information on administrative and policy requirements, so that an applicant can understand in advance the expectations if selected for award. This can include a link to the Department of State Standard Terms and Conditions and an overview of anticipated reporting requirements.

(9) OTHER INFORMATION: Optional. This section may include any additional information to help potential applicants, including bureau-specific proposal instructions and templates for items such as monitoring the performance of the award against its stated objectives.  To support adherence to the scope of work, 18 FAM 301.4-3 (B) requires that all programs, major projects, and foreign assistance funded projects have performance monitoring plans.  Performance monitoring plans can include the project's performance monitoring approach, including performance indicators of outputs and outcomes, baseline values, and annual targets; plans for monitoring context and emerging risks that may affect achievement of the project results; and learning activities, including knowledge capture.  Performance monitoring should be appropriate to the scope of the project. Bureaus may have templates that can be provided to the recipient to include in their proposal. Additionally, Section 4—Manage Performance of the Department's

60

AR 000072

Not for Public Release
Department of State Federal Assistance Directive

Program Design and Performance Management Toolkit provides guidelines and templates that can be shared with implementers for developing performance indicators, setting targets, and collecting performance data.

## F.6. ADVERTISE NOTICE OF FUNDING OPPORTUNITY

The required government-wide method for announcing NOFOs is Grants.gov, the single portal for applicants to find all Federal financial assistance opportunities. When an open competition is conducted for an award or program with total U.S. funding of less than $25,000, announcing on Grants.gov is encouraged but not required.

In addition to, but not in lieu of, announcing a NOFO on Grants.gov, information promoting the opportunity may be disseminated through other means, such as an embassy's website or via social media. Domestic and overseas programs may post a Funding Opportunity through MyGrants. To post a Funding Opportunity through MyGrants, see the Getting Started resources on the SAMS program website located at: https://almwebsite-usdos.msappproxy.net/sams/mygrants/getting-started.

**Note:** Applicants for overseas awards do not need to submit their applications through Grants.gov unless required by the NOFO. Applicants for domestic awards may submit applications through Grants.gov or MyGrants, as instructed by the NOFO.

## G. APPLICATION REQUIREMENTS AND SCREENING

Applications and supporting documents must be in English and in U.S. Dollars.

## G.1. MINIMUM REQUIREMENTS

All competed and non-competed applications should contain the following components. The NOFO (for open and limited competition) or the solicitation letter (for sole source applications) should specify that these items are required.

The application should at a minimum include the following:

- The Applicant's Unique Entity Identifier, unless the applicant organization has received an exception (see Chapter 2.G.2);
- Active registration in SAM.gov, unless the applicant organization has received an exception (see Chapter 2.G.2);
- Form SF-424—Application for Federal Assistance;
- Form SF-424 (Individual)—Application for Federal Assistance-Individual;
- Form SF-424A—Budget Information for Non-Construction Programs;

61

AR 000073

Not for Public Release
Department of State Federal Assistance Directive

- Form SF-424B—Assurances for Non-Construction Programs (Only if the representations and certifications have not been completed in SAM.gov). Click here on how to verify that an organization has completed the process in SAM.gov;
- Form SF-LLL—Disclosure of Lobbying Activities (**Note:** only required for organizations that engage in lobbying activities);
- Project Proposal; and
- Budget Narrative describing the budget request in detail.

**Note:** The SF-424, SF-424A and SF-424B forms are recommended but not required for Foreign Public Entities.

Certain entities may also be required to submit audit reports or include the cost of audits in their budgets. See Chapter 2.J.3 on audits for domestic and foreign organizations.

## G.2. UNIQUE ENTITY IDENTIFIER (UEI) AND SYSTEM FOR AWARD MANAGEMENT (SAM.GOV)

It is mandatory for all applicants to obtain a Unique Entity Identifier (UEI) and to register in the System for Award Management (SAM.gov), unless they meet the criteria for exception in this section. It is also mandatory for all subrecipients to obtain a UEI. A recipient may not make a subaward to a subrecipient unless that subrecipient has obtained and provided to the recipient a UEI. A subrecipient is not required to be registered in SAM.gov. This requirement:

- **does NOT** apply to individuals.
- **DOES** apply to domestic and foreign organizations, including non-profit, for-profit, and educational institutions.
- **DOES** apply to Foreign Public Entities, including Public International Organizations and foreign governments.
- **DOES** apply to all Federal financial assistance, including assessed and voluntary contributions.

See the System for Award Management help page for detailed instructions on how applicants request a UEI and register in SAM.gov.

**Alert:**
Potential applicants should be alerted that SAM.gov is a free government-managed website; applicants do not need to pay to have their organization registered. FAPD receives frequent reports that recipients are contacted by organizations posing as SAM.gov and threatening to cut off registration unless a fee is paid for registration or renewal. These emails are not coming from SAM.gov and should be reported to the Federal Bureau of Investigation, Internet Compliance Center IC3.

**Background:**

The Federal Funding Accountability and Transparency Act (FFATA) of § 2006 (Public Law 109- 282—Sept. 26, § 2006), requires public disclosure of data on all acquisition and assistance

62

AR 000074

Not for Public Release
Department of State Federal Assistance Directive

awards within thirty (30) calendar days of award. SAM.gov was designated by OMB as the central repository consolidating all publicly available data on Federal financial assistance. The UEI is a 12-digit alphanumeric number issued by SAM.gov and serves as the primary means of identifying and tracking financial assistance provided to organizations.

Only certain organizations are required to obtain a Commercial and Government Entity Code (CAGE, for domestic organizations) or a NATO Commercial and Government Entity Code (NCAGE, for overseas organizations) in order to register in SAM.gov. Organizations who choose "Financial Assistance Awards Only" as the purpose of their registration (meaning they will only apply for grants and cooperative agreements, not contracts or other types of funding), and who indicate that they will not apply to Department of Defense funding opportunities, do not need a CAGE/NCAGE for new registrations. Renewals of existing registrations may continue to require CAGE/NCAGE.  For more information, see the UEI and SAM.gov Frequently Asked Questions here.

**UEI and SAM.gov Exemptions:**

Individuals are always exempt from the requirement to obtain a UEI and register in SAM.gov unless they are operating a sole proprietorship or single member limited liability company.

Organizations meeting the criteria below may be exempted on a case-by-case basis from the requirement to register in SAM.gov and obtaining a UEI. GOs invoking one of these exemptions must document the official Federal award file with a justification indicating which exemption applies. A template exemption form can be found at: https://usdos.sharepoint.com/sites/A-OPE/FA/SitePages/Waivers.aspx.

The GO may only approve an exemption from the UEI or SAM.gov registration requirements for:

(1)     Any applicant or recipient, if the Federal awarding agency determines that it must protect information about the entity from disclosure if it is in the national security or foreign policy interests of the United States, or to avoid jeopardizing the personal safety of the applicant or recipient's staff or clients.

(2)     A foreign organization or foreign public entity applying for or receiving a Federal award or subaward for a project or program performed outside the United States valued at less than $25,000, if the Federal awarding agency deems it to be impractical for the entity to comply with the requirement(s). This exemption must be determined by the Federal awarding agency on a case-by-case basis while utilizing a risk-based approach and does not apply if subawards are anticipated.

(3)     Any applicant, if the Federal awarding agency decides that there are exigent circumstances that prohibit the applicant from receiving a unique entity identifier and completing SAM registration prior to receiving a Federal award. In these instances, Federal awarding agencies must require the recipient to obtain a unique entity identifier and complete SAM registration within 30 days of the Federal award date.

63

**AR 000075**

Not for Public Release
Department of State Federal Assistance Directive

**Note:** Once the 30-day period has lapsed, if the recipient is not registered in SAM.gov the GO must determine the appropriate action to ensure the recipient comes into compliance. This action might include suspending payments.

(4) An Overseas School (defined as a U.S. sponsored elementary or secondary school abroad participating in the Department of State's Consolidated Overseas Schools Assistance Program) and does not currently have a UEI number.

(5) Foreign organizations or foreign public entities receiving an award less than $500,000 that will be performed outside the United States may be exempted from completing full SAM.gov registration; however, the organization or foreign public entity must still obtain a UEI.

Per 2 CFR § 25.110, an exemption to the UEI / SAM.gov requirement should be rare.

Federal financial management and accountability regulations require use of UEI in all systems that manage Federal financial assistance. Therefore, it is important that recipient's UEI be correctly reflected in all systems, including MyGrants, the Global Financial Management System (GFMS), Regional Financial Management System (RFMS), and/or the Payment Management System (PMS). UEIs are required to enter grant records into MyGrants and for those records to be published to USASpending.gov successfully. Therefore, if the GO approves an exemption for a recipient organization to obtain the UEI, the GO must use LN9PU5M2YZN5 as the substitute UEI.

| Substitute UEIs | |
| --- | --- |
| Awards to Individuals | 1ND1V1DUALS1 |
| Awards to Organizations | LN9PU5M2YZN5 |

**Note:** required to Subrecipients are obtain a UEI, unless the criteria for an exemption are met (see Chapter 2.G.2). Subrecipients are not required to register in SAM.gov. However, this does not eliminate the requirement for the prime recipient to check SAM.gov and document that no active exclusions prevent the subrecipient organization from receiving Federal funding. Note that other vetting requirements described in the terms and conditions may apply.

**Creating New Recipient Records in MyGrants:**

For detailed instructions on creating new recipient records in MyGrants, see the MyGrants Getting Started page.

## G.3. APPLICATION SCREENING AND TECHNICAL ELIGIBILITY

Both competed and non-competed applications must be reviewed to ensure they are complete and meet the program's eligibility requirements. The NOFO for open and limited competitions must clearly define the considerations or factors that make an applicant or application eligible or ineligible for consideration. If an applicant fails to adhere to the application instructions or eligibility requirements, the funding office should consider that application technically ineligible, and the application should not be considered by the merit review panel for possible funding.

AR 000076

Not for Public Release
Department of State Federal Assistance Directive

Applicants whose applications are deemed ineligible should be informed as soon as those decisions are made, if possible.

## H. MERIT REVIEW OF APPLICATIONS AND RECIPIENT SELECTION

For a competition to qualify as full and open, applications received from the NOFO must be subject to an impartial merit evaluation by a review panel. Applications received in response to a limited competition must also be evaluated by a review panel. It is also a best practice to subject non-competitive (sole sourced) applications, option-year extensions, and cost amendment applications to a merit evaluation by a review panel. This will ensure that the quality of the application and budget has been fully reviewed.

Each bureau/office/post may develop its own procedures for the panel review process. Bureaus/offices/posts are invited to seek feedback and suggestions from FAPD on their panel review process.

### H.1. EVALUATION CRITERIA

The Federal Assistance team is responsible for convening the panel and developing the evaluation criteria used to evaluate applications. The evaluation criteria must be clearly described in the NOFO. Typical areas for evaluation include responsiveness of applications to the objectives and program goals stated in the NOFO, the overall quality of the application, capacity of the applicant organization to successfully implement the award program, and the level and realism of the proposed budget. The panel then reviews the applications against the evaluation criteria, generally using a written score sheet and/or a narrative critique. Each bureau/office/post is responsible for developing its own template.

### H.2. REVIEW PANEL MEMBERSHIP AND OPERATION

The Federal Assistance team decides the size and make-up of the panel, including whether program office staff and the panel Chair may be voting or non-voting members of the panel. A review panel should consist of an odd number of voting panelists (example: 3 to 5) excluding the Chair. Bureaus, offices and posts are encouraged to provide opportunities for a diverse group of merit review panel participants, including those representing underserved communities. Potential panelists can be selected from within the program office or bureau, other Department offices, overseas posts, or other government agencies. Contractors and members of the public or outside experts may serve as voting members of a panel, if the panel's funding recommendations are subject to further review and approval by a federal government employee. Furthermore, contractors should not comprise a majority of a selection panel. Making a final determination on a funding decision is considered an inherently governmental function (see Chapter 1.D.5); therefore, only federal government employees can serve in this specific capacity.

65

Not for Public Release
Department of State Federal Assistance Directive

Panelists must be impartial and possess enough expertise and knowledge of the program to be able to evaluate an application for its value, quality and likelihood of success. The program office conducting the analysis of each application may provide input during the panel process.

In order to ensure transparency, as well as an objective review and funding recommendation, the GO and GOR who will be assigned to execute and/or manage an award should not be voting members of the panel.

## H.3. CONFLICT OF INTEREST

Panelists are expected to avoid conflicts of interest that would compromise their ability to objectively handle their responsibilities. The bureau must make all efforts to identify potential conflicts of interest early in the competitive process. The bureau should request that each panel member sign a conflict-of-interest form once the applicant organizations are known, and prior to the panel review meeting. FAPD and the Office of Ethics and Financial Disclosure (L/EFD) have developed a "Conflict of Interest and Confidentiality" form that panelists can sign; this form is available in the FAPD Toolkit. If a bureau/office/post develops its own template, it must be cleared with the Office of Ethics and Financial Disclosure (L/EFD). If a panelist becomes aware of a situation that may give the appearance of a conflict of interest, the panelist must immediately disclose the matter to the official responsible for the review.

The following are examples of conflict of interest, but other situations could occur that would also create a conflict of interest:

- The application was submitted by a close friend or a relative of the panelist.
- A panelist reviewing an application was employed by the applicant organization within the past 12 months; or
- A key staff member of the applicant organization, who is listed in the application, worked directly with a panelist within the past 12 months.

## H.4. CONFIDENTIALITY

Discussions held during the panel meeting related to applicant organizations and grant applications are considered sensitive and must not be discussed with parties outside the Department. In addition, the information in the application (particularly the budget information and application concept) should be considered proprietary and should not be discussed with parties outside the merit review panel.

Publicly available Generative Artificial Intelligence (GenAI) services cannot be used to review concept notes, applications or proposals for Federal assistance awards submitted to the Department by non-federal entities, even if personally identifiable information has been redacted. Applications for Federal assistance awards include various types of sensitive, proprietary, or non-public information that should not be input into publicly available GenAI services, in order to protect such information from unauthorized release and to safeguard the integrity of the grant-making process.

AR 000078

Not for Public Release
Department of State Federal Assistance Directive

Panelists and others involved in the panel review process should sign a non-disclosure statement, to be kept on file by the bureau or post. As noted above, a "Conflict of Interest and Confidentiality" form is available in the FAPD Toolkit. If a bureau/office/post develops its own template, it must be cleared with the Office of Ethics and Financial Disclosure.

The bureau or post must maintain confidentiality by not releasing the names of the panelists to the public unless required by law. Meeting minutes, individual voting sheets, and application documents may be made public under a Freedom of Information Act request.

The bureau/office/post should not give applicant organizations information about other organizations that applied under the NOFO. After the Federal financial assistance has been awarded, the bureau/office/post may share the name of the selected organization, unless the award is sensitive and doing so would pose a risk to that organization.

## H.5. PANEL REVIEW PROCESS

The Chair should start the panel meeting by introducing the panelists and explaining the structure of the review panel meeting. The Chair should introduce each application and allow individual panelists to present a narrative critique, and the numerical scoring if a numerical scoring system was used. Panelists may also be asked to provide a Fund/Do Not Fund recommendation for each application. The panelists should share their evaluation sheets with the Chair before the conclusion of the panel meeting. Panelists may be allowed to revise their evaluations based on the discussions in the panel review meetings.

Following the panel review meeting, the bureau/office/post writes panel review minutes to document the strengths and weaknesses of each application and the recommendation for supporting or not supporting applications for award. The panel review minutes should also specify any recommendations for the applicants to strengthen the applications, or conditions that the applicant must meet before the application will be funded. The names of reviewers are redacted from internal memoranda and selection correspondence, and reviewer names are not made available to the applicant community in order to protect against adverse actions by applicants.

The panel's recommendations may be subject to a final review and high-level approval at the discretion of the bureau/office/post. The decision for the final award determination rests with the GO. A summary of the review panel's discussion and copies of written reviews are maintained in the official Federal award file.

**Note:** Panels may be conducted in person or virtually or a combination of both depending on the circumstances. This process should be outlined in the bureau/post standard operating procedures.

## H.6. NOTIFICATION TO SUCCESSFUL APPLICANTS

Successful applicants should be notified in writing. The notification should clearly state that the applicant has been conditionally selected for funding pending the GO's review and evaluation of risk and pending the availability of Federal funds. The notification should also describe any

67

**AR 000079**

Not for Public Release
Department of State Federal Assistance Directive

recommended improvements to the application, or any conditions that the applicant must meet before the award can be finalized. The bureau/office/post may request a revised application or budget but may not request any changes that would fall outside of the scope of the original NOFO.

At this stage, the bureau or post should ensure that the applicant is fully registered in SAM.gov (if applicable, see Chapter 2.G.2). The bureau or post may also begin registering the organization in any financial systems for payment.

## H.7. NOTIFICATION TO UNSUCCESSFUL APPLICANTS

The bureau or post should, if possible, wait to inform unsuccessful applicants until after the Federal award is issued. Once the award is issued, the bureau or post should notify unsuccessful applicants as soon as possible, ideally within 30 calendar days. (However, as mentioned above, applicants whose applications are deemed ineligible and therefore are not reviewed by the panel, should be informed as soon as the initial screening is complete.) Upon request, the unsuccessful applicant should be provided an explanation as to why the application was denied funding. These explanations are typically provided as verbal debriefs, rather than in writing. The unsuccessful applications should be maintained at the bureau/office/post in accordance with the office's official records disposition schedule (see Chapter 5.H). Unsuccessful applicants do not have the opportunity to appeal final funding decisions.

## H.8. ROLES AND RESPONSIBILITIES

To summarize, the bureau/post is generally responsible for:

- Developing evaluation criteria while developing the NOFO.
- Receiving applications.
- Conducting initial screening/reviews for technical eligibility.
- Establishing the review procedures and designing the score sheet based on the evaluation criteria.
- Selecting panelists.
- Providing the panelists with copies of the applications, NOFO; solicitation letter (if applicable); any application analysis; conflict of interest and non-disclosure forms, and score sheets one to two weeks prior to the panel date, if possible.
- Selecting a review panel chair/facilitator.
- Taking detailed notes during the panel discussion.
- Preparing panel minutes summarizing panelists' evaluations and recommendations for each application.
- Making a final selection based on the panel's recommendations.
- Maintaining all panel review documentation; and
- Notifying successful and unsuccessful applicants.

During the panel review, the Chair/facilitator is responsible for:

68

**AR 000080**

Not for Public Release
Department of State Federal Assistance Directive

- Collecting conflict of interest and non-disclosure forms and score sheets from panelists.
- Ensuring that panelists follow the rating criteria and provide sound, well-documented evaluation of applications.
- Ensuring that applications are not compared to each other, but evaluated on their own merit; and
- Ensuring that due consideration is given to each individual panelist for his/her input.

The Panelists are responsible for:

- Reading and familiarizing themselves with the applications and other support materials prior to the panel meeting.
- Identifying any conflict of interest that could preclude an unbiased evaluation.
- Treating all applications and budget information as sensitive and agreeing not to disclose information outside the panel.
- Evaluating each application and providing comments on the application that adhere to the evaluation criteria; and
- Understanding their evaluations will form the basis for decisions made on funding. Panelists do not necessarily recommend funding amounts.

## I. INITIATE THE OFFICIAL FEDERAL ASSISTANCE FILE

A complete official Federal assistance file is required for every award, regardless of size. Assessed contributions are exempt from this requirement. MyGrants is the official award file for all awards executed through these systems. The Grants Officer is responsible for ensuring that documents from each stage of the award lifecycle are uploaded to the official file. A checklist of documents typically found in award files is available on the FAPD SharePoint site.

## J. CONDUCT INITIAL DUE DILIGENCE AND VETTING

The Federal Assistance team must conduct several due diligence steps as part of the risk analysis, prior to finalizing an award. For a complete description of risk analysis and mitigation, see Chapter 2.K. Below are the main steps involved in conducting due diligence and vetting applicants for Federal financial assistance. However, this list is not exhaustive and may vary by program.

**Note:** Other clearance requirements may apply to your program. If you are unsure, consult with the funding office and/or the Office of the Legal Adviser.

69

**AR 000081**

Not for Public Release
Department of State Federal Assistance Directive

## J.1. SYSTEM FOR AWARD MANAGEMENT (SAM.GOV)

A SAM.gov verification search must be performed prior to award on all proposed recipients, including individuals and Foreign Public Entities. The resulting screenshot or download of the entity information must be uploaded to the official award file.

The Federal Assistance team must check SAM.gov no more than 30 calendar days prior to the date the GO intends to sign the award.

### Active Exclusion:

The GO must verify, prior to award, that the potential recipient is not currently excluded from receiving U.S. government funding. This verification is accomplished through SAM.gov. A GO must not issue an award to an organization or individual recipient with an active exclusion.

### Delinquent Federal Debt:

The SAM.gov check will also reveal whether the recipient is in debt to the federal government. For example, the recipient may be delinquent in Federal taxes. If SAM.gov shows that the potential recipient has delinquent Federal debt, the GO should contact the recipient for information on the nature of the debt, and whether steps have been taken to settle the debt or to remove the alert from SAM.gov. The GO may decide to issue an award to a recipient with delinquent Federal debt, depending on the explanation provided by the recipient.

**Note:** Certain additional restrictions may apply before funding can be awarded to a recipient with unpaid Federal taxes. Contact L/LFA and FAPD for further information.

### Important:
An award to an organization that is exempt from SAM.gov registration requirements (see Chapter 2.G.2), or an award to an individual still requires a SAM.gov check to ensure that no exclusions have been entered. If no record exists for either an organization or individual, the "no record exists" screenshot should be saved in the official Federal award file. If the check results indicate an active exclusion, the award may not be issued.

### Steps for Checking SAM.gov:
Members of the Federal Assistance team must have a login.gov account to search for entities on the SAM.gov website. When creating an account, users must use their state.gov email address.

To search for a recipient, go to the entity information section of SAM.gov; log into the system; and enter a UEI or organization name to begin searching.

A quick search may be initiated by searching the entity's name, UEI, or CAGE/NCAGE Code. It is possible that a name search will result in multiple entities. The most effective query is to use the entity's UEI or CAGE / NCAGE Code. Once the entity's information is displayed, it is important to verify the correct entity by cross referencing the name and UEI.

70

**AR 000082**

Not for Public Release
Department of State Federal Assistance Directive

Unless the entity meets one of the exemptions in Chapter 2.G.2, the entity must have an active SAM.gov registration with no active exclusions. An award cannot be issued to an organization with active exclusions.

The entity registration information must be included in the official award file. A screenshot of the organization's active status can be uploaded, or a download of the entity registration information can be included in MyGrants. Take the following steps to download the entity's information:

- Search for the entity;
- Click on the Entity's name to enter their entire profile;
- Click on "Actions"
- Select Download
- Click .pdf and Download.

**Example:**



*Figure 2: SAM.gov screenshot*

## J.2. RESPONSIBILITY/QUALIFICATION RECORDS (formerly FAPIIS.gov)

The Federal Awardee Performance and Integrity Information System (FAPIIS) was a government-wide, publicly accessible online system that was established to track contractor and recipient misconduct and performance. Information in FAPIIS was input by government agencies through the Contract Performance Assessment Reporting System (CPARS.gov). While CPARS.gov is still used to enter information, as of March 2023, FAPIIS.gov records are now called Responsibility/Qualification. Responsibility/Qualification records are part of an entity's information in SAM.gov and therefore, can be viewed in SAM.gov.

Prior to issuing an award over $350,000, the GO must check the proposed recipient's performance records in the Responsibility/Qualification records in SAM.gov. This must include

71

**AR 000083**

Not for Public Release
Department of State Federal Assistance Directive

considering information available through SAM.gov regarding the applicant and any immediate highest-level owner, predecessor (i.e., a non-Federal entity that is replaced by a successor), or subsidiary, identified for that applicant in SAM.gov, if applicable. Therefore, a GO must verify with the proposed recipient as to whether they have a parent company or have any subsidiaries and check their performance records in SAM.gov as well.

Derogatory information about the proposed recipient in the Responsibility/Qualification records in SAM.gov does not automatically disqualify the applicant from receiving the award. The GO must consider this information while evaluating the risks posed by the entity.

A PDF or screen shot of the entity's Responsibility/Qualification results page in SAM.gov must be saved in the official Federal award file.

**Steps for Checking Responsibility/Qualification Records in SAM.gov:**

- Log in to SAM.gov and search using the entity's UEI.
- Click on the "Responsibility/Qualification" tab.
- Review any available documents and upload pertinent files to the official Federal award file in MyGrants. This should also include a screenshot of the search result.

Derogatory information that is found in the Responsibility/Qualification records in SAM.gov may have been entered by either the government or the recipient themselves. The government enters derogatory information including terminations for default, terminations for material failure to comply, and determinations that the recipient is not qualified (see Chapter 4.H.2). If the entity has active Federal awards with a total value greater than $10,000,000, the entity must self-report criminal, civil and/or administrative proceedings in connection with a Federal award that resulted in a conviction or finding of fault or liability.

## J.3. REVIEWING AUDITS

The GO must review all required audits, and any other available audits, for an organization as part of the risk assessment and due diligence process.

FAFM is the Department's Key Management Single Audit liaison (KMSAL). For questions about single audits or management letters for single audits, contact FAFM at fafmgrantaudits@state.gov.

Below is separate guidance for audits of:

- Domestic organizations above the audit threshold (except for-profit entities)
- Domestic organizations below the audit threshold (except for-profit entities)
- Domestic for-profit entities
- Foreign non-profit and for-profit organizations
- Foreign Public Entities, including Public International Organizations

**Domestic Organizations above the Audit Threshold (except For-profit Entities):**

72

AR 000084

Not for Public Release
Department of State Federal Assistance Directive

The GO should, as part of the risk assessment, check the Federal Audit Clearinghouse (FAC) if the GO believes the organization meets the audit requirement in 2 CFR § 200, Subpart F— Audit Requirements. Specifically, 2 CFR § 200.501 requires domestic non-Federal entities that expend $1,000,000 or more in Federal financial assistance during their fiscal year to have a single or program-specific audit conducted for that year. In addition, the entity must report the collected audit data elements on the form SF-SAC and submit it to the FAC. Any findings such as material weaknesses, significant deficiencies, or material noncompliance are reported on the SF-SAC.

As part of the pre-award review, GOs should retrieve the domestic non-Federal Entity's latest form SF-SAC from the FAC. Even if the organization submits an audit with their application, the GO must verify that a more recent audit is not available in the FAC. To do this, the GO searches for the domestic non-Federal entity on the FAC site using the entity's name or Employer Identification Number (EIN). No logon is required to perform this publicly available first level search.

The SF-SAC has multiple tabs that include general information, audit information, listing of the entity's Federal awards, and audit findings. The second page of the SF-SAC contains the Financial Statements Summary, which discloses if there were any material weaknesses or significant deficiencies.

If questions 2, 3, 4, or 5 on the SF-SAC have "Yes" answers, the GO should request additional information from the applicant in order to determine if the finding would be detrimental to the entity's ability to complete the award.

**Example:**

73

**AR 000085**

Not for Public Release
Department of State Federal Assistance Directive



*Figure 3: SF-SAC example*

## Domestic Organizations below the Audit Threshold (except For-profit Entities):

If the GO is satisfied that the organization does not meet the criteria in 2 CFR § 200, Subpart F—Audit Requirements, then the organization should not be required to submit an audit or audited financial statements in conjunction with its application. If the organization does submit an audit or audited financial statements, the GO should review the audit for any irregularities prior to making a final risk determination.

## Domestic For-profit Entities:

Per 2 CFR § 600.101(b), the Department does not apply 2 CFR § 200, Subpart F—Audit Requirements to for-profit organizations. However, the GO should request that the for-profit entity provide a copy of audited financial statements as part of the pre-award review process. The audit should be reviewed for any irregularities prior to making a final risk determination. If the for-profit entity does not have audited financial statements, a financial audit may be required at the GO's discretion, and the cost of the required audits may be charged as an allowable direct cost to the award.

**Note:** As outlined in Chapter 2.E.2, assistance awards can only be made to for-profit entities if allowed under the statutory authority of the funding.

## Foreign Non-profit and Foreign For-profit Organizations:

74

Not for Public Release
Department of State Federal Assistance Directive

Although 2 CFR § 200, Subpart F—Audit Requirements are not applicable, all foreign non-profit and foreign for-profit organizations that expend $1,000,000 or more in Department of State funds in the organization's fiscal year, whether as a prime or a subrecipient, are required to undergo a recipient-contracted single or program-specific audit annually.

The NOFO must alert potential applicants to this requirement.  The cost of required audits may be charged either as an allowable direct cost to the award or included in the organization's Negotiated Indirect Cost Rate or de minimis indirect costs. Foreign organizations must submit their audits to the GO. The GO is responsible for forwarding a copy of the audit to FAFM (FAFMGrantAudits@state.gov) which tracks the status of questioned cost and other audit findings in an annual matrix. As stated in the Department Standard Terms and Conditions: "The audit must be independently and professionally executed in accordance with Generally Accepted Government Auditing Standards (GAGAS) either prescribed by a government's Supreme Audit Institution with auditing standards approved by the Comptroller General of the United States, or in accordance with the host country's laws or adopted by the host country's public accountants or associations of public accountants, together with generally accepted international auditing standards. However, foreign entity audits consistent with International Standards for Auditing or other auditing standards are acceptable with the GO's approval."

When the foreign recipient or subrecipient organization expends less than $1,000,000 in its fiscal year, the bureau/office/post must, as part of its annual review of risk, assess whether a financial and/or a program audit should be performed to verify financial accountability. The NOFO must alert potential applicants to this review and possible requirement. If the GO determines that an audit is required, the cost of the required audit may be charged either as an allowable direct cost to the award or included in the organization's Negotiated Indirect Cost Rate or *de minimis* indirect costs.[5]

**Foreign Public Entities, including Public International Organizations:**

Foreign Public Entities may choose to submit audits as part of the pre-award process, but this should not be a mandatory requirement for such organizations.

## J.4. LEAHY LAW VETTING REQUIREMENTS

Section 620M of the Foreign Assistance Act (22 U.S.C. 2378d(a)), the State Leahy Law, prohibits Department foreign assistance funds from supporting foreign security force units if the Secretary of State has credible information that the unit has committed a gross violation of human rights. A similar Leahy Law which applies to DOD-funded assistance to foreign security forces is outside the scope of this directive.

Under the State Leahy Law, "No assistance shall be furnished under [the Foreign Assistance Act] or the Arms Export Control Act [22 USC 2751 et seq.] to any unit of the security forces of a

---

[5] Information on single audit requirements and authorities can be found in 4 FAM 690.

75

Not for Public Release
Department of State Federal Assistance Directive

foreign country if the Secretary of State has credible information that such unit has committed a gross violation of human rights."

This covers all programs funded by the Foreign Assistance Act as well as all programs funded by the Arms Export Control Act. This includes Foreign Military Financing (FMF), International Military Education and Training (IMET), Peacekeeping Operations (PKO), International Narcotics Control and Law Enforcement (INCLE), Nonproliferation, Anti- Terrorism, Demining, and Related Programs (NADR), Economic Support Fund (ESF), and other accounts.

Contact State-Leahy@state.gov to determine if a specific program not listed is covered by the Leahy law.

Compliance with the Leahy Law is required for any proposed award that will provide training or assistance to foreign security forces or personnel, including the armed forces, reserves, police, border guards, customs police, prison guards, and other units or individual members of units authorized to use force, detain, or arrest. Any domestic or overseas office contemplating an assistance program which may be affected should reach out to the Office of Foreign Assistance Oversight (F/FAO) via State-Leahy@state.gov to obtain guidance.  If necessary, consult with F/FAO, and the Office of the Legal Adviser.

The Leahy Law provides an exception if the Secretary of State determines and reports to the appropriate Committees that the government of such country is taking effective steps to bring the responsible members of the security forces unit to justice (see 22 USC §2378d(b) (2017)). Only the Secretary, or an official with delegated authority from the Secretary, may make that determination. Assistance planners should contact State-Leahy@state.gov if they believe a unit may be eligible for that exception.

It is the responsibility of the bureau or post funding the award to:

- Include information about Leahy vetting requirements in the NOFO, to inform proposed applicants of the requirement.
- Coordinate the vetting of the units or individuals proposed for training or any other assistance, in order to check for credible information regarding the commission of gross violations of human rights by such unit or individual; and
- Include the Specific Award Condition titled "State Department Leahy Vetting Requirements" in the award agreement, unless alternate arrangements for compliance have been made in coordination with FAPD and F/FAO.

## J.5. TERRORIST FINANCING RISK MITIGATION

Consistent with Department guidance , Department bureaus must assess the likelihood that the funds or Department funded activities, goods, services, training, expert advice or assistance, or other benefits to be provided, could inadvertently or incidentally benefit terrorist organizations or their members or supporters, and put in place appropriate risk mitigation measures to mitigate such risk. This requirement applies whether the programs are implemented directly by the Department, through contracts, grants, or cooperative agreements (collectively, "awards"), or

76

Not for Public Release
Department of State Federal Assistance Directive

through inter-agency transfers implemented by other U.S. government departments and agencies. The relevant bureau's Assistant Secretary is ultimately responsible for ensuring the bureau assesses these risks, as well as for the final decision about what mitigation measures are appropriate for any particular program. The Bureau of Administration, Office of Critical Environment Risk Management (A/GO/SP/CERM, formerly the Risk Analysis Management Office, A/OPE/AQM/CECAS/RAM), does not conduct or oversee such risk assessments.

If, following its evaluation of the risk, the bureau determines that there is a risk that Department funds or Department-funded activities may inadvertently or incidentally benefit terrorist organizations, their members, or their supporters, prior to the obligation of funds and engaging in or funding the underlying activities, the bureau should consider whether counterterrorism (CT) namecheck vetting is an appropriate risk mitigation measure. CT namecheck vetting entails ensuring certain individuals identified by the implementing office (e.g., key individuals employed by implementing organizations, individual beneficiaries, etc.) regardless of their country of incorporation, ownership, or citizenship, seeking U.S. government funds or benefiting from U.S. government funded programs have completed the Bureau of Administration's CT namecheck vetting program.

CT namecheck vetting is conducted by the Bureau of Administration, Office of Critical Environment Risk Management (A/GO/SP/CERM, formerly A/OPE/AQM/CECAS/RAM). For a current list of vetting program countries, process, forms, and secure portal see the link to Risk Analysis and Management Namecheck Vetting on the A/GO/SO/CERM SharePoint site.

A/GO/SP/CERM does not conduct namecheck vetting of government-to- government assistance, contributions to Public International Organizations, nonproliferation programs, other U.S. government agencies, or the National Endowment for Democracy. Note that RAM may conduct namecheck vetting of beneficiaries and sub-implementers of programs implemented by other U.S. government agencies and the National Endowment for Democracy.

If CT namecheck vetting is determined to be an appropriate risk mitigation measure, the bureau must use the A/GO/SP/CERM established program and the appropriate provisions and clauses must be included in the solicitation or NOFO and resulting award.

Bureaus are not authorized to develop their own CT vetting program or use another agency's CT vetting program.

The bureau is responsible for determining award eligibility once CT namecheck vetting is complete.

The GO is responsible for ensuring the appropriate vetting provisions and clauses are included in the solicitation or NOFO and award, and for coordinating the vetting process among the bureau, RAM, and the offeror(s) or applicant(s). The GO shall not make an award until CT vetting is complete. Additional information on CT vetting can be found in 14 FAM 247.

**Procedure:**

77

AR 000089

When the bureau has determined that RAM CT vetting is an appropriate risk mitigation strategy for a particular program, the bureau must complete and submit Form DS-4221, "Risk Analysis Finding," to RAM.

RAM will contact those applicants listed in the competitive range on the Form DS-4221 directly via email and provide instructions on completing the Form DS-4184, "Risk Analysis Information," and how to enter the data into the Secure RAM Portal.

The GO and/or program officer is responsible for ensuring that organizations in the competitive range are timely in submitting completed Form DS-4184 information into the secure RAM portal.

Once the Form DS-4184 data is entered in the Secure RAM Portal, RAM vets the Personally Identifiable Information (PII) from the Form DS-4184 against relevant databases for ties to terrorist organizations, their members, or supporters. Vetting may also be conducted prior to award of subcontracts or subawards if the requirement is included in the statement of work or terms and conditions of the award.

When the CT namecheck vetting is complete, RAM advises the bureau whether vetting uncovered derogatory information on any of the organization's key individuals or other individuals subject to vetting.

RAM does not determine whether a bureau can or should issue an award to an offeror or applicant; the bureau is responsible for determining whether to proceed with the award based on the results of the vetting, which may indicate derogatory information was found on one or more individuals. Therefore, prior to initiating CT namecheck vetting, the bureau should provide guidance regarding the process for reviewing derogatory results, determining whether to proceed with the award, and any additional steps that may be necessary.

The bureau may determine the derogatory information found during vetting does not preclude engaging in the proposed program. In such cases, a decision memorandum from the Assistant Secretary (or equivalent official responsible for the program) or designee should be submitted to the GO and RAM documenting the decision.

When vetting is the determining factor not to issue an award, the Department will provide appropriate notice to the applicant. Within seven calendar days after the Department's notification, an applicant may request in writing that the Department reconsider the determination. This request may include a written explanation, legal documentation, or any other relevant written materials. Within seven calendar days after the Department receives the request for reconsideration, the Assistant Secretary for the bureau responsible for the program will determine whether the applicant's additional information merits a revised decision. The determination of whether reconsideration is warranted is final.

Vetting is valid for one year unless individuals holding positions or roles that have been vetted change or there is a change to the PII of such individuals, in which case such individuals must be

AR 000090

submitted again for vetting. Additionally, if the award period of performance extends beyond one-year, individuals in the positions or roles that the bureau has identified for vetting must be submitted again for vetting.

## J.6. PROHIBITION ON CERTAIN TELECOMMUNICATIONS AND VIDEO SURVEILLANCE SERVICES OR EQUIPMENT

In 2018, Public Law 115-232, Section 889 placed a prohibition on federal funds paying for certain covered telecommunications equipment and video surveillance services.

This prohibition also does not apply to Foreign Public Entities (which includes Public International Organizations). In addition, the Department currently has a waiver in place through fiscal year 2028 that waives this prohibition for public diplomacy or foreign assistance-funded awards.

If the award will be funded with a source other than public diplomacy or foreign assistance funds, the GO must include a mandatory provision in the Award Provisions document. The provisions informs recipients that they are prohibited from obligating or expending federal assistance funds for covered telecommunications equipment and video surveillance services as described in 2 CFR § 200.216.

The policy does not prohibit the execution of federal awards to recipients that use covered telecommunication equipment or video surveillance services, so long as federal funds do not cover the prohibited expenses. Additional information can be found on the FAPD SharePoint site in an FAQ document.

## J.7. NEVER CONTRACT WITH THE ENEMY

The Never Contract with the Enemy Act, implemented in 2 CFR Part 183, prohibits funding persons or entities that are actively opposing United States or coalition forces involved in a contingency operation in which members of the Armed Forces are actively engaged in hostilities. The requirement applies only to grants and cooperative agreements that are performed outside the United States and exceed $50,000 and are in support of a contingency operation in which members of the Armed Forces are actively engaged in hostilities.

To comply with Never Contract with the Enemy, the GO must check the current list of prohibited or restricted persons or entities in the SAM.gov Exclusions, which is standing policy for all awards. If a person or entity is on the current list of prohibited or restricted persons or entities in SAM.gov Exclusions the GO must not make an award.

If the GO becomes aware that a recipient has used award funds, either directly or indirectly, to the enemy the GO must take action including restricting all future awards to that recipient and/or terminating any active awards with that recipient. The GO must notify the recipient in writing regarding its decision to restrict all future awards and/or to terminate an award, as well as report the termination in CPARS. See Chapter 4.H.2 for information on terminations.

AR 000091

Not for Public Release
Department of State Federal Assistance Directive

Should the GO restrict a recipient from future awards and/or terminate an award for the purposes of this policy, contact FAPD for further guidance. The Department is required to publicly report all such restrictions and/or terminations.

## K. CONDUCT A RISK ASSESSMENT

All bureaus/offices/posts involved in awarding Federal financial assistance must take a proactive approach to detecting potential risks and mitigating the impact prior to making an award and throughout the award lifecycle.

The Department emphasizes reducing the potential for fraud, waste and abuse while focusing on improving performance and program outcomes.

The Government Accountability Office (GAO) Standards for Internal Control in the Federal Government (GAO/AIMD-00-21.3.1) calls on Federal agencies to identify risks as part of a positive internal control environment. To implement these standards, bureaus/offices/posts are responsible for developing risk management policies, procedures, and practices and integrating them with their operations.

A risk analysis should include:

- **Risk Identification** — to identify potential problems, including programmatic, organizational and country/region concerns ("What can go wrong?").
- **Risk Assessment** — to estimate the significance of an identified weakness or concern, the likelihood of a problem developing, and the possible consequences ("How big is the risk?").
- **Risk Mitigation** — to reduce the effects of possible risks ("How to address the risk?").
- **Risk Monitoring** — to continually evaluate risks through the life of the project ("Where, when, how, frequency and by whom can risk best be monitored?").

Three categories of risk must be assessed:

- *Organizational* — The capability and integrity of the applicant to implement the award:
  o    Financial stability and financial management systems.
  o    Internal management systems and controls, including processes for screening and selection of subawards.
  o    History of performance, including conformance to the terms and conditions of previous Federal awards.
  o    Reports and findings from audits.
- *Programmatic* — the degree to which the program activities are sensitive or difficult to achieve, and how heavily the program relies on subawards. Also

80

AR 000092

> consider whether potential events may have a strategic impact on the Department's ability to achieve its objectives, or an impact on the reputation and public perception of the Department.
>
> - ***Country/Region*** — the environment where the award activities will be performed.

Section 2, "Conducting a Situational Analysis" of the Department's Program Design and Performance Management Toolkit offers useful risk management tools.

**Risk Assessment Procedure:**

All bureaus/offices/posts are required to conduct a risk assessment on all awards. The risk management process must be documented in the standard operating procedures of each bureau/office/post and must include completion of the FAPD risk assessment worksheet (or one approved by FAPD) by a member of the Federal Assistance team. Note that for awards over the simplified acquisition threshold ($350,000), the GO must consider the information available through the Responsibility/Qualification records in SAM.gov regarding the applicant and any immediate highest-level owner, predecessor (i.e., a non-Federal entity that is replaced by a successor), or subsidiary, identified for that applicant in SAM.gov, if applicable. Therefore, a GO must verify with the proposed recipient as to whether they have a parent company or have any subsidiaries and check their performance records in SAM.gov as well.

GOs are responsible for verifying, prior to award, that the required risk assessment has taken place.

**Note:** For assessed contributions (see Chapter 3.K.3), the risk assessment process is not required but is encouraged.  Voluntary contributions (see Chapter 3.K.2) require a risk assessment using the FAPD worksheet or, as is the case with any risk assessment, bureaus/offices/posts may use their own risk assessment template provided it has been approved by FAPD. See the chapters on assessed and voluntary contributions for additional information.

The risk assessment worksheet, found in the FAPD Toolkit:

- Is mandatory for all grants, cooperative agreements, and letter grants. The completed risk assessment must be uploaded to the official award file in MyGrants.
- Must document the sources reviewed to assess past performance.
- Incorporates the award specific monitoring plan (see Chapter 2.O).
- The worksheet is a template for use by bureaus/offices/posts to adapt, as needed, particularly as related to sensitive programs or challenging operational environments. The worksheet includes weighted calculations that may be changed as needed to reflect a greater emphasis on either country risk (e.g., in conflict areas) or organization risk (e.g., in particularly stable, low risk environments). Any deviations to the risk assessment worksheet or monitoring plan, aside from making changes to the weighted value, must be approved in writing by FAPD.

AR 000093

Not for Public Release
Department of State Federal Assistance Directive

- The risk assessment template is a tool to assist the Federal Assistance team in determining the level of risk. Federal assistance personnel should not rely solely on the score generated by the template but also ensure that the level of risk is appropriate based on a factual analysis of the program, organization, and environment.

**Note:** Bureaus/offices/posts may develop and use their own risk assessment template, provided the template is reviewed and approved in writing by FAPD. Bureaus also may have specific risk assessments for their region or sector that may be required in addition to the FAPD risk assessment worksheet.

**Pre-Award Phase:**
A thorough review of risk at the pre-award stage will improve the likelihood of successful award performance. Bureaus/offices/posts should consider risk factors during the merit review of applications and should seek to mitigate those risks before the award is issued.

Prior to issuing a Federal award, the bureau/office/post is required by 31 USC §3321 (2017); 41 USC §2313 (2017); and 2 CFR 180 to review information available through any OMB designated repository of eligibility or financial integrity information. This includes:

- Responsibility/Qualification records, (formerly Federal Awardee Performance and Integrity Information System (FAPIIS) (see Chapter 2.J.2))
- The excluded parties list in SAM.gov.

**Note:** SAM.gov must be checked for all Federal awards, regardless of dollar amount, type of award, or type of applicant.

**Award Phase:**
The GO makes the final determination on the award and must be fully satisfied that the applicant has the capacity to adequately perform on the award and manage federal funding. Based on pre-award due diligence and review, the GO may:

- Issue the award.
- Reduce the amount of the award.
- Not issue the award.
- Conduct a pre-award survey; or
- Award with "specific award conditions."

If there is a significant change in security circumstances in the country where the award is being implemented (such as a suspension of U.S. Mission operations) the Federal Assistance team must conduct a new risk assessment and monitoring plan within 90 calendar days. The GO is responsible for verifying that this has been done. In these circumstances, a new worksheet must be completed and uploaded to the official award file in MyGrants. If applicable, this assessment should include an analysis if the award should be terminated as the award no longer effectuates the program goals or Department priorities.

AR 000094

Not for Public Release
Department of State Federal Assistance Directive

**Post Award Phase:**

A risk assessment must be reviewed annually and updated as necessary for awards whose period of performance is longer than 12 months. The annual risk assessment review must be documented on the official award file in MyGrants, and monitoring plans should be modified if needed to reflect any changes to the level of risk for the agreement.

A new risk assessment is required prior to issuing a cost amendment.

Bureaus/offices/posts are required to monitor and assess the recipient's compliance with award provisions and ability to administer the award. This includes reviewing program and financial reports, and if necessary, conducting in-depth monitoring to detect fraud or potential problems. The bureau/office/post risk mitigation process must also include procedures for promptly resolving findings from audits or site visits.

## K.1. RISK MITIGATION AND SPECIFIC AWARD CONDITIONS

As a result of the risk assessment, the GO may determine that an organization or project poses a high risk.

The following factors could contribute to an overall assessment of high risk:

- Recipient's lack of experience in managing U.S. government (or other) awards.
- Recipient has a history of failure to comply with the terms and conditions of a Federal award.
- Recipient has inadequate management/financial systems in place.
- Recipient has inadequate management controls in place.
- Findings in single audit or other audits identify issues that could affect the implementation/outcome of the award.
- High dollar amount or complexity of the award.
- High profile program or highly sensitive project.
- Recipient or award activity is in an unusual or difficult operating or political/security environment; or
- Recipient is using multiple and/or new subrecipients.

When such risks are identified, bureaus/offices/posts should mitigate by implementing additional oversight activities, such as:

- Additional scrutiny of potential award recipients prior to issuance of awards.
- More frequent monitoring, including on-site visits both at the recipients' headquarters and at the location of award activity; and
- Increased scrutiny of financial and program reports.

When a high risk is identified, the bureau/office/post may also impose specific award conditions in the award provisions, such as:

- Requiring payments on a reimbursement basis rather than advance payments.

83

Not for Public Release
Department of State Federal Assistance Directive

- Requiring recipient to show evidence of acceptable performance on one phase before allowing the recipient to proceed to the next phase.
- Requiring additional, more detailed financial reports.
- Requiring additional or more frequent progress reports.
- Requiring the non-Federal entity to obtain technical or management assistance; or
- Establishing additional prior approvals.

If these requirements are imposed, they must be included as "Specific Award Conditions" in the award provisions of the award agreement. The recipient should also be notified in writing of the reason for the additional requirements.

If the risk is related to the organization's performance or capacity, and not to a programmatic or country-wide risk, the GO must notify the recipient prior to imposing the specific condition(s) to explain:

- Nature of the corrective action(s) needed
- Reason for the specific condition(s)
- Time allowed for completing the corrective action(s), and
- Method for requesting reconsideration of the additional requirements.

The GO must promptly remove any specific conditions once the conditions that prompted them have been satisfied.

A Corrective Action Plan (CAP) may also to be developed to ensure adherence to the Specific Award Conditions (see Chapter 4.H.1). The purpose of both the CAP and Specific Award Conditions is to help the award recipient correct problems and successfully implement the award activity.

## L. UNAUTHORIZED COMMITMENTS

An unauthorized commitment occurs when a U.S. government employee promises to bind the federal government without appropriate authority to do so. Unauthorized commitments frequently occur due to simple error or a lack of understanding of the Department's established roles and responsibilities in managing a Federal award. Bureaus/offices/posts must strive to prevent unauthorized commitments, in order to prevent unauthorized obligations and possible deficiencies in appropriations.

Examples of unauthorized commitments include, but are not limited to:

- A GO makes a financial commitment beyond the limit designated in his/her warrant, and/or without the issuance of an award or amendment.

84

**AR 000096**

Not for Public Release
Department of State Federal Assistance Directive

- A GO signs an award or amendment without authority to do so, because their warrant validity was not renewed due to failure to complete refresher training and/or update their ServiceNow profile as required.
- An employee provides the recipient with either verbal or written notification that implies the existence of, or makes a commitment to issue, a Federal award without an established funding obligation.
- An award or a subsequent amendment to an award is signed by an employee who is not the warranted GO.
- An employee other than the warranted GO for the award gives verbal or written direction, implies, or makes a commitment to a recipient that causes a recipient to incur costs exceeding those which were obligated and/or authorized in the award or undertake activities not required by the award terms and conditions. This can include but is not limited to directing a recipient to perform work or deliver a service that is not approved in the original award or directing the recipient to modify the agreement's activities that incur additional costs or changes the existing budget in any way.

Unauthorized commitments may violate Federal law, are inconsistent with the Department's Federal financial assistance policy, and can carry severe consequences, including revocation of the GO's warrant authority. If the Department chooses not to ratify an unauthorized commitment, the entity or person that acted based on the commitment may seek to hold the employee personally liable.

The responsible bureau/office/post management official and GO must inform program personnel not to make such commitments, actively seek to prevent unauthorized commitments by providing appropriate policy guidance on this subject, mitigate opportunities for violation, and address violations when they occur, including referring employees for administrative disciplinary actions. Department employees may be held personally liable for any unauthorized commitment if adequate justification does not exist to prove that there was an authorized award.

Ratification cannot occur unless and until the U.S. government official with authority to ratify an unauthorized commitment confirms enough funding is legally available for obligation.

The following is the process for ratifying unauthorized commitments:

- Post unauthorized commitments that do not exceed $10,000 must be signed by the GO, approved by the GO's supervisor, and ratified by the DCM.
- Post unauthorized commitment that exceed $10,000 must be signed by the GO, approved by the GO's supervisor, DCM, and bureau Executive Director, and ratified by the Senior Procurement Executive.
- Domestic bureau unauthorized commitments that do not exceed $10,000 must be signed by the GO, approved by the GO's supervisor, and ratified by the bureau Executive Director.
- Domestic unauthorized commitment that exceeds $10,000 must be signed by the GO, approved by the GO's supervisor and bureau Executive Director, and ratified by the Senior Procurement Executive.

85

Not for Public Release
Department of State Federal Assistance Directive

**Important:**
The term "unauthorized commitment" refers specifically to commitments made by U.S. government employees. However, contractors and other non-USG employees involved in the federal award process should be strongly cautioned against any communications with recipients, which could be misconstrued as a commitment on the part of the federal government.

**Exception:**
When awarding funds to FPEs, including PIOs, in support of the FPE's annual and multiyear budgets, trust funds, or multi-donor projects, the authorized official may not have control over the period of performance for these on-going budgets. The period of performance can begin on or before the date the bureau's authorized official signs the award instrument.

## M. SUBMIT DECISION MEMORANDUM TO AUTHORIZING OFFICIAL

Some bureaus/offices/posts require an approved Decision Memorandum, signed by the designated authorizing official, prior to issuing an award. It is the responsibility of the Federal Assistance team to follow the operating procedures of their bureau/office/post.

## N. NEGOTIATE THE AWARD PROVISIONS

The Award Provisions and Department Standard Terms and Conditions for Federal awards contain detailed information and requirements about the award. These documents, which are attached to the DS-1909 or DS-1909I, are negotiated by the Federal Assistance team and the applicant in the pre- award stage. The negotiation may be carried out by multiple members of the Federal Assistance team, but the GO has the responsibility of confirming and finalizing all negotiations with the applicant. There is more to award negotiations than the budget.

This section discusses the major sections of the award provisions, but there may be other areas that require negotiation as well.

### N.1. SUBSTANTIAL INVOLVEMENT

When the GO has determined that a Cooperative Agreement is the appropriate instrument for the Federal award, the elements of the Department's substantial involvement should be negotiated and agreed upon with the potential recipient prior to award issuance. The agreed-on areas of substantial involvement must be included in the award provisions document.

See Chapter 2.A for examples of substantial involvement.

86

AR 000098

Not for Public Release
Department of State Federal Assistance Directive

## N.2. SCOPE OF WORK

The applicant should include a proposed scope of work (or program plan) in their application, which should be in line with the goals and objectives outlined in the NOFO. During negotiations, the Federal Assistance team should negotiate the scope to clarify the purpose of the award to ensure the award will achieve the goals in the NOFO.

The final negotiated scope of work should be aligned with the strategic objectives of the bureau/office/post. It should include an expected timeline for approved activities, milestones, expected outputs, and clear performance goals and indicators. The scope may also include program-specific requirements.

The scope will serve as a standard for measuring the performance of the recipient. It should be included in the original application or uploaded as a separate document to the Pre-award section of MyGrants. It should also be summarized in the "Objectives" section of the Award Provisions, and/or attached to the award.

To support adherence to the scope of work, 18 FAM 301.4-3 (B) requires that all programs, major projects, and foreign assistance funded projects have performance monitoring plans.

There may be bureau specific templates or templates in the Grant Toolkit that may be used and provided to the recipient to include in their proposal. Additionally, Section 4—Manage Performance of the Department's Program Design and Performance Management Toolkit provides guidelines and templates that can be shared with implementers for developing performance indicators, setting targets, and collecting performance data.

## N.3. BUDGET

The applicant must submit a proposed budget on the form SF-424A (not required for applicants in their initial response to a Statement of Interest opportunity), accompanied by additional narrative detail.

The GO is responsible for evaluation of a potential recipient's budget to confirm that costs are in accordance with applicable regulations. The GO should understand the project purpose and ensure the scope is reasonably proportional to amount funded. The GO must review standard direct and indirect budget categories and work with organizations to ensure that the budget accurately captures the project's anticipated costs.

The Department has adopted 2 CFR § 200, Subpart E—Costs Principles in determining the basic considerations of allocability, allowability, reasonableness and prior written approval for all items of costs. The items of costs are applicable to both domestic and foreign organizations.

The Federal Acquisition Regulation (FAR) at 48 CFR §30 (2020)—Cost Accounting Standards and 48 CFR §31 (2019)—Contract Cost Principles and Procedures takes precedence over the cost principles in 2 CFR § 200, Subpart E—Costs Principles for Federal awards to U.S. and

AR 000099

Not for Public Release
Department of State Federal Assistance Directive

foreign for-profit entities, as well as for certain specific large NGOs identified in Appendix VIII to 2 CFR § 200—Nonprofit Organizations Exempted From Subpart E.

2 CFR § 200 does not apply to assistance awards to Individuals or to Foreign Public Entities, including PIOs. However, for those awards, the 2 CFR § 200, Subpart E—Costs Principles should be used as a guide when analyzing proposed budgets submitted during the pre-award process. Additionally, these principles are a valuable tool in assessing the financial risk of the organization and of the project during its implementation.

It is important to note that the budget is an estimate. Once implementation of the award begins, the recipient has flexibility to adjust the approved budget (within the overall authorized amount) to most effectively carry out the program. The cost principles in the CFR are based on the fundamental premise that the recipient is responsible for effectively administering the Federal award through sound management practices, and that the recipient assumes responsibility for properly administering Federal funds.

The accounting practices of the recipient must be consistent with the cost principles and must provide for adequate documentation to support costs charged to the Federal award.

The total costs (including cost share) of all Federal awards must be allowable, reasonable, and allocable.

For costs to be allowable, they must meet the following general criteria:

- Be necessary and reasonable for the performance of the Federal award and be allocable to the award.
- Conform to any limitations or exclusions set forth in the cost principles or the award.
- Be consistent with the recipient's own policies and procedures that apply uniformly to both federally financed and other activities.
- Be treated consistently. For example, a cost may not be assigned to a Federal award as a direct cost if any other cost incurred for the same purpose in like circumstances has been allocated to the Federal award as an indirect cost.
- Be in accordance with generally accepted accounting principles (GAAP).
- Not be included as a cost or used to meet cost sharing or matching requirements of any other federally financed program in either the current or a prior period.
- Be adequately documented.

A cost is considered reasonable if it is not higher or substantially different from the type and amount a prudent person would incur under similar circumstances. The question of reasonableness is particularly important when the non-Federal entity is predominantly Federally funded. 2 CFR § 200 lists several considerations to help determine reasonableness, including:

- Whether the cost is generally recognized as necessary for the operation of the non-Federal entity or the performance of the Federal award.

88

AR 000100

Not for Public Release
Department of State Federal Assistance Directive

- The restraints imposed by factors such as sound business practices and arm's length bargaining.
- Market prices for comparable goods or services for the geographic area.
- Whether the individuals concerned acted with good judgement, considering all possible circumstances.
- Whether the recipient significantly deviates from its established practices and policies regarding such costs, which may unjustifiably increase the Federal award's cost.

A cost is <u>allocable</u> to the Federal award if the goods or services involved are chargeable to the Federal award. This standard is met if the cost:

- Is incurred specifically for the Federal award.
- Benefits both the Federal award and other work of the non-Federal entity and can be distributed in approximate proportions.
- Is necessary to the overall operation of the non-Federal entity and is assignable in part to the Federal award in accordance with the cost principles.

**Important:**  The Department of State does not place a ceiling on cost categories or specific items of cost.

## N.3.a. DIRECT COSTS

There are eight direct cost categories in a Federal award. They are:

(1)  **Personnel:** This category includes the salaries and wages for all non-Federal entity personnel who will be working on the project. The budget narrative should indicate the base salary and time each person will spend on the project. The narrative should also include any method used to arrive at the requested amount.

**Note:** To clarify a concern often raised by posts, recipient organizations may include personnel costs to cover salaries of current employees, if the time charged to the program is deemed reasonable. Personnel costs included in assistance awards are not limited to new personnel hired specifically to work on the program.

(2)  **Fringe Benefits:** Fringe benefits are allowances and services provided by employers to their employees as compensation in addition to regular salaries and wages. Fringe benefits include, but are not limited to, the costs of leave (vacation, family-related, sick, or military), employee insurance, pensions, and unemployment benefit plans. These costs may be derived from historical costs or calculated as a percentage of salaries and wages. If the costs are calculated as a percentage of salaries and wages, this percentage will need to be justified by the entity's written internal policy or documented on their Negotiated Indirect Cost Rate Agreement (NICRA).

AR 000101

Not for Public Release
Department of State Federal Assistance Directive

(3)    **Travel:** This category includes domestic and international travel costs. The budget narrative should indicate who will travel, where, and why, and should include estimated air fare (or other mode of transportation), accommodations, meals and incidental expenses, and other costs such as conference fees, visa expenses, and inoculations. If the travel locations are not yet finalized at the time of application, the GO may use discretion in accepting a notional budget, to be finalized during the period of performance once the locations are identified.

(4)    **Equipment:** Under the OMB 2024 CFR Revisions, the definition of equipment has changed for awards and cost amendments issued after October 1, 2024. Equipment is now defined as tangible personal property with a purchase price of $10,000 or more and having a useful life of more than one year. If equipment is on the proposed budget, it is important to determine if it is necessary to the project, if it is reasonable to purchase instead of rent the equipment, and if the entity has adequate internal property standards. See Chapter 3.J on requirements, including disposition requirements, for equipment purchased under a grant agreement. The recipient must, at a minimum, provide the equivalent insurance coverage for real property and equipment acquired under a grant with Federal funds as the recipient does for its own property/equipment. Note that the previous definition threshold for equipment ($5,000) applies for all awards issued prior to October 1, 2024, that have not been cost amended or amended to apply the OMB 2024 CFR Revisions – follow guidance in FAD v8. series for these awards.

(5)    **Supplies:** This category includes all tangible personal property other than those described as equipment. A computing device is a supply if the acquisition cost is less than $10,000, regardless of the length of its useful life. It is important to confirm that the proposed supplies are necessary to the project and if the entity has adequate internal property standards. See Chapter 3.J on requirements, including disposition requirements, for supplies purchased under an assistance award. During the grant period, if the Department retains an interest in the supplies, including materials and computing devices, the recipient must not use supplies acquired under a Federal award to provide services to other organizations for a fee that is less than private companies charge for equivalent services, unless specifically authorized by Federal statute.

(6)    **Contractual:** This category includes both contracts and subawards. The contracts or subawards must be necessary for the award and the recipient must have the capability and internal policies to manage subawards. It is also important to understand the difference between a contract and a subaward. The recipient should include the budget breakdown for any proposed subawards or contracts for the GO's review.

        o    A contract is for the purpose of obtaining goods and services for the recipient's own use and creates a procurement relationship. A consulting agreement with a consultant or contractor is generally considered a contract.

        o    A subaward is provided to a subrecipient to carry out a portion of the Federal award. A beneficiary of a program is not considered a

90

**AR 000102**

Not for Public Release
Department of State Federal Assistance Directive

subrecipient. A subaward may be provided through any form of legal agreement, including an agreement that the prime recipient entity considers a contract.

(7)    **Construction:** Department policy restricts the use of Federal awards for construction purposes. For additional information, see Chapter 2.E.3.

(8)    **Other Direct Costs:** Other directs costs are any costs not included in the other categories. This category may include the entity's operating expenses that are directly linked to the award but not included as an indirect cost.

## N.3.b. INDIRECT COSTS

Indirect costs are those that have been incurred for common or joint objectives and cannot be readily identified with a final cost objective. Indirect costs are not allowable on awards to individuals. All allowable costs for awards to individuals must be direct costs.

Indirect costs do not generally include the costs of personnel who work for the recipient organization and are working directly on the project.

Indirect costs, often called overhead, or facilities and administrative costs, may only be charged to a Federal award that is subject to 2 CFR § 200, Subpart E when:

- The applicant has a current Negotiated Indirect Cost Rate Agreement (NICRA) from a Federal agency (described below in greater detail); or
- The applicant elects to charge a de minimis rate of 15% of modified total direct costs (MTDC), which is allowable if the organization does not have a current agreement.

**Note:** The de minimis rate may be used indefinitely and a recipient is not required to submit documentation or "proof" of indirect costs when using the de minimis rate.

The OMB 2024 CFR Revisions increased the de minimis rate to 15% of MTDC.

Awards to which the OMB 2024 CFR Revisions do not apply will continue to use the previous 10% de minimis rate – see FAD v8 series for guidance.

If the recipient does not have a NICRA and elects not to use the de minimis rate, identified "overhead costs" may be broken out by individual line item (e.g., electricity, accountant fees, etc.) and charged as direct costs. However, these must be on a cost allocated basis. For example, if the award project accounts for 20% of the organization's work, only 20% of the electricity, accountant fees, etc. should be charged as a direct cost to the grant.

**Negotiated Indirect Cost Rate Agreement (NICRA):**

Organizations may negotiate a NICRA with the Federal agency that provides most of their Federal funding (their "cognizant agency"). For recipients, whose cognizant agency is the

91

Not for Public Release
Department of State Federal Assistance Directive

Department, the Department of Interior's Office of Indirect Cost Services, negotiates and issues Indirect Cost Rates on behalf of the Department. The Department's liaison in GA/FAM/FAO is the first point of contact for determining if the Department is the recipient's cognizant agency. Inquiries and questions should be sent to AQM-NICRA@state.gov.

The GO must accept an applicant's NICRA and may not ask or require applicants to reduce their NICRA rates, unless required by Federal statute or regulation. However, organizations may choose to voluntarily reduce the amount of NICRA charged to the award. Documentation of this voluntary reduction should be recorded by the GO and uploaded to the official Federal award file in MyGrants.

**15% de minimis Rate:**

Per 2 CFR 400.414, a recipient that has never had a NICRA may elect to recover indirect costs by charging up to 15% of Modified Total Direct Costs under their budget. The recipient may use the 15% *de minimis* rate indefinitely. This rate may also be used by a recipient that previously had a NICRA but no longer has a current agreement. The GO must ensure that recipients are applying the 15% rate to Modified Total Direct Costs (MTDC), as defined in 2 CFR § 200.1 and not to the total budget amount. The MTDC base excludes equipment, capital expenditures, charges for patient care, rental costs, tuition remission, scholarships and fellowships, participant support costs and the portion of each subaward in excess of $50,000.

15% of MTDC is the maximum allowable, but anything below 15% is acceptable if voluntarily offered by the applicant.

If an award has been issued utilizing the *de minimis* rate and the recipient subsequently negotiates a NICRA, the GO may consider amending the award to reflect the new NICRA rate. A recipient who intends to negotiate a NICRA must inform the GO during the application period that they plan to negotiate a NICRA, or are in the process of doing so, and would like to amend the award in the future after a rate is finalized.  Once the recipient obtains a rate, the GO must evaluate the NICRA and administer a budget realignment while only applying the new rate to those costs incurred during the effective period of the NICRA. The NICRA cannot be applied to costs incurred during a period of performance that is prior to the effective date of the new rate.

**For-profit entities:**
For-profit entities may have a formally established overhead or General and Administrative (G&A) rate, which should be considered when determining indirect costs on an award. For-profit entities should not be asked to apply the 15% *de minimis* indirect rate: the Department does not apply 2 CFR § 200, Subpart E, which established the 15% *de minimis* rate, to for-profit entities. Instead, for-profit recipients who do not have a formally established overhead or G&A rate should allocate indirect costs into the appropriate direct cost categories, as described in Chapter 2.N.3.a.

**Foreign Public Entities:**

92

AR 000104

Not for Public Release
Department of State Federal Assistance Directive

Many PIOs will have a fixed indirect rate, which has been agreed to by member states, and which generally should be accepted by the GO. This indirect rate is not considered a NICRA nor is it limited by the 15% *de minimis* rate, which does not apply to FPEs.

## N.3.c.  NON-FEDERAL SHARE OF COSTS (COST SHARE)

The non-Federal share of costs, frequently called "cost share" or "matching costs," refers to that portion of the project or program costs not borne by the federal government. This may include cash and third-party in-kind contributions. These costs must reflect the realistic capacity of the applicants and any third-party contributors.

A bureau/office/post may require applicants to propose cost share, if this requirement is consistent with the program and statutory authorities. The use of cost-share as a merit review factor is discouraged. For federal research grants, cost share is not permitted. If cost share is required, only applicants who propose cost share will be eligible to apply. The NOFO must clearly state whether cost share is required and must specify the types of cost share that will be considered acceptable.

Cost sharing amounts proposed by recipient organizations are approved and incorporated as part of the allowable budget items. Per 2 CFR § 200.306, items that are proposed for cost share must be allowable per 2 CFR § 200, Subpart E—Costs Principles. If the applicant proposes cost sharing or if the award requires cost sharing, the recipient must provide the minimum amount of cost sharing as stipulated in the recipient's budget approved by the GO.

If the approved budget contains cost share, the DS-1909 must indicate the non-Federal amount, and the award provisions must contain a standard provision describing the recipient's responsibility regarding cost share, and what will occur if the recipient does not meet the cost share requirement stipulated in the approved budget. The GO has the option to reduce its share in proportion to the cost share stipulated in the approved budget or hold the recipient accountable for the amount specified in the approved budget.

The recipient must maintain records to support all cost share expenditures, and the reports are subject to audit. When warranted, in accordance with the risk assessment and monitoring plan, the GO and GOR should perform expense sampling. This sampling should verify that expenses, including cost share, are supported and incurred within the period of performance. The recipient must also report the amount of cost sharing they have contributed to a project on the SF-425 financial status report and SF-270 payment requests.

## N.3.d. PROGRAM INCOME

Program income is income earned by the recipient that is directly generated by a supported activity or earned as a result of the award. Examples of program income include ticket sales for events funded through an award, fees paid by beneficiaries for services performed, the use or rental of real or personal property acquired under an award, the sale of items made under an award, license fees and royalties on patents and copyrights, and interest on loans made with award funds. Interest earned on advances of Federal funds is not program income.

93

**AR 000105**

Not for Public Release
Department of State Federal Assistance Directive

If the GO anticipates that program income will be earned during an award, the award provisions must contain one of the following clauses instructing recipients in how the income should be used:

- Added to the overall program and used to further eligible project objectives.
- Used to finance the non-Federal share (cost-share) of the project.
- Deducted from total project costs, to determine the net allowable costs on which the Federal share of costs is based.

If the award provisions do not specify which method to use:

- Institutions of Higher Education (IHEs) and non-profit research institutions: The addition method will be used.
- For all other entity types: Deduction is the method that will be used. Recipients must obtain prior approval from the GO to use the addition or cost-share method if not specified in the award provisions.

The recipient has no obligation to the federal government regarding program income earned after the end of the award project period, unless specified otherwise in the Notice of Award.

### N.3.e.  COMMON BUDGET PROBLEM AREAS

- **Personnel and labor rates:** To determine whether personnel rates charged directly to an award are reasonable, GOs should use good judgment and knowledge of local conditions and may ask the recipient for supporting documentation including contracts or salary comparisons. The Department does not have a salary cap for personnel or consultants, nor is there a Department- wide cap on honoraria. Bureaus and programs may have internal caps on salaries and honoraria.

- **Travel costs, including per diem and business class travel:** Travel performed under a Federal award is not subject to the Federal Travel Regulation (FTR), but it is subject to the "Fly America Act" 49 USC §40118 (2017). However, in the absence of an acceptable, written non-Federal entity policy regarding travel costs, the rates and amounts established under 5 U.S.C. 5701-11, ("Travel and Subsistence Expenses; Mileage Allowances"), or by the Administrator of General Services, or by the President (or his or her designee) pursuant to any provisions of such subchapter must apply to travel under Federal awards (48 CFR 31.205-46(a)).Regulations regarding the travel of employees of recipient organizations are at 2 CFR § 200.475, and include restrictions on the use of business class airfare. Travel of participants and consultants (speakers or experts who are not employees of the recipient organization) is not covered under 2 CFR § 200.475, and therefore the restrictions on business class travel do not apply. While it is up to the GO to determine whether business class travel is an appropriate and

94

**AR 000106**

Not for Public Release
Department of State Federal Assistance Directive

reasonable use of Federal funds under an award, approval of business class travel is discouraged. In all cases, travel paid for with Federal award funds remains subject to the "Fly America Act." Note that recipients are not eligible for GSA-negotiated City Pair airfares.

- **Travel of U.S. federal government employees under a grant to a recipient, including other U.S. government agency employees:** Occasionally, a recipient will propose using grant funds to pay for the travel of a U.S. government expert. This is not generally permitted. Prior to allowing the recipient to use grant funds to fund the travel of federal government employees, the GO should consult with the Office of the Legal Adviser to determine whether the travel is allowable under the Dual Compensation Act, and whether there are any other ethical or appropriations-related restrictions. If the proposed expert is with another agency outside the Department, the proposed expert should also check with his/her own Federal agency's legal and ethics offices.

- **Prizes:** Are allowable if they have a direct and specific programmatic purpose and are included in the federal award (2 CFR § 200.438).   A prize should not be an end in itself. but one means within a broader strategy. Consult OMB M-10-11 for guidance on the Use of Challenges and Prizes to Promote Open Government for further guidance.

- **Exchange rate fluctuations:** Grants Officers are not allowed to establish a fixed exchange rate in an award. Currency must be converted on the date of payment to the recipient, so an award with multiple payments could have multiple exchange rates. 2 CFR § 200.440 allows for "cost increases for fluctuations in exchange rates" subject to the availability of funding. Prior approval is not required every time the exchange rate changes and an award is charged, but approval of exchange rate fluctuations would be required when the change results in the need for additional funding, or the increased cost results in the need to significantly reduce the scope of the project. If funding is available, GOs have the discretion to award a cost amendment to a grant or cooperative agreement to an organization to cover exchange rate fluctuations. 2 CFR § 200 does not contain guidance on how recipients should track currency exchange rate gains and losses when converting local currency. This will depend on the recipient's own internal accounting methods.

## N.4. SUBAWARDS

Recipients may enter into subawards with other entities to accomplish the project outlined in the award. The primary recipient is responsible for monitoring and providing oversight of the subrecipient's performance and expenditures. Adequate documentation of the subrecipient's compliance with award terms and conditions must be maintained by the primary recipient and made available to the GO upon request. This includes the subaward selection methodology and any relevant policies the prime recipient has regarding subawards and subaward monitoring.

AR 000107

Not for Public Release
Department of State Federal Assistance Directive

The recipient is responsible for ensuring the terms and conditions flow down to the subrecipient organization and are included in the subaward agreement. The flow down of terms and conditions will depend on the type of subrecipient. 2 CFR § 200.101 contains a guide to applicability and flow-down to different types of awards. The GO does not need to review the subaward agreement; however, the GO may always request a copy of a subaward as part of routine monitoring just as the GO can request other records throughout the course of the project.

When reviewing the initial application, the GO should review the subaward's budget, narrative, and scope of work and ensure that they are uploaded to the MyGrants award file.

If the budget is not available at the time of the initial application, or the subrecipient has not yet been selected at the time the prime award is signed, the prime award may be signed with the requirement that the subaward budget, narrative, and scope of work be submitted for review prior to work commencing under the subaward. The recipient is responsible for ensuring that subaward is administered in accordance with the relevant terms outlined in the 2CFR § 200.

When appropriate, the Federal Assistance team's monitoring of the recipient should include confirming that the recipient is following its own procedures for screening subrecipients for subawards, and that the recipient is properly monitoring and reporting on subawards.  This may include evaluating each subrecipient's risk of noncompliance with federal statutes, regulations, and the terms and conditions of the subaward for purposes of determining the appropriate subrecipient monitoring, which may include consideration of factors such as the subrecipient's prior experience; previous audits, whether the subrecipient has new personnel or new or substantially changed systems; and the extent and results of federal awarding agency monitoring (i.e., if the subrecipient also receives federal awards directly).

Monitoring to ensure recipients are compliant with these requirements may include, but is not limited to, a review of recipient policy and procedures in the pre-award phase, reviewing the recipient's documentation of the subrecipient selection process during a post-award site visit, or periodic sampling of recipient records related to subrecipient screening and selection.

Monitoring recipients' compliance with procedures for screening for past performance when selecting subawards should be conducted annually and upon issuance of any cost amendments.

**Note:**

- Subrecipients are required to obtain a UEI unless the criteria for an exemption are met (see Chapter 2.G.2). Subrecipients are not required to register in SAM.gov. However, this does not eliminate the requirement for the prime recipient to check SAM.gov and document that no active exclusions prevent the subrecipient organization from receiving Federal funding. Note that other vetting requirements described in the terms and conditions may apply.
- In accordance with 2 CFR § 200.333, a GO may provide written approval for a recipient to issue subawards based on fixed amounts up to $500,000, provided that the subawards meet the requirements for fixed amount awards in 2 CFR § 200.201.  Note that this language is specific to fixed amount **subawards**. A GO

96

**AR 000108**

Not for Public Release
Department of State Federal Assistance Directive

could never approve a subaward larger than the total value of the award itself. For example, a $1 million cooperative agreement could request approval from the GO for a $500k fixed amount subaward.

- The Department does not have a direct legal relationship with subrecipients at any tier.  The GO is responsible for ensuring that the prime recipient is monitoring its subrecipients effectively. Any issues that that GO identifies with the performance of subrecipients should be brought to the attention of the prime recipient to resolve.

## N.5. REPORTING REQUIREMENTS

Performance and financial reporting are required for all grants and cooperative agreements to non-FPE organizations and are an integral part of the monitoring plan. (See exceptions to reporting requirements for Fixed Amount Awards, Awards to Individuals, and Awards to Foreign Public Entities.) The frequency of reporting must be negotiated and included in the award provisions. The frequency of reporting must be no less frequently than annually nor more frequently than quarterly except in unusual circumstances, for example where reporting is necessary for the effective monitoring of the award or could significantly affect program outcomes, or when required under an established Corrective Action Plan.

Reporting schedules may be customized, for example, to coincide with project milestones or events. Standard (non-FAA) grants and cooperative agreements to non FPE-organizations must have a final performance and financial report.

The following reporting period dates are typically used for quarterly reports:

- January 1 through March 31 — report due April 30

- April 1 through June 30 — report due July 30

- July 1 through September 30 — report due Oct 30

- October 1 through December 31 — report due Jan 30

Quarterly and semi-annual financial and program interim reports should be submitted no later than 30 calendar days after the end of each reporting period. Annual financial and program reports should be submitted no later than 90 calendar days after the end of each reporting period. The reporting period dates for both financial and programmatic reports should be the same. The GO must provide the recipient with the full amount of time to submit reports as required by 2 CFR § 200. Recipients must be given 120 calendar days after the project or grant period end date to submit final program and financial reports.

**Financial Reporting:**

AR 000109

Financial reports must be submitted on the Federal Financial Report form SF-425. The SF-425 is the only authorized form for financial reporting. The only exception to this is Overseas Schools participating in the Department of State's Consolidated Overseas Schools Assistance Program, which report on the DS-2028. Financial reports must be collected with the frequency required by the terms and conditions of the Federal award, but no less frequently than annually and nor more frequently than quarterly except in unusual circumstances such as when specific conditions have been imposed on the recipient. The Federal Assistance team may not request, as a general requirement, detailed financial reporting in any other form or format. If more detailed financial reporting is required, it must be included as a specific condition in the Award Provisions per 2 CFR § 200.208.

**Note:** Award recipients not paid through PMS will submit the SF-425 form. The SF-425 form must be signed and certified by the recipient's authorized certifying official (note that it is up to the recipient to determine who the authorized certifying official is; also note that this official might be different from the official who signed the DS-1909).

Recipients paid through PMS will complete and submit an electronic version of the SF-425 through the PMS automated system.

PMS will automatically prompt the recipient to file a quarterly financial report, unless the recipient's account is specifically set up as a non-reporting "B" type account. The recipient is only required to submit the reports according to the schedule agreed to in the award provisions, which may be different from the prompts received from PMS. Depending on the schedule, the recipient may need to complete the SF-425 manually and submit directly to the GO, rather than through PMS.

**Performance Reporting:**

All performance reports must indicate the FAIN, period of performance, reporting period end date, reporting frequency (quarterly, interim, semi-annual, annual, final) and a detailed description of program progress.

As appropriate, reports should communicate accomplishments during the reporting period, as compared to the stated performance goals and objectives included in the original award. There is no approved government-wide format for performance reports. The awarding office should include details in the award provisions (specifically, in the section titled "Additional Bureau/Post Specific Requirements") on the type of information that should be included in the report.

Performance reports must be signed by an authorized representative of the recipient organization or by the recipient if the award is to an individual. Note that for organizations, it is up to the recipient to determine who the authorized representative is; also note that this representative might be different from the representative who signed the DS-1909.

The performance report must include the following statement:

AR 000110

Not for Public Release
Department of State Federal Assistance Directive

*"By signing this report, I certify to the best of my knowledge and belief that the report is true, complete, and accurate."*


## N.6. PAYMENTS

2 CFR § 200.305 requires advance payment if the recipient has:

- written procedures and practices that minimize the time elapsing between the transfer of funds to the recipient and disbursement by the recipient; and
- financial management systems that meet the standards for fund control and accountability as established in 2 CFR § 200.302.

If advance payments are authorized, the amount of the advance payment should be limited to the immediate cash needs for the recipient to conduct the approved and scheduled activities of the award. Domestic recipients generally draw down funds on an as-needed basis.

Payments may also be made on a reimbursement basis; for example, if this is how the recipient requests payments, if there are concerns about the recipient's financial systems, or if the GO has established a specific condition in the award requiring payment on a reimbursement basis.

With the exception of Fixed Amount Awards (which include a milestone payment schedule), reimbursements /advances are based upon business needs to cover costs associated with project activities.  Except in unusual situations or for small awards to individuals, recipients should not be given 100% of the award funds up front.

The post-award payment approval process is discussed in detail in Chapter 4.C.


## N.7. BRANDING AND MARKING

The Department has designated mandated uses of the U.S. flag in conjunction with established Department logos, seals, and markings for appropriately highlighting and identifying programs and initiatives funded by the Department.  To efficiently use Department resources and cohesively identify as U.S. government entities, all bureaus, missions, posts, programs, etc. must adhere to the Department's Brand System both in internal and external messaging.  The Department's Brand System is managed by the Bureau of Global Public Affairs (GPA).

Under 10 FAM 415, GOs must ensure that U.S. government funding and assistance should be easily identifiable to the Department's global audiences:

- Programs, funding, and assistance reaching **domestic audience**s implemented through grants and cooperative agreements must clearly recognize Department support by marking with the official Department seal alongside the U.S. flag; and
- Programs and assistance reaching **foreign audiences** implemented through grants and cooperative agreements must suitably recognize U.S. government support by marking with the U.S. flag, and to the maximum extent practicable, incorporating the written

99

Not for Public Release
Department of State Federal Assistance Directive

or verbal mention of the "United States Government." Posts and bureaus awarding such grants and cooperative agreements for Department of State programs abroad should, as a general matter, include award provisions that require use of the standard, rectangular flag for Department-funded activities.

Grants and cooperative agreements must contain an award provision stipulating that U.S. government support be acknowledged appropriately in all dealings with program participants, and in press releases, ceremonies, dedications, interviews, publicity, etc. The award provision should also stipulate that all award recipients must coordinate publicity, ceremonial events, dedications, etc., with the sponsoring Department of State or embassy office and public affairs officer. GOs must ensure that the recipient understands that the branding and marking requirements flow down to subrecipients. This requirement does not apply to the recipient's own corporate communications.

This requirement does not apply to assistance awards to Foreign Public Entities. GOs and GORs must ensure that U.S. support for the assistance award is publicly acknowledged to

**Exceptions to Branding and Marking Requirements:**

GPA/FO and R/FO may grant exceptions to this policy in appropriate cases. Under 10 FAM 416, the Department may decide not to mark entities and public programs with the U.S. flag or official Department seals for reasons that may include, but are not limited to:

- Where a clear identification with the U.S. government or the U.S. flag would create a demonstrable security threat to the U.S. government, its personnel, partners, the program participants or beneficiaries, or the program or venue of the activity;
- Programs or projects in which the U.S. government is one of any number of co-sponsors or participants, or where highlighting the United States would be disproportionate to the U.S. contribution (in which case Department or mission officials should seek other ways to recognize U.S. government support);
- Where identifying U.S. government support, or where use of the U.S. flag, would raise suspicion of U.S. motives and alienate partners, participants, or beneficiaries, or otherwise undermine the goals of the program;
- Where a clear identification with the U.S. government or the U.S. flag would undermine the objectives of the activity or would not be appropriate for the assistance provided;
- Cases in which the Department's (or posts') relationships with foreign governments on joint, bilateral, or multilateral projects, conferences, programs, etc., might preclude marking with only the U.S. flag. In such cases, posts and bureaus are encouraged to include flags of both nations in promotional materials, in conjunction with established logos;
- Certain American Spaces, conferences, and other events contained or held within a national or multilateral host institution that might limit the extent of U.S. government identification; however, if a U.S. government logo or seal is allowed, the U.S. flag must be used; and
- Certain types of memorabilia or gratuities (e.g., crossed flag lapel pins) that are symbols of bilateral cooperation and friendship.

100

AR 000112

Not for Public Release
Department of State Federal Assistance Directive

When considering whether to grant an exception to the policy, GPA/FO and R/FO will consider factors such as whether the marking required under the guidance would:

- Compromise the independence or neutrality of a program or materials, such as election monitoring or ballots or political party work;
- Diminish the credibility of reports, analyses, etc. whose data or findings must be seen as independent;
- Undercut cooperating country government responsibility for laws, policies, studies, or other communications;
- Impair the functionality of an item, such as sterilized equipment or spare parts;
- Incur substantial costs or be impractical, such as items too small or otherwise unsuited for individual marking;
- Offend local cultural or social norms, or be considered inappropriate on certain items; or
- Conflict with international or domestic law.

GOs may request an exception under these circumstances by reaching out to the Bureau branding POC for a **US Flag Branding and Marking Requirements Exception Form for Awarded Programs** form. The GO must complete the form, have the appropriate Approving Official sign the form, and submit a copy of the signed form to branding@state.gov with the Bureau branding POC on cc. Sample imagery, logos, and relevant links should also be provided in the email submission.

GPA/FO will review the exception and submit the package to the Under Secretary for Public Diplomacy (R) for final approval or rejection.

If an exception is granted, the GO must indicate in the award provisions that the recipient has received a policy exception from the branding and marking requirement. A copy of the **US Flag Branding and Marking Requirements Exception Form for Awarded Programs** form must be uploaded to the official award file in MyGrants.

For general questions about the Department's marking policy and overall branding strategy, please contact branding@state.gov.

## O. DEVELOP A MONITORING PLAN

Every award must have a written monitoring plan that is appropriate to the award and tied to the risk assessment. (Exception: this requirement does not apply to assessed contributions, and property grants where the property is turned over immediately and permanently to the recipient.) For awards without a GOR, it is the GO's responsibility to develop the monitoring plan. For awards with a designated GOR, the responsibility to develop the monitoring plan is shared by both the GO and GOR. The plan should consider the level of risk, any risk mitigation measures, and the resources available to provide monitoring. The plan should detail the specific monitoring

AR 000113

Not for Public Release
Department of State Federal Assistance Directive

activities that will be performed (i.e., Site Visit, expense sampling, etc.). The plan should be tied to the proposed activities and the frequency and types of monitoring mechanisms to be reviewed by members of the Federal Assistance team.  The plan should be used to inform the recipient reporting schedule.

Develop a monitoring plan that is realistic for each award (for example, not all awards require a site visit) and that takes into consideration staff capacity.  Each monitoring activity must be documented in the official award file (i.e. check-in calls, attending events, reports, etc.)

The required risk assessment form (located in the FAPD Toolkit) contains a monitoring plan on a separate tab.

In developing a monitoring plan, the Federal Assistance team should take into consideration the overall goals and objectives of the award when determining how best to monitor the recipient's performance. Monitoring plans must be updated on a regular basis. For awards with a period of performance longer than one year, at a minimum, an annual review of the monitoring plan must be completed to ensure any new risks and/or changes in scope, schedule, or costs are accounted for, documented, and monitored. The Federal Assistance team must include or update the monitoring plan whenever the planned monitoring plan activities cannot be performed originally intended. For example, if an in-person site visit was originally scheduled and can no longer be conducted, the Federal Assistance team should update the monitoring plan with appropriate alternative oversight such as conducting expense sampling, including cost share.

GOs must ensure that a copy of the monitoring plan and all revisions/updates are uploaded to the official Federal award file in MyGrants.

**Note:** For awards containing subawards, the monitoring plan should include a GO/GOR review of the recipient's own plan for monitoring the performance and expenditures of its sub recipients. In addition, under Public Law 109-282—Sept. 26, § 2006, the Federal Funding Accountability and Transparency Act (FFATA) of § 2006, award recipients are responsible for entering subaward data into the FFATA Subaward Reporting System (FSRS) for subawards of $30,000 or more. The GO/GOR's monitoring plan should include methods to ensure that the recipient is complying with Federal regulations.

## P. GRANTS OFFICER DESIGNATES GRANTS OFFICER REPRESENTATIVE (GOR)

The GO must designate a GOR for all assistance awards where the U.S. share of costs is over $100,000, whether issued domestically or overseas, and may designate a GOR for all other awards at the GO's discretion.

A GO cannot designate more than one GOR per award.  However, there are instances when an award may need award management assistance from additional members of the Federal

AR 000114

Not for Public Release
Department of State Federal Assistance Directive

Assistance team (for example, a program located in multiple locations where a program officer may already be located and can assist in monitoring award activities).  In this situation, the GO may consider multiple program officers who perform GOR-like duties.  However, there can only be one official GOR designated on the award.

**Note:** This requirement does not apply to assessed and voluntary contributions.

A GOR assists the GO in ensuring that the Department exercises prudent management and oversight of the assistance award through the programmatic and financial monitoring and evaluation of the recipient's performance, as outlined in the Grants Officer Designation Memorandum and listed below. A GOR must be certified by FAPD and designated in writing by the GO. The GO is responsible for ensuring the designation memo is included in the official Federal award file in MyGrants. To carry out their responsibilities, the GOR should have at a minimum, read-only access to MyGrants.  For awards paid through the Payment Management System (PMS) where the GOR is registered in PMS as a pass 1 "approver" of grant payments, this role is not actual approval, but rather a recommendation to approve. The actual payment approval is completed by the "confirmer" role in PMS, which is to be held by the award's Grants Officer.

For awards implemented overseas, it is a best practice to have a GOR in the appropriate embassy section to assist in oversight of the award. If a domestic GOR is assigned, the awarding office must ensure that the GOR has the necessary permissions in the MyGrants system.

A GOR is responsible for the following activities:

- Coordinate and consult with the recipient on all programmatic and/or technical matters in the administration of the assistance award.
- In coordination with the GO, analyze and assess the organizational, programmatic, and country-specific risks through completion of a risk assessment form as well as a monitoring plan to mitigate any identified risks.
- Monitor and assess project performance to ensure compliance with the assistance award terms and conditions. Promptly notify the GO in writing of any noncompliance, deviation in performance, or failure to make progress.
- Assist the award recipient in identifying and resolving problems.
- Receive and review recipient progress reports and ensure they are timely and complete.
- Receive and review recipient financial reports*. Promptly notify the GO in writing if the recipient's expenditure rate is inconsistent with the progress report or if the recipient has failed to report program income or required cost share expenditures.
- Review any third-party evaluations of the assistance award, as well as any financial audits*.
- Provide the GO with a written assessment of the recipient's performance based on the review of a Program Progress Report and the most recent Federal Financial Report within 30 days of receipt of the report.

AR 000115

Not for Public Release
Department of State Federal Assistance Directive

- At the direction of the GO, document the official Federal award file to indicate that the GOR reviewed and approved the Program Progress Report and/or the Federal Financial Report* within 30 dates of receipt of the reports.
- When applicable, assist the GO in determining whether a payment request should be approved.
- With prior notification to the GO, conduct site visits to the recipient's place(s) of performance, to assess progress and problems, as appropriate.
- Ensure that the GO is provided with findings promptly after a site visit. Findings should be provided in a trip report prepared in accordance with your office's internal procedures. Such reports might include, as appropriate: (a) Actual performance versus scheduled performance;
  (b) Action needed, if any, to restore assistance award schedule/timeline of activities; (c) Costs incurred versus projected costs.
- When applicable, assist the GO in executing the Government Furnished Material (GFM) provisions of the assistance award. This might include preparing an itemized list of GFM showing serial numbers, if any, and approximate value of each item, as well as verifying recipient acknowledgement of receipt of each item.
- Assist the GO in award closeout, including the review of recipient's final progress and financial reports, publications, and any other required documentation.
- Complete a final written assessment of the program and the recipient's performance for inclusion in the official award file. Notify the GO in writing if performance was unsatisfactory.

* If applicable, in accordance with Bureau/Post/Office/Section Standard Operating Procedures. In some offices, receipt, review, and approval of Federal Financial Reports and other financial documents is only carried out by the assigned Grants Officer.

The GOR does not have authority to:

- modify or alter the award or any of its terms and conditions (including approving any changes to the budget).
- waive the government's rights regarding the recipient's compliance with stated assistance program or financial requirements or with assistance award terms or conditions;
- approve or make final decisions on federal assistance payments; or approve any actions that would result in increased cost of performance. All such actions must be made in writing by the GO in coordination with appropriate program officials.

A GOR performs an inherently governmental function and must be a Department:

- full-time direct hire U.S. citizen (Foreign or Civil Service personnel).
- re-employed annuitant (also known as REAs; those Foreign or Civil Service personnel returning to the workforce on a temporary basis).
- other temporary direct hire.
- Personal Services Contractor (PSC) hired under a domestic personal services contract, or a post issued personal services agreement (PSA).

104

**AR 000116**

Not for Public Release
Department of State Federal Assistance Directive

- Personal Services Agreement (PSA).
- Locally Employed Staff (LE Staff); or
- Eligible Family Member.

A GOR may not be a third-party contractor. A Personal Services Contractor may serve as a GOR.

All GORs must complete PY260—Federal Assistance Management (or distance learning courses PY472, PY474, PY476, and PY478) for a total of 40 training hours in order to become certified.

For an initial GOR certificate, the training must have been completed within the last two years prior to the application for the certificate. GORs must maintain their certification through at least 16 training hours of continuous education during the period that their certification is active. These refresher training classes are valid for three years from the date of successful completion of the required courses. The GOR certification transfers with the person during this time frame regardless of place of assignment.

The GO is responsible for ensuring that individuals selected to serve as GORs can perform the designated functions in a professional and ethical manner. Special considerations in selecting GORs may include:

- Training and experience in the programmatic and technical aspects of the project.
- Experience and adherence to responsibilities as a GOR.
- Knowledge of applicable laws, regulations, and policies.
- Knowledge of the awarding office's objectives and program priorities.

If the GO chooses not to designate a GOR that has been recommended by a Program Officer, the GO must document the official Federal award file in MyGrants with the reason(s) for not appointing the recommended individual and a replacement must be selected. The GO has authority to terminate a GOR's designation for an award, in writing, based upon non-compliance.

If the GOR is replaced during the period of the assistance award, the GO must prepare a new designation memo for the replacement GOR, verify the GOR's certification, and ensure that the Federal award recipient is notified of the change.

**Financial Disclosure:**

GORs may be required to file an OGE Form 450: Confidential Financial Disclosure Report. FAPD does not determine disclosure requirements. GORs should contact the Office of Ethics and Financial Disclosure (L/EFD) or their Management Officer to determine whether they are required to file. Please note that each filer must take the action necessary to ensure submission of timely, complete, and accurate financial disclosure reports. Failure of management officials to perform the duties specified in 11 FAM 617.6 does not relieve a filer of the responsibility to file. Additional information on the responsibility of filers can be found here: https://fam.state.gov/FAM/11FAM/11FAM0610.html#M617_5.

105

AR 000117

Not for Public Release
Department of State Federal Assistance Directive

**Note:** A GO may also serve as a GOR if they meet the necessary training requirements and apply for a GOR certificate through the GOR certification system. However, an individual may not serve as both the GO and GOR on the same Federal award.

AR 000118

Not for Public Release
Department of State Federal Assistance Directive

# CHAPTER 3: FEDERAL AWARD REQUIREMENTS

## A. GRANTS OFFICER'S FINAL DUE DILIGENCE

If the GO has concerns after a comprehensive review of the pre-award risk assessment and the negotiations with the potential recipient, the GO may choose to deny the award, impose specific award conditions, or reduce the amount of the award.

## B. PRE-AWARD COSTS

Pre-award costs are costs incurred by the recipient at their own financial risk before the authorized start date of an award. A GO is authorized, at his/her option, to include a clause in the Award Provisions to allow the recipient to be reimbursed for pre-award costs. However, the approval of pre-award costs should not be a standard business practice.

Pre-award costs can only be formally approved at the time the award is signed. However, advance coordination between the proposed recipient and the GO is encouraged, if the recipient believes they may incur costs before the award start date. The GO must emphasize in any pre-award communications that there is no guarantee that pre-award costs will be reimbursed and that therefore any pre-award costs are incurred at the proposed recipient's own risk.

Pre-award costs must be necessary for the effective and economical conduct of the project, be in the approved budget, and be otherwise allowable in accordance with U.S. government-wide and bureau-specific cost principles.

The period of performance of an award must begin on or after the date that the warranted GO signs the award. A GO cannot authorize pre-award costs by backdating the start date of the period of performance to a date prior to the signature. If an unauthorized commitment occurred, the GO cannot authorize pre-award costs in order to cover an unauthorized commitment, without going through the formal ratification process (see Chapter 2.L).

AR 000119

## C. REGIONAL BUREAU APPROVAL

Certain awards issued overseas (including awards issued by GA/FAM/FAO on behalf of overseas posts) require regional bureau approval prior to award. Regional bureau approval is built into the MyGrants workflow and no separate email approval is required, unless otherwise specified by the approving bureau.

Regional bureau approval is required and included in the MyGrants workflow in the following scenarios:

| Scenario | Regional Bureau Approval Required? |
|---|---|
| Original overseas award with a Total U.S. Share of Cost of $25,000 or more | Yes |
| Cost amendment on overseas award that increases the Total U.S. Share of Costs to $25,000 or more | Yes |
| Cost or No Cost amendment on overseas award where the Total U.S. Share of Costs remains at $25,000 or more | Yes |

Regional bureau approval as outlined above is required regardless of the original source of funds. In some cases, the approval of the functional bureau may take the place of regional bureau approval.

The regional bureau determines the level of documentation needed to support the review, and which staff person or office has the review and approval responsibility. However, all regional bureau reviews must ensure that the post conducted a risk assessment and developed a monitoring plan as part of their pre-award due diligence. Other documentation must be sufficient to ensure awards align with bureau priorities.

**Note:** A Domestic functional bureau initiating programs overseas should notify regional bureaus and coordinate with post during the design phase of the program, and prior to issuing assistance awards $25,000 or above. This coordination will reduce duplication of efforts in the region and ensure that posts support the programs occurring in that country. If a post disapproves of a specific functional bureau program or activity, the post, regional bureau, and functional bureau will need to work together to negotiate a way forward.

AR 000120

## D. FEDERAL AWARD IDENTIFICATION NUMBER (FAIN)

All Federal awards must have a standard, unique identification number for each award, known as a Federal Award Identification Number (FAIN). The FAIN is entered, tracked, and used for reporting in Department and Federal systems, such as MyGrants, GFMS, RFMS, and USASpending.gov. Any exceptions must be approved by FAPD. Furthermore, FAPD should also be consulted before a bureau/office/post establishes a new five-digit designator.

A 14-digit FAIN is automatically generated in MyGrants.

**Composition of a FAIN:**

    (1)    The first position begins with "S" to designate a Department of State issued award.

    (2)    The next five characters identify the organization preparing the award, using the "State/Federal Procurement Data System" office codes.

    (3)    The seventh and eighth positions are the last two digits of the fiscal year in which the assistance award is executed.

    (4)    The ninth and tenth positions are two capital letters: "GR" for grants to organizations (including FAAs), "CA" for cooperative agreements to organizations (including FAAs), "IN" for awards to individuals, "PG" for property grants, "VC" for voluntary contributions, "AC" for assessed contributions, and "LA" for letters of agreement.

    (5)    The eleventh through fourteenth positions are serial numbers for the award, starting with 0001 at the start of the fiscal year.

**Note:**

- The FAIN numbering system does not affect the format of the obligation number, or the numbering conventions used for NOFOs.
- To obtain a five-digit office code, bureaus/offices/posts must submit a written request to FAPD for approval. Requests must describe the need for the new or additional code, the program name (if applicable) with the desired five-digit office code designator, and the point of contact information. Allow approximately 30 business days for processing new codes.
- The GO should ensure the correct award instrument is used because corrections cannot be made once it is processed in the financial system (see Chapter 2.A).

## E. NOTICE OF AWARD COMPONENTS

The Notice of Award is the legal document issued by the GO to notify the recipient that a Federal award has been made and that funds may be requested to conduct the approved activities

AR 000121

Not for Public Release
Department of State Federal Assistance Directive

within the period of performance. The Notice of Award for Grants and Cooperative Agreements is required for all domestic and overseas awards. The various types and components of the Notice of Award will be discussed in upcoming chapters.

The GO is responsible for assuring that all elements of the legally binding instrument are met. All elements of the award, including the award amount, purpose or scope of the project, program description, period of performance, and approved budget must clearly and concisely capture the understandings of both parties. The Notice of Award is the foundation for post-award monitoring.

Below are the required components for Notices of Awards. The specific formats and requirements are addressed in separate sections below.

| GR / CA TO A NON-FPE | FIXED AMOUNT AWARD (FAA) | AWARD TO AN INDIVIDUAL (IN) | GR / CA TO AN FPE | PROPERTY AWARD (PG) |
|---|---|---|---|---|
| DS-1909 | DS-1909 | DS-1909I | DS-1909 | DS-1909 |
| Award Provisions | Award Provisions for Fixed Amount Awards | Award Provisions for Individuals | Award Provisions for Foreign Public Entities | Award Provisions for Property Grants |
| Standard Terms and Conditions | Standard Terms and Conditions | Standard Terms and Conditions | | Standard Terms and Conditions |

## F. NOTICE OF AWARD APPROVAL PROCESS

### F.1. FUNDS CERTIFICATION

Prior to the GO signing the DS-1909 or DS-1909I, the bureau/office/post FMO or their delegated Certifying Officer must sign the DS-1909 or DS-1909I to confirm that funds are available for the award.

### F.2. GRANTS OFFICER SIGNATURE

The GO's signature on DS-1909 or DS-1909I issues the award and commits the U. S. government to the agreement. The date of the GO's signature is the "Award Date." However, the financial obligation is not officially recorded, and a binding agreement does not exist until the recipient countersigns the award. In accordance with the U.S. Department of the Treasury

110

AR 000122

Not for Public Release
Department of State Federal Assistance Directive

guidance contained in the Financial Assistance Broker Submission (FABS) File, the date the recipient countersigns the award constitutes the "Action Date" and is defined as the date a binding agreement is reached. The GO must allocate enough time for approval routing in MyGrants to ensure the "Award Date" is not after the period of performance start date. Note that the "Action Date" (or recipient countersignature date) may be after the period of performance start date.

## F.3. RECIPIENT ACCEPTANCE SIGNATURE

The recipient must sign and date the DS-1909 or DS-1909I and return it to the GO within 10 business days. For organizations, the recipient's authorizing official who signs the DS-1909 may be different from the recipient Point of Contact.

In MyGrants, the recipient signs the award by "accepting" the award electronically. If the recipient accepts the award electronically, an ink-signed copy is not required. Recipients in MyGrants may also sign offline, scan the DS-1909 or DS-1909I, and email a copy in Portable Document Format (PDF) to the GO.  A wet ink original signature is not required. If a scanned copy is sent, it is important to include a copy of the email with the scanned document in the official Federal award file in MyGrants.

**Exceptions:**
If the recipient is unable to accept the award electronically in MyGrants, the GO may accept a signed paper or scanned copy, and then accept on behalf of the recipient.

## F.4. GRANTS OFFICER FILES

The original Notice of Award, including the fully executed DS-1909 or DS-1909I, and all award provisions and terms and conditions, must be maintained by the GO in the official Federal award file in MyGrants.

## G. GRANTS AND COOPERATIVE AGREEMENTS TO ORGANIZATIONS (THAT ARE NOT FOREIGN PUBLIC ENTITIES)

A grant or cooperative agreement to an organization has no minimum or maximum amount. A Fixed Amount Award may be used for awards of $350,000 or less. However, even for awards under $350,000, a standard grant or cooperative agreement may be the best mechanism to use if the bureau/office/post determines that the program is not appropriate for a Fixed Amount Award (see Chapter 3.H).

There are three required components to all grants and cooperative agreements to non-FPE organizations:

111

AR 000123

Not for Public Release
Department of State Federal Assistance Directive

(1)     DS-1909 Notice of Award Coversheet
(2)     Award Provisions
(3)     Department Standard Terms and Conditions

**DS-1909 Notice of Award Coversheet:**

GOs must use form DS-1909, Notice of Award, for all grants and cooperative agreements to organizations. The DS-1909 is the official obligating document and does not stand alone as a Notice of Award to a recipient. The DS-1909 is generated and completed in MyGrants.

For detailed instructions or additional information about MyGrants, go to https://almwebsite-usdos.msappproxy.net/sams/ or contact the ILMS Support Desk.

**Award Provisions:**

The Award Provisions is a document which the GO finalizes based on the pre-award negotiations conducted with the recipient and includes information such as objectives, reporting requirements, payment information, and substantial involvement (if applicable). Other provisions can be added to include information specific to the award, such as vetting requirements or foreign tax reporting.

The Award Provisions must clearly communicate, where appropriate, specific program goals, objectives, indicators, or expected outcomes with an expected timeline for accomplishment; as well as the requirements to report on progress based on these stated goals, objectives, indicators, and outcomes.

The Award Provisions template (located in the FAPD Toolkit) is a required document that has editable elements. Federal Assistance teams are encouraged to use the auto-generated award provisions in MyGrants, which will automatically insert standard provisions based on the user's response to questions about the award. The GO may only edit or revise certain elements of the award provisions, which are specified in the Award Provisions template. Any deviation from the template must be approved by FAPD. Requests should be submitted to the appropriate FAPD desk officer.

**Department Standard Terms and Conditions:**

The Department Standard Terms and Conditions document outlines the responsibilities of both the Department and recipient. The Department Standard Terms and Conditions are in the FAPD Toolkit. The GO may not make any changes to the Department Standard Terms and Conditions. Any requests for deviation from the Department Standard Terms and Conditions must be approved by FAPD.

The GO must confirm that the potential recipient is aware of all the terms and conditions of the Notice of Award prior to issuing the award. The potential recipient is encouraged to review the

112

AR 000124

Not for Public Release
Department of State Federal Assistance Directive

Department Standard Terms and Conditions (located here: DOS Standard Terms and Conditions for Federal Assistance Award) prior to accepting the award.

## H. FIXED AMOUNT AWARDS TO ORGANIZATIONS

This section specifies policies and procedures for Fixed Amount Awards (FAAs) to organizations. See Chapter 3.I for information on awards to individuals.

The FAA is a type of award under which the Federal awarding agency provides a specific amount of funding without regard to actual costs incurred under the Federal award. The FAA reduces some of the administrative burden and record-keeping requirements for both the recipient and Federal awarding agency. These awards are described under 2 CFR § 200.1 and 2 CFR § 200.201. FAAs were adopted by the Department as optional instruments for bureaus/offices/posts to use, in part because closing out and recovering small amounts of funding on low-dollar value agreements often cost more in labor and processing time than the amounts recovered. The FAA is focused on the performance and results of the award.

The Department has established that the FAA award instrument may be used when all the following conditions apply:

- The award is valued at $350,000 or less.
- The period of performance is five years or less.
- The award activity has measurable objectives and goals, based on performance and results.
- Any potential change to the program will be minimal.
- Adequate cost information is available in advance of award to allow the GO to determine and negotiate the fixed price of the award.
- No cost share or matching is included in the budget.

**Note:** An FAA may be issued to an organization with a NICRA, but the GO should discuss with the organization in advance the impact of any future adjustments to the NICRA rate.

An FAA may generate and use program income in accordance with the terms and conditions of the award; however, since there are no financial reports for FAAs, the recipient is not required to report on program income earned.

All other requirements in this directive, such as competition requirements, application requirements, and SAM.gov registrations, are the same for FAAs as for grants and cooperative agreements to organizations.

The Notice of Award for a FAA has three required components:

(1)    DS-1909 Notice of Award Coversheet, marked FAA

113

AR 000125

Not for Public Release
Department of State Federal Assistance Directive

(2)　　　Award Provisions for Fixed Amount Awards
(3)　　　Department Standard Terms and Conditions

The Award Provisions for Fixed Amount Awards is a document which the GO finalizes based on the pre-award negotiations conducted with the recipient.

The Award Provisions for Fixed Amount Awards template (located in the FAPD Toolkit) is a required document that has editable elements. The GO may only edit or revise certain elements in the template, which are specified in the document. Any deviations from the template must be approved by FAPD. Requests should be submitted to the appropriate FAPD desk officer.

**Department Standard Terms and Conditions:**

The Department Standard Terms and Conditions document outlines the responsibilities of both the Department and recipient to follow during the Federal award. The Department Standard Terms and Conditions are in the FAPD Toolkit. The GO may not make any changes to the Department Standard Terms and Conditions. Any requests for deviation from the Department Standard Terms and Conditions must be approved by FAPD.

The GO must confirm that the potential recipient is aware of all the terms and conditions of the Notice of Award prior to issuing the award. The potential recipient is encouraged to review the Department Standard Terms and Conditions (located here: DOS Standard Terms and Conditions for Federal Assistance Award ) prior to accepting the award.

**Budgets on Fixed Amount Awards:**

2 CFR § 200, Subpart E—Cost Principles, does not apply to an FAA, but rather is used as a guide in determining cost reasonableness.

During the pre-award negotiations, the GO must review the recipient's proposed budget in detail, to determine a firm fixed price for the award. The approved budget is not included in the award provisions, and the GO does not follow up to ensure that Federal funds are spent according to the approved budget. Instead, the recipient is awarded the full award amount and must certify in writing at the end of the Federal award that the project was completed as agreed to in the award or identify those activities that were not completed. If the required activities were completed, the recipient is not required to return any leftover funds resulting from cost savings during the award period. If the recipient has not completed the agreed upon activities, the amount of the Federal award must be reduced to cover only the portion of activities that were carried out.

**Monitoring and Reporting under Fixed Amount Awards:**
A risk assessment and monitoring plan is required for all FAAs, and awards must be monitored to ensure award milestones were met. See Chapter 4.D for information on monitoring.

The recipient must certify in writing at the end of the Federal award that the project was completed as agreed to in the award. To fulfill this requirement, the recipient is required to submit a brief final program report or statement regarding whether the project was completed

114

AR 000126

Not for Public Release
Department of State Federal Assistance Directive

and whether the funds were expended as authorized. This certification is due 120 calendar days after the award period of performance end date.

Per 2 CFR § 200.201, accountability for Fixed Amount Awards (FAA) is based on performance and results rather than reporting. This means that while performance reports may be mandated by the GO for an FAA, no financial report is required (except for domestic recipients paid through PMS).

**Payments under Fixed Amount Awards:**

A form SF-270 is required for all recipients not paid through PMS.

In general, payments should be requested in increments based on the need for funds and/or the achievement of milestones. Full "lump sum" advance payments are discouraged unless the award is small with only one or two budget line items. Payments based on a fixed calendar date basis (e.g., quarterly, monthly) should be avoided. The milestones for payment should be established prior to award and written into the FAA agreement as the "payment schedule." See Chapter 4.C for information on approving payments.

**Substantial Involvement:**

When the GO has determined that substantial involvement will be necessary, the elements of the Department's substantial involvement should be negotiated and agreed upon with the potential recipient prior to award issuance. The agreed-on areas of substantial involvement are then included in the Award Provisions for Fixed Amount Awards document.

**Amendments to Fixed Amount Awards:**

In general, FAAs should not require amendments of any kind, because the objectives, costs, and timelines are reasonable and clearly established prior to award. Cost amendments are not generally authorized, as the organization has agreed to complete the objectives of the FAA without regard to actual costs involved.

However, there are circumstances in which a GO may issue an amendment:

- No-cost amendments to extend the period of performance, if needed.
- If the objectives or activities of the award were not met, the GO must adjust the award through an amendment to reduce the budget; or
- On rare occasions, the GO may consider a cost amendment to add additional funds to cover unexpected costs, if the entire program will otherwise be jeopardized.

All amendments must be processed through MyGrants.

115

**AR 000127**

Not for Public Release
Department of State Federal Assistance Directive

---

# I. FEDERAL AWARDS TO INDIVIDUALS

---

An award to an individual is defined as a Federal award to a specific person to carry out activities as outlined in a Federal award. The recipient of an award to an individual is a single person, not an organization or a group of individuals. Awards should not be issued to one individual with the purpose of disseminating funding to other participants providing the same, shared service (for example, one performer taking responsibility for paying the remaining performers). In these cases, separate awards should either be granted to each individual participating, or to an organization to manage the program. Note also that US citizens and green-card holders have US tax obligations on individual awards. In some cases, an individual who is specifically in charge of managing a more complex program can be responsible for issuing payments to assist in carrying out the program (such as a filmmaker, who hires an editor and a marketing professional). Department policy establishes a maximum award value for an award to an individual at $150,000. This maximum does not include government-furnished material (GFM) such as airlines tickets that are purchased on behalf of the recipient.

**Note:** An award to an individual may not be utilized to circumvent the restriction on awarding PD funds to a for-profit organization. For example, since a for-profit organization is ineligible to receive a public diplomacy award, it is not permissible to issue an award to an employee or owner of the for- profit organization in order to circumvent the restriction.

Awards to individuals generally use fixed pricing with no financial reporting required and no reimbursements expected if the recipient spends less than budgeted to complete the program. However, in some cases a budget that is not fixed might be more appropriate. Regardless of whether the budget is fixed or not, the award must be processed in MyGrants as a "Grant to an Individual" and include the DS-1909I, Award Provisions for Individuals, and the Department of State Standard Terms and Conditions.

**Note:** 2 CFR § 200 does not apply to awards to an individual.

**Awards to Individuals Using a Fixed Budget:**

Using a fixed budget on an award to an individual is appropriate when:

- There is a definable program.
- Costs can reasonably be determined at the time of award and are not expected to change; and
- Performance is verifiable.
- Cost share is not included in the award budget.

When selecting the fixed budget option, the budget must be determined and fixed in the pre-award phase. In general, the full amount will be awarded without regard to actual costs incurred under the award, provided that all goals/objectives of the award are successfully completed.

116

AR 000128

Not for Public Release
Department of State Federal Assistance Directive

**Awards to Individuals Using a non-Fixed Budget:**

When an award to an individual is issued using a budget that is not fixed and the GO may require financial reporting. Specifically, a non-fixed budget may be used if costs cannot reasonably be determined at the time of award or if the other requirements listed above cannot be met. The authority for determining which type of budget to use for an award to an individual rest with the GO. Cost share may be included on an award to an individual with a non-fixed budget.

**Notice of Award:**

The Notice of Award for an award of either type to an individual has two required components:

      (1)     DS-1909I Notice of Award Coversheet
      (2)     Award Provisions for Individuals
      (3)     Department Standard Terms and Conditions

The Award Provisions for Individuals is a document which the GO finalizes based on the pre-award negotiations conducted with the recipient. The GO may only edit or revise certain elements in the template, which are specified in the document. Any deviations from the template must be approved by FAPD. Requests should be submitted to the appropriate FAPD desk officer.

**Department Standard Terms and Conditions:**

The Department Standard Terms and Conditions document outlines the responsibilities of both the Department and recipient to follow during the Federal award. The Department Standard Terms and Conditions are in the FAPD Toolkit. The GO may not make any changes to the Department Standard Terms and Conditions. Any requests for deviation from the Department Standard Terms and Conditions must be approved by FAPD.

The GO must confirm that the potential recipient is aware of all the terms and conditions of the Notice of Award prior to issuing the award. The potential recipient is encouraged to review the Department Standard Terms and Conditions (located here: DOS Standard Terms and Conditions for Federal Assistance Award ) prior to accepting the award.

**Note:** An individual's tax ID information, such as U.S. Social Security Number or foreign ID, is Personally Identifiable Information (PII) and should not be entered anywhere on the DS-1909I. GOs must maintain Social Security Numbers for all U.S. citizens or other recipients with U.S. tax liabilities (e.g., "Green Card" holders) for tax reporting purposes. This information must be stored in accordance with 5 FAM 460—The Privacy Act and Personally Identifiable Information.

In MyGrants, Box 8—Recipient Federal Tax I.D./In-Country Registration on the DS-1909I will auto populate using the UEI number entered onto the vendor page. Use 1ND1V1DUALS1 as the UEI number for all individuals (foreign and U.S.) when completing the vendor page.

**Application Requirements for Individual Awards:**

117

AR 000129

Not for Public Release
Department of State Federal Assistance Directive

The bureau/office/post must request an application from the individual. The application must include the following (additional information may be requested at the discretion of the bureau/office/post):

- SF-424 (Individual) - Application for Federal Assistance—Individual, SF-424A, and SF- 424B
- A statement of work, budget, and budget narrative describing the activity/project to be funded and associated costs.

The application package must be included in the official Federal award file in MyGrants.

**Budgets on Awards to Individuals:**

2 CFR § 200, Subpart E—Cost Principles, does not apply to awards to an individual, but rather should be used as a guide in determining cost reasonableness.

**Payments on Individual Awards:**

All payments must be requested by the recipient via form SF-270 and may be requested on or after the award issue date in accordance with the payment schedule in the award provisions.

Domestic awards to individuals are paid through the Global Financial Service (GFS) Vendor Claims. PMS is not used for awards to individuals.

As with awards to organizations, lump sum payments to a recipient should not be used unless the award is small, and/or has a short period of performance. More complex awards should use multiple payments based upon the achievement of specific milestones. See Chapter 4.C for information on approving payments.

**Monitoring and Reporting on Individual Awards:**

A risk assessment and monitoring plan is required for all awards to individuals, and awards must be monitored to ensure award milestones are met. See Chapter 4.D for information on monitoring.

Program reporting is not generally required for awards to individuals. However, if the period of performance is long, or the individual will be carrying out a complicated program, the GO may require interim program reports in the award provisions. For all awards to individuals, the GO may request a brief final program report, due after the period of performance end date.

In general, the use of the SF-425—Federal Financial Report is not required. However, the GO may request the SF-425 to be submitted under awards to individuals where the budget is not fixed.

**Amendments to Individual Awards:**

118

**AR 000130**

Not for Public Release
Department of State Federal Assistance Directive

While it is anticipated that an award to an individual will progress as originally planned, an award may need to be amended. Significant changes to an award must be completed by an amendment issued by a warranted GO. All amendments must be issued on form DS-1909I and processed through MyGrants.

Examples of circumstances in which a GO may issue an amendment:

- No-cost amendments to extend the period of performance, if needed.
- If the objective or activities were not met, the GO must adjust the award through an amendment in order to reduce the budget; or
- Cost amendment to cover unexpected costs on an award with a non-fixed budget.

The GO may consider a cost amendment to add additional funds to an award to an individual with a fixed budget. If the GO determines that there is legitimate justification for additional funding, this determination must be documented in writing and uploaded to the Federal award file in MyGrants prior to issuing the amendment.

## I.1. SPECIFIC REQUIREMENTS FOR AWARDS TO INDIVIDUALS

**Unique Identifier Number:**

As stipulated in 2 CFR § 25.110, individuals are exempt from the requirement to obtain a Unique Entity Identifier.

However, the GO must still verify the identity of an individual prior to issuing a Federal award.

Acceptable identification includes:

- U.S. passport
- U.S. passport card
- Permanent resident card
- State issued driver's license or personal identification card
  **Note:** Section 202 of the Real ID Act of § 2005 (Public Law 109-13) states that "a Federal agency may not accept, for any official purpose, a driver's license or identification card issued by a State to any person unless that State is meeting the requirements of this section." The current status of a state/territory can be found at: https://www.dhs.gov/real-id.
- Federally recognized, tribal-issued photo ID
- Foreign government-issued passport
- Foreign issued national identity card

**SAM.gov:**

Individuals are not required to register in SAM.gov unless they are operating a sole proprietorship or single-member limited liability company.

119

AR 000131

Not for Public Release
Department of State Federal Assistance Directive

However, as part of the pre-award due diligence process, the GO must verify, prior to award, that all potential recipients of Federal awards (including individuals) do not have an active exclusion. This requires checking SAM.gov for each applicant and uploading a screenshot of the results to the official award file in MyGrants.

**Awards to Minors:**

Federal assistance regulations do not give a minimum age requirement for a recipient. However, the Notice of Award is a legally binding document, so the individual signing as the recipient must be able to be held legally responsible. This may vary based on a country's own laws. Ultimately, the awarding office or post is responsible for making this determination.

**Tax Reporting Requirements on Individual Award Recipients:**

The Internal Revenue Service (IRS) considers all funding received from grants in the amount of $ 600 or more in a calendar year as compensation for individuals subject to U.S. tax laws (e.g., U.S. citizens and individuals holding a Permanent Resident Visa/"Green Card"). As such, awarding agencies are responsible for filing IRS Form 1099-G—Certain Government Payments with the IRS.

All funding provided under an award is reportable, including, but not limited to, honoraria, lodging, meals and miscellaneous expenses, local transportation, and materials. While the recipient may claim some of these costs as tax deductible business expenses, the Department must report the full award amount. The value of government-furnished material (GFM), including USG-purchased airline tickets, is not reported because the costs are individually vouchered at the time of purchase.

**Note:** The $600 reporting threshold is cumulative for the tax/calendar year, so if an individual receives one $300 payment and one $500 payment, an income of $800 must be reported to the IRS. If a recipient has questions regarding tax reporting requirements, they should be advised to contact the IRS directly.

**Procedure:**
- **Domestic Bureaus:** The tax reporting for Federal awards issued by domestic bureaus and obligated in GFMS is handled by CGFS Charleston.
- **Overseas Posts:** The tax reporting for Federal awards issued by overseas posts and obligated in RFMS is generally handled by CGFS/F in Charleston. CGFS/F will generate IRS Form 1099 tax reporting for all vendors that as long as the following conditions are met:
  o   The vendors are marked as 1099 eligible.
  o   The payments total more than $600 per year; and
  o   The payments cite 1099 taxable budget object codes.

Posts no longer need to generate and mail their own 1099-G reports if these procedures are followed. CGFS Charleston will mail the 1099-G to recipients and file with the IRS for recipients and payments that meet the requirements above. However, if vendor codes are not

120

**AR 000132**

marked 1099 eligible or do not include valid tax identification codes and valid mailing addresses, posts will be responsible for executing the 1099 forms.

The 1099 functionality in RFMS (Overseas Accounting) reports all payments using 1099-taxable object codes regardless of whether it is stipend, lodging, or other expenses. It is up to the taxpayer to report what is taxable income and what are business expenses. The system cannot distinguish between the stipend and the other expenses, if all the amounts on the voucher are under one object code.

Questions regarding this process should be sent to CGFS-OverseasAccounting-1099- DL (CGFS-OverseasAccounting-1099-DL@state.gov). For additional information, please refer to Ask CGFS Knowledge Base article When and How to Issue a 1099-G.

**Important:** The success of this initiative depends upon FMOs correctly flagging vendor codes for grant recipients as "1099 eligible."

GOs will still need to obtain the required personal information, including the Social Security Number, from award recipients. Since this information contains Personally Identifiable Information (PII), it must be handled in accordance with 12 FAM 540—Sensitive but Unclassified Information (SBU) and protected in accordance 5 FAM 460—The Privacy Act and Personally Identifiable Information.

The Form 1099-G filing requirement does not apply to:

- Grants to individuals who are not subject to U.S. tax laws.
- Grants to organizations. While individuals receiving honoraria or other funding under grants to organizations may incur a tax liability, it is the responsibility of the recipient organization, not the Department, to manage all income tax questions.

## I.2. AWARDS FOR INDIVIDUAL TRAVEL

Two options exist to fund travel for non-federal government employees: (1) invitational travel; and (2) awards for individual travel. These are two separate instruments and different regulations, and procedures apply.

If the purpose of the travel is to provide a public benefit, a **grant** should be used to obligate funds. If the purpose of the travel is to provide a direct benefit to the Department, and the traveling individual is acting in an "employee-like" capacity, then an **invitational travel authorization** should be used. A grant must be used if honoraria, stipends, or allowances are authorized. Also, a grant must be used anytime Budget Object Code 2115 is used for travel.

**The bureau/office/post that underlinefunds the travel or program is responsible for determining which instrument is the most appropriate.** If posts have questions about budget object codes or other instructions coming from a funding bureau in Washington D.C, they may contact that bureau's FMO or CGFS/FPRA/FAFM (FAFM@state.gov).

121

AR 000133

Not for Public Release
Department of State Federal Assistance Directive

**Note:** Some bureaus have determined that participants under specific programs provide a direct service to the U.S. government and therefore must travel on invitational travel authorizations. Examples include ECA's International Visitor Leadership Program (IVLP) and IVLP On Demand Program. For more information, contact the bureau that is funding an individual's travel.

Invitational travel is not Federal financial assistance, therefore invitational travel procedures are not covered in this directive.

**Award for Individual Travel:**

The Federal Travel Regulation (FTR) does not apply to Federal award recipients. However, the "Fly America Act," 49 USC §40118 (2017) applies to all Federal awards when Federal funds are used to purchase airline tickets. Federal award recipients are also not eligible for City Pair airfares.

Bureaus/offices/posts that issue large numbers of awards to individuals may wish to consider using an external organization to manage their individual award portfolio. With this model, the bureau/office/post would issue a single grant to an organization that would then be responsible for organizing individual travel programs and logistics.

Awards for individual travel must be issued through MyGrants. The use of e2 Solutions is not required, and the recipient must not be required to file a voucher.

**Purchasing Airline Tickets as Government-Furnished Material (GFM) under Awards to Individuals:**

For some Federal awards that include travel, 100% of all award funds are given to the recipient and the recipient buys their own airline ticket. However, due to the complexities of the Fly America Act, many bureaus/offices/posts choose to purchase airline tickets themselves to then give to a recipient as government-furnished material (GFM).

When a bureau/office/post is procuring an airline ticket as GFM, the funds for the airline ticket may be obligated on the DS-1909I although the value of the ticket is not included in the total award value.

The GO must ensure that the cost of the airline tickets is included as a "surcharge" during the creation of the award in MyGrants.

When GFM tickets are correctly entered into MyGrants, two lines of fiscal data will appear on the DS-1909I in Box 5—*Accounting & Appropriation*:

> (1) One line with a Budget Object Class (BOC) code of 4121 (grant) or 4122 (cooperative agreement) to cover the costs incurred and paid for directly by the recipient (e.g., per diem, taxis, visa fees); and

122

**AR 000134**

Not for Public Release
Department of State Federal Assistance Directive

(2)    One with the BOC code ***2115-Grantee Air Fares*** that covers the cost of the GFM airline tickets. These funds are not given to the recipient.

Box 4—*U.S. Share of Costs*, will show the amount that will be paid directly to the recipient. Do not include the cost of GFM such as government purchased airline tickets or other purchases.

Box 13—*Budget Summary: Government Furnished Material*, will show the price of the GFM airline ticket (funds not given to the recipient).

**Example:**



*Figure 4: DS-1909I Government Furnished Airline Ticket example*

**GFM other than Airline Tickets:**

A Federal award may also include other types of GFM that are procured on behalf of a recipient to further the award objectives, such as hotel rooms, conference venues, catering services, or promotional items for events. These must be procured by the GSO at post or by GA/FAM/FAO. These costs may not be obligated via the DS-1909I – only airline tickets purchased on behalf of recipients may be obligated as GFM on the DS-1909I.

Instead, the GO should include a reference to these other GFM items in the Award provisions for Individuals, to ensure full understanding of the total program costs. The non-airline GFM costs must not be included as a "surcharge" during award creation in MyGrants, to ensure that they do not appear on the DS-1909I.

123

AR 000135

Not for Public Release
Department of State Federal Assistance Directive

## I.3. CLOSEOUTS OF AWARDS TO INDIVIDUALS

At the end of the period of performance, the recipient must sign the DS-1909I in Section 16—*Confirmation*. The recipient's signature serves as acknowledgement that all goals/objectives have been completed, or the level of effort and funds has been expended to achieve the outcomes, and no outstanding issues exist under the award. A program report may also be required, if specified in the award provisions.

For awards to an individual with a non-fixed budget, a final budget accounting must be submitted at closeout. The SF-425 may be used for this purpose if specified by the GO in the award provisions. No receipts are required. The recipient should keep all receipts for expenditures, but these do not need to be sent to the GO.

For awards to an individual with a fixed budget, the full award amount is provided to the recipient if the goals/objectives of the project were completed. No financial reporting is required, and the recipient may retain any unused funds. If the goals/objectives were not completed as specified in the award and/or if substantial progress was not made towards the goals and objectives of the project, the GO must reduce the amount of the award to recover the budgeted costs for the portion of the program that was not completed.

See Chapter 5 for information on closeout procedures and responsibilities.

## J. PROPERTY

This section addresses property, which includes:

- Real Property
  - o  Land, buildings, etc.
- Personal Property
  - o  Books, printers, laptops, etc.
  - o  Equipment – a type of personal property that has a useful life of more than one year and a per-unit acquisition cost of at least $10,000.
  - o  Intangible property, such as copyrighted material and inventions.

The GO is responsible for instructing the recipient on the use and disposal of property acquired or furnished by the federal government for use under the award.

Property and equipment may be provided to recipients by:

- Recipient purchases the property/equipment:
  - o  As part of a larger overall grant or cooperative agreement, there is a line item for the recipient to purchase property/equipment.

124

AR 000136

Not for Public Release
Department of State Federal Assistance Directive

- Government-Furnished Property (GFP) (least efficient option):

  o the Department acquires new property/equipment through procurement channels on behalf of the recipient in accordance with Department policy and Federal regulations and awards it to the recipient through a $0 Property Grant; if this method is used it must be delivered to USG, inspected and accepted by USG and then transferred over to recipient; or

  o the Department donates excess property to the recipient and awards it to the recipient through a $0 property grant.

**Note:** Occasionally, a recipient is given a larger grant or cooperative agreement for programmatic work, and as part of the program, the government will be procuring new or donating excess property to the recipient. In that case, the government-furnished property (GFP) is not included as a line item in the larger grant. Instead, the GO should do a separate, $0 property grant to transfer the property.

The requirements for both government-furnished property (GFP) and recipient-purchased property are addressed separately below. Disposition instructions and ownership issues are also discussed in sections 3 and 4 below.

## J.1. PROPERTY GRANTS (GOVERNMENT-FURNISHED PROPERTY)

When the Department acquires new property on behalf of a recipient, or donates excess property, a Property Notice of Award is the Department's formal notification mechanism that documents the transfer of new and/or excess property to an eligible recipient. Commonly known as a "property grant", this is drawn up as a $0 award, with accompanying terms and conditions. Since property awards are considered $0 awards, they are exempt from competition requirements and do not require formal written approval to document non-competition.

**Notice of Award:**

The Property Notice of Award consists of three required components:

(1)    DS-1909, marked "Property", with total U.S. costs of $0.
(2)    Award Provisions for Property Grants; and
(3)    Department Standard Terms and Conditions.

**DS-1909:**

The DS-1909 must be signed by a warranted GO in MyGrants and countersigned by the recipient.

The US Federal Share of a property grant will always be $0 because the property has been purchased by the Department through an acquisition instrument (e.g., purchase order or contract), or excess property has been donated, and the cost of that property has already been

125

AR 000137

Not for Public Release
Department of State Federal Assistance Directive

recorded through procurement systems. The GO must coordinate with the Property Management Officer (PMO) to remove excess property from the Department's inventory management system for property.

**Award Provisions for Property Grants:**

The Award Provisions for Property Grants is a document which the GO finalizes based on the pre-award negotiations conducted with the recipient. The GO may only edit or revise certain elements in the template, which are specified in the document. Any deviations from the template must be approved by FAPD. Requests should be submitted to the appropriate FAPD desk officer.

The award provisions must identify the property to be provided, including a brief description, serial numbers, quantities, and where applicable, the:

- Acquisition cost when acquiring new property.
- Fair market value consistent with the local market when donating pre-owned property or equipment; and
- Depreciation value of any real property or facilities donated for assistance purposes.

The Notice of Award must also identify who will be responsible for maintenance and training for the equipment, if applicable. Government-furnished property need not be insured by the recipient unless required by the terms and conditions of the Federal award.

**Reporting:**

The award provisions should state that annual inventory reporting (using form SF-428-A for tangible property or SF-429-A for real property) is required for temporarily donated property. No annual reporting is required for permanently donated property.

Property grants to Foreign Public Entities: Property is often transferred under a property grant to a foreign government entity, such as national/municipal libraries or museums. Even though the recipient qualifies as a Foreign Public Entity (FPE), the Award Provisions for Property Grants as well as the Department Standard Terms and Conditions apply. If the FPE seeks revisions to any of the standard language due to sovereignty issues, please consult with FAPD prior to making any changes. See Chapter 3.K on grants to governments under bilateral agreements.

**Award Processing Requirements for Property Grants:**

For all Property grants, the GO or authorized signatory must:

- Use MyGrants.
- Check SAM.gov.
- Complete a written risk assessment.
- Complete a monitoring plan (unless property will be immediately and permanently donated).

126

AR 000138

Not for Public Release
Department of State Federal Assistance Directive

- Leave the financial data blank on the DS-1909.
- Enter value of the award as $0 in MyGrants; and
- Close the award within 12 months of receipt of final reporting, or within 12 months of the end of the period of performance, if no final report is required. See Chapter 3.J for information pertaining to disposition instructions.

**Application Requirements for Property Grants:**

The bureau/office/post must request an application from the recipient organization. The application must include the following (additional information may be requested at the discretion of the bureau/office/post):

- Evidence of UEI and SAM.gov registration. The value of a property grant will always be $0 regardless of the value of the property being donated. Therefore, since a property grant will always be less than $25,000 a GO may consider a UEI/SAM.gov exemption on a case-by-case basis if a foreign organization is having difficulty registering. See Chapter 2.G.2 for information on potential exemptions.

- Form SF-424 (Application for Federal Assistance, optional for Foreign Public Entities).

The application package must be included in the official Federal award file in MyGrants. Chapter 3.J.3 includes specific guidance on disposal of government furnished property (GFP).

**Using Federal Procurement Channels**

When acquiring new property for recipients, the procurement must be completed by a warranted contracting officer, or through other State Department procurement channels.

Where the property is not currently available in the Department's inventory, the GO must ensure that specific statutory authority exists, and all the criteria below are met, before requesting the General Services Officer (GSO) or Contracting Officer (CO) to procure property for the recipient.

- The circumstances include certain property that is essential for successful performance of the award activities and the recipient does not currently possess such property.
- There is no available government property that can be provided to the recipient.
- Significant benefits in terms of quality or savings (money or time) can be realized if the needed property is acquired by the Department, rather than the recipient.

If all the above criteria are satisfied, the GSO/CO may then conduct the procurement for the supplies/equipment within his/her warrant limitations. The GSO/CO must follow all Department procurement policies and Federal Acquisition Regulations (FAR) requirements, including competition requirements and Brand Name only requirements. For acquisitions in excess of the overseas warrant threshold, post must utilize the services of the Office of Acquisitions Management (GA/FAM/FAO) or the Regional Procurement Support Office (RPSO).

127

**AR 000139**

Not for Public Release
Department of State Federal Assistance Directive

Property purchased by the U.S. government (Government Furnished Materials or GFM) on behalf of a grant/assistance recipient may not be charged to a Budget Object Class (BOC) code in the 4100 series. Such purchases must be charged to the appropriate BOC code in the 2500, 2100 or 3100 series. See 4 FAH-1 H-613 for the list of Department of State BOC Codes. For questions about correct BOC codes on Government Furnished Materials, contact CGFS/FPRA/FAFM (FAFM@state.gov).

In the resulting acquisition, the contracting office must instruct the vendor to deliver the items to the post, as usual. Delivery cannot be made directly to the recipient. The U.S. government must prepare a receiving report, then the GO must prepare a property grant to transfer the property to the recipient. A copy of the award is provided to the Administrative Office or General Services Office at post so that the transfer can be finalized.

Property for permanent donation cannot be in two different systems, the Department's inventory management system for property and MyGrants at the same time. Property purchased by the U.S. government specifically for permanent donation or use by a recipient should not be entered into the Department's inventory management system for property. The only exception to this procedure is a temporary donation when the Department retains title to the property. All temporary donation of property that is owned by the U.S. government should be entered into the Department's inventory management system for property and removed once there is a decision to donate property (see Chapter 3.J.3).

## J.2. PROPERTY (EQUIPMENT AND SUPPLIES) ACQUIRED BY A RECIPIENT UNDER A GRANT

The preferred method for acquiring property is to provide funds directly to the recipient as part of the award and allow the recipient to purchase the property directly. When the recipient purchases the property using award funds, no separate property grant is required.

The recipient must assure that each purchase of property is:

- Necessary for the performance of the award.
- Not otherwise reasonably available and accessible.
- Of the type normally charged as a direct cost to sponsored awards; and
- Acquired in accordance with its own procurement regulations and property standards, which must conform to 2 CFR § 200, if applicable to the organization.

When negotiating the budget prior to issuing the award, if the property is defined as "equipment" in 2 CFR § 200.1 (having a useful life of more than one year and a per-unit acquisition cost of at least $10,000), it should be listed on the "equipment" line of the approved budget. If the property does not meet that definition, it should be listed under the "supplies" line of the approved budget.

Conditional title to equipment and supplies acquired under the award will vest in the recipient upon acquisition for the duration of the project or program, unless otherwise specified in the award. The conditions are that the recipient must utilize equipment for the authorized purpose of

128

**AR 000140**

the award activities, and may not encumber it (i.e., use it as collateral) without prior approval of the GO. When the award ends, or the equipment or supplies are no longer needed, there are specific disposition requirements for both types of property.

Chapter 3.J.4 provides specific guidance on disposal of property and equipment purchased by a recipient under a grant.

## J.3. OWNERSHIP, REPORTING, AND DISPOSITION OF FEDERALLY OWNED PROPERTY

Government-furnished property (GFP) is referred to as Federally owned property in 2 CFR § 200.312. The title to Federally owned property (excess and government-furnished) is vested in the federal government. The exception to this is "exempt" property, where the U.S. government has chosen to vest title permanently in the recipient. The funds must carry the statutory authority to make a **permanent donation**, and the terms and conditions of the property grant must explicitly state that the title is vested permanently with the recipient, with no further obligation to the U.S. government.

The authority and guidance for providing Department property to recipients is available in the Federal Management Regulation (FMR), 41 CFR 102-36.185 through §102-36.205. Items remain in the Department's inventory management system for property, unless permanently donated to an eligible recipient.

**Temporary Donation:**

Unless otherwise specified, a property grant is considered a temporary donation of the property to the recipient. All items of GFP must be identified within the award. If property is temporarily donated, title remains vested with the U.S. government, and items remain listed within the Department's inventory management system for property. Recipients must submit an annual inventory of all GFP using form SF-428-A, regardless of value, to the GO. The GO should provide the inventory to the appropriate PMO for annual certification and reporting. Recipients must notify the GO of any loss, damage, or theft of equipment that will have an impact on the project.

Temporary donations of GFP are subject to the restrictions listed under 14 FAM Property Management Standards.

Upon completion of the Federal award or when the temporarily donated property is no longer needed, the non-Federal entity must report on all Federally owned property, regardless of costs, and request disposition instructions from the GO using forms SF-428-B and SF-428-C. Recipients may request disposition instructions for Federally owned property sooner than the end of the project period if the property is no longer needed.

Unless statutory authority exists to dispose of the Federally owned property by alternative methods, and the Department has no further need, property must be declared excess and reported for disposal to the GO. The GO must consult with Department's Property Management Officer

129

Not for Public Release
Department of State Federal Assistance Directive

involving the transfer of title to another U.S. government agency or eligible third-party for temporary or permanent uses of GFP/Federally owned property. The GO must coordinate the donation of any government-owned or government-furnished property (GFP) that is recorded as U.S. government-owned in a property accountability system with the responsible Property Management Officer (PMO).

The approved OMB SF-428 or SF-429 series of forms for temporary donations helps the recipient to manage, report, and request disposition instructions from the GO.

The forms for Personal Property are:

- SF-428—Tangible Personal Property Report
- SF-428A—Tangible Personal Property Report - Annual Report
- SF-428B—Tangible Personal Property Report - Final Report
- SF-428C—Tangible Personal Property Report - Disposition Request/Report
- SF-428S— Tangible Personal Property Report - Supplemental Sheet

The forms for Real Property are:

- SF-429—Real Property Status Report - Cover Page
- SF-429A—Real Property Status Report - General Reporting
- SF-429B—Real Property Status Report - Request to Acquire, Improve, or Furnish
- SF-429C—Real Property Status Report - Disposition or Encumbrance Request

Both sets of forms can be found here: Post-Award Reporting Forms | Grants.gov

**Permanent Donation ("Exempt" Property):**

When it is predetermined that long-term utilization of *government-furnished property* by the recipient fulfills a continuing programmatic need and the program's statutory authority allows transfer of property (permanent donation), the GO can designate, within the award, a transfer without further obligation to the federal government. In a permanent donation, the recipient does not need to submit an annual inventory or request disposition instructions at the end of the period of performance.

If the assistance award does not specify permanent transfer of title to the recipient (i.e., permanent donation) it is, in fact, a temporary donation for disposal as specified in the award.

GOs must notify the Property Management Officer (PMO) when permanently vesting title of GFP with the recipient. The PMO will appropriately remove the record from the Department's inventory management system for property to prevent double accountability for the same property.

**For PD-funded Property Gants:**

130

AR 000142

Not for Public Release
Department of State Federal Assistance Directive

- 14 FAM 417.2-7—Public Diplomacy Equipment Grants states that property acquired with PD funds can be disposed of through a PD grant when post determines that this action will further USG foreign policies and objectives. This method of disposal may be used when post determines that the value to furthering U.S. government foreign policies and goals is greater than the monetary gains posts may receive by disposing of excess property through abandonment, sale, or other authorized means. The cost associated with the delivery of U.S. government-furnished material (GFM) is an allowable cost under the award. However, if post pays for the delivery, the General Services Office (GSO) should use a purchase order for the shipping costs and not charge the 4100 BOC code series.

- Foreign excess personal property guidance found in 41 CFR 102-36.380 through §102-36.400 of the Federal Management Regulations (FMR), as well as under 40 USC §701 et. seq. (2017) and 22 USC §1471(2) (2017) give broad disposal authority overseas to the Secretary of State. These regulations also allow for the transfer of excess property from other programs or agencies to the Department. This transfer only applies to property that is already overseas, not interagency transfers and grants of excess property currently in the U.S. The Department may transfer title or other interest in property and take other such action deemed necessary for disposition, and may authorize the abandonment, destruction, or donation of foreign excess property which has no commercial value or the estimated cost of care and handling of that would exceed the proceeds from its sale in the same manner as Federally owned property.

- Federally owned property located in the United States that cannot be disposed may be considered for donation to nonprofit or educational organizations, or international bodies in which the United States participates. First consideration must be given to U.S. organizations. Recipients are responsible for all costs to acquire the property including moving expenses. See 14 FAM 417 2-5.d for more information.

## Government-to-Government Agreement Property Donations:

Property donations under bilateral international agreements between the Department and a foreign government, known as Government-to-Government agreements, are exempt from the property grant requirements. For such donations, however, the Department must have:

- Adequate internal control procedures to ensure that the type of equipment, quantity, date of transfer, etc. are identified in writing; and
- Identification of the statutory authority for granting the property, preferably in the award document itself or at least in the Government-to-Government agreement.

131

AR 000143

**<u>Disposal of Government-Furnished / Federally Owned Property:</u>**



*Figure 5: Disposal of Government-Furnished / Federally Owned Property*

## J.4. OWNERSHIP, REPORTING, AND DISPOSITION OF PROPERTY ACQUIRED UNDER A GRANT

The recipient has conditional title to any equipment purchased by that recipient under a Federal award, per 2 CFR § 200.313. This is a conditional title, unless a statute specifically authorizes the Federal agency to vest title permanently in the recipient entity without further obligation to the federal government, and the Federal agency elects to do so.

The conditions under which the recipient has title are as follows:

- Recipients must utilize equipment for the authorized purpose of the award activities.
- Recipients may not encumber it (i.e., use it as collateral) without prior approval of the GO.
- When the award ends, or the equipment or supplies are no longer needed, the recipient must dispose of it according to the requirements in 2 CFR § 200, as described below.

132

AR 000144

Not for Public Release
Department of State Federal Assistance Directive

When a recipient acquires property under an award, the Award Provisions for Property Grants are not used. However, the GO may specify in the award provisions any reporting requirements, such as an annual inventory. The award provisions should also specify disposition instructions, if known at the time of the award, or any other information regarding end-of-grant disposition requirements.

**Property Disposal Diagram for Recipient Acquired Property:**



*Figure 6: Property Disposal Diagram for Recipient Acquired Property*

**Disposition of Equipment Purchased under a Grant:**
Items of equipment that no longer have a per-unit fair market value of over $10,000 at the end of the award may be sold or otherwise disposed of with no further obligation to the awarding Federal agency.

For items of equipment with a current per-unit fair-market value in excess of $10,000 when the award ends, or when it is no longer needed for the award, the equipment may be:

- Retained by the non- Federal entity.
- Transferred to an eligible third party (e.g., another NGO, or another U.S. government agency).
- Sold.

The recipient must request disposition instructions once the award ends, or when the equipment is no longer needed. The GO must respond with written instructions regarding disposition. If the Department fails to provide disposition instructions within 120 days of the recipient's request, the recipient may retain title, transfer, or sell the equipment with no further obligation to the Department.

AR 000145

Not for Public Release
Department of State Federal Assistance Directive

If retained or sold, the Department is entitled to an amount calculated by multiplying the current market value or proceeds from sale by the awarding Federal agency's percentage of participation in the cost of the original purchase. The GO may waive this requirement, in consultation with the FMO, in the disposition instructions. If the equipment is sold, the awarding Federal agency may permit the recipient to deduct and retain from the Federal share $1,000 for its selling and handling expenses.

The non-Federal entity may transfer title to the property to the Department or to an eligible third party provided that, in such cases, the recipient is entitled to compensation for its percentage of the current fair market value of the property.

**Disposition of Supplies Purchased under a Grant:**

Title to supplies vests with the recipient upon acquisition.  Disposition of supplies will depend on the value of the residual inventory of unused supplies at the end of the award (unused supplies means supplies that are in new condition, not having been used or opened before).

If, when the award ends, there is a residual inventory of unused supplies exceeding $10,000 in total aggregate value, and the supplies are not needed for any other Federal award, the recipient may retain the supplies for use on other activities or sell them, but must, in either case, compensate the federal government for its share. The Federal agency or pass-through entity is entitled to compensation in an amount calculated by multiplying the percentage of the Federal agency's or pass-through entity's contribution towards the cost of the original purchase(s) by the current market value or proceeds from the sale.  If the unused supplies are sold, the awarding Federal agency may permit the recipient to deduct and retain from the Federal share $1,000 for its selling and handling expenses.

Materials and supplies with an aggregate current fair market value of $10,000 or less may be retained, sold or otherwise disposed of with no further obligation to the Department.

**Disposition of Real Property:**

The GO, with the GOR, must consult with the Office of Legal Adviser to ensure compliance with property laws and statutory requirements. Consistent with 2 CFR § 200.311, disposition instructions must provide for one of the two following alternatives:

    (1)    Retain title after compensating the awarding Federal agency.
    (2)    Sell the property and compensate the awarding Federal agency.

When a non-Federal entity is directed to sell property, sales procedures must be followed that provide for competition to the extent practicable and result in the highest possible return.

## J.5. INTANGIBLE PROPERTY

134

AR 000146

Intangible property includes intellectual property such as copyrights and patents, as well as websites and other non-tangible products.

The GO should be aware of the intangible property requirements in 2 CFR § 200.315 and 2 CFR § 600.315. While many of the requirements are specific to research grants, on Department awards, questions frequently arise regarding the ownership and use of reports and websites after the award period ends. Specifically, unless otherwise specified, the recipient or subrecipient may copyright any work that is subject to copyright and was developed or acquired under a Federal award. However, the Department reserves a royalty-free, nonexclusive and irrevocable right to reproduce, publish, or otherwise use the work for Federal purposes, and to authorize other entities, to do so. This right includes the right to require recipients and subrecipients to make works available through a Department-designated public access repository. In addition, the Department has the right to obtain, reproduce, publish, or otherwise use data produced under a Federal award.

**Note:** Because 2 CFR § 200 does not apply to awards to individuals, the GO should negotiate similar language with the individual recipient and insert the agreed upon language into the Award Provisions for Individuals.

## K. ASSISTANCE TO FOREIGN PUBLIC ENTITIES INCLUDING PIOs

This section sets forth the Department policy for the management and oversight of assistance awards to and agreements with Foreign Public Entities (FPEs). The Department does not apply 2 CFR § 200 Subparts A through F to FPEs.

FPEs are defined as:

- A foreign government or foreign governmental entity.
- A public international organization (PIO), which is an organization entitled to enjoy privileges, exemptions, and immunities as an international organization under the International Organizations Immunities Act (22 USC § 288 et. seq. (2017)) or is otherwise determined to be a PIO based in consultation with the Office of the Legal Adviser.
- An entity owned (in whole or in part) or controlled by a foreign government; or
- Any other entity consisting wholly or partially of one or more foreign governments or foreign governmental entities.

The Department occasionally provides Federal financial assistance directly to foreign governments and foreign governmental entities, such as through grants to Ministries of Culture, municipalities, or government libraries. Prior to issuing an award or agreement to a foreign government or foreign governmental entity, the bureau/office/post should ensure that there are no statutory or other restrictions.

AR 000147

Not for Public Release
Department of State Federal Assistance Directive

The United Nations qualifies as a PIO in which the United States government participates. Organs and programs of the United Nations usually qualify as PIOs as well.

Questions about whether an organization should be considered as a PIO for the purposes of this chapter should be directed to the Office of Legal Adviser. Even if an international organization does not qualify as a PIO, it should be treated as an FPE if it meets any of the criteria under the definition above; for example, certain regional entities such as Asia-Pacific Economic Cooperation (APEC).

As a general matter, FPEs are not expected to subject their books and records to inspection by officials of each country making an award or contribution to the entity. In the case of PIOs, member states providing awards respect the independence of the organization and the integrity of its operations within the framework of its charter.

When issuing a Letter Grant, Assessed Contribution, or Voluntary Contribution (discussed in more detail later in this chapter) the awarding Bureau must ensure that they have the appropriate statutory authority (consulting with L/LFA as necessary), that they have designated an appropriate signing official to sign the action (as described later in this chapter, and in consultation with L/LFA and GA/FAM/FAO as needed) and that they have allowed sufficient lead time for processing of the Letter Grant or contribution action.

## K.1. GRANTS, COOPERATIVE AGREEMENTS, AND LETTER GRANTS TO FPEs

There are two types of award agreements commonly provided to FPEs, including PIOs and foreign government entities: grant/cooperative agreements; and letter grants. Each is described in more detail below.

### 1. Grant/Cooperative Agreements to FPEs

A grant or cooperative agreement to an FPE uses a DS-1909 accompanied by the Award Provisions for Foreign Public Entities (template found in the FAPD Toolkit).

The award provisions for an FPE are similar to a standard grant or cooperative agreement, except that 2 CFR § 200, 2 CFR § 600 and the DOS Standard Terms and Condition do not apply (only what is included in the Award Provisions applies).

A grant or cooperative agreement to an FPE is the appropriate instrument when the purpose is to provide an award to an FPE to implement a specific project and/or to support an existing program or activity. This award type may be used when a NOFO is open to FPEs, or a sole source exemption is allowable.

In general, a grant/cooperative agreement is not used to fund the general operating budget of an FPE. Assessed and voluntary contributions (discussed below) are typically used to fund the operating budgets of FPEs.

A grant/cooperative agreement to a FPE is signed by a warranted GO.

136

Not for Public Release
Department of State Federal Assistance Directive

The Notice of Award to a Foreign Public Entity consists of two components:

(1) DS-1909; and
(2) Award Provisions for Foreign Public Entities

The Award Provisions for FPE template is editable and must be finalized by the GO based on the pre-award negotiations conducted with the recipient. The award provisions are then uploaded into MyGrants to be issued to the recipient.

All grants/cooperative agreements to FPEs must be issued through MyGrants. However, the recipient does not necessarily need to interact with the systems to accept the award electronically or upload reporting; the GO may waive this requirement and accept documents outside of the awarding system. In this case, the GO must ensure that the signed DS-1909 and applicable reports are uploaded and retained in the official Federal award file in MyGrants.

A risk assessment and monitoring plan are required for grants/cooperative agreements to FPEs. The GO/GOR should determine what monitoring is required and reasonable for each award. Evidence of monitoring must be uploaded into the official award file in MyGrants.

**Note:** A grant/cooperative agreement is the preferred mechanism for awards to an FPE, because it uses standardized terms and conditions, generally involves a warranted GO, and allows the Department greater control and oversight than a letter grant. A letter grant may be considered in limited circumstances, if necessary, to achieve Department objectives and where consistent with applicable authorities.

## 2.  **Letter Grants to FPEs**

Letter grants to an FPE use a DS-1909, accompanied by a Letter of Agreement or other signed document that obligates the funding. Letter grants can be used to support an FPE's annual budget or programmatic work.   If supporting programmatic work, consider using the Award Provisions for a Foreign Public Entity.

The letter grant must have accompanying terms and conditions which are unique to each award. Those terms and conditions differ from the Award Provisions for Foreign Public Entities. However, letter grant provisions should include a reference to how the funds are to be used and be tied to how the funds were Congressionally notified.

Like a grant/cooperative agreement, payment should be tied to programmatic activities. Only rarely should a letter grant be fully dispersed in one payment.  Occasionally, a letter grant's purpose may be "accomplished upon disbursement," meaning the outcome of the award is fully achieved when the funds are paid.  In that case, a one-time payment is necessary.  In those instances, there should be a short period of performance as the purpose of the award is fully realized once the funds are paid.

A Letter Grant Notice of Award with a Foreign Public Entity consists of two components:

(1) DS-1909 to establish the FAIN (DS-1909 is not necessarily shared with or signed by the recipient).

137

AR 000149

Not for Public Release
Department of State Federal Assistance Directive

(2) A signed Letter of Agreement, which includes terms and conditions unique to the entity or program and tied to the purpose that was Congressionally notified, and other applicable award provisions such as reporting, TIP (if there are subawards), terrorist financing, audits, UNWRA prohibitions, etc..

The signed letter grant is a document which the GO finalizes based on pre-award negotiations conducted with the recipient. The terms and conditions included in the grant will vary depending on the type of organization, the program, and the funding. The award provisions for any new letter grants must be approved by L/LFA and FAPD.

The underlying obligating letter and DS-1909 should be signed by a warranted GO.  Chiefs and Deputy Chiefs of Mission, Under Secretaries, Assistant Secretaries or, with FAPD permission, other high-level delegated officials may sign the letter.  The official who signs the letter is responsible for taking adequate steps to ensure proper use of the funds by the FPE, and adherence to award terms and conditions, or for delegating that responsibility.

All letter grants to FPEs must be issued in MyGrants. If a high-level official intends to delegate the processing and signing of the DS- 1909 to another staff member, then the staff member must obtain a proxy warrant by applying through the warrant database. FAPD must review and approve all proxy warrant requests.

The approved proxy warrant must be kept in the official Federal award file in MyGrants. The same proxy authorization warrant may be used for multiple awards, as appropriate; the proxy warrant will indicate the length of time for which it is valid.

**Note:** The recipient does not necessarily need to interact with MyGrants to upload reporting or to accept the award electronically. The GO or the high-level official who signed the letter grant may waive this requirement.  The GO/proxy GO, GOR (if applicable) or high-level official accepts reporting or other documents from the FPE via email and subsequently is responsible for uploading them to the official Federal award file in MyGrants.

3. **Letter Grants to Trust Funds**

Letter grants can be used when the Department is issuing an award to a Trust Fund.  When the Department issues a grant to a Trust Fund, often a letter grant is a cover sheet for the trust fund agreement from the FPE that administers the fund. (Note: the FPE's language may refer to the grant as a "contribution." However, letter grants to Trust Funds are considered grants by the Department absent specific authority to provide the funds as contributions. In such cases, the letter grant should clarify that the "contribution" is the grant award).  Letter grants to Trust Funds must be cleared by L and FAPD.  L advises whether appropriated funds may be provided through the proposed letter grant to a Trust Fund. Offices should consult L and FAPD early in the award process.

A letter grant to a Trust Fund is typically issued as an award with the "purpose accomplished upon disbursement" (PAUD) and should be paid in one full payment.  The period of performance

138

AR 000150

should therefore be of short duration.  Oversight of these funds is typically exercised through the U.S. government's participation in governing boards, committees or other representation in the organization.   Consider this when developing a risk assessment and monitoring plan.

A Letter Grant Notice of Award to a Trust Fund consists of three components:

(1) DS-1909 to establish the FAIN (DS-1909 is not necessarily shared with or signed by the recipient);
(2) A signed Letter of Agreement; and
(3) Terms and conditions unique to the entity, which must be consistent with authorities for the relevant funds and the purpose of the funds described in the Congressional notification.  The terms and conditions could be the Trust Fund's standard provisions or may be in the form of an Administrative Arrangement or other attachment.

The signed letter grant is a document which the GO or signatory finalizes based on pre-award negotiations conducted with the recipient. Even when using the trust fund's standard provisions or administrative agreement, or other attachment, the cover letter or the provisions attached must reference the purpose that was Congressionally notified.

The underlying obligating letter and DS-1909 should be signed by a warranted GO.  Chiefs and Deputy Chiefs of Mission, Under Secretaries, Assistant Secretaries or, with FAPD permission, other high-level delegated officials may sign the letter. The official who signs the letter is responsible for taking adequate steps to ensure proper use of the funds by the FPE, and adherence to award terms and conditions, or for delegating that responsibility.

All letter grants to Trust Funds must be issued in MyGrants. If a high-level official intends to delegate the processing and signing of the DS- 1909 to another bureau staff member, then the staff member must obtain a proxy warrant by applying through the warrant database. FAPD must review and approve all proxy warrant requests.

The approved proxy warrant must be kept in the official Federal award file in MyGrants. The same proxy authorization warrant may be used for multiple awards, as appropriate; the proxy warrant will indicate the length of time for which it is valid.

**Note:** The recipient does not necessarily need to interact with MyGrants to upload reporting or to accept the award electronically. The GO/proxy GO, GOR, (if applicable) or high-level official then accepts reporting or other documents from the FPE via email, and then subsequently is responsible for upload them to the official Federal award file in MyGrants.

*Note: Letter grants are NOT the same as Letters of Agreement signed by bureaus/offices with C-175 Authority for the funds/program, which are addressed in Chapter 3.K.4.*

For both grants/cooperative agreements and letter grants, funds and grant activities are tracked closely by the GO, GOR (if applicable) or other authorized Department signatory, to ensure that the purpose for which the funds are appropriated and awarded is met, and that the FPE adheres to award terms and conditions. Both types of funding are labeled grants/cooperative agreements for the purposes of the systems and for tracking and use Budget Object Class (BOC) 4121 (or 4122

AR 000151

Not for Public Release
Department of State Federal Assistance Directive

for cooperative agreements), even if the FPE recipient or the funding office do not consider them a grant.

**Application Requirements for FPE Grants/Cooperative Agreements and Letter Grants:**

An FPE may apply for an award through an open competition if the NOFO allows FPEs as an eligible entity type. If a sole source award is proposed, the non-competition exemption must be appropriately approved and documented.  As described in Chapter 2.F, Awards to FPEs are considered one of the potential categories for exemption from competition for non-Public Diplomacy funding.   The Open Competition Exemption form (located on the FAPD SharePoint site) must be completed, signed, and uploaded to the official Federal award file in MyGrants.

In all cases, for a grant/cooperative agreement to an FPE or either type of letter grant, the bureau/office/post should request an application from the FPE. The application must include the following (additional information may be requested at the discretion of the bureau/office/post):

- Full registration in SAM.gov to include a UEI;
- SF-424s may be waived by GO if a sole source;
- A proposal including a statement of work; and
- A budget and budget narrative describing the activity/project to be funded and associated costs.
    - If applying through a NOFO, 2 CFR § 200, Subpart E—Costs Principles does not apply to FPEs but should be used as a guide for reasonableness. The budgets should be as detailed as any other applicant type.
    - For both types of Letter Grants, proposed budgets may not be as detailed as budgets submitted under a NOFO. The GO or authorized signatory should determine whether the budget proposal contains enough detail to make an informed decision regarding reasonableness of costs and compliance with any statutory requirements, or whether a more detailed budget is required.

Generally, an FPE does not submit an audit as part of the application process.

**Award Processing Requirements for FPEs:**

 For all grants and letter grants to FPEs (not including LOAs under C-175 authority, which are described in Chapter 3.K.4), the GO or authorized signee must:

- Use MyGrants.
- Assign a GOR, if applicable.
- Complete a written risk assessment.
- Check SAM.gov.
- Check SAM.gov Responsibilities and Qualifications, if applicable.

140

**AR 000152**

Not for Public Release
Department of State Federal Assistance Directive

- Complete a monitoring plan; and
- Close the award in MyGrants, within 12 months of receipt of final reporting, or within 12 months of the end of the period of performance, if no final report is required.

**Monitoring:** Monitoring of all Department assistance awards, including grants and letter grants to FPEs, is mandatory to determine whether the intended activities, goals, and objectives are being accomplished with Federal funding. It is understood that the type and scale of monitoring that GOs, GORs, and authorized signatories will do on awards to FPEs may be very different from what is standard in grants to organizations or individuals. The extent and type of monitoring will depend on the Federal Assistance team's assessment of risks, including the overall financial capacity, stability, and funds management processes of the recipient. A written risk assessment and monitoring plan are required for all assistance awards, including to FPEs.

The monitoring plans should be realistic and for each element listed, corresponding documentation must be saved in the grant file.  A Letter Grant to a Trust Fund may rely on U.S. representation on a Governing Board or other representation in the organization or in the Trust. Any documentation related to U.S. representation or oversight should be part of the grant file.

Financial monitoring may be more limited on FPE awards. As a general matter, FPEs are not expected to subject their records to inspection by officials of each country making an award or contribution to the entity. It is expected that the recipient FPE will adhere to the rules, regulations, policies and procedures of its organization, including adhering to the organization's audit standards.

Nonetheless, the Federal Assistance team is responsible for ensuring that the recipient adheres to the terms and conditions of the award agreement, and for confirming, to the extent possible, that funds are used in a manner consistent with their appropriated and awarded purpose.

Methods of monitoring of awards to FPEs will vary, but may include:

- Review of award-specific performance reporting.
- Grant/Cooperative Agreement may require financial reporting on the SF-425.
- Review of the FPE's annual financial reporting.
- Participation on boards, committees, or working groups related to the funded activity.
- Consultations with the FPE and other donors.
- Review of the FPE's audited financial statements.

**Reporting:**

The performance and financial reporting requirements, including format and due dates, must be specified in the FPE award documents.  A grant/cooperative agreement to an FPE must outline the due dates and reporting requirements in the award provisions.  That can include requesting the FPE submit financial reporting either on the SF-425 Federal Financial Report (FFR) or in its own program expenditure format. Some FPEs provide annual financial reporting to all donors through their own web portals.

141

AR 000153

Not for Public Release
Department of State Federal Assistance Directive

Performance reporting: Regular performance reporting is strongly recommended but may not be appropriate for all awards. At a minimum, a final or annual report should be required.

The GO or authorized signatory should determine whether the reporting provided by the recipient will be enough to adequately track and monitor program performance and appropriate use of funds. As with other types of awards, a GOR assessment is required for any report submitted throughout the period of performance and an overall assessment is required at the end of the period of performance.


**Payments:**

Payments are requested by the recipient organization on the SF-270—Request for Advance or Reimbursement, or through PMS.

PMS must be used for domestically issued awards to a U.S.-based FPE. Waivers for exceptional cases may be granted by CGFS/FPRA/FAFM (FAFM@state.gov). See Chapter 4.C.1 for more information. For grants not paid through PMS, the recipients, in rare cases, may request a waiver from using the SF-270. The GO or authorized signatories must seek approval from CGFS/FPRA/FAFM before allowing the recipient to use any other form of payment request, such as a "call for funds."

Payments should be requested based on a schedule of milestones specified in the FPE award documents. Lump sum payments are discouraged. The award provisions for grants/cooperative agreements to FPEs should provide instructions on how to request payments.  While 2 CFR § 200 doesn't apply, payment should still be based on immediate needs and not issued as one payment up front or on a defined payment schedule.  As projects are often delayed, such payment schedules can be problematic.

As noted above, letter grants to FPEs generally should not be paid out in one advance payment. Like a grant/cooperative agreement, payment should be made based on programmatic needs. Only rarely and with a strong justification should a letter grant be paid fully in advance.  If the GO or authorized signatory is confident of the overall financial capacity and funds management processes of the recipient, and particularly if the United States is an active member state of the organization, approval for lump sum payments may be obtained from CGFS/FPRA/FAFM (FAFM@state.gov) on a case-by-case basis.

Letter Grants to a Trust Fund are generally paid fully in advance with "purpose accomplished upon disbursement" language in the award provisions.  Generally, this is the only type of award that it is appropriate to pay fully in one advance payment.


## K.2. VOLUNTARY CONTRIBUTIONS

142

Not for Public Release
Department of State Federal Assistance Directive

A voluntary contribution is discretionary financial assistance provided pursuant to contribution authority included in the appropriation. Voluntary contributions are generally used to provide funds to foreign countries, international societies, and commissions which generally fall under the FPE definition.  Funds can be used to:

- Directly support the activities of the organization; or
- Sustain the general budget and operations of the organization.

Use of voluntary contributions requires statutory authority.  If a bureau/office/post is unsure whether "contribution authority" exists for the funding or program, the Office of the Legal Adviser, must be consulted.  While voluntary contributions are used to advance specific activities and goals of the U.S. government, the central purpose of the award is to enable the organization to carry out its activities.

A voluntary contribution to an organization generally consists of three components:

(1) DS-1909 to establish the FAIN (DS-1909 not necessarily shared with the recipient).
(2) Contribution Letter or Memorandum; and
(3) Terms and conditions unique to that organization or program, as appropriate.


Voluntary contributions may also be issued as a federal award with specific terms and conditions attached.  While many of the Department's standard Award Provisions to FPEs do not specifically apply to voluntary contributions, where applicable and appropriate it is strongly recommended that they be incorporated into the award documents.

 The voluntary contribution provisions:

- Should identify and include measurable objectives.
- May specify how the funding being contributed may be used as it relates to the budgets and activities of the organization to include earmarking funds for specific authorized purposes.
- May reference specific reporting requirements including any framework or other agreements with the organization and may require quarterly, annual or other periodic progress and financial reports including to Congress.
- May include conditions related to legal requirements attached to the funding being provided.
- May include other appropriate requirements as determined by the relationship and nature of the contribution to the organization.


The GO or signatory could also consider including award provisions similar to those in a letter grant or grant/cooperative agreement to an FPE, such as: Trafficking in Persons (if there are subawards); terrorist financing; audits; UNWRA prohibitions; and other terms relevant terms as negotiated.

143

**AR 000155**

Not for Public Release
Department of State Federal Assistance Directive

The underlying obligating letter and DS-1909 can be signed by a warranted GO.  Chiefs and
Deputy Chiefs of Mission, Under Secretaries, Assistant Secretaries or, with FAPD permission,
other high-level delegated officials may sign the letter. The official who signs the letter is
responsible for taking adequate steps to ensure proper use of the funds by the FPE, and
adherence to award terms and conditions, or for delegating that responsibility.

All voluntary contributions must be issued in MyGrants. If a high-level official intends to
delegate the processing and signing of the DS- 1909 to another bureau staff member, then the
staff member must obtain a proxy warrant by applying through the warrant database. FAPD must
review and approve all proxy warrant requests. A GO or proxy GO is not required to designate a
GOR on a voluntary contribution even if the total Federal share exceeds $100,000.

**Application Requirements for Voluntary Contributions:**

Voluntary contributions are exempt from competition requirements, and no sole source
justification is required. The organization is not required to apply, although the
bureau/office/post may request an application and budget.

- Organizations receiving voluntary contributions are required to have a UEI and to register
  in SAM.gov.

Organizations generally do not complete the SF-424 application forms nor submit audits in
connection with voluntary contributions.

**Award Processing Requirements for Voluntary Contributions:**

 For all voluntary contributions, the GO or authorized signatory must:

- Use MyGrants;
- Check SAM.gov;
- Complete a written risk assessment and monitoring plan; and
- Close the award in MyGrants within 12 months of receipt of final reporting, or within 12
  months of the end of the period of performance, if no final report is required.

**Reporting:**

It is at the GO's discretion whether to require performance or financial reporting for a voluntary
contribution. Any required reporting, including format and due dates, must be specified in the
contribution award documents.

**Risk Assessment and Monitoring:**

Monitoring is mandatory for all federal assistance awards, including voluntary contributions.
The level of monitoring required to ensure that Federal funds used for the intended objectives is
determined by the GO/proxy GO or signatory of the award.  The monitoring plan should be
realistic based on the amount of funding, any representation the Department may have in the

144

AR 000156

Not for Public Release
Department of State Federal Assistance Directive

recipient organization and the period of performance of the award.   The type and scale of monitoring that GOs, GORs (optional), and authorized signatories will do may be substantially different from what is standard in grants to organizations or individuals. The extent and type of monitoring will depend on the Federal Assistance team's assessment of risks, including the overall financial capacity, stability, and funds management processes of the recipient. A written risk assessment and monitoring plan are required for all voluntary contributions.

Financial monitoring may be more limited on voluntary contributions. As a general matter, FPEs are not expected to subject their records to inspection by officials of each country making an award or contribution to the entity.  It is not uncommon for an FPE to complete annual financial reports which are made public or available to funders. This type of report can be requested or reviewed as part of monitoring.  It is also expected that the recipient FPE will adhere to the rules, regulations, policies and procedures of its organization, including adhering to the organization's audit standards.

Within this framework, the Federal Assistance team is responsible for ensuring that the recipient adheres to the terms and conditions of the agreement, and for confirming, to the extent possible, that funds are used in a manner consistent with their appropriated and awarded purpose.

**Note:** Voluntary contributions (see Chapter 3.K.2) require a risk assessment using the FAPD worksheet or, as is the case with any risk assessment, bureaus/offices/posts may use their own risk assessment template provided it has been approved by FAPD.

**Payments:**

 Payments may be requested by the recipient organization:

- Through PMS.
- On the SF-270—Request for Advance or Reimbursement; or
- Through the pledge letter and authorized by the funding office on the SF-1034—Public Voucher for Purchases and Services Other Than Personal.


Payments for voluntary contributions may be made in one lump sum, or according to an established schedule.


## K.3. ASSESSED CONTRIBUTIONS

An assessed contribution refers to funding provided to meet annual obligations of membership in international multilateral organizations, typically pursuant to treaties ratified pursuant to the advice and consent of the Senate or otherwise authorized by specific acts of Congress. Such contributions are not considered Federal financial assistance.  However, consistent with OMB regulations, assessed contributions will be tracked as Federal financial assistance. Many of the Department's standard Federal financial assistance policies, including monitoring requirements,

AR 000157

Not for Public Release
Department of State Federal Assistance Directive

do not specifically apply to assessed contributions, but, where applicable, bureaus/offices/posts are strongly recommended to follow them.

 A GO, Assistant Secretaries or their delegates, or designated U.S. mission/embassy officials may execute an assessed contribution to a foreign public entity.  A high-level official may delegate the processing and signing of the DS- 1909 in MyGrants to another bureau staff member; that staff member must obtain a proxy warrant by applying through the warrant database. A GO is not required to designate a GOR on an assessed contribution even if the total Federal share exceeds $100,000.

The instrument used to transfer the assessed contribution to the international organization and to obligate funds in GFMS or RFMS may be a letter signed by the authorized official, or a notice of award through MyGrants utilizing the DS-1909. No terms and conditions are generally attached to the assessed contribution. Assessed contributions are exempt from competition requirements, and no sole source justification is required.

**Award Processing Requirements for Assessed Contributions:**

For all assessed contributions, the following apply:

*   Use of MyGrants is required.
*   DS-1909 is optional, and recipient does not necessarily need to see the DS-1909; and
*   Closeout is required in MyGrants.

**Reporting:**

Assessed contributions generally do not require any individualized reporting from the recipient, although the organizations generally report to the collective membership.

**Monitoring:**

Monitoring is not required but is recommended where possible.

**Payment:**

Payment is generally authorized by the funding office on the SF-1034—Public Voucher for Purchases and Services Other Than Personal.

## K.4. LETTERS OF AGREEMENT UNDER C-175

When agreements create obligations that are binding under international law between the U.S. Government and a foreign government or a multilateral organization, they require Department Circular 175 (11 FAM 720—Negotiation and Conclusion) authority to negotiate and conclude. Letters of Agreement (LOA) under C-175 authority are not considered Federal financial

146

AR 000158

Not for Public Release
Department of State Federal Assistance Directive

assistance; however, sub-obligations are treated as Federal financial assistance, as described under "Bulk Obligations," below.

Bilateral and multilateral agreements that are binding under international law and have funding attached are generally divided into two categories, below.

**Note:** If a bureau or program is funding C-175 agreements that do not fit into one of these categories, the bureau should contact FAPD, CGFS/FPRA/FAFM, and the Office of the Legal Adviser for guidance.

- **Bulk Obligations:** Bulk obligations are the initial, over-arching agreements with a Foreign Public Entity, such as a foreign government, that support a bulk obligation of funds. These bulk obligations use Budget Object Code (BOC) 4123, and may later be sub-obligated into implementing vehicles, including, but not limited to grants, contracts, and travel authorizations. The initial agreement and initial bulk obligation are not considered Federal financial assistance and are **not executed in MyGrants** or reported to USASpending.gov. However, a grant or cooperative agreement that is sub-obligated out of a C-175 LOA must be executed following all applicable FAPD procedures, including checking for exclusions in SAM.gov, checking the proposed recipient's performance records in the Responsibility/Qualification records in SAM.gov if the award is over $350,000, processing the award in MyGrants and reporting to USASpending.gov. When property is transferred to a foreign government under such an agreement, as long as the LOA includes a provision legally vesting title in the host nation to the personal property furnished for assistance purposes, then the issuance of a property grant is not required.

- **Non-Bulk Obligations:** Non-bulk obligations are LOAs with a Foreign Public Entity, generally a multilateral organization, which are not later sub-obligated.  Non-bulk obligations must be processed in MyGrants. These treaty-based LOAs are considered binding international agreements, and not federal assistance. While these agreements are not considered assistance under domestic law and no other Department grant policy requirements apply, they must be executed using **BOC 4124** and reported to USASpending.gov to comply with transparency and data reporting requirements. Therefore, they must be assigned a FAIN as a letter of agreement "LA" (see Chapter 3.D) and reported to USASpending.gov. These LOAs do not require signature by a warranted Grants Officer.

147

**AR 000159**

Not for Public Release
Department of State Federal Assistance Directive

# CHAPTER 4: POST FEDERAL AWARD REQUIREMENTS

## A. USASPENDING.GOV REPORTING REQUIREMENTS

The Digital Accountability and Transparency Act (DATA) of 2014 (Public Law 113-101—May 9, 2014) and the Federal Funding Accountability and Transparency Act (FFATA) of 2006 (Public Law 109-282—Sept. 26, § 2006 requires federal agencies to disclose complete and transparent expenditure information so that the public can track government spending on Federal awards and programs. The public can view this data on the USASpending.gov website.

The award information visible on USASpending.gov includes the recipient's name and address, award amount, Assistance Listing, issuing office, purpose of the award, place of performance, outlays to date, and period of performance. For awards to individuals, the recipient's name and the award purpose are not visible on USASpending.gov.

To comply with these requirements, all Federal awards must be processed in MyGrants, which automatically reports to USASpending.gov.

**Note:** USASpending.gov requires a principal place of performance for each award. This data is captured in MyGrants from the "Primary Country" field. Only one country may be selected. If the award will be implemented in more than one country, or regionally, the GO should select the country where most of the work will be performed. For global programs, or where it is impossible to determine where most of the work will be performed, the GO should select the country where the recipient headquarters are based.

**Non-disclosure of information:**

The GO, in coordination with the programming office and the potential recipient, is responsible for determining whether disclosing award information on USASpending.gov would threaten national security interests or jeopardize the safety of a recipient or its beneficiaries.

While the GO should maintain a strong preference for transparency, the GO may determine that the award should be marked "sensitive" in the following situations:

- When public disclosure threatens national security interests.
- When public disclosure is likely to jeopardize the personal safety of U.S. personnel or of recipients.
- When public disclosure would interfere with the Department's ability to effectively conduct foreign assistance activities.

AR 000160

- When there are legal constraints on disclosing the recipient's business or proprietary information.
- When the laws or regulations of a recipient country apply to a bilateral agreement and restrict access to information; or
- When private information about individuals would be revealed.

Awards that are determined to be "sensitive" must be marked accordingly when processing in MyGrants. Marking an award "sensitive" in MyGrants will prevent the award information from being publicly available on USASpending.gov, thus ensuring the confidentiality and safety of a recipient.

The "sensitive" designation generally flows down to any subawards that the prime recipient issues. Therefore, when an award is marked sensitive, the GO should indicate in the notice of award that the award has met the reporting exemption under 2 CFR § 25.110(a)(2)(i) and therefore the recipient is exempt from the requirement to report its subawards to USASpending.gov. Sensitive awards are also generally exempt from branding requirements as well (See Chapter 2.N.7).

**Emergency Redactions:**

From time to time, the Office of Foreign Assistance (F) will issue guidance for emergency redactions.  When such guidance is released, GOs are required to adhere to it.  Current emergency redactions are in effect for Afghanistan and Ukraine.  For more information, contact the appropriate FAPD desk officer.

## B. KICKOFF MEETINGS

While not required, kickoff meetings are a good way to ensure that recipients understand the details of the award agreement they have signed. A kickoff meeting is a conversation, either in person or over the phone, between the recipient and the Federal Assistance team members. These generally occur after the award is signed, but could occur prior to signing, to ensure the proposed recipient understands the responsibilities prior to accepting the award.

Topics to cover include:

- Roles and responsibilities of the team members.
- What's next – how does the recipient get started?
- How to request payments.
- Reporting requirements, including format and frequency.
- Explanation of key terms and conditions, such as branding, prior approval requirements, and Fly America regulations.
- Program planning and timeline for activities.

149

**AR 000161**

Not for Public Release
Department of State Federal Assistance Directive

For large recipient organizations, such as universities, it is a best practice to include not only the recipient's program managers on the call, but also the finance team or sponsored programs office that will be responsible for filing reports and tracking funds.

## C. PAYMENTS

Payments may be requested by the recipient on or after the award issue date. The recipient may request payment on either an advance basis for immediate cash needs, or on a reimbursement basis. Advance payments should be used for recipients that have an adequate financial management system and are able to limit cash on hand to minimize the time elapsing between the transfer of funds and disbursement. Advance payments for the entire amount of the award are generally discouraged unless the award is very small with only one or two budget items. For FAAs, a payment schedule is listed in the Award Provisions, and the recipient should request payments according to the milestones in the schedule.

Payments should only be made to the prime recipient and, unless required by special circumstances, will be paid via Electronic Funds Transfer.

Payments should not be approved unless the GO/GOR have ensured that the recipient:

- Is not late in submitting any required documentation or reporting.
- Is not requesting more funds than is appropriate, considering upcoming activities or work accomplished.
- Does not have excess cash on-hand, indicating that they have drawn-down more than their actual immediate needs; and
- Is not otherwise failing to meet the terms and conditions of the award.

Payments must be made no later than 30 calendar days from the date the request for payment is received unless the Federal Assistance team believes the request to be improper, or unless subject to a payment pause specific to a current Executive Order (or Orders). In general, requests for full payment should not be processed unless all activities during the reporting period have been completed.

There are two methods to process payments from the Federal award to the recipient. The recipient may request funds:

- Through the Payment Management System (PMS) operated by the Department of Health and Human Services (HHS); or
- By submitting a SF-270—Request for Advance or Reimbursement.

Recipients may not draw down funds without the affirmative authorization of the Department of State. In addition, recipients must submit, with each PMS or SF-270 payment request, a detailed explanation justifying the request.

150

**AR 000162**

Not for Public Release
Department of State Federal Assistance Directive

## C.1. PAYMENT MANAGEMENT SYSTEM (PMS)

The Payment Management System (PMS) is a U.S. government-wide centralized Federal award payment and cash management system, operated by the Program Support Center (PSC) at the U.S. Department of Health and Human Services (HHS). CGFS/FPRA/FAFM is the Department's liaison with HHS, and questions about PMS policy, procedures and use should be addressed to CGFS/FPRA/FAFM (FAFM@state.gov).

Per 4 FAM 616a.(3), the Department has mandated PMS to be the sole electronic payment method for domestically-awarded Federal financial assistance to U.S.-based organizations where the recipient is expected to receive multiple payments. PMS is not usually used for awards where the recipient will receive a single lump-sum payment or when the recipient is based abroad or is a foreign public entity or public international organization. It is also not used for payments to individuals. This requirement may be waived with prior approval from FAFM in certain circumstances. It is also not used for payments to individuals. This requirement may be waived with prior approval from FAFM in certain circumstances.

**Note:** PMS does not interface with the financial systems used by posts (RFMS), and therefore the following guidance applies only to awards issued domestically. Awards issued overseas utilizing RFMS cannot use the PMS payment method.

The Department's policy regarding use of PMS is stated below.

- Use of PMS is mandatory for domestic bureaus making awards to U.S.- based organizations when the recipient will receive multiple payments.
- Use of PMS is neither required nor recommended for foreign-based organizations. PMS may be used by domestic bureaus to pay foreign recipients if they have a corresponding U.S. domestic bank account (i.e., an American Banking Association (ABA) routing number) for funds transfer. However, due to delays in the transfer of funds between the U.S. and foreign banks, payment routing issues, exchange rate problems and additional conversion/transfer fees, use of PMS for foreign recipients is discouraged. Please contact CGFS/FPRA/FAFM (FAFM@state.gov) if you are considering paying a foreign recipient through PMS.
- Individuals are not paid through PMS, but through GFS Vendor Claims in Charleston for domestic awards.
- All exceptions to the use of PMS by U.S.-based organizations must be justified to and approved by CGFS/FPRA/FAFM (FAFM@state.gov) prior to negotiating payment arrangements with the recipient.

As of FY 2025, all bureaus that use PMS are required to process payments through the 2-step approval process.  The Department no longer allows the HHS approval method, in which an HHS (non-State) employee would approve payments on behalf of the Department. Instead, the awarding bureau approves in PMS for Department awards. Bureaus must have strong internal control procedures established between the award team to ensure that:

151

**AR 000163**

Not for Public Release
Department of State Federal Assistance Directive

- The recipient has submitted the latest SF-425 (FFR) and other required reporting.
- There are no other bureau specific restrictions.
- There has been no unexplained excess cash reported.
- The bureau has obtained the required a Foreign Assistance Obligation or Disbursement Approval Form (SBO Memo), as required, with regard to a foreign assistance payment.

If it is not feasible for the GO to obtain access to approve payments, the GOR must provide assurance to the GO that recipient is in compliance with stated payment approval requirements. The GO's approval may be given in writing to the GOR or FMO to process payment. Documentation of the GO's review and approval of the payment must be saved in the official Federal award file in MyGrants.

Additional information on how to use PMS can be found in the CGFS/FPRA/FAFM's Knowledge Base Article 14982 : What is the Payment Management System (PMS)

## C.2. SF-270, REQUEST FOR ADVANCE OR REIMBURSEMENT

Recipients that do not submit requests electronically through PMS must request payment by submitting a signed SF-270, Request for Advance or Reimbursement to the award management office identified in the notice of award DS-1909 or DS-1909I. Disbursements requested on SF-270 forms are usually processed via an Electronic Funds Transfer (EFT).

**It is the responsibility of the recipient to complete, sign, and submit the form SF-270.**

Instructions on completing the SF-270 can be found in the CGFS/FPRA/FAFM Knowledge Base Article 34956:  What is the correct form for requesting federal assistance / grant payments

**Note:** The SF-270 request for payment must be denominated in U.S. dollars, even if payment is made in local currency.

**Approval Process:**

The GO must approve all payment requests. Working with the GOR, the GO ensures that the payment request aligns with the payment schedule in the award provisions, that the recipient complies with the terms and conditions of the award (including being current on all reporting requirements), that the award remains on schedule, and that the recipient does not have excessive cash on hand. After completing this review, the GO signs the second page of the SF-270 in the space marked "This space for agency use" or documents approval in writing (via email or grant note) or with an electronic signature.

Once the GO approves the payment request, the GO or GOR forwards it to the FMO or budget office to certify funds availability. Under Federal assistance policy as outlined in 4 FAM 061.2 and 4 FAM 617, the GO holds responsibility for the award and payments, while the certifying

152

**AR 000164**

Not for Public Release
Department of State Federal Assistance Directive

officer ensures the availability of funds. The GO retains final authority to approve payments and must upload the approved SF-270 to the official Federal award file in MyGrants.

Additional approval steps for foreign assistance award payments are detailed in ALDAC 25 State 24730.

A webinar on the payment process, including differences between foreign assistance and non-foreign assistance awards is available on the CGFS FPRA/FAFM SharePoint site.

## Payment Justifications

As of Executive Order 14222 and ALDAC 25 State 24730, all payment requests require a brief justification in order to be reviewed and processed.  In PMS, this requirement has been incorporated into the submission process.

Department officials reviewing the payments are required to provide approval comments indicating why they approve payment.

For SF-270 payments, payment justification is required, however, the SF-270 request form does not have space dedicated to this purpose.  As such, the recipient may attach a justification for payment to the request or provide that justification by other means such as email.  The justification must be included in the payment package.

A sample format for payment justification is included here for reference:

*"We are requesting payment for (what the expenses specifically are for) to cover the period of (Date A) to (Date B) as part of the (XYZ program or U.S. effort to promote XYZ or specific activity). This is an (advance, reimbursement or combination of advance reimbursement). This payment is the (Final) or a (Partial Payment #) request to achieve the goals of project. (More as Needed)."*

**Payment Currency:**

While the DS-1909/DS-1909I Notice of Award package and the SF-270 payment request must be denominated in U.S. dollars, the actual disbursement or payment to the recipient may be in either U.S. dollars or foreign currency. The currency of payment is usually specified in the award terms and conditions.

If payment is in foreign currency, the rate of exchange will be that in effect on the date the payment is made as determined by the U.S. Treasury. A GO does not have the authority to establish a fixed rate of exchange in the Federal award.

**Method of Payment:**

153

**AR 000165**

Not for Public Release
Department of State Federal Assistance Directive

Recognizing that there are locations and instances where Electronic Funds Transfers (EFT) is not feasible, payment by check or cash may be allowed with the approval of the GO and the FMO, and in accordance with embassy and Department policies.

**Cash Payments:**

Pursuant to 4 FAM-390—Cashier Operations and 4 FAM 391.5 cash payments should only be made if there is a 31 CFR 208.4 waiver and one of the following circumstances apply:

- Payment is less than $25;
- Payment is needed where the political, financial, or communications infrastructure of a foreign country does not support payment by a non-cash mechanism;
- Payment involves national security interests, military operations, law enforcement, or national disasters; and
- Payment must be made to deal with an emergency.

**Note:** Poor planning is not an acceptable reason for using cash payments.

## C.3. IMPROPER PAYMENT

An improper payment is any payment that should not have been made, or that was made in an incorrect amount under applicable requirements. Examples include payment to an ineligible recipient, payment for an ineligible good or service, payment lacking enough documentation, over- or under-payments to eligible recipients, improper denial of payments, and duplicate payments.

The Department is committed to eliminating fraud, waste, and abuse in Federal programs, including the reduction and recapturing of erroneous payments. Prevention of payment errors before they occur should be the priority. All bureaus/offices/posts must comply with the requirements of the Improper Payments Elimination and Recovery Act (IPERA) of 2010 (P.L. 111-204) and use every tool available to identify and reclaim the funds associated with improper payments. Procedures for recovering funds are identified in 4 FAM-320—Collections.

The Department is required to review all programs and activities that it administers on an ongoing basis, and to identify those that may be particularly susceptible to significant erroneous payments. All bureaus/offices/posts are required to strengthen financial management controls so that there is better detection and prevention of improper payments. Implementation of IPERA requirements should be a key element in risk management plans and should be taken into consideration during the closeout process.

154

AR 000166

# D. MONITORING AND REPORTING

Monitoring of all Department assistance awards is mandatory. The goal of monitoring is to determine whether the recipient's programmatic performance and financial management are adequate, whether the intended activities, goals, and objectives are being achieved, and whether the recipient is in compliance with the Statutory Authority, 2 CFR § 200, Subpart D—Post Federal Award Requirements, Department policy, and the award terms and conditions. Monitoring should be conducted in accordance with the monitoring plan developed during the pre-award phase.

The GO and the GOR are responsible for ensuring that monitoring is conducted and documented for every award (see Chapter 2.O). The GO and GOR should upload evidence of monitoring to the official Federal award file in MyGrants. This could include GOR assessment of reporting, comments added by the Federal Assistance team, memos to the files, copies of email exchanges on important programmatic or financial issues, or site visit reports. In MyGrants, the GO and GOR can use post-award and monitoring task functionality as an efficient way to track activities, completion dates, and overdue tasks.

The Department is responsible for oversight of the Federal award recipient's award activities. This is accomplished through reviewing recipient reporting, as well as other techniques described below.

The recipient must submit performance reports at the interval required in the award provisions. Reporting cannot be mandated more frequently than quarterly unless the recipient is formally designated as a high-risk recipient. Reporting cannot be less frequent than annually.

The recipient is responsible for monitoring the activities, performance, and expenditures of any subrecipients. The recipient must have monitoring tools in place to ensure that the subaward is used for authorized purposes, and that the subrecipient is complying with applicable regulations and the terms and conditions of the subaward (2 CFR § 200.332). The recipient is also responsible for entering subaward data into the FFATA Subaward Reporting System (FSRS) for subawards of $30,000 or more unless the award was deemed sensitive by the GO (see Chapter 4.A).  When appropriate, the Federal Assistance team's monitoring of the recipient may include confirming that the recipient is following the recipient's own procedures for screening subrecipients for subawards, or that the recipient is properly monitoring and reporting on subawards.

See Chapter 2.N.5 on negotiating the reporting requirements for suggested reporting due dates and other requirements.

The MyGrants Post-award Activities (PAA) function allows Federal Assistance team members to track and document post-award tasks, such as review of programmatic and financial reports, site visits, or other monitoring activities. In addition, PAA allows users to create workflows for submitting, reviewing, and monitoring post-award activities between the GO, GOR, and award

155

recipient, including automated reminder email notifications to complete PAA tasks. Once a PAA is completed, all attached documents are automatically move to the award file.

Use of the PAA function is mandatory for all domestic-based GOs and GORs who are using MyGrants. In addition, bureaus must designate an official to perform quarterly reviews of MyGrants PAA function reports to verify that GOs and GORs are complying with oversight requirements.

## D.1. FINANCIAL REPORTING

The GO and GOR are responsible for monitoring the financial capability, stability, funds management of the recipient, and the actual expenditures on the award activity.

**It is not generally appropriate for the Federal Assistance team to request receipts or detailed expenditure reports from the recipient. However, if there are suspected excessive or irregular expenditures, it is permissible to request supporting documentation. Examination of receipts and spending reports often occurs during site visits.**

The government-wide form for reporting assistance financial expenditures is the SF-425 Federal Financial Report (FFR). Financial reports must be submitted by the recipient to the GO and GOR or uploaded to MyGrants as specified in the award provisions. For additional information, see 2 CFR § 200.328. No financial reporting is required on Fixed Amount Awards or Awards to an Individual with a fixed budget.

When reviewing the SF-425, GO and/or GOR should ensure that:

- All numbers add up correctly;
- The amount of funds the recipient reports having received match payment records as closely as possible;
- The recipient does not have a large balance of excess funds on hand (indicating they are receiving more funds than necessary to meet near-term expenses); and
- The amount of funds expended is commensurate with the work accomplished on the award.

The GO and GOR do not monitor, on a routine basis, whether expenditures match the approved budget. The approved budget is a pre-award estimate, and actual expenditures may vary as the recipient begins implementation. 2 CFR § 200.308 allows recipients considerable flexibility in adapting the budget as necessary to carry out the program objectives and describes when prior approval for budget changes is required. See Chapter 4.E for more information on prior approvals and budget realignments.

Instructions on completing the SF-425 can be found on the CGFS/FPRA/FAFM SharePoint site at: SF425 Federal Financial Reporting Training; or in FAFM's Knowledge Base Article 33674, SF-425 Preparation.

Not for Public Release
Department of State Federal Assistance Directive

The GO or GOR must document the official Federal award file to indicate they have reviewed and approved the SF-425, either by signing the form, adding a note to the official Federal award file in MyGrants, or reviewing and accepting in PMS.

**Note:** When PMS is used, GO/GORs must review the SF-425 electronically in PMS.

## D.2. PERFORMANCE REPORT

A performance report is a narrative report that compares actual to planned performance and indicates the progress made in accomplishing the goals and objectives of the program as outlined in the original application and award provisions. Measuring performance of an award should follow guidance in 18 FAM 301.4.  Reports should be submitted by the recipient to the GO in accordance with the reporting schedule in the award provisions.

There is no approved government-wide format for performance reports. The awarding office should include details in the award provisions (specifically, in the section titled "Additional Bureau/Post Specific Requirements") on the type of information that should be included in the report. This should include an overall description of progress, successes and challenges identified during the reporting period, and progress towards meeting any performance indicators included in the application or the award provisions. For foreign assistance-funded activities, these include the Standard Foreign Assistance Indicators. Awarding Offices should only solicit information in performance reports that is necessary for the effective monitoring and evaluation of the award.

For awards issued or cost amended after October 1, 2024, or for awards amended to apply the OMB 2024 CFR Revisions, bureaus, offices and posts may give recipients approval to submit required program reporting and official correspondence in languages other than English. The Award Provisions include a provision where the Grants Officer must indicate that an alternate language has been approved. The GO or GOR must document the official Federal award file in MyGrants to indicate they have reviewed the performance report, and the GOR must provide a written assessment of the report. This documentation could be in the form of an email.

## D.3. DELINQUENT REPORTS

A report is considered "delinquent" when it is not submitted by the due date required in the award provisions. When a recipient is delinquent in submitting reports, written reminders should be sent. If, after several reminders, the recipient fails to comply with the reporting requirements, the GO may suspend payments, or the assistance award may be terminated for non-compliance.

It is the Federal Assistance team's responsibility to ensure processes are in place to prevent approval of payments if the recipient is delinquent in reporting.

## D.4. MONITORING TECHNIQUES

AR 000169

Not for Public Release
Department of State Federal Assistance Directive

The GO and GOR must carefully review all reports submitted by the recipient. Additional monitoring techniques include, but are not limited to:

- Phone calls or emails exchanges with the recipient;
- Attending events or trainings funder under the award;
- Monitoring by third-party contractors hired by the program office. This is particularly helpful in conflict areas; or
- In-depth review of recipient operations, either by conducting a site visit or by requesting that the recipient email copies of all applicable internal policies, award documentation, and supporting financial documents for the Federal Assistance team to review without traveling.

## D.5. SITE VISITS

The Federal Assistance team may conduct site visits or virtual desk audits to review recipient records, performance, organizational procedures, and financial control systems, as well as to conduct interviews and provide technical assistance as necessary. Any member of the Federal Assistance team may conduct the site visit, but it should be well coordinated internally. It is a best practice to have both the GO and GOR present.

The recipient should be given advance notice of the site visit, with an agenda and a list of required documents, so the recipient has time to assemble records and ensure staff are available. The official conducting the site visit may ask to see any documents, systems, invoices, property, or recipient staff relevant to the award. Site visits should be conducted in the least disruptive manner possible and must be adequately documented in the official Federal award file in MyGrants.

A long-form and short-form checklist for documenting a site visit is located in the FAPD Toolkit. This template must be used unless the bureau/office/post submits a template document to FAPD and receives approval to use the alternative document.

A site visit is generally scheduled because it was planned for in the monitoring plan, based on the pre-award risk assessment. A site visit may also be triggered by concerns that arise during award implementation, because of a request by the recipient or other interested party, or to maximize resources when the GO/GOR has other official business in the same geographic area.

Some concerns that may lead to a site visit or virtual desk audit might include:

- Significant audit findings or lack of audit resolution.
- Change in recipient's key management or staff leadership
- Apparent lack of internal controls and accounting procedures.
- Changes in scope of work or budgets without prior approval.
- Over-expenditures, lack of or excessive payment requests.
- Payment request amounts do not correspond to the level of program activities.
- Delinquent reporting, or failure to report problems.
- Suspected fraud, waste, or abuse.

AR 000170

Not for Public Release
Department of State Federal Assistance Directive

- Failure to follow-up on previously identified issues.
- Concerns about the recipient's oversight of subrecipients.

A significant portion of site visits deal with financial oversight. The most common recipient financial problems found during reviews include:

- Lack of knowledge of regulatory and grant requirements.
- No written policies and procedures.
- Expenditures are not supported by documentation.
- Inadequate accounting systems or inability to track costs per award.
- Undocumented and inaccurate reports of employee time.
- Failure to meet or document cost-sharing requirements.
- Delinquent or inaccurate financial reports.
- Lack of internal or budgetary controls.

**Financial Capability and Internal Controls:**

The recipient's internal controls should be written and enforced. The recipient's recordkeeping system should, at a minimum, organize and summarize transactions in a way that provides the basis for preparing financial statements; and provide the lowest level of detail documentation (invoices, contracts, and purchase orders) to be able to trace financial statement balances through the recipient's general ledger, cash, books, and other summary journals to the origin of detailed accounting transactions, and their supporting documentation for audit trail purposes.

All allowable costs must be determined in accordance with generally accepted accounting principles (GAAP) or other international accounting standards as appropriate. If the recipient's accounting system does not meet these standards, the GO should review the risk assessment and determine whether additional risk mitigation measures should be put into place.

**Audits:**

The official conducting the site visit should ask to review any available audits of the organization, including single program audits conducted in accordance with 2 CFR § 200, internal audits, or other U.S. government audits.

## D.6. ANNUAL REVIEW

If the Federal award has a period of performance more than 12 months, an annual review of the award should be conducted by the Federal Assistance team. The following should be reviewed:

- Program Performance Reports compared to the activities scheduled in the award provisions to determine if the award's objectives and goal are being obtained.
- Federal Financial Reports (SF-425) or Payment Requests (SF-270) compared to the approved budget and scheduled activities to determine the appropriateness of payment requests.

159

AR 000171

Not for Public Release
Department of State Federal Assistance Directive

- Risk assessments, theory of change, logic model, and monitoring, evaluation, and learning (MEL) plans should be reviewed and updated to reflect any changes. If no revisions are needed, the official Federal award file should be documented in MyGrants to indicate that.
- The status of obligations and expenditures in the Department's financial systems (GFMS/RFMS); especially on awards with more than one line of fiscal data.
- The status of payments in PMS to confirm proper charges to accounts.

Documentation of the annual review must be uploaded to the official Federal award file in MyGrants.

## D.7. FOREIGN TAX REPORTING

The Department of State, Foreign Operations, and Related Programs Appropriations Act, 2023, (Div. K, P.L. 117-328)  (SFOAA), requires the U.S. government to take certain actions to prevent taxation of funds appropriated in the SFOAA or to obtain full reimbursement of all taxes paid. If taxes or customs duties are assessed against funds appropriated by the SFOAA, the Department must withhold § 200% of unreimbursed taxes or customs duties from funds appropriated for assistance for fiscal year 2023 and allocated for that country's central government. The SFOAA also restricts assistance for any country under a new bilateral agreement unless the agreement includes a provision regarding exemption from taxes or reimbursement of assessed taxes.

Therefore, all recipients that receive an award containing foreign assistance funds must submit a foreign tax report. Recipients are required to submit a report detailing foreign taxes assessed under an award during the prior U.S. government fiscal year (10/01 — 09/30). The report must be submitted to the Grants Officer on an annual basis by February 15. Recipients must also submit an updated report if the foreign government reimburses the recipient for any of the taxes reported in a previous report. The report must include the recipient's name, contact information, award number, and the amount of foreign taxes assessed by a foreign government. Information provided in the report should be provided to F, as applicable, in accordance with guidance provided by F in 24 STATE 110344 (or as updated in subsequent ALDACs).

Taxes to be reported include value-added taxes and customs duties assessed by each foreign government receiving foreign assistance under an award (listed separately) on any purchase of goods or services of $500 or more or any other tax that is assessed in an amount of $100 or more on United States foreign assistance funds under an award. Recipients are not required to report on individual income taxes assessed to local staff or any taxes assessed by a third-party foreign government, which is not a beneficiary of the foreign assistance funds used to finance a particular award.

For additional information on implementation and collection procedures please see the Managing for Results Foreign Assistance Guidance and Resource Library (see Congressional Reports folder).

160

AR 000172

Not for Public Release
Department of State Federal Assistance Directive

## D.8. AUDIT FINDINGS

2 CFR § 200, Subpart F requires recipients with $1,000,000 or more in federal award expenditures in a fiscal year to obtain a single audit or program-specific audit and to submit their reporting package to the Federal Audit Clearinghouse (FAC) within the earlier of 30 days after receipt of their auditor's report, or 9 months after the end of their audit period. The cognizant or oversight agency may extend the 9-month timeframe if the due date places an undue burden on the auditee.  As Key Management Single Audit Liaison for the Department, CGFS/FAFM tracks the status of questioned cost and other audit findings in an annual matrix.

**Resolving Questioned Costs and Other Findings:**

Questioned costs are costs disputed by the auditor because of an audit finding, such as

- A violation or possible violation of a statute, regulation, or the terms and conditions of a federal award.
- Costs incurred appear unreasonable and do not reflect the actions a prudent person would take in the circumstances; or
- Costs are not supported by adequate documentation.

Questioned costs are not considered improper payments until they have been adjudicated. However, once adjudicated, disallowed costs are disclosed in the Improper Payment section of the Department's Agency Financial Report. Program offices work with the recipients to review the terms and conditions of the agreement, regulations, and other documentation to determine the allowability of the costs.

**Management Decision:**

As outlined in 2 CFR § 200.521, the cognizant agency for audit is responsible for coordinating a management decision for audit findings. The GO is responsible for issuing a management decision which must clearly state whether the audit finding is sustained, the reasons for the decision, and the expected auditee action to repay disallowed costs, make financial adjustments, or take other action. If the auditee has not completed corrective action, a timetable for follow-up should be given. Prior to issuing the management decision, the Federal agency or pass-through entity may request additional information or documentation from the auditee, including a request for auditor assurance related to the documentation, as a way of mitigating disallowed costs. The management decision should describe any appeal process available to the auditee. FAFM is coordinating the management decision process for the Department and can provide a template to use when issuing management decisions. Contact FAFM at FAFMGrantAudits@state.gov for additional information.

**Single Audit Appeals:**

The FAFM Director is the Key Management Single Audit Liaison (KMSAL) and responsible for adjudicating and resolving disputes in the management decision review process.

161

**AR 000173**

Not for Public Release
Department of State Federal Assistance Directive

Once the Management Decision Letter (MDL) is issued, the recipient has 60 days after receiving a management decision letter from a GO to submit an appeal. All management decisions and recipient appeal of single audit findings should be submitted to FAFM@state.gov.

The scope of the review of an appeal is limited to:

- New information provided by the recipient that was not considered at the time of the Grants Officer's management decision.
- Mitigating circumstances (for example: something outside of recipient's control).
- Review of applicable laws and regulations and discussion, when necessary, with L.

## E. PRIOR APPROVAL FOR CHANGES TO AWARDS

For awards subject to 2 CFR § 200, the recipient must seek prior written approval from the GO before initiating certain changes. These prior approval requirements are listed in 2 CFR § 200.308 and 2 CFR § 200.407, and are also described in the Department Standard Terms and Conditions.

It is a best practice to alert new recipients to the prior approval requirements as part of a post-award kick-off meeting.

Below is a list of circumstances that typically require prior approval for awards and sub-awards. This list is not exhaustive. The GO has the discretion to approve the following changes in writing via written email or letter, or via formal amendment:

- **Budget Realignment:** For awards where the Federal share of costs is over $350,000, the recipient must request prior approval before transferring funds between direct cost categories if the cumulative cost of the transfer will exceed 10% of the total budget, including cost share. Once the budget alignment has been approved by the GO in writing, the cumulative value of changes resets to 0%. Therefore, the Recipient begins anew in tracking budget adjustments up to the 10% threshold.

**Note:** For awards of $350,000 or less, there is no requirement for the recipient to request prior approval before transferring funds between direct cost categories, unless that change is so great that it will affect the program.

- **Important for awards over $350,000:**
  o   In general, budget realignments should be documented through an amendment.
  o   When requesting approval for revisions, the recipient must use the same format for budget information that was used in their application unless the GO has approved an alternative format.

162

**AR 000174**

Not for Public Release
Department of State Federal Assistance Directive

o    Under 2 CFR § 200.308, the GO must, within 30 calendar days of receipt of the request, review the budget request and notify the recipient whether the budget revisions have been approved. If the revision is still under consideration at the end of 30 calendar days, the GO must inform the recipient in writing of the date when the recipient may expect the decision.

**Note:** There is no requirement on any awards to request prior approval for moving funding between direct and indirect cost categories.

• **Transferring funds from participant support costs to other budget categories:** Recipients must obtain prior approval before transferring any funds for participant support costs in the approved budget to another budget category.
• **Transferring funds from construction to other budget categories:** Recipients must obtain prior approval before transferring any funds for construction costs in the approved budget to another budget category.

• **Minor Changes to Activities:** The GO has the discretion to approve minor changes in planned activities, such as a venue change for an event, via email. Any significant changes to the planned activities to achieve the award's objectives and goals require an amendment.
• **Change in Key Personnel:**  If positions are designated as key personnel in the award provisions, prior approval is required for any changes to the personnel holding those positions. Prior approval is also required if any key personnel disengage from the project for more than three months or reduce the time they devote to the project by 25% or more. The GO has the discretion to provide this approval via email, or via an amendment.
• **Subawards Not in Approved Budget:** Recipients must obtain prior approval from the GO before issuing a subaward if a subrecipient was not proposed by name in the approved budget.
• **Subaward Changes:** If the inclusion of specific subrecipient(s) was a determining factor in the merit review or eligibility process, recipients must obtain prior approval from the GO before it can change subrecipient(s). If the inclusion of specific subrecipient(s) was not a determining factor in the merit review or eligibility process, recipient do not need to obtain prior approval from the GO before it can change subrecipient(s).

Other changes require an amendment and are discussed in the next section.

163

**AR 000175**

Not for Public Release
Department of State Federal Assistance Directive

# F. AMENDMENTS

An award may need to be revised to achieve the objectives and goals in the award. Significant changes to an award must be completed by an amendment issued on a DS-1909 by a warranted GO. All amendments must be processed in the MyGrants system.

There are two categories of amendments: no-cost amendments and cost amendments.

## F.1. NO-COST AMENDMENTS

A no-cost amendment does not obligate the U.S. government to any additional costs to the Federal award. The most common no-cost amendments are:

- **Time Extension to the Period of Performance (commonly referred to as a no-cost extension):** A recipient must request the amendment in writing before the period of performance ends. An amendment to extend the period of performance should be completed prior to the period of performance end date. If all the planned activities have been completed and the objectives of the award have been met, a time extension may not be issued to add new activities to expend remaining funds.
  **Note:** There is no cap on the number of no-cost extensions allowed per award. However, repeated requests to extend an award could point to implementation problems that should be explored with the recipient.
- **Budget Realignment:** See Chapter 4.E—Prior Approval for Changes to Awards.
- **Significant Change in Activities:** Any significant changes to the planned activities to achieve the award's objectives and goals require an amendment Substantively changing the goals and objectives of an award once issued is not permitted. However, minor revisions (including those to wording) of the goals and objectives that do not result in any material change to the scope of the project are acceptable.
- **Change in the Award Provisions or Standard Terms and Conditions:** Any revision to the award provisions requires an amendment. The Department Standard Terms and Conditions cannot be altered except with approval from L and FAPD.
- **Change in Recipient Cost Share:** Any increase or reduction in the recipient's proposed cost share requires an amendment.
- **Deobligation:** In MyGrants, all de-obligations at closeout must be completed via an amendment.

**Note:** On rare occasions, the GO may determine that it is in the best interest of the U.S. government to extend the award after it expires. The MyGrants system does allow awards to be extended after they expire, so no special waiver or approval is required. In these instances, Grants Officers are responsible for fully justifying the extension and documenting the decision in the file. CGFS/FPRA/FAFM and FAPD do not provide waivers or exemptions for these actions.

AR 000176

Not for Public Release
Department of State Federal Assistance Directive

Potential reasons which may justify an extension after expiration:

- If a recipient requests an extension before the award expires and the GO is unable to take action to extend the award before its expiration (for example, the recipient requests the extension during the last week of the fiscal year.) In these cases, the GO should "approve" the extension in writing (and document the file) and extend the award as soon as possible.
- If extraordinary circumstances prevent the amendment of the award before the expiration date, and the GO ultimately decides it is in the best interest of the government to issue the amendment. Where necessary, the GO should coordinate with appropriate offices.

## F.1.a No-Cost Amendment to Apply the OMB 2024 CFR Revisions

A recipient of an award issued prior to October 1, 2024, that has not been cost amended after that date may ask for approval to apply the OMB 2024 CFR Revisions to their award. If the GO approves, the GO must issue a no-cost amendment to apply the FY 2025 Award Provisions and DOS Standard Terms and Conditions.

In general, if the award is amended to apply the OMB 2024 CFR Revisions, the revisions must be applied in full to activities following the date of the amendment.

The Department may not retroactively apply the OMB 2024 CFR Revisions solely to impose additional requirements on activities that preceded the date of the amendment. However, if the recipient asks to apply specific provisions of the OMB 2024 CFR Revisions to activities that preceded the date of the amendment in order to reduce burden, the GO may approve and document the specifics in the Award Provisions.  See FAD v.8 series for additional guidance.

## F.2. COST AMENDMENTS

Cost amendments increase the U.S. government's share of costs to the Federal award. In general, Fixed Amount Awards to organizations and Awards to Individuals with fixed budgets should not require cost amendments, because costs are reasonable and clearly established prior to award and the recipient has agreed to complete the objectives without regard to actual costs involved. See Chapter 3.H on fixed amount awards to organizations, and Chapter 3.I on federal awards to individuals.

A new risk assessment is required for any cost amendment.

**Note:** A GO may not build a large award by executing several small cost amendments, simply to circumvent the limit of their warrant authority.

For non-FAAs, the most common reasons for cost amendments are:

- **Expansion or Continuation of Activities:** It is permissible to obligate additional funds to increase the number or level of activities to better achieve the award's objectives and goals, if the original scope of the award is not changed. The

165

AR 000177

Not for Public Release
Department of State Federal Assistance Directive

award's period of performance may need to be extended to accommodate the additional activities. The GO must ensure that the expansion is an expansion of similar activities, not a significant change in scope. A change in scope may require a new award.

- **Option Years, Continuation, and Multi-year Funded Grants:** For some programs, a bureau/office/post may intend to continue similar activities over multiple years through the addition of new funds when those funds become available. The NOFO for the original award must explicitly state the overall intended size and length of the multi-year program, while making clear that any cost amendments or option years are subject to the availability of funding. However, the GO should consider recompeting these awards, as discussed in Chapter 2.F.

- **Under-estimated Budget:** Although thorough pre-award budget evaluation should prevent an under-estimated budget, it occasionally occurs. If justifiable, and funds are available, the GO may amend an award to cover the under-estimated costs.

- **Exchange Rate Loss:** The recipient may request additional funds. Pending the availability of funds, the GO may issue a cost amendment to cover this allowable cost.

## F.3. AMENDMENT PROCEDURES

**Recipient Request:**

The recipient must request any amendment in writing to the GO. The Program Officer or GOR may provide a recommendation to the GO regarding the recipient's request; however, only the GO can approve an amendment.

The recipient's request must be in writing and include a justification, including a revised budget and/or revised application if appropriate. The request should be submitted in a timely fashion and not risk the award expiring prior to the approval of the request. Any action taken by the recipient prior to the approval of the amendment is at the recipient's own risk.

**Grants Officer Review and Documentation:**

The GO, in consultation with the GOR, reviews and approves – or disapproves – the recipient's request. If the request is approved, the GO issues an amended Notice of Award. GOs must process all amendments in MyGrants (See Chapter 1.E.2).

The GO should indicate the purpose of the amendment on the DS-1909 (e.g., "To extend the period of performance" or "To reduce the target number of English language students"). The purpose will be displayed on USASpending.gov unless the award has been marked sensitive.

Under 2 CFR § 200.308, the GO must review the budget within 30 days of receiving the request, and notify the recipient whether the budget revisions have been approved. If the revision is still

166

AR 000178

under consideration at the end of 30 calendar days, the GO must inform the recipient in writing of the date when the recipient may expect the decision.

For no-cost amendments where the only change is the extension of the period of performance, the DS-1909 may be a stand-alone document for the amendment. For other types of amendments, the GO should attach revised Award Provisions or other documentation to clearly indicate the changes.

For detailed instructions or additional information about MyGrants, go to https://almwebsite-usdos.msappproxy.net/sams/ or contact the ILMS Support Desk.

**Funds Certification:**

- **Cost amendments:** Cost amendments must have current funds available. Prior to the GO signing the DS-1909, the FMO, or their delegated Certifying Officer, must sign the DS-1909 to confirm that funds are available for the award.
- **No-cost amendments:** In MyGrants, all amendments are routed through the FMO to verify the cancelation date of funds, and to update the period of performance in the financial system if necessary.

**Grants Officer Signature:**

The GO's signature on a DS-1909 authorizes the amendment, with the signature date reflecting the award issue date.

**Recipient Acceptance Signature:**

The recipient must sign the amended DS-1909 or DS-1909I. See Chapter 3.F.3 for details on recipient signatures.

**Award File Documentation:**

The GO must retain the original amendment, including the fully executed DS-1909, revised Award Provisions (if applicable) and Department Standard Terms and Conditions, in the official Federal award file in MyGrants.

## G. OTHER CHANGES

## G.1. CHANGE IN GRANTS OFFICER OR GRANTS OFFICER REPRESENTATIVE

On occasion, the Grants Officer on an award will change after an award is signed, due to a transfer or a change in GO portfolios. When a new GO takes over the oversight and management

167

AR 000179

of an award, the change must be documented in writing for the official award file in MyGrants. The Recipient must also be notified in writing of the change. Some posts/bureaus choose to amend the award to document the change in GO, but that is not required.

If the GOR is replaced during the period of performance of the award, the GO must prepare a new designation memo for the replacement GOR, verify the GOR's certification, and ensure that the Federal award recipient is notified in writing of the change.

## G.2. NOVATION

A novation is required when a recipient changes any part of its business structure. This includes a name, entity type, or change in EIN or UEI.  The same recipient is carrying out the award; however, their business structure has been modified. A novation differs from a replacement grant (See Chapter 4.G.3 below), which is issued when a recipient is no longer able to carry out a program and a new recipient is selected to complete the program. When a novation occurs, the recipient does not change.

To ensure the novation is processed correctly, the bureau and GO should coordinate with the State Assistance Management System (MyGrants) Team and FAFM team.  All novations, including name changes only, must be reviewed and cleared by the Office of the Legal Adviser (L/Buildings and Acquisitions).

The process to capture the organizational change will vary case by case and depend on how and where the organization is registered in various departments and U.S. government enterprise systems.

Contact CGFS/FPRA/FAFM (FAFM@state.gov) for further guidance regarding the procedures for processing a novation, and see FAFM's Knowledge Base Article 68289: What is a novation?

## G.3. REPLACEMENT GRANT

A replacement grant is a new award issued to replace a previously-issued award and may be considered when a recipient cannot complete a project if the following key components apply:

1) the need for the activity still exists;
2) the period of performance is still open;
3) there is still funding remaining on the award;
4) the purpose of the award, including scope and objectives, remain the same; and
5) the proposed new recipient has a demonstrated link to the prior recipient.

**Note:** Before taking any steps to initiate a replacement grant, please contact FAPD and FAFM at the outset to determine whether a replacement grant is an appropriate course of action. According to the Office of the Legal Adviser, Office of Buildings and Acquisitions (L/BA) and

168

**AR 000180**

Not for Public Release
Department of State Federal Assistance Directive

the Government Accounting Office (GAO), the recipient of a replacement grant must have a demonstrated link to the prior organization (See decision B-322628), which is one of several key components, as mentioned above, in determining if a replacement grant is suitable. One example would be a program director intimately involved with the program moves to a new organization and the former organization is no longer able to continue the project as a result. In general, replacement grants should be a rare occurrence.

The new recipient will be allowed to utilize the unused balance of the original award's funding, even if the fiscal year of that funding (period of availability) has expired. The replacement grant process can be complex, and requires extensive documentation and coordination between the FMO, GO, and CGFS/FPRA/FAFM, and clearance by L/BA.

Note that a replacement grant is different from a novation, which is a process used when a recipient organization either (1) changes its name or (2) is merged with another organization (See Chapter 4.G.2 above).

When doing a replacement grant, the GO must check with the budget office or the FMO and ask if the funding appropriation of the original award has recovery authority.  "Recovery Authority" means when an obligation recorded in the prior fiscal year is de-obligated in the current year, funds can be returned to the original appropriation before proceeding with the replacement grant process.  Once the budget office or FMO has confirmed that recovery authority exists, the GO may then follow the guidance listed in the  KB Article# 34961 (What is a Replacement Grant?) to terminate the current award and re-obligate funds onto a new award.  If the termination and re-obligation onto the new award will occur during the initial period of availability of the funds, (e.g., before September 30, 2025, for FY25 funds) then the GO has more flexibility in determining how the funds can be reprogrammed, and the scope of the new award may differ from the scope of the original award.

If the replacement grant will be issued in a new fiscal year, after the period of availability of the original grant has expired, the GO and FMO must ensure that the new grant remains chargeable to the appropriation initially obligated and does not constitute a new obligation chargeable to appropriations at the time the change is made. This requires ensuring that the purpose and scope of the new award remain the same as the original award.

The GO and FMO/BO must determine the appropriateness of a replacement grant and ensure that the original grant award is properly terminated, and that justification and approval for the replacement grant is documented.

Contact CGFS/FPRA/FAFM (FAFM@state.gov) for further guidance regarding the procedures for processing a replacement grant and/or visit CGFS/FPRA/FAFM's Knowledge Base 34961 Article linked here: What is a replacement grant?

169

**AR 000181**

Not for Public Release
Department of State Federal Assistance Directive

# H. REMEDIES FOR NON-COMPLIANCE

If a recipient is not complying with a specific requirement of the award, such as submitting financial and performance reports or performing the project, the GO may take appropriate action to enforce the requirement. The GO must inform the recipient of the problem and give the recipient a reasonable deadline and specific steps remedy the situation. A general template letter is in the FAPD Toolkit. The written request should state:

- The requirement that the recipient is failing to meet, citing the specific reference from the award provisions, terms and conditions, or applicable regulation.
- Required corrective action.
- The date by which corrective action must be taken; and
- The action the GO will take if the recipient does not take corrective action.

If a recipient does not comply or provide satisfactory evidence that compliance will be achieved, the GO may take one or more of the following actions:

- Convert payment method from an advance to a reimbursement.
- Suspend payments.
- Disallow or deny use of funds for all or part of the cost of the activity or action not in compliance; or
- Suspend or terminate the award for cause, in whole or in part.

The GO must send FAPD draft letters for approval before notifying recipients of cost disallowances, terminations for failure to comply with the award terms and conditions (2 CFR §200.340(a)(1)), and before sending a corrective action plan.

If no FAPD response is received within five business days, the GO can move forward with the notification. Email draft letters to mailto:aopefagrantspolicy@state.gov fedassistancepolicy@state.gov  with the FAPD desk officer on the cc: line.

For other types of award terminations outlined in 2CFR § 200.340 and the Department of State Standard Terms & Conditions, suspensions, and noncompliance notifications, GOs are encouraged to seek FAPD assistance with draft letters but are not required to do so.

It is mandatory for the Federal Assistance team to refer recipients for potential suspension and debarment in the following specific scenarios:

- Terminations for  failure to comply with the award terms and conditions (2 CFR §200.340(a)(1)), including those related to trafficking in persons.
- Cost disallowances.
- Corrective action plans if the recipient does not correct issues to satisfaction within required timelines.

170

AR 000182

Not for Public Release
Department of State Federal Assistance Directive

The Federal Assistance team is also still required to submit referrals when they receive information from any source of any cause for potential suspension or debarment under 2CFR §180.700 or 2CFR §180.800.  See H.3. for more details on Suspension and Debarment.

## H.1. CORRECTIVE ACTION PLAN

The purpose of a Corrective Action Plan (CAP) is to address issues with recipient performance that are identified during the program period. A CAP may also be issued to address deficiencies found during pre- or post-award that indicate that the recipient does not have the systems in place to adequately manage Federal funds. The GO is ultimately responsible for determining when a CAP is necessary to address program performance or internal control issues. The CAP should list specific milestones and dates by which they must be reached so that both the GO and the recipient have a clear understanding of expectations.  As a best practice, a GO and GOR should consider a CAP prior to terminating an award due to material failure to comply if they believe the organization can successfully complete all CAP findings.

A CAP is different than a site visit (desk audit) report.  While a site visit may identify issues which a GO feels require a CAP, the site visit report and CAP are two separate documents. A site visit report is a summary of any findings – positive and/or negative – identified during a site visit (or desk audit). A site visit report may also identify issues which require a recipient to address certain compliance areas and to report back to the GO and GOR.  If the issues are more complex and severe, a GO may issue a CAP.  A CAP is a document that outlines the specific areas of administrative or programmatic non-compliance and outlines in specific and measurable terms how a recipient must remedy those issues.  It is a roadmap to performance and administrative compliance.

The GO, in collaboration with the GOR, must closely monitor the status of the CAP to ensure the organization takes corrective action and resolves all deficiencies within the prescribed time frame to mitigate any identified risk to the success of the program. When the GO determines that the recipient has met all the requirements of the CAP, they should communicate this in writing to the recipient to formally close out the CAP.

## H.2. SUSPENSION AND TERMINATION OF AN AWARD

**Suspension**
Suspension of an award is a temporary halt on all (or a portion of) activities and expenditure of funds under an award.  A GO may suspend an award by issuing a written notification, such as a suspension letter, to the recipient. Unlike a termination, an amendment is not required for a suspension.

When an award is suspended, the recipient must not incur new costs for the award (or the suspended portion) after the effective date of the suspension notice and must cancel as many outstanding obligations as possible. Costs properly incurred by the recipient prior to the effective date of the suspension are allowable.

171

Not for Public Release
Department of State Federal Assistance Directive

If an award (or a portion of an award) is suspended and the recipient or subrecipient incurs obligations during the suspension that relate to the suspended award (or suspended portion of the project), the costs resulting from those obligations are not allowable unless the GO expressly authorizes them, either in the notice of suspension or subsequently.  A Notice of Suspension letter template is available in the FAPD Toolkit.

## Termination

Termination is the cancellation of a Federal award, in whole or in part, prior to the date of completion. Terminations must be completed by amendment that specifies termination of the award as the amendment purpose.

Partial termination, or descoping, involves terminating certain activities or parts of the project. A partial termination must be completed by amendment that specifies the partial termination as the award purpose. In most cases, a partial termination would be followed by an amendment to deobligate costs for the terminated activities.

**Note:** Before considering termination, the GO should look carefully at the terms and conditions that the recipient agreed to in accepting the award.

- For awards that are subject to 2 CFR § 200 and/or use the Department of State Standard Terms and Conditions, terminations can be executed under scenarios below. The recipient agrees to these potential reasons for termination by accepting the Department Standard Terms and Conditions as part of the award package.
- For awards to FPEs, letter grants, and voluntary contributions, the terms and conditions attached to the award document will govern the conditions under which the GO or the recipient can terminate an award.

## Grounds for Termination:

There are four grounds for termination outlined in 2 CFR 200 and the Department of State Standard Terms and Conditions.  In all cases, the GO must notify the recipient in writing of the termination. The written notice of termination must include the reasons for termination, the effective date, and the portion of the Federal award to be terminated, if applicable.  See the FAPD Toolkit for termination letter templates.

1. **Termination by the Department if a recipient fails to comply with the terms and conditions of an award (2 CFR § 200.340(a)(1))**

The Department may terminate an award for noncompliance when a recipient fails to comply with the terms and conditions of an award. The termination notice should include the following:

- the reasons for termination, including a detailed description of the noncompliance that led to the termination
- the effective date

172

AR 000184

Not for Public Release
Department of State Federal Assistance Directive

- the portion of the Federal award to be terminated, if applicable
- notification that the termination for material failure to comply will be entered into the SAM.gov Responsibility/Qualification record
- a description of the recipient's right to appeal the termination

Terminations for noncompliance are the only type of termination that the recipient may appeal. The GO must inform the recipient of the opportunity to appeal the termination decision and explain the required criteria described in the appeals section of this directive. The recipient may submit the appeal to FAPD through the GO (see Chapter 4.I). GOs may not process a termination amendment for failure to comply until the appeal period has closed and/or any appeals have been resolved.

Terminations for noncompliance must be entered into SAM.gov Responsibility/Qualification record (formerly FAPIIS) through the Contractor Performance Assessment Reporting System (CPARS) module. The termination decision will be available in SAM.gov for five years from the termination date. Each bureau has one person designated by FAPD who is authorized to enter information into CPARS. When the GO has terminated an award for failure to comply with the terms and conditions of the award and the recipient has exhausted all opportunities to appeal the termination, contact either your bureau's point of contact for CPARS or FAPD to determine your POC for CPARS, and your CPARS POC will enter the termination information.

The following do not need to be reported in CPARS:
- Terminations of an award to an individual for failure to comply with the terms and conditions of the award
- Terminations of an award to an FPE for failure to comply with the terms and conditions of the award

2. **Termination with consent of the recipient (by mutual agreement) (2 CFR § 200.340(a)(2))**

An award may be terminated when both parties (the Department and the recipient) agree to the termination. The two parties must agree upon the termination conditions, including effective date and, in the case of partial termination, the specific activities or portion of the scope to be terminated.

This type of termination is not subject to appeal by the recipient and is not entered into SAM.gov Responsibility/Qualification record (formerly FAPIIS).

3. **Termination by the recipient (2 CFR § 200.340(a)(3))**

The Department may terminate an award when termination is requested by the recipient upon sending to the Department written notification of the reasons for termination, the effective date, and, in the case of partial termination, the portion to be terminated. However, if the Department determines, in the case of partial termination, that the reduced or modified portion of the grant

173

Not for Public Release
Department of State Federal Assistance Directive

will not accomplish the purpose for which the grant was made, it may terminate the grant in its entirety under either of the conditions above.

A termination by recipient request is not subject to appeal by the recipient and is not entered into SAM.gov Responsibility/Qualification record (formerly FAPIIS).

4. **Termination when award no longer effectuates program goals or agency priorities (2 CFR § 200.340(a)(4))**

The Department may terminate an award, in accordance with the terms and conditions of the award, including, to the extent authorized by law, if the award no longer effectuates program goals or agency priorities. (Note: The bureau, office or post should consult with L when considering this option).

A termination for this reason is not subject to the appeals process described in Section 4.I and is not entered into SAM.gov Responsibility/Qualification record (formerly FAPIIS).

When processing a termination amendment in MyGrants for a termination when the award no longer effectuates program goals or agency priorities, the recipient's countersignature is not required. This type of termination is unilateral, meaning it does not require the recipient's agreement or signature.

**Effects of Termination of an Award:**

When a termination is agreed to or a recipient is notified of the termination, the recipient must not incur new costs for the terminated portion after the effective date and must cancel as many outstanding obligations as possible. Costs properly incurred by the recipient prior to the effective date of the termination are allowable.

If a portion of the award is terminated, and the recipient or a subrecipient incurs obligations after a termination that relate to the terminated portion of the project or program, the cost resulting from those obligations is not allowable unless the GO authorizes it, either in the notice of termination or subsequently.

**Reversing Terminations**

In rare instances, the Department may need to reverse a termination action and reinstate the award. Terminated awards should generally only be reinstated in cases where the award was terminated in error or when reinstatement is required by the courts. Reversing a termination is not a means to circumvent competition requirements or to exhaust end-of-fiscal-year monies.

Written consent from the terminated recipient is necessary to reinstate a terminated federal assistance award.

174

AR 000186

Not for Public Release
Department of State Federal Assistance Directive

Confirmation of the decision to reinstate a terminated award in whole or part must come from the Senior Bureau Official (SBO), a Bureau Executive, or designee, following a determination, in writing, that:

> (1) circumstances clearly indicate a requirement for the terminated project; and
> (2) reinstatement is advantageous to the government.

Documentation supporting the reinstatement must be uploaded to MyGrants. Required documentation consists of:
- the recipient's consent;
- the SBO, Bureau Executive, or designee's confirmation of the decision to reinstate;
- the determination that circumstances clearly indicate a requirement for the terminated project and that the reinstatement is advantageous to the government; and
- any other documentation required in the steps below.

Reinstatement of an award is not possible if the funds have been deobligated, or if the period of expenditure has expired.

## H.3. SUSPENSION AND DEBARMENT

Suspension and debarment are two separate administrative remedies that Federal agencies use to disqualify entities or individuals from receiving Federal financial assistance. Agencies may only suspend or debar entities or individuals when there is a compelling reason to do so. When entities or individuals have been suspended or debarred, they are excluded (either temporarily or permanently) from receiving Federal financial assistance.

The purpose of suspension and debarment is to protect the U.S. government from fraud, waste, and abuse.

The Department follows the procedures found in 2 CFR 180, Subpart G—Suspension and 2 CFR 180, Subpart H—Debarment when deciding whether or not to suspend and debar a recipient.

Members of the Federal Assistance team have two important roles regarding suspension and debarment:
- A GO must not issue an award to an entity that has been excluded by any Federal agency. SAM.gov contains the lists of excluded parties and must be checked prior to issuing an award.
- When a member of the Federal Assistance team receives information from any source concerning a cause for suspension or debarment, they must promptly report it to the appropriate FAPD desk officer and the Suspension and Debarment Office (S&D Office). In addition, the Federal Assistance team must also report suspected fraud to the Office of the Inspector General.

To submit a referral, send the following to the Suspension & Debarment (S&D) mailbox at SND@state.gov and mailto:aopefagrantspolicy@state.gov fedassistancepolicy@state.gov with the FAPD desk officer on the cc: line:

175

AR 000187

Not for Public Release
Department of State Federal Assistance Directive

- The Federal Assistance team's recommendation on whether to pursue suspension or debarment and why.
- The original award including the award goals and provisions.
- All recipient payment requests – ex. SF-270s or Payment Management System Ad-hoc Inquiry – PAY-EE report.
- All communications with the recipient showing the Federal Assistance team's efforts to notify the recipient of its failure to comply / efforts to bring the recipient back into compliance and the recipient's replies to those notifications.
- All formal notices of noncompliance, termination, appeals and appeal decisions.

The S&D Office will review the referral for potential recipient suspension and debarment in line with 2 CFR §180, coordinate with the GO and FAPD for any additional information necessary to complete the referral and determine whether any suspension or debarment action (including non-exclusionary actions, such as: Request for Information, Show Cause Letter, Administrative Agreement) should be recommended to the Suspension and Debarment Official for action. The S&D Office will notify the GO and FAPD if any actions are taken.

## I. APPEALS

Recipients have a right to appeal any action that the Grants Officer takes to remedy non-compliance by the recipient (2 CFR § 200.342). These actions typically include terminations for failure to comply with the terms and conditions of the award (2 CFR 200.340(a)(1)), cost disallowances, and corrective action plans.

The right to appeal does not apply to the initial selection process, determination of the award amount, any type of termination other than those issued pursuant to 2 CFR 200.340(a)(1), the disposition of unobligated balances, or property disposition.

A/GA/APD/FA/FAPD is responsible for reviewing appeals and issuing a final determination. The scope of the review of an appeal is limited to:

- New information provided by the recipient that was not considered at the time of the Grants Officer's decision.
- Mitigating circumstances (for example: something outside of recipient's control)
- An error in application of regulatory guidance or DOS policy by the Grants Officer.
- Improper procedure followed by the Grants Officer. This can include lack of documentation supporting the Grants Officer's determination.
- Whether the Grants Officer's decision was made on a sound logical basis with reasonable justification and considered all relevant information.

**Appeal Procedure:**

176

**AR 000188**

Not for Public Release
Department of State Federal Assistance Directive

Before issuing a determination or remedy for non-compliance, the GO and recipient should first work together to resolve any issues or problems. Once the GO has decided or takes action to remedy non-compliance, the GO must inform the recipient in writing of the determination and the recipient's right to appeal. The written notification must:

- Include the basis for the determination,
- be transparent and detailed, and
- include the process and timeline for submitting an appeal.

The GO's written notification must outline the information that must be included in the recipient's appeal. The recipient should also be advised that the appeal process can take several months.

If the recipient disputes the GO's determination or remedy, the recipient has 30 calendar days after receiving the written notification to submit an appeal.

The recipient must submit its appeal to the GO. The GO must review the appeal and determine whether any information contained in the appeal resolves the areas of non-compliance identified in the written notification. If new information resolves the issue the GO must notify the recipient in writing that the issue has been resolved.

If the information contained in the appeal does not resolve the areas of non-compliance identified in the written notification or otherwise change the GO's determination, the GO must forward the appeal and all supporting documentation to FAPD at FedAssistanceAppeals@state.gov within 14 business days of receiving the appeal from the recipient.

## Content of Appeal – Recipient:

The recipient's appeal should contain:

- A cover letter with a statement of the recipient's position with respect to the disputed factual, legal or other matter and the rationale that supports its position.
- The date the recipient received the GO's decision.
- The amount of disallowed costs in dispute (if applicable).
- Any other relevant documents.

## Content of Appeal – GO:

When forwarding the appeal to FAPD, the GO should include:

- the recipient's appeal and any supporting documents the recipient submitted;
- the basis for the GO's determination, including any information or documentation that supports the initial determination (this may include email correspondence with recipient, site visit or monitoring documentation, etc.);

177

AR 000189

Not for Public Release
Department of State Federal Assistance Directive

- an analysis of the recipient's appeal that articulates why it does not alter the GO's initial determination;
- if a cost disallowance is part of the appeal, a detailed breakdown of specific disallowed costs and the basis for disallowing them (if possible, this should be detailed in an Excel spreadsheet)

---

## J. FRAUD AWARENESS

---

Preventing, detecting, and stopping fraud includes exercising professional skepticism, following-up on all issues of concern, and communicating those concerns to the appropriate officials. Recipients are required to use funds in the best interest of their programs. Any decision about the use of funds must be free of undisclosed personal or organizational conflicts of interest, both in appearance and fact.

Applicants and recipients must disclose, in a timely manner, in writing to the Office of Inspector General (OIG) for the Department and the Broadcasting Board of Governors, with a copy to the cognizant GO, all violations of federal criminal law involving fraud, bribery, or illegal gratuities potentially affecting the Federal award. Subrecipients must disclose, in a timely manner, in writing to the OIG and to the prime recipient (pass-through entity) all violations of Federal criminal law involving fraud, bribery, or illegal gratuities potentially affecting the Federal award. Failure to make required disclosures can result in any of the remedies described in 2 CFR § 200.339, Remedies for noncompliance, including suspension or debarment.

The GO and other members of the Federal Assistance team also have a responsibility to report to the OIG any suspected waste, fraud, or abuse in a Department program or operation (1 FAM 053.2-6) using the address or hotline below. Heads of Department entities are responsible for ensuring that an allegation is reported to the OIG within five business days after the head is made aware of the allegation.

**Disclosures and suspected fraud cases must be sent to:**

U.S. Department of State Office of Inspector General
P.O. Box 9778 Arlington, VA 22219
Website: https://www.stateoig.gov/hotline
Phone: 1-800-409-9926 or 1-202-647-3320

AR 000190

Not for Public Release
Department of State Federal Assistance Directive

## K. WHISTLEBLOWER PROTECTIONS

Per 2 CFR §200.217, an employee of a recipient or subrecipient must not be discharged, demoted, or otherwise discriminated against for making a protected whistleblower disclosure. Specifically, employees of recipients and subrecipients are protected against retaliation for disclosing information that the employee reasonably believes is any of the following:

- Gross mismanagement of a federal grant or contract
- Gross waste of federal funds
- Abuse of authority relating to a federal grant or contract
- Substantial and specific danger to public health or safety
- Violation of law, rule, or regulation related to a federal grant or contract

Recipients are responsible for communicating these protections to their employees and subrecipients.

Additional information on whistleblower protections can be found on the Department's OIG website at https://www.stateoig.gov/whistleblower-protection.

179

AR 000191

Not for Public Release
Department of State Federal Assistance Directive

# CHAPTER 5: CLOSEOUT

## A. APPLICABILITY

When closing out an award it is important to keep in mind that the award may have been issued before the OMB 2024 CFR Revisions took effect.

If you are closing out an award that was issued prior to October 1, 2024, and that was not cost amended after October 1, 2024, or amended to apply the OMB 2024 CFR Revisions, follow closeout guidance in FAD v8 series.

If you are closing out an award that was issued or cost amended on or after October 1, 2024, or that was amended to apply the OMB 2024 CFR Revisions, follow the closeout guidance below.

## B. CLOSEOUT TIMELINE

Closeout is the critical final step in the award life cycle that is required when the award activities have been completed, and/or the award period of performance has ended. Timely closeout is an essential part of the Federal Assistance team's award management responsibilities.

Federal financial assistance that is subject to 2 CFR § 200 must be closed no later than one year after the period of performance ends, and preferably earlier. This excludes awards to Foreign Public Entities, awards to an individual, and awards which were issued prior to 2 CFR § 200 and never cost amended. Those awards must nonetheless be closed as expeditiously as possible.

The general timeline for awards under 2 CFR § 200, as described in more detail in the paragraphs below, is:

- ***Within 120 calendar days after award end date:*** Recipient submits all final reports and payment requests.
- ***Within 30 calendar days after submission of final reports:*** GO reviews and accepts all final reports and settles payment requests.
- ***Within one year after the award end date: Award*** must be fully closed in all financial and grant systems.

180

**AR 000192**

Not for Public Release
Department of State Federal Assistance Directive

For awards to Foreign Public Entities (including foreign government organizations and Public International Organizations), when negotiating the terms and conditions the GO may on an exceptional basis allow the recipient longer than 120 calendar days to submit final financial and performance reports. Once the reports are submitted, the GO has 30 calendar days to review, and an additional year to close out.

For all awards, prior to the period of performance end date, it is a good practice for the GO to notify the recipient that the award period of performance will be ending, and that final reports and final payment requests will be due. This gives the recipient the opportunity to request a no-cost extension if necessary.

# C. CLOSEOUT COSTS

Administrative costs associated with closeout activities for an award are allowable. The recipient may incur closeout costs until the due date of the final report(s); however, these costs must be liquidated prior to the due date of the final report(s). Examples of the types of costs that a recipient could incur for closeout activities include but are not limited to salaries of personnel preparing final reports, publication and printing costs, costs associated with the disposition of equipment and property, and related indirect costs.

# D. RECIPIENT RESPONSIBILITIES

For **grants/cooperative agreements to organizations**, within 120 days after the award end date, recipients must:

- Pay all obligations incurred during the period of performance, and personnel costs associated with the closeout of the award, such as preparation of final reports.
- Any subrecipients must submit all reports (financial, performance, and other reports required by a subaward) to the pass-through entity no later than 90 calendar days after the conclusion of the period of performance of the subaward.
- Submit all final payment requests to the awarding agency.
- Submit all final program and financial reports that are required in the award terms and conditions, unless an extension on filing the final reports is approved by the GO. If a justified request is submitted by a non-Federal entity, the Federal agency may extend the due date for any performance report. The GO must document the extension in the official Federal award file in MyGrants.
- If applicable, submit the Inventory Report and Request for Disposition forms (SF-428 and SF-428C) for any item of equipment with a fair market value of $10,000

181

AR 000193

Not for Public Release
Department of State Federal Assistance Directive

or more, or unused supplies with an aggregate fair market value of $10,000 or more (see Chapter 3.J).

For **FAAs to an organization**, within 120 days after the award end date of the award, recipients must:

- Pay all obligations incurred during the period of performance.
- Submit all final payment requests to the awarding agency.
- Certify in writing that the project or activity was completed. To fulfill this requirement, the recipient is required to submit a brief final program report or statement regarding whether the objectives of the award were met and whether the funds were expended as authorized. The GO may extend the due date of any report if a justified request is submitted by the recipient. The GO must document the extension in the official Federal award file in MyGrants.
- No financial reporting is required, except for domestic recipients paid through PMS.

For **awards to an individual**, after the award end date of the award, recipients must:

- Pay all obligations incurred during the period of performance.
- Submit all final payment requests to the awarding agency.
- Sign the bottom of the DS-1909I which confirms that all activities took place under the award.

**Note:** No final financial report is required, unless the award was issued using a non-fixed budget. (See Chapter 3.I.3).

## E. GRANTS OFFICER RESPONSIBILITIES

Within 30 days of receiving final reports, the GO must:

- Review final reports.
- Reconcile amounts in all applicable systems (MyGrants, GFMS/RFMS, PMS, etc.) and, if there are discrepancies between systems, contact the recipient and/or FMO to coordinate resolution.
- Review and approve final payment.
- Document the official Federal award file in MyGrants with a written assessment of the program; this may also be completed by the GOR and reviewed by the GO.
- Make a determination regarding disposition of property (see Chapter 3.J).

Within one year of the period of performance end date, the GO must:

- Write a final assessment (if no GOR is assigned).

182

**AR 000194**

Not for Public Release
Department of State Federal Assistance Directive

- Pay all obligations for project activities incurred during the period of performance and any allowable closeout costs.
- Document the official Federal award file in MyGrants with all payment requests and required reports.
- Ensure that all funds owed the Department are returned.
- Work with the FMO to reconcile authorized amount, reported expenditures, and payments within the financial systems.
- Complete the MyGrants closeout checklist.
- If funds will deobligated, complete a de-obligation amendment in MyGrants to deobligate the funds. The recipient is not required to sign the de-obligation amendment.No de-obligation amendment is required for voluntary or assessed contributions.
- For overseas awards, upload to the official Federal award file in MyGrants a financial system report from the FMO showing $0 balance in the official Federal award file.
- For awards in PMS, request that the FMO (or PMS designee) close the award in PMS. This action must be documented in the official Federal award file in MyGrants with a screenshot from PMS reflecting its "closed" status. However, since PMS only processes account closeouts on a quarterly basis, the GO is not required to document the file with the screenshot until it has been processed by PMS.

It is a best practice to notify the recipient that an award has been closed by sending a closeout email or letter. The notification should inform the recipient that the award has been closed and reiterate any record retention requirements. A copy of this email or letter should be uploaded to the official Federal award file in MyGrants.

## F. EARLY CLOSEOUT

Awards may be closed after the funded activity has been completed, even if the Period of Performance has not expired. If an award is being closed early, a no-cost amendment should be completed to document the new end date.

## G. NON-COMPLIANCE AND DELINQUENT REPORTS

When possible, the GO should remind the recipient of the final reporting requirements prior to the report due date. If the recipient fails to submit required final reports on time, the GO should contact the recipient and require submission of reports. No further payments to the recipient should be made until the required reports are received.

AR 000195

Not for Public Release
Department of State Federal Assistance Directive

If these attempts fail, the GO must:

- Contact the recipient stating the award will be closed in non-compliance and no additional payments will be issued.
- Document the official Federal award file in MyGrants with emails or other evidence showing that the recipient was not responsive.
- Report the recipient's material failure to comply with the terms and conditions of the award to CPARS (report to your bureau's point of contact for CPARs reporting). Note that the recipient has up to a year from the period of performance end date until this information must be reported to CPARS.
- Contact FAPD to explore debarring the recipient if money is owed to the U.S. government.

The GO is responsible for closing the award on time, even if the recipient is non-compliant. The official Federal award file in MyGrants must be documented to show that the award was closed "in non- compliance" for use in future risk assessments of that organization.

## H. RETURN OF FUNDS AND DEBT COLLECTION

The recipient is responsible for returning unexpended funds to the Department. GOs do not have the authority to forgive or waive any amount owed to the U.S. government, except when closing at provisional NICRA rate (see Chapter 5.G).

**Debt Collection:**

The GO should determine the amount owed and notify the recipient in writing that the funds must be returned. If the debt is not repaid within 60 days of written notification, the GO must work with the FMO and refer the debt to the Accounts Receivable Office (GFSCARChief@state.gov) for further action. See 4 FAM 490—Debt Collection for further information.

**Refunds:**

The method for returning funds to the Department depends on. how the funds were originally disbursed to the recipient.

IMPORTANT: When recipients are paid through PMS, refunds must be submitted to PMS – not the Department. If recipients are paid through the Department's Financial Service Center (FSC-Vendor claims), then refunds must be submitted to FSC-Vendor claims.

For instructions on how to process refunds for Federal awards, refer to the CGFS/FPRA/FAFM Knowledge Base Article 31085 for overseas collections (How to collect refunds or conduct other

Not for Public Release
Department of State Federal Assistance Directive

debt collections overseas) or Knowledge Base Article 31078 for domestic collections (How to collect refunds or conduct other debt collections on domestic grants

---

## I. NICRA (NEGOTIATED INDIRECT COST RATE) CONSIDERATIONS

---

This section applies only to awards where the recipient has a NICRA. This section does not apply to awards using the 15% *de minimis* rate, or to awards to FPEs which may use fixed indirect rates. Department policy on NICRAs can also be found in  2 CFR 200.1, 2 CFR 200 Subpart E. and  4 FAM 616.

**Fixed NICRA Rate:**

If the recipient has a fixed NICRA rate, the recipient should apply the same fixed rate to indirect costs over the entire award period and submit the final financial report within 120 days after the period of performance ends. The award must be closed within one year after the period of performance end date.

**Final NICRA Rate:**

If the recipient has received its final NICRA rate for all fiscal years covered by the award project period, the recipient must submit the final report within 120 days after the period of performance ends. The award must be closed within one year after the period of performance end date.

**Predetermined NICRA Rate:**

If the recipient's predetermined NICRA rate covers all fiscal years covered by the award project period, the recipient must submit the final report within 120 days after the period of performance ends. The award must be closed within one year after the period of performance end date.

**Provisional NICRA or Predetermined Rate Covering Portion of Award Period:**

If a recipient has a provisional NICRA rate or a predetermined rate which does not cover the entire award period, the GO must determine which terms and conditions apply to the award.

- **For awards signed prior to the implementation of 2 CFR § 200 and not cost-amended, recipients agreed to the following conditions as an addendum to the Department Standard Terms and Conditions:** *When the Final NICRA rate is still unavailable after 24 months after the project period end date, or by 30 days prior to the time the appropriation used to fund the award is cancelled, whichever comes first, the Department shall de-obligate all excess funds remaining in the award and no further payments will be authorized by the Department. If the Final NICRA rate is issued within 24 months after the project*

185

**AR 000197**

Not for Public Release
Department of State Federal Assistance Directive

*period end date, the recipient shall have 30 days to submit the Final SF-425 based on the Final NICRA rate. The recipient must refund any unexpended funds remaining as a result of final reporting under the award.*

- **For awards subject to 2 CFR § 200 and the December 2015 (or later) Standard Terms and Conditions, recipients agreed to the following condition:** *If the non-Federal entity organization does not have its Final Indirect Rate within 12 months after the end of the project period end date, the GO shall proceed with closeout after which all funds remaining in the obligation shall be de-obligated.*

In either case, the recipient is required, within 120 days of the project end date, to submit:

- A final program report.
- An interim final financial report (SF-425), showing final NICRA rates for any year for which they are available, and indicating provisional rates for any years that final rates are not available.

The GO should notify the recipient that:

- All programmatic requirements of the award have been satisfied and closeout is pending final NICRA rates.
- The recipient must inform the GO when the NICRA is finalized and must submit a final financial report (SF-425) and submit any final payment request or return any funds.
- The notification should indicate the date the appropriated funds will cancel, if imminent.

The GO should make every effort to complete closeout actions no later than one year after the period of performance ends. If the NICRA has not been finalized by that time and would delay closeout, the GO and the recipient may agree in writing to close at the provisional rate. This agreement is optional on the recipient's part and should clearly state that there is no further obligation to either the recipient or the Department once the rate is finalized. This agreement must be filed in the official Federal award file in MyGrants.

## J. RECORDS RETENTION

Federal award files must be maintained in accordance with the bureau/office/post's applicable records disposition schedule. If no schedule applies, files must be preserved for the duration of the time it takes for such a schedule to be developed and approved. 5 FAM 420 RECORDS MANAGEMENT OVERVIEW (state.sbu)  contains guidance on record management policies. Questions regarding the development and implementation of disposition schedules should be directed to the Department's Records Management branch (A/GIS/IPS/RA).

186

**AR 000198**

Not for Public Release
Department of State Federal Assistance Directive

In general, official Federal award files should be retained for 10 years after final action is taken on a Federal award and then destroyed. However, the program that the assistance program supports may have longer records retention requirements. For this reason, it is important to check the records disposition schedule specific to the program as well as to the bureau, office, or post. Federal award files subject to a legal hold, such as a litigation hold, must be preserved, even if the applicable records disposition schedule authorizes destruction.

**AR 000199**

Not for Public Release
Department of State Federal Assistance Directive

# APPENDIX: ACRONYMS & DEFINITIONS

## A. ACRONYMS

**AC:** Assessed Contribution
**APS:** Annual Program Statement
**AQM:** Office of Acquisition Management
**BOC:** Budget Object Code
**CAGE:** Commercial and Government Entity (code)
**CAP:** Corrective Action Plan
**CBJ:** Congressional Budget Justification
**CFR:** Code of Federal Regulation
**CN:** Congressional Notification
**COR:** Contracting Officer Representative
**CPARS:** Contractor Performance Assessment Reporting System
**DP:** Diplomatic Programs
**DATA Act:** The Digital Accountability and Transparency Act
**ECE:** Educational and Cultural Exchanges (Appropriation)
**ESF:** Economic Support Funds
**FAA:** Fixed Amount Award
**FAB:** Federal Assistance Bulletin
**FAD:** Federal Assistance Directive
**FAIN:** Federal Award Identification Number
**FAFM:** Federal Assistance Financial Management
**FAMA:** Federal Assistance Management Advisory
**FAPD:** Federal Assistance Policy Division
**F/FAO:** Office of Foreign Assistance Oversight
**FFR:** Federal Financial Report
**FMO:** Financial Management Officer
**FPE:** Foreign Public Entity
**GAO:** Government Accountability Office
**GA/FAM/FAO:** Federal Assistance Operations
**GFMS:** Global Financial Management System
**GMR:** Grants Management Review
**GO:** Grants Officer
**GOR:** Grants Officer Representative

**GTM:** Grants Technical Monitor

188

AR 000200

Not for Public Release
Department of State Federal Assistance Directive

**ILMS:** Integrated Logistics Management System
**INCLE:** International Narcotics Control and Law Enforcement
**LOA:** Letter of Agreement
**NCAGE:** NATO Commercial and Government Entity
**NDAA:** National Defense Authorization Act
**NGO:** Non-governmental Organization
**NICRA:** Negotiated Indirect Cost Rate Agreement
**NOFO:** Notice of Funding Opportunity
**OIG:** Office of the Inspector General
**OMB:** Office of Management and Budget
**PD:** Public Diplomacy
**PIO:** Public International Organization
**PMS:** Payment Management System
**PPR:** Performance Progress Report
**RAM:** Risk Analysis Management
**RFMS:** Regional Financial Management System
**S and D:** Suspension and Debarment
**SAM.gov:** System for Award Management
**SAMS:** State Assistance Management System
**UEI:** Unique Entity Identifier
**USAID:** United States Agency for International Development
**VC:** Voluntary Contribution
**WCF:** Working Capital Fund

189

**AR 000201**

Not for Public Release
Department of State Federal Assistance Directive

# B. DEFINITIONS

**Award Provisions:** A component of the Notice of Award which includes objectives, reporting requirements, payment information, and additional specific provision. It can and should be tailored for each award.

**Annual Program Statement (APS):** A rolling program announcement or an open-ended, yearly NOFO to generate competition for new awards. It is generally open the entire year and contains broad evaluation criteria. Applications are received periodically, judged against the evaluation criteria, and awarded.

**Assessed Contribution (AC):** An assessed contribution refers to funding provided to meet annual obligations of membership in international multilateral organizations, typically pursuant to treaties ratified pursuant to the advice and consent of the Senate or otherwise authorized by specific acts of Congress.

**Assistance Listing:** The publicly available listing of Federal assistance programs managed and administered by the General Services Administration. Formerly known as the Catalog of Federal Domestic Assistance (CFDA).

**Assistance listing number:** A unique number assigned to identify the Federal assistance listing, formerly known as the CFDA number.

**Budget Object Classification Code (BOC):** A set of codes that correspond to purchases made by the government. The Office of Management and Budget (OMB) devised the original set of BOCs and uses these codes to track purchases.

**Code of Federal Regulation (CFR):** The general and permanent rules published in the Federal Register by the executive departments and agencies of the U.S. federal government. It is divided into 50 titles that represent broad areas.

**Congressional Budget Justification (CBJ):** The annual presentation to the legislative body of the United States government that justifies the department's request for funds and reflects the continuing process to provide improved strategic focus, data quality, and information on topics of interest.

**Congressional Notification (CN):** Formal, written notification following a specific format and extensive clearances within the Department, followed by a 15-day period that starts once the notification has been received by the appropriate Congressional committees.

**Commercial and Government Entity (CAGE) code:** A five-digit identification number for domestic U.S. organizations based in the United States or U.S. territories, which provide a

190

AR 000202

Not for Public Release
Department of State Federal Assistance Directive

standardized method of identifying a given facility at a specific location. U.S. recipients are required to receive a CAGE code in order to register in SAM.gov

**Contractor Performance Assessment Reporting System (CPARS):** An application that assesses a contractor's performance and provides a record, both positive and negative, on a given contractor during a specific period. Also used to report federal assistance award terminations for material failure to comply and delinquent closeout reports. Information reported through CPARs is viewable through the SAM.gov Responsibilities and Qualifications section.

**Corrective Action Plan (CAP):** A document issued in response to specific compliance-related issues which stipulates what a recipient must do to be in compliance with the award terms and conditions.

**Digital Accountability and Transparency Act (The DATA Act):** Enacted to make information on Federal expenditures accessible and transparent to the American public, with the goal of improving their ability to track and understand how the government is spending their tax dollars. To achieve this, prescribed financial and program information on Federal acquisitions and assistance must be posted monthly by Federal agencies to the government website, www.USASpending.gov.

**Diplomatic and Consular Programs (D&CP):** The Department of State's primary operating account. It funds a broad range of activities from policy setting, planning and design, to implementation and operations and maintenance, including overseas Public Diplomacy programs.

**Economic Support Funds (ESF):** Economic aid designated to promote economic or political stability in areas where the United States has special strategic interests.
Federal Assistance Bulletin (FAB): electronic newsletter issued every other month by FAPD.

**Educational and Cultural Exchanges (ECE):** The annual appropriation that supports educational, cultural, and professional exchanges funded by the Bureau of Education and Cultural Affairs (ECA).

**Federal Assistance Operations (GA/FAM/FAO):** The office that manages, plans, and directs the Department's acquisition programs and conducts federal assistance and contract operations in support of activities worldwide. GA/FAM/FAO provides grants management services for bureaus that do not have grants authority.

**Federal Assistance Directive (FAD):** The State Department's policy and procedure manual for executing and overseeing federal assistance, which is updated annually for each fiscal year.

**Federal Assistance Financial Management (FAFM):** CGFS/FPRA/FAFM Provides oversight of, and compliance with, Department and Federal financial regulations, procedures and reporting for all Federal assistance. FAFM develops policy, guidance, and training related to the financial management of Federal financial assistance on topics such as obligation, payment, financial reporting, closeout, and financial adjustments and reconciliations.

AR 000203

Not for Public Release
Department of State Federal Assistance Directive

**Federal Assistance Management Advisory (FAMA):** Policy updates that occur throughout the year.

**Federal Award Identification Number (FAIN):** A standard, unique identification number for each award that is used for reporting in Department and Federal systems, such as MyGrants, GFMS, RFMS, and USASpending.gov.

**Federal Financial Report (FFR):** The FFR, also known as the SF-425, is the mandatory financial reporting form for domestic and overseas entities, if financial reporting is required under the agreement. The FFR is not required for Individuals, FAAs or Overseas Schools (defined as U.S. sponsored elementary or secondary school abroad participating in the Department of State's Consolidated Overseas Schools Assistance Program).

**Financial Management Officer (FMO):** The individual at post who maintains post's allotments, certifies the availability of funds, assigns fiscal data, records obligations, certifies the correctness of payments, disburses funds, receives recipient refunds, and deobligates excess funds. The FMO certifies and disburses payments but is not the payment approving official. Payment approval for federal assistance is the purview of the Grants Officer, supported by the Grants Officer Representative.

**Foreign Assistance Data Review (FADR):** Congressional requirement for the Department to report on more detailed areas led by the Office of Foreign Assistance (F) who is working with CGFS and A to better capture two data elements: Benefitting Country and Program Area.

**Foreign Public Entity (FPE):** A foreign government, foreign governmental entity (whole or in part) or a public international organization.

**Fulbright-Hays:** The Statutory Authority supporting the improvement and strengthening of the international relations of the United States by promoting better mutual understanding among the peoples of the world through educational and cultural exchanges.

**Global Acquisitions (GA):** The Bureau that provides management direction and leadership over Department-wide acquisition and federal assistance policies and the full range of acquisitions and federal assistance management services.
**Global Financial Management System (GFMS):** The State Department's system for accounting and financial management used by domestic bureaus and offices. RFMS is the financial system for overseas posts.

**Grants Management Review (GMR):** A compliance review conducted by FAPD at overseas posts and domestic grants offices to ensure compliance with regulations and policy and to provide direction as necessary.

**Grants Officer (GO):** U.S. citizen direct-hire employee of the Department responsible for specific actions on an award, such as obligating funds, issuing amendments, and providing prior

192

AR 000204

approvals. The GO is warranted by FAPD with specific limitations on amounts and locations after undergoing required training.

**Grants Officer Representative (GOR):** The person certified by FAPD and designated, in writing, by the GO to oversee certain aspects of a specific assistance agreement. The GOR has managerial responsibilities for the programmatic aspects of the award.

**Integrated Logistics Management System (ILMS):** The system that supports the requisition, procurement, distribution, transportation, receipt, and tracking of goods and services both domestically and overseas.

**Letter of Agreement (LOA):** An arrangement that creates an obligation that is binding under international law between the U.S. government and a foreign government or a multilateral.

**NATO Commercial and Government Entity (NCAGE):** A five-digit identification number for organizations based outside of the United States or U.S. territories, which provide a standardized method of identifying a given facility at a specific location.

**National Defense Authorization Act (NDAA):** Legislation that authorizes certain appropriations related to national defense and often includes other statutory provisions related to national defense, foreign policy, and international security.

**Negotiated Indirect Cost Rate Agreement (NICRA):** The United States federal government agreement with nonprofit organizations and similar organizations for the rate at which it will reimburse indirect (or overhead) costs, for example facilities and administrative costs.

**Non-Governmental Organization (NGO):** An institution that operates independently of any government, typically one whose purpose is to address a social or political issue.

**Notice of Funding Opportunity (NOFO):** A funding opportunity announcement that includes a description of the project (e.g., goals, activities, deadline, reporting) and the entities that are eligible to apply for a federal grant.

**Office of Inspector General (OIG):** An independent bureau that conducts audits, inspections, evaluations, and investigations to promote economy and efficiency and to prevent and detect waste, fraud, abuse, and mismanagement at the Department.

**Office of Management and Budget (OMB):** An office of the Executive Office of the President that produces the President's Budget and oversees agency programs, policies, and procedures. OMB is responsible for issuing and updating 2 CFR § 200 for federal assistance oversight.

**Participant:** A person participating in or attending program activities under the award, such as trainings or conferences, but who is not responsible for implementation of the Federal award.

193

Not for Public Release
Department of State Federal Assistance Directive

**Participant Support Costs**: Direct costs that support participants and their involvement in the award. Examples include but are not limited to stipends, subsistence allowances, travel allowances, registration fees, temporary dependent care, and per diem paid directly to or on behalf of participants.

**Payment Management System (PMS):** The mechanism used by the Department of State to pay U.S.-based Federal assistance recipients of awards issued by domestic bureaus/offices. PMS is managed and run by the Department of Health and Human Services (HHS). The Department's liaison with HHS/PMS is the Office of Federal Assistance Financial Management (CGFS/FPRA/FAFM).

**Performance Progress Report (PPR):** The recipient's narrative programmatic report to the U.S. government on a federal award requested in the award specifics; captures the substantive progress on achieving the award's milestones and details any successes or challenges.

**Prior approval:** The written approval of the GO obtained before the recipient incurs certain costs or makes certain programmatic decisions.

**Public International Organizations (PIOs):** An organization entitled to enjoy privileges, exemptions, and immunities as an international organization under the International Organizations Immunities Act. Examples include UN agencies such as UNICEF, the World Bank and the African Union.

**Regional Financial Management System (RFMS):** RFMS is the global accounting and payment system that has been implemented for posts around the world. RFMS includes a common accounting system for funds management, and obligation and voucher processing. GFMS is the system used by domestic bureaus/offices.

**Risk Analysis Management (RAM):** A process of counterterrorism vetting of staff, participants, and beneficiaries for certain programs and countries.

**Smith-Mundt:** The statutory authority for public diplomacy activities that involve preparing, disseminating, and using information about the United States, its people, and its policies intended for foreign audiences abroad.

**State Assistance Management System (SAMS):** The  program administering the Department's federal assistance management system  to ensure greater transparency, accountability and reporting capabilities for assistance-awarding bureaus and posts. All bureaus transitioned from SAMS Domestic to MyGrants in FY 2024. All posts using SAMS Overseas transitioned to MyGrants in FY 2025.

**Suspension and Debarment (S and D):** Administrative remedies available to the Department to pause or disqualify entities or individuals from obtaining awards to protect the U.S. government from waste, fraud, or abuse.

AR 000206

Not for Public Release
Department of State Federal Assistance Directive

**System for Award Management (SAM.gov):** The government-wide database that consolidated the capabilities of several previous databases, including the Central Contractor Registry (CCR), FedReg, the Online Representations and certifications Application (ORCA), and the Excluded Party List (EPLS).

**Terms and Conditions:** A document accompanying the notice of award containing terms with which the recipient must comply with when implementing a federal assistance award.

**Unique Entity Identifier (UEI):** A unique 12-digit alphanumeric number assigned to all entities (public and private companies, institutions, or organizations) that register to do business with the federal government. Previously called the DUNS number.

**USASpending.gov:** The federal website maintained in accordance with The DATA Act that provides the American public with information on federal spending, including federal assistance. Data available on federal awards includes program description, recipient, and obligated funds and amount of funding disbursed.

**Voluntary Contribution (VC):** Discretionary financial assistance provided pursuant to a contribution authority that provides funds to organizations within the scope of the authority, such as Foreign Public Entities (FPEs), to directly support the activities of the organization, or sustain the general budget and operations of the organization.

AR 000207

| Foreign Assistance Funds Expiring September 30, 2025 | | | |
|---|---|---|---|
| Account | Funds Expiring September 30, 2025 Less Rescission Proposals | Of which, expiring lapsed funds | Of which, funds obligated |
| Total | 7,197,751,018 | 20,256,337 | 7,177,494,681 |
| Assistance for Europe, Eurasia, and Central Asia (AEECA) | 717,643,947 | 168,033 | 717,475,914 |
| Development Assistance (DA) | 27,258,831 | 6,485,164 | 20,773,667 |
| Democracy Fund (DF) | 17,995,561 | 74,775 | 17,920,786 |
| Economic Support Fund (ESF) | 2,227,398,785 | 1,343,267 | 2,226,055,518 |
| Foreign Military Financing (FMF) | 3,000,000 | 144,195 | 2,855,805 |
| Global Health Programs | 2,234,163,515 | 244,045 | 2,233,919,470 |
| of which, GHP-State | 11,191,718 | 207,022 | 10,984,696 |
| of which, GHP-USAID | 2,222,971,796 | 37,023 | 2,222,934,773 |
| International Narcotics Control and Law Enforcement | 1,128,342,590 | 819,599 | 1,127,522,991 |
| Nonproliferation, Antiterrorism, Demining, and Related Programs (NADR) | 710,940,119 | 10,971,518 | 699,968,601 |
| Peacekeeping Operations (PKO) | 131,007,670 | 5,741 | 131,001,929 |

AR 000208

# U. S. DEPARTMENT OF STATE

# INTERAGENCY AGREEMENT GUIDE



AUGUST 2025

AR 000209

# U. S. DEPARTMENT OF STATE
# INTERAGENCY AGREEMENT GUIDE

## TABLE OF CONTENTS

Revision 1: Major Changes:..................................................................................................................... 3

1)  Purpose.................................................................................................................................... 4

2)  Scope ...................................................................................................................................... 4

3)  Authorities.............................................................................................................................. 4

4)  References .............................................................................................................................. 5

5)  Definitions and Applicability................................................................................................... 5

6)  Types of Interagency Acquisitions.......................................................................................... 7

7)  Types of Assisted Acquisitions............................................................................................... 7

8)  Interagency Agreement Forms............................................................................................... 9

9)  Determination and Findings Memorandum under the Economy Act (FAR 17.502-2)...................... 9

10) Payment................................................................................................................................ 10

11) Financial Aspects of IAAs ..................................................................................................... 10

12) IAA Documentation Requirements........................................................................................ 12

13) Reviews and Approvals......................................................................................................... 15

14) Submission Process .............................................................................................................. 17

15) Assignment of COR, GTM and GIA........................................................................................ 18

16) Roles and Responsibilities .................................................................................................... 19

17) DOS as the Servicing Agency for Incoming IAAs................................................................... 20

18) Closeout Procedures............................................................................................................. 20

19) Additional Resources and Information.................................................................................. 21

20) List of Linked Documents ..................................................................................................... 21

AR 000210

**U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE**

**Revision 1: Major Changes:**

1.  Section 8, Interagency Forms: All DOS Bureaus must now use the G-Invoicing system. Section 8 lists exceptions, such as deferred G-Invoicing, for instance where the partnering agency does not use the G-Invoicing system.

2.  Section 12, IAA Documentation Requirements: Inclusion of State First Policy for Acquisitions - Domestic bureaus and offices must first consider using the services of Global Acquisition (A/GA).  A fully approved State First Waiver memorandum must be submitted before transferring funds to another agency to conduct an assisted Interagency Agreement.

*   Section 15, Assignment of COR, GTM, AOR, and GOM changed to Assignment of COR, GTM, and GIA –
    *   Section 15(a) - Removal of AOR and GOM terminology.   A designated COR is mandatory for all IAAs.  GTMs may be designated if needed.

    *   Added Section 15 (b), G-Invoicing Approver (GIA) – Optional: IAA Bureau Primary/Final approvers may appoint a GIA to support completing the General Terms and Conditions (GT&C) and Order Acquisition (OA) documents in the G-Invoicing system and in deferred G-Invoicing.  GIAs have no signature or approval authority.

3.  Section 18(d), Close-out Procedures: Added language that in cases where the servicing agency does not require signatures on the amendments or modifications for close-outs, the requiring agency must include such documentation in the IAA file, and unilaterally close-out the GT&C or orders.  If using G-Invoicing, GT&Cs can be closed by individuals designated with a GIA role.

4.  IAA Form Requirements and Processes: Updated for G-Invoicing and Deferred G-Invoicing.

5.  State First Request Form: Added template for State First Waiver Request.

AR 000211

**U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE**

**1) Purpose**

The purpose of this guide is to consolidate and standardize Department-wide policies and procedures related to the preparation, processing, coordination, execution, administration, and closeout of Interagency Agreements (IAA).

**2) Scope**

The guide applies to all domestic and overseas posts, bureaus, and program offices.

**3) Authorities**

Many Department of State (DOS) IAAs are issued under the terms of the Economy Act (31 U.S.C. 1535 & 1536), as implemented by the Federal Acquisition Regulation (FAR) Subpart 17.5 and the Department of State Acquisition Regulation (DOSAR), Subpart 617.5. The Economy Act only applies when more specific statutory authority does not exist. The most used specific authorities include:

a) <u>Foreign Assistance Act</u>, (22 USC 2151): This authority provides that any officer of the United States government carrying out functions under the Foreign Assistance Act may utilize the services of any other Federal agency. The Foreign Assistance Act promotes the foreign policy, security, and general welfare of the United States by assisting countries in their efforts toward economic and social development. This authority should be used for an IAA where the servicing agency will receive payments or reimbursements with foreign assistance funds for performing foreign assistance programs. This includes, but is not limited to, requesting servicing agency personnel to perform services for the Department of State, or award grants or contracts on behalf of the Department.

b) <u>Foreign Missions Act</u>, Section 208(e) (22 USC 4308(e)): This authority applies only to the Department of State's Office of Foreign Missions (OFM). It permits OFM to receive services from, and provide services to, other Federal agencies in carrying out foreign missions' support functions. This includes, but is not limited to, asking servicing agency personnel to perform services for the Department of State, or award a grant for the Department.

c) <u>Omnibus Diplomatic Security Act of 1986</u>, (22 USC 4801): This authority authorizes other Federal agencies to cooperate with the Department of State through agreements under which such agencies may, "with or without reimbursement, provide assistance to the Secretary, perform security inspections, provide logistical support relating to the differing missions and facilities of other Federal agencies, and perform other overseas security functions as may be authorized by the Secretary." This includes, but is not limited to, asking servicing agency personnel to perform services for the Department of State, or award a grant for the Department.

AR 000212

## U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE

d) <u>State Department Basic Authorities Act</u>, (22 USC 2651(a)): This authority permits transfer of Department of State appropriations to another agency for direct expenditure by that agency.  Such transfers may be "non-expenditure" transfers that do not involve specific undertakings by the recipient agency and therefore do not support an obligation of funds.  In some cases, the Department of State has relied on Section 8 authority to obligate funds incidental to an interagency agreement authorizing transfer of funds for specified purposes that wouldn't constitute an Economy Act interagency acquisition. Examples of this include, but are not limited to, awarding grants or cooperative agreements to non-U.S.-federal-government entities such as U.S. state or local governments, foreign governments, or nonprofit or not-for-profit organizations Program Officers should avoid reliance on this authority if another adequate authority is available.  Close scrutiny is required where this authority is relied upon.

**4) References**

a) FAR Subpart 17.5, Interagency Acquisitions

b) DOSAM Subpart 617.5, Interagency Agreements

c) DOSAR Subpart 617.5, Interagency Acquisitions Under the Economy Act

d) Department of the Treasury Intragovernmental Transaction Guide

e) Office of Management and Budget (OMB) Memorandum "Improving Management and Use of Interagency Agreements" dated June 6, 2008

**5) Definitions and Applicability**

Frequently used terms are defined as follows for purposes of this guide, with additional information regarding applicability included as necessary:

<u>Assisted Acquisition</u>: As defined in FAR 2.101, an Assisted Acquisition is a type of interagency acquisition where a servicing agency performs acquisition activities on a requesting agency's behalf, such as awarding and administering a contract, task order, or delivery order.  Assisted Acquisitions are a subset of interagency agreements entered into for the primary purpose of obtaining services or products from contractors.  Interagency agreements for Assisted Acquisitions are also referred to as Acquisition Assistance IAAs (see also Non-Acquisition Assistance IAAs).

<u>Bureau of the Comptroller and Global Financial Services (CGFS)</u>: The bureau that is providing the Department's financial management platform both domestically and overseas.

<u>Determination and Findings (D&F)</u>: As defined in FAR 1.701, Determination and Findings are a special form of written approval by an authorized official that is required by statute or regulation as a prerequisite to taking certain contract actions.

<u>Direct Acquisition</u>: As defined in FAR 2.101, a Direct Acquisition is a type of interagency acquisition where a requesting agency places an order directly against a servicing agency's

AR 000213

## U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE

indefinite-delivery contract.  The servicing agency manages the indefinite delivery contract but does not participate in the placement of administration of an order.

General Terms and Conditions (GT&C): Document that sets the relationship between the trading partners.  It identifies the agencies entering into the agreement, the agreement action, period, and type.  Bureaus must use Government-Invoicing (G-Invoicing) to create and approve the GT&C unless the IAA is a valid G-Invoicing deferrals (see Section 8 for more information).

Government Invoicing (G-Invoicing): Government Invoicing (G-Invoicing) a government-wide platform facilitates federal entities' inter-agency transactions.  G-Invoicing must be accessed through the Department of Treasury's website and require registration and login.  G-Invoicing is the long-term sustainable solution to improve the quality of Intragovernmental Transactions (IGT) - Buy/Sell data and reporting challenges by providing a common platform for brokering all IGT Buy/Sell activity, implementing a Federal IGT Buy/Sell Data Standard, and providing transparent access to a common data repository of brokered transactions.

Global Financial Management System (GFMS): A web-based application that serves as the official financial management system for the Department of State.  GFMS provides financial accounting, funds control, management accounting and financial reporting.

Interagency Acquisition: As defined in FAR 2.101, an Interagency Acquisition is a procedure which an agency needing supplies or services (the requesting agency) obtains them from another agency (the servicing agency), by an assisted or a direct acquisition.  The term includes acquisitions under the Economy Act and acquisitions completed under other statutory authorities.

Interagency Agreement (IAA): A written agreement entered into between two Federal agencies, which specify the goods/services to be furnished or tasks to be accomplished by one agency (the servicing agency) in support of the other (the requesting agency).  As discussed in FAR 17.502-1(a), an IAA establishes the general terms and conditions governing the relationship between the parties, including roles and responsibilities for acquisition planning, contract execution, administration, and management of the contract(s) or order(s) and must be included in each agency's file.

Intra-Governmental Payment and Collection (IPAC): A system used by Federal agencies to transfer funds from one agency to another with standardized descriptive data.

Non-Acquisition Assistance IAA: A subset of interagency agreements involving the provision of products or services by the servicing agency where contractor support is incidental to the provision of goods or services (see also Acquisition Assistance IAAs).

Order (under an IAA): An order under an IAA creates a fiscal obligation between agencies or bureaus and delineates specific product and/or service requirements, funding information

AR 000214

## U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE

for both trading partners, and authorized signatures to obligate the funding (see section 8 for required order forms).

Performance: A transaction that tracks goods/services that the Servicing agency provides, refunds, or requests for advance payment.

Requesting Agency: As defined in FAR 2.101, the requesting agency (also referred to as the buyer) is the agency that receives goods/services

Servicing Agency: As defined in FAR 2.101, the servicing agency (also referred to as the seller) is the agency that will provide goods/services.

Trading Partners: Term used for the two partnering agencies, which are the requiring agency and the servicing agency of the Interagency Agreement.

6) **Types of Interagency Acquisitions**
   There are two types of interagency acquisitions:

   a) Direct acquisitions involve one agency placing an order against another agency's procurement instrument (such as a BPA or IDIQ contract).  The requesting agency administers the order; therefore, no IAA with the servicing agency is required.  IAAs are not required for orders against a Federal Supply Schedule (FSS).  For other acquisitions, Contracting Officers (COs) will review contract documentation and contact the issuing contracting office to verify the Department of State may issue orders directly against the contract and that an IAA is not required.  If an IAA is required, it is an assisted acquisition as discussed below and must follow all requirements for assisted acquisitions.

   b) Assisted Acquisitions involve interagency agreements where a servicing agency performs acquisition activities on a requesting agency's behalf, such as awarding and administering a contract, task order, or delivery order.  Prior to the issuance of a solicitation, the servicing agency and the requesting agency must execute an Assisted Acquisition IAA.  The IAA should contain information regarding whether the servicing agency will establish a new contract/task order for the Department or will the Department provide funding to the servicing agency for an existing contract.

7) **Types of Assisted Acquisitions**
   There are two types of IAAs, both of which must follow the IAA requirements in this guide:

   a) Assistance Acquisition IAAs involve interagency agreements where a servicing agency performs acquisition activities on a requesting agency's behalf, such as awarding and administering a contract, task order, or delivery order.  Examples are as follows:

AR 000215

## U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE

      i. The servicing agency acts as a Selling Partner, serving as a "contracting & procurement" proxy for the Buyer/Requesting Agency. In this capacity, the function of the Selling Partner is performatively a "contract shop" which establishes, solicits, awards, manages, and closes-out contracts on the Buying Partner's behalf.

     ii. Selling Partner grants access to their contract to the benefit of the Buying Partner and performs acquisition tasks towards their contract on the Buying Partner's behalf.

    Note: Usually, fees are associated with this type of IAA.

b) <u>Non-Assistance Acquisition IAAs</u> involve other interagency agreements or interagency transfer of funds when servicing agency is performing the work, and any acquisition support is incidental to the purpose of the IAA. For example, USDA has a food program supported by an existing contract. DOS sends funding in support of USDA's program. The servicing agency (USDA) does not issue a contract or order on behalf of the requesting agency (DOS).

c) <u>Exemptions from IAA Policy</u>
The following interagency transactions are exempt from this IAA guide policy:
- Intergovernmental Personnel Act (IPA) transactions;

- Standard Form 182, Authorization, Agreement and Certification of Training (Authority: PL 79-724 and PL 85-507; EO9397 for SSN) provides for the request, authorization, agreement, and certification of training. Separate Interagency Agreements are not necessary or required from those agencies being supported as the SF 182 service agreement defines responsibilities and roles. The Foreign Service Institute (FSI) manages seller-side agreements;

- Reimbursable Work Authorizations (RWAs) established between the Department of State and the General Services Administration (GSA). RWAs are established for matters pertaining to telephones, electrical and carpentry service, and maintenance.

- Intra-Departmental Transactions between two entities that are both part of the Department of State; and

- Requests for Assisted Procurement Support from Department of State Under the International Cooperative Administrative Support Services (ICASS). ICASS provides for the procurement of administrative goods and services to support agencies under Chief of Mission authority. Interagency Agreements are not required from those agencies being supported since the ICASS service agreements define responsibilities and roles and a determination has been made that consolidated administrative purchasing support overseas is in the best interest of the government.

AR 000216

**U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE**

8)  **Interagency Agreement Forms**

G-Invoicing is the platform for drafting, executing, tracking, and performing IAAs.  DOS must use G-Invoicing unless specifically listed below.  In these cases, known as "Deferred G-Invoicing", the Treasury forms 7600A (GT&C) and 7600B (Order) may be used instead of G-Invoicing.

- Classified IAAs
- Training/SF-182 (including FSI-provided training)
- Not paid via IPAC, including Direct Fund Cite
- Trading Partner is not able to use G-Invoicing for all or any part of the transaction (for example, uses G-Invoicing only for GT&Cs, OR uses G-Invoicing for GT&Cs and orders, not Performance).

See IAA Form Requirements and Processes for an overview of specific steps and transactions required for actions deferred from G-Invoicing, as well as instructions for using Treasury FS Forms 7600A and 7600B.  See Section 18 below, Additional Resources and Information, for G-Invoicing system training and CGFS mailbox for G-Invoicing system questions.

9)  **Determination and Findings Memorandum under the Economy Act (FAR 17.502-2)**

A D&F is required for IAAs entered under the authority of the Economy Act as follows:

a)  The Economy Act (31 U.S.C. §1535) authorizes agencies to enter into agreements to obtain supplies or services from another agency.  The FAR applies when one agency uses another agency's contract to obtain supplies or services.  If the interagency business transaction does not result in a contract or an order (i.e., non-acquisition assistance IAAs), then the FAR does not apply.

b)  The Economy Act is not required for orders against General Services Administration (GSA) Federal Supply Schedules for Governmentwide Acquisition Contracts (GWACs).

c)  Each Economy Act order must be supported by D&F.  The D&F shall be written in accordance with FAR 17.502(c), Economy Act Determinations and Findings, and DOSAR 617.503, Determination and Findings Requirements.  Refer to the Sample D&F under the Economy Act.

d)  The D&F shall be approved by a Contracting Officer of the requesting agency with authority to contract for the supplies or services to be ordered, or by another official designated by the agency head, except that, if the servicing agency is not covered by the FAR, approval of the D&F may not be delegated below the Senior Procurement Executive of the requesting agency.

AR 000217

## U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE

e) The requesting agency shall furnish a copy of the D&F to the servicing agency with the request for order.

10) **Payment**

a) If approved by the servicing agency, payment for actual costs may be made by the requesting agency after the supplies or services have been furnished.

b) The servicing agency may ask the requesting agency, in writing, for advance payment for all or part of the estimated cost of furnishing the supplies or services prior to the agreed upon performance date/period of performance.  Adjustment based on actual costs shall be made as agreed to by the agencies.

c) Bills rendered or requests for advance payment shall not be subject to audit or certification in advance of payment.

d) In no event shall the servicing agency require, or the requesting agency pay, any fee or charge in excess of the actual cost (or estimated cost if the actual cost is not known) to enter into and administer the contract or other agreement under which the order is filled.

11) **Financial Aspects of IAAs**

a) Fiscal Rules Compliance A user must create an obligation in the requesting agency's financial system after both agencies fully approve the Order (7600B), and Obligation amount must equal the Order amount. The requesting agency is subject to fiscal laws and rules and appropriations obligations for expenditures executed by servicing agencies.  The period of availability of the requesting agency's funds obligated under an IAA does not change, except as specifically provided by law.

b) DOS Service Fee as the Servicing Agency – When DOS is the servicing agency, DOS may not charge the requesting agency a service fee unless the Office of Management and Budget (OMB) or U.S. Congress delegates DOS to charge a service fee for providing services under an IAA.

c) Time of Agreement - An IAA is required to record the obligation and make payment. Supplies or services are not provided or accepted until the completed IAA is executed by both the requesting agency and servicing agency.  A completed IAA is essential; however, the lack of a written agreement before performance may not necessarily preclude reimbursement.  For example, reimbursement can still be made if (1) an IAA had been in effect for several prior years; and (2) the facts showed that the agencies intended to continue the IAA for the year in question.  Foregoing reimbursement may raise appropriations law issues.  For this reason, legal counsel should be consulted if services have been accepted by the receiving agency without an IAA in place.

AR 000218

**U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE**

<u>Option Periods</u> - IAAs may include option periods.  Ensure the performance work statement or statement of work and Economy Act D&F (if required) cover all planned option periods.  Funding for each option period must be available and appropriate for obligation at the time the option is exercised.

d)  <u>Types of Payments</u>
   - **Advance payment** - A requesting agency must obligate any advanced funding at the time of the execution of the Order/7600B.  The advance pay scenario may be used to cover the full amount of the anticipated contract obligation where the servicing agency requires the funds on hand in its financial system.  Advances should be limited in usage and requested only when a business need exists for the seller to execute an order.  The servicing agency will process an IPAC or G-Invoicing advance transaction to transfer funds prior to entering a contract obligation.  Advance payment will often be based on estimates, which will require subsequent upward or downward adjustments when the actual costs are known.  Reports of actual expenses are forwarded to the Contracting Officer's Representative (COR)/Point of Contact (POC) for Assistance Acquisitions and Non-Assistance agreements for approval, then posted in the financial system to draw down the advance.  Any excess should be promptly returned to the requesting agency before closing or terminating the IAAs.  Retention of the excess amount by the servicing agency is an improper augmentation of appropriated funds.

   - **Reimbursement** – Agencies must obligate funds in the requesting agency's financial system when the Order is fully approved.  Depending on the information in the Order, the Servicing Agency will also request advance payment or request payment after providing goods/services.  IPAC transactions generally occur following delivery of products or services or on preset intervals (e.g., monthly, quarterly, and annually).

e)  <u>Costs</u>
   - Costs consist of direct costs (expenditures incurred by the servicing agency which are specifically identifiable and attributable to performing the service) and indirect and/or overhead costs (expenses necessary for an organization's operations but not directly tied to a specific product, service, or project).  Overhead or other indirect costs may be charged in the form of a fee by the servicing agency.

   - If an IAA is based on estimated costs, when final costs are known, and the costs are less than the amount of the agreement, the agreement must be promptly adjusted downward and the remainder de-obligated in the financial system of the requesting agency.  The agreement will require an amendment to adjust the ceiling if the actual cost is less than the estimate.

   - Where costs exceed the amount of the agreement, the agreement must be adjusted upward and the obligation increased in the financial system of the requesting

AR 000219

**U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE**

agency. If sufficient funds are not available, performance must be curtailed.  This should be accomplished prior to the end of the period of availability of the appropriation financing the obligation.

f)  Payment Process
Funds are commonly collected from the requesting agency using either G-Invoicing or the IPAC system (G-Invoicing deferrals) using a unique Agency Location Code (ALC).  The requesting agency's IAA number, order number, accounting codes, related line items, and a detailed explanation of the expenses incurred should be cited in the Order.

- The COR reviews and approves the G-Invoicing payment/collection or IPAC (G-Invoicing deferral).  The COR verifies that the goods or services were received and/or accepted by the requesting agency.  Adjustments or rejections of IPAC collections should be completed within 90 days.

- Invoices are created and routed in accordance with instructions in the IAA.  Payment is made through IPAC.  Note that a Performance transaction in G-Invoicing will lead to an IPAC payment if using G-invoicing.

- Payments (costs) should be expensed against the obligation on the requesting agency's financial records.

- Payments are not made until after the IAA and Order are signed by both parties.

g)  Liquidation of Funds – Funds obligated via an IAA Order are available for liquidation for goods delivered and/or services rendered only during the period of performance codified on the executed Order.  To the extent excess appropriated funds remain on an Order beyond its period of performance, such funds must be de-obligated irrespective of leveraged statutory authority.  De-obligations should occur within 1 calendar quarter following the conclusion of the Order's period of performance and confirmation of Bona Fide Need fulfillment from the Servicing Agency where possible.

**12)  IAA Documentation Requirements**
a)  State First Policy for Acquisitions
1.  Domestic bureaus and offices must first consider procuring goods or services through Global Acquisitions (A/GA) before transferring funds to another agency to conduct an assisted acquisition.  This policy applies departmentwide regardless of the statutory or regulatory authority to transfer funds to other agencies for acquisition purposes.  (Including transfers under the Economy Act, the Clinger-Cohen Act, and any other legal authority, as well as funds deposited with another agency for subsequent use, where no immediate need has been identified).

AR 000220

**U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE**

2. Domestic bureaus or offices may only transfer funds to another agency for assistance acquisition services after obtaining a waiver of the State First policy through the Chief Acquisition Officer and the Deputy Assistant Secretary for Acquisition & Senior Procurement Executive, or their designees.  The State First Waiver Request must be signed by the Bureau Executive Director or DAS, which is non-delegable.

3. Waiver requests must be cleared through the Office of Small and Disadvantaged Business Utilization (OSDBU).  Domestic bureaus or offices may only transfer funds to another agency for assisted acquisition services after obtaining a waiver of the State First policy through the Chief Acquisition Officer and the Deputy Assistant Secretary for Acquisition & Senior Procurement Executive, or their designees.  The Request for Waiver must be signed by the Bureau Executive Director, which is non-delegable.  State First Waiver is an internal document, and should be included in the file, but not be uploaded in G-Invoicing.

   Waiver requests must address the following:
   - Identification of the agency proposed to provide acquisition services, including contact name, address, and telephone number;
   - Description of the requirements and acquisition services to be provided by the other agency, to include all acquisition history and incumbent contractor name, if applicable;
   - Estimated total dollar value, including option years;
   - Duration of requirement, including option years;
   - Justification and rationale for using another agency for the acquisition, to include at a minimum:
     a. All associated services provided by the agency in support of the acquisition.
     b. Ability to expedite the procurement action because of existing servicing agency's resources, such as experienced contracting officers or technical evaluation panel.
     c. Whether the Department's schedule, performance and delivery requirements can be satisfied (taking into account factors such as the servicing agency's authority, experience and expertise and past performance).
     d. Any unique capability or experience of the servicing agency.
     e. Ability of the servicing agency to comply with Department of State appropriation limits, laws and policies.  Percentage and dollar amount of surcharge that would be applied by the proposed servicing agency, and cost effectiveness considering the reasonableness of servicing agency fees.

AR 000221

**U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE**

b) General Information Regardless of Authority
Each IAA must identify the supplies and services to be provided and identify the agreed upon fee charged by the Servicing Agency.  The description of supplies or services must be specific, definite, and clear to support a binding agreement that will be recorded as an obligation.  The IAA must also establish a ceiling amount limiting the requesting agency's financial obligation.

c) Economy Act Acquisition Assistance IAAs must include the following:
   - Requisition - A funding document must be completed as outlined in the IAA Form Requirements and Processes document.
   - IAA request form and other bureau-required documentation containing the information necessary for the creation of the agreement, with signatures indicating program office approval, and including financial office funds certification;
   - Economy Act D&F; and
   - Requests should be accompanied by a copy of the acquisition package to be submitted to the servicing agency, including the:
     - Acquisition plan (as required);
     - Statement of work or other description of the requirement;
     - Period of performance, including any options periods;
     - Market research identifying potential suppliers or service providers, if needed; and
     - Independent government cost estimate (including any option periods).

d) Economy Act Non-Acquisition Assistance IAAs - Documentation for IAAs entered into pursuant to the Economy Act for other than assisted acquisition, specifically interagency reimbursable work performed by federal employees (other than acquisition assistance) or interagency activities where contracting is incidental to the purpose of the transaction, must include the following:

   - Documentation certifying that funding is available.
   - The agency or unit to fill the order can provide or obtain by contract the ordered goods or service.

e) Non-Economy Act Documentation - Documentation requirements for IAAs entered into pursuant to an authority other than the Economy Act must adhere to the statutory and regulatory requirements particular to the authority.

f) Performance Documentation
   - Program Offices must ensure that adequate documentation is maintained with respect to the performance results achieved under each agreement.  Oversight of contractor performance will generally be the responsibility of the assigned COR for acquisition assistance IAAs and for non-acquisition assistance IAAs.  The COR is

AR 000222

**U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE**

    responsible for maintaining documentation for any required deliverables, technical reports, cost/expense reports, and notices of acceptance or rejection.

- Program monitoring should be tailored to the size and complexity of the program. The requesting agency Program Office, COR and budget office should review the project and financial status reports and identify/discuss issues with the servicing agency program and/or financial officers. Reports should be submitted to the requesting agency at least annually, but the frequency may vary depending on the size and complexity of the program. The required frequency of project and financial reports should be stated in the GT&C and the order.

- Project status reports should be verified by monitoring methods (such as site visits or verification of deliverables, such as completion of milestones). Performance metrics should be used to measure program effectiveness. Financial status reports should be verified by joint reconciliation efforts and by the requesting agency reviews of the servicing agency records. Oversight and interagency coordination of an IAA is the responsibility of the requesting agency /COR. The parties should hold regular status meetings commensurate with the size and complexity of the program to discuss the project's status.

g) <u>Amending or Modifying the IAA</u> - Changes in terms, funding or period of performance should be addressed in a timely manner (i.e., prior to the expiration date of an existing agreement) and incorporated in formal amendments to the terms of the IAA.

**13) Reviews and Approvals**

a) State First Policy requires signature approvals on the State First Waiver Request, as stated in Section 12) a) prior to executing any IAA.

b) The Economy Act requires that a requesting agency execute a D&F for Economy Act acquisition assistance IAAs. A D&F is not required for reimbursable work performed by federal employees (other than acquisition assistance) or interagency activities where contracting is incidental to the purpose of the transaction. However, for non-acquisition assistance Economy Act IAAs, the documentation listed in 12) d) is still required.

c) IAAs shall be prepared and signed in advance by an authorized official of each of the requesting and the servicing agencies concerned. IAAs should be executed only at appropriate senior bureau official levels or for DOS IAAs, the IAA Proxy for systematic actions designated by the Bureau Executive Officer/DAS and include certification of available funding and resources to ensure the IAA obligations are met.

d) The following tables show the requirements for reviews, clearances, primary approvals, and final approvals for DOS IAAs. Table 1 lists the required reviews and approvals when DOS is the requesting agency. Table 2 lists the required reviews and approvals when DOS is the servicing agency. Reviews and approvals must take place in the order listed.

AR 000223

## U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE

Final Approval signatures are required after the review/clearance/primary approval process is completed as indicated in the table below:

Table 1 – DOS as the Requesting Agency

| Table 1 – DOS as the REQUESTING AGENCY | | | |
|---|---|---|---|
| Document or Type of Action | Submitted By | Reviews/Clearances/ Primary Approvals | Final Approval |
| Assisted Acquisition Award/Modification IAA for an Assistance Acquisition | Bureau | Budget Officer Division Director OSDBU over SAT L/BA if over $5M Head of the Contracting Activity (HCA) | Bureau Executive Director or Deputy Assistant Secretary (DAS) |
| Economy Act D&F (written memorandum) | Requesting Office (Bureau) | CO OSDBU if over SAT L/BA if over $5M HCA if over $250M | HCA up to $250M Senior Procurement Executive (SPE) if over $250M or if the servicing agency is not covered by FAR |
| Non-Acquisition Assistance IAAs (or Interagency transfer of funds when no acquisition is performed by servicing agency) | Bureau | Budget Officer Assigned Office of Legal Advisor | Bureau Executive Director or DAS |

AR 000224

### U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE

Table 2 - DOS as the Servicing Agency

| Table 2 - DOS as the SERVICING AGENCY | | | |
|---|---|---|---|
| Document or Type of Action | Submitted By | Reviews/Clearances/ Primary Approvals | Final Approval |
| Assisted Acquisition Award/Modification IAA for an Assistance Acquisition | Bureau | OSDBU if over SAT L/BA if over $5M | Bureau Executive Director or DAS |
| Economy Act D&F (written memorandum) | Requesting Office (Bureau) | CO OSDBU if over SAT L/BA if over $5M HCA if over $250M | HCA up to $250M SPE if over $250M |
| Non-Acquisition Assistance IAAs (or Interagency transfer of funds when no acquisition is performed by servicing agency) | Bureau | Budget Officer Assigned Office of Legal Advisor | Bureau Executive Director or DAS |

**14) Submission Process**

a) Documentation - The following documentation is required when applicable (see section 12 for more information on documentation):

- Approved State First Memorandum
- Economy Act D&F signed by CO;
- Completed GT&C and Order (see section 8 and IAA Form Requirements and Processes for G-Invoicing or deferred steps);
- Memorandum for assigning COR/GTM;
- Acquisition Plan, if above the SAT;
- Independent Government Estimate, including option periods; and
- Any other documents that may be required by a specific authority being used.

b) Reviews - The requesting bureau is responsible for obtaining the reviews, clearances, and approval signatures listed in Section 13) d).

c) Signatures - After receipt of reviews, clearances and primary approvals, GT&Cs and orders must be signed by the Bureau Executive Director or Deputy Assistant Secretary (DAS) or Proxy of another higher-level official, if designated, as the final approval.

d) Records - Copies of all IAAs (including all GT&Cs, all orders and any other attachments) may be uploaded in GFMS or may be sent to GFSCIAA@state.gov.  Obligations are

AR 000225

**U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE**

recorded in the financial system as interagency transfers.  Bureau Executive Directors or Deputy Assistant Secretaries signing any part of an IAA shall maintain files of reviews and approvals.  IAAs are not reported in the Federal Procurement Data System (FPDS).

15) **Assignment of COR, GTM and GIA**
   a) <u>COR</u> (mandatory for direct and assisted (including assistance and non-assistance) interagency acquisitions):

   - Executive Directors or Deputy Assistant Secretaries shall assign a COR for any IAA where the total Independent Government Cost Estimate of all expected orders against the GT&C are over the Simplified Acquisition Threshold (SAT), and for any order against a GT&C that exceeds the SAT.  All CORs assigned to any part of an assisted acquisition must be at least FAC-C COR Level II-certified.
   - When necessary, bureaus may also appoint Government Technical Monitors (GTMs) for one or more individual orders.  GTMs must meet the same qualification and appointment requirements as COR above.  Otherwise, the COR is responsible for all orders placed under the IAA.  Only one COR shall be assigned to each IAA; however, more than one GTM may be assigned to an IAA depending on the complexity of the IAA.
   - See [sample memorandum request to assign a COR/GTM](#).

   b) G-Invoicing Approver (GIA) - Optional:

   - If bureaus are not provisioning the bureau primary/final approvers within G-Invoicing, the bureau primary/final approvers (Tables 1 and 2 above) may appoint a GIA to support completing GT&C and OA documents outside of G-Invoicing and wet signatures must be obtained and attached within G-Invoicing.  GIA shall have no signature authority or approvals on printed documents.
   - GIA supports the primary/final approvers in completing the G-Invoicing system transactions only.  The GIA may use G-Invoicing to draft the GTC and OA to be signed by the authorized primary/final approvals and attached.  If G-Invoicing is not used (G-Invoicing Deferrals), a current version of the Treasury form 7600A and 7600B must be completed, signed and attached.
   - GIA responsibilities include:
     - Obtaining and attaching the completed Performance Work Statement or Statement of Work, and D&F under the Economy Act when required to G-Invoicing.
     - If applicable, obtaining and attaching any other required documentation in support of the IAA, i.e., MOUs, Estimates, etc., to G-Invoicing.
     - Uploading the final signed GT&C and OA documents and attachments as required.

AR 000226

**U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE**

- The GIA is not required to complete COR training but is required to have systems training to perform duties.  Refer to G-Invoicing Training for training resources available.

**16) Roles and Responsibilities**
  a) CORs shall:
  - Adhere to the processes and requirements outlined in this guide.
  - Prepare a Performance Work Statement or Statement of Work when required, ensuring that program funds are spent in a manner that results in planned outcomes (i.e., that all IAAs contain clearly defined requirements, performance measures and monitoring plans to the maximum extent practicable);
  - Prepare the IAA GT&C, identifying the agencies entering into the agreement, the authority permitting the agreement, and the agreement action, period, and type. Each IAA must include one GT&C;
  - Draft the D&F required for Economy Act IAAs (see sample D&F);
  - Prepare any other required forms and transactions as outlined in IAA Form Requirements and Processes;
  - Upload the final signed documents and attachments as required. Note that IAAs are not reported in the Federal Procurement Data System (FPDS);
  - Maintain required certification.
  - Monitor performance of servicing agency and/or contractor;
  - Monitor reimbursements and funding;
  - Report performance/compliance issues and disputes over IAA terms and conditions to the individual authorized to obligate funding on the agreement;
  - Accomplish receipt and acceptance in accordance with Bureau procedures;
  - Review and approve invoices and/or IPAC transactions;
  - Close out the IAA in coordination with the responsible program official;
  - Notify the authorized program official and financial points of contact, in writing, upon physical completion of the IAA;
  - Ensure IAA is extended via modification if performance is required beyond agreed performance period; and
  - Ensure that all invoices have been paid or that all IPAC transactions have been fully documented and reconciled prior to closeout.

  b) Bureau Program Office shall:
  - Prepare the State First Memorandum (See section 12), acquisition plan and procurement documents, as required, for IAAs;
  - Ensure the IAA adheres to legal and policy requirements;
  - Prepare an Independent Government Cost Estimate to include any option years;
  - Obtain any required reviews and approvals;
  - Ensure funds are obligated upon IAA award in GFMS;
  - Identify and nominate a qualified COR (as required) by issuing a delegation memo referencing the IAA number, as appropriate (see Sample of Memorandum Request

AR 000227

## U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE

for COR/GTM).  If COR is not required, the Bureau Program Office must ensure that any requirements in 15) a) above are otherwise met;

- Monitor performance of servicing agency and/or contractor;
- Monitor performance of COR (if applicable);
- De-obligate unliquidated funding balances, when necessary;
- Resolve performance/compliance issues and disputes;
- Negotiate modifications or amendments to the IAA;
- Perform required closeout functions upon notification by the COR that the IAA has been satisfactorily completed, and final payment has been made; and
- Resolve any disputes between agencies' respective management.  If the dispute cannot be resolved by agencies' respective management, such disputes are to be resolved in accordance with instructions provided in the Treasury Financial Manual (TFM) Volume I, Part 2, Chapter 4700, Appendix 10, Intragovernmental Business Rules.  Also, Bureaus should request legal advice with respect to any IAA whenever there is a question as to compliance with applicable laws and regulations.

**17) DOS as the Servicing Agency for Incoming IAAs**

a) Servicing IAAs occur when another agency requests DOS program support.  Incoming IAAs must be reviewed by the bureau budget office, performing program office, and Legal Advisor.  Incoming agreements may be signed by the same authorities as outgoing agreements.  Refer to section 13 for required reviews and approvals.  Copies of incoming agreements must also be sent to CGFSAuditRequests@state.gov.

b) When program offices become aware that it may be in the best interest of the Government to perform acquisition services on behalf of another agency, and if authority exists for these services, the program office should consult with the appropriate contracting officer.

**18) Closeout Procedures**

a) The agreement closeout process is started after all work specified on an order is completed or terminated.

b) The servicing agency will verify completion or termination of all work, and that there are no outstanding obligations or commitments on the project.  The servicing agency will then validate the final billed amount along with a final performance and financial report.

c) Once the servicing agency's tasks are complete, the requesting agency COR will submit a final assessment to the requesting Bureau's Budget office.

d) After the final assessment is submitted, the requesting agency Budget Office, in collaboration with the requesting agency COR, will work with the servicing agency to

AR 000228

**U. S. DEPARTMENT OF STATE INTERAGENCY AGREEMENT GUIDE**

reconcile the financial accounts and identify amounts which require de-obligation and return to the requesting agency.

e) The requesting agency then completes the order modification for closeout and de-obligation of any excess funds.  Once all orders are closed out, the requesting agency will complete an amendment to the IAA to close it out in G-Invoicing.  Such amendments and modifications are signed by both the requesting and servicing agencies.  However, if the servicing agency does not require their signatures on the amendments or modifications, the requiring agency must include documentation of this in the IAA file, and the requiring agency will unilaterally close-out the GT&C or orders.  If using G-Invoicing, GT&Cs can be closed by individuals designated with a G-Invoicing approver role (GIA).

f)  All IAAs and orders must be completely closed out within one year of when all work specified in an order is completed or terminated.  After closeout, IAA records must be retained, archived, and destroyed in accordance with DOS and National Archives and Records Administration instructions.

**19) Additional Resources and Information**
  a) Questions regarding Department of State Interagency Acquisition policy may be directed to A/GA/AP/PO mailbox at AcquisitionPolicy@State.Gov.

  b) For bureaus that have general support questions regarding training, rollout or anything else related to the G-Invoicing initiative, please contact CGFSGFMS-IAA@state.gov or visit CGFS's IAA SharePoint page at:  https://usdos.sharepoint.com/sites/cgfs-dcfo/org/GFSS/SupportedSystems/Pages/IAA.aspx.

  c) For questions about G-Invoicing, email the G-Invoicing CGFS-GINV mailbox at CGFSGINV@state.gov.

**20)  List of Linked Documents**
  a) IAA Form Requirements and Processes

  b) Sample Determination and Findings under the Economy Act

  c) Sample State First Waiver Request

  d) Sample IAA COR/GTM Nomination Memo

AR 000229

**UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT**
**CONGRESSIONAL NOTIFICATION**
**Date Transmitted to Hill: April 20, 2026**

This is to advise that USAID plans to obligate up to the amounts listed by fiscal year and funding account as outlined in the table in Tab 1 to fund costs associated with close-out of terminated foreign assistance awards. This notification is submitted pursuant to sections 7011, 7015(c), 7015(f), and 7019 of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (Div. F, P.L. 118-47), as carried forward by the Full-Year Continuing Appropriations Act, 2025 (Div. A, P.L. 119-4) (FY 2025 Full-Year CR) and analogous provisions in the SFOAAs for FYs 2015 (Div. J, P..L. 113-235), 2016 (Div. K, P.L. 114-113), 2017 (Div. J, P.L. 115-31) , 2018 (Div. K, P.L. 115-141), 2019 Div. F, P.L 116-6), 2020 (Div. G, P.L. 116-94), 2021 (Div. K, P.L. 116-260) , 2022 (Div. K, P.L. 117-103), 2023 (Div. K, P.L. 117-328), and 2024 (Div. F, P.L. 118-47) (FY 2024 SFOAA); applicable notification requirements in the Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020 (P.L. 116-123), the American Rescue Plan Act of 2021 (P.L. 117-2), Ukraine Supplemental Appropriations Act, 2022 (Div. N, P.L. 117-103), Additional Ukraine Supplemental Appropriations Act, 2022 (P.L. 117-128), Additional Ukraine Supplemental Appropriations Act, 2023 (Div. M, P.L. 117-328), and the National Security Supplemental Appropriations Act, 2024 (Div. B, P.L. 118-50); and section 634A of the Foreign Assistance Act of 1961, pertaining to the use of notwithstanding authority and the reprogramming of foreign assistance funding impacting accounts and congressional directives from Fiscal Years 2015 - 2025 (including supplemental) appropriations acts.  Obligations may be in excess of $2,000,000 from deobligated balances of funds that remain available due to the exercise of the authority in section 7011 of the FY 2024 SFOAA, as carried forward by the FY 2025 Full-Year CR.

Depending on final costs and potential reprogramming actions, if necessary to rely upon notwithstanding authority to program this assistance, notwithstanding authority exists in sections 119(b),

1

AR 000230

534(b), 498(B)(j)(1), 104(c)(4), 133, and 660 of the Foreign Assistance Act of 1961, and sections 7032(b), 7035(a)(1), and 7061(a) or analogous provisions of the FYs 2015, 2016, 2017, 2018, 2019, 2020, 2021, 2022, 2023, and 2024 SFOAAs, as carried forward by the FY 2025 Full-Year CR, as well as the Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020 (P.L. 116-123, Div. A), the American Rescue Plan Act of 2021 (P.L. 117-2), Ukraine Supplemental Appropriations Act, 2022 (P.L. 117-103, Div. N), Additional Ukraine Supplemental Appropriations Act, 2022 (P.L. 117-128), Ukraine Supplemental Appropriations Act, 2023 (117-180, Div. B), Additional Ukraine Supplemental Appropriations Act, 2023 (P.L. 117-328, Div. M), and the National Security Supplemental Appropriations Act, 2024 (P.L. 118-50, Div. B).

Consistent with the March 28, 2025 notification to Congress regarding the realignment of certain USAID functions, USAID is providing notification of its plans to obligate funds to close-out all terminated USAID foreign assistance awards. Close-out costs may include a range of costs related to final settlement, to include any pending invoices, adjustments to negotiated indirect costs rate agreements (NICRA), costs associated with disposition of assets, and/or other claims. USAID will first use previously obligated, but unliquidated, funding in the award for closeout costs. However, to ensure all terminated awards have sufficient balances for close-out, USAID may reprogram funds within the FY 2015 - 2025 appropriations noted above, including supplemental appropriations as relevant, under the account headings of Assistance for Europe Eurasia, and Central Asia (AEECA), Complex Crises Fund (CCF), Development Assistance (DA), Democracy Fund (DF), Economic Support Fund (ESF), Global Health Programs (GHP), Transition Initiatives (TI), Child Survival and Health Programs, Assistance For Eastern Europe and the Baltic States, and Assistance for the Independent States of the Former Soviet Union. USAID does not intend to transfer funding between accounts or sub-accounts, and does not intend to transfer funding between operating units that would otherwise trigger notification.

USAID is finalizing estimates for terminated awards to pay implementing partners for costs incurred. In order to align

2

available resources with total costs associated with close-outs, including settlements, USAID may reprogram funding that remains unsubobligated in bilateral agreements, unexpended pipeline of terminated awards, and recoveries. Unobligated FY 2025 and prior year funding may also be used for award close out costs, including up to $1,179,099,000 of unnotified FY 2025 Development Assistance (DA) and up to $2,000,000,000 of Global Health Programs (GHP) resources under the Full-Year Continuing Appropriations Act, 2025 (Div. A, P.L. 119-4), which are being notified through this action.  The reprogramming or obligation of funding to close awards may trigger country notification requirements at the account level, which depending on the fiscal year may already meet or exceed the 10 percent exception under section 7015(c).  Additionally, close-out requirements may require reprogramming additional funding to pay termination costs in many special notification countries.  Any reprogrammings will be utilized in the most limited instances required.

One or more obligations are required to close out activities in the following countries, a number of which have consultation requirements (those countries underlined were designated as special notification countries in a given year(s) between FY 2015 and FY 2025): Angola, Benin, Botswana, Burkina Faso, Burundi, Central African Republic, Chad, Comoros, Cote d'Ivoire, Democratic Republic of the Congo, Djibouti, Equatorial Guinea, Eswatini, Ethiopia, Gabon, Gambia, Ghana, Guinea-Bissau, Guinea, Kenya, Lesotho, Liberia, Madagascar, Malawi, Mali, Mozambique, Mauritania, Mauritius, Namibia, Niger, Nigeria, Republic of Congo, Rwanda, Sao Tome and Principe, Senegal, Seychelles, Sierra Leone, Somalia, South Africa, South Sudan, Sudan, Tanzania, Uganda, Zambia, Zimbabwe, Afghanistan, Bangladesh, Burma, Cambodia, Fiji, India, Indonesia, Kazakhstan, Kyrgyz Republic, Laos, Maldives, Mongolia, Nepal, Pakistan, Papua New Guinea, Philippines, Sri Lanka, Tajikistan, Thailand (Regional Development Mission for Asia), Timor-Leste, Turkmenistan, Uzbekistan, Vanuatu, Vietnam, Albania, Armenia, Azerbaijan, Belarus, Bosnia and Herzegovina, Georgia, Greenland, Kosovo, Moldova, Northern Ireland, North Macedonia, The Russian Federation, Serbia, Ukraine, Central Europe (Hungary, Poland, Bulgaria, Romania, Slovenia, Slovakia, Czech Republic), Belize,

AR 000232

Bolivia, Brazil, Chile, Colombia, Cuba, Dominican Republic, Ecuador, El Salvador, Guatemala, Haiti, Honduras, Jamaica, Mexico, Nicaragua, Paraguay, Peru, Venezuela, Egypt, Iraq, Jordan, Lebanon, Libya, Morocco, Syria, Tunisia, West Bank and Gaza, and Yemen.

The following table in Tab 1 shows total amounts of unobligated funds (i.e., unobligated balances or unsubobligated funds previously obligated by USAID) in relevant accounts as of January 13th, 2026. These amounts represent unobligated resources versus expected closeout costs, which are anticipated to be substantially less than these total amounts. Unobligated and/or unliquidated funds that remain after USAID has completed all closeout actions may be used for other foreign assistance programs, such as those currently managed by the Department of State.

**Attachments**
Tab 1 – USAID Resources Available for Close Out Funding Table

4

AR 000233

**Tab 1**

| Account | FY 2024, Prior-Year and No-Year Unobligated Funds[2] | FY 2025 Unobligated Funds[3] | Unliquidated Obligations on Terminated Awards and DOAGs[4] | Total Amount Available for Close Out of Terminated Awards |
|---|---|---|---|---|
| **USAID Resources Available for Close Out[1]** | | | | |
| Assistance for Europe, Eurasia, and Central Asia[5] | $14,924,778 | | $1,394,404,357 | $1,409,329,134 |
| Complex Crises Fund | $6,336,023 | | $70,835,255 | $77,171,277 |
| Democracy Fund | $711,424 | | $138,841,179 | $139,552,603 |
| Development Assistance | $208,798,423 | $1,179,099,000 | $5,988,333,839 | $7,376,231,259 |
| Economic Support Fund | $108,351,307 | | $4,688,590,116 | $4,796,941,423 |
| Global Health Programs[7] | $268,907,958 | $2,000,000,000 | $3,017,193,590 | $5,286,101,548 |
| Transition Initiatives | $17,453,269 | | $75,691,354 | $93,144,623 |
| **Grand Total** | **$625,483,181** | **$3,179,099,000** | **$15,373,889,687** | **$19,178,471,868** |

*1) Amounts in the table reflect the ceiling amount available in these categories and these amounts do not equal expected closeout costs, which are anticipated to be substantially less than these total amounts.*
*2) Amounts in this column include resources managed by USAID appropriated in FYs 2018-2024 and no-year Treasury Appropriation Fund Symbols (TAFS). It includes both previously unobligated funding or resources that have been deobligated and are available for reobligation (recoveries) as of 1/13/2026.*
*3) Amounts in this column include unobligated and previously unnotified funding from the following TAFS: 19-1031 25/29, 72-19-1031 25/26, 72-1021 25/26, 72-1015 X, and 72-1027 X that may be available for close out of terminated USAID awards in coordination with the Department of State.*
*4) Amounts in this column are composed of funding obligated, but not yet disbursed, on terminated awards as well as un-subobligated funds available from DOAGs (excludes funds obligated by State) from FY 2015 to FY 2024 as of 1/13/2026.*
*5) Amounts reported for the Assistance for Europe, Eurasia, and Central Asia account include no-year funds from the Assistance for Eastern Europe and the Baltic States and Assistance for the Independent States of the Former Soviet Union accounts.*
*6) Amounts reported for the Global Health Programs account include no-year funds from the Child Survival and Health Programs account.*

5

# THE WHITE HOUSE

### WASHINGTON

August 28, 2025

Dear Mr. Speaker:

In accordance with section 1012(a) of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683(a)), I herewith report 15 rescissions of budget authority, totaling $4.9 billion.

The proposed rescissions affect programs of the Department of State as well as the United States Agency for International Development and International Assistance Programs.

The details of these rescissions are set forth in the attached enclosure.

Sincerely,



The Honorable Mike Johnson
Speaker of the
    House of Representatives
Washington, D.C.  20515

AR 000235



EXECUTIVE OFFICE OF THE PRESIDENT
OFFICE OF MANAGEMENT AND BUDGET
WASHINGTON, D.C.  20503

THE DIRECTOR

August 28, 2025

Honorable Gene L. Dodaro
Comptroller General of the United States
U.S. Government Accountability Office
Washington, D.C. 20548

Dear Mr. Dodaro:

   Pursuant to section 1014(b) of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 685(b)), enclosed are proposals for rescission submitted in accordance with section 1012(a) of such Act (2 U.S.C. 683(a)) that were transmitted to the Congress for consideration earlier today.

   The proposed rescissions affect programs of the Department of State as well as the U.S. Agency for International Development and International Assistance Programs.

   In total, these proposals would rescind $4.9 billion in budget authority.  If enacted, these rescissions would decrease Federal outlays in the affected account by the same amount.  This would have a commensurate effect on the Federal budget deficit and the national economy, and would result in less borrowing by the Federal Government.

Sincerely,

Russell T. Vought
Director

Enclosure

AR 000236

# THE WHITE HOUSE

WASHINGTON

August 28, 2025

Dear Mr. Speaker:

In accordance with section 1012(a) of the Congressional Budget
and Impoundment Control Act of 1974 (2 U.S.C. 683(a)),
I herewith report 15 rescissions of budget authority, totaling
$4.9 billion.

The proposed rescissions affect programs of the Department of
State as well as the United States Agency for International
Development and International Assistance Programs.

The details of these rescissions are set forth in the attached
enclosure.

Sincerely,



The Honorable Mike Johnson
Speaker of the
    House of Representatives
Washington, D.C.  20515

AR 000237

# THE WHITE HOUSE

WASHINGTON

August 28, 2025

Dear Mr. President:

In accordance with section 1012(a) of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683(a)), I herewith report 15 rescissions of budget authority, totaling $4.9 billion.

The proposed rescissions affect programs of the Department of State as well as the United States Agency for International Development and International Assistance Programs.

The details of these rescissions are set forth in the attached enclosure.

Sincerely,

The Honorable JD Vance
President of the Senate
Washington, D.C.   20510

AR 000238

Rescission proposal no. R25-23

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control**
**Act of 1974 (2 U.S.C. 683)**


**Agency:**       Department of State
**Bureau:**       International Organizations and Conferences
**Account:**      Contributions to International Organizations (019-1126 2025/2025)

Amount proposed for rescission:                    $520,500,000

**Justification:**

This proposal would rescind $521 million of the $1.5 billion appropriated in FY 2025 for the Contributions to International Organizations (CIO) account.  The CIO account provides funding for the assessed contributions to the United Nations (UN), UN-Affiliated organizations, and various other international organizations that do not support major U.S. policies or priorities or have been operating contrary to American interests for many years.

This proposal is consistent with Executive Order 14199, "Withdrawing the United States from and Ending Funding to Certain United Nations Organizations and Reviewing United States Support to All International Organizations."  The rescission would eliminate funding for the UN regular budget, and other organizations such the United Nations Educational, Scientific, and Cultural Organization.

1

AR 000239

Rescission proposal no. R25-24

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control**
**Act of 1974 (2 U.S.C. 683)**

**Agency:**      Department of State
**Bureau:**      International Organizations and Conferences
**Account:**     Contributions for International Peacekeeping Activities (019-1124 2025/2025)

Amount proposed for rescission:                    $392,534,000

**Justification:**

This proposal would rescind $393 million of the $1.2 billion appropriated in FY 2025 for the Contributions for International Peacekeeping Activities (CIPA) account, which was defunded in the President's FY 2026 Budget.  The CIPA account provides payments for the U.S. share of United Nations (UN) peacekeeping assessments.  UN peacekeeping has been fraught with waste and abuse, as evidenced by the ongoing sexual exploitation and abuse (SEA) in the Democratic Republic of the Congo and the Central African Republic.  There have been thousands of credible allegations of sexual abuse and other crimes against UN peacekeepers from across the world, including when UN personnel who solicited underage girls in Kosovo that resulted in them being kidnapped, tortured, and prostituted.  The UN has failed to address this issue by punishing the perpetrators of these heinous crimes.  UN Peacekeepers were also the source of the cholera outbreak in Haiti after the 2010 earthquake, costing billions and causing lasting harm.  Reports have also estimated that billions in peacekeeping contracts (over 40 percent) were implicated in significant corruption schemes.  The rescission would be a first step to engaging in strong reforms across the UN.

Other examples of activities funded by this account include:
- In 2023, 43 people were killed during demonstrations against the Democratic Republic of the Congo Mission (MONUSCO) and DRC presidential candidates have threatened to remove the UN peacekeeping mission from the DRC.
- The Mali mission (MINUSMA's) failure to retain host country consent and protect civilians is another stain on the UN's tattered history of peacekeeping.

2

AR 000240

Rescission proposal no. R25-25

## PROPOSED RESCISSION OF BUDGET AUTHORITY
### Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)

**Agency:**      Department of State
**Bureau:**      Other
**Account:**     Democracy Fund (019-1121 2020/2025)

Amount proposed for rescission:                           $1,800,498

**Justification:**

This proposal would rescind $2 million of the $274 million appropriated in FY 2020 for the Democracy Fund (DF).  The DF account is intended to fund democracy promotion activities of the Department of State and U.S. Agency for International Development.  In practice, DF activities undermine American values, weaken the perception of America abroad, interfere with the sovereignty of other countries—including U.S. allies, and bankroll corrupt leaders. For example, this account funded gender responsive governance and activities geared toward strengthening information integrity, equality, and democracy for LGBTQI+ populations.  The rescission would return funding from wasteful foreign assistance programs to taxpayers in alignment with America First foreign policy.

Other examples of activities funded by this account include:
- $2.7 million to advance "inclusive democracy" in South Africa through the Democracy Works Foundation, which has published articles such as "The Problem with Whiteness," and "The Problem with White People." One article claims that White South Africans are "not even aware" of the "hostility they unleash" against black people; another lauds terrorism and communism as an effective means of deconstructing White Afrikaner identity.

- $4 million for the "New Alliance for Global Equality" to advance "global LGBTQI+ awareness."
- $500,000 to support women in elections in the Maldives.

3

AR 000241

Rescission proposal no. R25-26

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**      Department of State
**Bureau:**      Other
**Account:**     Democracy Fund (072-019-1121 2020/2025)

Amount proposed for rescission:                         $56,107

**Justification:**

This proposal would rescind $56,107 of the $274 million appropriated in FY 2020 for the Democracy Fund (DF).  The DF account is intended to fund democracy promotion activities of the Department of State and U.S. Agency for International Development.  In practice, DF-funded activities weaponized programs that undermine American values, weaken perception of America abroad, interfere with the sovereignty of other countries, including U.S. allies, and bankroll the evasion by corrupt leaders of their responsibilities to their citizens.  For example, this account funded gender responsive governance and activities geared toward strengthening information integrity, equality, and democracy for LGBTQI+ populations. The rescission would return funding from wasteful foreign assistance programs to taxpayers in alignment with America First foreign policy.

Other examples of activities funded by this account include:
- $2.7 million to advance "inclusive democracy" in South Africa through the Democracy Works Foundation, which has published articles such as "The Problem with Whiteness," and "The Problem with White People." One article claims that White South Africans are "not even aware" of the "hostility they unleash" against black people; another lauds terrorism and communism as an effective means of deconstructing White Afrikaner identity.

- $4 million for the "New Alliance for Global Equality" to advance "global LGBTQI+ awareness."
- $500,000 to support women in elections in the Maldives.

4

AR 000242

Rescission proposal no. R25-27

## PROPOSED RESCISSION OF BUDGET AUTHORITY
### Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)

**Agency:**     Department of State
**Bureau:**     Other
**Account:**    Democracy Fund (019-1121 2024/2025)

Amount proposed for rescission:                 $188,314,470

**Justification:**

This proposal would rescind $188 million of the $340 million appropriated in FY 2024 for the Democracy Fund (DF).  The DF account is intended to fund democracy promotion activities of the Department of State and U.S. Agency for International Development.  In practice, DF-funded activities weaponized programs that undermine American values, weaken perception of America abroad, interfere with the sovereignty of other countries, including U.S. allies, and bankroll the evasion by corrupt leaders of their responsibilities to their citizens.  For example, this account funded gender responsive governance and activities geared toward strengthening information integrity, equality, and democracy for LGBTQI+ populations. The rescission would return funding from wasteful foreign assistance programs to taxpayers in alignment with America First foreign policy.

Other examples of activities funded by this account include:
- $2.7 million to advance "inclusive democracy" in South Africa through the Democracy Works Foundation, which has published articles such as "The Problem with Whiteness," and "The Problem with White People." One article claims that White South Africans are "not even aware" of the "hostility they unleash" against black people; another lauds terrorism and communism as an effective means of deconstructing White Afrikaner identity.

- $4 million for the "New Alliance for Global Equality" to advance "global LGBTQI+ awareness."
- $500,000 to support women in elections in the Maldives.

AR 000243

Rescission proposal no. R25-28

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control**
**Act of 1974 (2 U.S.C. 683)**

**Agency:**      Department of State
**Bureau:**      Other
**Account:**     Democracy Fund (072-019-1121 2024/2025)

Amount proposed for rescission:                    $132,117,226

**Justification:**

This proposal would rescind $132 million of the $340 million appropriated in FY 2024 for the Democracy Fund (DF).  The DF account is intended to fund democracy promotion activities of the Department of State and U.S. Agency for International Development.  In practice, DF-funded activities weaponized programs that undermine American values, weaken perception of America abroad, interfere with the sovereignty of other countries, including U.S. allies, and bankroll the evasion by corrupt leaders of their responsibilities to their citizens.  For example, this account funded gender responsive governance and activities geared toward strengthening information integrity, equality, and democracy for LGBTQI+ populations. The rescission would return funding from wasteful foreign assistance programs to taxpayers in alignment with America First foreign policy.

Other examples of activities funded by this account include:
- $2.7 million to advance "inclusive democracy" in South Africa through the Democracy Works Foundation, which has published articles such as "The Problem with Whiteness," and "The Problem with White People." One article claims that White South Africans are "not even aware" of the "hostility they unleash" against black people; another lauds terrorism and communism as an effective means of deconstructing White Afrikaner identity.

- $4 million for the "New Alliance for Global Equality" to advance "global LGBTQI+ awareness."
- $500,000 to support women in elections in the Maldives.

AR 000244

Rescission proposal no. R25-29

## PROPOSED RESCISSION OF BUDGET AUTHORITY
### Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)

**Agency:**     International Assistance Programs
**Bureau:**     International Security Assistance
**Account:**    Peacekeeping Operations (019-011-1032 2024/2025)

Amount proposed for rescission:                    $110,384,428

**Justification:**

This proposal would rescind $110 million of the $410 million appropriated in FY 2024 for the Peacekeeping Operations (PKO) account, which was largely defunded in the President's FY 2026 Budget.  The PKO account is intended to support peacekeeping and stabilization operations and to counter extremist threats, including for the United Nations (UN) Support Office in Somalia peacekeeping mission.  In practice, this account is a slush fund used to support projects well beyond a core security focus, including hybrid energy power generation pilot projects in Nepal and South Sudan, at the expense of American taxpayers.

Annually, $71 million of PKO's funds have been allocated to the Global Peace Operations Initiative (GPOI) to ready other country's militaries to support UN peacekeeping.  Not only are we overpaying in U.S. assessed contributions, we are paying twice to pick up global slack.

The rescission would eliminate programs but will not impact the United States' commitment to the Egyptian-Israeli Treaty of Peace through U.S. contributions to the Multinational Force and Observers.

7

AR 000245

Rescission proposal no. R25-30

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**    International Assistance Programs
**Bureau:**    International Security Assistance
**Account:**    Peacekeeping Operations (019-011-1032 2025/2025)

Amount proposed for rescission:                $326,214,947

**Justification:**

This proposal would rescind $326 million of the $410 million appropriated in FY 2025 for the Peacekeeping Operations (PKO) account, which was largely defunded in the President's FY 2026 Budget.  The PKO account is intended to support peacekeeping and stabilization operations and to counter extremist threats, including for the United Nations (UN) Support Office in Somalia peacekeeping mission.  In practice, this account is a slush fund used to support projects well beyond a core security focus, including hybrid energy power generation pilot projects in Nepal and South Sudan, at the expense of American taxpayers.

Annually, $71 million of PKO's funds have been allocated to the Global Peace Operations Initiative (GPOI) to ready other country's militaries to support UN peacekeeping.  Not only are we overpaying in U.S. assessed contributions, we are paying twice to pick up global slack.

The rescission would eliminate programs but will not impact the United States' commitment to the Egyptian-Israeli Treaty of Peace through U.S. contributions to the Multinational Force and Observers.

AR 000246

Rescission proposal no. R25-31

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**      International Assistance Programs
**Bureau:**      International Security Assistance
**Account:**     Peacekeeping Operations (011-1032 2024/2025)

Amount proposed for rescission:                    $2,500,000

**Justification:**

This proposal would rescind $3 million of the $410 million appropriated in FY 2024 for the Peacekeeping Operations (PKO) account, which was largely defunded in the President's FY 2026 Budget.  The PKO account is intended to support peacekeeping and stabilization operations and to counter extremist threats, including for the United Nations (UN) Support Office in Somalia peacekeeping mission.  In practice, this account is a slush fund used to support projects well beyond a core security focus, including hybrid energy power generation pilot projects in Nepal and South Sudan, at the expense of American taxpayers.

Annually, $71 million of PKO's funds have been allocated to the Global Peace Operations Initiative (GPOI) to ready other country's militaries to support UN peacekeeping.  Not only are we overpaying in U.S. assessed contributions, we are paying twice to pick up global slack.

The rescission would eliminate programs but will not impact the United States' commitment to the Egyptian-Israeli Treaty of Peace through U.S. contributions to the Multinational Force and Observers.

9

AR 000247

Rescission proposal no. R25-32

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**       International Assistance Programs
**Bureau:**       International Security Assistance
**Account:**      Peacekeeping Operations (019-011-1032 2020/2025)

Amount proposed for rescission:                    $5,850,726

**Justification:**

This proposal would rescind $6 million of the $410 million appropriated in FY 2024 for the Peacekeeping Operations (PKO) account, which was largely defunded in the President's FY 2026 Budget.  The PKO account is intended to support peacekeeping and stabilization operations and to counter extremist threats, including for the United Nations (UN) Support Office in Somalia peacekeeping mission.  In practice, this account is a slush fund used to support projects well beyond a core security focus, including hybrid energy power generation pilot projects in Nepal and South Sudan, at the expense of American taxpayers.

Annually, $71 million of PKO's funds have been allocated to the Global Peace Operations Initiative (GPOI) to ready other country's militaries to support UN peacekeeping.  Not only are we overpaying in U.S. assessed contributions, we are paying twice to pick up global slack.

The rescission would eliminate programs but will not impact the United States' commitment to the Egyptian-Israeli Treaty of Peace through U.S. contributions to the Multinational Force and Observers.

10

AR 000248

Rescission proposal no. R25-33

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control**
**Act of 1974 (2 U.S.C. 683)**


**Agency:**      International Assistance Programs
**Bureau:**      Agency for International Development
**Account:**     Development Assistance (072-1021 2017/2025)

Amount proposed for rescission:                    $3,360

**Justification:**

This proposal would rescind $3,360 of the $3 billion appropriated in FY 2017 for
Development Assistance (DA).  The DA account is intended to fund programs that work to
promote resilient societies, but in practice has done the opposite.  Many DA programs
conflicted with American values, interfered with the sovereignty of other countries, and
bankrolled corrupt leaders' evasion of their responsibilities to their citizens, all while providing
no clear benefit to Americans.  Projects like electric busses in Rwanda, are of negative value to
American taxpayers and American foreign policy interests.  The rescission would align with
the Administration's efforts to return funding from wasteful U.S. Agency for International
Development programs to the American taxpayers. The remaining balance proposed for
rescission are for activities that have completed their goals and are no longer needed for their
intended purpose.

Other examples of activities funded by this account include:
- $24.6 million to build climate resilience in Honduras.
- $38.6 million for biodiversity and low-emissions development in West Africa.
- $13.4 million for civic engagement in Zimbabwe.

11

AR 000249

Rescission proposal no. R25-34

### PROPOSED RESCISSION OF BUDGET AUTHORITY
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**      International Assistance Programs
**Bureau:**      Agency for International Development
**Account:**     Development Assistance (072-1021 2020/2025)

Amount proposed for rescission:                    $7,088,936

**Justification:**

This proposal would rescind $7 million of the $3.4 billion appropriated in FY 2020 for Development Assistance (DA).  The DA account is intended to fund programs that work to promote resilient societies, but in practice has done the opposite.  Many DA programs conflicted with American values, interfered with the sovereignty of other countries, and bankrolled corrupt leaders' evasion of their responsibilities to their citizens, all while providing no clear benefit to Americans.  Projects like electric busses in Rwanda are of negative value to American taxpayers and American foreign policy interests.  The rescission would align with the Administration's efforts to return funding from wasteful U.S. Agency for International Development programs to the American taxpayers.

Other examples of activities funded by this account include:
- $2 million for "green economic opportunities" in Honduras.
- $5 million for localization, inclusion, and sustainability in Kenya.

12

AR 000250

Rescission proposal no. R25-35

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control**
**Act of 1974 (2 U.S.C. 683)**

**Agency:**       International Assistance Programs
**Bureau:**       Agency for International Development
**Account:**      Development Assistance (072-1021 2021/2025)

Amount proposed for rescission:                    $31,649,095

**Justification:**

This proposal would rescind $32 million of the $3.5 billion appropriated in FY 2021 for Development Assistance (DA).  The DA account is intended to fund programs that work to promote resilient societies, but in practice has done the opposite.  Many DA programs conflicted with American values, interfered with the sovereignty of other countries, and bankrolled corrupt leaders' evasion of their responsibilities to their citizens, all while providing no clear benefit to Americans.  Projects like baking and beauty therapy in Zimbabwe and land administration in Malawi, are of negative value to American taxpayers and American foreign policy interests.  The rescission would align with the Administration's efforts to return funding from wasteful U.S. Agency for International Development programs to the American taxpayers.

Other examples of activities funded by this account include:
- $550,000 for holistic monitoring, evaluation, and learning in North Macedonia.
- $60,000 for listening tours on local development in Timor-Leste.
- $12,000 for Telling the USAID story in Bosnia and Herzegovina.

13

AR 000251

Rescission proposal no. R25-36

## PROPOSED RESCISSION OF BUDGET AUTHORITY
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**     International Assistance Programs
**Bureau:**     Agency for International Development
**Account:**    Development Assistance (072-1021 2023/2025)

Amount proposed for rescission:                          $6,587,000

**Justification:**

This proposal would rescind $7 million of the $4.4 billion appropriated in FY 2023 for Development Assistance (DA).  The DA account is intended to fund programs that work to promote resilient societies, but in practice has done the opposite.  Many DA programs conflicted with American values, interfered with the sovereignty of other countries, and bankrolled corrupt leaders' evasion of their responsibilities to their citizens, all while providing no clear benefit to Americans.  Projects like, electric busses in Rwanda, are of negative value to American taxpayers and American foreign policy interests.  The rescission would align with the Administration's efforts to return funding from wasteful U.S. Agency for International Development programs to the American taxpayers.  The remaining balance for rescission is part of a "Flexible Fund" to support private sector partnerships overseas created under the Biden Administration.

Other examples of activities funded by this account include:
- A partnership with the Green Climate Fund, for the Barbados Blue-Green Bank for climate change mitigation.
- Supporting ecotourism in Peru.
- $650,000 for micro-insurance for smallholder farmers and microbusinesses in Colombia for climate disaster response.

14

AR 000252

Rescission proposal no. R25-37

**PROPOSED RESCISSION OF BUDGET AUTHORITY**
**Report Pursuant to Section 1012 of the Congressional Budget and Impoundment Control Act of 1974 (2 U.S.C. 683)**

**Agency:**    International Assistance Programs
**Bureau:**    Agency for International Development
**Account:**    Development Assistance (072-1021 2024/2025)

Amount proposed for rescission:                    $3,180,239,598

**Justification:**

This proposal would rescind $3.2 billion of the $3.9 billion appropriated in FY 2024 for Development Assistance (DA).  The DA account is intended to fund programs that work to promote resilient societies, but in practice has done the opposite.  Many DA programs conflicted with American values, interfered with the sovereignty of other countries, and bankrolled corrupt leaders' evasion of their responsibilities to their citizens, all while providing no clear benefit to Americans.  The rescission would align with the Administration's efforts to return funding from wasteful U.S. Agency for International Development programs to the American taxpayers.

Other examples include:
- $24.6 million to build climate resilience in Honduras.
- $38.6 million for biodiversity and low-emissions development in West Africa.
- $13.4 million for civic engagement in Zimbabwe.

15

AR 000253

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Actual CO)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State**<br>**Bureau: Other**<br>**Account: Global Health Programs**<br>**TAFS: 019-2025-2026-1031** | | |
| IterNo | 2 | Last Approved Apportionment: 2026-04-10 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1060 | | Unob Bal: Antic nonexpenditure transfers (net) | 1,992,927,000 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **1,992,927,000** | |
| 6011 | | Global Health Activities | 1,992,927,000 | |
| **6190** | | **Total budgetary resources available** | **1,992,927,000** | |

AR 000254

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

End of File

**AR 000255**

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director |
| **Signed On:** | 2026-06-11 09:52 AM |
| **TAFS Included:** | 019-2025-2026-1031 (Global Health Programs) |

AR 000256

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Actual CO)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** **Bureau: Other** **Account: Global Health Programs** **TAFS: 019-2025-2026-1031** | | |
| IterNo | 2 | Last Approved Apportionment: 2026-04-10 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1060 | | Unob Bal: Antic nonexpenditure transfers (net) | 1,992,927,000 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **1,992,927,000** | |
| 6011 | | Global Health Activities | 1,992,927,000 | |
| **6190** | | **Total budgetary resources available** | **1,992,927,000** | |

AR 000257

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**


**Footnotes for Budgetary Resources**


End of File

AR 000258

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director |
| **Signed On:** | 2026-06-11 09:52 AM |
| **TAFS Included:** | 019-2025-2026-1031 (Global Health Programs) |

AR 000259

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Actual CO)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State**<br>**Bureau: Other**<br>**Account: Global Health Programs**<br>**Treasury Account: Global Health and Child Survival**<br>**TAFS: 072-019-2025-2026-1031A** | | |
| IterNo | 3 | Last Approved Apportionment: 2026-05-27 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA1 | Discretionary Actual- unob balance brought forward, Oct 1-- GHP | 3,485,450,000 | |
| 1060 | | Unob Bal: Antic nonexpenditure transfers (net) | -1,992,927,000 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **1,492,523,000** | |
| 6011 | | Global Health Activities | 139,573,000 | |
| 6012 | | USAID Close Out | 1,352,950,000 | |
| **6190** | | **Total budgetary resources available** | **1,492,523,000** | |

AR 000260

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

End of File

AR 000261

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director |
| **Signed On:** | 2026-06-09 05:24 PM |
| **TAFS Included:** | 072-019-2025-2026-1031A (Global Health and Child Survival) |

AR 000262

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Actual CO)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State**<br>**Bureau: Other**<br>**Account: Global Health Programs**<br>**Treasury Account: Global Health and Child Survival**<br>**TAFS: 072-019-2025-2026-1031A** | | |
| IterNo | 3 | Last Approved Apportionment: 2026-05-27 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA1 | Discretionary Actual- unob balance brought forward, Oct 1-- GHP | 3,485,450,000 | |
| 1060 | | Unob Bal: Antic nonexpenditure transfers (net) | -1,992,927,000 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **1,492,523,000** | |
| 6011 | | Global Health Activities | 139,573,000 | |
| 6012 | | USAID Close Out | 1,352,950,000 | |
| **6190** | | **Total budgetary resources available** | **1,492,523,000** | |

AR 000263

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

End of File

AR 000264

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director |
| **Signed On:** | 2026-06-09 05:24 PM |
| **TAFS Included:** | 072-019-2025-2026-1031A (Global Health and Child Survival) |

AR 000265

| Account | ICA Final |
|---|---|
| **Contributions for International Peacekeeping Activities (C** | **$ 392,534,000.00** |
| 019-2024-2025-1124 | |
| 019-2025-2025-1124 | $ 392,534,000 |
| **Contributions to International Organizations (CIO)** | **$ 520,499,999.73** |
| 019-2024-2025-1126 | |
| 019-2025-2025-1126 | $ 520,500,000 |
| **Development Assistance Fund (DA)** | **$ 3,225,567,989.26** |
| 7221/251021 | $ - |
| 7223/251021 | $ - |
| 7224/251021 | $ - |
| 72 17/25 1021 | $ 3,360 |
| 72 20/25 1021 | $ 7,088,936 |
| 72 21/25 1021 | $ 31,649,095 |
| 72 23/25 1021 | $ 6,587,000 |
| 72 24/25 1021 | $ 3,180,239,598 |
| **Democracy Fund (DF)** | **$ 322,288,301** |
| 19 20/25 1121 | $ 1,800,498 |
| 19 24/25 1121 | $ 188,314,470 |
| 72-1924/251121 | $ 132,117,226 |
| 72-19 20/25 1121 | $ 56,107 |
| **Peacekeeping Operations (PKO)** | **$ 444,950,101.00** |
| 11 25 1032 | |
| 1911 21/25 1032 | |
| 1911 24/25 1032 | $ 110,384,428 |
| 1911 25 1032 | $ 326,214,947 |
| 11124/251032 | $ 2,500,000 |
| 1911 20/25 1032 | $ 5,850,726 |
| **Grand Total** | **$ 4,905,840,391** |

AR 000266

## OMB Scoring by Account in the Rescissions Act of 2025 (Public Law 119-XX) [1]

### Discretionary budget authority in millions

| Agency and Account | Fiscal Year | | | Total |
|---|---|---|---|---|
| | 2025 | 2026 | 2027 | |
| **Accounts in the National Security, Department of State, and Related Appropriations Subcommittee:** | | | | |
| Department of State: | | | | |
| Contributions for International Peacekeeping Activities.................................................. | -361 | --- | --- | -361 |
| Contributions to International Organizations...................................................... | -202 | --- | --- | -202 |
| Global Health Programs [2]............................................................. | -500 | --- | --- | -500 |
| Democracy Fund.................................................................... | -83 | --- | --- | -83 |
| Migration and Refugee Assistance............................................. | -800 | --- | --- | -800 |
| International Organizations and Programs........................................... | -437 | --- | --- | -437 |
| Subtotal, Department of State........................................................... | -2,383 | --- | --- | -2,383 |
| US Agency for International Development (USAID): | | | | |
| Economic Support Fund................................................................. | -1,650 | --- | --- | -1,650 |
| Complex Crises Fund............................................................... | -43 | --- | --- | -43 |
| Assistance for Europe, Eurasia and Central Asia................................... | -460 | --- | --- | -460 |
| Operating Expenses of the Agency for International Development.......................... | -125 | --- | --- | -125 |
| Transition Initiatives................................................................. | -57 | --- | --- | -57 |
| International Disaster Assistance...................................................... | -496 | --- | --- | -496 |
| Development Assistance Program...................................................... | -2,500 | --- | --- | -2,500 |
| Subtotal, USAID.................................................................. | -5,331 | --- | --- | -5,331 |
| Other Agencies, Including Independent International Agencies: | | | | |
| Treasury International Clean Technology Fund Program Account............................... | -125 | --- | --- | -125 |
| Inter-American Foundation.......................................................... | -27 | --- | --- | -27 |
| African Development Foundation...................................................... | -22 | --- | --- | -22 |
| United States Institute of Peace..................................................... | -15 | --- | --- | -15 |
| Subtotal, Other.................................................................. | -189 | --- | --- | -189 |
| **Accounts in the Labor, Health and Human Services, and Education Appropriations Subcommittee:** | | | | |
| Corporation for Public Broadcasting.................................................... | --- | -535 | -535 | -1,070 |
| **Totals, 2025 Rescissions Act.......................................................** | **-7,903** | **-535** | **-535** | **-8,973** |

[1] The Rescissions Act of 2025 rescinds certain budget authority proposed to be rescinded in special messages transmitted to the Congress by the President on June 3, 2025, in accordance with section 1012(a) of the Congressional Budget and Impoundment Control Act of 1974.

AR 000267

[2] The President's June 3, 2025 special message had requested an additional $400 million in rescissions from the President's Emergency Plan for AIDS Relief within the Global Health Programs account but this rescission was not included in the final Act.

AR 000268

| Account | ICA Final |
|---|---|
| **Contributions for International Peacekeeping Activities (C** | **$ 392,534,000.00** |
| 019-2024-2025-1124 | |
| 019-2025-2025-1124 | $ 392,534,000 |
| **Contributions to International Organizations (CIO)** | **$ 520,499,999.73** |
| 019-2024-2025-1126 | |
| 019-2025-2025-1126 | $ 520,500,000 |
| **Development Assistance Fund (DA)** | **$ 3,225,567,989.26** |
| 7221/251021 | $ - |
| 7223/251021 | $ - |
| 7224/251021 | $ - |
| 72 17/25 1021 | $ 3,360 |
| 72 20/25 1021 | $ 7,088,936 |
| 72 21/25 1021 | $ 31,649,095 |
| 72 23/25 1021 | $ 6,587,000 |
| 72 24/25 1021 | $ 3,180,239,598 |
| **Democracy Fund (DF)** | **$ 322,288,301** |
| 19 20/25 1121 | $ 1,800,498 |
| 19 24/25 1121 | $ 188,314,470 |
| 72-1924/251121 | $ 132,117,226 |
| 72-19 20/25 1121 | $ 56,107 |
| **Peacekeeping Operations (PKO)** | **$ 444,950,101.00** |
| 11 25 1032 | |
| 1911 21/25 1032 | |
| 1911 24/25 1032 | $ 110,384,428 |
| 1911 25 1032 | $ 326,214,947 |
| 11124/251032 | $ 2,500,000 |
| 1911 20/25 1032 | $ 5,850,726 |
| **Grand Total** | **$ 4,905,840,391** |

AR 000269

## OMB Scoring by Account in the Rescissions Act of 2025 (Public Law 119-XX) [1]

Discretionary budget authority in millions

| Agency and Account | Fiscal Year | | | Total |
|---|---|---|---|---|
| | 2025 | 2026 | 2027 | |
| **Accounts in the National Security, Department of State, and Related Appropriations Subcommittee:** | | | | |
| Department of State: | | | | |
| Contributions for International Peacekeeping Activities............................................. | -361 | --- | --- | -361 |
| Contributions to International Organizations..................................................... | -202 | --- | --- | -202 |
| Global Health Programs [2]........................................................ | -500 | --- | --- | -500 |
| Democracy Fund........................................................................... | -83 | --- | --- | -83 |
| Migration and Refugee Assistance.................................................... | -800 | --- | --- | -800 |
| International Organizations and Programs........................................ | -437 | --- | --- | -437 |
| Subtotal, Department of State........................................................ | -2,383 | --- | --- | -2,383 |
| US Agency for International Development (USAID): | | | | |
| Economic Support Fund.................................................................. | -1,650 | --- | --- | -1,650 |
| Complex Crises Fund..................................................................... | -43 | --- | --- | -43 |
| Assistance for Europe, Eurasia and Central Asia.............................. | -460 | --- | --- | -460 |
| Operating Expenses of the Agency for International Development........... | -125 | --- | --- | -125 |
| Transition Initiatives................................................................... | -57 | --- | --- | -57 |
| International Disaster Assistance..................................................... | -496 | --- | --- | -496 |
| Development Assistance Program.................................................... | -2,500 | --- | --- | -2,500 |
| Subtotal, USAID.......................................................................... | -5,331 | --- | --- | -5,331 |
| Other Agencies, Including Independent International Agencies: | | | | |
| Treasury International Clean Technology Fund Program Account............. | -125 | --- | --- | -125 |
| Inter-American Foundation............................................................. | -27 | --- | --- | -27 |
| African Development Foundation..................................................... | -22 | --- | --- | -22 |
| United States Institute of Peace...................................................... | -15 | --- | --- | -15 |
| Subtotal, Other.......................................................................... | -189 | --- | --- | -189 |
| **Accounts in the Labor, Health and Human Services, and Education Appropriations Subcommittee:** | | | | |
| Corporation for Public Broadcasting................................................ | --- | -535 | -535 | -1,070 |
| **Totals, 2025 Rescissions Act......................................................** | **-7,903** | **-535** | **-535** | **-8,973** |

[1] The Rescissions Act of 2025 rescinds certain budget authority proposed to be rescinded in special messages transmitted to the Congress by the President on June 3, 2025, in accordance with section 1012(a) of the Congressional Budget and Impoundment Control Act of 1974.

AR 000270

[2] The President's June 3, 2025 special message had requested an additional $400 million in rescissions from the President's Emergency Plan for AIDS Relief within the Global Health Programs account but this rescission was not included in the final Act.

AR 000271

| Account | ICA Final |
|---|---|
| **Contributions for International Peacekeeping Activities (C** | **$ 392,534,000.00** |
| 019-2024-2025-1124 | |
| 019-2025-2025-1124 | $ 392,534,000 |
| **Contributions to International Organizations (CIO)** | **$ 520,499,999.73** |
| 019-2024-2025-1126 | |
| 019-2025-2025-1126 | $ 520,500,000 |
| **Development Assistance Fund (DA)** | **$ 3,225,567,989.26** |
| 7221/251021 | $ - |
| 7223/251021 | $ - |
| 7224/251021 | $ - |
| 72 17/25 1021 | $ 3,360 |
| 72 20/25 1021 | $ 7,088,936 |
| 72 21/25 1021 | $ 31,649,095 |
| 72 23/25 1021 | $ 6,587,000 |
| 72 24/25 1021 | $ 3,180,239,598 |
| **Democracy Fund (DF)** | **$ 322,288,301** |
| 19 20/25 1121 | $ 1,800,498 |
| 19 24/25 1121 | $ 188,314,470 |
| 72-1924/251121 | $ 132,117,226 |
| 72-19 20/25 1121 | $ 56,107 |
| **Peacekeeping Operations (PKO)** | **$ 444,950,101.00** |
| 11 25 1032 | |
| 1911 21/25 1032 | |
| 1911 24/25 1032 | $ 110,384,428 |
| 1911 25 1032 | $ 326,214,947 |
| 11124/251032 | $ 2,500,000 |
| 1911 20/25 1032 | $ 5,850,726 |
| **Grand Total** | **$ 4,905,840,391** |

AR 000272

Case 1:25-cv-00402-AHA   Document 187-2   Filed 07/01/26   Page 277 of 421

# OMB Scoring by Account in the Rescissions Act of 2025 (Public Law 119-XX) [1]

Discretionary budget authority in millions

| Agency and Account | Fiscal Year | | | Total |
|---|---|---|---|---|
| | 2025 | 2026 | 2027 | |
| **Accounts in the National Security, Department of State, and Related Appropriations Subcommittee:** | | | | |
| Department of State: | | | | |
| Contributions for International Peacekeeping Activities.................................... | -361 | --- | --- | -361 |
| Contributions to International Organizations.................................................... | -202 | --- | --- | -202 |
| Global Health Programs [2]................................................................. | -500 | --- | --- | -500 |
| Democracy Fund................................................................................. | -83 | --- | --- | -83 |
| Migration and Refugee Assistance....................................................... | -800 | --- | --- | -800 |
| International Organizations and Programs.............................................. | -437 | --- | --- | -437 |
| Subtotal, Department of State............................................................. | -2,383 | --- | --- | -2,383 |
| US Agency for International Development (USAID): | | | | |
| Economic Support Fund...................................................................... | -1,650 | --- | --- | -1,650 |
| Complex Crises Fund.......................................................................... | -43 | --- | --- | -43 |
| Assistance for Europe, Eurasia and Central Asia................................. | -460 | --- | --- | -460 |
| Operating Expenses of the Agency for International Development............ | -125 | --- | --- | -125 |
| Transition Initiatives.......................................................................... | -57 | --- | --- | -57 |
| International Disaster Assistance......................................................... | -496 | --- | --- | -496 |
| Development Assistance Program........................................................ | -2,500 | --- | --- | -2,500 |
| Subtotal, USAID................................................................................ | -5,331 | --- | --- | -5,331 |
| Other Agencies, Including Independent International Agencies: | | | | |
| Treasury International Clean Technology Fund Program Account............... | -125 | --- | --- | -125 |
| Inter-American Foundation................................................................. | -27 | --- | --- | -27 |
| African Development Foundation......................................................... | -22 | --- | --- | -22 |
| United States Institute of Peace........................................................ | -15 | --- | --- | -15 |
| Subtotal, Other................................................................................. | -189 | --- | --- | -189 |
| **Accounts in the Labor, Health and Human Services, and Education Appropriations Subcommittee:** | | | | |
| Corporation for Public Broadcasting.................................................... | --- | -535 | -535 | -1,070 |
| **Totals, 2025 Rescissions Act.............................................................** | **-7,903** | **-535** | **-535** | **-8,973** |

[1] The Rescissions Act of 2025 rescinds certain budget authority proposed to be rescinded in special messages transmitted to the Congress by the President on June 3, 2025, in accordance with section 1012(a) of the Congressional Budget and Impoundment Control Act of 1974.

AR 000273

AR 000274

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Estimated Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Assistance for Europe, Eurasia and Central Asia** **TAFS: 072-2021-2026-0306** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | A | Actual - Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 1,232,913 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **1,232,913** | |
| 6011 | | All Activities | 1,232,913 | |
| **6190** | | **Total budgetary resources available** | **1,232,913** | |
| | | **TAFS: 072-2022-2027-0306** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | A | Actual - Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 6,137,047 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **6,137,047** | |
| 6011 | | AEECA Activities (7222/270306) | 6,137,047 | |
| **6190** | | **Total budgetary resources available** | **6,137,047** | |
| | | **TAFS: 072-2023-2028-0306** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | | Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 782,143 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | | Unob Bal: Transferred from other accounts | 0 | |
| 1012 | | Unob Bal: Transfers betw expired\unexpired accts | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **782,143** | |
| 6011 | | AEECA Activities (7223/280306) | 782,143 | |

AR 000275

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Estimated Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| 6190 | | **Total budgetary resources available** | 782,143 | |

**AR 000276**

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

End of File

AR 000277

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-09-23 06:32 PM |
| **TAF(s) Included:** | 072-2021-2026-0306 (Assistance for Europe, Eurasia and Central Asia) |
| | 072-2022-2027-0306 |
| | 072-2023-2028-0306 |

**AR 000278**

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Estimated Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Assistance for Europe, Eurasia and Central Asia** **TAFS: 072-2021-2026-0306** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | A | Actual - Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 1,232,913 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **1,232,913** | |
| 6011 | | All Activities | 1,232,913 | |
| **6190** | | **Total budgetary resources available** | **1,232,913** | |
| | | **TAFS: 072-2022-2027-0306** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | A | Actual - Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 6,137,047 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **6,137,047** | |
| 6011 | | AEECA Activities (7222/270306) | 6,137,047 | |
| **6190** | | **Total budgetary resources available** | **6,137,047** | |
| | | **TAFS: 072-2023-2028-0306** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | | Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 782,143 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | | Unob Bal: Transferred from other accounts | 0 | |
| 1012 | | Unob Bal: Transfers betw expired\unexpired accts | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **782,143** | |
| 6011 | | AEECA Activities (7223/280306) | 782,143 | |

AR 000279

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Estimated Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| 6190 | | **Total budgetary resources available** | 782,143 | |

AR 000280

FY 2026 Apportionment
OMB Footnotes

**<u>Footnotes for Apportioned Amounts</u>**

**<u>Footnotes for Budgetary Resources</u>**

End of File

**AR 000281**

**OMB Approved this apportionment request using
the web-based apportionment system**

**Mark Affixed By:**    /s/ signature
Program Associate Director for Intelligence and International Affairs Programs

**Signed On:**    2025-09-23 06:32 PM

**TAF(s) Included:**    072-2021-2026-0306 (Assistance for Europe, Eurasia and Central Asia)
072-2022-2027-0306
072-2023-2028-0306

AR 000282

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Estimated Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs**<br>**Bureau: Agency for International Development**<br>**Account: Assistance for Europe, Eurasia and Central Asia**<br>**TAFS: 072-2021-2026-0306** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | A | Actual - Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 1,232,913 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **1,232,913** | |
| 6011 | | All Activities | 1,232,913 | |
| **6190** | | **Total budgetary resources available** | **1,232,913** | |
| | | **TAFS: 072-2022-2027-0306** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | A | Actual - Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 6,137,047 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **6,137,047** | |
| 6011 | | AEECA Activities (7222/270306) | 6,137,047 | |
| **6190** | | **Total budgetary resources available** | **6,137,047** | |
| | | **TAFS: 072-2023-2028-0306** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | | Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 782,143 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | | Unob Bal: Transferred from other accounts | 0 | |
| 1012 | | Unob Bal: Transfers betw expired\unexpired accts | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **782,143** | |
| 6011 | | AEECA Activities (7223/280306) | 782,143 | |

AR 000283

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Estimated Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---------|-----------|------------------|-----------|--------------|
| 6190 | | **Total budgetary resources available** | 782,143 | |

AR 000284

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

End of File

**AR 000285**

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-09-23 06:32 PM |
| **TAF(s) Included:** | 072-2021-2026-0306 (Assistance for Europe, Eurasia and Central Asia) |
| | 072-2022-2027-0306 |
| | 072-2023-2028-0306 |

AR 000286

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---------|-----------|------------------|-----------:|--------------|
| | | **International Assistance Programs**<br>**Bureau: Agency for International Development**<br>**Account: Development Assistance Program**<br>**Treasury Account: Development Assistance**<br>**TAFS: 072-2022-2027-1021** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 9,704,653 | |
| 1061 | | Unob Bal: Antic recov of prior year unpd/pd obl | 0 | |
| 1170 | | BA: Disc: Advance appropriation | 0 | |
| 1171 | | BA: Disc: Adv approp (special or trust fund) | 0 | |
| 1172 | | BA: Disc: Adv approps trans to other accounts | 0 | |
| 1902 | | Adj for total budgetary res subj to obl limitation | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **9,704,653** | **B1** |
| 6001 | | Category A -- 1st quarter | 0 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 0 | |
| 6004 | | Category A -- 4th quarter | 0 | |
| 6011 | | All Activities | 9,704,653 | |
| 6183 | | Budgetary Resources: Exempt from apportionment | 0 | |
| **6190** | | **Total budgetary resources available** | **9,704,653** | |
| | | **TAFS: 072-2023-2027-1021** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 80,000,000 | |
| 1061 | | Unob Bal: Antic recov of prior year unpd/pd obl | 0 | |
| 1170 | | BA: Disc: Advance appropriation | 0 | |
| 1843 | | BA: Mand: Spending auth:Antic precl fr ob (lim) | 0 | |
| 1844 | | BA: Mand: Spending auth:Antic perm/temp reduced | 0 | |
| 1902 | | Adj for total budgetary res subj to obl limitation | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **80,000,000** | **B1** |

AR 000287

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| 6001 | | Category A -- 1st quarter | 0 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 0 | |
| 6004 | | Category A -- 4th quarter | 0 | |
| 6013 | | Funding for all Activities | 80,000,000 | |
| 6183 | | Budgetary Resources: Exempt from apportionment | 0 | |
| **6190** | | **Total budgetary resources available** | **80,000,000** | |
| | | **TAFS: 072-2023-2028-1021** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 34,275,656 | |
| 1170 | | BA: Disc: Advance appropriation | 0 | |
| 1171 | | BA: Disc: Adv approp (special or trust fund) | 0 | |
| 1172 | | BA: Disc: Adv approps trans to other accounts | 0 | |
| 1843 | | BA: Mand: Spending auth:Antic precl fr ob (lim) | 0 | |
| 1844 | | BA: Mand: Spending auth:Antic perm/temp reduced | 0 | |
| 1902 | | Adj for total budgetary res subj to obl limitation | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **34,275,656** | **B1** |
| 6001 | | Category A -- 1st quarter | 0 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 0 | |
| 6004 | | Category A -- 4th quarter | 0 | |
| 6013 | | Funding for all Activities | 34,275,656 | |
| 6183 | | Budgetary Resources: Exempt from apportionment | 0 | |
| **6190** | | **Total budgetary resources available** | **34,275,656** | |
| | | **TAFS: 072-X-1021** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 8,163,189 | |
| 1170 | | BA: Disc: Advance appropriation | 0 | |
| 1843 | | BA: Mand: Spending auth:Antic precl fr ob (lim) | 0 | |
| 1844 | | BA: Mand: Spending auth:Antic perm/temp reduced | 0 | |

AR 000288

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---------|-----------|------------------|-----------:|--------------|
| 1902 | | Adj for total budgetary res subj to obl limitation | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **8,163,189** | **B1** |
| 6001 | | Category A -- 1st quarter | 0 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 0 | |
| 6004 | | Category A -- 4th quarter | 0 | |
| 6011 | | All Activities | 8,163,189 | |
| 6183 | | Budgetary Resources: Exempt from apportionment | 0 | |
| **6190** | | **Total budgetary resources available** | **8,163,189** | |

AR 000289

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**   Development Assistance account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000290

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | for Deputy Associate Director for International Affairs Programs |
| **Signed On:** | 2025-11-24 08:29 AM |
| **TAFS Included:** | 072-2022-2027-1021 (Development Assistance) |
| | 072-2023-2027-1021 (Development Assistance) |
| | 072-2023-2028-1021 (Development Assistance) |
| | 072-X-1021 (Development Assistance) |

AR 000291

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Assistance for Europe, Eurasia and Central Asia** **TAFS: 072-2018-2026-0306** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary  Actual - Unob Bal: Brought forward, Oct 1 | 489,677 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **489,677** | **B1** |
| 6011 | | AEECA All Activities | 489,677 | |
| **6190** | | **Total budgetary resources available** | **489,677** | |

AR 000292

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**   AEECA account funds are used for program implementation, related close out costs, and related administrative fees such
as interest payments.

End of File

AR 000293

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-12-16 09:06 AM |
| **TAFS Included:** | 072-2018-2026-0306 (Assistance for Europe, Eurasia and Central Asia) |

AR 000294

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Development Assistance Program** **Treasury Account: Development Assistance** **TAFS: 072-2018-2026-1021** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 152,392 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **152,392** | **B1** |
| 6001 | | Category A -- 1st quarter | 0 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 0 | |
| 6004 | | Category A -- 4th quarter | 0 | |
| 6011 | | Funding for all Activities | 152,392 | |
| **6190** | | **Total budgetary resources available** | **152,392** | |

AR 000295

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**   Development Assistance account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000296

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-12-04 07:03 PM |
| **TAFS Included:** | 072-2018-2026-1021 (Development Assistance) |

AR 000297

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Assistance for Europe, Eurasia and Central Asia** **TAFS: 072-2019-2027-0306** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary  Actual - Unob Bal: Brought forward, Oct 1 | 1,372,808 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **1,372,808** | **B1** |
| 6011 | | AEECA All Activities | 1,372,808 | |
| **6190** | | **Total budgetary resources available** | **1,372,808** | |

AR 000298

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  AEECA account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

**AR 000299**

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-12-16 09:06 AM |
| **TAFS Included:** | 072-2019-2027-0306 (Assistance for Europe, Eurasia and Central Asia) |

AR 000300

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Development Assistance Program** **Treasury Account: Development Assistance** **TAFS: 072-2019-2027-1021** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, Oct 1 | 1,004,078 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **1,004,078** | **B1** |
| 6013 | | Funding for all Activities | 1,004,078 | |
| **6190** | | **Total budgetary resources available** | **1,004,078** | |

AR 000301

FY 2026 Apportionment
OMB Footnotes

**<u>Footnotes for Apportioned Amounts</u>**

**<u>Footnotes for Budgetary Resources</u>**

**B1**  Development Assistance funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

**AR 000302**

**OMB Approved this apportionment request using
the web-based apportionment system**

**Mark Affixed By:**      /s/ signature
Program Associate Director for Intelligence and International Affairs Programs

**Signed On:**      2025-12-17 12:12 PM

**TAFS Included:**      072-2019-2027-1021 (Development Assistance)

**AR 000303**

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Development Assistance Program** **Treasury Account: Development Assistance** **TAFS: 072-2020-2028-1021** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, Oct 1 | 2,138,652 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **2,138,652** | **B1** |
| 6013 | | Funding for all Activities | 2,138,652 | |
| **6190** | | **Total budgetary resources available** | **2,138,652** | |

AR 000304

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**   Development Assistance funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000305

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-12-17 12:12 PM |
| **TAFS Included:** | 072-2020-2028-1021 (Development Assistance) |

AR 000306

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Development Assistance Program** **Treasury Account: Development Assistance** **TAFS: 072-2021-2026-1021** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 5,381,918 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | | Unob Bal: Transferred from other accounts | 0 | |
| 1012 | | Unob Bal: Transfers betw expired\unexpired accts | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **5,381,918** | **B1** |
| 6013 | | Funding for all Activities | 5,381,918 | |
| **6190** | | **Total budgetary resources available** | **5,381,918** | |

AR 000307

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Development Assistance account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000308

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | for Deputy Associate Director for International Affairs Programs |
| **Signed On:** | 2025-11-24 08:29 AM |
| **TAFS Included:** | 072-2021-2026-1021 (Development Assistance) |

AR 000309

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Development Assistance Program** **Treasury Account: Development Assistance** **TAFS: 072-2022-2026-1021** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 58,468,043 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **58,468,043** | **B1** |
| 6001 | | Category A -- 1st quarter | 0 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 0 | |
| 6004 | | Category A -- 4th quarter | 0 | |
| 6013 | | Funding for all Activities | 58,468,043 | |
| **6190** | | **Total budgetary resources available** | **58,468,043** | |

AR 000310

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**   Development Assistance account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

**AR 000311**

**OMB Approved this apportionment request using
the web-based apportionment system**

**Mark Affixed By:**          /s/ signature
                             Program Associate Director for Intelligence and International Affairs Programs

**Signed On:**               2025-12-04 07:03 PM

**TAFS Included:**           072-2022-2026-1021 (Development Assistance)

AR 000312

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Estimated Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Assistance for Europe, Eurasia and Central Asia** **TAFS: 072-2024-2029-0306** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | | Unob Bal: Brought forward, Oct 1 | 0 | |
| 1021 | | Unob Bal: Recov of prior year unpaid obligations | 1,540,749 | |
| 1740 | | BA: Disc: Spending auth:Antic colls, reimbs, other | 50,000,000 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **51,540,749** | |
| 6011 | | AEECA Activities (7224/290306) | 1,540,749 | |
| 6012 | | AEECA Fund - USAID - Reimbursable EMR (19-7224/290306) | 50,000,000 | |
| **6190** | | **Total budgetary resources available** | **51,540,749** | |

AR 000313

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

End of File

AR 000314

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2026-05-08 03:00 PM |
| **TAFS Included:** | 072-2024-2029-0306 (Assistance for Europe, Eurasia and Central Asia) |

AR 000315

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law 119-4

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Development Assistance Program** **Treasury Account: Development Assistance** **TAFS: 072-2025-2026-1021** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | YES | Adjustment Authority provided | | |
| 1000 | | Unob Bal: Brought forward, Oct 1 | 1,431,000,000 | |
| 1060 | | Unob Bal: Antic nonexpenditure transfers (net) | -251,901,000 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **1,179,099,000** | |
| 6011 | | Unallocated | 1,179,099,000 | |
| **6190** | | **Total budgetary resources available** | **1,179,099,000** | |

AR 000316

FY 2026 Apportionment
OMB Footnotes

**<u>Footnotes for Apportioned Amounts</u>**

**<u>Footnotes for Budgetary Resources</u>**

End of File

AR 000317

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | for Deputy Associate Director for International Affairs Programs |
| **Signed On:** | 2025-11-24 08:30 AM |
| **TAFS Included:** | 072-2025-2026-1021 (Development Assistance) |

AR 000318

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Estimated Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Assistance for Eastern Europe and the Baltic States** **TAFS: 072-X-1010** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | A | Actual - Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 463,665 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **463,665** | |
| 6011 | | Carryover for all activities | 463,665 | |
| **6190** | | **Total budgetary resources available** | **463,665** | |

AR 000319

FY 2026 Apportionment
OMB Footnotes

**<u>Footnotes for Apportioned Amounts</u>**

**<u>Footnotes for Budgetary Resources</u>**

End of File

AR 000320

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-09-23 06:32 PM |
| **TAF(s) Included:** | 072-X-1010 (Assistance for Eastern Europe and the Baltic States) |

AR 000321

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Estimated Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Transition Initiatives** **TAFS: 072-X-1027** | | |
| IterNo | 2 | Last Approved Apportionment: 2025-09-24 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Actual - Unob Bal: Brought forward, Oct 1 | 19,437,791 | B1 |
| 1000 | DE 1 | Discretionary Expected - Unob Bal: Brought forward, October 1 - | 0 | |
| 1000 | DE 2 | Discretionary Expected - Unob Bal: Brought forward, October 1 - | 0 | |
| 1000 | DE 3 | Discretionary Expected - Unob Bal: Brought forward, October 1 - | 0 | |
| 1000 | DE 4 | Discretionary Expected - Unob Bal: Brought forward, October 1 - | 0 | |
| 1000 | DE 5 | Discretionary Expected - Unob Bal: Brought forward, October 1 - | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **19,437,791** | |
| 6011 | | Funding for All Activities | 19,437,791 | A2 |
| 6170 | | Apportioned in FY 2027 | 0 | |
| **6190** | | **Total budgetary resources available** | **19,437,791** | |

AR 000322

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**A2**  Amounts apportioned on this line are available only for obligation for salaries, payroll expenses, closeout costs, or other payments required by law.  [Rationale: Footnote specifies the purpose(s) for which the funds are available to be obligated.]

**Footnotes for Budgetary Resources**

**B1**  Pursuant to section 120.21 of OMB Circular A-11, one or more lines in the Budgetary Resources section may be rounded up. As a result, those rounded lines will not match the actuals reported on the SF 133. Agency will ensure that its funds control system will only allot actuals.

End of File

AR 000323

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-12-11 05:26 PM |
| **TAFS Included:** | 072-X-1027 (Transition Initiatives) |

AR 000324

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Estimated Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Assistance for the Independent States of the Former Soviet Union** **TAFS: 072-X-1093** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | A | Actual - Unob Bal: Brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 511,057 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **511,057** | |
| 6011 | | Carryover for all activities | 511,057 | |
| **6190** | | **Total budgetary resources available** | **511,057** | |

AR 000325

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

End of File

AR 000326

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-09-23 06:32 PM |
| **TAF(s) Included:** | 072-X-1093 (Assistance for the Independent States of the Former Soviet Union) |

**AR 000327**

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Estimated Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Child Survival and Health Programs** **TAFS: 072-X-1095** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary unob balance brought forward, Oct 1 | 0 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 16,507,348 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **16,507,348** | |
| 6011 | | Carryover for all activities | 16,507,348 | |
| **6190** | | **Total budgetary resources available** | **16,507,348** | |

**AR 000328**

FY 2026 Apportionment
OMB Footnotes

**<u>Footnotes for Apportioned Amounts</u>**

**<u>Footnotes for Budgetary Resources</u>**

End of File

**AR 000329**

**OMB Approved this apportionment request using
the web-based apportionment system**

**Mark Affixed By:**       /s/ signature
                          Program Associate Director for Intelligence and International Affairs Programs

**Signed On:**            2025-10-08 05:25 PM

**TAF(s) Included:**      072-X-1095 (Child Survival and Health Programs)

**AR 000330**

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs**<br>**Bureau: International Security Assistance**<br>**Account: Economic Support Fund**<br>**TAFS: 072-2018-2026-1037** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DE | Discretionary Estimated - Unob Bal: Brought forward, October 1 | 16,211 | |
| 1100 | | BA: Disc: Appropriation | 0 | |
| 1200 | | BA: Mand: Appropriation | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **16,211** | B1 |
| 6011 | | Unallocated | 16,211 | |
| **6190** | | **Total budgetary resources available** | **16,211** | |

AR 000331

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Economic Support Fund resources are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000332

**OMB Approved this apportionment request using
the web-based apportionment system**

**Mark Affixed By:**      /s/ signature
                    for Deputy Associate Director for International Affairs Programs

**Signed On:**      2025-11-24 08:28 AM

**TAFS Included:**      072-2018-2026-1037 (Economic Support Fund)

**AR 000333**

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: International Security Assistance** **Account: Economic Support Fund** **TAFS: 072-2019-2027-1037** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, October 2 | 452,800 | |
| 1000 | DE | Discretionary Estimated - Unob Bal: Brought forward, October 1 | 0 | |
| 1100 | | BA: Disc: Appropriation | 0 | |
| 1200 | | BA: Mand: Appropriation | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **452,800** | **B1** |
| 6011 | | Local Works | 452,800 | |
| **6190** | | **Total budgetary resources available** | **452,800** | |

AR 000334

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Economic Support Fund resources are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000335

**OMB Approved this apportionment request using
the web-based apportionment system**

**Mark Affixed By:**       /s/ signature
                          Program Associate Director for Intelligence and International Affairs Programs

**Signed On:**          2025-12-12 02:12 PM

**TAFS Included:**      072-2019-2027-1037 (Economic Support Fund)

AR 000336

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: International Security Assistance** **Account: Economic Support Fund** **TAFS: 072-2020-2026-1037** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, October 1 | 579,381 | |
| 1000 | DE | Discretionary Estimated - Unob Bal: Brought forward, October 1 | 0 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | | Unob Bal: Transferred from other accounts | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **579,381** | **B1** |
| 6011 | | Coronavirus prevention, preparedness, and response programs | 579,381 | |
| **6190** | | **Total budgetary resources available** | **579,381** | |

AR 000337

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Economic Support Fund resources are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000338

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-12-12 02:12 PM |
| **TAFS Included:** | 072-2020-2026-1037 (Economic Support Fund) |

AR 000339

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: International Security Assistance** **Account: Economic Support Fund** **TAFS: 072-2021-2026-1037** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DE | Discretionary Estimated - Unob Bal: Brought forward, October 1 | 7,707,841 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | | Unob Bal: Transferred from other accounts | 0 | |
| 1012 | | Unob Bal: Transfers betw expired\unexpired accts | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **7,707,841** | **B1** |
| 6011 | | Unallocated - Base | 6,742,448 | |
| 6012 | | Economic Support Fund-Disaster Emergency Fund | 906,818 | |
| 6013 | | Nita Lowey ME Peace Fund | 26,775 | |
| 6014 | | Tibet | 31,800 | |
| **6190** | | **Total budgetary resources available** | **7,707,841** | |

AR 000340

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Economic Support Fund resources are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000341

**OMB Approved this apportionment request using
the web-based apportionment system**

**Mark Affixed By:**         /s/ signature
                            for Deputy Associate Director for International Affairs Programs

**Signed On:**              2025-11-24 08:28 AM

**TAFS Included:**          072-2021-2026-1037 (Economic Support Fund)

AR 000342

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: International Security Assistance** **Account: Economic Support Fund** **TAFS: 072-2022-2026-1037** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, October 1 | 8,498,123 | |
| 1000 | DE | Discretionary Estimated - Unob Bal: Brought forward, October 1 | 0 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | | Unob Bal: Transferred from other accounts | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **8,498,123** | **B1** |
| 6011 | | Local Works | 8,498,123 | |
| **6190** | | **Total budgetary resources available** | **8,498,123** | |

AR 000343

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**   Economic Support Fund resources are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000344

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-12-12 02:12 PM |
| **TAFS Included:** | 072-2022-2026-1037 (Economic Support Fund) |

AR 000345

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: International Security Assistance** **Account: Economic Support Fund** **TAFS: 072-2022-2027-1037** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DE | Discretionary Estimated - Unob Bal: Brought forward, October 1 | 36,394,793 | |
| 1010 | | Unob Bal: Transferred to other accounts | -1,300,000 | |
| 1011 | | Unob Bal: Transferred from other accounts | 0 | |
| 1012 | | Unob Bal: Transfers betw expired\unexpired accts | 0 | |
| 1021 | | Unob Bal: Recov of prior year unpaid obligations | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **35,094,793** | **B1** |
| 6011 | | Unallocated - Base | 27,327,345 | |
| 6012 | | Countering PRC Influence Fund (CPIF) | 7,406,614 | |
| 6013 | | West Bank Gaza | 326,500 | |
| 6014 | | Tibet | 30,669 | |
| 6015 | | Non-Presence ES-NP | 3,665 | |
| **6190** | | **Total budgetary resources available** | **35,094,793** | |

AR 000346

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Economic Support Fund resources are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000347

**OMB Approved this apportionment request using
the web-based apportionment system**

**Mark Affixed By:**   /s/ signature
        for Deputy Associate Director for International Affairs Programs

**Signed On:**     2025-11-24 08:28 AM

**TAFS Included:**   072-2022-2027-1037 (Economic Support Fund)

AR 000348

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: International Security Assistance** **Account: Economic Support Fund** **TAFS: 072-2022-2028-1037** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DE | Discretionary Estimated - Unob Bal: Brought forward, October 1 | 80,026 | |
| 1100 | | BA: Disc: Appropriation | 0 | |
| 1200 | | BA: Mand: Appropriation | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **80,026** | **B1** |
| 6011 | | Ukraine | 80,026 | |
| **6190** | | **Total budgetary resources available** | **80,026** | |

AR 000349

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Economic Support Fund resources are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000350

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | for Deputy Associate Director for International Affairs Programs |
| **Signed On:** | 2025-11-24 08:28 AM |
| **TAFS Included:** | 072-2022-2028-1037 (Economic Support Fund) |

AR 000351

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: International Security Assistance** **Account: Economic Support Fund** **TAFS: 072-2023-2028-1037** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DE | Discretionary Estimated - Unob Bal: Brought forward, October 1 | 16,399,115 | |
| 1100 | | BA: Disc: Appropriation | 0 | |
| 1200 | | BA: Mand: Appropriation | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **16,399,115** | **B1** |
| 6011 | | Unallocated | 16,357,115 | |
| 6012 | | Prevention and Stabilization Fund (PSF) | 42,000 | |
| **6190** | | **Total budgetary resources available** | **16,399,115** | |

AR 000352

FY 2026 Apportionment
OMB Footnotes

**<u>Footnotes for Apportioned Amounts</u>**

**<u>Footnotes for Budgetary Resources</u>**

**B1**  Economic Support Fund resources are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000353

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature<br>for Deputy Associate Director for International Affairs Programs |
| **Signed On:** | 2025-11-24 08:28 AM |
| **TAFS Included:** | 072-2023-2028-1037 (Economic Support Fund) |

AR 000354

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: International Security Assistance** **Account: Economic Support Fund** **TAFS: 072-X-1037** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, October 1 | 21,807,025 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | | Unob Bal: Transferred from other accounts | 1,885,432 | |
| 1700 | | BA: Disc: Spending auth: Collected | 0 | |
| 1710 | | BA: Disc: Spending auth: Trans to other accounts | 0 | |
| 1740 | | BA: Disc: Spending auth:Antic colls, reimbs, other | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **23,692,457** | |
| 6011 | | Unallocated | 1,389,923 | |
| 6012 | | Cyprus | 8,416 | |
| 6013 | | Egypt | 3,992,566 | |
| 6014 | | Lebanon | 1 | |
| 6015 | | East Timor | 1 | |
| 6016 | | West Bank Gaza | 1,167,679 | |
| 6017 | | Section 607 MENA | 8,405,927 | |
| 6018 | | Section 1207 Programs | 1,033,946 | |
| 6019 | | ME Programs | 692,732 | |
| 6020 | | NonPresence Travel | 1,266 | |
| 6021 | | FA Evaluations | 7,000,000 | |
| **6190** | | **Total budgetary resources available** | **23,692,457** | |

AR 000355

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

End of File

AR 000356

**OMB Approved this apportionment request using
the web-based apportionment system**

**Mark Affixed By:**       /s/ signature

                         Program Associate Director for Intelligence and International Affairs Programs

**Signed On:**         2026-04-01 10:10 AM

**TAFS Included:**      072-X-1037 (Economic Support Fund)

AR 000357

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law 000-000

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** | | |
| | | **Bureau: Other** | | |
| | | **Account: Global Health Programs** | | |
| | | **TAFS: 019-2022-2026-1031** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | C1A | US Agency for International Development (72-1922/261031) | 24,250,402 | B2 |
| 1000 | C1E | US Agency for International Development (72-1922/261031) | 0 | |
| 1000 | C2A | Health and Human Services (75-1922/261031) | 33,630,657 | |
| 1000 | C2E | Health and Human Services (75-1922/261031) | 0 | |
| 1000 | C3A | Department of Defense (97-1922/261031) | 19,100,965 | |
| 1000 | C3E | Department of Defense (97-1922/261031) | 0 | |
| 1000 | C4A | Peace Corps (11-1922/261031) | 3,639,739 | |
| 1000 | C4E | Peace Corps (11-1922/261031) | 0 | |
| 1000 | C5A | Global Fund (USAID)  (72-1922/261031) | 0 | |
| 1000 | C5E | Global Fund (USAID)  (72-1922/261031) | 0 | |
| 1000 | PA | Actual Unob Bal: Brought forward, Oct 1 | 17,689,540 | |
| 1000 | PE | Actual Unob Bal: Brought forward, Oct 1 | 0 | |
| 1010 | P | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | C1 | Unob Bal: Transferred from other accounts USAID (child, 72-192 | 0 | |
| 1011 | C2 | Unob Bal: Transferred from other accounts HHS (child, 75-1922/ | 0 | |
| 1011 | C3 | Unob Bal: Transferred from other accounts DOD (child, 97-1922 | 0 | |
| 1011 | C4 | Unob Bal: Transferred from other accounts PC (child, 11-1922/2 | 0 | |
| 1011 | C5 | Unob Bal: Transferred from other accounts Global Fund (USAID | 0 | |
| 1011 | C6 | Unob Bal: Transferred from other accounts MCC (95-1922/2610 | 0 | |
| 1061 | C1 | Unob Bal: Antic recov of prior year unpd/pd obl USAID (child, 72 | 0 | |
| 1061 | C4 | Unob Bal: Antic recov of prior year unpd/pd obl PC (child, 11-192 | 0 | |
| 1061 | P | Unob Bal: Antic recov of prior year unpd/pd obl | 0 | |
| 1740 | | BA: Disc: Spending auth:Antic colls, reimbs, other | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **98,311,303** | **B1, B2** |
| 6001 | | Category A -- 1st quarter | 1,691,408 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 0 | |
| 6004 | | Category A -- 4th quarter | 0 | |
| 6011 | | Global Health and Child Survival | 15,998,132 | |
| 6012 | | Working Capital Fund | 0 | |
| 6020 | | US Agency for International Development | 24,250,402 | |

AR 000358

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law 000-000

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| 6021 | | Health and Human Services | 33,630,657 | |
| 6022 | | Department of Defense | 19,100,965 | |
| 6023 | | Peace Corps | 3,639,739 | |
| 6024 | | Global Fund (USAID) | 0 | |
| **6190** | | **Total budgetary resources available** | **98,311,303** | |

AR 000359

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Pursuant to section 120.21 of OMB Circular A-11, one or more lines in the Budgetary Resources section may be rounded up. As a result, those rounded lines will not match the actuals reported on the SF 133. Agencies will ensure its funds control systems only allot actuals.

**B2**  Global Health Programs account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

**AR 000360**

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-12-03 02:56 PM |
| **TAFS Included:** | 019-2022-2026-1031 (Global Health Programs) |

AR 000361

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law 117-328

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** | | |
| | | **Bureau: Other** | | |
| | | **Account: Global Health Programs** | | |
| | | **TAFS: 019-2023-2027-1031** | | |
| IterNo | 2 | Last Approved Apportionment: 2025-12-03 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | C1A | US Agency for International Development (72-1923/271031) | 5,356,733 | B2 |
| 1000 | C1E | US Agency for International Development (72-1923/271031) | 0 | |
| 1000 | C2A | Health and Human Services (75-1923/271031) | 92,825,964 | |
| 1000 | C2E | Health and Human Services (75-1923/271031) | 0 | |
| 1000 | C3A | Department of Defense (97-1923/271031) | 11,115,196 | |
| 1000 | C3E | Department of Defense (97-1923/271031) | 0 | |
| 1000 | C4A | Peace Corps (11-1923/271031) | 5,493,015 | |
| 1000 | C4E | Peace Corps (11-1923/271031) | 0 | |
| 1000 | C5A | Global Fund (USAID) | 0 | |
| 1000 | C5E | Global Fund (USAID) | 0 | |
| 1000 | PA | Actual Unob Bal: Brought forward, Oct 1 | 137,719,529 | |
| 1000 | PE | Unob Bal: Brought forward, Oct 1 | 0 | |
| 1010 | P | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | C1 | Unob Bal: Transferred from other accounts USAID (child, 72-192 | 0 | |
| 1011 | C2 | Unob Bal: Transferred from other accounts HHS (child, 75-1923/ | 0 | |
| 1011 | C3 | Unob Bal: Transferred from other accounts DOD (child, 97-1923 | 0 | |
| 1011 | C4 | Unob Bal: Transferred from other accounts PC (child, 11-1923/2 | 0 | |
| 1011 | C5 | Unob Bal: Transferred from other accounts Global Fund (USAID | 0 | |
| 1061 | C4 | Unob Bal: Antic recov of prior year unpd/pd obl PC (child, 11-192 | 0 | |
| 1061 | P | Unob Bal: Antic recov of prior year unpd/pd obl | 1,103,024 | |
| 1740 | P | BA: Disc: Spending auth:Antic colls, reimbs, other | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **253,613,461** | **B1, B2** |
| 6001 | | Category A -- 1st quarter | 369,593 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 1,103,024 | |
| 6004 | | Category A -- 4th quarter | 0 | |
| 6011 | | Global Health and Child Survival | 137,349,936 | |
| 6012 | | Working Capital Fund | 0 | |
| 6020 | | US Agency for International Development | 5,356,733 | |
| 6021 | | Health and Human Services | 92,825,964 | |
| 6022 | | Department of Defense | 11,115,196 | |

AR 000362

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law 117-328

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---------|-----------|------------------|-----------:|---------|
| 6023 | | Peace Corps | 5,493,015 | |
| 6024 | | Global Fund (USAID) | 0 | |
| **6190** | | **Total budgetary resources available** | **253,613,461** | |

AR 000363

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Pursuant to section 120.21 of OMB Circular A-11, one or more lines in the Budgetary Resources section may be rounded up. As a result, those rounded lines will not match the actuals reported on the SF 133. Agencies will ensure its funds control systems only allot actuals.

**B2**  Global Health Programs account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

**AR 000364**

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2026-05-19 05:49 PM |
| **TAFS Included:** | 019-2023-2027-1031 (Global Health Programs) |

AR 000365

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law 000-000

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** | | |
| | | **Bureau: Other** | | |
| | | **Account: Global Health Programs** | | |
| | | **TAFS: 019-2024-2028-1031** | | |
| IterNo | 2 | Last Approved Apportionment: 2025-12-03 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | C1A | US Agency for International Development (72-1924/281031) | 213,517,178 | B2 |
| 1000 | C1E | US Agency for International Development (72-1924/281031) | 0 | |
| 1000 | C2A | Health and Human Services (75-1924/281031) | 408,261,436 | |
| 1000 | C2E | Health and Human Services (75-1924/281031) | 0 | |
| 1000 | C3A | Department of Defense (97-1924/281031) | 15,817,505 | |
| 1000 | C3E | Department of Defense (97-1924/281031) | 0 | |
| 1000 | C4A | Peace Corps (11-1924/281031) | 16,035,952 | |
| 1000 | C4E | Peace Corps (11-1924/281031) | 0 | |
| 1000 | C5E | Global Fund (USAID) | 0 | |
| 1000 | C6E | MCC (95-1924/281031) | 0 | |
| 1000 | PA | Actual Unob Bal: Brought forward, Oct 1 | 1,021,759,992 | |
| 1000 | PE | Unob Bal: Brought forward, Oct 1 | 0 | |
| 1010 | P | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | C1E | Unob Bal: Transferred from other accounts (USAID 72-19 24/281 | 0 | |
| 1011 | C2E | Unob Bal: Transferred from other accounts (HHS 75-19 24/28103 | 0 | |
| 1011 | C3E | Unob Bal: Transferred from other accounts (DOD 97-19 24/2810 | 0 | |
| 1011 | C4E | Unob Bal: Transferred from other accounts (PC 11-19 24/281031 | 0 | |
| 1011 | C5E | Unob Bal: Transferred from other accounts Global Fund (USAID) | 0 | |
| 1061 | P | Unob Bal: Antic recov of prior year unpd/pd obl | 88,542 | |
| 1100 | | BA: Disc: Appropriation | 0 | |
| 1120 | | BA: Disc: Approps transferred to other accounts | 0 | |
| 1134 | | BA: Disc: Appropriations precluded from obligation | 0 | |
| 1740 | P | BA: Disc: Spending auth:Antic colls, reimbs, other | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **1,675,480,605** | **B1,B2** |
| 6001 | | Category A -- 1st quarter | 2,551,502 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 88,542 | |
| 6011 | | Global Health and Child Survival | 1,014,841,844 | |
| 6012 | | Working Capital Fund | 4,366,646 | |
| 6020 | | US Agency for International Development | 213,517,178 | |

AR 000366

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law 000-000

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---------|-----------|------------------|-----------:|-----|
| 6021 | | Health and Human Services | 408,261,436 | |
| 6022 | | Department of Defense | 15,817,505 | |
| 6023 | | Peace Corps | 16,035,952 | |
| 6024 | | Global Fund (USAID) | 0 | |
| **6190** | | **Total budgetary resources available** | **1,675,480,605** | |

AR 000367

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Pursuant to section 120.21 of OMB Circular A-11, one or more lines in the Budgetary Resources section may be rounded up. As a result, those rounded lines will not match the actuals reported on the SF 133. Agencies will ensure its funds control systems only allot actuals.

**B2**  Global Health Programs account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

**AR 000368**

**OMB Approved this apportionment request using
the web-based apportionment system**

**Mark Affixed By:**      /s/ signature
                          Program Associate Director for Intelligence and International Affairs Programs

**Signed On:**            2026-05-08 03:00 PM

**TAFS Included:**        019-2024-2028-1031 (Global Health Programs)

AR 000369

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law 118-47

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State**<br>**Bureau: Other**<br>**Account: Global Health Programs**<br>**TAFS: 019-2024-2029-1031** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | E | Estimated - Unob Bal: Brought forward, Oct 1 | 409,807,557 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **409,807,557** | |
| 6050 | | U.S. Agency for International Development (USAID), Reimbursat | 409,807,557 | |
| **6190** | | **Total budgetary resources available** | **409,807,557** | |

AR 000370

FY 2026 Apportionment
OMB Footnotes

**<u>Footnotes for Apportioned Amounts</u>**

**<u>Footnotes for Budgetary Resources</u>**

End of File

AR 000371

**OMB Approved this apportionment request using
the web-based apportionment system**

**Mark Affixed By:**          /s/ signature
                             Program Associate Director for Intelligence and International Affairs Programs

**Signed On:**               2025-10-06 12:27 PM

**TAF(s) Included:**          019-2024-2029-1031 (Global Health Programs)

AR 000372

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Actual Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** **Bureau: Other** **Account: Global Health Programs** **Treasury Account: Global Health and Child Survival** **TAFS: 072-019-2018-2026-1031A** | | |
| IterNo | 2 | Last Approved Apportionment: 2025-10-08 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA 1 | Discretionary Actual- unob balance brought forward, Oct 1-- GHP | 1,444,924 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 0 | |
| 1021 | | Unob Bal: Recov of prior year unpaid obligations | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **1,444,924** | **B1** |
| 6011 | | All activities | 1,444,924 | |
| **6190** | | **Total budgetary resources available** | **1,444,924** | |

AR 000373

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Global Health Programs account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000374

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-12-18 11:04 AM |
| **TAFS Included:** | 072-019-2018-2026-1031A (Global Health and Child Survival) |

AR 000375

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Actual Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** | | |
| | | **Bureau: Other** | | |
| | | **Account: Global Health Programs** | | |
| | | **Treasury Account: Global Health and Child Survival** | | |
| | | **TAFS: 072-019-2019-2027-1031A** | | |
| | | | | |
| IterNo | 2 | Last Approved Apportionment: 2025-10-08 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA 1 | Discretionary Actual- unob balance brought forward, Oct 1-- GHP | 2,621,980 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **2,621,980** | **B1** |
| 6011 | | All activities | 2,621,980 | |
| **6190** | | **Total budgetary resources available** | **2,621,980** | |

AR 000376

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Global Health Programs account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000377

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-12-18 11:04 AM |
| **TAFS Included:** | 072-019-2019-2027-1031A (Global Health and Child Survival) |

**AR 000378**

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Actual Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** **Bureau: Other** **Account: Global Health Programs** **Treasury Account: Global Health and Child Survival** **TAFS: 072-019-2020-2026-1031A** | | |
| IterNo | 2 | Last Approved Apportionment: 2025-10-08 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA 1 | Discretionary Actual- unob balance brought forward, Oct 1-- GHP | 499,457 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **499,457** | **B1** |
| 6011 | | All activities | 499,457 | |
| **6190** | | **Total budgetary resources available** | **499,457** | |

AR 000379

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Global Health Programs account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000380

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-12-18 11:04 AM |
| **TAFS Included:** | 072-019-2020-2026-1031A (Global Health and Child Survival) |

AR 000381

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Actual Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** **Bureau: Other** **Account: Global Health Programs** **Treasury Account: Global Health and Child Survival** **TAFS: 072-019-2020-2028-1031A** | | |
| IterNo | 2 | Last Approved Apportionment: 2025-11-24 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA 1 | Discretionary Actual- unob balance brought forward, Oct 1-- GHP | 64,508 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **64,508** | **B1** |
| 6011 | | All activities | 64,508 | |
| **6190** | | **Total budgetary resources available** | **64,508** | |

AR 000382

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Global Health Programs account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000383

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-12-18 11:04 AM |
| **TAFS Included:** | 072-019-2020-2028-1031A (Global Health and Child Survival) |

AR 000384

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Actual Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** **Bureau: Other** **Account: Global Health Programs** **Treasury Account: Global Health and Child Survival** **TAFS: 072-019-2021-2026-1031A** | | |
| IterNo | 2 | Last Approved Apportionment: 2025-10-08 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA 1 | Discretionary Actual- unob balance brought forward, Oct 1-- GHP | 2,162,140 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 0 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | | Unob Bal: Transferred from other accounts | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **2,162,140** | **B1** |
| 6011 | | All activities | 2,162,140 | |
| **6190** | | **Total budgetary resources available** | **2,162,140** | |

AR 000385

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**   Global Health Programs account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000386

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-12-18 11:04 AM |
| **TAFS Included:** | 072-019-2021-2026-1031A (Global Health and Child Survival) |

AR 000387

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** | | |
| | | **Bureau: Other** | | |
| | | **Account: Democracy Fund** | | |
| | | **TAFS: 072-019-2021-2026-1121A** | | |
| IterNo | 2 | Last Approved Apportionment: 2025-09-30 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, Oct 1 | 58,173 | |
| 1000 | DE | Discretionary unob balance brought forward, Oct 1 | 0 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | | Unob Bal: Transferred from other accounts | 0 | |
| 1841 | | BA: Mand: Spending auth: Antic nonexpend trans net | 0 | |
| 1842 | | BA: Mand: Spending auth: Antic cap tran, red debt | 0 | |
| 1843 | | BA: Mand: Spending auth:Antic precl fr ob (lim) | 0 | |
| 1844 | | BA: Mand: Spending auth:Antic perm/temp reduced | 0 | |
| 1902 | | Adj for total budgetary res subj to obl limitation | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **58,173** | |
| 6001 | | Category A -- 1st quarter | 0 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 0 | |
| 6004 | | Category A -- 4th quarter | 0 | |
| 6011 | | Funding for all Activities | 0 | |
| 6035 | | Unallocated | 58,173 | A2 |
| 6183 | | Budgetary Resources: Exempt from apportionment | 0 | |
| **6190** | | **Total budgetary resources available** | **58,173** | |

AR 000388

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**A2**    Amounts apportioned on this line are available only for obligation for salaries, payroll expenses, closeout costs, or other payments required by law.  [Rationale: Footnote specifies the purpose(s) for which the funds are available to be obligated.]

**Footnotes for Budgetary Resources**

End of File

AR 000389

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2026-01-13 04:47 PM |
| **TAFS Included:** | 072-019-2021-2026-1121A (Democracy Fund) |

AR 000390

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Estimated Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State**<br>**Bureau: Other**<br>**Account: Global Health Programs**<br>**TAFS: 072-019-2021-2029-1031** | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA 1 | Discretionary Actual- unob balance brought forward, Oct 1-- GHP | 0 | |
| 1000 | DE | Discretionary unob balance brought forward, Oct 1 | 125,966 | |
| 1100 | | BA: Disc: Appropriation | 0 | |
| 1200 | | BA: Mand: Appropriation | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **125,966** | **B1** |
| 6001 | | Category A -- 1st quarter | 0 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 0 | |
| 6004 | | Category A -- 4th quarter | 0 | |
| 6011 | | Global Health Activities | 125,966 | |
| **6190** | | **Total budgetary resources available** | **125,966** | |

AR 000391

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Global Health Programs account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000392

**OMB Approved this apportionment request using
the web-based apportionment system**

**Mark Affixed By:**        /s/ signature

Program Associate Director for Intelligence and International Affairs Programs

**Signed On:**        2025-12-18 11:04 AM

**TAFS Included:**        072-019-2021-2029-1031 (Global Health Programs)

AR 000393

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Actual Carryover)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State**<br>**Bureau: Other**<br>**Account: Global Health Programs**<br>**Treasury Account: Global Health and Child Survival**<br>**TAFS: 072-019-2022-2027-1031A** | | |
| IterNo | 2 | Last Approved Apportionment: 2025-11-24 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA 1 | Discretionary Actual- unob balance brought forward, Oct 1-- GHP | 4,663,262 | |
| 1000 | DE | Discretionary unob balance brought forward, Oct 1 | 0 | |
| 1061 | | Unob Bal: Antic recov of prior year unpd/pd obl | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **4,663,262** | **B1** |
| 6011 | | Global Health Activities | 4,663,262 | |
| **6190** | | **Total budgetary resources available** | **4,663,262** | |

AR 000394

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**  Global Health Programs account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

AR 000395

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2026-01-20 02:39 PM |
| **TAFS Included:** | 072-019-2022-2027-1031A (Global Health and Child Survival) |

AR 000396

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** | | |
| | | **Bureau: Other** | | |
| | | **Account: Democracy Fund** | | |
| | | **TAFS: 072-019-2022-2027-1121A** | | |
| IterNo | 2 | Last Approved Apportionment: 2025-09-30 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, Oct 1 | 52,740 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 0 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | | Unob Bal: Transferred from other accounts | 0 | |
| 1844 | | BA: Mand: Spending auth:Antic perm/temp reduced | 0 | |
| 1902 | | Adj for total budgetary res subj to obl limitation | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **52,740** | |
| 6001 | | Category A -- 1st quarter | 0 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 0 | |
| 6004 | | Category A -- 4th quarter | 0 | |
| 6013 | | Funding for all Activities | 0 | |
| 6035 | | Unallocated | 52,740 | A2 |
| 6170 | | Apportioned in FY 2027 | 0 | |
| 6183 | | Budgetary Resources: Exempt from apportionment | 0 | |
| **6190** | | **Total budgetary resources available** | **52,740** | |

AR 000397

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**A2**   Amounts apportioned on this line are available only for obligation for salaries, payroll expenses, closeout costs, or other payments required by law.  [Rationale: Footnote specifies the purpose(s) for which the funds are available to be obligated.]

**Footnotes for Budgetary Resources**

End of File

AR 000398

**OMB Approved this apportionment request using
the web-based apportionment system**

**Mark Affixed By:**      /s/ signature

Program Associate Director for Intelligence and International Affairs Programs

**Signed On:**      2026-01-13 04:47 PM

**TAFS Included:**      072-019-2022-2027-1121A (Democracy Fund)

AR 000399

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Actual CO)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** | | |
| | | **Bureau: Other** | | |
| | | **Account: Global Health Programs** | | |
| | | **TAFS: 072-019-2023-2028-1031** | | |
| IterNo | 2 | Last Approved Apportionment: 2025-12-04 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA 1 | Discretionary Actual- unob balance brought forward, Oct 1-- GHP | 12,108,038 | |
| 1000 | DE | Discretionary unob balance brought forward, Oct 1 | 0 | |
| 1061 | | Unob Bal: Antic recov of prior year unpd/pd obl | 84,153 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **12,192,191** | **B1** |
| 6001 | | Category A -- 1st quarter | 0 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 0 | |
| 6004 | | Category A -- 4th quarter | 0 | |
| 6011 | | Global Health Activities | 12,192,191 | |
| **6190** | | **Total budgetary resources available** | **12,192,191** | |

AR 000400

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

**B1**   Global Health Programs account funds are used for program implementation, related close out costs, and related administrative fees such as interest payments.

End of File

**AR 000401**

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2026-01-20 02:39 PM |
| **TAFS Included:** | 072-019-2023-2028-1031 (Global Health Programs) |

AR 000402

# SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** | | |
| | | **Bureau: Other** | | |
| | | **Account: Democracy Fund** | | |
| | | **TAFS: 072-019-2023-2028-1121A** | | |
| IterNo | 2 | Last Approved Apportionment: 2025-09-30 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary Actual - Unob Bal: Brought forward, Oct 1 | 600,512 | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | 0 | |
| 1010 | | Unob Bal: Transferred to other accounts | 0 | |
| 1011 | | Unob Bal: Transferred from other accounts | 0 | |
| 1842 | | BA: Mand: Spending auth: Antic cap tran, red debt | 0 | |
| 1843 | | BA: Mand: Spending auth:Antic precl fr ob (lim) | 0 | |
| 1844 | | BA: Mand: Spending auth:Antic perm/temp reduced | 0 | |
| 1902 | | Adj for total budgetary res subj to obl limitation | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **600,512** | |
| 6001 | | Category A -- 1st quarter | 0 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 0 | |
| 6004 | | Category A -- 4th quarter | 0 | |
| 6013 | | Funding for all Activities | 0 | |
| 6035 | | Unallocated | 600,512 | A2 |
| 6170 | | Apportioned in FY 2027 | 0 | |
| 6183 | | Budgetary Resources: Exempt from apportionment | 0 | |
| **6190** | | **Total budgetary resources available** | **600,512** | |

AR 000403

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**A2**    Amounts apportioned on this line are available only for obligation for salaries, payroll expenses, closeout costs, or other payments required by law.  [Rationale: Footnote specifies the purpose(s) for which the funds are available to be obligated.]

**Footnotes for Budgetary Resources**

End of File

AR 000404

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2026-01-13 04:47 PM |
| **TAFS Included:** | 072-019-2023-2028-1121A (Democracy Fund) |

AR 000405

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Actual CO)

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** **Bureau: Other** **Account: Global Health Programs** **Treasury Account: Global Health and Child Survival** **TAFS: 072-019-2025-2026-1031A** | | |
| IterNo | 3 | Last Approved Apportionment: 2026-05-27 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA1 | Discretionary Actual- unob balance brought forward, Oct 1-- GHP | 3,485,450,000 | |
| 1060 | | Unob Bal: Antic nonexpenditure transfers (net) | -1,992,927,000 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **1,492,523,000** | |
| 6011 | | Global Health Activities | 139,573,000 | |
| 6012 | | USAID Close Out | 1,352,950,000 | |
| **6190** | | **Total budgetary resources available** | **1,492,523,000** | |

AR 000406

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

End of File

AR 000407

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director |
| **Signed On:** | 2026-06-09 05:24 PM |
| **TAFS Included:** | 072-019-2025-2026-1031A (Global Health and Child Survival) |

**AR 000408**

## SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law

| Line No | Line Split | Line Description | OMB Action | OMB Footnote |
|---|---|---|---|---|
| | | **Department of State** | | |
| | | **Bureau: Other** | | |
| | | **Account: Complex Crises Fund** | | |
| | | **TAFS: 072-X-1015** | | |
| IterNo | 2 | Last Approved Apportionment: 2025-09-24 | | |
| RptCat | NO | Reporting Categories | | |
| AdjAut | NO | Adjustment Authority provided | | |
| 1000 | DA | Discretionary,  Unob Bal: Brought forward, October 1-Base | 6,337,172 | |
| 1000 | DE | Discretionary,  Unob Bal: Brought forward, October 1-Base | 0 | |
| **1920** | | **Total budgetary resources avail (disc. and mand.)** | **6,337,172** | |
| 6001 | | Category A -- 1st quarter | 0 | |
| 6002 | | Category A -- 2nd quarter | 0 | |
| 6003 | | Category A -- 3rd quarter | 0 | |
| 6004 | | Category A -- 4th quarter | 0 | |
| 6011 | | Funding for all activities - CCF Base | 6,337,172 | A2 |
| 6170 | | Apportioned in FY 2027 | 0 | |
| **6190** | | **Total budgetary resources available** | **6,337,172** | |

AR 000409

FY 2026 Apportionment
OMB Footnotes

**Footnotes for Apportioned Amounts**

**A2**    Amounts apportioned on this line are available only for obligation for salaries, payroll expenses, closeout costs, or other payments required by law.  [Rationale: Footnote specifies the purpose(s) for which the funds are available to be obligated.]

**Footnotes for Budgetary Resources**

End of File

**AR 000410**

**OMB Approved this apportionment request using
the web-based apportionment system**

| | |
|---|---|
| **Mark Affixed By:** | /s/ signature |
| | Program Associate Director for Intelligence and International Affairs Programs |
| **Signed On:** | 2025-12-11 05:26 PM |
| **TAFS Included:** | 072-X-1015 (Complex Crises Fund) |

AR 000411

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Estimated Carryover)

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | **International Assistance Programs** **Bureau: Agency for International Development** **Account: Assistance for Europe, Eurasia and Central Asia** **TAFS: 072-2025-2026-0306** | | | | | | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | | | | | | |
| RptCat | NO | Reporting Categories | | | | | | | |
| AdjAut | NO | Adjustment Authority provided | | | | | | | |
| | | **Budgetary resources** | | | | | | | |
| 1000 | | Unob Bal: Brought forward, Oct 1 | | | | | | | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | | | 334,000 | | 334,000 | | |
| **1920** | | **Total budgetary resources avail (disc. and** | **0** | | **334,000** | | **334,000** | | |
| | | **Application of budgetary resources** **Category B Projects** | | | | | | | |
| 6011 | | AEECA Activities (7225/260306) | | | 334,000 | | 334,000 | | |
| **6190** | | **Total budgetary resources available** | **0** | | **334,000** | | **334,000** | | |
| | | **TAFS: 072-2022-2028-0306** | | | | | | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | | | | | | |
| RptCat | NO | Reporting Categories | | | | | | | |
| AdjAut | NO | Adjustment Authority provided | | | | | | | |
| | | **Budgetary resources** | | | | | | | |
| 1000 | A | Actual - Unob Bal: Brought forward, Oct 1 | | | | | | | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | | | 280,761 | | 280,761 | | |
| **1920** | | **Total budgetary resources avail (disc. and** | **0** | | **280,761** | | **280,761** | | |
| | | **Application of budgetary resources** **Category B Projects** | | | | | | | |
| 6011 | | AEECA Activities (7222/280306) | | | 280,761 | | 280,761 | | |
| **6190** | | **Total budgetary resources available** | **0** | | **280,761** | | **280,761** | | |
| | | **TAFS: 072-X-0306** | | | | | | | |
| IterNo | 1 | Last Approved Apportionment: N\A, First Request of Year | | | | | | | |
| RptCat | NO | Reporting Categories | | | | | | | |
| AdjAut | NO | Adjustment Authority provided | | | | | | | |
| | | **Budgetary resources** | | | | | | | |
| 1000 | A | Actual - Unob Bal: Brought forward, Oct 1 | | | | | | | |
| 1000 | CA | Actual - Unob Bal: Brought forward, Oct 1 (19-72X0306) | | | | | | | |
| 1000 | DE | Discretionary Expected - Unob Bal: Brought forward, October 1 | | | 13 | | 13 | | |
| 1000 | DE 1 | Discretionary Expected - Unob Bal: Brought forward, October 1 | | | | | | | |
| **1920** | | **Total budgetary resources avail (disc. and** | **0** | | **13** | | **13** | | |

AR 000412

SF 132 APPORTIONMENT SCHEDULE

FY 2026 Apportionment
Funds Provided by Public Law (FY 2026 Estimated Carryover)

| Line No | Line Split | Line Description | Previous Approved | Prev Footnote | Agency Request | Agency Footnote | OMB Action | OMB Footnote | Memo Obligations |
|---|---|---|---|---|---|---|---|---|---|
| | | **Application of budgetary resources** | | | | | | | |
| | | **Category B Projects** | | | | | | | |
| 6011 | | Carryover for all activities (72X0306) | | | 13 | | 13 | | |
| 6012 | | AEECA activities direct apportionment (1972X0306) | | | | | | | |
| **6190** | | **Total budgetary resources available** | **0** | | **13** | | **13** | | |

Submitted _____ Date _____

See Approval_Info sheet for OMB approval information

AR 000413

FY 2026 Apportionment
OMB Footnotes

**<u>Footnotes for Apportioned Amounts</u>**

**<u>Footnotes for Budgetary Resources</u>**

End of File

**AR 000414**

FY 2026 Apportionment
Agency Footnotes

**Footnotes for Apportioned Amounts**

**Footnotes for Budgetary Resources**

End of File

AR 000415

FY 2026 Apportionment
Previously Approved Footnotes

**<u>Footnotes for Apportioned Amounts</u>**

**<u>Footnotes for Budgetary Resources</u>**

End of File

AR 000416

**OMB Approved this apportionment request using
the web-based apportionment system**



**Mark Affixed By:**        Amaryllis Kennedy
                           Program Associate Director for Intelligence and International Affairs Programs

**Signed On:**             2025-09-23 06:32 PM
**File Name:**             State_F_7222_280306_7225_260306_72X0306_No_1_validated.xlsx
**Sent By:**               Amaryllis Kennedy
**Sent On:**               2025-09-23 06:37 PM

**TAF(s) Included:**       072-2025-2026-0306 (Assistance for Europe, Eurasia and Central Asia)
                           072-2022-2028-0306
                           072-X-0306

AR 000417