### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

GLOBAL HEALTH COUNCIL, *et al.*,

    *Plaintiffs*,

  v.

DONALD J. TRUMP, *et al.*,

    *Defendants*.

Civil Action No. 1:25-cv-402 (AHA)

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND INFORMATION WITHHELD UNDER PRIVILEGE**

1

**INTRODUCTION**

Plaintiffs primarily ask this Court to review *in camera* materials in the administrative record that were redacted under privilege.  Their request fails as a matter of law and should be denied.

At the outset, Plaintiffs confront the well-established presumption of administrative regularity.  An agency's production of the administrative record, and appropriately withheld privileged material, is entitled to a strong presumption of regularity.  Courts in this circuit have repeatedly emphasized that ordering completion or supplementation of an administrative record is an extraordinary remedy, not the norm.  Plaintiffs cannot overcome that presumption.  They identify no concrete, non-speculative basis to believe that the redacted materials were directly or indirectly considered by the relevant decisionmakers, as the governing case law requires.  Instead, they rely on conclusory assertions and speculation, which are legally insufficient to justify judicial intrusion into the administrative process. And Plaintiffs' authorities fare no better.  Nearly all arise in the Freedom of Information Act ("FOIA") context, where different legal standards govern the deliberative process privilege.  Those cases do not control review of an administrative record under the Administrative Procedure Act ("APA").

Even more fundamentally, the D.C. Circuit has repeatedly cautioned against unnecessary judicial incursion into agency deliberations, including to evaluate the deliberative process privilege, particularly absent any showing of bad faith or improper behavior.  *See San Luis Obispo Mothers for Peace*, 789 F.2d at 45 (en banc) (plurality opinion) ("[S]uch cases [where a court is warranted in examining the deliberative proceedings of the agency] **must be the rare exception** if agencies are to engage in uninhibited and frank discussions during their deliberations.") (emphasis added).  Here, Plaintiffs allege neither bad faith nor improper behavior.  Their request would require precisely the type of probing inquiry into agency deliberations that the D.C. Circuit has warned cautioned courts to avoid.

Moreover, as explained further in the below, the bulk of the challenged redactions protect quintessentially predecisional and deliberative material.  They reflect internal analyses,

recommendations, and policy discussions prepared to assist agency decisionmakers before final agency action and therefore fall squarely within the deliberative process privilege.

Finally, practical considerations reinforce why Plaintiffs' request should be denied. The administrative record in this case spans nearly 2,000 pages and continues to be supplemented on an expedited schedule. Agency personnel and undersigned counsel have devoted substantial resources over the past several weeks reviewing voluminous materials, identifying privileged information, and making narrowly tailored redactions, including those necessary to protect deliberative communications, national security interests, and diplomatic sensitivities. In an effort to accommodate Plaintiffs' extraordinarily expansive demands regarding the administrative record, including the production of categories of material not ordinarily included in an administrative record, let alone on this timeline—the agencies and undersigned counsel have worked virtually around the clock respond to requests and challenges that have increasingly taken on the character of a fishing expedition. As a practical consequence, undersigned counsel have had little opportunity to devote attention to the parties' impending summary judgment briefing, despite the highly expedited schedule established by the Court.

Plaintiffs' ever-expanding challenges to the record have evolved into a collateral dispute untethered from the limited role of administrative record review and has taken on *a life of its own*. Requiring agencies to revisit and review thousands of redactions yet again would impose a substantial and unnecessary burden while diverting resources from the merits briefing now before the Court, all without the threshold evidentiary showing that governing law requires.

## LEGAL FRAMEWORK

### 1. *"Completion" of the Administrative Record*

There are two situations in which a plaintiff may seek to add evidence or documents to the administrative record. *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 77 (D.D.C. 2018), only one of which is at issue. First, a plaintiff may seek to include extra-judicial evidence that is not initially before the agency but that plaintiffs believe should nonetheless be included in the administrative

record. *Id*. The second situation on which plaintiffs rely, is when a plaintiff seeks to "include 'evidence that should have been properly a part of the administrative record but was excluded by the agency.'" *Univ. of Colorado Health at Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 13 (D.D.C. 2015) (citation omitted).

