# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*, <br><br> *Plaintiffs*, <br><br><br> v. <br><br><br> DONALD J. TRUMP, *et al.*, <br><br> *Defendants*. | Civil Action No. 1:25-cv-402 (AHA) |

**DECLARATION OF TRICIA A. SCHMITT**

In accordance with the provisions of 28 U.S.C. § 1746, I, Tricia A. Schmitt, state as follows, under penalty of perjury, pertinent to the above-styled and numbered case:

1. I currently serve as Deputy Associate Director for the International Affairs Division at the Office of Management and Budget (OMB) in the Executive Office of the President. I have occupied this position since October 25, 2021. My responsibilities include oversight of foreign assistance managed by the United States Agency for International Development and the Department of State. I make the statements herein based upon my personal knowledge, and upon information available to me in my official capacity.

2. The International Affairs Division (IAD) oversees multiple agencies and programs, including those of the Department of State (State) and United States Agency for International Development (USAID). In connection with my job responsibilities, I am

familiar with this litigation.  The following statements are based upon my personal knowledge or information supplied to me in the course of my professional responsibilities.

**USAID Is Acting Consistent with Congressional Directives and Reasonably**

3.  Consistent with section 7015(c) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (SFOP Act), and as carried forward by the Full-Year Continuing Appropriations Act, 2025, and section 7015(c) of the National Security, Department of State, and Related Programs Appropriations Act, 2026, USAID sent a Congressional Notification (CN) on April 20, 2026, to alert Congress of its intent to obligate funds associated with close-out of terminated foreign assistance awards.

4.  The CN addressed $19 billion available to USAID for close-out purposes, including both unobligated (~$4 billion) and obligated balances (~$15 billion), specifically:

    a.  $625 million in unobligated, prior-year (FY 2024 and earlier), and no-year balances in USAID accounts (of this amount, around $110 million expires on September 30, 2026; the remainder will not expire, and will continue to be available for obligation in FY 2027 and beyond);

    b.  $3.2 billion in unobligated expiring FY 2025 Development Assistance and Global Health Program funding; and

    c.  $15.4 billion in obligated funding that has either not been disbursed on a terminated award, or has been obligated on a USAID Development Objective Agreement (DOAG) (of this amount, only around $1 billion expires on September 30, 2026). Because the $1 billion is already obligated on a DOAG, funding will continue to be available in the expired phrase for disbursement or upward adjustments for five years after September 30.

5. As noted in the CN, the Administration intends to use these funds notified in the CN for award close out costs. Award close out costs may include a range of costs related to final settlement, to include any pending invoices, adjustments to negotiated indirect costs rate agreements (NICRA), costs associated with disposition of assets, and/or other claims. These are legitimate and required costs that must be paid.

6. The $15 billion already obligated onto DOAGs were based on Congress's directives, including those contained in Title III and Title IV of the FY 2024 Appropriations Act, the tables incorporated into § 7019(a), and the directives in §§ 7030-61. Utilizing those funds to close out those same programs keeps the funds within the programs as Congress directed. As an example, funds obligated but not disbursed on a Food Security award are being used to pay the termination/close out costs of that same Food Security award.

7. Funding close out costs with the same funding as appropriated is part of normal business. USAID has not requested funds as part of the President's Budget Request to close out activities—this is funded as part of normal business across Administrations as grants conclude and new partners are selected. An appropriation for a specified object also covers expenses necessarily incident to accomplishing that object.

8. In order to ensure that all terminated awards have sufficient balances for close-out, USAID may also need to utilize unobligated funding, including expired FY 2025 Development Assistance and Global Health Program funding, and prior and no-year balances. It is necessary to use these unobligated balances because some close out costs cover multiple awards or are not finalized until the award is closed. Using unobligated balances is a mechanism to allow the agency to fund required costs to legally and responsibly pay partners.

9. In addition, USAID is required to audit the close out of awards above a certain threshold. Funding already obligated on other awards may not be available for this purpose because funds may be needed for final close out of the award, and a new central audit mechanism is required to responsibly and legally close out USAID.

10. Further, some awards may not have enough unliquidated obligations (ULOs) currently available to cover required termination settlements. It was common practice for USAID to obligate funds on a DOAG and then, later, sub-obligate onto specific mechanisms/awards that "nest" under the DOAG. Funds that are not sub-obligated are available for termination costs on the awards, especially for grants and contracts under the DOAG that do not have sufficient unliquidated funds available for such costs. In this situation, the only way to fund required close out costs to USAID partners is from un-subobligated balances, which can include unobligated balances. As an example, there is insufficient funding for close out costs for economic growth activities run out of the Asia regional program, which serves the Indo-Pacific region. Specifically, a Public Financial Management Indefinite Delivery/Indefinite Quantity contract serving multiple countries in the region does not currently have sufficient funding for such close out costs. In that situation, and others like it, close out costs may need to be paid for out of unobligated balances once final termination settlements are agreed upon.

11. The close-out process is complex, and it is difficult to predict final costs. USAID notified Congress of the "envelope" of funding available for close-out. Determining the exact funding needed to close out a USAID program requires careful analysis of remaining funds in the award, as well as negotiation with the implementer regarding

termination expenses.  Costs could include severance payments, penalties for lease cancellations, and payments to subcontractors for work already performed, for example.

12. It is not possible to know these costs with certainty until the programs are closed. Therefore, the "envelope" of funding available for close-out in the Congressional Notification was, if anything, a ceiling representing the available funding for the terminated awards and contracts.  Winding down thousands of terminated awards is unpredictable, and the consequence of reserving too little is an inability to meet obligations that USAID has already incurred.  USAID cannot risk a situation where it lacks necessary appropriations to fund close out.

**All USAID Funds Have Been Apportioned With The Intent To Obligate**

13. OMB uses the "Unallocated" Category B lines in apportionments as a temporary placeholder when allocations are pending further plans to be submitted by Agencies. That is the case with references to "Unallocated" amounts in the report required under Section 653(a) of the Foreign Assistance Act of 1961.  This has been the practice for foreign assistance accounts over many years and across multiple Administrations.

14. An example of this practice under the Biden Administration is the normal apportionment of all Economic Support Funds in FY22 where $4 billion was apportioned in an unallocated line until the Department of State concluded the 653(a) and all pre-obligation requirements were met, including the notification of Congress.

15. Consistent with this approach, on July 29, 2026, OMB approved an apportionment that moved the $1,179,099,000 from "Unallocated" to "All Activities."  These funds will be obligated consistent with the CN and USAID's close-out priorities.  These funds were

always intended for that purpose, and the apportionment has been revised as USAID

prepares to obligate those funds.  Again, as has been the longstanding practice.


*Tricia Schmitt 8/3/2026*
_____

**TRICIA A. SCHMITT**