**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 25-cv-402 (AHA) |
| DONALD J. TRUMP, *et al.*, | |
| *Defendants*. | |

**SUPPLEMENTAL DECLARATION OF JOSEPH CARLILE**

I, Joseph Carlile, hereby declare as follows:

1.      I incorporate my prior declaration (ECF No. 202-2), and my stated qualifications. As before, I address matters of Federal budget execution and the methodology of my analysis. I do not address, and express no opinion on, questions of statutory interpretation or the legality of any action; those are outside the scope of my analysis.

2.      Defendants note that my analysis does not include funding apportioned or allocated for various purposes[1]. This is because my analysis measures obligations. An obligation "means a binding agreement that will result in outlays, immediately or in the future[2]." The SF 133 reports obligational totals on line 2190, "New obligations and upward adjustments (total)." My analysis does not include pre-obligational steps such as allocation or apportionment. An allocation is a distinct, earlier step — the internal attribution of budget authority to a purpose — that does not itself constitute an obligation. The SF 133 contains no corresponding line for such allocations. Similarly, while an apportionment is necessary for an obligation, it is not sufficient. The SF 133

---

[1] Declaration of Kyle Peterson, ECF No. 205-1 ("Peterson Decl.") ¶ 6
[2] OMB Circular A-11, August 2025, page 8 of Section 20, available at: https://www.whitehouse.gov/wp-content/uploads/2025/08/a11.pdf

reports apportioned funds separately, for example line 2201, "Unob Bal: Apportioned: Avail in the current period". To the extent that the government has incurred obligations and recorded them on line 2190 of the June 2026 SF 133, those obligations are included in my analysis.

3.      For example, with respect to the Economic Support Fund, Defendants state "Defendants allocated $1.2 billion to Jordan, $125 million to Egypt, and $155 million to CPIF"[3]. Reconstituting the account across its TAFS as described in paragraph 16 of my prior declaration, the June 2026 SF-133 for the Economic Support Fund 25/26 account (TAFS 72-1037 and 19-72-1037) shows $980,073,597.44 in total obligations on line 2190. Even if all obligations recorded were attributable to these activities, approximately $500 million of the specified $1.48 billion allocation remained unobligated as of the June 2026 SF-133.

4.      Paragraph 38 of my prior declaration stated the total Title III appropriation, excluding Global Health Programs and less rescissions and undesignated emergency amounts, as $11,041,534,000. As Defendants note[4], Sec. 7019(f) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024 (Division F of Public Law 118-47) applies restrictions on using "International Disaster Assistance" and "Migration and Refugee Assistance" funding to meet amounts designated for countries in the Act. For the earmarks in the tables incorporated by Section 7019(a), the earmarks all require using appropriations other than International Disaster Assistance and Migration and Refugee Assistance, and therefore the restriction in Section 7019(f) does not affect any of my calculations relating to these earmarks. Within the directives of Secs. 7030–7061, I reviewed the directives that permit use of any funds appropriated under title III and only use such title III funds to satisfy the directive. Except for

---

[3] Peterson Decl. ¶ 6
[4] Id. ¶ 5

funding related to the Al-Hol Action Plan (Sec. 7041(i)(3), Syria, $25M, "title III of this Act and prior Acts"), none of those directives earmarks title III funds for a specific country.

5.     As part of my review of the general provisions, I realized that I had made an error in paragraph 37 of my prior declaration. In that paragraph I stated: "The total amount of statutory directives in Sections 7030-7061 that require using only Economic Support Fund to meet the directive was $584 million."  During my review of the directives in paragraph 4, I now realize that I missed $13 million for Tibet (Sec. 7043(j)(2), $8M; Sec. 7043(j)(3), $5M). I also realized that I included $2 million for Sri Lanka in both the directives and joint explanatory statement section. The amount for Sri Lanka should appear in the joint explanatory statement section only. These two errors mean that I understated the value of statutory directives for the Economic Support Fund by $11 million. The revised amount is $595 million.

6.     My analysis relies on the published SF-133 reports and the public appropriations statutes cited in my prior declaration, each of which is publicly available. As stated in paragraph 26 of my prior declaration, I also cross-checked the compiled obligation data against USASpending File A. I state these figures as of June 30, 2026, the date of the most recent SF-133 available to me.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 7, 2025

                                             _____
                                                Joseph Carlile