# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*,<br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br>*Defendants*. | Civil Action No. 1:25-cv-402 (AHA) |

**DECLARATION OF KYLE PETERSON**

In accordance with the provisions of 28 U.S.C. § 1746, I, Kyle Peterson, state as follows, under penalty of perjury, pertinent to the above-styled and numbered case:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this declaration. This declaration is based on my personal knowledge and information provided to me in my official capacity by others.

2. I currently serve as the Director of the Office of Foreign Assistance Oversight (FAO) at the Department of State ("State") and am a career member of the Senior Executive Service. In this capacity, under the direction of the Under Secretary of State for Foreign Assistance, Humanitarian Affairs, and Religious Freedom, I oversee FAO's work to provide day-to-day oversight of the Department's foreign assistance budget, policy, and assistance effectiveness efforts, including appropriated foreign assistance resources.

3. Consistent with available authorities, State fully intends to obligate, and is making best efforts to obligate, the remaining FY 2025 foreign assistance funds appropriated under title III and title IV of the appropriations acts that are expiring on September 30, 2026, estimated to be $4.1 billion as of September 23, 2026.

4. This is not unprecedented. We estimate that last fiscal year at this time, approximately $5 billion remained to be obligated in the final 7–10 days of the end of the fiscal year. And before last year, and in other administrations, it was not unusual for billions of dollars in foreign assistance to be obligated within the last 1–2 weeks of the end of the fiscal year. As

outlined below, the steps taken to complete the obligation of funds at the end of the fiscal year typically represent the culmination of months of work to address pre-obligation requirements, complete internal processing, and conduct engagement with foreign governments, interagency partners, and other partners with respect to the planned programs.

5. I understand that in past years, some amount of foreign assistance funding has lapsed for operational or other reasons. (For example, as noted in prior documentation, roughly $20 million in foreign assistance funding expired after September 30, 2025, for operational or other reasons, which was in line with historical experience.)

6. Reserving the possibility that this may occur, as it typically does, for limited amounts from these foreign assistance accounts, State expects to be able to obligate substantially all of the remaining foreign assistance funds before they expire on September 30, 2026. To the best of my knowledge, as of September 25, 2026, there has been no policy decision not to obligate expiring foreign assistance funds.

7. More specifically, State is taking necessary steps and expects to be able to obligate approximately $334,000 in remaining FY 2025 Assistance for Europe, Eurasia and Central Asia (AEECA) funding, approximately $127 million in remaining FY 2025 Development Assistance (DA) funding, approximately $178 million in remaining FY 2025 Democracy Fund (DF) funding, approximately $391 million in remaining FY 2025 Economic Support Fund (ESF) funding, approximately $954 million in remaining FY 2025 Global Health Programs (GHP) funding, approximately $904 million in remaining FY 2025 International Narcotics and Law Enforcement (INCLE) funding, and approximately $189 million in remaining FY 2025 Nonproliferation, Antiterrorism, Demining and Related Programs (NADR) funding that expires on September 30, 2026. All estimates are as of September 23, 2026.

8. These are the accounts for which specific information was requested in the Minute Order of September 23, 2026. If the expiring FY 2025 IMET and FMF unobligated balances are included, which were not specified in the order, the total is the $4.1 billion figure referenced in paragraph 3.

9. These estimates do not include FY 2025 DA and GHP funding that USAID is obligating for closeout of terminated awards and related costs. It is my understanding that USAID is providing a separate declaration with respect to these funds in response to the Court's order.

10. These estimates also do not include $725 million in FY 2025 AEECA, ESF, and INCLE funds appropriated that are not available for obligation because they were not designated

by the President as being for an emergency requirement. In particular, these funds are designated by Congress in the FY 2024 appropriations act, as carried forward by the Full-Year Continuing Appropriations Act, 2025 (Division A of Public Law 119-4), as being for an emergency requirement pursuant to section 251(b)(2)(A)(i) of the Balanced Budget and Emergency Deficit Control Act of 1985. Under section 6 of the FCAA, "[e]ach amount designated in this Act by the Congress as an emergency requirement pursuant to section 251(b)(2)(A)(i) of the Balanced Budget and Emergency Deficit Control Act of 1985 shall be available (or repurposed, rescinded, or transferred, if applicable) only if the President subsequently so designates all such amounts and transmits such designations to the Congress." Because the President did not subsequently designate these FY 2025 funds made available under the FY 2025 full-year continuing resolution, they are not available for obligation.

11. Following agency approval of proposed obligations, an important step before many of the expiring funds may be obligated is for the agencies to notify and/or consult with committees in Congress 15 days before the obligation of funds for certain purposes, consistent with applicable statutory requirements. *See, e.g.,* 22 U.S.C. § 2394-1(a) (Foreign Assistance Act of 1961, § 634A(a); FCAA § 7015(c), as carried forward by the Full-Year Continuing Appropriations Act, 2025 (P.L. 119-4). Such notifications are part of the deliberative process between Congress and the Executive Branch concerning foreign assistance funding. To the best of my knowledge, as of September 24, 2026, the Department has notified Congress of its plans to timely obligate all foreign assistance funds expiring on September 30, 2026, that are subject to such requirements. The Department has been actively engaging with Congress on CNs over the last several weeks. In some cases, the congressional notification requirement was met just within the last few days. In other cases, the 15-day notification period has not lapsed as of September 25, 2026, but the requirement will be met within the coming days to allow for obligation of the funds prior to their expiration. We estimate approximately $2 billion of the expiring unobligated FY 2025 funding is in this category.

12. State has taken several operational and preparatory steps to facilitate the obligation of the remaining funds prior to their expiration. This includes expediting foreign assistance funds approval; preparing and submitting apportionment requests to OMB, which OMB has been approving; approving allotments and pre-positioning these funds in State's financial systems so they are ready for obligation; negotiating with foreign states, interagency partners, international organizations, and other awardees; and preparing obligating documents and agreements.

13. Reflecting the Department's ongoing efforts to obligate expiring funds on a daily — often hourly — basis, as of September 23, 2026, there were approximately $650 million in commitments of expiring FY 2025 funds reflected in State's financial system, which is the

final step before legal obligation. FAO is in regular touch with colleagues throughout the Department (both in Washington, DC and overseas), and at OMB, to advance timely obligation actions.

Kyle Peterson 9/25/26

**KYLE PETERSON**