**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*,<br>*Plaintiffs*,<br>v.<br>DONALD J. TRUMP, *et al.*,<br>*Defendants*. | Civil Action No. 25-00402 (AHA) |

**Order**

This matter is before the court on the parties' cross-motions for partial summary judgment, after the parties worked diligently to assemble a partial administrative record that would allow the court to adjudicate some of Plaintiffs' claims—most relevant here, Administrative Procedure Act claims asserting Defendants decided to not spend foreign aid appropriations by September 30, 2026, in the amounts and for the purposes Congress specified. In the final days before that spending deadline, Defendants filed status reports supported by sworn declarations apprising the court of new actions—following assembly of the administrative record—that they have taken or will take and that are likely to impact the parties' pending motions. *See, e.g.*, ECF No. 219-2 ¶¶ 8, 10 (attesting USAID has since completed its obligation of $1.17 billion in development assistance and $1.35 billion in global health programs appropriations). The updates include that Defendants plan to obligate all the foreign aid appropriations at issue, including large amounts remaining, in the final days before the deadline. *See* ECF No. 219-1 ¶¶ 3, 7–8 (attesting the State Department fully intends to obligate an additional $2.7 billion in foreign aid funds); ECF No. 222-1 ¶ 4 (attesting the State Department obligated an additional $1.2 billion in just the few days between

status reports). Plaintiffs also filed a responsive status report acknowledging Defendants' actions may impact and potentially narrow their arguments. ECF No. 221 at 1 (stating Defendants' status report "fails to answer (or raises) several critical factual questions that bear directly on issues pending before the Court").

At a status conference two days before the spending deadline, the parties likewise described ways that the arguments in their pending motions would be impacted—and may be narrowed—by Defendants actions since the partial administrative record was prepared. *See* Draft Hr'g Tr. at 25 (Sep. 28, 2026) (Plaintiffs acknowledging the actions described by Defendants may mean some issues before the court "are basically taken care of"); *see also, e.g.*, *id.* at 17–19, 25–27, 35–40, 43–45. The parties also informed the court that the partial administrative record does not contain documents likely to be material to the court's analysis and discussed potential supplementation of the record needed to adjudicate Plaintiffs' claims, given more recent events. *See id*. at 45–46, 54–55, 58–59.

Defendants proposed that they be given the opportunity to provide information relevant to whether they complied with the relevant foreign aid appropriations laws through a series of status reports supported by sworn declarations on October 2, 7, and 20, 2026. *Id*. at 18, 20. Defendants represented there would be no prejudice to any party from this approach because binding authority allows the court to hold open the period of availability for the appropriated funds beyond September 30, 2026. *Id*. at 19–21. Defendants also represented that, because USAID and the State Department have initially obligated funds or will do so before the spending deadline, all the funds at issue will be available for re-obligation for four years under the terms of the appropriations laws. *Id*. at 10, 15–16; *see* Department of State, Foreign Operations, and Related Programs Appropriations Act, 2024, Pub. L. No. 118-47, § 7011, 138 Stat. 729, 763–64; Full-Year

Continuing Appropriations and Extensions Act, 2025, Pub. L. No. 119-4, §§ 1101–1102, 139 Stat. 9, 10–12. Plaintiffs agreed the proposed status reports would speak to multiple legal arguments raised in the parties' summary judgment briefing. Draft Hr'g Tr. at 25–27.

Based on the parties' representations in the status reports and at the conference, the court adopts Defendants' proposal to submit these additional status reports. The court also exercises its statutory and equitable authority to suspend otherwise applicable September 30, 2026, lapses of budget authority pending resolution of Plaintiffs' claims in this case or further order of the court. *See* 31 U.S.C. § 1502(b) ("A provision of law requiring that the balance of an appropriation or fund be returned to the general fund of the Treasury at the end of a definite period does not affect the status of lawsuits or rights of action involving the right to an amount payable from the balance."). As the D.C. Circuit has recognized, in section 1502(b), Congress "expressly authorized courts to suspend the lapse of budget authority while lawsuits play out." *Goodluck v. Biden*, 104 F.4th 920, 928 (D.C. Cir. 2024); *see also Rochester Pure Waters Dist. v. EPA*, 960 F.2d 180, 184 (D.C. Cir. 1992) (explaining that "budget authority" generally refers to "authority granted by Congress to commit or expend funds").

As Defendants acknowledged at the conference, binding circuit precedent also recognizes courts' equitable authority to suspend the deadline. Draft Hr'g Tr. at 18–19. This court has already held this case fits neatly within that longstanding line of authority, recognized in cases like *West Virginia Ass'n of Community Health Centers, Inc. v. Heckler*, 734 F.2d 1570, 1576–77 (D.C. Cir. 1984); *City of Houston v. Department of Housing & Urban Development*, 24 F.3d 1421, 1426–27 (D.C. Cir. 1994); and *Shawnee Tribe v. Mnuchin*, 984 F.3d 94, 98–99 (D.C. Cir. 2021). *See Glob. Health Council v. Trump*, No. 25-cv-00402, 2026 WL 2884272, at *6–7 (Sep. 25, 2026). These cases explain that "[t]he equity powers of the courts allow them to take action to preserve the status

quo of a dispute and protect their ability to decide a case properly before them." *City of Houston*, 24 F.3d at 1426 (quoting *Nat'l Ass'n of Reg'l Councils v. Costle*, 564 F.2d 583, 588 (D.C. Cir. 1977)). "In such situations, the courts simply suspend the operation of a lapse provision and extend the term of already existing budget authority." *Id.*

Here, the court finds it appropriate and necessary to suspend the impact of lapses in budget authority related to this case to give the parties the opportunity to prepare a complete administrative record that will enable the court to rule on the pending motions based on the full picture of what actually happened. *See Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) ("If a court is to review an agency's action fairly, it should have before it neither more nor less information than did the agency when it made its decision."). In addition to allowing the court to resolve the issues presented based on an accurate record, having the complete administrative record may aid the court in determining any appropriate relief—as Defendants indicated at the status conference, the court's authority to hold open the availability of appropriated funds is one way to give the government the opportunity to provide the proposed status reports without harm to any party's interests. Draft Hr'g Tr. at 19. The court further finds it appropriate and necessary to preserve the status quo and protect the court's ability to adjudicate the claims before it. *See City of Houston*, 24 F.3d at 1426. Indeed, Defendants have taken the position in this case that, once a spending deadline passes, claims challenging compliance with the relevant appropriations laws become moot. *See* ECF No. 201 at 20–22; ECF No. 205 at 31–32; *see also Glob. Health*, 2026 WL 2884272, at *4–7. Although the court suspends the lapses in budget authority to allow completion of the record and preserve its ability to resolve the rights of action in this case, 31 U.S.C. § 1502(b), the court makes clear it does not order any changes to Defendants' past or planned obligations of the funds at issue before September 30, 2026 and, to the contrary, expects

Defendants will proceed in a manner consistent with their sworn declarations and representations to the court.

For these reasons, the court orders:

- Defendants shall file status reports supported by sworn declarations on October 2, 2026; October 7, 2026; and October 20, 2026, providing the information described in the court's September 22, 2026, minute order based on all information available to Defendants by the date of filing.

- All September 30, 2026, statutory lapses for appropriations at issue in this matter are suspended pending resolution of Plaintiffs' claims or further order of the court.

- By October 9, 2026, the parties shall meet, confer, and file a joint status report proposing a timeline and scope for supplementation of the administrative record, consistent with the parties' status reports and discussion at the conference.

AMIR H. ALI
United States District Judge

Date: September 30, 2026