**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GLOBAL HEALTH COUNCIL, *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Civil Action No. 25-cv-402 (AHA)

**JOINT STATUS REPORT**

Pursuant to the Court's September 25, 2026 memorandum opinion and order, Dkt. No. 219, and the Court's September 30, 2026 order, Dkt. No. 223, the parties submit this joint status report proposing (i) a timeline for completion of the administrative record for the APA claims that are moving forward and (ii) a timeline and scope for supplementation of the administrative record relevant to the parties' pending cross-motions for summary judgment.

**Joint Statement:**

The parties jointly propose that the remainder of this matter proceed by staggering resolution of the pending motion for partial summary judgment and resolution of Plaintiffs' remaining claims not included in that motion.

First, the parties jointly propose the following schedule for resolving the pending motion for partial summary judgment:

- November 9, 2026: Defendants supplement the administrative record
- November 19, 2026: The parties submit supplemental briefs. Briefs shall be limited to a maximum of 10 pages.
- December 2, 2026: The parties submit responses, if any, to the supplemental briefs.

Responses shall be limited to a maximum of 5 pages.

Second, the parties jointly propose the following schedule for resolving the non-dismissed claims in the third amended complaint not at issue in Plaintiffs' pending summary judgment motion:

- December 23, 2026: Defendants produce administrative record
- January 25, 2027, Plaintiffs file motion for summary judgment
- February 24, 2027: Defendants file opposition and cross-motion
- March 10, 2027: Plaintiffs file combined reply and opposition to cross-motion
- March 24, 2027: Defendants file reply on cross-motion

**<u>Plaintiffs' Statement:</u>**

Plaintiffs submit that the supplemental administrative record on Plaintiffs' claims at issue in the pending motion for partial summary judgment should include all documents and materials not previously produced that were directly or indirectly considered by agency decisionmakers as relevant to the challenged agency actions (including as relevant to the alleged closeout scheme and the allocation of rescinded funds to disfavored directives), including at a minimum, the following:

- Documents reflecting or describing the actions taken by USAID to obligate Global Health Programs (GHP) and Development Assistance (DA) FY 2025 funds for "closeout activities," as described in paragraphs 7–11 of the Declaration Tricia A. Schmitt, Dkt. No. 219-2, and as discussed at the September 28, 2026 status conference. The documents, which may include declarations, should include information sufficient to show and explain:
    - The reasons Defendants determined that more than $19 billion needed to be reserved for paying closeout costs, including data showing how much money terminated awardees had requested in aggregate for not-yet-closed-out awards, and the aggregate amount currently left in undisbursed amounts on the terminated awards, as of the April 2026 Congressional Notification and at other relevant times thereafter when USAID obligated the funds to preserve them for use for closeouts;

    - How and why the GHP and DA funds expiring this year were selected or reserved for paying for closeout activities, why Defendants chose to reserve the amounts that they did ($1.353 billion in GHP funds and $1.179 billion in DA funds), and any analysis of whether using those funds for closeout would comply with the specific purposes and amounts required by Congress, including Section 7019(a) and Sections 7030–61;

    - Whether the remaining GHP and DA funds are being "used directly to close out GHP and DA awards," as discussed at the September 28 hearing, *see* Tr. 8:16–25;

    - Details on the purposes for which the funds are being obligated, including, as described by Defendants at the September 28 hearing: the "five programmatic categories used for closeouts: [1] programmatic closeouts,. . . including audits, . . . adjustments, payments of vouchers, and termination of settlements; [2] personnel related closeouts, so severance funds, lump sum payouts to personnel who were terminated; [3] operations during closeout, so fund payments to USAID partners, . . . ; [4] services and support related to the operation of USAID during the closeout period; [and 5] litigation settlement." Tr. 9:22–10:7.

        - For each of these purposes and sub-purposes, the administrative record should: contain more details on the nature of each; the vehicle(s) or mechanism(s) through which the funds were obligated; how much money Defendants have obligated to each; and how much Defendants anticipate obligating to each and under what timeline.

