**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| GLOBAL HEALTH COUNCIL, *et al.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>*Defendants*. | Civil Action No. 25-cv-402 (AHA) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPLETE AND SUPPLEMENT THE ADMINISTRATIVE RECORD**

# TABLE OF CONTENTS


INTRODUCTION ... 1

BACKGROUND ... 2

LEGAL STANDARD ... 8

ARGUMENT ... 10

I. Defendants Should Complete or Supplement the AR for Five Categories of Records ... 10

A. Tabs 1 and 2 to September 15, 2026 Memorandum to Ueland ... 10

B. Miscellaneous Obligation documents ... 11

C. Documents reflecting the selection of GHP and DA funds for close-out activities ... 12

D. Records reflecting the uses of GHP and DA funds, including whether they are being used for GHP and DA purposes ... 13

E. Records relevant to allocation of rescinded funds ... 15

II. Defendants Can Enjoy No Presumption That the Record Is Complete ... 16

CONCLUSION ... 18

## INTRODUCTION

Defendants have again failed to compile the administrative record as required by the Court. The Court directed Defendants to include in the supplemental administrative record relevant documents as described in bullet points that Plaintiffs included in a joint status report, but Defendants have openly refused, claiming the Court did not mean what it said. The Court ordered Defendants to include records relevant to all of Plaintiffs' claims regarding funds that were set to expire in September 2026, rejecting Defendants' request to limit the supplemental record to documents about close-out activities. Yet Defendants have limited the record in precisely that manner anyway.

The result is an administrative record that is patently deficient on its face. The record shows that Defendants obligated FY2025 Global Health Programs (GHP) and Development Assistance (DA) funds for close-out activities through five "Miscellaneous Obligations," each of which covers different types of costs. But the record does not contain the five actual obligating documents showing the details of how the FY2025 GHP and DA funds are being used. The record contains a decision memo for the USAID administrator to authorize obligating billions in FY2025 GHP and DA funds for close-out activities, with the details set out in attachments, but Defendants do not include the attachments. The record contains zero documents explaining how and why FY2025 GHP and DA were selected for various close-out activities, including activities having nothing to do with terminated awards such as "IT and financial systems." Nor does the record contain any substantiation of Defendants' claims that FY2025 GHP and DA funds are being used to close-out only GHP and DA awards. The record strongly suggests that is not true, but Defendants are withholding the documents that would answer this question. And Defendants

have included nothing about the allocation of rescinded funds, despite the Court expressly ordering Defendants to include such materials.

When Plaintiffs attempted to meet and confer with Defendants about these issues, Defendants' counsel said they categorically would not engage on any "substance," stating that they would not discuss why materials were not included (or whether they even exist) unless it is at a hearing with the Court. For purposes of this motion, Defendants have asked Plaintiffs to include the following statement on their position:

> Defendants oppose Plaintiffs' motion because the dispute turns on the proper interpretation of the Court's October 22 Minute Order, which Defendants contend required supplementation only with materials considered by agency decisionmakers and relevant to Plaintiffs' claims, including records concerning closeout activities and the allocation of rescinded funds. Defendants maintain they have fully complied with that Order by producing all such materials, and that Plaintiffs' additional requests seek discovery outside the scope of the administrative record, including interrogatory-like demands and documents that were never considered by agency decisionmakers or do not exist. Because Defendants believe they have satisfied their obligations under the Court's Order, but recognize that Plaintiffs seek a broader interpretation, Defendants respectfully request a hearing or status conference at the Court's earliest convenience should the Court wish to further consider the motion.

Plaintiffs have no objection to a hearing or status conference if it would aid the Court's resolution of these issues, but respectfully request expedited resolution of this motion given that Plaintiffs' renewed motion for partial summary judgment is currently due on November 19.

## BACKGROUND

After the September 28, 2026 status conference, the Court directed the parties to meet and confer and file a joint status report proposing a timeline and scope for supplementation of the administrative record. Order at 5, ECF No. 223.

