**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

GLOBAL HEALTH COUNCIL, *et al.*,

*Plaintiffs*,

v.

DONALD J. TRUMP, *et al.*,

*Defendants*.

Civil Action No. 1:25-cv-402 (AHA)

**Defendants' Opposition to Plaintiffs' Motion To Complete or Supplement the Administrative Record**

Defendants oppose Plaintiffs' motion (ECF No. 230). This dispute is primarily about the interpretation of the Court's October 22 Minute Order. The Court's Minute Order, in relevant part, reads:

> By November 9, 2026, Defendants shall supplement the administrative record for the claims within the scope of Plaintiffs' pending motion for partial summary judgment. The supplemental administrative record shall include all documents and materials not already produced that were considered by agency decisionmakers as relevant to the challenged agency actions, including materials related to "closeout activities" and the allocation of funds rescinded by the Rescissions Act of 2025, as described in the bullet points on ECF No. 228 at 2–3.

October 22 Minute Order.

Defendants complied with this Order by producing all records not already produced that were considered by the agency decisionmaker, including materials related to "closeout activities" and to the allocation of funds rescinded by the Rescissions Act of 2025.

Indeed, those are the types of records contained in an administrative record. The administrative record is to include "all documents and materials that the agency 'directly or indirectly considered' and nothing more nor less." *Bahman Group v. Gacki*, 2020 WL 43469912 *2 (D.D.C. July 29, 2020) (quoting *Bar MK Ranches v. Yeutter*, 994 F.2d 735, 739 (10th Cir.

1993)). This understanding of the Minute Order is supported by what was discussed in the latest hearing on September 28, which contemplated supplementing the administrative record with closeout cost materials not already produced. Plaintiffs' other bullet point requests in ECF No. 228 amount to improper discovery, not materials appropriate for an administrative record, *i.e.*, the "documents … the agency 'directly or indirectly considered."

Here, the documents considered by the agency decisionmaker related to Plaintiffs' claims regarding (1) closeout costs and (2) the allocation of funds rescinded by the Rescissions Act of 2025 have been produced. *See* Declarations of Tricia Schmitt (attached herein as Exhibit A) and Kyle Petersen (attached herein as Exhibit B). Plaintiffs' view is that any materials responsive to the bullet points listed in ECF No. 228 at 2-3 also should have been produced by the government. But Defendants dispute that this is what the Court ordered. Indeed, the additional materials sought would not be part of the administrative record as none were considered by the agency decisionmaker. Defendants are not and should not be required to answer interrogatories and/or to create documents that never existed as part of an administrative record.

* * * * *

Following Plaintiffs' motion, the Court in a Minute Order stated that Defendants' response:

> [S]hall confirm whether Defendants' position is that they have provided a full administrative record for all claims within the scope of Plaintiffs' pending motion for partial summary judgment, including all documents and materials agency decisionmakers considered (directly or indirectly) at the time they made their decisions and also address each of the five items listed in Plaintiffs' proposed order, ECF No. 230-2.

November 16, 2026 Minute Order.

Accordingly, Defendants confirm here, as they did with Plaintiffs in a November 13, 2026, meet and confer, that Defendants have provided a full administrative record for all claims within the scope of Plaintiffs' pending motion for partial summary judgment, including all documents and materials agency decisionmakers considered (directly or indirectly) at the time they made their decisions. *See* Supplemental Declaration of Tricia Schmitt (attached herein as Exhibit A) and

Declaration of Kyle Peterson (attached herein as Exhibit B). The five items in Plaintiffs' proposed order are addressed below.

**ARGUMENT**

Supplementing an administrative record that an agency prepares is only appropriate if the agency "did not include materials that were part of its record, whether by design or accident[.]" *Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010). Plaintiffs bear the burden of establishing the factual predicate necessary to permit a court to supplement an administrative record. Indeed, "a plaintiff must put forth *concrete evidence* that the documents it seeks to 'add' to the record were actually before the decisionmakers." *Id.* (emphasis added) (quoting *Sara Lee Corp. v. Am. Bakers Ass'n*, 252 F.R.D. 31, 34 (D.D.C. 2008)).