"In order for a Court to order [completion], the plaintiff must overcome [the] strong presumption of regularity by putting forth concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers." *The Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 114 (D.D.C. 2009). Because of this presumption, "[s]upplementation of the administrative record is the exception, not the rule." *Id.* (quoting *Pac. Shores*, 448 F.Supp.2d at 5)). *Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 33 (D.D.C. 2013), *aff'd sub nom. Dist. Hosp. Partners, L.P. v. Burwell*, 786 F.3d 46 (D.C. Cir. 2015) ("Absent a rebuttal of the presumption of regularity, the Secretary's determination of which documents are privileged, and thus excluded from the administrative record, is conclusive."). And a "court that orders an administrative agency to [complete] the record of its decision is a rare bird." *Cape Hatteras*, 667 F. Supp. 2d at 112.

Furthermore, Plaintiffs must offer "reasonable, non-speculative" grounds for their belief that the documents were directly or indirectly considered by the agencies. *Am. Petroleum Tankers Parent, LLC v. United States*, 952 F. Supp. 2d 252, 262 (D.D.C. 2013). In other words, to overcome the strong presumption of regularity, a plaintiff "must present 'non-speculative, concrete evidence . . . that the specific documents allegedly missing from the administrative record were directly or indirectly considered by the actual decision makers.'" *Oceana, Inc. v. Pritzker*, 217 F. Supp. 3d 310, 316 (D.D.C. 2016) (quoting *Dist. Hosp. Partners, L.P. v. Sebelius*, 971 F. Supp. 2d 15, 20 (D.D.C. 2013)). "The administrative record is presumed to be complete," and a party seeking to rebut this presumption must "present 'clear evidence to the contrary.'" *Bruce v. Azar*, 826 F. App'x 643, 645 (9th Cir. 2020) (quoting *In re United States*, 875 F.3d 1200, 1206 (9th Cir. 2017)).

### 2. *The Deliberative Process Privilege*

In Administrative Procedure Act ("APA") cases, courts in this District have long held that materials that fall within the scope of the deliberative process privilege are not part of the administrative record. *See, e.g., Am. Petroleum Tankers Parent, LLC v. United States*, 952 F.Supp.2d 252, 265 (D.D.C. 2013)*; Oceana, Inc. v. Ross*, 920 F.3d 855, 865 (D.C. Cir. 2019) ("predecisional and deliberative documents are not part of the administrative record to begin with, so they do not need to be logged as withheld from the administrative record.").

The deliberative process privilege protects the Government's decision-making process by shielding from disclosure documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975). The privilege "reflects the commonsense notion that agencies craft better rules when their employees can spell out in writing the pitfalls as well as strengths of policy options, coupled with the understanding that employees would be chilled from such rigorous deliberation if they feared it might become public." *Judicial Watch, Inc. v. United States Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017) (citing *Sears*, 421 U.S. at 150); *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions, by protecting open and frank discussion among those who make them within the Government.") (citation omitted); *Nat'l Sec. Archive v. C.I.A.*, 752 F.3d 460, 462 (D.C. Cir. 2014) ("If agencies were 'to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer.'") (quoting *Dudman Commc'ns Corp. v. Dep't of the Air Force*, 815 F.2d 1565, 1567 (D.C. Cir. 1987)). The privilege's "'ultimate purpose'" is to "'prevent injury to the quality of agency decisions' by allowing government officials freedom to debate alternative approaches in private." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (quoting *Sears*, 421 U.S. at 151). "In other words, agency officials 'should be judged by what they decided,

not for matters they considered before making up their minds.'" *Nat'l Sec. Archive*, 752 F.3d at 462–63 (quoting *Russell v. Dep't of the Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982)).