    - Whether and to what extent the funds are being used to pay closeout costs for awards that were funded with prior years' appropriations, *see* Tr. 41:19–42:3,

    - Whether any such funds are being used for a "central audit mechanism" for closing out USAID and, if so, the amount that has been obligated for that purpose, *see* Schmitt Decl. ¶ 9, Dkt. No. 205-2

- Documents not already produced, if any, that were directly or indirectly considered by State, USAID, or OMB in allocating rescinded funds from the 2025 Rescissions Act onto specific accounts, line items, and directives. At a minimum, Defendants should confirm via a declaration that the final allocations of the rescinded funds to directives match those presented in the 653(a) report already in the administrative record.

Defendants argue below that the supplemental administrative record should be limited only to materials related to "closeout activities," but there is no reason to limit the supplemental record in that manner. The APA requires courts to review the "whole record," *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971), and to the extent there are other, not-yet-produced documents that were directly or indirectly considered by agency

decisionmakers as to any of the challenged actions at issue in the parties' pending cross-motions, those documents should be included in the supplemental record. The statements cited by Defendants below from the September 28 status conference do not suggest that the Court intended to limit the supplemental record only to Plaintiffs' pending claim related to closeout activities; nor would there be any reason to limit the supplemental record in that manner to the extent there are other not-yet-produced documents that would otherwise be part of the administrative record relevant to Plaintiffs' other claims.

**<u>Defendants' Statement:</u>**

As discussed (at length) in the September 28, 2026 status conference, the supplemental AR shall be limited to producing materials, if any, related to "closeout activities," as described in paragraphs 7–11 of the Declaration of Tricia A. Schmitt, Dkt. No. 219-2. Plaintiffs' attempt to broaden the scope of the AR beyond supplementation on closeout activities is inconsistent with the status conference directives and thus inappropriate. The discussion at the status conference makes clear that the supplemental AR is to be limited to the closeout cost issue and not to any other issues, such as the allocation of rescinded funds from the 2025 Rescissions Act. *See, e.g.,* Tr. 58:5-11 ("But there was an argument there about the closeout argument being a -- the way the plaintiffs were saying you're now implementing the decision not to spend money. And I think that the defendants responded that the complaint itself didn't mention closeouts, and so we would have put that – I think there was a reference to we would have put that in the administrative record. So it would actually be helpful to have clarification on that.").

And Plaintiffs' counsel recognized and acknowledged this limitation at the status conference. *See* Tr. 50:14-17 ("I think getting a supplemental administrative record on the closeouts, you know, is something that certainly sounds like it makes sense to Your Honor, so

that means it makes sense to us."); Tr. 63:16-18 ("I do think a supplement to the administrative record on the closeout would be very helpful here.").

As for Plaintiffs' claim that "there is no reason to limit the supplemental record" to closeout materials: the reason, among others, is that this was the only item contemplated at the status conference for supplementation of an otherwise closed record. At no point during that conference did the Court entertain reopening the entire AR so that Plaintiffs can obtain records to which they are not entitled.

Defendants thus respectfully request that the Court limit production of a supplemental AR to **closeout cost materials only**, as was understood in the status conference.

Dated: October 14, 2026

Respectfully submitted,

*/s/ Daniel F. Jacobson*
Daniel F. Jacobson (D.C. Bar 1016621)
Stephen K. Wirth (D.C. Bar 1034038)
John Robinson (D.C. Bar 1044072)
Brian C. Rosen-Shaud (D.C. Bar 90042065)
Nina C. Cahill (D.C. Bar 1735989)
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave, Suite 301
Washington, DC 20016
Tel: (301) 823-1148
dan@jacobsonlawyersgroup.com

*Counsel for Plaintiffs*

BRETT A. SHUMATE
Assistant Attorney General
Civil Division

ERIC J. HAMILTON
Deputy Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Federal Programs Branch

*/s/ Joshua N. Schopf*
JOSHUA N. SCHOPF
PIERCE J. ANON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-6304
Email: joshua.n.schopf@usdoj.gov

*Counsel for Defendants*