The parties then submitted a joint status report in which Plaintiffs explained in bullet points the types of information and records that should be included in the supplemental administrative record as relevant to Plaintiffs' claims regarding the close-out scheme and the

allocation of funds rescinded in the 2025 Rescissions Act. On the former, Plaintiffs explained that the record should include "[d]ocuments reflecting or describing the actions taken by USAID to obligate Global Health Programs (GHP) and Development Assistance (DA) FY 2025 funds for 'closeout activities,' as described in paragraphs 7–11 of the Declaration Tricia A. Schmitt, Dkt. No. 219-2, and as discussed at the September 28, 2026 status conference." ECF No. 228 at 2. Plaintiffs then specified in sub-bullet points examples of such information regarding the close-out scheme that should be included, such as:

- How and why the GHP and DA funds expiring this year were selected or reserved for paying for closeout activities, why Defendants chose to reserve the amounts that they did ($1.353 billion in GHP funds and $1.179 billion in DA funds), and any analysis of whether using those funds for closeout would comply with the specific purposes and amounts required by Congress, including Section 7019(a) and Sections 7030–61;

- Whether the remaining GHP and DA funds are being "used directly to close out GHP and DA awards," as discussed at the September 28 hearing, *see* Tr. 8:16–25;

- Details on the purposes for which the funds are being obligated, including, as described by Defendants at the September 28 hearing: the "five programmatic categories used for closeouts: [1] programmatic closeouts,. . . including audits, . . . adjustments, payments of vouchers, and termination of settlements; [2] personnel related closeouts, so severance funds, lump sum payouts to personnel who were terminated; [3] operations during closeout, so fund payments to USAID partners, . . . ; [4] services and support related to the operation of USAID during the closeout period; [and 5] litigation settlement." Tr. 9:22–10:7.

- For each of these purposes and sub-purposes, the administrative record should: contain more details on the nature of each; the vehicle(s) or mechanism(s) through which the funds were obligated; how much money Defendants have obligated to each; and how much Defendants anticipate obligating to each and under what timeline.

- Whether and to what extent the funds are being used to pay closeout costs for awards that were funded with prior years' appropriations, *see* Tr. 41:19–42:3[.]

ECF No. 228 at 2–3. Regarding the allocation of rescinded funds, Plaintiffs specified that the record should include "[d]ocuments not already produced, if any, that were directly or indirectly considered by State, USAID, or OMB in allocating rescinded funds from the 2025 Rescissions

Act onto specific accounts, line items, and directives," and that "[a]t a minimum, Defendants should confirm via a declaration that the final allocations of the rescinded funds to directives match those presented in the 653(a) report already in the administrative record." *Id.* at 3.

Defendants opposed Plaintiffs' request that the supplemental record include all of these documents and materials. Defendants argued that the Court should "limit the production of a supplemental AR to closeout cost materials only." *Id.* at 5.

On October 22, the Court issued a minute order agreeing with Plaintiffs' request. The Court ordered that the supplemental administrative record "shall include all documents and materials not already produced that were considered by agency decisionmakers as relevant to the challenged agency actions, including materials related to 'closeout activities' and the allocation of funds rescinded by the Rescissions Act of 2025, *as described in the bullet points on ECF No. 228 at 2-3*." 10/22/2026 Minute Order (emphasis added).