"A court that orders an administrative agency to supplement the record of its decision is a rare bird." *The Cape Hatteras Access Pres. All. v. U.S. Dep't of Interior*, 667 F. Supp. 2d 111, 112 (D.D.C. 2009). When there is a challenge to agency action, it is the agency's responsibility to compile the information that the decisionmaker directly or indirectly considered, which forms the administrative record. *Id.* at 114. "[A]bsent clear evidence to the contrary, an agency is entitled to a strong presumption of regularity[] that it properly designated the administrative record." *Comm. of 100 on the Fed. City v. Foxx*, 140 F. Supp. 3d 54, 58 (D.D.C. 2015) (quoting *Pac. Shores Subdivision v. U.S. Army Corps of Eng'rs,* 448 F. Supp. 2d 1, 5 (D.D.C.2006)).

In this Circuit, the record can be supplemented in three instances: (1) if the agency "deliberately or negligently excluded documents that may have been adverse to its decision," (2) if background information was needed "to determine whether the agency considered all the relevant factors," or (3) if the "agency failed to explain administrative action so as to frustrate judicial review." *Id.* (quoting *Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1002 (D.C. Cir. 2008)); *see also Transp. Div. of the Int'l Assoc. of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*, 10 F.4th 869, 878–79 (D.C. Cir. 2021) (agency's designation of the administrative record is entitled to a "presumption of regularity" and rejecting "allegations of bias" as basis to overcome presumption).

Under this contextual backdrop—the five categories of information identified in Plaintiffs' proposed order (ECF No. 230-2) are addressed below.

**A. Plaintiffs' Requests to Complete or Supplement the Administrative Record**

1. Tabs 1 and 2 to the September 15, 2025 Memorandum to Eric Ueland. *See* A.R. 4027–28.

While Defendants maintain that these documents were either deliberative or not considered by agency decisionmakers, and thus would not be a part of an administrative record, Defendants will agree to produce appropriately redacted versions of these attachments for the sake of compromise and to narrow this dispute. *See* Supp. Schmitt Declaration ¶ 4.

2. The obligating document(s) for the five miscellaneous obligations referenced on A.R. 4009.

These documents were not relied on by the decisionmakers in entering into the obligations. *Id* ¶ 5. These represent after-the fact documentation of the obligations and reflect purely ministerial activity that USAID staff completed *after* decisions to approval the obligations were made. *Id.*

3. Records reflecting how and why the GHP and DA funds expiring on September 30, 2026 were selected or reserved for paying for closeout activities, including but not limited to for paying for USAID operations, costs for separated personnel, Institutional Support Contracts, IT and financial systems, litigation, and close-out costs for terminated awards.

4. Records reflecting the purposes for which FY2025 GHP and DA funds are being used, including whether they are being used only for closing out GHP and DA awards or if they are also being used for other purposes. Such records should also reflect the fiscal year's money that originally funded the awards for which USAID is using FY2025 GHP and DA funds to pay close-out costs.

As for parts 3 and 4 of the Plaintiffs' proposed order, the Defendants have not deliberately or negligently excluded documents addressing these topics. Rather, as Defendants explain in the Schmitt Declaration, either the agency has not identified any documents that exist that Plaintiffs otherwise believe exist (part 3) or the records Plaintiffs want to be included were made after the agency decision (part 4); thus the agency decisionmaker did not consider any such records in

coming to the challenged decision. So, supplementation of the record regarding these topics would be improper and inconsistent with law." *Id.* ¶ 6.

Further, Plaintiffs now frame their proposal in the new proposed order (ECF No. 230-2) as requests for "records.". But their previous proposed order (ECF No. 228 at 2-3) requests post-hoc information and analysis that amount to interrogatories in the form of requests for documents or declarations that explain:

- The reasons Defendants determined that more than $19 billion needed to be reserved for paying closeout costs, including data showing how much money terminated awardees had requested in aggregate for not-yet-closed-out awards, and the aggregate amount currently left in undisbursed amounts on the terminated awards, as of the April 2026 Congressional Notification and at other relevant times thereafter when USAID obligated the funds to preserve them for use for closeouts;
- How and why the GHP and DA funds expiring this year were selected or reserved for paying for closeout activities, why Defendants chose to reserve the amounts that they did ($1.353 billion in GHP funds and $1.179 billion in DA funds), and any analysis of whether using those funds for closeout would comply with the specific purposes and amounts required by Congress, including Section 7019(a) and Sections 7030–61;
- Whether the remaining GHP and DA funds are being "used directly to close out GHP and DA awards," as discussed at the September 28 hearing, *see* Tr. 8:16–25;
- Details on the purposes for which the funds are being obligated, including, as described by Defendants at the September 28 hearing: the "five programmatic categories used for closeouts: [1] programmatic closeouts,. . . including audits, . . . adjustments, payments of vouchers, and termination of settlements; [2] personnel related closeouts, so severance funds, lump sum payouts to personnel who were terminated; [3] operations during closeout, so fund payments to USAID partners, . . . ; [4] services and support related to the operation of USAID during the closeout period; [and 5] litigation settlement." Tr. 9:22–10:7.
    - For each of these purposes and sub-purposes, the administrative record should: contain more details on the nature of each; the vehicle(s) or mechanism(s) through which the funds were obligated; how much money Defendants have obligated to each; and how much Defendants anticipate obligating to each and under what timeline.
- Whether and to what extent the funds are being used to pay closeout costs for awards that were funded with prior years' appropriations, *see* Tr. 41:19–42:3,
- Whether any such funds are being used for a "central audit mechanism" for closing out USAID and, if so, the amount that has been obligated for that purpose, *see* Schmitt Decl. ¶ 9, Dkt. No. 205-2[.]

*Id*. These are interrogatories (now framed as requests for records) and are improper. *See, e.g.*, *Interrogatory*, Black's Law Dictionary (12th ed. 2024) (defining interrogatory as a "[a] written question (usu. in a set of questions) submitted to an opposing party in a lawsuit as part of discovery.").

And to the extent that what Plaintiffs truly seek is not supplementation of the AR, but extra-record discovery, Plaintiffs have made no such request. Nor could they. "Going *beyond* the administrative record," *i.e.*, extra-record evidence, is governed by different legal principles but, like supplementation of the record, is appropriate only in "certain limited, and highly exceptional, circumstances." *Cape Hatteras Access Pres. All.*, 667 F. Supp. 2d at 114–15 (emphasis added). The party seeking extra-record discovery must make a "strong showing" of "bad faith or improper behavior," *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 488 (D.C. Cir. 2011), and must show that "material providing a basis for extra-record review will be uncovered" through discovery, *Amfac Resorts, L.L.C. v. U.S. Dep't of Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001). "Thus, unless it appears at least somewhat likely that discovery will reveal that an agency acted improperly or provided an incomplete record, a court should not allow discovery against an agency." *Comm. of 100*, 140 F. Supp. 3d at 60. Plaintiffs can make no such showing. Plaintiffs must not be allowed to engage in "a fishing expedition to hunt for unidentified documents, when there is no indication that other documents actually exist." *Clinch Coal. v. U.S. Forest Serv.*, 693 F. Supp. 3d 643, 653–54 (W.D. Va. 2023).

5. Documents not already produced, if any, that were directly or indirectly considered by State, USAID, or OMB in allocating rescinded funds from the 2025 Rescissions Act onto specific accounts, line items, and directives. At a minimum, Defendants should confirm via a declaration that the final allocations of the rescinded funds to directives match those presented in the 653(a) report already in the administrative record.

As previously stated, the Department of State (the agency to which Plaintiffs' 2025 Rescissions Act claim attaches) confirms that they have provided all documents and materials that were directly or indirectly considered by the agency regarding their Rescissions Act claim. *See*

Decl. of Kyle Peterson ¶ 3. The court must evaluate the agency's decision on the basis of that record.

### B. Plaintiffs' Misstatements Do Not Alter the Fact that the Administrative Record is Complete

Last, Plaintiffs' counsel continues to mischaracterize prior statements that Defendants' counsel has made before the Court and elsewhere.