The deliberative process privilege covers documents and communications that are "predecisional and deliberative." *Id.* at 463 (citing *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 151 (D.C. Cir. 2006)). Predecisional documents are "prepared in order to assist an agency decisionmaker in arriving at his decision." *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 184 (1975)). "'Deliberative' . . . means, in essence, that the communication is intended to facilitate or assist development of the agency's final position on the relevant issue." *Nat'l Sec. Archive*, 752 F.3d at 463 (citing *Russell*, 682 F.2d at 1048). Deliberative material "reflects the give-and-take of the consultative process," by revealing the manner in which the agency evaluates possible alternative policies or outcomes. *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).

## ARGUMENT

Plaintiffs ask this Court to order the "completion" of the administrative record. But they have not overcome the strong presumption that the agency properly compiled and lodged a complete administrative record, subject only to appropriate redactions. To rebut that presumption, Plaintiffs must identify concrete, non-speculative evidence that specific omitted or redacted materials were directly or indirectly considered by the agency decisionmakers. They have not done so. In fact, they have not even alleged facts sufficient to support such an inference beyond threadbare and conclusory allegations that the unredacted information does not establish that the redacted information "contain[s] predecisional and deliberative information." Pls.' Mot. at 7.

Plaintiffs have the standard exactly backwards. They argue that the unredacted portions of the documents do not provide enough information for them to verify independently that each redaction is proper. *Id*. But the agency is not required to disprove Plaintiffs' speculation by revealing additional privileged material. The relevant question is whether Plaintiffs have come forward with concrete, non-speculative evidence that specific redacted material was directly or indirectly considered by the actual decisionmakers and therefore improperly omitted from the

6

administrative record.  They have not.  *Id*. at 7 ("the second tranche of the supplemental record also bears *indicia* that the redacted material may not be privileged.") (emphasis added).  By demanding disclosure unless the existing record affirmatively validates every redaction, Plaintiffs invert the presumption of regularity and improperly shift their burden to the agency.

Point in fact, Plaintiffs' cited cases do not analyze redactions alleged as privileged regarding the production of the administrative record where the presumption of regularity holds. Plaintiffs instead only cite cases involve FOIA, which operate under somewhat similar, but more stringent standards.  Indeed, *Jud. Watch, Inc. v. United States Dep't of Just.* dealt with FOIA Exemption 5, which involves a broader application of the deliberative due process privilege than in the administrative record review context.  20 F.4th 49 (D.C. Cir. 2021).  Plaintiffs claim that this case stands for the proposition that the Government bears the burden of establishing the privilege and must identify the particular deliberative process, the document's role in that process, and the relationship between its author and recipient.  Pls.' Mot. at 5.  That may be true in the FOIA context, but, as discussed in more detail above, is incorrect in the administrative record review context where it is the movant's burden to "overcome [the] strong presumption of regularity by putting forth concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers." *Cape Hatteras*, 667 F. Supp. 2d at 114.

Similarly, Plaintiffs' cited cases of *Juarez v. DOJ*, 518 F.3d 54 (D.C. Cir. 2008) and *Allen v. CIA*, 636 F.2d 1287 (D.C. Cir. 1980) each also analyze privileged withholdings under FOIA, and not in the context of an administrative record production.  *Allen*, 636 F.2d at 1294 ("To understand why we hold that in camera inspection is required in the instant case, however, we must first look at the terms and legislative history of the FOIA.").  And regarding Plaintiffs' argument that documents transmitted to Congress cannot also be protected under the deliberative process privilege, this argument similarly lacks merit as Plaintiffs' cited case addressed a different question than the one raised here.  The case that Plaintiffs cite, *Am. Oversight v. HHS*, concerns the meaning of "intra-agency" under the "consultant corollary" to FOIA's Exemption 5.  101 F.4th 909, 912 (D.C. Cir. 2024) ("Since *Klamath*, we have not had to decide whether agencies may

invoke Exemption 5 to withhold agency records generated by a government consultant with its own stake in the outcome of the agency's decision-making process."). Plaintiffs' cited case involves a specific invocation of FOIA Exemption 5. But this is not a FOIA matter. And the intra-agency analysis does not apply in this case examining an administrative record.