Defendants produced the supplemental administrative record on November 9. The supplemental record contains seven documents, totaling only 36 pages. *See* Ex. 1, A.R. 3994–4029. Two of those pages are a new declaration from Tricia A. Schmitt, a senior OMB official now described as having "oversight of foreign assistance managed by the United States Agency for International Development and the Department of State." A.R. 3994. There is no declaration from anyone at USAID or the State Department certifying the supplemental administrative record. Schmitt herself does not certify that the production represents the complete administrative record for the relevant agency actions. The closest the declaration comes is a statement that "[t]he materials provided in this supplemental administrative record were considered by decision makers in obligating the at-issue Global Health Programs (GHP) and Development Assistance (DA) funds for closeout activities." *Id.* Even that statement speaks only

to the closeout scheme, does not attest that these are *all* of the documents considered in obligating GHP and DA funds for closeout activities, and does not attest that the administrative record contains records relevant to the allocation of rescinded funds to the table and bill directives. There are no such records included in the supplemental record.

On the closeout scheme, the supplemental administrative record contains five memoranda dated October 16, 2025, July 6, 2026, July 16, 2026, September 14, 2026, and September 15, 2026, respectively. None of these memos were included in Defendants' prior administrative record, even though the first three were issued and approved before Defendants completed production of the record in July 2026.

The October 16, 2025 memorandum was from USAID's Senior Procurement Executive, it described how USAID estimated that the upper bound of costs of closing out awards and personal services contracts was $19.5 billion, which was the figure presented in the April 2026 Congressional Notification. A.R. 4018–4020. USAID was "certain that this [$19.5 billion] figure will only decrease as the termination process continues," and was "highly confident that the actual amount will be substantially less." A.R. 4018. The memo does not estimate costs for closing out GHP and DA awards specifically, and it provides no indication that there would be a shortfall in meeting potential liabilities for GHP and DA awards, and only those awards.

The July 6, 2026 memorandum was from James Hope, USAID's "Chief Termination Officer," to Eric Ueland, performing the duties of the USAID administrator. The memo sought Ueland's authorization to enter miscellaneous obligations ("MOs") to preserve appropriations before they expired on September 30, 2026, so that USAID could use the funds for various close-out activities after that date. A.R. 4013–4016. The memo explained that USAID would need to issue an "obligating document" for each MO, and that "[w]hen preparing the obligating

document . . . , USAID needs to provide as much detail as possible, including a list of awards that will be funded with the obligation, if possible." A.R. 4014. Ueland approved the plan on July 22, 2026. A.R. 4013.

On July 16, 2026, Hope sent a memorandum to Jeremy Lewin at the State Department requesting that Lewin approve three tranches of funding for agency closeout activities. A.R. 3996–4000. For all three tranches, USAID sought approval to use tens of millions of dollars in FY2025 GHP and DA money for close-out activities that did not include close-out costs of terminated awards. Rather, the costs related to "IT and financial systems necessary to continue closeout work," "separated personnel," "Institutional Support Contracts," "pre-termination program vouchers," "Personal Services Contracts," and "closeout audits." A.R. 3996. Lewin approved this spending of GHP and DA funds on July 19, 2026. *See* A.R. 4027.

On September 14, 2026, Hope submitted a new approval memorandum to Ueland, seeking authorization to enter five MOs that would obligate FY2025 GHP funds, FY2025 DA funds, and other prior-year funds. A.R. 4008–4012. The memo, which Ueland approved on September 17, 2026, described the five MOs as follows:

1. **Programmatic closeout (MO 1):** "Activities include, but are not limited to, costs of audits, Negotiated Indirect Cost Rate Agreement (NICRA) adjustments, payment of vouchers, and termination settlements." A.R. 4008. For MO 1, Ueland approved obligating approximately $880.7 million in FY2025 DA funds, $1.262 billion in FY2025 GHP funds, and $109.7 million in prior-year funds. A.R. 4010.
2. **Personnel-related closeout (MO 2):** "Activities include, but are not limited to, severance, lump-sum payouts, and account reconciliation for U.S. Direct Hire and contract personnel and staff of USAID." A.R. 4009. For MO 2, Ueland approved

obligating up to $1.65 million in FY2025 DA funds and $610,000 in FY2025 GHP funds. A.R. 4010.