Regarding the meet and confer, Plaintiffs state that Defendants' counsel said they "categorically would not engage on any "substance," and would not discuss why materials were not included (or whether they even exist) unless it is at a hearing with the Court." ECF No. 230-1 at 2. This is inaccurate. Defendants stated (several times) that although they understood that Plaintiffs wanted all the information contained in their bullet points (ECF 228), that Defendants already supplemented the administrative record with any records considered by the decisionmakers. Defendants counsel then stated Plaintiffs' other requests amounted to improper discovery and, on that basis, counsel would not discuss them further.

Plaintiffs also stated that Defendants would not answer whether certain records existed or were searched for, *id.* at 8, 13, but Defendants' recollection is that Defendants confirmed in the meet and confer that the custodians at the agencies did search for such records.

Plaintiffs further state that Defendants' statement at the September 28, 2026 hearing that it was counsel's understanding that the close-out costs being funded with GHP and DA appropriations are for the closeout of those discrete programs must be incorrect because the administrative record "contains nothing validating or otherwise providing evidence in support of those assertions." *Id.* at 13. But why would it? Just because an assertion is not validated by a document in the administrative record does not mean that the assertion is false. And as the Schmitt Declaration confirms, Supp. Schmitt Decl. ¶ 6, that representation as counsel understood remains true.

Plaintiffs also argue that Defendants can enjoy no presumption that the record is complete. Not so. First, Defendants ask for no presumption; the agency has supported the completeness of the record with declarations. *See* Supp. Schmitt Decl.; Peterson Decl. Second, it is clearly Plaintiffs' burden to provide "concrete evidence" that the administrative record is deficient. *See, supra* at 3. They have not done so. Here, Plaintiffs claim this is the case because the Court in a July 2, 2026 hearing directed that any documents that went into the Congressional Notification were to be included in the administrative record, and that Defendants—in a September 28, 2026, hearing—assured the Court that the record (as Defendants' counsel understood it) contained the documents considered in connection with the close-out. Plaintiffs evidence that this appears to be untrue is that the nearly 4,000-page administrative record did not include memoranda related to close-outs from October 16, 2025, July 6, 2026, and July 16, 2026. But as explained in the Schmitt Declaration, these handful of documents are being produced now because the Court's prior order on the scope of the administrative record (July 3, 2026 Minute Order) were those close-out cost records related to the April 2026 congressional notification. Supp. Schmitt Dec. ¶ 7. The Court's most recent Minute Order required that the administrative record include close-out materials not already produced, of which a handful of documents were found. That was the whole point of the supplemental administrative record and the focus of the hearing—that if any materials close-out that had not yet been produced then it should be produced.

Further, Plaintiffs' counsel's quotes of the hearing where Defendant's counsel discussed the completeness of the administrative record as to close-out costs is clearly taken out of context. *See id*. at 17 ("At the September 28, 2026 hearing, Defendants assured the Court that they had complied with these directives. Defendants' counsel repeatedly stated that "the administrative record does have everything on closeout." Hr'g Tr. at 58:16–18; *see also id.* at 57:24–25 ("the record is fully complete on the closeout"); *id.* at 58:19–20; *id.* at 59:22–25).

Defendants' counsel's statements were made based on counsel's understanding at that time as conveyed by Defendant agencies. Plaintiffs' counsel's quotations omit that key language in three out of the four citations (with the fourth citation not discussing close-outs but the record as a

whole). *See* Hr'g Tr. at 58:16–18 ("again, **my understanding** after reading their surreply was, oh, the administrative record does have everything on closeout.") (emphasis added); *see also id.* at 57:24–25 ("**It's my understanding** that the record is fully complete on closeout) (emphasis added); *see also id.* at 58:19–20 ("**It's my understanding** that it does have everything on closeout.") (emphasis added). Regardless, as demonstrated in the Schmitt Declaration at 3; the administrative record on closeout costs is, in fact, complete.

## CONCLUSION

Plaintiffs' motion to complete or supplement the record should be denied.

Dated: November 17, 2026

Respectfully submitted,

JONATHAN D. GUYNN
Acting Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director
Federal Programs Branch

*/s/ Joshua N. Schopf*
JOSHUA N. SCHOPF
PIERCE J. ANON
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, DC 20044
Phone: (202) 514-6304
Email: joshua.n.schopf@usdoj.gov

*Counsel for Defendants*