Administrative record litigation asks a different threshold question: was the material part of the "whole record" that must be placed before the reviewing court under Section 706? 5 U.S.C. § 706; *Ctr. for Auto Safety v. Fed. Highway Admin.,* 956 F.2d 309, 314 (D.C.Cir.1992). But courts in this District have long held that materials that fall within the scope of the deliberative process privilege are not part of the "whole record" of the administrative record. *Stand Up for California! v. United States Dep't of Interior,* 71 F.Supp.3d 109, 123 (D.D.C. 2014) ("[P]rivileged and deliberative materials are not part of the administrative record as a matter of law.").

The D.C. Circuit has also discouraged courts from delving into the internal deliberations of agencies, even to evaluate a claim of privilege, absent a showing of bad faith. *See San Luis Obispo Mothers for Peace v. U.S. Nuclear Regulatory Comm'n*, 789 F.2d 26 (D.C. Cir. 1986) (en banc) (requiring a showing of bad faith before evaluating an agency's internal deliberations). This is just such a case. And bad faith has *neither* been alleged, *nor* shown.

Sitting en banc in *San Luis Obispo Mothers for Peace*, the D.C. Circuit denied the petitioner's request to supplement the administrative record with transcripts of agency meetings. 789 F.2d at 46. Interpreting the Supreme Court's opinion in *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971), the Court of Appeals held that the party seeking supplementation must show that the agency had acted "improperly or in bad faith" before the court could order the agency to disclose the transcripts. *Id.* at 45 (plurality opinion). But again, Plaintiffs do not allege bad faith. And the Courts' incursion into the deliberations of agencies, even to evaluate the deliberative process privilege, should not extend to situations where there is no evidence (let alone allegations) of bad faith. As Judge Bork explained:

> [S]uch cases [where a court is warranted in examining the deliberative proceedings of the agency] must be the rare exception if agencies are to engage in uninhibited and frank discussions during their deliberations. Were courts regularly to review

the transcripts of agency deliberative proceedings, the discussions would be conducted with judicial scrutiny in mind. Such agency proceedings would then be useless both to the agency and to the courts. We think the analogy to the deliberative processes of a court is an apt one. Without the assurance of secrecy, the court could not fully perform its functions.

*San Luis Obispo Mothers for Peace*, 789 F.2d at 45 (en banc) (plurality opinion).

Here, Plaintiffs take issue with the redactions in the following documents:

- AR 558–60, 567–576 ("April 16, 2026 OMB Memo");
- AR 865–867 ("September 11, 2025 State Memo");
- AR 895–898 ("March 31, 2026 State Memo");
- AR 1207 ("July 1, 2026 State Memo");
- AR 1313–1319 ("1st Draft Congressional Notification Transmittal Letter");
- AR 1320–1321 ("GHSD AFGHS Consult Notes Email");
- AR 1322–1328 ("April 14, 2026 State Memo");
- AR 1394–1399 ("June 10, 2026 State Memo");
- AR 1422–1436 ("2nd Draft Congressional Notification Transmittal Letter").

Pls.' Mot. at 4.  Defendants will address each set of documents *seriatim*.

**A. Defendants Properly Withheld Pre-decisional and Deliberative Materials Subject to the Deliberative Process Privilege.**

Pursuant to the Court's July 18 Minute Order, Defendants provide the following defending the redactions at issue in the administrative record.  Further, for the Court's reference, is a declaration from the Department of State ("Peterson Declaration"), attached herein as Exhibit A, and declaration from the Office of Management and Budget ("Schmitt Declaration"), attached herein as Exhibit B.