3. **Operations during closeout (MO 3):** "Activities include, but are not limited to, payments to USAID partners for systems, services, and support related to the operations of USAID during the closeout period." A.R. 4009. Ueland approved obligating up to $205.6 million in FY2025 DA funds and $86.4 million in FY2025 GHP funds for this MO. A.R. 4010.
4. **Litigation and settlement (MO 4):** "Activities include, but are not limited to, settlement, litigation, and related payments to USAID partners and/or personnel." A.R. 4009. Ueland approved obligating up to $75.75 million in FY2025 DA funds for these activities. A.R. 4010.
5. **Foreign Service National closeout (MO 5):** "Activities include, but are not limited to, account reconciliation actions tied to or outstanding settlements, ongoing benefits payments (if not covered by the Foreign Service National Separation Liability Trust Fund), lump-sum payments, and severance for Foreign Service National (FSN) staff." A.R. 4009. For this final MO, Ueland approved obligating up to $15.4 million in FY2025 DA funds, $3.9 million in FY2025 GHP funds, and $142,263 in prior-year funds. A.R. 4010.

On September 15, 2026, Hope emailed Ueland a different memorandum, in Ueland's capacity as having been delegated approval by the Secretary of State "to approve funding for USAID closeout." A.R. 4027. The memo sought Ueland's approval to obligate $3.129 billion in funds, including FY2025 GHP and DA funds, for close-out activities. *Id.* The memo specified that "[t]he details of the funds' purpose and allocation is included in the cleared memos in Tab

1." *Id.* Tab 1 contains three memos that Ueland cleared on June 30, July 27, and August 12, 2026. Neither Tab 1 nor any of the three memos appears to be in the supplemental administrative record, even though Ueland approved the September 15 memo on September 18. *See* A.R. 4028.

On November 12, Plaintiffs sought to meet and confer with Defendants regarding deficiencies in the supplemental administrative record. Other than reiterating their unsubstantiated assertion that FY2025 DA and GHP funds would be used only to close out DA and GHP awards, Defendants' counsel said that they categorically would not engage on "substance" with Plaintiffs about the record. They would not answer any questions on whether certain records existed or were searched for, saying instead that Plaintiffs should not second-guess the (non-existent) certification from agency officials that the record is complete.

## LEGAL STANDARD

Under the APA, review of agency action must "be based on the full administrative record that was before the [agency] at the time [it] made [its] decision." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971). Defendants "bear the responsibility of compiling the administrative record, which must include all of the information that the agency considered 'either directly or indirectly.'" *Univ. of Colo. Mem'l Hosp. v. Burwell*, 151 F. Supp. 3d 1, 12 (D.D.C. 2015) (quoting *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010)). In compiling the administrative record, the agency "may not skew the record by excluding unfavorable information." *City of Duluth v. Jewell*, 968 F. Supp. 2d 281, 287 (D.D.C. 2013) (quotation omitted). Nor may the agency "exclude information from the record simply because it did not 'rely' on the excluded information in its final decision." *Id.* (quotation omitted).

"There are two situations in which a plaintiff may seek to add evidence or documents to the administrative record." *Oceana, Inc. v. Ross*, 290 F. Supp. 3d 73, 77 (D.D.C. 2018). First, a

plaintiff may move to *complete* the administrative record to "include evidence that should have been properly a part of the administrative record but was excluded by the agency." *Id.* (quotation omitted). To prevail on such a motion, the plaintiff "must only 'put forth concrete evidence' and 'identify reasonable, non-speculative grounds for [its] belief that the documents were considered by the agency and not included in the record.'" *Id.* at 78–79 (quoting *Charleston Area Med. Ctr. v. Burwell*, 216 F. Supp. 3d 18, 23 (D.D.C. 2016)).