**1. OMB Documents: AR 558–60, 567–576 ("April 16, 2026 OMB Memo")**

Plaintiffs state that the "visible portions of the documents indicate that at least some of the withheld material may record, approve, or communicate final agency action." Pls.' Mot. at 6.  And that in camera review is necessary to distinguish any protected deliberation from categories of non-protected information such as factual background, final approval, or subsidiary decisions. *Id*. at 7.

Similarly, for the attachment of that document, Tab 2—the Notwithstanding and Authorities "Cheat Sheet"—Plaintiffs also claim that only in camera inspection can determine whether privileges were properly invoked. *Id*.

Starting with the memorandum itself, the limited redaction in AR 558 discusses purely internal inter-agency coordination processes regarding the clearance of the Congressional Notification ("CN") and reflects "deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975); *see also* Schmitt Declaration at ¶ 8. It *does not* constitute information that was "directly or indirectly considered" by the decisionmakers in making its decision. *Maritel, Inc. v. Collins,* 422 F.Supp.2d 188, 196 (D.D.C.2006) (quoting *Bar MK Ranches v. Yuetter,* 994 F.2d 735, 739 (10th Cir.1993)).

Next, AR 559 and 560 discuss the memorandum's Analysis and Policy Considerations section, which is at the core of the deliberative-process privilege because it was prepared before the agency's final decision and evaluates competing considerations (discussing several concerns), anticipated consequences ("we expect significant pushback . . ."), and potential courses of action for the decisionmaker ("this could also include . . . if there is a goal to . . ."). *See* Schmitt Declaration at ¶ 9 ("such information was intended to facilitate or assist the development of the OMB Director's final position on the relevant issue").

Indeed, this information is plainly pre-decisional, as it was prepared "before any final agency decision on the relevant matter," *Judicial Watch, Inc. v. FDA,* 449 F.3d 141, 151 (D.C. Cir. 2006). It is also deliberative because the communication is intended to facilitate or assist development of the agency's final position on the relevant issue. *Russell*, 682 F.2d at 1048. Not only does the heading of "Analysis and Policy Considerations" for the redacted portion make it evident that the information is intended to facilitate or assist the development of the agency's final position regarding the CN, but the language reflects personal opinions of the writer and "the give-and-take of the consultative process" when the writer of the April 16 memorandum elucidates their considerations, recommendations, and subjective understandings. *Am. Petroleum Tankers Parent,*

*LLC v. United States*, 952 F. Supp. 2d 252, 265 (D.D.C. 2013). Indeed, "most of the redacted information also contains subjective material that was the opinion of the writer." Schmitt Declaration ¶ 9. "Such 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency' are widely recognized as falling within the scope of the privilege." *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 84 (D.D.C. 2018) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

And even more to the point—"[I]nternal memoranda made during the decisional process [ ] are never included in a record." *Norris & Hirshberg, Inc. v. SEC,* 163 F.2d 689, 693 (D.C. Cir. 1947). This recommendation to a supervisor, on a matter pending before the supervisor, is a classic example of a deliberative document. *Abtew v. U.S. Dep't of Homeland Sec.*, 808 F.3d 895, 899 (D.C. Cir. 2015). "Statements regarding . . . recommendations as to how the various issues can best be resolved, are clearly opinions and recommendations relating to the decisionmaking process." *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1121 (9th Cir. 1988) ("Recommendations on how best to deal with a particular issue are themselves the *essence* of the deliberative process."); *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) ("[R]ecommendations from subordinates to superiors lie at the core of the deliberative-process privilege.").