Second, a plaintiff may move to *supplement* the administrative record to include materials that were not considered by the agency decisionmakers but "nonetheless should be included in the record." *Id.* (quotation omitted). A plaintiff may seek to supplement the record under three circumstances: "(1) if the agency deliberately or negligently excluded documents that may have been adverse to its decision, (2) if background information is needed to determine whether the agency considered all the relevant factors, or (3) if the agency failed to explain administrative review so as to frustrate judicial review." *Id.* (citation modified) (quoting *City of Dania Beach v. FAA*, 628 F.3d 581, 590 (D.C. Cir. 2010)).

Courts have also recognized that supplementation of the administrative record is appropriate in cases, like here, where plaintiffs allege agency actions unlawfully withheld and unreasonably delayed under 5 U.S.C. § 706(1). "[W]hen it comes to agency inaction under 5 U.S.C. § 706(1), review is not limited to the record as it existed at any single point in time." *Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (quotations omitted); *accord, e.g.*, *Cherokee Nation v. U.S. Dep't of the Interior*, 531 F. Supp. 3d 87, 97 (D.D.C. 2021); *Democracy Forward Found. v. Pompeo*, 474 F. Supp. 3d 138, 148–49 (D.D.C. 2020).

Plaintiffs move both to complete and supplement the administrative record.

## ARGUMENT

### I. Defendants Should Complete or Supplement the AR for Five Categories of Records

Plaintiffs seek to complete or supplement the administrative record with five categories of records that go to the core of Plaintiffs' claims regarding the funds that were originally set to expire on September 30, 2026.

These five categories are either identical to or closely track the records that Plaintiffs specified should be included in the administrative record in the bullet points at ECF No. 228 at 2–3. This Court has already ordered Defendants to produce the records "as described in the bullet points on ECF No. 228 at 2–3," 10/22/26 Minute Order, and Defendants' unwillingness to produce these records contravenes this Court's order. That alone provides sufficient basis to grant this motion and order Defendants to produce these records.

Even if the Court were to assess the five categories *de novo*, completion or supplementation of the record is plainly warranted with respect to these materials.

#### A. Tabs 1 and 2 to September 15, 2026 Memorandum to Ueland[1]

The September 15, 2026 memorandum from USAID's Chief Termination Officer (James Hope) to Eric Ueland had two tabs that Defendants did not include in the administrative record—even though Defendants included the tabs to the other memoranda in the record.

Tab 1 has three memos from the summer of 2026 that set forth "[t]he details of the [] purpose and allocation" of FY2025 GHP and DA funds for close-out activities. A.R. 4027. Hope specifically sought approval to use the funds for the purposes and in the allocations "as described in the memos in Tab 1 for USAID closeout." A.R. 4028. Ueland granted that approval. Because

[1] Plaintiffs did not raise the failure to include these materials at the parties' November 13 meet and confer because Plaintiffs had not yet noticed that these tabs were not included. Plaintiffs have since raised the issue to Defendants but have not yet received a response.

the decisionmaker (Ueland) directly considered the memos in Tab 1, they must be part of the administrative record.

Tab 2 contains the Secretary of State's delegation of "authority to approve funding for USAID closeout to the official performing the duties of the USAID administrator." A.R. 4027. The attachments to the September 15 memo were also directly or indirectly considered by Ueland and must be added to the administrative record.

**B. Miscellaneous Obligation documents**

As described, Defendants are effectuating the close-out scheme through five "Miscellaneous Obligations," pursuant to which USAID has obligated expiring FY2025 GHP and DA funds, as well as other expiring funds, in an internal bookkeeping transaction so that the funds would not expire and may be later put toward closing out USAID. *See* A.R. 4008-4010. Only one of the five MOs is for closing out terminated awards; the other four fund general operations during closeout, government personnel costs, litigation and settlements, and terminated Foreign Service National staff. The record reflects that USAID obligated expiring GHP and/or DA funds for all five MOs, not just closing out terminated grants and contracts.