In response, Plaintiffs state that the deliberative process privilege "cannot protect final approval, operative conditions, or reasoning that the decisionmaker adopted merely because those matters appear in a document that began as a recommendation." Pls.' Mot. at 6. It is true, that "even if [a] document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue or used by the agency in its dealings with the public." *Coastal States*, 617 F.2d at 866. But "[t]o adopt a deliberative document, it is not enough for an agency to make vague or equivocal statements implying that a position presented in a deliberative document has merit; instead, the agency must make an *express* choice

to use a deliberative document as a source of agency guidance." *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017) (cleaned up).

Here, a manager's signed approval below a recommendation is not an express adoption. That is the clear teaching of *Abtew v. U.S. Dep't of Homeland Security*, 808 F.3d 895, 899 (D.C. Cir. 2015) (Kavanaugh, J.). There, the court rejected the plaintiff's argument that a decisionmaker's initialing of a document was an express adoption. *Id.* While the Circuit acknowledged that "[i]nitialing a memo may suggest approval of the memo's bottom-line recommendation," it stressed that it would nonetheless "be wrong and misleading to think that initialing necessarily indicates adoption or approval of all of the memo's reasoning." *Id.* Thus the court concluded that "initialing alone" could not "transform" a predecisional document into an agency's "final decision." *Id.*

The opinion by Judge McFadden in *Ctr. for Immigr. Stud. v. U.S. Citizenship & Immigr. Servs.*, 766 F. Supp. 3d 1 (D.D.C. 2025) is also instructive. There, Judge McFadden analyzes the same issue and reached the same result. *See generally id.* Judge McFadden states that plaintiffs "offered no evidence beyond a bare signature to indicate that the Secretary endorsed the memo's rationale" and that "[u]nder *Abtew*, that is insufficient" because the decisionmaker's signature "did not strip the memo of its predecisional character." *Id.* at 9. *Cf. Nat'l Council of La Raza v. Dep't of Just.*, 411 F.3d 350, 358–59 (2d Cir. 2005) (finding express adoption where the agency "publicly and repeatedly depended" on the underlying document "as the primary legal authority justifying and driving" a policy change, and "[t]he record ma[de] clear that the [agency] embraced the [document's] reasoning as its own.").

Relevant here, the decisionmaker in the April 16 memorandum was provided with "approve" and "disapprove" boxes to initial. But a court "may not infer that the agency is relying on the reasoning contained in [a] subordinate's report" where the decisionmaker, "having reviewed [the] subordinate's non-binding recommendation, makes a 'yes' or 'no' determination without providing any reasoning at all." *Id.* at 359. *Machado Amadis v. United States Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) ("[A] recommendation does not lose its predecisional or

12

deliberative character simply because a final decisionmaker later follows or rejects it without comment. To the contrary, the Supreme Court has held that the deliberative process privilege protects recommendations that are approved or disapproved without explanation."). Yet, because "all the [Plaintiffs] offer[] here is a mere endorsement of the bottom line . . . [Defendants] are entitled to the deliberative process exemption. *Ctr. for Immigr. Stud.*, 766 F. Supp. at 10.

Last, regarding Tab 2—the Notwithstanding and Authorities "Cheat Sheet" in AR 567-576—this tab contains purely internal, predecisional and deliberative information as in the above because it speaks to the cost benefit analysis of making one decision over another. *See* Schmitt Declaration at ¶ 10. It does not "constitute[] a final agency action," *id.*, but rather presents "a menu of authorities that could be applicable, depending on the route the decisionmaker chose to take," *id.*, which is *the essence* of the privilege as "[s]uch 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency' are widely recognized as falling within the scope of the privilege." *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 84 (D.D.C. 2018) (quoting *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980)).