USAID executed a separate "obligating document" for each MO, which USAID wrote "needs to provide as much detail as possible, including a list of awards that will be funded with the obligation, if possible." A.R. 4014. Defendants have not included these MO obligating documents in the administrative record, on the basis that they were not "considered" by the relevant decisionmaker. But these records contain the details of *the decision itself*, showing the purposes and potentially specific awards for which USAID is obligating expiring GHP and DA funds for close-out activities. That is central to several of Plaintiffs' claims. Indeed, this Court previously ordered that the administrative record should contain key documents that obligated

funds (*i.e.*, the interagency agreements that obligated funds set to expire on September 30, 2025). *See* 7/3/2026 Minute Order. The MO obligating documents are even more directly reflective of the challenged actions (and inaction).

Whether under the rubric of completing the administrative record or supplementing it, Defendants cannot be permitted to hide the key details of the obligation decisions at issue. *See, e.g.*, *Authors Guild v. NEH,* No. 25-cv-3657, 2025 WL 3678097, at *7 (S.D.N.Y. Dec. 18, 2025) (documents that agency relied upon in "effectuating" the agency action "are necessarily part of the administrative record"). The "whole record" of Defendants' alleged obligation of funds for improper purposes necessarily includes the records of how Defendants obligated the funds. And an agency "cannot justify the exclusion of . . . highly relevant, adverse documents from the administrative record simply by claiming that the documents were not 'directly or indirectly considered' by the agency." *Fund for Animals v. Williams*, 391 F. Supp. 2d 191, 199 (D.D.C. 2005). Holding otherwise would allow an agency to "skew the 'record' for review in its favor by excluding from that 'record' information in its own files which has great pertinence to the proceeding in question." *Id.* (quoting *Envtl. Def. Fund v. Blum*, 458 F.Supp. 650, 661 (D.D.C. 1978)). The MO obligating documents have enormous pertinence to the proceeding here.

**C. Documents reflecting the selection of GHP and DA funds for close-out activities**

Plaintiffs' bullet points in the October 14 JSR stated that the administrative record should include records reflecting: how and why the GHP and DA funds expiring this year were selected or reserved for paying for closeout activities; why Defendants chose to reserve the amounts that they did ($1.353 billion in GHP funds and $1.179 billion in DA funds); and any analysis of whether using those funds for closeout would comply with the specific purposes and amounts required by Congress, including Section 7019(a) and Sections 7030–61. *See* ECF No. 228 at 2-3.

The administrative record contains *none* of this information. It is impossible that there is not a single email, memo, or other documentation concerning the decision to use FY2025 GHP and DA money to pay for myriad close-out activities. Defendants have not denied such documents exist. Instead, when Plaintiffs asked Defendants' counsel whether they have checked whether such documents exist—including whether Defendants have run email searches for these and other relevant records—Defendants' counsel refused to answer.

Any records shedding light on the choice of FY2025 GHP and DA funds for closeout activities clearly must be part of the administrative record for Plaintiffs' challenge to the close-out scheme, which centers on the use of these funds.

**D. Records reflecting the uses of GHP and DA funds, including whether they are being used for GHP and DA purposes**

At the September 28, 2026 hearing, Defendants told the Court that "the close-out costs" being funded with FY2025 GHP and DA appropriations are "not for the closeout of the agency, it's for the closeout of those discrete programs, so GHP and DA." Hr'g Tr. at 8:7–9. Defendants further told the Court that FY2025 GHP and DA funds were being used only to close-out GHP and DA awards respectively. *See id.* at 8:16–9:16.

The administrative record contains nothing validating or otherwise providing evidence in support of these assertions. *See* ECF No. 228 at 3 (bullets describing such records as necessary for the administrative record). The new declaration from Tricia Schmitt does not say anything along these lines, and neither does any of the several decision memos describing the purposes for which the GHP and DA funds would be used.