This is just like the case of *Nat'l Courier Ass'n v. Bd. of Govs. of Fed. Reserve Sys.*, 516 F.2d 1229 (D.C. Cir. 1975). There, the petitioners sought disclosure of the redacted portions of internal agency memoranda, the remainder of which had been turned over by the agency as part of the administrative record. *Id.* at 1241. The D.C. Circuit reasoned that, if the petitioners were correct that "the deleted material contains facts not otherwise in the record. . . . [,] [s]uch facts would certainly constitute 'evidence' which should be included in the record." *Id*. The Court of Appeals conducted an *in camera* review before finding "no significant omission" and denying the petition. *Id.* at 1243. But here, Plaintiffs have not offered evidence that the material it seeks contains factual material not otherwise included in the record. Indeed, on July 13 Defendants had pulled back redacted material in the memorandum, that upon further review, Defendants believed to be purely factual in nature. Under the D.C. Circuit precedent in *Abtew*, the Court should deny Plaintiffs' request to produce these unredacted materials.

### 2.  Department of State Documents:

The bulk of the information in the below listed pages of the administrative record are also protected under the deliberative process privilege because they are pre-decisional, as they were prepared "before any final agency decision on the relevant matter," *Judicial Watch, Inc. v. FDA,* 449 F.3d 141, 151 (D.C. Cir. 2006).  They are also deliberative because the communications are intended to facilitate or assist development of the agency's final position on the relevant issue, *Russell*, 682 F.2d at 1048, and reflects personal opinions of the writer and "the give-and-take of the consultative process." *Am. Petroleum Tankers Parent, LLC*, 952 F. Supp. 2d at 265.  "Such 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency' are widely recognized as falling within the scope of the privilege." *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 84 (D.D.C. 2018) (citation omitted).  Moreover, "internal memoranda made during the decisional process [ ] are never included in a record." *Norris & Hirshberg, Inc. v. SEC,* 163 F.2d 689, 693 (D.C. Cir. 1947).

#### A.  AR 865–867 ("September 11, 2025 State Memo")

Against this contextual backdrop, the declaration of Kyle Peterson discusses why these decisions are predecisional and deliberative in further detail, as well as why there are other redactions for highly sensitive materials that could perhaps not otherwise qualify under the deliberative process privilege.  *See* Peterson Declaration at 2-4.

#### B.  AR 895–898 ("March 31, 2026 State Memo")

The declaration of Kyle Peterson discusses why these decisions are predecisional and deliberative in further detail, as well as why there are other redactions for highly sensitive materials that could perhaps not otherwise qualify under the deliberative process privilege.  *See* Peterson Declaration at 4-6.

#### C.  AR 1207 ("July 1, 2026 State Memo")

The declaration of Kyle Peterson discusses why these decisions are predecisional and deliberative in further detail, as well as why there are other redactions for highly sensitive materials

that could perhaps not otherwise qualify under the deliberative process privilege.  *See* Peterson Declaration at 6-7.

### D.  AR 1313–1319 ("1st Draft Congressional Notification Transmittal Letter")

The declaration of Kyle Peterson discusses why these decisions are predecisional and deliberative in further detail, as well as why there are other redactions for highly sensitive materials that could perhaps not otherwise qualify under the deliberative process privilege.  *See* Peterson Declaration at 7-8.

### E.  AR 1320–1321 ("GHSD AFGHS Consult Notes Email")

The declaration of Kyle Peterson discusses why these decisions are predecisional and deliberative in further detail, as well as why there are other redactions for highly sensitive materials that could perhaps not otherwise qualify under the deliberative process privilege.  *See* Peterson Declaration at 8-9.

### F.  AR 1322–1328 ("April 14, 2026 State Memo")

The declaration of Kyle Peterson discusses why these decisions are predecisional and deliberative in further detail, as well as why there are other redactions for highly sensitive materials that could perhaps not otherwise qualify under the deliberative process privilege.  *See* Peterson Declaration at 9-12.

### G.  AR 1394–1399 ("June 10, 2026 State Memo")

The declaration of Kyle Peterson discusses why these decisions are predecisional and deliberative in further detail, as well as why there are other redactions for highly sensitive materials that could perhaps not otherwise qualify under the deliberative process privilege.  *See* Peterson Declaration at 12-14

### H.  AR 1422–1436 ("2nd Draft Congressional Notification Transmittal Letter")

The declaration of Kyle Peterson discusses why these decisions are predecisional and deliberative in further detail, as well as why there are other redactions for highly sensitive materials that could perhaps not otherwise qualify under the deliberative process privilege.  *See* Peterson Declaration at 14.