Indeed, the newly produced memos seemingly make clear that the FY2025 GHP and DA funds will be used, at least in part, for close-out activities having nothing to do with GHP and DA awards. Contrary to Defendants' representation at the September 28 hearing, FY2025 GHP

and DA funds *are* being used “for the closeout of the agency.” Hr’g Tr. at 8:7–9. In MO 3, USAID obligated up to $205,600,000 of FY2025 DA and $86,400,000 of FY2025 GHP-USAID funds for “the operations of USAID during the closeout period.” A.R. 4010. It appears that some of these funds are for paying for “IT and financial systems” while USAID is winding down its operations. A.R. 3999–4000. In other MOs, USAID obligated millions more in FY2025 GHP and DA funds for expenses such as “severance” and “lump-sum payouts” of former USAID staff and Foreign Service National (FSN) staff. A.R. 4009–4010. None of these payments appear to be for close-out costs owed on terminated GHP and DA awards, and there is no explanation in the administrative record why USAID did not use the appropriations that Congress provided to USAID and the State Department for operating expenses for paying these costs.

For the MOs related to closing out terminated awards and litigation, there is no indication in any of the decision memos that the FY2025 DA and GHP funds would be used only for close-outs and litigation regarding DA and GHP awards. *See, e.g.*, A.R. 4009–4010. And, based on the facts known to date, it is difficult to comprehend how that could be. USAID has stated that it will use the obligated, undisbursed amounts remaining on awards for close-out purposes before tapping into other appropriations like the FY2025 GHP and DA funds. Why would only GHP and DA awards—and not any awards funded with the numerous other categories of title III and title IV appropriations awards—lack sufficient undisbursed balances in the awards to cover close-out costs? The record does not say. And to cover litigation and settlements, USAID obligated *only* FY2025 DA funds. DA awards are not the only types of awards in litigation, and yet only DA funds are being obligated for litigation.

At the parties’ meet and confer yesterday, Defendants maintained their assertion that FY2025 GHP and DA funds will be put only toward GHP and DA award close-outs. When

Plaintiffs inquired whether Schmitt or another USAID official would state that in their administrative record declaration, Defendants said no. But they vaguely suggested that such a declaration may be provided in opposition to Plaintiffs' forthcoming summary judgment motion. If Defendants do intend to provide sworn statements on this issue in opposing summary judgment, they should provide it now as part of the administrative record, not save it for later in an effort at litigation gamesmanship.

In any event, declarations alone would not suffice, because the administrative record should be completed or supplemented with the documentation that will answer this question. In fact, the obligating documents for the MOs described above "includ[e] a list of awards that will be funded with the obligation," A.R. 4014, then producing those obligating documents would resolve this issue. F not in those documents, other documents necessarily exist showing the awards for which FY2025 DA and GHP funds have already been used to pay close-out costs, or for which such funds have been earmarked for use.

These records will not only indicate whether the close-out costs being funded are for GHP and DA awards, but also the fiscal year's money that originally funded the award. This fact is relevant to whether the table and directives associated with the 2025 Continuing Resolution are being met, and whether the funds are being obligated consistent with the Purpose Act. And this Court ordered that Defendants include records on the fiscal year identity of the awards, in directing supplementation as described in the JSR bullets.

**E. Records relevant to allocation of rescinded funds**

This Court rejected Defendants' request that the supplemental administrative record be limited to close-out activities, with the Court ordering that "the supplemental administrative record shall include all documents and materials not already produced that were considered by

agency decisionmakers as relevant to the challenged agency actions, including materials related to . . . the allocation of funds rescinded by the Rescissions Act of 2025." 10/22/26 Minute Order. Yet Defendants appear to have ignored the Court's order and proceeded under their proposed limitation. The supplemental administrative record is limited to materials regarding close-out activities, and Defendants do not even include a declaration from the State Department, which would be the responsible agency for the allocation of rescinded funds.

The Court should reiterate that the administrative record must include all relevant materials on the allocation of rescinded funds, including, at a minimum, confirmation "via a declaration that the final allocations of the rescinded funds to directives match those presented in the 653(a) report already in the administrative record." ECF No. 228 at 3.