**B. Plaintiffs' Argument to Unredact Non-Responsive Documents is Unavailing.**

Plaintiffs state that Defendants may not redact portions of documents because they are non-responsive to Plaintiffs' request for records. In support, Plaintiffs cite *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792–93 (D.C. Cir. 1984). But per the Parties' agreement in the Joint Status Report (ECF No. 190), it was agreed that information narrowly tailored to certain decisions would be included as part of the administrative record. Indeed, the whole point of the Joint Status Report, and myriad discussions between the parties, was to narrow the scope of information to be only those that are responsive to Plaintiffs' claims and concerns. *See generally id*.

More practically, to have the agencies go back and unredact materials in the administrative record that is already close to 2,000 pages and will likely be closer to 2,500 pages by week's end, would be a massive undertaking. *See Oceana, Inc.*, 217 F. Supp. 3d at 319 ("In this case, defendants would be required to review and log approximately 5,000 documents. The review would, by defendants' estimate, take four to five staff members and one technical assistant approximately one month to complete . . . The agency resources would not be well spent, given that those materials are "immaterial as a matter of law."). Plaintiffs' expansive request for materials in the administrative record, and issues relating to its production, have taken a life of its own. Myriad remonstrations that Plaintiffs raise have not only required night and day efforts by a large array of agency employees to produce and review for privilege this large volume of documents, but undersigned counsel have had nearly no time to work on the upcoming Motions for Summary Judgment due on Monday. As a practical matter, the Court should not require the agency to go back and unredact material that is non-responsive to Plaintiffs' claims.

In any event, Plaintiffs must identify a "reasonable, non-speculative grounds for its belief that the documents were considered by the agency and not included in the record." *Pac. Shores Subdivision, California Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 6 (D.D.C. 2006); *see also Novartis Pharms Corp. v. Shalala,* No. 99–323, 2000 U.S. Dist. LEXIS 17491, at

16

*1, *12–13 (D.D.C. Nov. 27, 2000).  This they have not done.  Plaintiffs' request to unredact

materials that the agency has deemed not responsive to their request should be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Compel Production of Unredacted

Documents should be denied.  A proposed order is attached.


Dated: July 21, 2026                                        Respectfully submitted,


                                                            BRETT A. SHUMATE
                                                            Assistant Attorney General
                                                            Civil Division

                                                            ERIC J. HAMILTON
                                                            Deputy Assistant Attorney General
                                                            Civil Division

                                                            ALEXANDER K. HAAS
                                                            Director
                                                            Federal Programs Branch

                                                            */s/  Pierce J. Anon*
                                                            PIERCE J. ANON
                                                            JOSHUA N. SCHOPF
                                                            Trial Attorneys
                                                            United States Department of Justice
                                                            Civil Division, Federal Programs Branch
                                                            P.O. Box 883
                                                            Washington, DC 20044
                                                            Phone: (202) 305-7573
                                                            Email: pierce.anon@usdoj.gov

                                                            *Counsel for Defendants*


17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GLOBAL HEALTH COUNCIL, *et al.*,

*Plaintiffs,*

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Civil Action No. 25-cv-402 (AHA)

**[PROPOSED] ORDER DENYING PLAINTIFFS' MOTION TO COMPEL**
**PRODUCTION OF UNREDACTED DOCUMENTS**

For the reasons stated in Defendants' response Plaintiffs' Motion to Compel Production

of Unredacted Documents is **DENIED**.

It is **SO ORDERED**.

DATED this _____ day of July, 2026.

_____

Hon. Amir H. Ali
United States District Judge

18