## II. Defendants Can Enjoy No Presumption That the Record Is Complete

The memos newly revealed in the supplemental administrative record raise serious questions whether Defendants complied with the Court's prior orders that the administrative record must include all memos and other documents relevant to the April 2026 Congressional Notification regarding using funds for close-out purposes.

At the July 2, 2026 hearing, the Court directed that "any" documents that went into the Congressional Notification were "fair game to include in the administrative record." 7/2/2026 Hr'g Tr. 52:4–8. The Court stressed to Defendants' counsel to "make sure when you go back it's with that in mind, that there would be *any memoranda* and back-and-forth communications, internal stuff about [the Congressional Notification] would be within the scope of [] an administrative record." *Id.* at 52:8–14 (emphasis added). Later in the same hearing, the Court again emphasized, "I do want to make sure that as it relates to the April 2026 CN, the administrative record is complete, and so it would be any documents showing how the

conclusions in the CN were reached and any basis for them." *Id.* at 61:9–12 (emphasis added). The next day, the Court expressly ordered Defendants to "complete and supplement the administrative record to include any documents relating to . . . the April 2026 congressional notification, to the extent not already provided." 7/3/2026 Minute Order.

At the September 28, 2026 hearing, Defendants assured the Court that they had complied with these directives. Defendants' counsel repeatedly stated that "the administrative record does have everything on closeout." Hr'g Tr. at 58:16–18; *see also id.* at 57:24–25 ("the record is fully complete on the closeout"); *id.* at 58:19–20; *id.* at 59:22–25;

It now appears that this was not true. Defendants' completed producing the administrative record on July 23, 2026, and it did not include the memoranda related to close-outs from October 16, 2025, July 6, 2026, and July 16, 2026 that have now been included in the supplemental record. Nor did Defendants include Lewin's July 19 approval of "$91.4 million for USAID to obligate for closeout actions." A.R. 4027. These documents unquestionably fall within the scope of the Court's prior directives.

At the parties' November 13 meet and confer, Defendants would not explain why these documents were not included in the July 2026 record, instead pointing to a purported explanation in the new Schmitt Declaration. The Schmitt Declaration states that a May 15, 2026 spend plan "was not submitted as part of the record because it was pending final clearance with State Senior Official Jeremy Lewin." A.R. 3995. It is not clear what May 15, 2026 document this is referencing, but this statement does not explain why the October 16, 2025, July 6, 2026, and July 16, 2026 memos were not included. Each of those was approved within days and thus was not deliberative when Defendants completed producing the record on July 23, 2026.

In adjudicating the instant motion, the Court should consider the unexplained failure to include these materials in the July 2026 record, the fact that Defendants initially certified an administrative record in June 2026 that they would later admit was deficient, the lack of any State Department or USAID certification accompanying the new supplemental administrative record, and the ways set forth in this motion that Defendants have not complied with this Court's directives regarding the supplemental record. In these circumstances, Defendants can be afforded no "presumption" that the record was properly assembled and is complete. *Fund for Animals*, 391 F. Supp. 2d at 197.

**CONCLUSION**

The Court should order Defendants to complete and supplement the administrative record as set forth above and in the attached proposed order.

Dated: November 14, 2026

Respectfully submitted,

/s/ Daniel F. Jacobson
Daniel F. Jacobson (D.C. Bar 1016621)
Stephen K. Wirth (D.C. Bar 1034038)
John Robinson (D.C. Bar 1044072)
Brian C. Rosen-Shaud (D.C. Bar 90042065)
Nina C. Cahill (D.C. Bar 1735989)
JACOBSON LAWYERS GROUP PLLC
5100 Wisconsin Ave, Suite 301
Washington, DC 20016
Tel: (301) 823-1148
dan@jacobsonlawyersgroup.com